**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| PURE DEVELOPMENT, INC.,<br>PURE HOLDINGS, INC.,<br>and DREW SANDERS,<br><br>    Plaintiffs,<br><br>  v.<br><br>CANOPY 5, LLC, CHRIS SEGER,<br>ADAM SEGER, BRIAN PALMER,<br>and MAGIC TRIC I, LLC,<br><br>    Defendants. | Case No. 1:25-cv-1301 |

**COMPLAINT**

Plaintiffs Pure Development, Inc., Pure Holdings, Inc., and Drew Sanders, for their

complaint against defendants Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer,

and Magic TRIC I, LLC state:

**Nature of Action**

1.    This action originates from the concerted efforts of Chris Seger to appropriate

the business of real estate development company Pure Development, Inc.—primarily

for himself but also for, and with, his brother Adam Seger and their cohort Brian

Palmer.

2.    Chris Seger originally sought to do so by obtaining a judicial dissolution of

Pure Development, Inc.'s holding company (Pure Holdings, Inc.) and related venture

1

Pure Development Capital, Inc., over the objection of those companies' 50-50 co-owner, Drew Sanders (the "State Court Case").

3. As part of a dissolution "Remedy Plan" that he presented in the State Court Case, Chris Seger asked that he be permitted to start a new company (already called Canopy 5, even before it was officially organized) that would assume control of all of Pure Development, Inc.'s assets, customers, business pipeline, and employees.

4. Chris Seger's pitch to the state court was that Canopy 5 should complete all of Pure Development, Inc.'s pending projects, deduct Canopy 5's "costs" from the generated revenues, and then split whatever profit was left over with Sanders—all while Canopy 5 took on new projects that Pure Development, Inc. otherwise would have taken on.

5. On May 12, 2025, the state court granted Seger's dissolution request, and included Pure Development, Inc. in its dissolution order. But the state court specifically rejected Seger's proposed "Remedy Plan" as "inequitable." As the state court put it, "Seger's Proposed Remedy Plan, Canopy 5, would engage in the same business as Pure Development, just without Sanders." Although that plan "could certainly be successful in completing Pure Development's current projects," the state court explained, "this success is far outweighed by the inequitable results to Sanders through the adoption of the plan." The state court instead believed it should appoint a receiver to independently oversee Pure Development, Inc.'s business pipeline until that pipeline was exhausted.

6.      But after the state court rejected Chris Seger's Canopy 5 "Remedy Plan" as inequitable, Seger simply did it anyway.

7.      As Pure Development, Inc. continued operating its business, Chris Seger and fellow Pure Development, Inc. employees Adam Seger and Brian Palmer:

a.  organized Canopy 5;

b.  purported to hire Pure Development, Inc.'s employees as "independent contractors," while all of them still ostensibly worked for Pure Development, Inc.;

c.  marketed Pure Development, Inc.'s employees as Canopy 5's "team";

d.  began operating Canopy 5's business out of Pure Development, Inc.'s offices, using Pure Development, Inc.'s assets, resources, trade secrets, and other confidential business information;

e.  marketed Canopy 5 by passing off Pure Development, Inc.'s projects as Canopy 5's projects; and

f.  engaged in efforts to transition Pure Development, Inc. projects and clients to Canopy 5.

8.      Only after they were well under way in doing all of the above did Chris Seger (on June 25, 2025), Adam Seger (on June 26, 2025), and Brian Palmer (on June 26, 2025) tender their resignations to Pure Development, Inc.

9.  By their concerted actions, Chris Seger, Adam Seger, and Brian Palmer—and their company Canopy 5—intend to cripple Pure Development, Inc., such that the company's employees and customers believe they have no choice but to abandon Pure Development, Inc. and join Canopy 5.

10.  None of the actions giving rise to the claims in this action were adjudicated in the State Court Case.

## Parties, Jurisdiction, and Venue

11.  Plaintiff Pure Holdings, Inc. is an Indiana corporation with its principal place of business at 1351 Roosevelt Ave., Suite 100, in Indianapolis, Indiana.

12.  Plaintiff Pure Development, Inc. is an Indiana corporation with its principal place of business at 1351 Roosevelt Ave., Suite 100, in Indianapolis, Indiana.

13.  Plaintiff Drew Sanders is an Indiana citizen.

14.  Defendants Chris Seger, Adam Seger, and Brian Palmer are all Indiana citizens.

15.  Defendant Canopy 5, LLC is an Indiana limited liability company. Although it claims in its Articles of Organization to have its principal office at 8153 Morningside Drive in Indianapolis, in reality Canopy 5, LLC has been operating out of Pure Development, Inc.'s office.

4

16.     Defendant Magic TRIC I, LLC is a limited liability company that claims in its Articles of Organization to have its principal place of business at 1351 Roosevelt Ave., Suite 100, Indianapolis, Indiana, which is Pure Development, Inc.'s office.

17.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

### Factual Allegations

19.     In 2012, Chris Seger and Drew Sanders went into business together to form Pure Development, Inc., a real estate development company located in Indianapolis.

20.     On July 1, 2019, Seger and Sanders formed Pure Holdings, Inc., with each of them owning 50 percent of the company. At that time, they transferred their ownership interests in Pure Development, Inc. to Pure Holdings, Inc., and Pure Development, Inc. became a wholly owned subsidiary of Pure Holdings, Inc.

21.     Pure Development, Inc. has grown into a multimillion-dollar company with about 20 employees. Since its formation, Pure Development, Inc. has completed more than 20 projects throughout the United States.

22.     On April 8, 2024, Chris Seger presented Sanders a buyout offer that would remove Sanders from the Pure enterprise. After Sanders declined the offer, Seger filed the State Court Case to dissolve Pure Holdings, Inc. and Pure Development Capital, Inc. (an entity that Chris Seger and Sanders used to hold capital and guaranty loans).

23.    The State Court Case was tried in February 2025, and the trial court issued its order on May 12, 2025. The trial court ordered Pure Holdings, Inc., Pure Development Capital, Inc., and Pure Development, Inc. all to be dissolved. The trial court also stated its intention to appoint a receiver to wind up those companies' affairs.

24.    In its May 12, 2025 order, the trial court in the State Court Case contemplated that a receiver would "not simply … immediately wind-up the three entities in the ordinary sense." Rather, the court explained, the receiver would oversee Pure Development, Inc.'s business pipeline through to completion—even if that took "years from now." The Indiana Court of Appeals stayed the dissolution order on June 23, 2025, and no receiver has been appointed.

