

Economic
Development
Corporation

June 10, 2025

*Via Email and First Class U.S. Mail*

Pure Development, Inc.
Attention: Chris Seger
1351 Roosevelt Avenue, Suite 100
Indianapolis, IN 46202
cseger@puredevelopment.com

Re:     Request for Assignment of Agreements Between Indiana Economic Development Corporation ("**IEDC**") and Pure Development, Inc. ("**Pure Development**"); Request for Assignment of Subcontracts; Termination Notice

Dear  Mr. Seger:

As you are aware, IEDC is a party to four contracts between and among IEDC and Pure Development, which are attached hereto and collectively referred to as the "**Agreements**." In connection with the Agreements, Pure Development entered into various subcontractor agreements, vendor agreements, consulting agreements or other agreements (collectively, the "**Subcontracts**") with subcontractors and/or vendors to provide labor, materials, equipment, or services of any kind (professional and non-professional) involving a portion of the Services (as defined in the Agreements).

Pure Development has been dissolved pursuant to recent court order. *Chris Seger v. Drew Sanders*, No. 48C06-2411-PL-000156, slip op. at 47 (Madison Cir. Ct. Commercial Docket, Ind. May 12, 2025). The dissolution has been acknowledged by Pure Development. As a result of the dissolution, IEDC hereby demands that Pure Development duly assign all of the Agreements and all of the Subcontracts to Canopy 5, LLC (a "**Related Entity**" as defined in the Agreements) no later than June 13, 2025 (collectively, the "**Assignments**").

In the event that Pure Development fails to complete the Assignments as directed, IEDC will simply terminate the Agreements pursuant to Section 8(A) of each of the Agreements (as referenced below) and have the Subcontracts automatically assigned to IEDC pursuant to Section 18(B)(i) of each of the Agreements.

Accordingly, please be advised that, without waiving any of its rights under the Agreements, at law, or in equity, this letter serves as a termination notice pursuant to Section 8(A) of each of the

Agreements. If the above-referenced Assignments are not completed to IEDC's sole satisfaction then the Agreements shall terminate effective July 10, 2025 and the Subcontracts shall thereafter immediately and automatically be assigned to IEDC. IEDC reserves the right, in its sole discretion, to withdraw this termination notice in the event that the above-referenced Assignments are timely executed and delivered to the IEDC.

Thank you for your attention to this matter. Please contact the IEDC's legal counsel, Scott Alexander (copied here), with any questions and to discuss next steps.

Sincerely,

Jeff Blade, Executive Director
Indiana Economic Development Corporation

Cc:     Scott Alexander (317) 713-3521
salexander@taftlaw.com

# EXECUTIVE DOCUMENT SUMMARY

State Form 41221 (R10/4-06)

Instructions for completing the EDS and the Contract process.

1. Please read the guidelines on the back of this form.
2. Please type all information.
3. Check all boxes that apply.
4. For amendments / renewals, attach original contract.
5. Attach additional pages if necessary.

| **AGENCY INFORMATION** | |
|---|---|
| 14. Name of agency: Economic Development Corp | 15. Requisition Number: 0000011219 |

16. Address: IN Economic Development Corp
Central Office
1 N CAPITOL AVE STE 700
INDIANAPOLIS, IN 46204-2040

**AGENCY CONTACT INFORMATION**

| 17. Name: Glenda Reitz-May | 18. Telephone #: 317.447.2617 |
|---|---|
| 19. E-mail address: greitz@iedc.in.gov | |

**COURIER INFORMATION**

| 20. Name: Glenda Reitz | 21. Telephone #: 317.447.2617 |
|---|---|
| 22. E-mail address: greitz@iedc.in.gov | |

| 1. EDS Number: PSA-5-PSA-1023 | 2. Date prepared: 4/22.2025 |
|---|---|

## 3. CONTRACTS & LEASES

- [X] Professional/Personal Services
- [ ] Grant
- [ ] Lease
- [ ] Attorney
- [ ] MOU
- [ ] QPA _____
- [ ] Contract for procured Services
- [ ] Maintenance
- [ ] License Agreement
- [ ] Amendment# _____
- [ ] Renewal # _____
- [ ] Other _____

## FISCAL INFORMATION

| 4. Account Number: 78410-1000.538010 | 5. Account Name: DEAL CLOSING FUND |
|---|---|
| 6. Total amount this actio $3,226,383.00 | 7. New contract total: $3,226,383.00 |
| 8. Revenue generated this action: $00.00 | 9. Revenue generated total contract: $0.00 |

10. New total amount for each fiscal year :

| Year | 2025 | $3,226,383.00 |
|---|---|---|
| Year | | |
| Year | | $ |
| Year | | $ |

## TIME PERIOD COVERED IN THIS EDS

| 11. From (month, day, year): 4/1/2025 | 12. To ( month, day, year ): 3/31/2027 |
|---|---|

13. Method of source selection: [X] Negotiated
- [ ] Bid/Quotation
- [ ] Emergency
- [ ] Special Procurement
- [ ] RFP# _____
- [ ] Other (specify) _____

**VENDOR INFORMATION**

23 Vendor ID # 00000401445

| 24. Name: Pure Development, Inc. | 25. Telephone #: N/A |
|---|---|

26. Address: 815 E. 65th Street
Indianapolis, IN
462206

27. E-mail address: cseger@puredevelopment.com

28. Is the vendor registered with the Secretary of State? (Out of State Corporations, must be registered) [X] Yes [ ] No

| 29. Primary Vendor: M/WBE/IN-Vetera | | 30. Primary Vendor Percentages |
|---|---|---|
| Minority: [ ] Yes [X] No | | 100.0 % |
| Women: [ ] Yes [X] No | | |
| IN-Veteran [ ] Yes [X] No | | |

| 31. Sub Vendor: M/WBE/IN-Veteran | 32. If yes, list the %: |
|---|---|
| Minority: [ ] Yes [X] No | Minority: _____ % |
| Women: [ ] Yes [X] No | Women: _____ % |
| IN-Veteran [ ] Yes [X] No | IN- Veteran _____ % |

| 33. Is there Renewal Language in [ ] Yes [X] No | 34. Is there a "Termination for Convenience" clause in the document? [X] Yes [ ] No |
|---|---|

35. Will the attached document involve data processing or telecommunications system _____ Yes: IOT or Delegate has signed off on contract

36. Statutory Authority (Cite applicable Indiana or Federal Codes): IC 5-28-14

37. Description of work and justification for spending money. (Please give a brief description of the scope of work included in this agreement.)

Contractor shall assist the IEDC to fully develop property, to prepare it for sale as a state owned, commercially viable, shovel ready innovation district to be used for research and development, advanced manufacturing, technology related, life and bio sciences uses. The IEDC is relying on Pure, based on its commercial development experience to act in its professional capacity as an owner's representative and to make decisions that both support the marketability and profitability of the property for the state.

38. Justification of vendor selection and determination of price reasonableness: We have used this company in the past for our advertising and are very pleased with their service.

Project # 427172

39. If this contract is submitted late, please explain why: (Required if more than 30 days late.)

| 40. Agency fiscal officer or representative appro *Kyle Kovert (May 6, 2025 07:05 EDT)* | 41. Date Approved | 42. Budget agency approval *Jonathan Eccles (May 7, 2025 14:25 EDT)* | 43. Date Approved |
|---|---|---|---|
| 44. Attorney General's Office approval | 45. Date Approved | 46. Agency representative receiving from AG | 47. Date Approved |

114478-000

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

# GENERAL SERVICES AGREEMENT

This **GENERAL SERVICES AGREEMENT** (this "**Agreement**") is made and entered into, by and between the **INDIANA ECONOMIC DEVELOPMENT CORPORATION** (the "**IEDC**") and **PURE DEVELOPMENT, INC.** (the "**Contractor**").

In consideration of the mutual undertakings and covenants set forth herein, the parties hereby agree as follows:

## 1. PURPOSE OF AGREEMENT AND THE CONTRACT.

The purpose of this Agreement is for the Contractor to provide the services (collectively, the "**Services**") set forth on **Exhibit A** attached hereto and incorporated herein. Contractor shall cause to be furnished and delivered all labor, equipment, materials, and services and cause to be performed all of the work necessary or incidentally required to provide and complete the Services in a proper and timely manner, consistent with all applicable industry standards. The Contract Documents consist of this Agreement, other documents listed in this Agreement, and Modifications issued after execution of this Agreement. A "**Modification**" is (1) a written amendment to the Contract signed by Contractor, the IEDC, and the State Budget Agency ("**SBA**"); or, (2) a written order for a minor, no-cost change in the Services issued by the IEDC. The Contract Documents form the "**Contract**" between IEDC and Contractor, and the Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations, or agreements, either written or oral. The Contract may only be amended or modified by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind between any persons or entities other than the IEDC and the Contractor.

## 2. TERM.

(A) This Agreement shall commence on April 1, 2025 ("**Effective Date**") and shall remain in effect through March 31, 2027 or unless earlier terminated in accordance with the provisions of this Agreement ("**Term**"); provided, however, in the event Contractor has not completed the Services by the expiration of the Term the IEDC, in its sole and exclusive discretion, may elect to unilaterally extend the Term for such period of time that it deems reasonable for Contractor to complete the Services. In no event shall payments be made for work done or services performed after the end of the Term.

(B) Any provisions which, by their nature, are intended to apply after termination of this Agreement shall survive termination of this Agreement, including, but not limited to, provisions concerning indemnification, confidentiality of information, ownership of documents and materials, payment of amounts owed for work properly performed and owed under this Agreement, assignment of subcontracts or other agreements, limitations of liability, and intellectual property clauses.

## 3. CONSIDERATION.

(A) All services performed by the Contractor under this Agreement must be authorized by the IEDC and consistent with the description set forth on **Exhibit A**, attached hereto and incorporated herein. IEDC shall be responsible for the third-party costs associated with

170740299v1

land sales and acquisitions, design, consulting, legal fees, due diligence, zoning, entitlements, permitting, utility agreements, construction, including, without limitation, utility construction, roadway construction, and all other related construction, and project specific request for proposal pursuits (collectively, "**Third-Party Costs**"). Third-Party Costs will be itemized by Contractor and submitted to IEDC for approval prior to beginning any work item. The total of the Third-Party Costs under this Agreement shall not exceed the sum of $3,226,383 (the "**Guaranteed Maximum Price**" or "**GMP**") subject to adjustment for Modifications as provided for in this Agreement. Total remuneration under this Agreement shall not exceed: $3,226,383.

(B)     For the Services properly completed, the Contractor shall be paid the fees set forth in the "Fee Schedule" on **Exhibit A** attached hereto and incorporated herein.

(C)     All work and/or services provided by the Contractor under this Agreement must be performed to the IEDC's reasonable satisfaction, which satisfaction shall be determined at the reasonable discretion of the IEDC, in accordance with all applicable federal, state, local laws, ordinances, rules, and regulations, and in conformance with established industry standards. The IEDC shall not be required to pay for work and services found to be unsatisfactory (based on the standards set forth in this Section), not authorized by or in accordance with the terms of this Agreement, performed in violation of federal, state, or local laws, and work and services which are defective, fail to comply with the Contract Documents, or otherwise not in conformance with established industry standards.

## 4.     PAYMENTS.

(A)     The Contractor shall submit monthly invoices for payment in connection with the Services. Such invoices shall comply with the requirements of this Section. The Contractor shall submit with each invoice a progress report summarizing the Services performed to date with a schedule of values identifying the percentage of completion with respect to each discrete item of the Services. The Contractor shall submit invoices to the IEDC by email at processing@iedc.in.gov and dclerget@iedc.in.gov.

(B)     All payment obligations shall be made in arrears in accordance with Indiana law and state fiscal policies and procedures, and as required by Indiana Code § 4-13-2-14.8. Notwithstanding any other law, rule, or custom, a person or company whom has a contract with the State of Indiana or submits invoices to the state for payment shall authorize, in writing, the direct deposit by electronic funds transfer of all payments by the state to the person or company. The written authorization must designate a financial institution and an account number to which all payments are to be credited. Any exception to this requirement must be approved by the IEDC and the State of Indiana. For forms and additional information, see the Auditor of State's website at *www.in.gov/auditor/forms*.

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

(C)    No travel and other expenditures made by the Contractor will be reimbursed by the IEDC unless provided for in the Fee Schedule. Allowable expenditures made by the Contractor for travel will be reimbursed at the current rate paid by the IEDC and in accordance with the State Travel Policies and Guidelines as specified in the current Financial Management Circular, available at *http://www.in.gov/idoa/2459.htm*. All travel expenses must be approved by the IEDC in writing in advance. Out-of-state travel requests must be reviewed by the IEDC for availability of funds and for appropriateness per Financial Management Circular guidelines.

(D)    The IEDC may withhold payment, in whole or in part, to the extent reasonably necessary to protect the IEDC from loss due to, arising from, or related to: 1) defective work, including design and construction, not remedied; 2) third party claims filed unless security acceptable to the IEDC is provided; or 3) the failure of Contractor to make payments properly to subcontractors, vendors or service providers for services, labor, materials or equipment.

**5.    CONFIDENTIALITY OF INFORMATION.**

(A)    The Contractor understands and agrees that data, materials, and information disclosed to the Contractor may contain confidential and protected data. Therefore, the Contractor promises and assures that data, material, and information disclosed to the Contractor by the IEDC for the purpose of this Agreement, and specifically identified as confidential information will not be disclosed to others or discussed with other parties without the prior written consent of the IEDC, provided, however, that for purposes of this Section (A) the Contractor may disclose confidential information to its employees as necessary to support Contractor's performance of the Services and to consultants, contractors, and advisors so long as such consultants, contractors, and advisors are bound by obligations to maintain the confidentiality of such confidential information.

(B)    The parties acknowledge that the Services may require or allow access to data, materials, and information containing Social Security numbers or other personal information maintained by the IEDC in its computer system or other records. In addition to the covenant made above in this Section, and pursuant to 10 IAC 5-3-1(4), the Contractor and the IEDC agree to comply with the provisions of Indiana Code § 4-1-10 and Indiana Code § 4-1-11. If any Social Security number(s) or personal information (as defined in Indiana Code § 4-1-11-3) is/are disclosed by the Contractor, the Contractor agrees to pay the cost of the notice of disclosure of a breach of the security of the system, in addition to any other claims and expenses for which it is liable under the terms of this Agreement.

**6.    USE OF THE IEDC NAME.**

The IEDC has not granted any rights to use its name, trademark, intellectual property, or logos. The Contractor agrees that it will not use the name or intellectual property, including, but not limited to, IEDC trademarks or logos, in any manner, including commercial advertising or as a business reference without the prior written consent of the IEDC. In all cases in which the IEDC's participation will be referenced, the IEDC shall have the right of review and approval of the use, disclosure, and the finished product prior to its publication. All such requests shall be made in writing and delivered to the IEDC for approval at its sole discretion.

## 7.    GOVERNING LAW.

(A)    This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Indiana without regard to principles of choice of law.  Suit, if any, must be brought in the State of Indiana and the venue for any court action shall be in the Superior Court of Marion County, Indiana.

(B)    If any section, paragraph, term, condition, or provision of this Agreement is found, by a court of competent jurisdiction, to be invalid or unenforceable, or if any paragraph, term, condition, or provision is found to violate or contravene the laws of the State of Indiana or applicable federal law then the section, paragraph, term, condition, or provision so found will be deem severed from this Agreement, but all other sections, paragraphs, terms, conditions, and provisions will remain in full force and effect.

(C)    The Contractor understands that this Agreement is a public record subject to request pursuant to Indiana Code § 5-14-3 and its exemptions.  Use by the public of the information contained in this Agreement shall not be considered an act of the IEDC or the State.

## 8.    TERMINATION & FUNDING CANCELLATION.

(A)    This Agreement may be terminated by the IEDC at any time, for any reason, with or without cause, if the IEDC determines that such termination is in its best interest. Termination of services shall be effected by delivery to the Contractor of a termination notice at least thirty (30) days prior to the termination effective date, specifying the extent to which performance of services under such termination becomes effective.   The Contractor shall be compensated for services properly rendered prior to the effective date of termination and, subject to offset for actual damages and/or costs incurred by the IEDC due to or arising from Contractor's breach of this Agreement.  The IEDC will not be liable for services performed after the effective date of termination.  The Contractor shall be compensated for services herein provided, but in no case shall any price increase be allowed on individual line items if canceled in whole or in part prior to the original termination date.

(B)    When the Director of the State Budget Agency makes a written determination that funds are not appropriated or otherwise available to support continuation of performance of this

Agreement, the Contractor shall be notified and this Agreement shall be cancelled. A determination by the Budget Director that funds are not appropriated or otherwise available to support continuation of performance shall be final and conclusive. Contractor shall be paid for all services performed prior to the date of cancellation.

## 9.     PROGRESS REPORTS.

The Contractor shall submit monthly written progress reports to the IEDC. The progress reports shall serve the purpose of assuring the IEDC that work is progressing in a timely manner, and that completion can be reasonably assured on the scheduled date. The Contractor shall submit progress reports to the IEDC by email at reports@iedc.in.gov and dclerget@iedc.in.gov.

## 10.     ACCESS TO RECORDS & AUDITS.

(A)     The Contractor and its subcontractors, if any, shall maintain all books, documents, papers, accounting records, and other evidence pertaining to all costs incurred under this Agreement. The Contractor shall make such materials available at its respective office at all reasonable times during this Agreement, and for three (3) years from the date of final payment under this Agreement, for inspection by the IEDC or by any other authorized representative of the State. Copies thereof shall be furnished at no cost to the IEDC or by any other authorized representative of state government if requested.

(B)     The Contractor acknowledges that it may be required to submit to an audit of funds paid through this Agreement. Any such audit shall be conducted in accordance with Indiana Code § 5-11-1 *et seq.* and any audit guidelines specified by the IEDC.

## 11.     THE CONTRACTOR'S SERVICES.

(A)     The Contractor recognizes that the Services are vital to the IEDC and must be continued without interruption and that, upon the expiration of this Agreement, a successor, either the IEDC or another contractor, may continue them. The Contractor agrees to use its best efforts and cooperation to effect an orderly and efficient transition to a successor to provide the services contemplated hereby. This Agreement shall be deemed to be substantially performed only when fully performed according to its terms and conditions and any written modifications thereof.

(B)     The Contractor shall not commence any additional services or change the scope of services unless and until authorized in writing by the IEDC and the SBA through a Modification to the Contract as set forth in Section 1 of this Agreement. No claim for additional compensation or any change to the Fee Schedule or Third-Party Costs shall be made unless and until authorized in writing by the IEDC and SBA as provided for in this paragraph. This Agreement may only be amended, supplemented or modified by a written document executed in the same manner as this Agreement.

(C)     The Contractor shall execute its responsibilities by following and applying at all times the highest professional and technical guidelines and standards. The Contractor represents that it has or shall obtain at its own expense all personnel, materials, and equipment required to perform the services under this Agreement. All of the work performed hereunder shall be performed by the Contractor or under its supervision. The Contractor warrants that all personnel assigned to perform the Services or other consultants or subcontractors engaged by the Contractor to perform the Services are fully qualified, licensed and authorized to perform such services under state and local laws. If the IEDC becomes dissatisfied with the work product of, or the working relationship with, any individuals assigned to work under this Agreement, the IEDC may request in writing the replacement of any or all such individuals, and the Contractor shall grant such request.

(D)     The IEDC shall, at all reasonable times, have the right to inspect the work, services or performance of the Contractor. The Contractor shall furnish all reasonable aid and assistance required by the IEDC for proper examination of the work or services. Such inspection shall not relieve the Contractor of any obligation to perform said services in accordance with the law or with this Agreement.

(E)     Contractor shall be responsible to the IEDC for acts and omissions of the Contractor's employees and those subcontractors, vendors, consultants, and other persons or entities who Contractor has contracted directly with and who are performing portions of the Services for, or on behalf of, the Contractor.

(F)     Contractor shall be responsible for causing those subcontractors, vendors, consultants, and other persons or entities who Contractor has contracted directly with, and who are performing portions of the Services, to comply with any and all applicable warranty requirements for the Services performed that may be required by the applicable municipality or authority having jurisdiction, including, without limitation, warranty requirements that may require the correction of defective work.

## 12.     OWNERSHIP OF DOCUMENTS & MATERIALS.

(A)     All documents, records, programs, applications, data, algorithms, film, tape, articles, memoranda, and other materials (the "**Materials**") not developed or licensed by the Contractor prior to execution of this Contract, but specifically developed pursuant to or in connection with this Contract shall be considered "work for hire" and the Contractor hereby transfers and assigns any ownership claims to the IEDC so that all Materials will be the property of the IEDC. If ownership interest in the Materials cannot be assigned to the IEDC, the Contractor grants the IEDC a non-exclusive, non-cancelable, perpetual, worldwide royalty-free license to use the Materials and to use, modify, copy and create derivative works of the Materials.

(B)     Use of these materials, other than as necessary for the performance of this Agreement by the Contractor, without the prior written consent of the IEDC, is prohibited. The Contractor shall take such action as is necessary under law to preserve the IEDC's rights in and to the work product or intellectual property while such property is within the control and/or custody of the Contractor. During the performance of this Agreement, the Contractor shall be responsible for any loss of or damage to these materials developed for or supplied by the IEDC and used to develop or assist in the services provided while the materials are in the possession of the Contractor. Any loss or damage thereto shall be restored at the Contractor's expense. The Contractor shall provide the IEDC full, immediate, and unrestricted access to the work product during the term of this Agreement.

## 13.     COMPLIANCE WITH LAWS.

(A)     The Contractor agrees to comply with all applicable federal, state and local laws, rules, regulations and ordinances, and all provisions required thereby to be included herein are hereby incorporated by reference.  The enactment or modification of any applicable state or federal statute or the promulgation of regulations thereunder after execution of this Agreement shall be reviewed by the IEDC and the Contractor to determine whether the provisions of this Agreement require formal modification.

(B)     The Contractor and its agents shall abide by all ethical requirements that apply to persons who have a business relationship with the State of Indiana, as set forth in Indiana Code § 4-2-6, Indiana Code § 4-2-7, the regulations promulgated thereunder, and Executive Order 04-08, dated April 27, 2004.  If the Contractor is not familiar with these ethical requirements, the Contractor should refer any questions to the Indiana State Ethics Commission, or visit the website of the Indiana Inspector General at *http://www.in.gov/ig/*. If the Contractor or its agents violate any applicable ethical standards, the IEDC may, in its sole discretion, terminate this Agreement immediately upon notice to Contractor.  In addition, the Contractor may be subject to penalties under Indiana Code § 4-2-6, Indiana Code § 4-2-7, Indiana Code § 35-44.1-1-4 and under any other applicable laws.

(C)     The Contractor certifies by entering into this Agreement that neither it nor its principal(s) is presently in arrears in payment of its taxes, permit fees or other statutory, regulatory or judicially required payments to the State of Indiana or to the IEDC.  Further, the Contractor agrees that any payments in arrears and currently due to the State of Indiana or to the IEDC may be withheld from payments due to the Contractor.  Additionally, further work or payments may be withheld, delayed, or denied and/or this Agreement suspended until the Contractor is current in any payments set forth above and has submitted proof of such payment to the IEDC.