25.    After the close of evidence in the State Court Case in February 2025, Sanders learned that Chris Seger had already engaged in acts—separate and apart from acts that had given rise to counterclaims in the State Court Case—to take a Pure Development, Inc. business opportunity for himself. Chris Seger's efforts to take the rest of Pure Development, Inc.'s business for himself, with the aid of and in concert with the other defendants, continue today.

### The Reno (Nest) Opportunity

26.    After the close of evidence in the State Court Case, Sanders learned that Chris Seger had enlisted his brother Adam Seger—a Pure Development, Inc. employee—to convert a lucrative business opportunity in Nevada known as "Reno (Nest)" to Chris

Seger's exclusive benefit. Chris Seger, through his ownership of Magic TRIC I, LLC, stands to receive a potential net gain on sale for this project of approximately $30 million.

27. Pure Development, Inc. first identified the opportunity to own and develop the Reno (Nest) site as an industrial speculative site in September 2023. And, until late March 2025, Sanders understood that all activities connected to the Reno (Nest) site were in connection with Pure Development, Inc.'s business.

28. On July 24, 2024, Adam Seger, on behalf of Pure Development, Inc. as "Buyer," signed a letter of intent to the landowner, Emerald City Empire, LLC, to purchase a 104.9-acre parcel known as the "Nest" within the Tahoe Reno Industrial Center. A true and accurate copy of the July 24, 2024 letter of intent is **Exhibit 1**.

29. On August 8, 2024, Adam Seger signed a separate letter of intent on behalf of Pure Development, Inc. to purchase a parcel from Emerald City Empire, LLC. A true and accurate copy of the August 8, 2024 letter of intent is attached as **Exhibit 2**. This letter indicated an intent to purchase only a portion of the Reno (Nest) parcel encompassing one 43-acre building site.

30. On October 7, 2024, Adam Seger purported to sign—on behalf of Pure Development, Inc.—a binding Purchase and Sale Contract with Emerald City Empire entitling Pure Development, Inc. to purchase the 43-acre parcel for $10,950,548. A true

and accurate copy of the version of the Purchase and Sale Contract identifying Pure Development, Inc. as buyer, signed by Adam Seger, is attached as **Exhibit 3**.

31.    At 9:06 p.m. on October 7, 2024, however, Chris Seger formed a new Indiana limited liability company: Magic TRIC I, LLC. A true and accurate copy of the articles of organization for Magic TRIC I, LLC are attached as **Exhibit 4**.

32.    Two days later, on October 9, 2024, Adam Seger signed another purchase and sale agreement for the same 43-acre parcel—except, in this version, Pure Development, Inc. was removed as "Purchaser" and replaced by Chris Seger's new company, "Magic TRIC I, LLC." Adam Seger signed on behalf of Magic TRIC I, LLC. A true and accurate copy of this version of the Purchase and Sale Contract is attached as **Exhibit 5**.

33.    On October 11, 2024, despite having already arranged to take this opportunity for himself, Chris Seger caused Pure Development, Inc. to pay a $200,000 deposit to the title company to secure the land under contract. Chris Seger also caused Pure Development, Inc. to make two additional transfers, on January 13, 2025, totaling $125,000. Those payments were applied toward the contract price, as reflected on the settlement statement at closing.

34.    On March 4, 2025, Magic TRIC I, LLC officially acquired the 43-acre parcel. A true and accurate copy of the closing documents for sale are attached as **Exhibit 6**.

35. Chris Seger's taking of the Reno (Nest) site for himself would present uncertain value to him unless he also took the opportunity to build and lease the site to a Pure Development, Inc. client. He did that, too.

36. On September 13, 2024, a Pure Development, Inc. client sent Pure Development, Inc. a letter of intent to lease a building at the 43-acre Reno (Nest) site.

37. Between September 13 and November 4, 2024, Adam Seger—on behalf of Pure Development, Inc.—negotiated lease terms with that Pure Development, Inc. client.

38. On September 25, 2024, Pure Development, Inc. prepared an "RFP Response" to its client touting Pure Development, Inc.'s capabilities to deliver the project.

39. However, on the same date, Adam Seger identified the anticipated landlord as "Magic TRIC I, LLC" in his exchanges with the Pure Development, Inc. client (though, as described above, that entity had not yet been organized).

40. On January 6, 2025, a lender sent Pure Development, Inc. a proposed term sheet for a $72 million construction loan to fund the build-to-suit project. That term sheet identified the borrower as the "to be formed SPE [Pure to provide] - Magic TRIC I Member, LLC."

41. Magic TRIC I Member, LLC is an entity Chris Seger created to serve as the sole member of Magic TRIC I, LLC.

9

42.    On February 12, 2025, Pure Development, Inc.'s client executed a lease with Chris Seger's company, Magic TRIC I, LLC. That same day, Magic TRIC I, LLC and ARCO DB Companies executed a contractor agreement to construct the build-to-suit project.

43.    Chris Seger then caused Magic TRIC I, LLC and Pure Development, Inc. to enter into a development agreement for the project. Deviating from Pure Development, Inc.'s ordinary practice of having Drew Sanders review and sign such contracts, Chris Seger signed the development agreement on behalf of both entities.

44.    At all times prior to the Reno (Nest) opportunity, with respect to similar Pure Development, Inc. business opportunities, Seger and Sanders as partners would do one of two things: (a) leave the opportunity inside Pure Development, Inc. or (b) create a separate special purpose entity for the purpose of that opportunity that the two would own jointly.

45.    Contrary to that practice, Chris Seger usurped the Reno (Nest) opportunity for himself, through Magic TRIC I, LLC—a special purpose entity that Chris Seger created, without Sanders, for that purpose.

46.    At no time did Chris Seger or Adam Seger inform Drew Sanders of their intention and actions to take the Reno (Nest) opportunity for Chris Seger's exclusive benefit.

**Canopy 5, LLC**

47.     On May 12, 2025, the trial court in the State Court Case rejected, as "inequitable," Chris Seger's plan to create Canopy 5 for the purpose of taking Pure Development, Inc.'s business.