(D)     The Contractor warrants that it has no current or outstanding criminal (including pending), civil, or enforcement actions initiated by the State of Indiana and agrees that it will immediately notify the IEDC of any such actions.  During the term of such actions, the

Contractor agrees that the IEDC may delay, withhold, or deny work under any supplement, amendment, change order, or other contractual device issued pursuant to this Agreement.

(E) If a valid dispute exists as to the Contractor's liability or guilt in any action initiated by the IEDC or the State of Indiana or its agencies, and the IEDC decides to delay, withhold, or deny work to Contractor, Contractor may request that it be allowed to continue, or receive work, without delay. Absent a decision by the IEDC, or a court order or separate order by the State of Indiana or its other agencies, to delay, withhold, or deny work to Contractor, the Contractor shall continue to perform the Services without delay regardless of any action initiated by the IEDC, the State of Indiana or its agencies.

(F) Any payments that the IEDC may delay, withhold, deny, or apply under this Paragraph 13 shall not be subject to penalty or interest under Indiana Code § 5-17-5.

(G) The Contractor warrants that the Contractor and its subcontractors, if any, shall obtain and maintain all required permits, licenses, and approvals, and shall comply with all health, safety, and environmental statutes, rules, or regulations applicable in connection with the services provided under this Agreement. Failure to do so is a material breach of this Agreement and grounds for immediate termination of this Agreement and denial of further work with the IEDC. The IEDC shall not be required to reimburse the Contractor for any services performed when Contractor or its employees or subcontractors were not or are not in compliance with such applicable standards, laws, rules or regulations. If licensure, certification or accreditation expires or is revoked, Contractor shall notify the IEDC immediately, and the IEDC, at its option, may immediately terminate this Agreement.

(H) The Contractor affirms that, if it is an entity described in Title 23 of the Indiana Code, it is properly registered and owes no outstanding reports to the Indiana Secretary of State.

**14. COMPLIANCE WITH TELEPHONE SOLICITATIONS ACT.**

As required by Indiana Code § 5-22-3-7:

(A) The Contractor and any principals of the Contractor certify that:

(1) The Contractor, except for de minimis and nonsystematic violations, has not violated the terms of:

(a) Indiana Code § 24-4.7 [Telephone Solicitation of Consumers];

(b) Indiana Code § 24-5-12 [Telephone Solicitations]; or

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

(c)     Indiana Code § 24-5-14 [Regulation of Automatic Dialing Machines] in the previous three hundred sixty-five (365) days, even if Indiana Code § 24-4.7 is preempted by federal law; and

(2)     The Contractor will not violate the terms of Indiana Code § 24-4.7 for the duration of this Agreement, even if Indiana Code § 24-4.7 is preempted by federal law.

(B)     The Contractor and any principals of the Contractor certify that an affiliate or principal of the Contractor and any agent acting on behalf of the Contractor or on behalf of an affiliate or principal of the Contractor:

(1)     Except for de minimis and nonsystematic violations, has not violated the terms of Indiana Code § 24-4.7 in the previous three hundred sixty-five (365) days, even if Indiana Code § 24-4.7 is preempted by federal law; and

(2)     Will not violate the terms of Indiana Code § 24-4.7 for the duration of this Agreement, even if Indiana Code § 24-4.7 is preempted by federal law.

## 15.    DRUG-FREE WORKPLACE CERTIFICATION.

As required by Executive Order No. 90-5 dated April 12, 1990, issued by the Governor of Indiana, the Contractor hereby covenants and agrees to make a good faith effort to provide and maintain a drug-free workplace. The Contractor will give written notice to the IEDC within ten (10) days after receiving actual notice that the Contractor, or an employee of the Contractor in the State of Indiana, has been convicted of a criminal drug violation occurring in the workplace. False certification or violation of this certification may result in sanctions including, but not limited to, suspension of contract payments, termination of this Agreement and/or debarment of contracting opportunities with the State for up to three (3) years.

In addition to the provisions of the above paragraph, the Contractor certifies and agrees that it will provide a drug-free workplace by:

(A)     Publishing and providing to all of its employees a statement notifying them that the unlawful manufacture, distribution, dispensing, possession or use of a controlled substance is prohibited in the Contractor's workplace, and specifying the actions that will be taken against employees for violations of such prohibition;

(B)     Establishing a drug-free awareness program to inform its employees of (1) the dangers of drug abuse in the workplace; (2) the Contractor's policy of maintaining a drug-free workplace; (3) any available drug counseling, rehabilitation and employee assistance programs; and (4) the penalties that may be imposed upon an employee for drug abuse violations occurring in the workplace;

(C)    Notifying all employees in the statement required by subparagraph (A) above that as a condition of continued employment, the employee will (1) abide by the terms of the statement; and (2) notify the Contractor of any criminal drug statute conviction for a violation occurring in the workplace no later than five (5) days after such conviction;

(D)    Notifying the State in writing within ten (10) days after receiving notice from an employee under subdivision (C)(2) above, or otherwise receiving actual notice of such conviction;

(E)    Within thirty (30) days after receiving notice under subdivision (C)(2) above of a conviction, imposing the following sanctions or remedial measures on any employee who is convicted of drug abuse violations occurring in the workplace: (1) taking appropriate personnel action against the employee, up to and including termination; or (2) requiring such employee to satisfactorily participate in a drug abuse assistance or rehabilitation program approved for such purposes by a federal, state or local health, law enforcement, or other appropriate agency; and

(F)    Making a good faith effort to maintain a drug-free workplace through the implementation of subparagraphs (A) through (E) above.

## 16.   NONDISCRIMINATION.

Pursuant to Indiana Code § 22-9-1-10 and the Civil Rights Act of 1964, the Age Discrimination in Employment Act and the Americans with Disabilities Act, the Contractor and its subcontractors, if any, shall not discriminate against any employee or applicant for employment relating to this Agreement with respect to the hire, tenure, terms, conditions, or privileges of employment or any matter directly or indirectly related to employment, because of the employee or applicant's race, color, religion, sex, age disability, national origin or ancestry or status as a veteran, or any other characteristic protected by federal, state, or local law. Breach of this covenant may be regarded as a material breach of this Agreement. Acceptance of this Agreement also signifies compliance with applicable federal and state laws and regulations prohibiting the aforementioned discrimination in the provision of services.

## 17.   NOTICE TO PARTIES.

(A)    Whenever any notice, statement, or other communication ("**Notice**") is required under this Agreement, it shall be sent to the following address, unless otherwise advised in writing:

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

(1)     <u>Notices to the IEDC shall be sent to</u>:

INDIANA ECONOMIC DEVELOPMENT CORPORATION
Attn: General Counsel
One North Capitol Avenue, Suite 700
Indianapolis, IN 46204-2288
reports@iedc.in.gov

(2)     <u>Notices to the Contractor shall be sent to</u>:

Pure Development, Inc.
Attn: Chris Seger
1351 Roosevelt Ave., Suite 100
Indianapolis, IN 46202
cseger@puredevelopment.com

(B)     Any change in the Contractor's contact information must be provided in writing by the Contractor to the IEDC in accordance with this Section.

(C)     Notice shall be provided via electronic mail to the Contractor's electronic mail address and via certified, registered, or first-class U.S. mail at the option of the IEDC. Notice shall be deemed delivered upon dispatch.

## 18.     SUBCONTRACTS, ASSIGNMENT & KEY PERSONS.

(A)     The Contractor shall not assign or subcontract the whole or any part of this Agreement without the prior written consent of the IEDC; provided, however, Contractor may assign this Agreement to an entity under the direction of the Principal and employing Michael Watts ("**Related Entity**") without such written consent so long as Contractor provides notice of such assignment within five (5) days prior such assignment is to take effect. The Contractor agrees to bind all subcontractors, successors and assignees to all the terms and conditions of this Agreement. The Contractor shall specifically require each subcontractor, if any, who has access to the IEDC's confidential information in the course of performing any services to be bound by the confidentiality provisions in Section 5 of this Agreement and, at the IEDC's discretion, to execute a non-disclosure agreement that is satisfactory to the IEDC.

(B)     Each subcontract agreement, vendor agreement, consulting agreement or other agreement between Contractor and any party providing labor, materials, equipment or services of any kind (professional and non-professional) involving a portion of the Services is assigned to the IEDC, provided that the assignment is only effective upon: (i) IEDC's termination of this Agreement in the event that Contractor dissolves and this Agreement is not assigned by Contractor to a Related Entity within 30 days after such dissolution; or (ii) IEDC's

written request after a breach by Contractor of its obligations under the Agreement and such breach has continued uncured for a period of thirty (30) days. Contractor will use commercially reasonable efforts to ensure each and every agreement between Contractor and other entities performing a portion of the Service allows Contractor to assign such agreements, including, without limitation, to the IEDC.

(C)    KEY PERSON(S):

    (1) This Agreement will be performed under the direction of **Chris Seger** (the "**Principal**"). In the event the Principal is unable or unwilling to continue providing the services under this Agreement, the IEDC may suspend or terminate this Agreement.

    (2) Nothing in this Section shall be construed to prevent the Contractor from using the services of others to perform its duties as defined in Section 1 of this Agreement, as well as any services ancillary to those duties, including secretarial, clerical, and common labor duties. The Contractor shall, at all times, remain responsible for the performance of all necessary duties, whether performed by the Principal, employees, subcontractors, or others.

(D)    BACKGROUND CHECKS:

The Principal understands that it may be necessary for the IEDC to conduct an investigation of the Contractor's background, which investigation may be comprehensive. If the IEDC determines it is in the best interest of the IEDC to conduct a background check, the Contractor agrees to, at the IEDC's request, provide any necessary information and authorization to conduct the applicable background check(s). The Contractor agrees that the IEDC may conduct such checks at any time during the term of this Agreement. The Contractor agrees it shall release the IEDC from any liability in connection with conducting the background checks. If the IEDC, in its sole discretion, is dissatisfied with the results of the background check(s), the IEDC may terminate this Agreement.

## 19.    INDEMNIFICATION.

To the fullest extent permitted by law, the Contractor shall indemnify, defend, and hold harmless the IEDC and the State of Indiana and their respective agents, officers, employees and representatives from and against third-party claims damages, losses, and expenses, including but not limited to all judgments recovered therefrom and for expenses in defending any such claims or suits, including court costs, attorneys' fees, and for any other expenses, arising out of or resulting from Contractor's performance of the Services or obligations under this Agreement, provided that such claim, damage, loss, or expense is attributable to bodily injury or death or injury to or destruction of tangible property, including the loss of use thereof, but only to the extent caused by

the breach of this Agreement, or the negligent acts or omissions of the Contractor or its employees or a subcontractor, a vendor, or a consultant who Contractor has contracted directly with. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this paragraph, except to the extent caused by any of the indemnified parties. The IEDC shall <u>not</u> provide such indemnification to Contractor.

## 20. DEBARMENT & SUSPENSION.

(A)    The Contractor certifies, by entering into this Agreement, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from entering into this Agreement by any federal agency, branch of government, or by any department, agency, or political subdivision of the State of Indiana. The term "principal" for purposes of this Agreement means an officer, director, owner, partner, key employee, or other person with primary management of supervisory responsibilities, or a person who has a critical influence on or substantive control over the operations of the Contractor.

(B)    The Contractor certifies that it has verified the state and federal suspension and debarment status for all subcontractors receiving funds under this Agreement and shall be solely responsible for any recoupment, penalties, or costs that might arise from use of a suspended or debarred subcontractor. The Contractor shall immediately notify the IEDC if any subcontractor becomes debarred or suspended, and shall, at the IEDC's request, take all steps required by the IEDC to terminate its contractual relationship with the subcontractor for work to be performed under this Agreement.

## 21. ATTORNEYS' FEES & INTEREST.

The IEDC will in good faith perform its required obligations hereunder and does <u>not</u> agree to pay any penalties, liquidated damages, interest, attorneys' fees, court costs, or litigation expenses, except as required by Indiana law, in part, Indiana Code § 5-17-5, Indiana Code § 34-54-8, Indiana Code § 34-13-1, and Indiana Code § 34-52-2-3. Notwithstanding the provisions contained in Indiana Code § 5-17-5, the parties stipulate and agree that any liability resulting from the IEDC's failure to make prompt payment shall be based solely on the amount of funding originating from the State of Indiana and shall not be based on funding from federal or other sources.

## 22. MISCELLANEOUS.

(A)    No right conferred on either party under this Agreement shall be deemed waived and no breach of this Agreement excused, unless such waiver or excuse is in writing and signed in advance by the party claiming to have waived such right. Neither the IEDC's review, approval, or acceptance of, nor payment for the services required under this Agreement shall be construed to operate as a waiver of any rights under this Agreement or of any

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

cause of action arising out of the performance of this Agreement, and the Contractor shall be and remain liable to the IEDC in accordance with applicable law for all damages to the IEDC caused by the Contractor's breach or negligent performance of any of the services furnished under this Agreement.

(B) This Agreement constitutes the entire agreement between the parties. No understandings, agreements, or representations, oral or written, not specified within this Agreement will be valid provisions of this Agreement. This Agreement may not be modified, supplemented, or amended, in any manner, except by written agreement signed by all necessary parties.

(C) This Agreement may be executed through an original or electronically, and in duplicates or through counterparts, each of which shall be deemed to be an original, and all of which shall constitute but one and the same Agreement.

(D) Both parties hereto, in the performance of this Agreement, shall act in an individual capacity and not as agents, employees, partners, joint venturers or associates of one another. The employees or agents of one party shall not be deemed or construed to be the employees or agents of the other party for any purposes whatsoever. Neither party will assume liability for any injury (including death) to any persons, or damage to any property arising out of the acts or omissions of the agents, employees or subcontractors of the other party.

(E) Nothing in this Agreement shall be construed to confer any rights or remedies on any third party not a signatory to this Agreement, including, the employees or sub-contractors of the Contractor.

(F) If the IEDC determines that it would be in the IEDC's best interest to hire an employee of the Contractor, the Contractor will release the selected employee from any non-compete agreements that may be in effect. This release will be at no cost to the IEDC or to the employee.

(G) The IEDC is exempt from state, federal, and local taxes. The IEDC will not be responsible for any taxes levied on the Contractor as a result of this Agreement.

(H) This Agreement was reviewed and/or revised by legal counsel for the IEDC and the Contractor, and no presumption or rule that any ambiguity shall be construed against the party drafting the document shall apply to the interpretation or enforcement of this Agreement.

(I)     Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, rights, and remedies otherwise imposed or available by law.

## 23.    INSURANCE.

The Contractor shall secure and keep in force during the term of this Agreement the insurance coverage required by law and as would be reasonable to cover claims of any nature which may arise out of or result from this Agreement and, to the extent allowed by the applicable insurer, the IEDC shall be named as an additional insured under all such policies.  The additional insured coverage shall be primary and non-contributory to any of the IEDC's general liability or other insurance policies and shall apply to both ongoing and completed operations. The Contractor shall furnish certificates of insurance and all endorsements to the IEDC prior to the commencement of work under this Agreement.

## 24.    AUTHORITY TO BIND CONTRACTOR.

Notwithstanding anything in this Agreement to the contrary, the signatory for the Contractor represents that he/she has been duly authorized to execute contracts on behalf of the Contractor and has obtained all necessary or applicable approvals from the home office of the Contractor to make this Agreement fully binding upon the Contractor when his/her signature is affixed and is not subject to home office acceptance hereto when accepted by the IEDC.

## 25.    INFORMATION TECHNOLOGY ACCESSIBILITY STANDARDS.

If the Contractor provides any information technology-related products or services to the IEDC, the Contractor shall comply with all Indiana Office of Technology (IOT) standards, policies, and guidelines, which are available online at *http://iot.in.gov/architecture/*.   The Contractor specifically agrees that all hardware, software, and services provided to or purchased by the IEDC shall be compatible with the principles and goals contained in the electronic and information technology accessibility standards adopted under Section 508 of the Federal Rehabilitation Act of 1973 (29 U.S.C. 794d) and Indiana Code § 4-13.1-3.  Any deviation from these architecture requirements must be approved in writing by IOT in advance.  The IEDC may terminate this Agreement for default if the Contractor fails to cure a breach of this provision within a reasonable time.

## 26.    DISPUTES.

(A)     Should any disputes arise with respect to this Agreement, the Contractor and the IEDC agree to act immediately to resolve such disputes.  Neither party shall be required to submit to binding arbitration for the resolution of disputes.  Disputes not directly resolved between the Contractor and the IEDC may, subject to the IEDC's sole discretion, be subject to mediation as a condition precedent to litigation.  Absent the IEDC requiring or consenting

in writing to mediation all disputes shall be subject to litigation as provided for herein. Unless Contractor and the IEDC shall mutually agree otherwise, mediation shall be administered by the American Arbitration Association in effect on the date of the Agreement. Time is of the essence in the resolution of disputes.

(B)     The Contractor agrees that, the existence of a dispute notwithstanding, it will continue, without delay, to carry out all of its responsibilities under this Agreement that are not affected by the dispute. Should the Contractor fail to continue to perform its responsibilities regarding all non-disputed work or services, without delay, any additional costs incurred by the IEDC or the Contractor as a result of such failure to proceed shall be borne by the Contractor, and the Contractor shall make no claim against the IEDC for such costs.

## 27.    ORDER OF PRECEDENCE; INCORPORATION BY REFERENCE.

Any inconsistency or ambiguity in this Agreement shall be resolved by giving precedence in the following order: (1) this Agreement; (2) exhibits/attachments prepared by the IEDC and incorporated into this Agreement; and (3) exhibits/attachments prepared by the Contractor and incorporated into this Agreement.

## 28.    NON-COLLUSION & ACCEPTANCE.

The undersigned attests, subject to the penalties for perjury, that the undersigned is the properly authorized representative, agent, member, or officer of the Contractor. Further, to the undersigned's knowledge, neither the undersigned nor any other member, employee, representative, agent, or officer of the Contractor, directly or indirectly, has entered into or been offered any sum of money or other consideration for the execution of this Agreement other than that which appears upon the face hereof.

*Signatures on Following Page -- Remainder of Page Intentionally Left Blank*

In Witness Whereof, the Contractor and the IEDC have, through duly authorized representatives, entered into this Agreement. The parties, having read and understand the foregoing terms of this Agreement, do by their respective signatures dated below hereby agree to the terms thereof.

**PURE DEVELOPMENT, INC.**

DocuSigned by:

*Chris Seger*

Chris Seger, Principal

Date: _____4/15/2025_____

DS
5P

DS
MW

**INDIANA ECONOMIC DEVELOPMENT CORPORATION**

_____

Jeff Blade

(Digital Signature Stamp Below)

*Jeff Blade*

**STATE BUDGET AGENCY**

*Jonathan Eccles*
Jonathan Eccles (May 7, 2025 14:25 EDT)                **on Behalf of**

_____

Chad Ranney, Budget Director

Date: _____

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

**EXHIBIT A**
Project Description & Budget

Services
Contractor shall act on behalf of the IEDC to fully develop the property, to prepare it for sale as a state owned, commercially viable, shovel ready innovation district to be used for research and development, advanced manufacturing, technology related, life and bio sciences uses. The IEDC is relying on Contractor, based on its commercial development experience to act in its professional capacity as an owners representative. Contractor will assume the following responsibilities:

- Manage contractors on utility, roadways, and other infrastructure projects;
- Contract and manage third parties for the performance of site due diligence;
- Act as IEDC owner's representative in submitting and executing all project related permits and approvals;
- Act as IEDC owner's representative in bidding design drawings to three different contractors and making recommendation as to the best qualified contractor;
- Manage contractors on utility projects, roadways, and other infrastructure;
- Lead team in responding to requests for proposals;
- Hold contracts for infrastructure improvements including utility projects, roadways, and other infrastructure;
- Hire and manage Property manager to oversee IEDC acquired properties; and
- Assists in the development and negotiation of both PSAs and PCAs for LEAP end users

Fee Schedule
Subject to the terms and conditions contained in the Agreement, IEDC agrees to pay Contractor the following amounts:

- Development and Management Fee – 8% of the total value of third-party contracts (including, without limitation, contracts with consultants, vendors, subcontractors, and utility providers) entered into and administered by Contractor on behalf of IEDC for the Services ("**Third-Party Contracts**").

  The Development and Management Fee will be paid in equal monthly installments during the Term; provided, however,. IEDC shall have the right to retain 10% of each monthly installment of the Development and Management Fee (the "**Retained Fee**"). The Retained Fee will be paid by IEDC to Contractor within 30 days after the later to occur of (a) the expiration of the Term, or (b) the Substantial Completion of the Services. For purposes of the Development and Management Fee, "Substantial Completion" means the date on which the total outstanding amount to be paid to a third-party under all outstanding Third-Party Contracts is equal to or less than $250,000.00.

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

The fee paid on unexecuted contract line items and the fee paid on the difference between the engineer's estimate and final construction GMP contracts will be reconciled at closeout of the contract between Pure and IEDC.

At completion/closeout of a contract line item or project, shared savings shall be calculated. In the event that the actual cost of the work is less than the Guaranteed Maximum Price established in the final contract document between Pure and the subcontractor, including contingency, then the difference (the "Shared Savings") minus the Pure fee on the savings shall be shared between the IEDC and Pure as follows: The amount equal to 70% of the Shared Savings to the IEDC and the amount of 30% of the Shared Savings to Pure.

Third-Party Costs

IEDC shall be responsible for the costs of all Third-Party Costs. Third-Party Costs will be itemized by Contractor and submitted to IEDC for approval prior to beginning any work item.