48.     Nevertheless, three days later, Chris Seger, Adam Seger, and Brian Palmer founded Canopy 5. A true and accurate copy of Canopy 5, LLC's articles of organization is attached as **Exhibit 7**.

49.     After forming their new company—again, while all were still affiliated with Pure Development, Inc.—Chris Seger, Adam Seger, and Brian Palmer began marketing Canopy 5.

50.     In a press release dated May 30, 2025, the three stated that Canopy 5 was "[h]eadquartered in Indianapolis with regional offices in Charleston, Dallas and Denver," although to plaintiffs' knowledge—as described further below—Canopy 5 has at all times been operating out of Pure Development, Inc.'s offices, using Pure Development, Inc. employees, assets, and confidential information.

51.     The press release identified Chris Seger as Canopy 5's Chief Executive Officer. It also claimed that Chris Seger, Adam Seger, and Brian Palmer would ensure that "all ongoing projects [of Pure Development, Inc.] are completed and [Pure Development, Inc.'s] clients are fully supported, upholding the same integrity that defines their new

venture." A true and accurate picture of that press release—which was left sitting out in Pure Development, Inc.'s office—is attached as **Exhibit 8**.

52.    On June 5, 2025, Chris Seger, Adam Seger, and Brian Palmer were profiled in an *Indianapolis Business Journal* story, with the three touting their launch of Canopy 5. A true and accurate copy of the *IBJ* story is attached as **Exhibit 9**. The picture of the three of them that accompanied the story was taken in Pure Development, Inc.'s office.

53.    The *IBJ* story concluded by noting that "[m]ore information about Canopy 5's efforts to build its development pipeline—and efforts to inherit Pure's projects—is expected to be made public in the coming weeks."

54.    The same afternoon, on June 5, 2025, Adam Seger emailed Ryan Westervelt at Cross Harbor Capital about a Pure Development, Inc. industrial speculative opportunity in New Albany, Ohio.

55.    Adam Seger did so using an email address associated with the domain canopy5.com, and he copied Pure Development, Inc. employees Jesse Sadowy (Pure Development, Inc.'s Chief Financial Officer) and Chase Willis at their Gmail email addresses. A true and accurate picture of Adam Seger's email exchange with Westervelt—which was left sitting out in Pure Development, Inc.'s office—is attached as **Exhibit 10**.

12

56.    In his June 5, 2025 email to Westervelt, Adam Seger stated that a term sheet Cross Harbor Capital Partners had already delivered to Pure Development, Inc. should be changed to "remove mention of Pure Development."

57.    Adam Seger then went on to propose terms for joint venture capital on behalf of Canopy 5. His email signature block used a Canopy 5 logo, and it stated that Adam Seger's Canopy 5 business address was 1351 Roosevelt Ave. #100 in Indianapolis—Pure Development, Inc.'s office address.

58.    Westervelt's response to Adam Seger's email congratulated Seger "on the launch of Canopy 5" and asked that Seger provide an organizational chart for Canopy 5 that "show[s] us the broader bench supporting Canopy 5, essentially confirming which members (if not all) of the former Pure team are involved."

59.    On June 10, 2025, Chris Seger provided Sanders a letter from the Indiana Economic Development Commission, one of Pure Development, Inc.'s clients. A true and accurate copy of the IEDC's June 10, 2025 letter is attached as **Exhibit 11**.

60.    Pure Development, Inc. has served as the developer for the IEDC on the development of the LEAP Lebanon Innovation District in Lebanon, Indiana. But, in its June 10, 2025 letter, the IEDC requested that its contracts with Pure Development, Inc. be assigned to a "Related Entity": Canopy 5.

61.    The IEDC's June 10, 2025 letter attached a series of contracts between the IEDC and Pure Development, Inc., prepared in April 2025 (after the close of evidence in

the State Court Case, but before the trial court's May 12, 2025 order) and apparently negotiated by Chris Seger.

62. In those contracts, Chris Seger—purportedly on Pure Development, Inc.'s behalf—had negotiated a term that allowed for the assignment of Pure Development, Inc.'s contracts with the IEDC to "an entity under the direction of [Chris Seger] and employing [Pure Development, Inc. employee] Michael Watts."

63. In its June 10, 2025 letter, the IEDC stated that, if Pure Development, Inc. would not assign the contracts to Canopy 5, then the IEDC would "simply terminate the Agreements."

64. On June 16, 2025, after Sanders would not consent to the assignment of the IEDC contracts to Canopy 5 (in keeping with the stated intent of the trial court in the State Court Case), the IEDC issued a notice of termination of its contracts with Pure Development, Inc., effective July 10, 2025. A true and accurate copy of the IEDC's June 16, 2025 termination notice is attached as **Exhibit 12**.

65. Upon information and belief, Canopy 5 intends to enter into new contracts with the IEDC for the same LEAP Lebanon Innovation District project that Pure Development, Inc. had been overseeing.

66. Upon information and belief, Chris Seger and others on behalf of Canopy 5 encouraged IEDC to terminate its relationship with Pure Development, Inc. and transfer that business to Canopy 5—all while still affiliated with Pure Development, Inc.

67.     On June 10, 2025, Sanders learned that Canopy 5's website

(https://www.canopy5.com) had gone live.

68.     In a version of Canopy 5's website accessible on June 10, 2025, Canopy 5

identified its business address as 1351 Roosevelt Ave., Indianapolis, Indiana, which is

Pure Development, Inc.'s business address. A true and accurate excerpt of the Canopy 5

website's Terms of Use identifying 1351 Roosevelt Ave. as Canopy 5's business address

is attached as **Exhibit 13**.

69.     On its website, Canopy 5 has touted Pure Development, Inc. projects as

Canopy 5's own projects.

70.     For example, on its "Build-to-Suit" page (https://www.canopy5.com/build-to-suit/), Canopy 5 passes off as its own work the following projects: Sierra Nevada

Corporation in Dayton, Ohio; Saint Gobain in Worchester, Mass.; Amazon WKN4 in

Union, Ohio; Amazon WKN3 in Texarkana; Amazon WKN2 in Fort Smith; Amazon

LUK2 in Union, Ohio; Amazon DDT-9 in Canton, Mich.; Wayfair in South Elgin, Ill.;

Skjodt Barrett in Lebanon, Ind.; SEP Headquarters in Westfield, Ind.; Regal Beloit in

McAllen, Tex.; Mondelez in Montgomery, N.Y.; KAR Headquarters in Carmel, Ind.; GE

Aviation in Lafayette, Ind.; GE Aviation in Ellisville, Miss.; and GE Aviation in Hookset,

New Hampshire.