Development Services Release

IEDC will pay Contractor the Third-Party Costs for the following services in an amount not to exceed the GMP as defined in the Agreement (and in amounts not to exceed the amount set forth in each line item for each service):

## Cost Summary

| LEAP General | | Carry Over | New | Total |
|---|---|---|---|---|
| Due Diligence | | | | |
| Environmental | August Mack | - | 50,000 | 50,000 |
| Due Diligence | ASI | 254,758 | | 254,758 |
| Contract and Legal Review | E&C | - | | - |
| Water Resources | Intera | - | | - |
| | | | | |
| Design | | | | |
| Traffic Modeling | Avenew | 106,767 | | 106,767 |
| Master Plan | MKSK | 23,933 | 75,000 | 98,933 |
| Mixed Use Village Planning | MKSK | 52,819 | | 52,819 |
| INDOT I-65 and US 52 Interchange | ASI | 435,584 | 100,700 | 536,284 |
| INDOT Coordination and Management | Avenew | - | 540,000 | 540,000 |
| Wetlands Mitigation | MKSK | 17,039 | | 17,039 |
| 200 W N of SR 32 / Mixed Use Road from 52 to 32 | CMT | 454,900 | | 454,900 |
| Water/Sanitary Initial Design | BF&S | 102,695 | | 102,695 |
| | | | | |
| Property Management | Chano | 65,198 | 708,000 | 773,198 |
| | | | | |
| Management Fee | Pure | 121,095 | 117,896 | 238,991 |
| | | | | |
| General Services Total | | 1,634,787 | 1,591,596 | 3,226,383 |

# Pure Development, Inc (GSA) (427172) expire 12.31.27

Final Audit Report                                    2025-05-07

| | |
|---|---|
| Created: | 2025-04-22 |
| By: | Glenda Reitz 7EE (GReitz@iedc.IN.gov) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAvs65Z2Iy801HJvt9h_aJd5LSsw-SGqeI |

## "Pure Development, Inc (GSA) (427172) expire 12.31.27" History

Document created by Glenda Reitz 7EE (GReitz@iedc.IN.gov)
2025-04-22 - 11:13:45 AM GMT

Document emailed to rpaglia@iedc.in.gov for approval
2025-04-22 - 11:13:52 AM GMT

Email viewed by rpaglia@iedc.in.gov
2025-05-05 - 11:17:58 PM GMT

Signer rpaglia@iedc.in.gov entered name at signing as Robert J Paglia
2025-05-05 - 11:20:34 PM GMT

Document approved by Robert J Paglia (rpaglia@iedc.in.gov)
Approval Date: 2025-05-05 - 11:20:36 PM GMT - Time Source: server

Document emailed to kkovert@iedc.in.gov for signature
2025-05-05 - 11:20:38 PM GMT

Email viewed by kkovert@iedc.in.gov
2025-05-06 - 11:05:09 AM GMT

Signer kkovert@iedc.in.gov entered name at signing as Kyle Kovert
2025-05-06 - 11:05:32 AM GMT

Document e-signed by Kyle Kovert (kkovert@iedc.in.gov)
Signature Date: 2025-05-06 - 11:05:34 AM GMT - Time Source: server

Document emailed to Jonathan Eccles 4MM (jeccles@sba.in.gov) for signature
2025-05-06 - 11:05:36 AM GMT

 Adobe Acrobat Sign

Email viewed by Jonathan Eccles 4MM (jeccles@sba.in.gov)
2025-05-07 - 6:23:31 PM GMT

Signer Jonathan Eccles 4MM (jeccles@sba.in.gov) entered name at signing as Jonathan Eccles
2025-05-07 - 6:25:27 PM GMT

Document e-signed by Jonathan Eccles (jeccles@sba.in.gov)
Signature Date: 2025-05-07 - 6:25:29 PM GMT - Time Source: server

Agreement completed.
2025-05-07 - 6:25:29 PM GMT

# EXECUTIVE DOCUMENT SUMMARY



State Form 41221 (R10/4-06)

Instructions for completing the EDS and the Contract process.

1. Please read the guidelines on the back of this form.
2. Please type all information.
3. Check all boxes that apply.
4. For amendments / renewals, attach original contract.
5. Attach additional pages if necessary.

| 1. EDS Number: PSA-5-PSA-1024 | 2. Date prepared: 4/22/2025 |
|---|---|

## 3. CONTRACTS & LEASES

- X Professional/Personal Services
- ___ Grant
- ___ Lease
- ___ Attorney
- ___ MOU
- ___ QPA _____

- ___ Contract for procured Services
- ___ Maintenance
- ___ License Agreement
- ___ Amendment# _____
- ___ Renewal # _____
- ___ Other _____

## FISCAL INFORMATION

| 4. Account Number: 78410-10000.538010 | 5. Account Name: DEAL CLOSING FUND |
|---|---|
| 6. Total amount this actio $23,036,190.00 | 7.New contract total: $23,036,190.00 |
| 8. Revenue generated this action: $00.00 | 9.Revenue generated total contract: $0.00 |

10.New total amount for each fiscal year :

Year 2025    $23,036,190.00

Year _____

Year ___    $ _____

Year ___    $ _____

## TIME PERIOD COVERED IN THIS EDS

| 11. From (month, day, year): 4/1/2025 | 12. To ( month, day, year ): 3/31/2027 |
|---|---|

13. Method of source selection:    X Negotiated

_____ Bid/Quotation    _____ Emergency    _____ Special Procurement

_____ RFP# _____    _____ Other *(specify)* _____

## AGENCY INFORMATION

| 14. Name of agency: Economic Development Corp | 15. Requisition Number: 0000011218 |
|---|---|

16. Address:  **IN** Economic Development Corp
Central Office
**1 N CAPITOL AVE STE 700**
**INDIANAPOLIS, IN** 46204-2040

## AGENCY CONTACT INFORMATION

| 17. Name: Glenda Reitz-May | 18. Telephone #: 317.447.2617 |
|---|---|
| 19. E-mail address: greitz@iedc.in.gov | |

## COURIER INFORMATION

| 20. Name: Glenda Reitz | 21. Telephone #: 317.447.2617 |
|---|---|
| 22. E-mail address: greitz@iedc.in.gov | |

## VENDOR INFORMATION

23 Vendor ID #    00000401445

| 24. Name: Pure Development, Inc. | 25. Telephone #: N/A |
|---|---|

26. Address:    815 E. 65th Street
Indianapolis, IN
462206

27. E-mail address: cseger@puredevelopment.com

28. Is the vendor registered with the Secretary of State? (Out of State Corporations, must be registered)    X Yes _____ No

| 29. Primary Vendor: M/WBE/IN-Vetera | 30. Primary Vendor Percentages |
|---|---|
| Minority: _____ Yes  X No | |
| Women: _____ Yes  X No | 100.0 % |
| IN-Veteran _____ Yes  X No | |

| 31. Sub Vendor: M/WBE/IN-Veteran | 32. If yes, list the %: |
|---|---|
| Minority: _____ Yes  X No | Minority: _____ % |
| Women: _____ Yes  X No | Women: _____ % |
| IN-Veteran _____ Yes  X No | IN- Veteran _____ % |

| 33. Is there Renewal Language in _____ Yes  X No | 34. Is there a "Termination for Convenience" clause in the document? X Yes _____ No |
|---|---|

35. Will the attached document involve data processing or telecommunications system    _____ Yes: IOT or Delegate has signed off on contract

36. Statutory Authority *(Cite applicable Indiana or Federal Codes):*    IC 5-28-14

37. Description of work and justification for spending money. *(Please give a brief description of the scope of work included in this agreement.)*

 Contractor shall assist the IEDC to fully develop property, to prepare it for sale as a state owned, commercially viable, shovel ready innovation district to be used for research and development, advanced manufacturing, technology related, life and bio sciences uses. The IEDC is relying on Pure, based on its commercial development experience to act in its professional capacity as an owner's representative and to make decisions that both support the marketability and profitability of the property for the state.

38. Justification of vendor selection and determination of price reasonableness:  We have used this company in the past for our advertising and are very pleased with their service.

Project # 427342

39. If this contract is submitted late, please explain why: *(Required if more than 30 days late.)*

| 40. Agency fiscal officer or representative appro | 41. Date Approved | 42. Budget agency approval *Chad E. Ranney* Chad E. Ranney (May 5, 2025 14:21 EDT) | 43. Date Approved |
|---|---|---|---|
| 44.Attorney General's Office approval | 45. Date Approved | 46. Agency representative receiving from AG | 47. Date Approved |



Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

# PROJECT SERVICES AGREEMENT

This **PROJECT SERVICES AGREEMENT** (this "Agreement") is made and entered into, by and between the **INDIANA ECONOMIC DEVELOPMENT CORPORATION** (the "IEDC") and **PURE DEVELOPMENT, INC.** (the "Contractor") for Project Grasslands-Tundra as detailed in Exhibit A.

In consideration of the mutual undertakings and covenants set forth herein, the parties hereby agree as follows:

## 1. PURPOSE OF AGREEMENT AND THE CONTRACT.

The purpose of this Agreement is for the Contractor to provide the services (collectively, the "Services") set forth on **Exhibit A** attached hereto and incorporated herein. Contractor shall cause to be furnished and delivered all labor, equipment, materials, and services and cause to be performed all of the work necessary or incidentally required to provide and complete the Services in a proper and timely manner, consistent with all applicable industry standards. The Contract Documents consist of this Agreement, other documents listed in this Agreement, and Modifications issued after execution of this Agreement. A "**Modification**" is (1) a written amendment to the Contract signed by Contractor, the IEDC, and the State Budget Agency ("**SBA**"); or, (2) a written order for a minor, no-cost change in the Services issued by the IEDC. The Contract Documents form the "**Contract**" between IEDC and Contractor, and the Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations, or agreements, either written or oral. The Contract may only be amended or modified by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind between any persons or entities other than the IEDC and the Contractor.

## 2. TERM.

(A) This Agreement shall commence on April 1, 2025 ("**Effective Date**") and shall remain in effect through March 31, 2027 or unless earlier terminated in accordance with the provisions of this Agreement ("**Term**"); provided, however, in the event Contractor has not completed the Services by the expiration of the Term the IEDC, in its sole and exclusive discretion, may elect to unilaterally extend the Term for such period of time that it deems reasonable for Contractor to complete the Services. In no event shall payments be made for work done or services performed after the end of the Term.

(B) Any provisions which, by their nature, are intended to apply after termination of this Agreement shall survive termination of this Agreement, including, but not limited to, provisions concerning indemnification, confidentiality of information, ownership of documents and materials, payment of amounts owed for work properly performed and owed under this Agreement, assignment of subcontracts or other agreements, limitations of liability, and intellectual property clauses.

## 3. CONSIDERATION.

(A) All services performed by the Contractor under this Agreement must be authorized by the IEDC and consistent with the description set forth on **Exhibit A**, attached hereto and

incorporated herein. IEDC shall be responsible for the third-party costs associated with land sales and acquisitions, design, consulting, legal fees, due diligence, zoning, entitlements, permitting, utility agreements, construction, including, without limitation, utility construction, roadway construction, and all other related construction, and project specific request for proposal pursuits (collectively, "**Third-Party Costs**"). Third-Party Costs will be itemized by Contractor and submitted to IEDC for approval prior to beginning any work item. The total of the Third-Party Costs under this Agreement shall not exceed the sum of $23,036,190 (the "**Guaranteed Maximum Price**" or "**GMP**") subject to adjustment for Modifications as provided for in this Agreement. Total remuneration under this Agreement shall not exceed: $23,036,190.

(B)     For the Services properly completed, the Contractor shall be paid the fees set forth in the "Fee Schedule" on **Exhibit A** attached hereto and incorporated herein.

(C)     All work and/or services provided by the Contractor under this Agreement must be performed to the IEDC's reasonable satisfaction, which satisfaction shall be determined at the reasonable discretion of the IEDC, in accordance with all applicable federal, state, local laws, ordinances, rules, and regulations, and in conformance with established industry standards. The IEDC shall not be required to pay for work and services found to be unsatisfactory (based on the standards set forth in this Section), not authorized by or in accordance with the terms of this Agreement, performed in violation of federal, state, or local laws, and work and services which are defective, fail to comply with the Contract Documents, or otherwise not in conformance with established industry standards.

## 4.     PAYMENTS.

(A)     The Contractor shall submit monthly invoices for payment in connection with the Services. Such invoices shall comply with the requirements of this Section. The Contractor shall submit with each invoice a progress report summarizing the Services performed to date with a schedule of values identifying the percentage of completion with respect to each discrete item of the Services. The Contractor shall submit invoices to the IEDC by email at processing@iedc.in.gov and dclerget@iedc.in.gov.

(B)     All payment obligations shall be made in arrears in accordance with Indiana law and state fiscal policies and procedures, and as required by Indiana Code § 4-13-2-14.8. Notwithstanding any other law, rule, or custom, a person or company whom has a contract with the State of Indiana or submits invoices to the state for payment shall authorize, in writing, the direct deposit by electronic funds transfer of all payments by the state to the person or company. The written authorization must designate a financial institution and

an account number to which all payments are to be credited. Any exception to this requirement must be approved by the IEDC and the State of Indiana. For forms and additional information, see the Auditor of State's website at *www.in.gov/auditor/forms*.

(C)  No travel and other expenditures made by the Contractor will be reimbursed by the IEDC unless provided for in the Fee Schedule. Allowable expenditures made by the Contractor for travel will be reimbursed at the current rate paid by the IEDC and in accordance with the State Travel Policies and Guidelines as specified in the current Financial Management Circular, available at *http://www.in.gov/idoa/2459.htm*. All travel expenses must be approved by the IEDC in writing in advance. Out-of-state travel requests must be reviewed by the IEDC for availability of funds and for appropriateness per Financial Management Circular guidelines.

(D)  The IEDC may withhold payment, in whole or in part, to the extent reasonably necessary to protect the IEDC from loss due to, arising from, or related to: 1) defective work, including design and construction, not remedied; 2) third party claims filed unless security acceptable to the IEDC is provided; or 3) the failure of Contractor to make payments properly to subcontractors, vendors or service providers for services, labor, materials or equipment.

## 5. CONFIDENTIALITY OF INFORMATION.

(A)  The Contractor understands and agrees that data, materials, and information disclosed to the Contractor may contain confidential and protected data. Therefore, the Contractor promises and assures that data, material, and information disclosed to the Contractor by the IEDC for the purpose of this Agreement, and specifically identified as confidential information will not be disclosed to others or discussed with other parties without the prior written consent of the IEDC, provided, however, that for purposes of this Section (A) the Contractor may disclose confidential information to its employees as necessary to support Contractor's performance of the Services and to consultants, contractors, and advisors so long as such consultants, contractors, and advisors are bound by obligations to maintain the confidentiality of such confidential information.

(B)  The parties acknowledge that the Services may require or allow access to data, materials, and information containing Social Security numbers or other personal information maintained by the IEDC in its computer system or other records. In addition to the covenant made above in this Section, and pursuant to 10 IAC 5-3-1(4), the Contractor and the IEDC agree to comply with the provisions of Indiana Code § 4-1-10 and Indiana Code § 4-1-11. If any Social Security number(s) or personal information (as defined in Indiana Code § 4-

1-11-3) is/are disclosed by the Contractor, the Contractor agrees to pay the cost of the notice of disclosure of a breach of the security of the system, in addition to any other claims and expenses for which it is liable under the terms of this Agreement.

## 6. USE OF THE IEDC NAME.

The IEDC has not granted any rights to use its name, trademark, intellectual property, or logos. The Contractor agrees that it will not use the name or intellectual property, including, but not limited to, IEDC trademarks or logos, in any manner, including commercial advertising or as a business reference without the prior written consent of the IEDC. In all cases in which the IEDC's participation will be referenced, the IEDC shall have the right of review and approval of the use, disclosure, and the finished product prior to its publication. All such requests shall be made in writing and delivered to the IEDC for approval at its sole discretion.

## 7. GOVERNING LAW.

(A)     This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Indiana without regard to principles of choice of law. Suit, if any, must be brought in the State of Indiana and the venue for any court action shall be in the Superior Court of Marion County, Indiana.

(B)     If any section, paragraph, term, condition, or provision of this Agreement is found, by a court of competent jurisdiction, to be invalid or unenforceable, or if any paragraph, term, condition, or provision is found to violate or contravene the laws of the State of Indiana or applicable federal law then the section, paragraph, term, condition, or provision so found will be deem severed from this Agreement, but all other sections, paragraphs, terms, conditions, and provisions will remain in full force and effect.

(C)     The Contractor understands that this Agreement is a public record subject to request pursuant to Indiana Code § 5-14-3 and its exemptions. Use by the public of the information contained in this Agreement shall not be considered an act of the IEDC or the State.

## 8. TERMINATION & FUNDING CANCELLATION.

(A)     This Agreement may be terminated by the IEDC at any time, for any reason, with or without cause, if the IEDC determines that such termination is in its best interest. Termination of services shall be effected by delivery to the Contractor of a termination notice at least thirty (30) days prior to the termination effective date, specifying the extent to which performance of services under such termination becomes effective. The Contractor shall be compensated for services properly rendered prior to the effective date

of termination and, subject to offset for actual damages and/or costs incurred by the IEDC due to or arising from Contractor's breach of this Agreement. The IEDC will not be liable for services performed after the effective date of termination. The Contractor shall be compensated for services herein provided, but in no case shall any price increase be allowed on individual line items if canceled in whole or in part prior to the original termination date.

(B)     When the Director of the State Budget Agency makes a written determination that funds are not appropriated or otherwise available to support continuation of performance of this Agreement, the Contractor shall be notified and this Agreement shall be cancelled. A determination by the Budget Director that funds are not appropriated or otherwise available to support continuation of performance shall be final and conclusive. Contractor shall be paid for all services performed prior to the date of cancellation.

## 9.     PROGRESS REPORTS.

The Contractor shall submit monthly written progress reports to the IEDC. The progress reports shall serve the purpose of assuring the IEDC that work is progressing in a timely manner, and that completion can be reasonably assured on the scheduled date. The Contractor shall submit progress reports to the IEDC by email at reports@iedc.in.gov and dclerget@iedc.in.gov.

## 10.    ACCESS TO RECORDS & AUDITS.

(A)     The Contractor and its subcontractors, if any, shall maintain all books, documents, papers, accounting records, and other evidence pertaining to all costs incurred under this Agreement. The Contractor shall make such materials available at its respective office at all reasonable times during this Agreement, and for three (3) years from the date of final payment under this Agreement, for inspection by the IEDC or by any other authorized representative of the State. Copies thereof shall be furnished at no cost to the IEDC or by any other authorized representative of state government if requested.

(B)     The Contractor acknowledges that it may be required to submit to an audit of funds paid through this Agreement. Any such audit shall be conducted in accordance with Indiana Code § 5-11-1 *et seq.* and any audit guidelines specified by the IEDC.

## 11.    THE CONTRACTOR'S SERVICES.

(A)     The Contractor recognizes that the Services are vital to the IEDC and must be continued without interruption and that, upon the expiration of this Agreement, a successor, either the

IEDC or another contractor, may continue them. The Contractor agrees to use its best efforts and cooperation to effect an orderly and efficient transition to a successor to provide the services contemplated hereby. This Agreement shall be deemed to be substantially performed only when fully performed according to its terms and conditions and any written modifications thereof.

(B)    The Contractor shall not commence any additional services or change the scope of services unless and until authorized in writing by the IEDC and the SBA through a Modification to the Contract as set forth in Section 1 of this Agreement. No claim for additional compensation or any change to the Fee Schedule or Third-Party Costs shall be made unless and until authorized in writing by the IEDC and SBA as provided for in this paragraph. This Agreement may only be amended, supplemented or modified by a written document executed in the same manner as this Agreement.

(C)    The Contractor shall execute its responsibilities by following and applying at all times the highest professional and technical guidelines and standards. The Contractor represents that it has or shall obtain at its own expense all personnel, materials, and equipment required to perform the services under this Agreement. All of the work performed hereunder shall be performed by the Contractor or under its supervision. The Contractor warrants that all personnel assigned to perform the Services or other consultants or subcontractors engaged by the Contractor to perform the Services are fully qualified, licensed and authorized to perform such services under state and local laws. If the IEDC becomes dissatisfied with the work product of, or the working relationship with, any individuals assigned to work under this Agreement, the IEDC may request in writing the replacement of any or all such individuals, and the Contractor shall grant such request.

(D)    The IEDC shall, at all reasonable times, have the right to inspect the work, services or performance of the Contractor. The Contractor shall furnish all reasonable aid and assistance required by the IEDC for proper examination of the work or services. Such inspection shall not relieve the Contractor of any obligation to perform said services in accordance with the law or with this Agreement.

(E)    Contractor shall be responsible to the IEDC for acts and omissions of the Contractor's employees and those subcontractors, vendors, consultants, and other persons or entities who Contractor has contracted directly with and who are performing portions of the Services for, or on behalf of, the Contractor.

(F)    Contractor shall be responsible for causing those subcontractors, vendors, consultants, and other persons or entities who Contractor has contracted directly with, and who are

performing portions of the Services, to comply with any and all applicable warranty requirements for the Services performed that may be required by the applicable municipality or authority having jurisdiction, including, without limitation, warranty requirements that may require the correction of defective work.

**12.    OWNERSHIP OF DOCUMENTS & MATERIALS.**

(A)    All documents, records, programs, applications, data, algorithms, film, tape, articles, memoranda, and other materials (the "**Materials**") not developed or licensed by the Contractor prior to execution of this Contract, but specifically developed pursuant to or in connection with this Contract shall be considered "work for hire" and the Contractor hereby transfers and assigns any ownership claims to the IEDC so that all Materials will be the property of the IEDC. If ownership interest in the Materials cannot be assigned to the IEDC, the Contractor grants the IEDC a non-exclusive, non-cancelable, perpetual, worldwide royalty-free license to use the Materials and to use, modify, copy and create derivative works of the Materials.

(B)    Use of these materials, other than as necessary for the performance of this Agreement by the Contractor, without the prior written consent of the IEDC, is prohibited. The Contractor shall take such action as is necessary under law to preserve the IEDC's rights in and to the work product or intellectual property while such property is within the control and/or custody of the Contractor. During the performance of this Agreement, the Contractor shall be responsible for any loss of or damage to these materials developed for or supplied by the IEDC and used to develop or assist in the services provided while the materials are in the possession of the Contractor. Any loss or damage thereto shall be restored at the Contractor's expense. The Contractor shall provide the IEDC full, immediate, and unrestricted access to the work product during the term of this Agreement.

**13.    COMPLIANCE WITH LAWS.**

(A)    The Contractor agrees to comply with all applicable federal, state and local laws, rules, regulations and ordinances, and all provisions required thereby to be included herein are hereby incorporated by reference. The enactment or modification of any applicable state or federal statute or the promulgation of regulations thereunder after execution of this Agreement shall be reviewed by the IEDC and the Contractor to determine whether the provisions of this Agreement require formal modification.

(B)    The Contractor and its agents shall abide by all ethical requirements that apply to persons who have a business relationship with the State of Indiana, as set forth in Indiana Code §

4-2-6, Indiana Code § 4-2-7, the regulations promulgated thereunder, and Executive Order 04-08, dated April 27, 2004. If the Contractor is not familiar with these ethical requirements, the Contractor should refer any questions to the Indiana State Ethics Commission, or visit the website of the Indiana Inspector General at *http://www.in.gov/ig/*. If the Contractor or its agents violate any applicable ethical standards, the IEDC may, in its sole discretion, terminate this Agreement immediately upon notice to Contractor. In addition, the Contractor may be subject to penalties under Indiana Code § 4-2-6, Indiana Code § 4-2-7, Indiana Code § 35-44.1-1-4 and under any other applicable laws.

(C)     The Contractor certifies by entering into this Agreement that neither it nor its principal(s) is presently in arrears in payment of its taxes, permit fees or other statutory, regulatory or judicially required payments to the State of Indiana or to the IEDC. Further, the Contractor agrees that any payments in arrears and currently due to the State of Indiana or to the IEDC may be withheld from payments due to the Contractor. Additionally, further work or payments may be withheld, delayed, or denied and/or this Agreement suspended until the Contractor is current in any payments set forth above and has submitted proof of such payment to the IEDC.

(D)     The Contractor warrants that it has no current or outstanding criminal (including pending), civil, or enforcement actions initiated by the State of Indiana and agrees that it will immediately notify the IEDC of any such actions. During the term of such actions, the Contractor agrees that the IEDC may delay, withhold, or deny work under any supplement, amendment, change order, or other contractual device issued pursuant to this Agreement.

(E)     If a valid dispute exists as to the Contractor's liability or guilt in any action initiated by the IEDC or the State of Indiana or its agencies, and the IEDC decides to delay, withhold, or deny work to Contractor, Contractor may request that it be allowed to continue, or receive work, without delay. Absent a decision by the IEDC, or a court order or separate order by the State of Indiana or its other agencies, to delay, withhold, or deny work to Contractor, the Contractor shall continue to perform the Services without delay regardless of any action initiated by the IEDC, the State of Indiana or its agencies.