71.    These representations by Canopy 5 are false and misleading. Each of the projects described in the foregoing paragraph represents work done by Pure Development, Inc., not Canopy 5.

72.    On its "Speculative" page (https://www.canopy5.com/speculative/), Canopy 5 passes off as its own work the following projects: 450 Pittsburgh in Reno, Nev.; 1600 Peru in Reno, Nev.; 455 Denmark in Reno, Nev.; 500 Denmark in Reno, Nev.; Pure at Pinnacle One in Laredo, Tex.; Franklin Business Park in Franklin, Ind.; Elevate Industrial in Reno, Nev.; Coastal Crossroads in Charleston, S.C.; Camp Hall in Charleston, S.C.; and Ascent Industrial Park in Dayton, Ohio.

73.    These representations by Canopy 5 are false and misleading. Each of the projects described in the foregoing paragraph represents work done by Pure Development, Inc., not Canopy 5.

74.    On its "Mixed Use" page (https://www.canopy5.com/mixed-use/), Canopy 5 passes off as its own work the following projects: Century Apartments in Lafayette, Ind.; North Mass District in Indianapolis, Ind.; Midtown Carmel in Carmel, Ind.; LEAP District in Lebanon, Ind.; Kindred Resort, Keystone, Colo.; and Fox Park in Denver, Colo.

75.    These representations by Canopy 5 are false and misleading. Each of the projects described in the foregoing paragraph represents work done by Pure Development, Inc., not Canopy 5.

76.     On its "About" page (https://www.canopy5.com/about/), Canopy 5 invites visitors to "Meet The Team." In addition to Chris Seger, Adam Seger, and Brian Palmer, Canopy 5's advertised "team" consists of Pure Development, Inc. employees: Jesse Sadowy, Jenna Barnett, Michael Watts, Jon Carpenter, Justin Lawhorn, Jody Sharp, Kyle Miller, Tyler Neese, Brian Tominov, Dom Cate, Jake Leatherman, Chase Willis, Katie Harp, and Kendra Brooks.

77.     Sanders has since learned that, in agreements executed by Chris Seger as "Canopy 5 Chief Executive Officer" on or about June 10, 2025—again, while Chris Seger was still affiliated with Pure Development, Inc.—Canopy 5 purported to hire all of Pure Development, Inc.'s employees as "independent contractors." A true and accurate copy of one such agreement—which was left sitting out in Pure Development, Inc.'s office—is attached as **Exhibit 14**.

78.     These agreements between Canopy 5 and Pure Development, Inc. employees acknowledge that the employees owe Pure Development, Inc. fiduciary obligations, yet by those same agreements Canopy 5 purports to hire the employees for the purpose of "provid[ing] various development-related services to support Canopy 5's growth and objectives."

79.     The ultimate point of the agreements, as stated in their terms, is to leverage the expertise of Pure Development, Inc.'s employees "to drive new business opportunities for Canopy 5," rather than for Pure Development, Inc.

80.    In marketing materials published to Instagram, Canopy 5 has advertised Pure Development, Inc.'s office as its office. For example, the following photos (depicting Pure Development, Inc.'s office as Canopy 5's) were posted to Canopy 5's Instagram feed on June 5, 2025:



81.    In videos filmed in Pure Development, Inc.'s office and posted to Canopy 5's Instagram feed, Canopy 5 similarly represents Pure Development, Inc.'s office as its own and also shows Pure Development, Inc. employees working in Pure Development, Inc.'s office, as exemplified by the following true and accurate screen grab from one such video:



82.    In a video posted to Canopy 5's Instagram feed on June 23, 2025, a true and accurate screen grab of which follows, Brian Palmer introduced himself as Canopy 5's

Chief Operating Officer—while Palmer was still an employee of Pure Development,

Inc.:



83.    In one of Canopy 5's advertising videos, a true and accurate screen grab of

which follows, Adam Seger is shown talking with a Pure Development, Inc. employee

whose computer screen shows a link to the folder directory "Pure" (third folder up

from the bottom left):



84. Canopy 5 issued these marketing materials identifying Chris Seger, Adam Seger, and Brian Palmer as principals at the same time all three were still affiliated with Pure Development, Inc.

85. Upon information and belief, Canopy 5 has conducted business since mid-May 2025 by utilizing Pure Development, Inc.'s employees, Pure Development, Inc.'s offices, Pure Development, Inc.'s computers and other tangible assets, Pure Development, Inc.'s goodwill and other intangible assets, and Pure Development, Inc.'s trade secrets.

### Chris Seger, Adam Seger, and Brian Palmer's Resignations from Pure Development, Inc.

86. On June 25, 2025, Chris Seger emailed Sanders a notice that Seger had "resign[ed], effective immediately, from all employment, officer, director, and board members positions that [Seger] hold[s] in: Pure Development, Inc.; Pure Holdings, Inc.; and Pure Development Capital, Inc." A true and accurate copy of Chris Seger's June 25, 2025 letter is attached as **Exhibit 15**.

87. In his June 25, 2025 letter, Chris Seger also purported to transfer any ownership in Pure Holdings, Inc., Pure Development Capital, Inc., and Pure Development, Inc. into "an irrevocable blind trust." Chris Seger did not provide Sanders any documentation of such a trust or of his transfer of any shares in any company.

88.     On June 26, 2025, Chris Seger sent a letter to Drew Sanders and to Bryan Chandler, who is apparently trustee of a Chris Seger "irrevocable blind trust" named CS Phoenix Blind Trust. A true and accurate copy of Chris Seger's indemnity demand is attached as **Exhibit 16**.

89.     In his June 26, 2025 letter, Chris Seger demanded that Pure Holdings, Inc. indemnify him for certain expenses he claimed to incur in connection with the State Court Case.

90.     The same day, both Adam Seger and Brian Palmer provided notice that they had resigned from their positions at Pure Development, Inc., effective June 26, 2025. True and accurate copies of their resignation letters are attached as **Exhibit 17** (Adam Seger) and **Exhibit 18** (Brian Palmer), respectively.