(F)     Any payments that the IEDC may delay, withhold, deny, or apply under this Paragraph 13 shall not be subject to penalty or interest under Indiana Code § 5-17-5.

(G)     The Contractor warrants that the Contractor and its subcontractors, if any, shall obtain and maintain all required permits, licenses, and approvals, and shall comply with all health, safety, and environmental statutes, rules, or regulations applicable in connection with the services provided under this Agreement. Failure to do so is a material breach of this

Agreement and grounds for immediate termination of this Agreement and denial of further work with the IEDC. The IEDC shall not be required to reimburse the Contractor for any services performed when Contractor or its employees or subcontractors were not or are not in compliance with such applicable standards, laws, rules or regulations. If licensure, certification or accreditation expires or is revoked, Contractor shall notify the IEDC immediately, and the IEDC, at its option, may immediately terminate this Agreement.

(H)     The Contractor affirms that, if it is an entity described in Title 23 of the Indiana Code, it is properly registered and owes no outstanding reports to the Indiana Secretary of State.

## 14.     COMPLIANCE WITH TELEPHONE SOLICITATIONS ACT.

As required by Indiana Code § 5-22-3-7:

(A)     The Contractor and any principals of the Contractor certify that:

    (1)     The Contractor, except for de minimis and nonsystematic violations, has not violated the terms of:

        (a)     Indiana Code § 24-4.7 [Telephone Solicitation of Consumers];

        (b)     Indiana Code § 24-5-12 [Telephone Solicitations]; or

        (c)     Indiana Code § 24-5-14 [Regulation of Automatic Dialing Machines] in the previous three hundred sixty-five (365) days, even if Indiana Code § 24-4.7 is preempted by federal law; and

    (2)     The Contractor will not violate the terms of Indiana Code § 24-4.7 for the duration of this Agreement, even if Indiana Code § 24-4.7 is preempted by federal law.

(B)     The Contractor and any principals of the Contractor certify that an affiliate or principal of the Contractor and any agent acting on behalf of the Contractor or on behalf of an affiliate or principal of the Contractor:

    (1)     Except for de minimis and nonsystematic violations, has not violated the terms of Indiana Code § 24-4.7 in the previous three hundred sixty-five (365) days, even if Indiana Code § 24-4.7 is preempted by federal law; and

    (2)     Will not violate the terms of Indiana Code § 24-4.7 for the duration of this Agreement, even if Indiana Code § 24-4.7 is preempted by federal law.

## 15. DRUG-FREE WORKPLACE CERTIFICATION.

As required by Executive Order No. 90-5 dated April 12, 1990, issued by the Governor of Indiana, the Contractor hereby covenants and agrees to make a good faith effort to provide and maintain a drug-free workplace. The Contractor will give written notice to the IEDC within ten (10) days after receiving actual notice that the Contractor, or an employee of the Contractor in the State of Indiana, has been convicted of a criminal drug violation occurring in the workplace. False certification or violation of this certification may result in sanctions including, but not limited to, suspension of contract payments, termination of this Agreement and/or debarment of contracting opportunities with the State for up to three (3) years.

In addition to the provisions of the above paragraph, the Contractor certifies and agrees that it will provide a drug-free workplace by:

(A)     Publishing and providing to all of its employees a statement notifying them that the unlawful manufacture, distribution, dispensing, possession or use of a controlled substance is prohibited in the Contractor's workplace, and specifying the actions that will be taken against employees for violations of such prohibition;

(B)     Establishing a drug-free awareness program to inform its employees of (1) the dangers of drug abuse in the workplace; (2) the Contractor's policy of maintaining a drug-free workplace; (3) any available drug counseling, rehabilitation and employee assistance programs; and (4) the penalties that may be imposed upon an employee for drug abuse violations occurring in the workplace;

(C)     Notifying all employees in the statement required by subparagraph (A) above that as a condition of continued employment, the employee will (1) abide by the terms of the statement; and (2) notify the Contractor of any criminal drug statute conviction for a violation occurring in the workplace no later than five (5) days after such conviction;

(D)     Notifying the State in writing within ten (10) days after receiving notice from an employee under subdivision (C)(2) above, or otherwise receiving actual notice of such conviction;

(E)     Within thirty (30) days after receiving notice under subdivision (C)(2) above of a conviction, imposing the following sanctions or remedial measures on any employee who is convicted of drug abuse violations occurring in the workplace: (1) taking appropriate personnel action against the employee, up to and including termination; or (2) requiring such employee to satisfactorily participate in a drug abuse assistance or rehabilitation program approved for such purposes by a federal, state or local health, law enforcement, or other appropriate agency; and

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

(F)     Making a good faith effort to maintain a drug-free workplace through the implementation of subparagraphs (A) through (E) above.

## 16.    NONDISCRIMINATION.

Pursuant to Indiana Code § 22-9-1-10 and the Civil Rights Act of 1964, the Age Discrimination in Employment Act and the Americans with Disabilities Act, the Contractor and its subcontractors, if any, shall not discriminate against any employee or applicant for employment relating to this Agreement with respect to the hire, tenure, terms, conditions, or privileges of employment or any matter directly or indirectly related to employment, because of the employee or applicant's race, color, religion, sex, age disability, national origin or ancestry or status as a veteran, or any other characteristic protected by federal, state, or local law.  Breach of this covenant may be regarded as a material breach of this Agreement.  Acceptance of this Agreement also signifies compliance with applicable federal and state laws and regulations prohibiting the aforementioned discrimination in the provision of services.

## 17.    NOTICE TO PARTIES.

(A)     Whenever any notice, statement, or other communication ("**Notice**") is required under this Agreement, it shall be sent to the following address, unless otherwise advised in writing:

(1)     Notices to the IEDC shall be sent to:

INDIANA ECONOMIC DEVELOPMENT CORPORATION
Attn:  General Counsel
One North Capitol Avenue, Suite 700
Indianapolis, IN 46204-2288
reports@iedc.in.gov

(2)     Notices to the Contractor shall be sent to:

Pure Development, Inc.
Attn: Chris Seger
1351 Roosevelt Ave., Suite 100
Indianapolis, IN 46202
cseger@puredevelopment.com

(B)     Any change in the Contractor's contact information must be provided in writing by the Contractor to the IEDC in accordance with this Section.

(C)     Notice shall be provided via electronic mail to the Contractor's electronic mail address and via certified, registered, or first-class U.S. mail at the option of the IEDC. Notice shall be deemed delivered upon dispatch.

**18.     SUBCONTRACTS, ASSIGNMENT & KEY PERSONS.**

(A)     The Contractor shall not assign or subcontract the whole or any part of this Agreement without the prior written consent of the IEDC; provided, however, Contractor may assign this Agreement to an entity under the direction of the Principal and employing Michael Watts ("**Related Entity**") without such written consent so long as Contractor provides notice of such assignment within five (5) days prior such assignment is to take effect. The Contractor agrees to bind all subcontractors, successors and assignees to all the terms and conditions of this Agreement. The Contractor shall specifically require each subcontractor, if any, who has access to the IEDC's confidential information in the course of performing any services to be bound by the confidentiality provisions in Section 5 of this Agreement and, at the IEDC's discretion, to execute a non-disclosure agreement that is satisfactory to the IEDC.

(B)     Each subcontract agreement, vendor agreement, consulting agreement or other agreement between Contractor and any party providing labor, materials, equipment or services of any kind (professional and non-professional) involving a portion of the Services is assigned to the IEDC, provided that the assignment is only effective upon: (i) IEDC's termination of this Agreement in the event that Contractor dissolves and this Agreement is not assigned by Contractor to a Related Entity within 30 days after such dissolution; or (ii) IEDC's written request after a breach by Contractor of its obligations under the Agreement and such breach has continued uncured for a period of thirty (30) days. Contractor will use commercially reasonable efforts to ensure each and every agreement between Contractor and other entities performing a portion of the Service allows Contractor to assign such agreements, including, without limitation, to the IEDC.

(C)     KEY PERSON(S):

> (1) This Agreement will be performed under the direction of **Chris Seger** (the "**Principal**"). In the event the Principal is unable or unwilling to continue providing the services under this Agreement, the IEDC may suspend or terminate this Agreement.

> (2) Nothing in this Section shall be construed to prevent the Contractor from using the services of others to perform its duties as defined in Section 1 of this Agreement,

as well as any services ancillary to those duties, including secretarial, clerical, and common labor duties. The Contractor shall, at all times, remain responsible for the performance of all necessary duties, whether performed by the Principal, employees, subcontractors, or others.

(D)   BACKGROUND CHECKS:

The Principal understands that it may be necessary for the IEDC to conduct an investigation of the Contractor's background, which investigation may be comprehensive. If the IEDC determines it is in the best interest of the IEDC to conduct a background check, the Contractor agrees to, at the IEDC's request, provide any necessary information and authorization to conduct the applicable background check(s). The Contractor agrees that the IEDC may conduct such checks at any time during the term of this Agreement. The Contractor agrees it shall release the IEDC from any liability in connection with conducting the background checks. If the IEDC, in its sole discretion, is dissatisfied with the results of the background check(s), the IEDC may terminate this Agreement.

## 19.   INDEMNIFICATION.

To the fullest extent permitted by law, the Contractor shall indemnify, defend, and hold harmless the IEDC and the State of Indiana and their respective agents, officers, employees and representatives from and against third-party claims damages, losses, and expenses, including but not limited to all judgments recovered therefrom and for expenses in defending any such claims or suits, including court costs, attorneys' fees, and for any other expenses, arising out of or resulting from Contractor's performance of the Services or obligations under this Agreement, provided that such claim, damage, loss, or expense is attributable to bodily injury or death or injury to or destruction of tangible property, including the loss of use thereof, but only to the extent caused by the breach of this Agreement, or the negligent acts or omissions of the Contractor or its employees or a subcontractor, a vendor, or a consultant who Contractor has contracted directly with. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this paragraph, except to the extent caused by any of the indemnified parties. The IEDC shall not provide such indemnification to Contractor.

## 20.   DEBARMENT & SUSPENSION.

(A)   The Contractor certifies, by entering into this Agreement, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or

voluntarily excluded from entering into this Agreement by any federal agency, branch of government, or by any department, agency, or political subdivision of the State of Indiana. The term "principal" for purposes of this Agreement means an officer, director, owner, partner, key employee, or other person with primary management of supervisory responsibilities, or a person who has a critical influence on or substantive control over the operations of the Contractor.

(B)     The Contractor certifies that it has verified the state and federal suspension and debarment status for all subcontractors receiving funds under this Agreement and shall be solely responsible for any recoupment, penalties, or costs that might arise from use of a suspended or debarred subcontractor. The Contractor shall immediately notify the IEDC if any subcontractor becomes debarred or suspended, and shall, at the IEDC's request, take all steps required by the IEDC to terminate its contractual relationship with the subcontractor for work to be performed under this Agreement.

## 21.    ATTORNEYS' FEES & INTEREST.

The IEDC will in good faith perform its required obligations hereunder and does not agree to pay any penalties, liquidated damages, interest, attorneys' fees, court costs, or litigation expenses, except as required by Indiana law, in part, Indiana Code § 5-17-5, Indiana Code § 34-54-8, Indiana Code § 34-13-1, and Indiana Code § 34-52-2-3. Notwithstanding the provisions contained in Indiana Code § 5-17-5, the parties stipulate and agree that any liability resulting from the IEDC's failure to make prompt payment shall be based solely on the amount of funding originating from the State of Indiana and shall not be based on funding from federal or other sources.

## 22.    MISCELLANEOUS.

(A)     No right conferred on either party under this Agreement shall be deemed waived and no breach of this Agreement excused, unless such waiver or excuse is in writing and signed in advance by the party claiming to have waived such right. Neither the IEDC's review, approval, or acceptance of, nor payment for the services required under this Agreement shall be construed to operate as a waiver of any rights under this Agreement or of any cause of action arising out of the performance of this Agreement, and the Contractor shall be and remain liable to the IEDC in accordance with applicable law for all damages to the IEDC caused by the Contractor's breach or negligent performance of any of the services furnished under this Agreement.

(B)     This Agreement constitutes the entire agreement between the parties. No understandings, agreements, or representations, oral or written, not specified within this Agreement will

be valid provisions of this Agreement. This Agreement may not be modified, supplemented, or amended, in any manner, except by written agreement signed by all necessary parties.

(C)    This Agreement may be executed through an original or electronically, and in duplicates or through counterparts, each of which shall be deemed to be an original, and all of which shall constitute but one and the same Agreement.

(D)    Both parties hereto, in the performance of this Agreement, shall act in an individual capacity and not as agents, employees, partners, joint venturers or associates of one another. The employees or agents of one party shall not be deemed or construed to be the employees or agents of the other party for any purposes whatsoever. Neither party will assume liability for any injury (including death) to any persons, or damage to any property arising out of the acts or omissions of the agents, employees or subcontractors of the other party.

(E)    Nothing in this Agreement shall be construed to confer any rights or remedies on any third party not a signatory to this Agreement, including, the employees or sub-contractors of the Contractor.

(F)    If the IEDC determines that it would be in the IEDC's best interest to hire an employee of the Contractor, the Contractor will release the selected employee from any non-compete agreements that may be in effect. This release will be at no cost to the IEDC or to the employee.

(G)    The IEDC is exempt from state, federal, and local taxes. The IEDC will not be responsible for any taxes levied on the Contractor as a result of this Agreement.

(H)    This Agreement was reviewed and/or revised by legal counsel for the IEDC and the Contractor, and no presumption or rule that any ambiguity shall be construed against the party drafting the document shall apply to the interpretation or enforcement of this Agreement.

(I)    Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, rights, and remedies otherwise imposed or available by law.

**23.   INSURANCE.**

The Contractor shall secure and keep in force during the term of this Agreement the insurance coverage required by law and as would be reasonable to cover claims of any nature which may arise out of or result from this Agreement and, to the extent allowed by the applicable insurer, the IEDC shall be named as an additional insured under all such policies. The additional insured coverage shall be primary and non-contributory to any of the IEDC's general liability or other insurance policies and shall apply to both ongoing and completed operations. The Contractor shall furnish certificates of insurance and all endorsements to the IEDC prior to the commencement of work under this Agreement.

## 24. AUTHORITY TO BIND CONTRACTOR.

Notwithstanding anything in this Agreement to the contrary, the signatory for the Contractor represents that he/she has been duly authorized to execute contracts on behalf of the Contractor and has obtained all necessary or applicable approvals from the home office of the Contractor to make this Agreement fully binding upon the Contractor when his/her signature is affixed and is not subject to home office acceptance hereto when accepted by the IEDC.

## 25. INFORMATION TECHNOLOGY ACCESSIBILITY STANDARDS.

If the Contractor provides any information technology-related products or services to the IEDC, the Contractor shall comply with all Indiana Office of Technology (IOT) standards, policies, and guidelines, which are available online at *http://iot.in.gov/architecture/*. The Contractor specifically agrees that all hardware, software, and services provided to or purchased by the IEDC shall be compatible with the principles and goals contained in the electronic and information technology accessibility standards adopted under Section 508 of the Federal Rehabilitation Act of 1973 (29 U.S.C. 794d) and Indiana Code § 4-13.1-3. Any deviation from these architecture requirements must be approved in writing by IOT in advance. The IEDC may terminate this Agreement for default if the Contractor fails to cure a breach of this provision within a reasonable time.

## 26. DISPUTES.

(A)     Should any disputes arise with respect to this Agreement, the Contractor and the IEDC agree to act immediately to resolve such disputes. Neither party shall be required to submit to binding arbitration for the resolution of disputes. Disputes not directly resolved between the Contractor and the IEDC may, subject to the IEDC's sole discretion, be subject to mediation as a condition precedent to litigation. Absent the IEDC requiring or consenting in writing to mediation all disputes shall be subject to litigation as provided for herein. Unless Contractor and the IEDC shall mutually agree otherwise, mediation shall be

administered by the American Arbitration Association in effect on the date of the Agreement. Time is of the essence in the resolution of disputes.

(B)     The Contractor agrees that, the existence of a dispute notwithstanding, it will continue, without delay, to carry out all of its responsibilities under this Agreement that are not affected by the dispute. Should the Contractor fail to continue to perform its responsibilities regarding all non-disputed work or services, without delay, any additional costs incurred by the IEDC or the Contractor as a result of such failure to proceed shall be borne by the Contractor, and the Contractor shall make no claim against the IEDC for such costs.

## 27.    ORDER OF PRECEDENCE; INCORPORATION BY REFERENCE.

Any inconsistency or ambiguity in this Agreement shall be resolved by giving precedence in the following order: (1) this Agreement; (2) exhibits/attachments prepared by the IEDC and incorporated into this Agreement; and (3) exhibits/attachments prepared by the Contractor and incorporated into this Agreement.

## 28.    NON-COLLUSION & ACCEPTANCE.

The undersigned attests, subject to the penalties for perjury, that the undersigned is the properly authorized representative, agent, member, or officer of the Contractor. Further, to the undersigned's knowledge, neither the undersigned nor any other member, employee, representative, agent, or officer of the Contractor, directly or indirectly, has entered into or been offered any sum of money or other consideration for the execution of this Agreement other than that which appears upon the face hereof.

*Signatures on Following Page -- Remainder of Page Intentionally Left Blank*

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

In Witness Whereof, the Contractor and the IEDC have, through duly authorized representatives, entered into this Agreement. The parties, having read and understand the foregoing terms of this Agreement, do by their respective signatures dated below hereby agree to the terms thereof.

## PURE DEVELOPMENT, INC.

DocuSigned by:

*Chris Seger*

Chris Seger, Principal

Date: _____ 4/15/2025 _____

DS

SØ

DS

MW

## INDIANA ECONOMIC DEVELOPMENT CORPORATION

Jeff Blade

(Digital Signature Stamp Below)

*Jeff Blade*

## STATE BUDGET AGENCY

*Chad E. Ranney*
Chad E. Ranney (May 5, 2025 14:21 EDT)

**on Behalf of**

Chad Ranney, Budget Director

Date: _____

Page **18** of **21**

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

# EXHIBIT A
## Project Description & Budget

Services

- Scope based on executed Post Closing Agreement between IEDC and Lilly for Project Grasslands/Tundra.
- Water and wastewater utility extension design for delivery to the Lilly Grasslands project boundary
- Utility locates
- Replat
- Connector road design services including
  - Topo survey
  - Hydraulic analysis and detention design
  - Traffic signall analysis and design
  - Railroad coordination
  - Right-of-way engineering
  - Construction phase design and administration services
- Roundabout design at 300 N and Witt Rd south
- Asbestos testing of structures required for demolition
- Substation agreement with WVPA
- Sanitary extension construction including crossing at 300 N and construction contingency
- CSX railroad crossing allowance
- General infrastructure contingency allowance
- Construction of:
  - Water main extension from CR 300 N to south project boundary
  - New lift station & wastewater system connections
  - New eastern bypass road
  - Witt Rd north improvement
  - CR 300 N improvement
  - CR 375 N improvement
  - CR 450 N improvement
  - Witt Rd south improvement
  - Weight-limited structures and bridges
  - Repairs to maintain road segments during construction phase
  - Roundabout at 300 N and Witt Rd south
  - Reconstruction and expansion of CR 300 N
- Inspection services provided by Boone County and the city of Lebanon

<u>Fee Schedule</u>
Subject to the terms and conditions contained in the Agreement, IEDC agrees to pay Contractor the following amounts:

- Development and Management Fee – 8% of the total value of third-party contracts (including, without limitation, contracts with consultants, vendors, subcontractors, and utility providers) entered into and administered by Contractor on behalf of IEDC for the Services ("**Third-Party Contracts**").

  The Development and Management Fee will be paid in equal monthly installments during the Term; provided, however,. IEDC shall have the right to retain 10% of each monthly installment of the Development and Management Fee (the "**Retained Fee**"). The Retained Fee will be paid by IEDC to Contractor within 30 days after the later to occur of (a) the expiration of the Term, or (b) the Substantial Completion of the Services. For purposes of the Development and Management Fee, "Substantial Completion" means the date on which the total outstanding amount to be paid to a third-party under all outstanding Third-Party Contracts is equal to or less than $250,000.00.

  The fee paid on unexecuted contract line items and the fee paid on the difference between the engineer's estimate and final construction GMP contracts will be reconciled at closeout of the contract between Pure and IEDC.

  At completion/closeout of a contract line item or project, shared savings shall be calculated. In the event that the actual cost of the work is less than the Guaranteed Maximum Price established in the final contract document between Pure and the subcontractor, including contingency, then the difference (the "Shared Savings") minus the Pure fee on the savings shall be shared between the IEDC and Pure as follows: The amount equal to 70% of the Shared Savings to the IEDC and the amount of 30% of the Shared Savings to Pure.

<u>Third-Party Costs</u>

IEDC shall be responsible for the costs of all Third-Party Costs. Third-Party Costs will be itemized by Contractor and submitted to IEDC for approval prior to beginning any work item.