91.     In their June 26, 2025 resignation letters, both Adam Seger and Brian Palmer asserted that they were resigning for "good cause"—a defined term in both of their employment agreements. True and accurate copies of their employment agreements are attached as **Exhibit 19** (Adam Seger) and **Exhibit 20** (Brian Palmer), respectively.

92.     The term "good cause" is described in Section 2.1 and Section 2.2 of both Adam Seger and Brian Palmer's employment agreements as events "such as breach by Company, or to pursue a non-competitive business opportunity without any violation of the restrictive provisions in the Employment Agreement."

23

93.     Neither Adam Seger nor Brian Palmer resigned their employment from Pure Development, Inc. with "good cause."

94.     Both Adam Seger and Brian Palmer's employment agreements include the following Section 6 (titled "Confidential Information") that states, in relevant part:

> Employee acknowledges that Company's services are highly specialized and that in the course of his/her employment with Company, he will occupy a position of trust and confidence and will have access to and may develop Confidential Information of actual or potential value to, or otherwise useful to, Company.

* * *

> Employee agrees to use Confidential Information solely in the course of Employee['s] duties as an employee of Company and in furtherance of Company's business. Employee hereby further agrees that the above-referenced information will be kept confidential at all times during and after his/her employment with Company and that he will not disclose or communicate to any third party any of the Confidential Information and will not make use of the Confidential Information on his/her own behalf or on the behalf of a third party. Employee further agrees that any unauthorized use or disclosure of the Confidential Information, or other violation or threatened violation of this Agreement could cause irreparable damage to Company and that, therefore, Company shall be entitled to an injunction prohibiting Employee from any such disclosure, attempted disclosure, violation or threatened violation.

* * *

> Employee agrees that all Confidential Information is and shall remain the exclusive property of Company. Employee agrees to return to Company on or before Employee's termination of employment with Company, for any reason, all Company property, information and documents, … and Employee agrees that he will not retain any copies, duplicates, reproductions or excerpts thereof.

95.    Both Adam Seger and Brian Palmer have violated the restrictive provisions in Section 6 of their employment agreements.

96.    Both Adam Seger and Brian Palmer's employment agreements include the following Section 9 (titled "Non-Solicitation") that states, in relevant part:

> [D]uring the term of Employee's employment and in the event Employee ceases to be employed by Company for any reason, then, in that event, Employee covenants and agrees that, for a period of eighteen (18) months from the date of termination, he/she shall not: (a) solicit or contact any client or prospective client of the Company or Other Pure Entity Projects worked on by Employee during the twelve (12) months preceding his/her date of termination for the purpose of providing business or commercial real estate development services of the type rendered by the Company or Other Pure Entity; and (b) solicit any Employee of the Company to leave the employ of the Company.

97.    Both Adam Seger and Brian Palmer have violated the restrictive provisions in Section 9 of their employment agreements.

98.    In their June 26, 2025 resignation letters, both Adam Seger and Brian Palmer demanded to be provided ownership interests in certain projects, a benefit they claim must be provided to them under their employment agreements.

99.    Both Adam Seger and Brian Palmer's employment agreements include provisions (in Sections 2.1 and 2.2) that deny them the right to claim certain benefits under the agreements—including the benefits Adam Seger and Brian Palmer demand in their resignation letters—"if Employee terminates without good cause and/or violates restrictive provisions of the Employment Agreement."

100. Both Adam Seger and Brian Palmer's employment agreements include the following Section 18 (titled "Attorney Fees") that states: "If any party to this Agreement breaches any of the terms of this Agreement, then that party shall pay to the non-breaching party all of the non-breaching party's costs and expenses, including attorneys' fees, incurred by that party in enforcing the terms of this Agreement."

<u>**COUNT 1: DEFEND TRADE SECRETS ACT, 18 U.S.C. §§ 1831–1839**</u>
**(PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, AND BRIAN PALMER)**

101. The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

102. Pure Development, Inc. is the owner of trade secrets in the form of financial, business, and economic information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

103. By way of example, Pure Development, Inc.'s trade secrets include: confidential dashboards showing current and prospective business opportunities; histories of projects won and lost; the terms of negotiated agreements such as contractor agreements, leases, development agreements, and loans; development modeling showing confidential fee figures, projected gains, and formulas; confidential proposals to clients; internal strategy documents; commission and listing agreements with

brokers; purchase and sale agreements for land; third-party reports for which Pure Development, Inc. has paid, such as appraisals and environmental reports; design materials; employment information such as compensation structures and profit-sharing plans; internal financials; due diligence checklists; and templates for such documents as RFP responses.

104.    Pure Development, Inc. has taken reasonable measures to keep its trade secrets a secret—including most recently by seeking and obtaining orders from the trial court in the State Court Case that excluded such information from public access. Only Pure Development, Inc. employees are allowed access to such materials, which primarily are located on access-restricted company computer systems.

105.    The Defend Trade Secrets Act, at 18 U.S.C. § 1836, provides that the owner of a trade secret that is misappropriated may bring a civil action under the Act if the misappropriated trade secret is related to a service used in, or intended for use in, interstate commerce. Pure Development, Inc.'s trade secrets are related to services used in, or intended for use in, interstate commerce.

106.    The Defend Trade Secrets Act provides for (a) injunctive relief, (b) an award of damages for actual loss and for unjust enrichment, or in lieu of damages the imposition of a reasonable royalty, (c) in the case of willful and malicious misappropriation, exemplary damages in an amount not more than two times the amount of damages awarded and reasonable attorney's fees.

107. Defendants Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have willfully and maliciously misappropriated Pure Development, Inc. trade secrets.

108. As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

109. As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

**COUNT 2: INDIANA TRADE SECRETS ACT, IND. CODE §§ 24-2-3-1, et seq.**
**(PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER,**
**ADAM SEGER, AND BRIAN PALMER)**

110. The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

111. Pure Development, Inc. is the owner of trade secrets in the form of financial, business, and economic information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

112. By way of example, Pure Development, Inc.'s trade secrets include: confidential dashboards showing current and prospective business opportunities; histories of projects won and lost; the terms of negotiated agreements such as contractor

agreements, leases, development agreements, and loans; development modeling showing confidential fee figures, projected gains, and formulas; confidential proposals to clients; internal strategy documents; commission and listing agreements with brokers; purchase and sale agreements for land; third-party reports for which Pure Development has paid, such as appraisals and environmental reports; design materials; employment information such as compensation structures and profit-sharing plans; internal financials; due diligence checklists; and templates for such documents as RFP responses.