<u>Development Services Release</u>

IEDC will pay Contractor the Third-Party Costs for the following services in an amount not to exceed the GMP as defined in the Agreement (and in amounts not to exceed the amount set forth in each line item for each service):

| Grasslands/Tundra Project | | Carry Over | New | Total |
|---|---|---|---|---|
| | | | | |
| Grasslands Roads | | | | |
|   Construction | Milestone | 3,804,295 | | 3,804,295 |
| | | | | |
| Construction Inspections | Boone County | 1,749,944 | | 1,749,944 |
| CR 300 N Construction | TBD | | 13,761,468 | 13,761,468 |
| CR 300 N Design | ASI | 110,540 | | 110,540 |
| | | | | |
| *Lilly Infrastructure* | | | | |
|   Sanitary - Design | ASI | 3,903 | | 3,903 |
|   Sanitary - Contract Documents | Bowen | 1,082,438 | | 1,082,438 |
|   Sanitary - CR 300 N Crossing | CSX | 125,000 | | 125,000 |
|   Sanitary - Contingency (15%) | Bowen | 531,900 | | 531,900 |
|   CSX Railroad Crossings | CSX | 160,317 | | 160,317 |
| | | | | |
| | | | | |
| Management Fee | Pure | 605,467 | 1,100,917 | 1,706,384 |
| | | | | |
| Grasslands/Tundra Total Costs | | 8,173,805 | 14,862,385 | 23,036,190 |

# Pure Development, Inc (PSA) (427342) (Project Grasslands) expire 12.31.27

Final Audit Report 2025-05-05

| | |
|---|---|
| Created: | 2025-04-22 |
| By: | Glenda Reitz 7EE (GReitz@iedc.IN.gov) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAXI1YUpVjz30H2sx5IaizXV0VDTQCByOn |

## "Pure Development, Inc (PSA) (427342) (Project Grasslands) expire 12.31.27" History

Document created by Glenda Reitz 7EE (GReitz@iedc.IN.gov)
2025-04-22 - 11:19:02 AM GMT

Document emailed to rpaglia@iedc.in.gov for approval
2025-04-22 - 11:19:09 AM GMT

Email viewed by rpaglia@iedc.in.gov
2025-04-22 - 2:15:37 PM GMT

Signer rpaglia@iedc.in.gov entered name at signing as Robert J. Paglia
2025-04-22 - 6:11:22 PM GMT

Document approved by Robert J. Paglia (rpaglia@iedc.in.gov)
Approval Date: 2025-04-22 - 6:11:24 PM GMT - Time Source: server

Document emailed to kkovert@iedc.in.gov for signature
2025-04-22 - 6:11:29 PM GMT

Email viewed by kkovert@iedc.in.gov
2025-04-28 - 6:17:57 PM GMT

Signer kkovert@iedc.in.gov entered name at signing as Kyle Kovert
2025-04-28 - 6:18:20 PM GMT

Document e-signed by Kyle Kovert (kkovert@iedc.in.gov)
Signature Date: 2025-04-28 - 6:18:22 PM GMT - Time Source: server

Document emailed to Jonathan Eccles 4MM (jeccles@sba.in.gov) for signature
2025-04-28 - 6:18:24 PM GMT

 Adobe Acrobat Sign

Email viewed by Jonathan Eccles 4MM (jeccles@sba.in.gov)
2025-05-01 - 12:46:23 PM GMT

Document signing delegated to CRanney@gov.in.gov by Jonathan Eccles 4MM (jeccles@sba.in.gov)
2025-05-02 - 7:46:10 PM GMT

Document emailed to CRanney@gov.in.gov for signature
2025-05-02 - 7:46:11 PM GMT

Email viewed by CRanney@gov.in.gov
2025-05-05 - 6:19:15 PM GMT

Signer CRanney@gov.in.gov entered name at signing as Chad E. Ranney
2025-05-05 - 6:21:20 PM GMT

Document e-signed by Chad E. Ranney (CRanney@gov.in.gov)
Signature Date: 2025-05-05 - 6:21:23 PM GMT - Time Source: server

Agreement completed.
2025-05-05 - 6:21:23 PM GMT

**Adobe Acrobat Sign**

# EXECUTIVE DOCUMENT SUMMARY



State Form 41221 (R10/4-06)

Instructions for completing the EDS and the Contract process.

1. Please read the guidelines on the back of this form.
2. Please type all information.
3. Check all boxes that apply.
4. For amendments / renewals, attach original contract.
5. Attach additional pages if necessary.

| 1. EDS Number: PSA-5-PSA-1025 | 2. Date prepared: 4/28/2025 |
|---|---|

## 3. CONTRACTS & LEASES

- [X] Professional/Personal Services
- [ ] Grant
- [ ] Lease
- [ ] Attorney
- [ ] MOU
- [ ] QPA _____
- [ ] Contract for procured Services
- [ ] Maintenance
- [ ] License Agreement
- [ ] Amendment# _____
- [ ] Renewal # _____
- [ ] Other _____

## FISCAL INFORMATION

| 4. Account Number: 78410-10000.538160 | 5. Account Name: DEAL CLOSING FUND |
|---|---|
| 6. Total amount this actio $12,810,420.00 | 7. New contract total: $12,810,420.00 |
| 8. Revenue generated this action: $00.00 | 9. Revenue generated total contract: $0.00 |

10. New total amount for each fiscal year :

Year 2025 _____ $12,810,420.00
Year _____
Year _____ $ _____
Year _____ $ _____

## TIME PERIOD COVERED IN THIS EDS

| 11. From (month, day, year): 4/1/2025 | 12. To ( month, day, year ): 3/31/2027 |
|---|---|

13. Method of source selection:

_____ Bid/Quotation  _____ Emergency   [X] Negotiated
_____ RFP# _____  _____ Other *(specify)* _____  _____ Special Procurement

## AGENCY INFORMATION

| 14. Name of agency: Economic Development Corp | 15. Requisition Number: 0000011221 |
|---|---|

16. Address: **IN** Economic Development Corp
Central Office
1 **N** CAPITOL AVE STE 700
**INDIANAPOLIS, IN** 46204-2040

## AGENCY CONTACT INFORMATION

| 17. Name: Glenda Reitz-May | 18. Telephone #: 317.447.2617 |
|---|---|
| 19. E-mail address: greitz@iedc.in.gov | |

## COURIER INFORMATION

| 20. Name: Glenda Reitz | 21. Telephone #: 317.447.2617 |
|---|---|
| 22. E-mail address: greitz@iedc.in.gov | |

## VENDOR INFORMATION

23 Vendor ID # 00000401445

| 24. Name: Pure Development, Inc. | 25. Telephone #: N/A |
|---|---|

26. Address: 815 E. 65th Street
Indianapolis, IN
462206

27. E-mail address: cseger@puredevelopment.com

28. Is the vendor registered with the Secretary of State? (Out of State Corporations, must be registered) __X__ Yes _____ No

| 29. Primary Vendor: M/WBE/IN-Vetera | 30. Primary Vendor Percentages |
|---|---|
| Minority: ____ Yes __X__ No | |
| Women: ____ Yes __X__ No | 100.0 % |
| IN-Veteran ____ Yes __X__ No | |

| 31. Sub Vendor: M/WBE/IN-Veteran | 32. If yes, list the %: |
|---|---|
| Minority: ____ Yes __X__ No | Minority: _____ % |
| Women: ____ Yes __X__ No | Women: _____ % |
| IN-Veteran ____ Yes __X__ No | IN- Veteran _____ % |

| 33. Is there Renewal Language in ____ Yes __X__ No | 34. Is there a "Termination for Convenience" clause in the document? __X__ Yes _____ No |
|---|---|

35. Will the attached document involve data processing or telecommunications system _____ Yes: IOT or Delegate has signed off on contract

36. Statutory Authority *(Cite applicable Indiana or Federal Codes)*: IC 5-28-14

37. Description of work and justification for spending money. *(Please give a brief description of the scope of work included in this agreement.)*

*Contractor shall assist the IEDC to fully develop property, to prepare it for sale as a state owned, commercially viable, shovel ready innovation district to be used for research and development, advanced manufacturing, technology related, life and bio sciences uses. The IEDC is relying on Pure, based on its commercial development experience to act in its professional capacity as an owner's representative and to make decisions that both support the marketability and profitability of the property for the state.*

38. Justification of vendor selection and determination of price reasonableness: We have used this company in the past for our advertising and are very pleased with their service.

Project # 427340

39. If this contract is submitted late, please explain why: *(Required if more than 30 days late.)*

| 40. Agency fiscal officer or representative appro | 41. Date Approved | 42. Budget agency approval | 43. Date Approved |
|---|---|---|---|
| *Kyle Rovert* Kyle Rovert (May 2, 2025 15:41 EDT) | | *Chad E. Ranney* Chad E. Ranney (May 6, 2025 10:51 EDT) | |
| 44. Attorney General's Office approval | 45. Date Approved | 46. Agency representative receiving from AG | 47. Date Approved |



114478-000

## PROJECT SERVICES AGREEMENT

This **PROJECT SERVICES AGREEMENT** (this "**Agreement**") is made and entered into, by and between the **INDIANA ECONOMIC DEVELOPMENT CORPORATION** (the "**IEDC**") and **PURE DEVELOPMENT, INC.** (the "**Contractor**") for Project Domino as detailed in Exhibit A.

In consideration of the mutual undertakings and covenants set forth herein, the parties hereby agree as follows:

### 1. PURPOSE OF AGREEMENT AND THE CONTRACT.

The purpose of this Agreement is for the Contractor to provide the services (collectively, the "**Services**") set forth on **Exhibit A** attached hereto and incorporated herein. Contractor shall cause to be furnished and delivered all labor, equipment, materials, and services and cause to be performed all of the work necessary or incidentally required to provide and complete the Services in a proper and timely manner, consistent with all applicable industry standards. The Contract Documents consist of this Agreement, other documents listed in this Agreement, and Modifications issued after execution of this Agreement. A "**Modification**" is (1) a written amendment to the Contract signed by Contractor, the IEDC, and the State Budget Agency ("**SBA**"); or, (2) a written order for a minor, no-cost change in the Services issued by the IEDC. The Contract Documents form the "**Contract**" between IEDC and Contractor, and the Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations, or agreements, either written or oral. The Contract may only be amended or modified by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind between any persons or entities other than the IEDC and the Contractor.

### 2. TERM.

(A)     This Agreement shall commence on April 1, 2025 ("**Effective Date**") and shall remain in effect through March 31, 2027 or unless earlier terminated in accordance with the provisions of this Agreement ("**Term**"); provided, however, in the event Contractor has not completed the Services by the expiration of the Term the IEDC, in its sole and exclusive discretion, may elect to unilaterally extend the Term for such period of time that it deems reasonable for Contractor to complete the Services. In no event shall payments be made for work done or services performed after the end of the Term.

(B)     Any provisions which, by their nature, are intended to apply after termination of this Agreement shall survive termination of this Agreement, including, but not limited to, provisions concerning indemnification, confidentiality of information, ownership of documents and materials, payment of amounts owed for work properly performed and owed under this Agreement, assignment of subcontracts or other agreements, limitations of liability, and intellectual property clauses.

### 3. CONSIDERATION.

(A)     All services performed by the Contractor under this Agreement must be authorized by the IEDC and consistent with the description set forth on **Exhibit A**, attached hereto and

incorporated herein. IEDC shall be responsible for the third-party costs associated with land sales and acquisitions, design, consulting, legal fees, due diligence, zoning, entitlements, permitting, utility agreements, construction, including, without limitation, utility construction, roadway construction, and all other related construction, and project specific request for proposal pursuits (collectively, "**Third-Party Costs**"). Third-Party Costs will be itemized by Contractor and submitted to IEDC for approval prior to beginning any work item. The total of the Third-Party Costs under this Agreement shall not exceed the sum of $12,810,420 (the "**Guaranteed Maximum Price**" or "**GMP**") subject to adjustment for Modifications as provided for in this Agreement. Total remuneration under this Agreement shall not exceed: $12,810,420.

(B)     For the Services properly completed, the Contractor shall be paid the fees set forth in the "Fee Schedule" on **Exhibit A** attached hereto and incorporated herein.

(C)     All work and/or services provided by the Contractor under this Agreement must be performed to the IEDC's reasonable satisfaction, which satisfaction shall be determined at the reasonable discretion of the IEDC, in accordance with all applicable federal, state, local laws, ordinances, rules, and regulations, and in conformance with established industry standards. The IEDC shall not be required to pay for work and services found to be unsatisfactory (based on the standards set forth in this Section), not authorized by or in accordance with the terms of this Agreement, performed in violation of federal, state, or local laws, and work and services which are defective, fail to comply with the Contract Documents, or otherwise not in conformance with established industry standards.

## 4.     PAYMENTS.

(A)     The Contractor shall submit monthly invoices for payment in connection with the Services. Such invoices shall comply with the requirements of this Section. The Contractor shall submit with each invoice a progress report summarizing the Services performed to date with a schedule of values identifying the percentage of completion with respect to each discrete item of the Services. The Contractor shall submit invoices to the IEDC by email at processing@iedc.in.gov and dclerget@iedc.in.gov.

(B)     All payment obligations shall be made in arrears in accordance with Indiana law and state fiscal policies and procedures, and as required by Indiana Code § 4-13-2-14.8. Notwithstanding any other law, rule, or custom, a person or company whom has a contract with the State of Indiana or submits invoices to the state for payment shall authorize, in writing, the direct deposit by electronic funds transfer of all payments by the state to the person or company. The written authorization must designate a financial institution and

an account number to which all payments are to be credited. Any exception to this requirement must be approved by the IEDC and the State of Indiana. For forms and additional information, see the Auditor of State's website at *www.in.gov/auditor/forms.*

(C)    No travel and other expenditures made by the Contractor will be reimbursed by the IEDC unless provided for in the Fee Schedule. Allowable expenditures made by the Contractor for travel will be reimbursed at the current rate paid by the IEDC and in accordance with the State Travel Policies and Guidelines as specified in the current Financial Management Circular, available at *http://www.in.gov/idoa/2459.htm.* All travel expenses must be approved by the IEDC in writing in advance. Out-of-state travel requests must be reviewed by the IEDC for availability of funds and for appropriateness per Financial Management Circular guidelines.

(D)    The IEDC may withhold payment, in whole or in part, to the extent reasonably necessary to protect the IEDC from loss due to, arising from, or related to: 1) defective work, including design and construction, not remedied; 2) third party claims filed unless security acceptable to the IEDC is provided; or 3) the failure of Contractor to make payments properly to subcontractors, vendors or service providers for services, labor, materials or equipment.

## 5.    CONFIDENTIALITY OF INFORMATION.

(A)    The Contractor understands and agrees that data, materials, and information disclosed to the Contractor may contain confidential and protected data. Therefore, the Contractor promises and assures that data, material, and information disclosed to the Contractor by the IEDC for the purpose of this Agreement, and specifically identified as confidential information will not be disclosed to others or discussed with other parties without the prior written consent of the IEDC, provided, however, that for purposes of this Section (A) the Contractor may disclose confidential information to its employees as necessary to support Contractor's performance of the Services and to consultants, contractors, and advisors so long as such consultants, contractors, and advisors are bound by obligations to maintain the confidentiality of such confidential information.

(B)    The parties acknowledge that the Services may require or allow access to data, materials, and information containing Social Security numbers or other personal information maintained by the IEDC in its computer system or other records. In addition to the covenant made above in this Section, and pursuant to 10 IAC 5-3-1(4), the Contractor and the IEDC agree to comply with the provisions of Indiana Code § 4-1-10 and Indiana Code § 4-1-11. If any Social Security number(s) or personal information (as defined in Indiana Code § 4-

1-11-3) is/are disclosed by the Contractor, the Contractor agrees to pay the cost of the notice of disclosure of a breach of the security of the system, in addition to any other claims and expenses for which it is liable under the terms of this Agreement.

## 6. USE OF THE IEDC NAME.

The IEDC has not granted any rights to use its name, trademark, intellectual property, or logos. The Contractor agrees that it will not use the name or intellectual property, including, but not limited to, IEDC trademarks or logos, in any manner, including commercial advertising or as a business reference without the prior written consent of the IEDC. In all cases in which the IEDC's participation will be referenced, the IEDC shall have the right of review and approval of the use, disclosure, and the finished product prior to its publication. All such requests shall be made in writing and delivered to the IEDC for approval at its sole discretion.

## 7. GOVERNING LAW.

(A)     This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Indiana without regard to principles of choice of law. Suit, if any, must be brought in the State of Indiana and the venue for any court action shall be in the Superior Court of Marion County, Indiana.

(B)     If any section, paragraph, term, condition, or provision of this Agreement is found, by a court of competent jurisdiction, to be invalid or unenforceable, or if any paragraph, term, condition, or provision is found to violate or contravene the laws of the State of Indiana or applicable federal law then the section, paragraph, term, condition, or provision so found will be deem severed from this Agreement, but all other sections, paragraphs, terms, conditions, and provisions will remain in full force and effect.

(C)     The Contractor understands that this Agreement is a public record subject to request pursuant to Indiana Code § 5-14-3 and its exemptions. Use by the public of the information contained in this Agreement shall not be considered an act of the IEDC or the State.

## 8. TERMINATION & FUNDING CANCELLATION.

(A)     This Agreement may be terminated by the IEDC at any time, for any reason, with or without cause, if the IEDC determines that such termination is in its best interest. Termination of services shall be effected by delivery to the Contractor of a termination notice at least thirty (30) days prior to the termination effective date, specifying the extent to which performance of services under such termination becomes effective. The Contractor shall be compensated for services properly rendered prior to the effective date

of termination and, subject to offset for actual damages and/or costs incurred by the IEDC due to or arising from Contractor's breach of this Agreement. The IEDC will not be liable for services performed after the effective date of termination. The Contractor shall be compensated for services herein provided, but in no case shall any price increase be allowed on individual line items if canceled in whole or in part prior to the original termination date.

(B)     When the Director of the State Budget Agency makes a written determination that funds are not appropriated or otherwise available to support continuation of performance of this Agreement, the Contractor shall be notified and this Agreement shall be cancelled. A determination by the Budget Director that funds are not appropriated or otherwise available to support continuation of performance shall be final and conclusive. Contractor shall be paid for all services performed prior to the date of cancellation.

## 9.     PROGRESS REPORTS.

The Contractor shall submit monthly written progress reports to the IEDC. The progress reports shall serve the purpose of assuring the IEDC that work is progressing in a timely manner, and that completion can be reasonably assured on the scheduled date. The Contractor shall submit progress reports to the IEDC by email at reports@iedc.in.gov and dclerget@iedc.in.gov.

## 10.    ACCESS TO RECORDS & AUDITS.

(A)     The Contractor and its subcontractors, if any, shall maintain all books, documents, papers, accounting records, and other evidence pertaining to all costs incurred under this Agreement. The Contractor shall make such materials available at its respective office at all reasonable times during this Agreement, and for three (3) years from the date of final payment under this Agreement, for inspection by the IEDC or by any other authorized representative of the State. Copies thereof shall be furnished at no cost to the IEDC or by any other authorized representative of state government if requested.

(B)     The Contractor acknowledges that it may be required to submit to an audit of funds paid through this Agreement. Any such audit shall be conducted in accordance with Indiana Code § 5-11-1 *et seq.* and any audit guidelines specified by the IEDC.

## 11.    THE CONTRACTOR'S SERVICES.

(A)     The Contractor recognizes that the Services are vital to the IEDC and must be continued without interruption and that, upon the expiration of this Agreement, a successor, either the

IEDC or another contractor, may continue them. The Contractor agrees to use its best efforts and cooperation to effect an orderly and efficient transition to a successor to provide the services contemplated hereby. This Agreement shall be deemed to be substantially performed only when fully performed according to its terms and conditions and any written modifications thereof.

(B)     The Contractor shall not commence any additional services or change the scope of services unless and until authorized in writing by the IEDC and the SBA through a Modification to the Contract as set forth in Section 1 of this Agreement. No claim for additional compensation or any change to the Fee Schedule or Third-Party Costs shall be made unless and until authorized in writing by the IEDC and SBA as provided for in this paragraph. This Agreement may only be amended, supplemented or modified by a written document executed in the same manner as this Agreement.

(C)     The Contractor shall execute its responsibilities by following and applying at all times the highest professional and technical guidelines and standards. The Contractor represents that it has or shall obtain at its own expense all personnel, materials, and equipment required to perform the services under this Agreement. All of the work performed hereunder shall be performed by the Contractor or under its supervision. The Contractor warrants that all personnel assigned to perform the Services or other consultants or subcontractors engaged by the Contractor to perform the Services are fully qualified, licensed and authorized to perform such services under state and local laws. If the IEDC becomes dissatisfied with the work product of, or the working relationship with, any individuals assigned to work under this Agreement, the IEDC may request in writing the replacement of any or all such individuals, and the Contractor shall grant such request.

(D)     The IEDC shall, at all reasonable times, have the right to inspect the work, services or performance of the Contractor. The Contractor shall furnish all reasonable aid and assistance required by the IEDC for proper examination of the work or services. Such inspection shall not relieve the Contractor of any obligation to perform said services in accordance with the law or with this Agreement.

(E)     Contractor shall be responsible to the IEDC for acts and omissions of the Contractor's employees and those subcontractors, vendors, consultants, and other persons or entities who Contractor has contracted directly with and who are performing portions of the Services for, or on behalf of, the Contractor.

(F)     Contractor shall be responsible for causing those subcontractors, vendors, consultants, and other persons or entities who Contractor has contracted directly with, and who are

performing portions of the Services, to comply with any and all applicable warranty requirements for the Services performed that may be required by the applicable municipality or authority having jurisdiction, including, without limitation, warranty requirements that may require the correction of defective work.

## 12.  OWNERSHIP OF DOCUMENTS & MATERIALS.

(A)  All documents, records, programs, applications, data, algorithms, film, tape, articles, memoranda, and other materials (the "**Materials**") not developed or licensed by the Contractor prior to execution of this Contract, but specifically developed pursuant to or in connection with this Contract shall be considered "work for hire" and the Contractor hereby transfers and assigns any ownership claims to the IEDC so that all Materials will be the property of the IEDC. If ownership interest in the Materials cannot be assigned to the IEDC, the Contractor grants the IEDC a non-exclusive, non-cancelable, perpetual, worldwide royalty-free license to use the Materials and to use, modify, copy and create derivative works of the Materials.

(B)  Use of these materials, other than as necessary for the performance of this Agreement by the Contractor, without the prior written consent of the IEDC, is prohibited. The Contractor shall take such action as is necessary under law to preserve the IEDC's rights in and to the work product or intellectual property while such property is within the control and/or custody of the Contractor. During the performance of this Agreement, the Contractor shall be responsible for any loss of or damage to these materials developed for or supplied by the IEDC and used to develop or assist in the services provided while the materials are in the possession of the Contractor. Any loss or damage thereto shall be restored at the Contractor's expense. The Contractor shall provide the IEDC full, immediate, and unrestricted access to the work product during the term of this Agreement.

## 13.  COMPLIANCE WITH LAWS.

(A)  The Contractor agrees to comply with all applicable federal, state and local laws, rules, regulations and ordinances, and all provisions required thereby to be included herein are hereby incorporated by reference. The enactment or modification of any applicable state or federal statute or the promulgation of regulations thereunder after execution of this Agreement shall be reviewed by the IEDC and the Contractor to determine whether the provisions of this Agreement require formal modification.

(B)  The Contractor and its agents shall abide by all ethical requirements that apply to persons who have a business relationship with the State of Indiana, as set forth in Indiana Code §

4-2-6, Indiana Code § 4-2-7, the regulations promulgated thereunder, and Executive Order 04-08, dated April 27, 2004. If the Contractor is not familiar with these ethical requirements, the Contractor should refer any questions to the Indiana State Ethics Commission, or visit the website of the Indiana Inspector General at *http://www.in.gov/ig/*. If the Contractor or its agents violate any applicable ethical standards, the IEDC may, in its sole discretion, terminate this Agreement immediately upon notice to Contractor. In addition, the Contractor may be subject to penalties under Indiana Code § 4-2-6, Indiana Code § 4-2-7, Indiana Code § 35-44.1-1-4 and under any other applicable laws.

(C)     The Contractor certifies by entering into this Agreement that neither it nor its principal(s) is presently in arrears in payment of its taxes, permit fees or other statutory, regulatory or judicially required payments to the State of Indiana or to the IEDC. Further, the Contractor agrees that any payments in arrears and currently due to the State of Indiana or to the IEDC may be withheld from payments due to the Contractor. Additionally, further work or payments may be withheld, delayed, or denied and/or this Agreement suspended until the Contractor is current in any payments set forth above and has submitted proof of such payment to the IEDC.

(D)     The Contractor warrants that it has no current or outstanding criminal (including pending), civil, or enforcement actions initiated by the State of Indiana and agrees that it will immediately notify the IEDC of any such actions. During the term of such actions, the Contractor agrees that the IEDC may delay, withhold, or deny work under any supplement, amendment, change order, or other contractual device issued pursuant to this Agreement.