113.    Pure Development, Inc. has taken reasonable measures to keep its trade secrets secret—including most recently by seeking and obtaining orders from the trial court in the State Court Case that excluded such information from public access. Only Pure Development, Inc. employees are allowed access to such materials, which primarily are located on access-restricted company computer systems.

114.    Indiana's Uniform Trade Secrets Act, at Ind. Code §§ 24-2-3-1, et seq., provides that the owner of a trade secret that is misappropriated may bring an action for injunctive relief, for damages, and—in the case of willful and malicious misappropriation, for exemplary damages and reasonable attorneys' fees.

115.    Defendants Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have willfully and maliciously misappropriated Pure Development, Inc. trade secrets.

116.    As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

117.    As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

### COUNT 3: INDIANA CRIME VICTIMS RELIEF ACT (THEFT), IND. CODE §§ 34-24-3-1, 35-43-4-2 (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, AND BRIAN PALMER)

118.    The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

119.    By their actions, Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have knowingly or intentionally exerted unauthorized control over Pure Development, Inc. property with the intent to deprive Pure Development, Inc. of its value or use—all in violation of Indiana Code section 35-43-4-2.

120.    Pure Development, Inc. has suffered pecuniary losses as a result of those actions.

121.    Indiana Code section 34-24-3-1 provides that Pure Development, Inc. may bring a civil action for this conduct to recover damages, including but not limited to treble damages, the costs of the action, and its reasonable attorneys' fees.

**COUNT 4: INDIANA CRIME VICTIMS RELIEF ACT (CONVERSION),
IND. CODE §§ 34-24-3-1, 35-43-4-3
(PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER,
ADAM SEGER, AND BRIAN PALMER)**

122.    The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

123.    By their actions, Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have knowingly or intentionally exerted unauthorized control over Pure Development, Inc. property—all in violation of Indiana Code section 35-43-4-3.

124.    Pure Development, Inc. has suffered pecuniary losses as a result of those actions.

125.    Indiana Code section 34-24-3-1 provides that Pure Development, Inc. may bring a civil action for this conduct to recover damages, including but not limited to treble damages, the costs of the action, and its reasonable attorneys' fees.

**COUNT 5: INDIANA CRIME VICTIMS RELIEF ACT (COMPUTER TRESPASS),
IND. CODE §§ 34-24-3-1, 35-43-2-3
(PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC)**

126.    The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

127.    By its actions, Canopy 5, LLC knowingly or intentionally accessed a computer system, computer network, or some part of a computer system or computer network owned by Pure Development, Inc. without Pure Development, Inc.'s consent—all in violation of Indiana Code section 35-43-2-3.

128.    Pure Development, Inc. has suffered pecuniary losses as a result of those actions.

129.    Indiana Code section 34-24-3-1 provides that Pure Development, Inc. may bring a civil action for this conduct to recover damages, including but not limited to treble damages, the costs of the action, and its reasonable attorneys' fees.

### COUNT 6: INDIANA CRIME VICTIMS RELIEF ACT (TRESPASS), IND. CODE §§ 34-24-3-1, 35-43-2-2 (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC)

130.    The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

131.    By its actions, Canopy 5, LLC knowingly or intentionally interfered with Pure Development, Inc.'s possession or use of its property without Pure Development, Inc.'s consent—all in violation of Indiana Code section 35-43-2-2.

132.    Pure Development, Inc. has suffered pecuniary losses as a result of those actions.

133.    Indiana Code section 34-24-3-1 provides that Pure Development, Inc. may bring a civil action for this conduct to recover damages, including but not limited to treble damages, the costs of the action, and its reasonable attorneys' fees.

## COUNT 7: UNFAIR COMPETITION, 15 U.S.C. § 1125(a)
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, AND BRIAN PALMER)

134.    The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

135.    Defendants Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer—in connection with services used in interstate commerce—have made and continue to make false or misleading statements concerning the development projects that Canopy 5 has completed, its offices and related infrastructure, and its employee roster.

136.    They have made such statements in a manner likely to cause confusion, to cause mistake, or to deceive as to the sponsorship or approval of its services by other persons, such as the Pure Development, Inc. customers whose projects Canopy 5, Chris Seger, Adam Seger, and Brian Palmer falsely suggest were customers of Canopy 5. Their statements have been made in commercial advertising and promotional materials that misrepresent the nature of Canopy 5's services or commercial activities.

137.    As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

138.    As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## COUNT 8: COMMON LAW UNFAIR COMPETITION
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, AND BRIAN PALMER)

139. The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

140. Defendants Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have conducted and are conducting a raid on its competitor Pure Development, Inc., appropriating for themselves Pure Development, Inc.'s offices, assets, employees, confidential business information, customer contacts, reputation, and goodwill, with the design and malicious intent to destroy Pure Development, Inc.'s ability to compete.

141. Through their actions, defendants Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have derived, and continue to derive, an unfair competitive advantage by utilizing Pure Development, Inc.'s offices, assets, employees, confidential business information, customer contacts, reputation, and goodwill to operate their new business.

142. Through their actions, defendants Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have intended to cause, and have caused, Pure Development, Inc. to lose current and prospective business.

143. These acts constitute unfair competition under Indiana's common law.

144. As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

145.    As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## COUNT 9: UNJUST ENRICHMENT
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, AND BRIAN PALMER)

146.    The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

147.    Pure Development, Inc. has invested substantial time, resources, and money developing and growing its business, its goodwill, and its reputation.

148.    Defendants Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have engaged in unfair and improper conduct to launch their new enterprise off the back of Pure Development, Inc.'s reputation, goodwill, office space, infrastructure, and employees.

149.    Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have derived, and continue to derive, benefit from Pure Development, Inc. from their wrongful conduct. Their acts constitute unjust enrichment.

150.    It would be unjust for Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer to be permitted to profit from their wrongful conduct.

151.    As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

152.    As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

### COUNT 10: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, AND BRIAN PALMER – IEDC CONTRACTS)

153.    The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

154.    Pure Development, Inc. had a valid relationship with the IEDC as it relates to the development of the LEAP Lebanon Innovation District.

155.    Defendants Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer were aware of the existence of Pure Development, Inc.'s relationship with the IEDC as it relates to the development of the LEAP Lebanon Innovation District.