(E)     If a valid dispute exists as to the Contractor's liability or guilt in any action initiated by the IEDC or the State of Indiana or its agencies, and the IEDC decides to delay, withhold, or deny work to Contractor, Contractor may request that it be allowed to continue, or receive work, without delay. Absent a decision by the IEDC, or a court order or separate order by the State of Indiana or its other agencies, to delay, withhold, or deny work to Contractor, the Contractor shall continue to perform the Services without delay regardless of any action initiated by the IEDC, the State of Indiana or its agencies.

(F)     Any payments that the IEDC may delay, withhold, deny, or apply under this Paragraph 13 shall not be subject to penalty or interest under Indiana Code § 5-17-5.

(G)     The Contractor warrants that the Contractor and its subcontractors, if any, shall obtain and maintain all required permits, licenses, and approvals, and shall comply with all health, safety, and environmental statutes, rules, or regulations applicable in connection with the services provided under this Agreement. Failure to do so is a material breach of this

Agreement and grounds for immediate termination of this Agreement and denial of further work with the IEDC. The IEDC shall not be required to reimburse the Contractor for any services performed when Contractor or its employees or subcontractors were not or are not in compliance with such applicable standards, laws, rules or regulations. If licensure, certification or accreditation expires or is revoked, Contractor shall notify the IEDC immediately, and the IEDC, at its option, may immediately terminate this Agreement.

(H)     The Contractor affirms that, if it is an entity described in Title 23 of the Indiana Code, it is properly registered and owes no outstanding reports to the Indiana Secretary of State.

## 14. COMPLIANCE WITH TELEPHONE SOLICITATIONS ACT.

As required by Indiana Code § 5-22-3-7:

(A)     The Contractor and any principals of the Contractor certify that:

(1)     The Contractor, except for de minimis and nonsystematic violations, has not violated the terms of:

(a)     Indiana Code § 24-4.7 [Telephone Solicitation of Consumers];

(b)     Indiana Code § 24-5-12 [Telephone Solicitations]; or

(c)     Indiana Code § 24-5-14 [Regulation of Automatic Dialing Machines] in the previous three hundred sixty-five (365) days, even if Indiana Code § 24-4.7 is preempted by federal law; and

(2)     The Contractor will not violate the terms of Indiana Code § 24-4.7 for the duration of this Agreement, even if Indiana Code § 24-4.7 is preempted by federal law.

(B)     The Contractor and any principals of the Contractor certify that an affiliate or principal of the Contractor and any agent acting on behalf of the Contractor or on behalf of an affiliate or principal of the Contractor:

(1)     Except for de minimis and nonsystematic violations, has not violated the terms of Indiana Code § 24-4.7 in the previous three hundred sixty-five (365) days, even if Indiana Code § 24-4.7 is preempted by federal law; and

(2)     Will not violate the terms of Indiana Code § 24-4.7 for the duration of this Agreement, even if Indiana Code § 24-4.7 is preempted by federal law.

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

## 15. DRUG-FREE WORKPLACE CERTIFICATION.

As required by Executive Order No. 90-5 dated April 12, 1990, issued by the Governor of Indiana, the Contractor hereby covenants and agrees to make a good faith effort to provide and maintain a drug-free workplace. The Contractor will give written notice to the IEDC within ten (10) days after receiving actual notice that the Contractor, or an employee of the Contractor in the State of Indiana, has been convicted of a criminal drug violation occurring in the workplace. False certification or violation of this certification may result in sanctions including, but not limited to, suspension of contract payments, termination of this Agreement and/or debarment of contracting opportunities with the State for up to three (3) years.

In addition to the provisions of the above paragraph, the Contractor certifies and agrees that it will provide a drug-free workplace by:

(A)     Publishing and providing to all of its employees a statement notifying them that the unlawful manufacture, distribution, dispensing, possession or use of a controlled substance is prohibited in the Contractor's workplace, and specifying the actions that will be taken against employees for violations of such prohibition;

(B)     Establishing a drug-free awareness program to inform its employees of (1) the dangers of drug abuse in the workplace; (2) the Contractor's policy of maintaining a drug-free workplace; (3) any available drug counseling, rehabilitation and employee assistance programs; and (4) the penalties that may be imposed upon an employee for drug abuse violations occurring in the workplace;

(C)     Notifying all employees in the statement required by subparagraph (A) above that as a condition of continued employment, the employee will (1) abide by the terms of the statement; and (2) notify the Contractor of any criminal drug statute conviction for a violation occurring in the workplace no later than five (5) days after such conviction;

(D)     Notifying the State in writing within ten (10) days after receiving notice from an employee under subdivision (C)(2) above, or otherwise receiving actual notice of such conviction;

(E)     Within thirty (30) days after receiving notice under subdivision (C)(2) above of a conviction, imposing the following sanctions or remedial measures on any employee who is convicted of drug abuse violations occurring in the workplace: (1) taking appropriate personnel action against the employee, up to and including termination; or (2) requiring such employee to satisfactorily participate in a drug abuse assistance or rehabilitation program approved for such purposes by a federal, state or local health, law enforcement, or other appropriate agency; and

(F) Making a good faith effort to maintain a drug-free workplace through the implementation of subparagraphs (A) through (E) above.

## 16. NONDISCRIMINATION.

Pursuant to Indiana Code § 22-9-1-10 and the Civil Rights Act of 1964, the Age Discrimination in Employment Act and the Americans with Disabilities Act, the Contractor and its subcontractors, if any, shall not discriminate against any employee or applicant for employment relating to this Agreement with respect to the hire, tenure, terms, conditions, or privileges of employment or any matter directly or indirectly related to employment, because of the employee or applicant's race, color, religion, sex, age disability, national origin or ancestry or status as a veteran, or any other characteristic protected by federal, state, or local law. Breach of this covenant may be regarded as a material breach of this Agreement. Acceptance of this Agreement also signifies compliance with applicable federal and state laws and regulations prohibiting the aforementioned discrimination in the provision of services.

## 17. NOTICE TO PARTIES.

(A) Whenever any notice, statement, or other communication ("**Notice**") is required under this Agreement, it shall be sent to the following address, unless otherwise advised in writing:

(1) Notices to the IEDC shall be sent to:

INDIANA ECONOMIC DEVELOPMENT CORPORATION
Attn: General Counsel
One North Capitol Avenue, Suite 700
Indianapolis, IN 46204-2288
reports@iedc.in.gov

(2) Notices to the Contractor shall be sent to:

Pure Development, Inc.
Attn: Chris Seger
1351 Roosevelt Ave., Suite 100
Indianapolis, IN 46202
cseger@puredevelopment.com

(B) Any change in the Contractor's contact information must be provided in writing by the Contractor to the IEDC in accordance with this Section.

(C)    Notice shall be provided via electronic mail to the Contractor's electronic mail address and via certified, registered, or first-class U.S. mail at the option of the IEDC. Notice shall be deemed delivered upon dispatch.

**18.    SUBCONTRACTS, ASSIGNMENT & KEY PERSONS.**

(A)    The Contractor shall not assign or subcontract the whole or any part of this Agreement without the prior written consent of the IEDC; provided, however, Contractor may assign this Agreement to an entity under the direction of the Principal and employing Michael Watts ("**Related Entity**") without such written consent so long as Contractor provides notice of such assignment within five (5) days prior such assignment is to take effect. The Contractor agrees to bind all subcontractors, successors and assignees to all the terms and conditions of this Agreement. The Contractor shall specifically require each subcontractor, if any, who has access to the IEDC's confidential information in the course of performing any services to be bound by the confidentiality provisions in Section 5 of this Agreement and, at the IEDC's discretion, to execute a non-disclosure agreement that is satisfactory to the IEDC.

(B)    Each subcontract agreement, vendor agreement, consulting agreement or other agreement between Contractor and any party providing labor, materials, equipment or services of any kind (professional and non-professional) involving a portion of the Services is assigned to the IEDC, provided that the assignment is only effective upon: (i) IEDC's termination of this Agreement in the event that Contractor dissolves and this Agreement is not assigned by Contractor to a Related Entity within 30 days after such dissolution; or (ii) IEDC's written request after a breach by Contractor of its obligations under the Agreement and such breach has continued uncured for a period of thirty (30) days. Contractor will use commercially reasonable efforts to ensure each and every agreement between Contractor and other entities performing a portion of the Service allows Contractor to assign such agreements, including, without limitation, to the IEDC.

(C)    KEY PERSON(S):

    (1) This Agreement will be performed under the direction of **Chris Seger** (the "**Principal**"). In the event the Principal is unable or unwilling to continue providing the services under this Agreement, the IEDC may suspend or terminate this Agreement.

    (2) Nothing in this Section shall be construed to prevent the Contractor from using the services of others to perform its duties as defined in Section 1 of this Agreement,

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

as well as any services ancillary to those duties, including secretarial, clerical, and common labor duties. The Contractor shall, at all times, remain responsible for the performance of all necessary duties, whether performed by the Principal, employees, subcontractors, or others.

(D)   BACKGROUND CHECKS:

The Principal understands that it may be necessary for the IEDC to conduct an investigation of the Contractor's background, which investigation may be comprehensive. If the IEDC determines it is in the best interest of the IEDC to conduct a background check, the Contractor agrees to, at the IEDC's request, provide any necessary information and authorization to conduct the applicable background check(s). The Contractor agrees that the IEDC may conduct such checks at any time during the term of this Agreement. The Contractor agrees it shall release the IEDC from any liability in connection with conducting the background checks. If the IEDC, in its sole discretion, is dissatisfied with the results of the background check(s), the IEDC may terminate this Agreement.

## 19.   INDEMNIFICATION.

To the fullest extent permitted by law, the Contractor shall indemnify, defend, and hold harmless the IEDC and the State of Indiana and their respective agents, officers, employees and representatives from and against third-party claims damages, losses, and expenses, including but not limited to all judgments recovered therefrom and for expenses in defending any such claims or suits, including court costs, attorneys' fees, and for any other expenses, arising out of or resulting from Contractor's performance of the Services or obligations under this Agreement, provided that such claim, damage, loss, or expense is attributable to bodily injury or death or injury to or destruction of tangible property, including the loss of use thereof, but only to the extent caused by the breach of this Agreement, or the negligent acts or omissions of the Contractor or its employees or a subcontractor, a vendor, or a consultant who Contractor has contracted directly with. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this paragraph, except to the extent caused by any of the indemnified parties. The IEDC shall not provide such indemnification to Contractor.

## 20.   DEBARMENT & SUSPENSION.

(A)   The Contractor certifies, by entering into this Agreement, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or

voluntarily excluded from entering into this Agreement by any federal agency, branch of government, or by any department, agency, or political subdivision of the State of Indiana. The term "principal" for purposes of this Agreement means an officer, director, owner, partner, key employee, or other person with primary management of supervisory responsibilities, or a person who has a critical influence on or substantive control over the operations of the Contractor.

(B)   The Contractor certifies that it has verified the state and federal suspension and debarment status for all subcontractors receiving funds under this Agreement and shall be solely responsible for any recoupment, penalties, or costs that might arise from use of a suspended or debarred subcontractor. The Contractor shall immediately notify the IEDC if any subcontractor becomes debarred or suspended, and shall, at the IEDC's request, take all steps required by the IEDC to terminate its contractual relationship with the subcontractor for work to be performed under this Agreement.

## 21. ATTORNEYS' FEES & INTEREST.

The IEDC will in good faith perform its required obligations hereunder and does not agree to pay any penalties, liquidated damages, interest, attorneys' fees, court costs, or litigation expenses, except as required by Indiana law, in part, Indiana Code § 5-17-5, Indiana Code § 34-54-8, Indiana Code § 34-13-1, and Indiana Code § 34-52-2-3. Notwithstanding the provisions contained in Indiana Code § 5-17-5, the parties stipulate and agree that any liability resulting from the IEDC's failure to make prompt payment shall be based solely on the amount of funding originating from the State of Indiana and shall not be based on funding from federal or other sources.

## 22. MISCELLANEOUS.

(A)   No right conferred on either party under this Agreement shall be deemed waived and no breach of this Agreement excused, unless such waiver or excuse is in writing and signed in advance by the party claiming to have waived such right. Neither the IEDC's review, approval, or acceptance of, nor payment for the services required under this Agreement shall be construed to operate as a waiver of any rights under this Agreement or of any cause of action arising out of the performance of this Agreement, and the Contractor shall be and remain liable to the IEDC in accordance with applicable law for all damages to the IEDC caused by the Contractor's breach or negligent performance of any of the services furnished under this Agreement.

(B)   This Agreement constitutes the entire agreement between the parties. No understandings, agreements, or representations, oral or written, not specified within this Agreement will

be valid provisions of this Agreement. This Agreement may not be modified, supplemented, or amended, in any manner, except by written agreement signed by all necessary parties.

(C)     This Agreement may be executed through an original or electronically, and in duplicates or through counterparts, each of which shall be deemed to be an original, and all of which shall constitute but one and the same Agreement.

(D)     Both parties hereto, in the performance of this Agreement, shall act in an individual capacity and not as agents, employees, partners, joint venturers or associates of one another. The employees or agents of one party shall not be deemed or construed to be the employees or agents of the other party for any purposes whatsoever. Neither party will assume liability for any injury (including death) to any persons, or damage to any property arising out of the acts or omissions of the agents, employees or subcontractors of the other party.

(E)     Nothing in this Agreement shall be construed to confer any rights or remedies on any third party not a signatory to this Agreement, including, the employees or sub-contractors of the Contractor.

(F)     If the IEDC determines that it would be in the IEDC's best interest to hire an employee of the Contractor, the Contractor will release the selected employee from any non-compete agreements that may be in effect. This release will be at no cost to the IEDC or to the employee.

(G)     The IEDC is exempt from state, federal, and local taxes. The IEDC will not be responsible for any taxes levied on the Contractor as a result of this Agreement.

(H)     This Agreement was reviewed and/or revised by legal counsel for the IEDC and the Contractor, and no presumption or rule that any ambiguity shall be construed against the party drafting the document shall apply to the interpretation or enforcement of this Agreement.

(I)     Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, rights, and remedies otherwise imposed or available by law.

23.     **INSURANCE.**

The Contractor shall secure and keep in force during the term of this Agreement the insurance coverage required by law and as would be reasonable to cover claims of any nature which may arise out of or result from this Agreement and, to the extent allowed by the applicable insurer, the IEDC shall be named as an additional insured under all such policies. The additional insured coverage shall be primary and non-contributory to any of the IEDC's general liability or other insurance policies and shall apply to both ongoing and completed operations. The Contractor shall furnish certificates of insurance and all endorsements to the IEDC prior to the commencement of work under this Agreement.

## 24.  AUTHORITY TO BIND CONTRACTOR.

Notwithstanding anything in this Agreement to the contrary, the signatory for the Contractor represents that he/she has been duly authorized to execute contracts on behalf of the Contractor and has obtained all necessary or applicable approvals from the home office of the Contractor to make this Agreement fully binding upon the Contractor when his/her signature is affixed and is not subject to home office acceptance hereto when accepted by the IEDC.

## 25.  INFORMATION TECHNOLOGY ACCESSIBILITY STANDARDS.

If the Contractor provides any information technology-related products or services to the IEDC, the Contractor shall comply with all Indiana Office of Technology (IOT) standards, policies, and guidelines, which are available online at *http://iot.in.gov/architecture/*.  The Contractor specifically agrees that all hardware, software, and services provided to or purchased by the IEDC shall be compatible with the principles and goals contained in the electronic and information technology accessibility standards adopted under Section 508 of the Federal Rehabilitation Act of 1973 (29 U.S.C. 794d) and Indiana Code § 4-13.1-3.  Any deviation from these architecture requirements must be approved in writing by IOT in advance.  The IEDC may terminate this Agreement for default if the Contractor fails to cure a breach of this provision within a reasonable time.

## 26.  DISPUTES.

(A)     Should any disputes arise with respect to this Agreement, the Contractor and the IEDC agree to act immediately to resolve such disputes.  Neither party shall be required to submit to binding arbitration for the resolution of disputes.  Disputes not directly resolved between the Contractor and the IEDC may, subject to the IEDC's sole discretion, be subject to mediation as a condition precedent to litigation.  Absent the IEDC requiring or consenting in writing to mediation all disputes shall be subject to litigation as provided for herein.  Unless Contractor and the IEDC shall mutually agree otherwise, mediation shall be

administered by the American Arbitration Association in effect on the date of the Agreement. Time is of the essence in the resolution of disputes.

(B)     The Contractor agrees that, the existence of a dispute notwithstanding, it will continue, without delay, to carry out all of its responsibilities under this Agreement that are not affected by the dispute.   Should the Contractor fail to continue to perform its responsibilities regarding all non-disputed work or services, without delay, any additional costs incurred by the IEDC or the Contractor as a result of such failure to proceed shall be borne by the Contractor, and the Contractor shall make no claim against the IEDC for such costs.

## 27.     ORDER OF PRECEDENCE; INCORPORATION BY REFERENCE.

Any inconsistency or ambiguity in this Agreement shall be resolved by giving precedence in the following order: (1) this Agreement; (2) exhibits/attachments prepared by the IEDC and incorporated into this Agreement; and (3) exhibits/attachments prepared by the Contractor and incorporated into this Agreement.

## 28.     NON-COLLUSION & ACCEPTANCE.

The undersigned attests, subject to the penalties for perjury, that the undersigned is the properly authorized representative, agent, member, or officer of the Contractor.  Further, to the undersigned's knowledge, neither the undersigned nor any other member, employee, representative, agent, or officer of the Contractor, directly or indirectly, has entered into or been offered any sum of money or other consideration for the execution of this Agreement other than that which appears upon the face hereof.

*Signatures on Following Page -- Remainder of Page Intentionally Left Blank*

In Witness Whereof, the Contractor and the IEDC have, through duly authorized representatives, entered into this Agreement. The parties, having read and understand the foregoing terms of this Agreement, do by their respective signatures dated below hereby agree to the terms thereof.

**PURE DEVELOPMENT, INC.**

DocuSigned by:

*Chris Seger*

Chris Seger, Principal

Date: _____4/15/2025_____

DS
SP

DS
MW

**INDIANA ECONOMIC DEVELOPMENT CORPORATION**

Jeff Blade

(Digital Signature Stamp Below)

*Jeff Blade*

**STATE BUDGET AGENCY**

*Chad E. Ranney*
Chad E. Ranney (May 6, 2025 10:51 EDT)

_____ on Behalf of

Chad Ranney, Budget Director

Date: _____

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

## EXHIBIT A
### Project Description & Budget

Services
- Scope based on executed Post Closing Agreement between IEDC and Orlo for Project Domino.
- Design and construct water and wastewater main extensions to the project site boundary. Includes redundant water main.
- Construction inspection services for all infrastructure improvements
- Design, construct, and maintain temporary traffic signals and associated infrastructure improvements
- Coordinate activities and driveway entrances with INDOT's SR 32 improvements.
- Manage contracts and agreements for delivery of post closing commitments.
- Competitively bid all contracts and present recommendation letters for award to IEDC.
- INDOT Coordination and Management Services

Fee Schedule
Subject to the terms and conditions contained in the Agreement, IEDC agrees to pay Contractor the following amounts:

- Development and Management Fee – 8% of the total value of third-party contracts (including, without limitation, contracts with consultants, vendors, subcontractors, and utility providers) entered into and administered by Contractor on behalf of IEDC for the Services ("**Third-Party Contracts**").

  The Development and Management Fee will be paid in equal monthly installments during the Term; provided, however,. IEDC shall have the right to retain 10% of each monthly installment of the Development and Management Fee (the "**Retained Fee**"). The Retained Fee will be paid by IEDC to Contractor within 30 days after the later to occur of (a) the expiration of the Term, or (b) the Substantial Completion of the Services. For purposes of the Development and Management Fee, "Substantial Completion" means the date on which the total outstanding amount to be paid to a third-party under all outstanding Third-Party Contracts is equal to or less than $250,000.00.

  The fee paid on unexecuted contract line items and the fee paid on the difference between the engineer's estimate and final construction GMP contracts will be reconciled at closeout of the contract between Pure and IEDC.

At completion/closeout of a contract line item or project, shared savings shall be calculated. In the event that the actual cost of the work is less than the Guaranteed Maximum Price established in the final contract document between Pure and the subcontractor, including contingency, then the difference (the "Shared Savings") minus the Pure fee on the savings shall be shared between the IEDC and Pure as follows: The amount equal to 70% of the Shared Savings to the IEDC and the amount of 30% of the Shared Savings to Pure.

Third-Party Costs

IEDC shall be responsible for the costs of all Third-Party Costs. Third-Party Costs will be itemized by Contractor and submitted to IEDC for approval prior to beginning any work item.

Development Services Release

IEDC will pay Contractor the Third-Party Costs for the following services in an amount not to exceed the GMP as defined in the Agreement (and in amounts not to exceed the amount set forth in each line item for each service):

| Domino Project | | Carry Over | New | Total |
|---|---|---|---|---|
| Utility Delivery | | | | - |
| Water | TBD | | 3,279,000 | 3,279,000 |
| Wastewater Trunk Line (1/2) | TBD | | 2,642,500 | 2,642,500 |
| Wastewater North Connection | TBD | | 3,760,000 | 3,760,000 |
| | | | | |
| Road Improvements | | | | |
| Temporary Signals along SR 32 | TBD | | 2,000,000 | 2,000,000 |
| INDOT Coordination and Management | Avenew | | 180,000 | 180,000 |
| | | | | |
| Management Fee | | - | 948,920 | 948,920 |
| | | | | |
| Domino Total Costs | | - | 12,810,420 | 12,810,420 |

# URGENT - Pure Development, Inc (PSA) (427340) (Project Dominio) expire 12.31.27

Final Audit Report                                    2025-05-06

| | |
|---|---|
| Created: | 2025-04-28 |
| By: | Glenda Reitz 7EE (GReitz@iedc.IN.gov) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA1dyoZ08nn6y_XrtkckiuGIF6b2pOfVkW |

## "URGENT - Pure Development, Inc (PSA) (427340) (Project Dominio) expire 12.31.27" History

📄 Document created by Glenda Reitz 7EE (GReitz@iedc.IN.gov)
2025-04-28 - 5:54:06 PM GMT

✉️ Document emailed to rpaglia@iedc.in.gov for approval
2025-04-28 - 5:54:14 PM GMT

📄 Email viewed by rpaglia@iedc.in.gov
2025-05-02 - 2:22:56 PM GMT

✍️ Signer rpaglia@iedc.in.gov entered name at signing as Robert J Paglia
2025-05-02 - 7:30:28 PM GMT

✍️ Document approved by Robert J Paglia (rpaglia@iedc.in.gov)
Approval Date: 2025-05-02 - 7:30:30 PM GMT - Time Source: server

✉️ Document emailed to kkovert@iedc.in.gov for signature
2025-05-02 - 7:30:32 PM GMT

📄 Email viewed by kkovert@iedc.in.gov
2025-05-02 - 7:41:32 PM GMT

✍️ Signer kkovert@iedc.in.gov entered name at signing as Kyle Kovert
2025-05-02 - 7:41:48 PM GMT

✍️ Document e-signed by Kyle Kovert (kkovert@iedc.in.gov)
Signature Date: 2025-05-02 - 7:41:50 PM GMT - Time Source: server

✉️ Document emailed to Jonathan Eccles 4MM (jeccles@sba.in.gov) for signature
2025-05-02 - 7:41:52 PM GMT

 Adobe Acrobat Sign

Email viewed by Jonathan Eccles 4MM (jeccles@sba.in.gov)
2025-05-02 - 7:47:17 PM GMT

Email viewed by Jonathan Eccles 4MM (jeccles@sba.in.gov)
2025-05-06 - 1:23:38 PM GMT

Document signing delegated to CRanney@gov.in.gov by Jonathan Eccles 4MM (jeccles@sba.in.gov)
2025-05-06 - 1:24:40 PM GMT

Document emailed to CRanney@gov.in.gov for signature
2025-05-06 - 1:24:40 PM GMT

Email viewed by CRanney@gov.in.gov
2025-05-06 - 2:06:27 PM GMT

Signer CRanney@gov.in.gov entered name at signing as Chad E. Ranney
2025-05-06 - 2:50:58 PM GMT

Document e-signed by Chad E. Ranney (CRanney@gov.in.gov)
Signature Date: 2025-05-06 - 2:51:01 PM GMT - Time Source: server

Agreement completed.
2025-05-06 - 2:51:01 PM GMT



# EXECUTIVE DOCUMENT SUMMARY

State Form 41221 (R10/4-06)

Instructions for completing the EDS and the Contract process.