156.    Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer, without justification and through illegal conduct, have intentionally interfered with Pure Development, Inc.'s relationship with the IEDC as it relates to the development of the LEAP Lebanon Innovation District.

157.    As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

### COUNT 11: TORTIOUS INTERFERENCE WITH CONTRACTS
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC AND CHRIS SEGER – ADAM SEGER AND BRIAN PALMER CONTRACTS)

158.    The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

159.    Pure Development, Inc. has valid and enforceable employment agreements with Adam Seger and Brian Palmer.

160.    Defendants Canopy 5, LLC and Chris Seger knew of the existence of those employment agreements.

161.    Canopy 5 and Chris Seger intentionally, and without justification, induced Adam Seger and Brian Palmer to breach their employment agreements.

162.    As a result of Canopy 5, LLC and Chris Seger's conduct, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## COUNT 12: BREACH OF CONTRACT
### (PURE DEVELOPMENT, INC. vs. ADAM SEGER – EMPLOYMENT AGREEMENT)

163. The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

164. Adam Seger has a valid and enforceable employment agreement with Pure Development, Inc.

165. By his conduct, Adam Seger has breached his employment agreement with Pure Development, Inc.

166. As a result of Adam Seger's conduct, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

167. As a result of Adam Seger's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

## COUNT 13: BREACH OF CONTRACT
### (PURE DEVELOPMENT, INC. vs. BRIAN PALMER – EMPLOYMENT AGREEMENT)

168. The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

169. Brian Palmer has a valid and enforceable employment agreement with Pure Development, Inc.

170. By his conduct, Brian Palmer has breached his employment agreement with Pure Development, Inc.

171. As a result of Brian Palmer's conduct, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

172. As a result of Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

### COUNT 14: DECLARATORY JUDGMENT, 28 U.S.C. § 2201
### (PURE DEVELOPMENT, INC. AND DREW SANDERS vs. ADAM SEGER – EMPLOYMENT AGREEMENT)

173. The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

174. Adam Seger has a valid and enforceable employment agreement with Pure Development, Inc.

175. An actual controversy exists between Pure Development, Inc. and Drew Sanders, on one hand, and Adam Seger on the other as to Adam Seger's right to claim certain benefits described in Adam Seger's employment agreement and as asserted in Adam Seger's resignation letter.

176. For Adam Seger to obtain such benefits would require Sanders to cede ownership or profits in certain Pure projects.

177. Pure Development, Inc. and Drew Sanders seek to resolve this controversy and to determine the rights and obligations of the parties under Adam Seger's employment agreement.

## COUNT 15: DECLARATORY JUDGMENT, 28 U.S.C. § 2201
### (PURE DEVELOPMENT, INC. AND DREW SANDERS vs. BRIAN PALMER – EMPLOYMENT AGREEMENT)

178. The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

179. Brian Palmer has a valid and enforceable employment agreement with Pure Development, Inc.

180. An actual controversy exists between Pure Development, Inc. and Drew Sanders, on one hand, and Brian Palmer on the other as to Brian Palmer's right to claim certain benefits described in Brian Palmer's employment agreement and as asserted in Brian Palmer's resignation letter.

181. For Brian Palmer to obtain such benefits would require Sanders to cede ownership or profits in certain Pure projects.

182. Pure Development, Inc. and Drew Sanders seek to resolve this controversy and to determine the rights and obligations of the parties under Brian Palmer's employment agreement.

## COUNT 16: TORTIOUS INTERFERENCE WITH EMPLOYMENT RELATIONSHIPS (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, AND BRIAN PALMER – PURE DEVELOPMENT EMPLOYEES)

183. The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

184. Pure Development, Inc. has valid and enforceable employment relationships with its employees, including Jesse Sadowy, Jenna Barnett, Michael Watts, Jon Carpenter, Justin Lawhorn, Jody Sharp, Kyle Miller, Tyler Neese, Brian Tominov, Dom Cate, Jake Leatherman, Chase Willis, Katie Harp, and Kendra Brooks.

185. Defendants Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer knew of the existence of those employment relationships with those employees.

186. Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer intentionally, and without justification, induced those employees to breach the duties those employees owe to Pure Development, Inc., including the duty of loyalty.

187. As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's conduct, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## COUNT 17: DUTY OF LOYALTY
### (PURE DEVELOPMENT, INC. vs. CHRIS SEGER, ADAM SEGER, AND BRIAN PALMER)

188. The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

189. As employees of Pure Development, Inc., Chris Seger, Adam Seger, and Brian Palmer owed duties of loyalty to Pure Development, Inc.

190. By their conduct, Chris Seger, Adam Seger, and Brian Palmer breached their duties of loyalty.

191. As a result of Chris Seger, Adam Seger, and Brian Palmer's conduct, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## COUNT 18: FIDUCIARY DUTY
### (DREW SANDERS vs. CHRIS SEGER)

192. The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

193. By virtue of their relationship as 50-50 owners of the closely held company Pure Holdings, Inc., which in turn is the 100-percent owner of Pure Development, Inc., Chris Seger owed a fiduciary duty to Drew Sanders.

194. By his conduct, Chris Seger has breached his fiduciary duties to Drew Sanders.

195.    As a result of Chris Seger's conduct, Drew Sanders has suffered, and will continue to suffer, damages in an amount to be proven at trial.

196.    As a result of Chris Seger's conduct, Drew Sanders has suffered, and will continue to suffer, irreparable harm for which he has no adequate remedy at law.

## COUNT 19: CONSTRUCTIVE FRAUD
### (PURE DEVELOPMENT, INC. AND DREW SANDERS vs. CHRIS SEGER, ADAM SEGER, AND MAGIC TRIC I, LLC – RENO (NEST) OPPORTUNITY)

197.    The allegations in Paragraphs 1 through 100 are incorporated by reference herein, and specifically the allegations in Paragraphs 26 through 46.

198.    Chris Seger owed a duty to be honest in his dealings with Drew Sanders and Pure Development, Inc.

199.    Chris Seger violated that duty by failing—while under a duty to speak—to disclose the material facts concerning his plan to usurp the Reno (Nest) opportunity for himself and his actions in furtherance of that plan.

200.    Drew Sanders and Pure Development, Inc. relied on Chris Seger's silence, wrongly believing that Pure Development, Inc. was pursuing that opportunity and that Sanders and Chris Seger would benefit jointly from that pursuit.