1. Please read the guidelines on the back of this form.
2. Please type all information.
3. Check all boxes that apply.
4. For amendments / renewals, attach original contract.
5. Attach additional pages if necessary.

| 1. EDS Number: PSA-5-PSA-1026 | 2. Date prepared: 4/28/2025 |
|---|---|

## 3. CONTRACTS & LEASES

X Professional/Personal Services
— Grant
— Lease
— Attorney
— MOU
— QPA _____

— Contract for procured Services
— Maintenance
— License Agreement
Amendment# _____
— Renewal # _____
— Other _____

## FISCAL INFORMATION

| 4. Account Number: 78410-10000.538010 | 5. Account Name: DEAL CLOSING FUND |
|---|---|
| 6. Total amount this actio $11,810,206.00 | 7.New contract total: $11,810,206.00 |
| 8. Revenue generated this action: $00.00 | 9.Revenue generated total contract: $0.00 |

10.New total amount for each fiscal year :
Year 2025 $11,810,206.00
Year _____
Year _____ $ _____
Year _____ $ _____

## TIME PERIOD COVERED IN THIS EDS

| 11. From (month, day, year): 4/1/2025 | 12. To ( month, day, year ): 3/31/2027 |
|---|---|

13. Method of source selection: X Negotiated
_____ Bid/Quotation _____ Emergency
_____ Special Procurement
_____ RFP# _____ _____ Other *(specify)* _____

## AGENCY INFORMATION

| 14. Name of agency: Economic Development Corp | 15. Requisition Number: 0000011220 |
|---|---|

16. Address: **IN Economic Development Corp**
Central Office
**1 N CAPITOL AVE STE 700**
**INDIANAPOLIS, IN** 46204-2040

## AGENCY CONTACT INFORMATION

| 17. Name: Glenda Reitz-May | 18. Telephone #: 317.447.2617 |
|---|---|

19. E-mail address: greitz@iedc.in.gov

## COURIER INFORMATION

| 20. Name: Glenda Reitz | 21. Telephone #: 317.447.2617 |
|---|---|

22. E-mail address: greitz@iedc.in.gov

## VENDOR INFORMATION

23 Vendor ID # 00000401445

| 24. Name: Pure Development, Inc. | 25. Telephone #: N/A |
|---|---|

26. Address: 815 E. 65th Street
Indianapolis, IN
462206

27. E-mail address: cseger@puredevelopment.com

28. Is the vendor registered with the Secretary of State? (Out of State Corporations, must be registered) __X__ Yes _____ No

29. Primary Vendor: M/WBE/IN-Vetera
Minority: _____ Yes __X__ No
Women: _____ Yes __X__ No
IN-Veteran _____ Yes __X__ No

30. Primary Vendor Percentages
100.0 %

31. Sub Vendor: M/WBE/IN-Veteran
Minority: _____ Yes __X__ No
Women: _____ Yes __X__ No
IN-Veteran _____ Yes __X__ No

32. If yes, list the %:
Minority: _____ %
Women: _____ %
IN- Veteran _____ %

33. Is there Renewal Language in _____ Yes __X__ No

34. Is there a "Termination for Convenience" clause in the document? __X__ Yes _____ No

35. Will the attached document involve data processing or telecommunications system _____ Yes: IOT or Delegate has signed off on contract

36. Statutory Authority *(Cite applicable Indiana or Federal Codes)*: IC 5-28-14

37. Description of work and justification for spending money. *(Please give a brief description of the scope of work included in this agreement.)*

Contractor shall assist the IEDC to fully develop property, to prepare it for sale as a state owned, commercially viable, shovel ready innovation district to be used for research and development, advanced manufacturing, technology related, life and bio sciences uses. The IEDC is relying on Pure, based on its commercial development experience to act in its professional capacity as an owner's representative and to make decisions that both support the marketability and profitability of the property for the state.

38. Justification of vendor selection and determination of price reasonableness: We have used this company in the past for our advertising and are very pleased with their service.

Project # 427341

39. If this contract is submitted late, please explain why: *(Required if more than 30 days late.)*

| 40. Agency fiscal officer or representative appro *Kyle Kovert (May 1, 2025 09:11 EDT)* | 41. Date Approved | 42. Budget agency approval *Chad E. Ranney* *Chad E. Ranney (May 5, 2025 14:22 EDT)* | 43. Date Approved |
|---|---|---|---|
| 44.Attorney General's Office approval | 45. Date Approved | 46. Agency representative receiving from AG | 47. Date Approved |

114478-000

## PROJECT SERVICES AGREEMENT

This **PROJECT SERVICES AGREEMENT** (this "Agreement") is made and entered into, by and between the **INDIANA ECONOMIC DEVELOPMENT CORPORATION** (the "IEDC") and **PURE DEVELOPMENT, INC.** (the "Contractor") for Project Matrix as detailed in Exhibit A.

In consideration of the mutual undertakings and covenants set forth herein, the parties hereby agree as follows:

### 1.    PURPOSE OF AGREEMENT AND THE CONTRACT.

The purpose of this Agreement is for the Contractor to provide the services (collectively, the "Services") set forth on **Exhibit A** attached hereto and incorporated herein. Contractor shall cause to be furnished and delivered all labor, equipment, materials, and services and cause to be performed all of the work necessary or incidentally required to provide and complete the Services in a proper and timely manner, consistent with all applicable industry standards. The Contract Documents consist of this Agreement, other documents listed in this Agreement, and Modifications issued after execution of this Agreement. A "**Modification**" is (1) a written amendment to the Contract signed by Contractor, the IEDC, and the State Budget Agency ("**SBA**"); or, (2) a written order for a minor, no-cost change in the Services issued by the IEDC. The Contract Documents form the "**Contract**" between IEDC and Contractor, and the Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations, or agreements, either written or oral. The Contract may only be amended or modified by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind between any persons or entities other than the IEDC and the Contractor.

### 2.    TERM.

(A)    This Agreement shall commence on April 1, 2025 ("**Effective Date**") and shall remain in effect through March 31, 2027 or unless earlier terminated in accordance with the provisions of this Agreement ("**Term**"); provided, however, in the event Contractor has not completed the Services by the expiration of the Term the IEDC, in its sole and exclusive discretion, may elect to unilaterally extend the Term for such period of time that it deems reasonable for Contractor to complete the Services. In no event shall payments be made for work done or services performed after the end of the Term.

(B)    Any provisions which, by their nature, are intended to apply after termination of this Agreement shall survive termination of this Agreement, including, but not limited to, provisions concerning indemnification, confidentiality of information, ownership of documents and materials, payment of amounts owed for work properly performed and owed under this Agreement, assignment of subcontracts or other agreements, limitations of liability, and intellectual property clauses.

### 3.    CONSIDERATION.

(A)    All services performed by the Contractor under this Agreement must be authorized by the IEDC and consistent with the description set forth on **Exhibit A**, attached hereto and

incorporated herein. IEDC shall be responsible for the third-party costs associated with land sales and acquisitions, design, consulting, legal fees, due diligence, zoning, entitlements, permitting, utility agreements, construction, including, without limitation, utility construction, roadway construction, and all other related construction, and project specific request for proposal pursuits (collectively, "**Third-Party Costs**"). Third-Party Costs will be itemized by Contractor and submitted to IEDC for approval prior to beginning any work item. The total of the Third-Party Costs under this Agreement shall not exceed the sum of $11,810,206 (the "**Guaranteed Maximum Price**" or "**GMP**") subject to adjustment for Modifications as provided for in this Agreement. Total remuneration under this Agreement shall not exceed: $11,810,206.

(B)   For the Services properly completed, the Contractor shall be paid the fees set forth in the "Fee Schedule" on **Exhibit A** attached hereto and incorporated herein.

(C)   All work and/or services provided by the Contractor under this Agreement must be performed to the IEDC's reasonable satisfaction, which satisfaction shall be determined at the reasonable discretion of the IEDC, in accordance with all applicable federal, state, local laws, ordinances, rules, and regulations, and in conformance with established industry standards. The IEDC shall not be required to pay for work and services found to be unsatisfactory (based on the standards set forth in this Section), not authorized by or in accordance with the terms of this Agreement, performed in violation of federal, state, or local laws, and work and services which are defective, fail to comply with the Contract Documents, or otherwise not in conformance with established industry standards.

## 4.   PAYMENTS.

(A)   The Contractor shall submit monthly invoices for payment in connection with the Services. Such invoices shall comply with the requirements of this Section. The Contractor shall submit with each invoice a progress report summarizing the Services performed to date with a schedule of values identifying the percentage of completion with respect to each discrete item of the Services. The Contractor shall submit invoices to the IEDC by email at processing@iedc.in.gov and dclerget@iedc.in.gov.

(B)   All payment obligations shall be made in arrears in accordance with Indiana law and state fiscal policies and procedures, and as required by Indiana Code § 4-13-2-14.8. Notwithstanding any other law, rule, or custom, a person or company whom has a contract with the State of Indiana or submits invoices to the state for payment shall authorize, in writing, the direct deposit by electronic funds transfer of all payments by the state to the person or company. The written authorization must designate a financial institution and

an account number to which all payments are to be credited. Any exception to this requirement must be approved by the IEDC and the State of Indiana. For forms and additional information, see the Auditor of State's website at *www.in.gov/auditor/forms*.

(C) No travel and other expenditures made by the Contractor will be reimbursed by the IEDC unless provided for in the Fee Schedule. Allowable expenditures made by the Contractor for travel will be reimbursed at the current rate paid by the IEDC and in accordance with the State Travel Policies and Guidelines as specified in the current Financial Management Circular, available at *http://www.in.gov/idoa/2459.htm*. All travel expenses must be approved by the IEDC in writing in advance. Out-of-state travel requests must be reviewed by the IEDC for availability of funds and for appropriateness per Financial Management Circular guidelines.

(D) The IEDC may withhold payment, in whole or in part, to the extent reasonably necessary to protect the IEDC from loss due to, arising from, or related to: 1) defective work, including design and construction, not remedied; 2) third party claims filed unless security acceptable to the IEDC is provided; or 3) the failure of Contractor to make payments properly to subcontractors, vendors or service providers for services, labor, materials or equipment.

## 5. CONFIDENTIALITY OF INFORMATION.

(A) The Contractor understands and agrees that data, materials, and information disclosed to the Contractor may contain confidential and protected data. Therefore, the Contractor promises and assures that data, material, and information disclosed to the Contractor by the IEDC for the purpose of this Agreement, and specifically identified as confidential information will not be disclosed to others or discussed with other parties without the prior written consent of the IEDC, provided, however, that for purposes of this Section (A) the Contractor may disclose confidential information to its employees as necessary to support Contractor's performance of the Services and to consultants, contractors, and advisors so long as such consultants, contractors, and advisors are bound by obligations to maintain the confidentiality of such confidential information.

(B) The parties acknowledge that the Services may require or allow access to data, materials, and information containing Social Security numbers or other personal information maintained by the IEDC in its computer system or other records. In addition to the covenant made above in this Section, and pursuant to 10 IAC 5-3-1(4), the Contractor and the IEDC agree to comply with the provisions of Indiana Code § 4-1-10 and Indiana Code § 4-1-11. If any Social Security number(s) or personal information (as defined in Indiana Code § 4-

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

1-11-3) is/are disclosed by the Contractor, the Contractor agrees to pay the cost of the notice of disclosure of a breach of the security of the system, in addition to any other claims and expenses for which it is liable under the terms of this Agreement.

## 6.    USE OF THE IEDC NAME.

The IEDC has not granted any rights to use its name, trademark, intellectual property, or logos. The Contractor agrees that it will not use the name or intellectual property, including, but not limited to, IEDC trademarks or logos, in any manner, including commercial advertising or as a business reference without the prior written consent of the IEDC. In all cases in which the IEDC's participation will be referenced, the IEDC shall have the right of review and approval of the use, disclosure, and the finished product prior to its publication. All such requests shall be made in writing and delivered to the IEDC for approval at its sole discretion.

## 7.    GOVERNING LAW.

(A)    This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Indiana without regard to principles of choice of law. Suit, if any, must be brought in the State of Indiana and the venue for any court action shall be in the Superior Court of Marion County, Indiana.

(B)    If any section, paragraph, term, condition, or provision of this Agreement is found, by a court of competent jurisdiction, to be invalid or unenforceable, or if any paragraph, term, condition, or provision is found to violate or contravene the laws of the State of Indiana or applicable federal law then the section, paragraph, term, condition, or provision so found will be deem severed from this Agreement, but all other sections, paragraphs, terms, conditions, and provisions will remain in full force and effect.

(C)    The Contractor understands that this Agreement is a public record subject to request pursuant to Indiana Code § 5-14-3 and its exemptions. Use by the public of the information contained in this Agreement shall not be considered an act of the IEDC or the State.

## 8.    TERMINATION & FUNDING CANCELLATION.

(A)    This Agreement may be terminated by the IEDC at any time, for any reason, with or without cause, if the IEDC determines that such termination is in its best interest. Termination of services shall be effected by delivery to the Contractor of a termination notice at least thirty (30) days prior to the termination effective date, specifying the extent to which performance of services under such termination becomes effective. The Contractor shall be compensated for services properly rendered prior to the effective date

of termination and, subject to offset for actual damages and/or costs incurred by the IEDC due to or arising from Contractor's breach of this Agreement. The IEDC will not be liable for services performed after the effective date of termination. The Contractor shall be compensated for services herein provided, but in no case shall any price increase be allowed on individual line items if canceled in whole or in part prior to the original termination date.

(B)     When the Director of the State Budget Agency makes a written determination that funds are not appropriated or otherwise available to support continuation of performance of this Agreement, the Contractor shall be notified and this Agreement shall be cancelled. A determination by the Budget Director that funds are not appropriated or otherwise available to support continuation of performance shall be final and conclusive. Contractor shall be paid for all services performed prior to the date of cancellation.

## 9.    PROGRESS REPORTS.

The Contractor shall submit monthly written progress reports to the IEDC. The progress reports shall serve the purpose of assuring the IEDC that work is progressing in a timely manner, and that completion can be reasonably assured on the scheduled date. The Contractor shall submit progress reports to the IEDC by email at reports@iedc.in.gov and dclerget@iedc.in.gov.

## 10.   ACCESS TO RECORDS & AUDITS.

(A)     The Contractor and its subcontractors, if any, shall maintain all books, documents, papers, accounting records, and other evidence pertaining to all costs incurred under this Agreement. The Contractor shall make such materials available at its respective office at all reasonable times during this Agreement, and for three (3) years from the date of final payment under this Agreement, for inspection by the IEDC or by any other authorized representative of the State. Copies thereof shall be furnished at no cost to the IEDC or by any other authorized representative of state government if requested.

(B)     The Contractor acknowledges that it may be required to submit to an audit of funds paid through this Agreement. Any such audit shall be conducted in accordance with Indiana Code § 5-11-1 *et seq.* and any audit guidelines specified by the IEDC.

## 11.   THE CONTRACTOR'S SERVICES.

(A)     The Contractor recognizes that the Services are vital to the IEDC and must be continued without interruption and that, upon the expiration of this Agreement, a successor, either the

IEDC or another contractor, may continue them. The Contractor agrees to use its best efforts and cooperation to effect an orderly and efficient transition to a successor to provide the services contemplated hereby. This Agreement shall be deemed to be substantially performed only when fully performed according to its terms and conditions and any written modifications thereof.

(B) The Contractor shall not commence any additional services or change the scope of services unless and until authorized in writing by the IEDC and the SBA through a Modification to the Contract as set forth in Section 1 of this Agreement. No claim for additional compensation or any change to the Fee Schedule or Third-Party Costs shall be made unless and until authorized in writing by the IEDC and SBA as provided for in this paragraph. This Agreement may only be amended, supplemented or modified by a written document executed in the same manner as this Agreement.

(C) The Contractor shall execute its responsibilities by following and applying at all times the highest professional and technical guidelines and standards. The Contractor represents that it has or shall obtain at its own expense all personnel, materials, and equipment required to perform the services under this Agreement. All of the work performed hereunder shall be performed by the Contractor or under its supervision. The Contractor warrants that all personnel assigned to perform the Services or other consultants or subcontractors engaged by the Contractor to perform the Services are fully qualified, licensed and authorized to perform such services under state and local laws. If the IEDC becomes dissatisfied with the work product of, or the working relationship with, any individuals assigned to work under this Agreement, the IEDC may request in writing the replacement of any or all such individuals, and the Contractor shall grant such request.

(D) The IEDC shall, at all reasonable times, have the right to inspect the work, services or performance of the Contractor. The Contractor shall furnish all reasonable aid and assistance required by the IEDC for proper examination of the work or services. Such inspection shall not relieve the Contractor of any obligation to perform said services in accordance with the law or with this Agreement.

(E) Contractor shall be responsible to the IEDC for acts and omissions of the Contractor's employees and those subcontractors, vendors, consultants, and other persons or entities who Contractor has contracted directly with and who are performing portions of the Services for, or on behalf of, the Contractor.

(F) Contractor shall be responsible for causing those subcontractors, vendors, consultants, and other persons or entities who Contractor has contracted directly with, and who are

performing portions of the Services, to comply with any and all applicable warranty requirements for the Services performed that may be required by the applicable municipality or authority having jurisdiction, including, without limitation, warranty requirements that may require the correction of defective work.

## 12. OWNERSHIP OF DOCUMENTS & MATERIALS.

(A) All documents, records, programs, applications, data, algorithms, film, tape, articles, memoranda, and other materials (the "**Materials**") not developed or licensed by the Contractor prior to execution of this Contract, but specifically developed pursuant to or in connection with this Contract shall be considered "work for hire" and the Contractor hereby transfers and assigns any ownership claims to the IEDC so that all Materials will be the property of the IEDC. If ownership interest in the Materials cannot be assigned to the IEDC, the Contractor grants the IEDC a non-exclusive, non-cancelable, perpetual, worldwide royalty-free license to use the Materials and to use, modify, copy and create derivative works of the Materials.

(B) Use of these materials, other than as necessary for the performance of this Agreement by the Contractor, without the prior written consent of the IEDC, is prohibited. The Contractor shall take such action as is necessary under law to preserve the IEDC's rights in and to the work product or intellectual property while such property is within the control and/or custody of the Contractor. During the performance of this Agreement, the Contractor shall be responsible for any loss of or damage to these materials developed for or supplied by the IEDC and used to develop or assist in the services provided while the materials are in the possession of the Contractor. Any loss or damage thereto shall be restored at the Contractor's expense. The Contractor shall provide the IEDC full, immediate, and unrestricted access to the work product during the term of this Agreement.

## 13. COMPLIANCE WITH LAWS.

(A) The Contractor agrees to comply with all applicable federal, state and local laws, rules, regulations and ordinances, and all provisions required thereby to be included herein are hereby incorporated by reference. The enactment or modification of any applicable state or federal statute or the promulgation of regulations thereunder after execution of this Agreement shall be reviewed by the IEDC and the Contractor to determine whether the provisions of this Agreement require formal modification.

(B) The Contractor and its agents shall abide by all ethical requirements that apply to persons who have a business relationship with the State of Indiana, as set forth in Indiana Code §

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

4-2-6, Indiana Code § 4-2-7, the regulations promulgated thereunder, and Executive Order 04-08, dated April 27, 2004. If the Contractor is not familiar with these ethical requirements, the Contractor should refer any questions to the Indiana State Ethics Commission, or visit the website of the Indiana Inspector General at *http://www.in.gov/ig/*. If the Contractor or its agents violate any applicable ethical standards, the IEDC may, in its sole discretion, terminate this Agreement immediately upon notice to Contractor. In addition, the Contractor may be subject to penalties under Indiana Code § 4-2-6, Indiana Code § 4-2-7, Indiana Code § 35-44.1-1-4 and under any other applicable laws.

(C)   The Contractor certifies by entering into this Agreement that neither it nor its principal(s) is presently in arrears in payment of its taxes, permit fees or other statutory, regulatory or judicially required payments to the State of Indiana or to the IEDC. Further, the Contractor agrees that any payments in arrears and currently due to the State of Indiana or to the IEDC may be withheld from payments due to the Contractor. Additionally, further work or payments may be withheld, delayed, or denied and/or this Agreement suspended until the Contractor is current in any payments set forth above and has submitted proof of such payment to the IEDC.

(D)   The Contractor warrants that it has no current or outstanding criminal (including pending), civil, or enforcement actions initiated by the State of Indiana and agrees that it will immediately notify the IEDC of any such actions. During the term of such actions, the Contractor agrees that the IEDC may delay, withhold, or deny work under any supplement, amendment, change order, or other contractual device issued pursuant to this Agreement.

(E)   If a valid dispute exists as to the Contractor's liability or guilt in any action initiated by the IEDC or the State of Indiana or its agencies, and the IEDC decides to delay, withhold, or deny work to Contractor, Contractor may request that it be allowed to continue, or receive work, without delay. Absent a decision by the IEDC, or a court order or separate order by the State of Indiana or its other agencies, to delay, withhold, or deny work to Contractor, the Contractor shall continue to perform the Services without delay regardless of any action initiated by the IEDC, the State of Indiana or its agencies.

(F)   Any payments that the IEDC may delay, withhold, deny, or apply under this Paragraph 13 shall not be subject to penalty or interest under Indiana Code § 5-17-5.

(G)   The Contractor warrants that the Contractor and its subcontractors, if any, shall obtain and maintain all required permits, licenses, and approvals, and shall comply with all health, safety, and environmental statutes, rules, or regulations applicable in connection with the services provided under this Agreement. Failure to do so is a material breach of this

Agreement and grounds for immediate termination of this Agreement and denial of further work with the IEDC. The IEDC shall not be required to reimburse the Contractor for any services performed when Contractor or its employees or subcontractors were not or are not in compliance with such applicable standards, laws, rules or regulations. If licensure, certification or accreditation expires or is revoked, Contractor shall notify the IEDC immediately, and the IEDC, at its option, may immediately terminate this Agreement.

(H)    The Contractor affirms that, if it is an entity described in Title 23 of the Indiana Code, it is properly registered and owes no outstanding reports to the Indiana Secretary of State.