201.    By his actions, Chris Seger gained an advantage over Drew Sanders and Pure Development, Inc.

202.    By their actions, Adam Seger and Magic TRIC I, LLC engaged in a conspiracy with Chris Seger to implement his fraudulent scheme and are equally liable for Chris Seger's actions.

203.    As a result of Chris Seger, Adam Seger, and Magic TRIC I, LLC's conduct, Drew Sanders and Pure Development, Inc. have suffered, and will continue to suffer, damages in an amount to be proven at trial.

204.    As a result of Chris Seger, Adam Seger, and Magic TRIC I, LLC's conduct, Drew Sanders and Pure Development, Inc. have suffered, and will continue to suffer, irreparable harm for which they have no adequate remedy at law.

**COUNT 20: CRIME VICTIMS RELIEF ACT (FRAUD),**
**IND. CODE §§ 34-24-3-1, 35-43-5-4**
**(PURE DEVELOPMENT, INC. AND DREW SANDERS vs. CHRIS SEGER**
**– RENO (NEST) OPPORTUNITY)**

205.    The allegations in Paragraphs 1 through 100 are incorporated by reference herein, and specifically the allegations in Paragraphs 26 through 46.

206.    By his actions, Chris Seger, with the intent to obtain property to which he was not entitled, knowingly or intentionally made false or misleading statements or created a false impression in another person—all in violation of Indiana Code section 35-43-5-4.

207.    By his actions, Chris Seger, with the intent to obtain property to which he was not entitled, altered or caused the alteration of a document or instrument—all in violation of Indiana Code section 35-43-5-4.

208.    By his actions, Chris Seger knowingly or intentionally engaged in a scheme or artifice to commit the aforementioned acts—all in violation of Indiana Code section 35-43-4-4.

209.    Pure Development, Inc. and Drew Sanders have suffered pecuniary losses as a result of those actions.

210.    Indiana Code section 34-24-3-1 provides that Pure Development, Inc. and Drew Sanders may bring a civil action for this conduct to recover damages, including but not limited to treble damages, the costs of the action, and its reasonable attorneys' fees.

**COUNT 21: CRIME VICTIMS RELIEF ACT (FRAUD),**
**IND. CODE §§ 34-24-3-1, 35-43-5-4**
**(PURE DEVELOPMENT, INC. AND DREW SANDERS vs. ADAM SEGER**
**AND MAGIC TRIC I, LLC– RENO (NEST) OPPORTUNITY)**

211.    The allegations in Paragraphs 1 through 100 are incorporated by reference herein, and specifically the allegations in Paragraphs 26 through 46.

212.    By their actions with respect to the Reno (Nest) Opportunity, Adam Seger and Magic TRIC I, LLC knowingly or intentionally engaged in a scheme or artifice to commit fraud, as that offense is described in Indiana Code section 35-43-5-4.

213.    Pure Development, Inc. and Drew Sanders have suffered pecuniary losses as a result of those actions.

214.    Indiana Code section 34-24-3-1 provides that Pure Development, Inc. and Drew Sanders may bring a civil action for this conduct to recover damages, including

but not limited to treble damages, the costs of the action, and its reasonable attorneys' fees.

### COUNT 22: DECLARATORY JUDGMENT, 28 U.S.C. § 2201
### (PURE HOLDINGS, INC. vs. CHRIS SEGER – INDEMNITY)

215.    The allegations in Paragraphs 1 through 100 are incorporated by reference herein.

216.    An actual controversy exists between Pure Holdings, Inc. and Chris Seger as to Chris Seger's claim for indemnification under Pure Holdings, Inc.'s Articles of Incorporation.

217.    Pure Holdings, Inc. seeks to resolve that controversy and to determine the rights and obligations of the parties under its Articles of Incorporation.

**WHEREFORE,** plaintiffs Pure Development, Inc., Pure Holdings, Inc., and Drew Sanders pray for judgment against defendants Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, and Magic TRIC I, LLC (together, "Defendants") as follows:

1.    That Defendants and their agents, employees, attorneys, successors, and assigns—and any and all persons acting in concert or participating with them—be preliminarily and permanently enjoined and restrained from directly or indirectly engaging in any business competitive with Pure Development, Inc. for an equitable period of time to account for Defendants' wrongful conduct.

2.   That Defendants, and any and all persons controlled by or acting in concert with Defendants, be ordered to cease using any real or personal property of Pure Development, Inc. and to return all such property to Pure Development, Inc.

3.   That Defendants be required to disgorge all profits and other ill-gotten gains from their wrongful conduct.

4.   That Chris Seger, Adam Seger, and Brian Palmer be required to disgorge all salary or other benefits received from Pure Development, Inc. while engaged in their wrongful conduct.

5.   That Defendants be required to account to Pure Development, Inc., and to reimburse Pure Development, Inc., for all operational costs Pure Development, Inc. has incurred while Defendants have utilized Pure Development, Inc.'s assets, resources, and employees for their own business interests.

6.   That plaintiffs be awarded whatever other equitable relief may be appropriate to redress Defendants' conduct.

7.   That plaintiffs be awarded all compensatory, exemplary, and statutory damages allowed by law.

8.   That plaintiffs be awarded punitive damages for defendants' willful, wantonly, oppressive, and malicious conduct.

9.    That plaintiffs be awarded their reasonable attorneys' fees.

10.    That neither Adam Seger nor Brian Palmer is entitled to any further benefits under their employment agreements or otherwise.

11.    That Chris Seger is not entitled to the indemnification he demands.

12.    That plaintiffs be awarded all recoverable costs.

13.    That plaintiffs be awarded such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ B. Too Keller
B. Too Keller
Keller Macaluso LLC
760 3rd Avenue SW, Suite 210
Carmel, IN 46032
317-660-3402
too@kellermacaluso.com

Counsel for Pure Holdings, Inc.
and Pure Development, Inc.

/s/ Michael R. Limrick
Andrew W. Hull
Michael R. Limrick
Christopher D. Wagner
Megan M. Riley
Hoover Hull Turner LLP
111 Monument Circle, Suite 4400
Indianapolis, IN 46204
317-822-4400
awhull@hooverhullturner.com
mlimrick@hooverhullturner.com
cwagner@hooverhullturner.com
mriley@hooverhullturner.com

Counsel for Drew Sanders