**14.    COMPLIANCE WITH TELEPHONE SOLICITATIONS ACT.**

As required by Indiana Code § 5-22-3-7:

(A)    The Contractor and any principals of the Contractor certify that:

    (1)    The Contractor, except for de minimis and nonsystematic violations, has not violated the terms of:

        (a)    Indiana Code § 24-4.7 [Telephone Solicitation of Consumers];

        (b)    Indiana Code § 24-5-12 [Telephone Solicitations]; or

        (c)    Indiana Code § 24-5-14 [Regulation of Automatic Dialing Machines] in the previous three hundred sixty-five (365) days, even if Indiana Code § 24-4.7 is preempted by federal law; and

    (2)    The Contractor will not violate the terms of Indiana Code § 24-4.7 for the duration of this Agreement, even if Indiana Code § 24-4.7 is preempted by federal law.

(B)    The Contractor and any principals of the Contractor certify that an affiliate or principal of the Contractor and any agent acting on behalf of the Contractor or on behalf of an affiliate or principal of the Contractor:

    (1)    Except for de minimis and nonsystematic violations, has not violated the terms of Indiana Code § 24-4.7 in the previous three hundred sixty-five (365) days, even if Indiana Code § 24-4.7 is preempted by federal law; and

    (2)    Will not violate the terms of Indiana Code § 24-4.7 for the duration of this Agreement, even if Indiana Code § 24-4.7 is preempted by federal law.

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

## 15. DRUG-FREE WORKPLACE CERTIFICATION.

As required by Executive Order No. 90-5 dated April 12, 1990, issued by the Governor of Indiana, the Contractor hereby covenants and agrees to make a good faith effort to provide and maintain a drug-free workplace. The Contractor will give written notice to the IEDC within ten (10) days after receiving actual notice that the Contractor, or an employee of the Contractor in the State of Indiana, has been convicted of a criminal drug violation occurring in the workplace. False certification or violation of this certification may result in sanctions including, but not limited to, suspension of contract payments, termination of this Agreement and/or debarment of contracting opportunities with the State for up to three (3) years.

In addition to the provisions of the above paragraph, the Contractor certifies and agrees that it will provide a drug-free workplace by:

(A)     Publishing and providing to all of its employees a statement notifying them that the unlawful manufacture, distribution, dispensing, possession or use of a controlled substance is prohibited in the Contractor's workplace, and specifying the actions that will be taken against employees for violations of such prohibition;

(B)     Establishing a drug-free awareness program to inform its employees of (1) the dangers of drug abuse in the workplace; (2) the Contractor's policy of maintaining a drug-free workplace; (3) any available drug counseling, rehabilitation and employee assistance programs; and (4) the penalties that may be imposed upon an employee for drug abuse violations occurring in the workplace;

(C)     Notifying all employees in the statement required by subparagraph (A) above that as a condition of continued employment, the employee will (1) abide by the terms of the statement; and (2) notify the Contractor of any criminal drug statute conviction for a violation occurring in the workplace no later than five (5) days after such conviction;

(D)     Notifying the State in writing within ten (10) days after receiving notice from an employee under subdivision (C)(2) above, or otherwise receiving actual notice of such conviction;

(E)     Within thirty (30) days after receiving notice under subdivision (C)(2) above of a conviction, imposing the following sanctions or remedial measures on any employee who is convicted of drug abuse violations occurring in the workplace: (1) taking appropriate personnel action against the employee, up to and including termination; or (2) requiring such employee to satisfactorily participate in a drug abuse assistance or rehabilitation program approved for such purposes by a federal, state or local health, law enforcement, or other appropriate agency; and

(F)     Making a good faith effort to maintain a drug-free workplace through the implementation of subparagraphs (A) through (E) above.

## 16.    NONDISCRIMINATION.

Pursuant to Indiana Code § 22-9-1-10 and the Civil Rights Act of 1964, the Age Discrimination in Employment Act and the Americans with Disabilities Act, the Contractor and its subcontractors, if any, shall not discriminate against any employee or applicant for employment relating to this Agreement with respect to the hire, tenure, terms, conditions, or privileges of employment or any matter directly or indirectly related to employment, because of the employee or applicant's race, color, religion, sex, age disability, national origin or ancestry or status as a veteran, or any other characteristic protected by federal, state, or local law.  Breach of this covenant may be regarded as a material breach of this Agreement.  Acceptance of this Agreement also signifies compliance with applicable federal and state laws and regulations prohibiting the aforementioned discrimination in the provision of services.

## 17.    NOTICE TO PARTIES.

(A)     Whenever any notice, statement, or other communication ("**Notice**") is required under this Agreement, it shall be sent to the following address, unless otherwise advised in writing:

(1)     <u>Notices to the IEDC shall be sent to</u>:

INDIANA ECONOMIC DEVELOPMENT CORPORATION
Attn:  General Counsel
One North Capitol Avenue, Suite 700
Indianapolis, IN 46204-2288
reports@iedc.in.gov

(2)     <u>Notices to the Contractor shall be sent to</u>:

Pure Development, Inc.
Attn: Chris Seger
1351 Roosevelt Ave., Suite 100
Indianapolis, IN 46202
cseger@puredevelopment.com

(B)     Any change in the Contractor's contact information must be provided in writing by the Contractor to the IEDC in accordance with this Section.

(C)     Notice shall be provided via electronic mail to the Contractor's electronic mail address and via certified, registered, or first-class U.S. mail at the option of the IEDC. Notice shall be deemed delivered upon dispatch.

**18.     SUBCONTRACTS, ASSIGNMENT & KEY PERSONS.**

(A)     The Contractor shall not assign or subcontract the whole or any part of this Agreement without the prior written consent of the IEDC; provided, however, Contractor may assign this Agreement to an entity under the direction of the Principal and employing Michael Watts ("**Related Entity**") without such written consent so long as Contractor provides notice of such assignment within five (5) days prior such assignment is to take effect. The Contractor agrees to bind all subcontractors, successors and assignees to all the terms and conditions of this Agreement. The Contractor shall specifically require each subcontractor, if any, who has access to the IEDC's confidential information in the course of performing any services to be bound by the confidentiality provisions in Section 5 of this Agreement and, at the IEDC's discretion, to execute a non-disclosure agreement that is satisfactory to the IEDC.

(B)     Each subcontract agreement, vendor agreement, consulting agreement or other agreement between Contractor and any party providing labor, materials, equipment or services of any kind (professional and non-professional) involving a portion of the Services is assigned to the IEDC, provided that the assignment is only effective upon: (i) IEDC's termination of this Agreement in the event that Contractor dissolves and this Agreement is not assigned by Contractor to a Related Entity within 30 days after such dissolution; or (ii) IEDC's written request after a breach by Contractor of its obligations under the Agreement and such breach has continued uncured for a period of thirty (30) days. Contractor will use commercially reasonable efforts to ensure each and every agreement between Contractor and other entities performing a portion of the Service allows Contractor to assign such agreements, including, without limitation, to the IEDC.

(C)     KEY PERSON(S):

        (1) This Agreement will be performed under the direction of **Chris Seger** (the "**Principal**"). In the event the Principal is unable or unwilling to continue providing the services under this Agreement, the IEDC may suspend or terminate this Agreement.

        (2) Nothing in this Section shall be construed to prevent the Contractor from using the services of others to perform its duties as defined in Section 1 of this Agreement,

as well as any services ancillary to those duties, including secretarial, clerical, and common labor duties. The Contractor shall, at all times, remain responsible for the performance of all necessary duties, whether performed by the Principal, employees, subcontractors, or others.

(D)     BACKGROUND CHECKS:

The Principal understands that it may be necessary for the IEDC to conduct an investigation of the Contractor's background, which investigation may be comprehensive. If the IEDC determines it is in the best interest of the IEDC to conduct a background check, the Contractor agrees to, at the IEDC's request, provide any necessary information and authorization to conduct the applicable background check(s). The Contractor agrees that the IEDC may conduct such checks at any time during the term of this Agreement. The Contractor agrees it shall release the IEDC from any liability in connection with conducting the background checks. If the IEDC, in its sole discretion, is dissatisfied with the results of the background check(s), the IEDC may terminate this Agreement.

## 19.     INDEMNIFICATION.

To the fullest extent permitted by law, the Contractor shall indemnify, defend, and hold harmless the IEDC and the State of Indiana and their respective agents, officers, employees and representatives from and against third-party claims damages, losses, and expenses, including but not limited to all judgments recovered therefrom and for expenses in defending any such claims or suits, including court costs, attorneys' fees, and for any other expenses, arising out of or resulting from Contractor's performance of the Services or obligations under this Agreement, provided that such claim, damage, loss, or expense is attributable to bodily injury or death or injury to or destruction of tangible property, including the loss of use thereof, but only to the extent caused by the breach of this Agreement, or the negligent acts or omissions of the Contractor or its employees or a subcontractor, a vendor, or a consultant who Contractor has contracted directly with. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this paragraph, except to the extent caused by any of the indemnified parties. The IEDC shall _not_ provide such indemnification to Contractor.

## 20.     DEBARMENT & SUSPENSION.

(A)     The Contractor certifies, by entering into this Agreement, that neither it nor its principals are presently debarred, suspended, proposed for debarment, declared ineligible, or

voluntarily excluded from entering into this Agreement by any federal agency, branch of government, or by any department, agency, or political subdivision of the State of Indiana. The term "principal" for purposes of this Agreement means an officer, director, owner, partner, key employee, or other person with primary management of supervisory responsibilities, or a person who has a critical influence on or substantive control over the operations of the Contractor.

(B)     The Contractor certifies that it has verified the state and federal suspension and debarment status for all subcontractors receiving funds under this Agreement and shall be solely responsible for any recoupment, penalties, or costs that might arise from use of a suspended or debarred subcontractor. The Contractor shall immediately notify the IEDC if any subcontractor becomes debarred or suspended, and shall, at the IEDC's request, take all steps required by the IEDC to terminate its contractual relationship with the subcontractor for work to be performed under this Agreement.

## 21.     ATTORNEYS' FEES & INTEREST.

The IEDC will in good faith perform its required obligations hereunder and does not agree to pay any penalties, liquidated damages, interest, attorneys' fees, court costs, or litigation expenses, except as required by Indiana law, in part, Indiana Code § 5-17-5, Indiana Code § 34-54-8, Indiana Code § 34-13-1, and Indiana Code § 34-52-2-3. Notwithstanding the provisions contained in Indiana Code § 5-17-5, the parties stipulate and agree that any liability resulting from the IEDC's failure to make prompt payment shall be based solely on the amount of funding originating from the State of Indiana and shall not be based on funding from federal or other sources.

## 22.     MISCELLANEOUS.

(A)     No right conferred on either party under this Agreement shall be deemed waived and no breach of this Agreement excused, unless such waiver or excuse is in writing and signed in advance by the party claiming to have waived such right. Neither the IEDC's review, approval, or acceptance of, nor payment for the services required under this Agreement shall be construed to operate as a waiver of any rights under this Agreement or of any cause of action arising out of the performance of this Agreement, and the Contractor shall be and remain liable to the IEDC in accordance with applicable law for all damages to the IEDC caused by the Contractor's breach or negligent performance of any of the services furnished under this Agreement.

(B)     This Agreement constitutes the entire agreement between the parties. No understandings, agreements, or representations, oral or written, not specified within this Agreement will

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

be valid provisions of this Agreement. This Agreement may not be modified, supplemented, or amended, in any manner, except by written agreement signed by all necessary parties.

(C) This Agreement may be executed through an original or electronically, and in duplicates or through counterparts, each of which shall be deemed to be an original, and all of which shall constitute but one and the same Agreement.

(D) Both parties hereto, in the performance of this Agreement, shall act in an individual capacity and not as agents, employees, partners, joint venturers or associates of one another. The employees or agents of one party shall not be deemed or construed to be the employees or agents of the other party for any purposes whatsoever. Neither party will assume liability for any injury (including death) to any persons, or damage to any property arising out of the acts or omissions of the agents, employees or subcontractors of the other party.

(E) Nothing in this Agreement shall be construed to confer any rights or remedies on any third party not a signatory to this Agreement, including, the employees or sub-contractors of the Contractor.

(F) If the IEDC determines that it would be in the IEDC's best interest to hire an employee of the Contractor, the Contractor will release the selected employee from any non-compete agreements that may be in effect. This release will be at no cost to the IEDC or to the employee.

(G) The IEDC is exempt from state, federal, and local taxes. The IEDC will not be responsible for any taxes levied on the Contractor as a result of this Agreement.

(H) This Agreement was reviewed and/or revised by legal counsel for the IEDC and the Contractor, and no presumption or rule that any ambiguity shall be construed against the party drafting the document shall apply to the interpretation or enforcement of this Agreement.

(I) Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, rights, and remedies otherwise imposed or available by law.

**23. INSURANCE.**

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

The Contractor shall secure and keep in force during the term of this Agreement the insurance coverage required by law and as would be reasonable to cover claims of any nature which may arise out of or result from this Agreement and, to the extent allowed by the applicable insurer, the IEDC shall be named as an additional insured under all such policies. The additional insured coverage shall be primary and non-contributory to any of the IEDC's general liability or other insurance policies and shall apply to both ongoing and completed operations. The Contractor shall furnish certificates of insurance and all endorsements to the IEDC prior to the commencement of work under this Agreement.

## 24.    AUTHORITY TO BIND CONTRACTOR.

Notwithstanding anything in this Agreement to the contrary, the signatory for the Contractor represents that he/she has been duly authorized to execute contracts on behalf of the Contractor and has obtained all necessary or applicable approvals from the home office of the Contractor to make this Agreement fully binding upon the Contractor when his/her signature is affixed and is not subject to home office acceptance hereto when accepted by the IEDC.

## 25.    INFORMATION TECHNOLOGY ACCESSIBILITY STANDARDS.

If the Contractor provides any information technology-related products or services to the IEDC, the Contractor shall comply with all Indiana Office of Technology (IOT) standards, policies, and guidelines, which are available online at *http://iot.in.gov/architecture/*. The Contractor specifically agrees that all hardware, software, and services provided to or purchased by the IEDC shall be compatible with the principles and goals contained in the electronic and information technology accessibility standards adopted under Section 508 of the Federal Rehabilitation Act of 1973 (29 U.S.C. 794d) and Indiana Code § 4-13.1-3. Any deviation from these architecture requirements must be approved in writing by IOT in advance. The IEDC may terminate this Agreement for default if the Contractor fails to cure a breach of this provision within a reasonable time.

## 26.    DISPUTES.

(A)    Should any disputes arise with respect to this Agreement, the Contractor and the IEDC agree to act immediately to resolve such disputes. Neither party shall be required to submit to binding arbitration for the resolution of disputes. Disputes not directly resolved between the Contractor and the IEDC may, subject to the IEDC's sole discretion, be subject to mediation as a condition precedent to litigation. Absent the IEDC requiring or consenting in writing to mediation all disputes shall be subject to litigation as provided for herein. Unless Contractor and the IEDC shall mutually agree otherwise, mediation shall be

administered by the American Arbitration Association in effect on the date of the Agreement. Time is of the essence in the resolution of disputes.

(B)     The Contractor agrees that, the existence of a dispute notwithstanding, it will continue, without delay, to carry out all of its responsibilities under this Agreement that are not affected by the dispute. Should the Contractor fail to continue to perform its responsibilities regarding all non-disputed work or services, without delay, any additional costs incurred by the IEDC or the Contractor as a result of such failure to proceed shall be borne by the Contractor, and the Contractor shall make no claim against the IEDC for such costs.

## 27.    ORDER OF PRECEDENCE; INCORPORATION BY REFERENCE.

Any inconsistency or ambiguity in this Agreement shall be resolved by giving precedence in the following order: (1) this Agreement; (2) exhibits/attachments prepared by the IEDC and incorporated into this Agreement; and (3) exhibits/attachments prepared by the Contractor and incorporated into this Agreement.

## 28.    NON-COLLUSION & ACCEPTANCE.

The undersigned attests, subject to the penalties for perjury, that the undersigned is the properly authorized representative, agent, member, or officer of the Contractor. Further, to the undersigned's knowledge, neither the undersigned nor any other member, employee, representative, agent, or officer of the Contractor, directly or indirectly, has entered into or been offered any sum of money or other consideration for the execution of this Agreement other than that which appears upon the face hereof.

*Signatures on Following Page -- Remainder of Page Intentionally Left Blank*

In Witness Whereof, the Contractor and the IEDC have, through duly authorized representatives, entered into this Agreement. The parties, having read and understand the foregoing terms of this Agreement, do by their respective signatures dated below hereby agree to the terms thereof.

## PURE DEVELOPMENT, INC.

DocuSigned by:

*Chris Seger*

Chris Seger, Principal

Date: _____4/15/2025_____

DS

*SO*

DS

*MW*

## INDIANA ECONOMIC DEVELOPMENT CORPORATION

_____

Jeff Blade

(Digital Signature Stamp Below)

*Jeff Blade*

## STATE BUDGET AGENCY

*Chad E. Ranney*
Chad E. Ranney (May 5, 2025 14:22 EDT)

on Behalf of

_____

Chad Ranney, Budget Director

Date: _____

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

Docusign Envelope ID: CEF9FC62-2CB2-4A96-8803-B3A0A9277CFC

## EXHIBIT A
## Project Description & Budget

### Services

- Scope based on executed Post Closing Agreement between IEDC and Lilly for Project Matrix.
- Design and construct road improvements to CR 200 W as well as necessary drainage improvements along CR 200 W.
- Design and construct water and wastewater main extensions to the project site boundary.
- Construction inspection services for all infrastructure improvements
- Coordinate new power substation with WVPA, Lilly, and IEDC.
- Coordinate new fiber lines to project site.
- Coordinate construction power.
- Manage contracts and agreements for delivery of post closing commitments.
- Competitively bid all contracts and present recommendation letters for award to IEDC.
- INDOT Coordination and Management Services

### Fee Schedule

Subject to the terms and conditions contained in the Agreement, IEDC agrees to pay Contractor the following amounts:

- Development and Management Fee – 8% of the total value of third-party contracts (including, without limitation, contracts with consultants, vendors, subcontractors, and utility providers) entered into and administered by Contractor on behalf of IEDC for the Services (**"Third-Party Contracts"**).

The Development and Management Fee will be paid in equal monthly installments during the Term; provided, however,. IEDC shall have the right to retain 10% of each monthly installment of the Development and Management Fee (the "**Retained Fee**"). The Retained Fee will be paid by IEDC to Contractor within 30 days after the later to occur of (a) the expiration of the Term, or (b) the Substantial Completion of the Services. For purposes of the Development and Management Fee, "Substantial Completion" means the date on which the total outstanding amount to be paid to a third-party under all outstanding Third-Party Contracts is equal to or less than $250,000.00.

The fee paid on unexecuted contract line items and the fee paid on the difference between the engineer's estimate and final construction GMP contracts will be reconciled at closeout of the contract between Pure and IEDC.

At completion/closeout of a contract line item or project, shared savings shall be calculated. In the event that the actual cost of the work is less than the Guaranteed Maximum Price established in the final contract document between Pure and the subcontractor, including contingency, then the difference (the "Shared Savings") minus the Pure fee on the savings shall be shared between the IEDC and Pure as follows: The amount equal to 70% of the Shared Savings to the IEDC and the amount of 30% of the Shared Savings to Pure.

Third-Party Costs

IEDC shall be responsible for the costs of all Third-Party Costs. Third-Party Costs will be itemized by Contractor and submitted to IEDC for approval prior to beginning any work item.

Development Services Release

IEDC will pay Contractor the Third-Party Costs for the following services in an amount not to exceed the GMP as defined in the Agreement (and in amounts not to exceed the amount set forth in each line item for each service):

| Project Matrix | | | | |
|---|---|---|---|---|
| | | Carry Over | New | Total |
| Utility Delivery | | | | - |
| Water | TBD | | 365,000 | 365,000 |
| Wastewater Trunk Line (1/2) | TBD | | 2,642,500 | 2,642,500 |
| Wastewater Service Line | TBD | | 250,000 | 250,000 |
| | | | | |
| Road Improvements | | | | |
| CR 200 W Between SR 32 and 50 S | TBD | | 7,497,876 | 7,497,876 |
| INDOT Coordination and Management | Avenew | | 180,000 | 180,000 |
| | | | | |
| Management Fee | | - | 874,830 | 874,830 |
| | | | | |
| Matrix Total Costs | | - | 11,810,206 | 11,810,206 |

# URGENT - Pure Development, Inc (PSA) (427341) (Project Matrix) expire 12.31.27

Final Audit Report            2025-05-05

| | |
|---|---|
| Created: | 2025-04-28 |
| By: | Glenda Reitz 7EE (GReitz@iedc.IN.gov) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAnnDNneSHqV5SmbnDlCotVsJkRD8FjzwS |

## "URGENT - Pure Development, Inc (PSA) (427341) (Project Matrix) expire 12.31.27" History

📄 Document created by Glenda Reitz 7EE (GReitz@iedc.IN.gov)
2025-04-28 - 6:02:13 PM GMT

✉ Document emailed to rpaglia@iedc.in.gov for approval
2025-04-28 - 6:02:20 PM GMT

📄 Email viewed by rpaglia@iedc.in.gov
2025-05-01 - 1:03:22 PM GMT

🖋 Signer rpaglia@iedc.in.gov entered name at signing as Robert J Paglia
2025-05-01 - 1:03:40 PM GMT

🖋 Document approved by Robert J Paglia (rpaglia@iedc.in.gov)
Approval Date: 2025-05-01 - 1:03:42 PM GMT - Time Source: server

✉ Document emailed to kkovert@iedc.in.gov for signature
2025-05-01 - 1:03:43 PM GMT

📄 Email viewed by kkovert@iedc.in.gov
2025-05-01 - 1:11:24 PM GMT

🖋 Signer kkovert@iedc.in.gov entered name at signing as Kyle Kovert
2025-05-01 - 1:11:44 PM GMT

🖋 Document e-signed by Kyle Kovert (kkovert@iedc.in.gov)
Signature Date: 2025-05-01 - 1:11:46 PM GMT - Time Source: server

✉ Document emailed to Jonathan Eccles 4MM (jeccles@sba.in.gov) for signature
2025-05-01 - 1:11:49 PM GMT



Email viewed by Jonathan Eccles 4MM (jeccles@sba.in.gov)
2025-05-02 - 1:59:41 PM GMT

Document signing delegated to CRanney@gov.in.gov by Jonathan Eccles 4MM (jeccles@sba.in.gov)
2025-05-02 - 7:47:02 PM GMT

Document emailed to CRanney@gov.in.gov for signature
2025-05-02 - 7:47:03 PM GMT

Email viewed by CRanney@gov.in.gov
2025-05-05 - 6:19:17 PM GMT

Signer CRanney@gov.in.gov entered name at signing as Chad E. Ranney
2025-05-05 - 6:22:14 PM GMT

Document e-signed by Chad E. Ranney (CRanney@gov.in.gov)
Signature Date: 2025-05-05 - 6:22:17 PM GMT - Time Source: server

Agreement completed.
2025-05-05 - 6:22:17 PM GMT

**Adobe Acrobat Sign**