**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| PURE DEVELOPMENT, INC., PURE HOLDINGS, INC., and DREW SANDERS, <br><br> Plaintiffs, <br><br> v. <br><br> CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, BRIAN PALMER, and MAGIC TRIC I, LLC, <br><br> Defendants. | Case No. 1:25-cv-1301-SEB-TAB |

## <u>DECLARATION OF DREW SANDERS</u>

Drew Sanders, under the penalties for perjury, states as follows:

1. I am over the age of 18 and competent to testify about the matters set forth herein.

2. In 2012, Chris Seger and I went into business together to form Pure Development, Inc., a real estate development company located in Indianapolis. At that time, Chris Seger and I each owned 50 percent of Pure Development, Inc.

3. On July 1, 2019, Chris Seger and I formed Pure Holdings, Inc. At that time, Chris Seger and I each owned 50 percent of Pure Holdings, Inc. After Pure Holdings, Inc. was formed, Chris Seger and I transferred our ownership interest in Pure

1

Development, Inc. to Pure Holdings, Inc., and Pure Development, Inc. became a wholly owned subsidiary of Pure Holdings, Inc.

4. Over time, Pure Development, Inc. has grown into a multimillion-dollar company, completing more than 20 projects throughout the United States.

5. On April 8, 2024, I received an offer from Chris Seger to buy out my ownership interest in, and remove me from, Pure. I declined Chris Seger's April 8, 2024, offer.

6. After I declined Chris Seger's buyout offer, he filed an action in Indiana state court (the "State Court Case") to dissolve Pure Holdings, Inc. and Pure Development Capital, Inc. (an entity that Chris Seger and I formed to hold capital and guaranty loans for projects related to Pure Development, Inc.'s business).

7. At trial for the State Court Case, Chris Seger presented the Court with a dissolution "Remedy Plan," where he asked the state court for permission to start a new company called Canopy5 (before it was officially organized) that would assume control of all Pure Development, Inc.'s assets, customers, business pipeline, and employees.

8. On May 12, 2025, the state court granted Seger's request for dissolution of Pure Holdings, Inc. and Pure Development Capital, Inc. and also ordered dissolution of Pure Development, Inc. However, the state court rejected Chris Seger's Canopy5 "Remedy Plan" as "inequitable." A true and accurate copy of the state court's May 12,

2025 Findings of Fact and Conclusions of Law on the February 3, 4, 5, 6, 10, 11, and 18, 2025 Bench Trial is attached as **Exhibit 1.**

9. On June 23, 2025, the Indiana Court of Appeals stayed the trial court's dissolution order, and no receiver has been appointed. A true and accurate copy of the Court of Appeals order granting the stay of the trial court's dissolution order is attached as **Exhibit 2.**

10. Despite the state court rejecting his Canopy 5 "Remedy Plan," Chris Seger, along with his brother Adam Seger and their fellow Pure Development, Inc. employee Brian Palmer—founded Canopy 5, LLC on May 15, 2025—three days after the state court issued its May 12, 2025, order. A true and accurate copy of Canopy 5, LLC's Articles of Organization are attached as **Exhibit 3.**

11. While Chris Seger, Adam Seger, and Brian Palmer were still affiliated with Pure Development, Inc., the three of them began marketing Canopy 5.

12. A May 30, 2025, press release identified Chris Seger as Canopy 5's Chief Executive Officer. The press release also claimed that Chris Seger, Adam Seger, and Brian Palmer would ensure that "all ongoing projects [of Pure Development, Inc.] are completed and [Pure Development, Inc.'s] clients are fully supported, upholding the same integrity that defines their new venture." A true and accurate copy of the May 30, 2025, press release is attached as **Exhibit 4.**

13. On June 5, 2025, the *Indianapolis Business Journal* profiled Chris Seger, Adam Seger, and Brian Palmer, where the three of them touted their launch of Canopy 5. The picture of the three of them that accompanied the story was taken in Pure Development, Inc.'s office. The *IBJ* story concluded by informing its readers that "[m]ore information about Canopy 5's efforts to build its development pipeline—and efforts to inherit Pure's projects—is expected to be made public in the coming weeks." A true and accurate copy of the June 5, 2025, *IBJ* article is attached as **Exhibit 5**.

14. Chris Seger, Adam Seger, and Brian Palmer were all affiliated with Pure Development, Inc. at the time the *IBJ* article was published.

15. That same day, Adam Seger emailed Ryan Westervelt, a Director at Cross Harbor Capital—one of Pure Development, Inc.'s capital partners—about an industrial speculative opportunity in New Albany, Ohio. Adam Seger's signature block used a Canopy 5 logo, and it stated that his Canopy 5 business address was 1351 Roosevelt Ave. #100—which is Pure Development, Inc.'s office address. A true and accurate copy of the June 5, 2025, emails between Adam Seger and Ryan Westervelt are attached as **Exhibit 6.**

16. On June 10, 2025, Chris Seger emailed me a letter from the Indiana Economic Development Corporation. A true and accurate copy of the IEDC's June 10, 2025, letter is attached as **Exhibit 7.**

17. Pure Development, Inc. has served as the developer for the IEDC on the development of the LEAP Lebanon Innovation District in Lebanon, Indiana. But, in its June 10, 2025, letter, the IEDC requested that its contracts with Pure Development, Inc. be assigned to a "Related Entity": Canopy 5.

18. The IEDC's June 10, 2025, letter also attached a series of contracts between the IEDC and Pure Development, Inc. that were prepared in April 2025 (after the close of evidence in the State Court Case, but before the state trial court's May 12, 2025 order) and apparently negotiated by Chris Seger.

19. I did not consent to the assignment of the IEDC contract to Canopy 5. On June 16, 2025, the IEDC issued a notice of termination of its contracts with Pure Development, Inc., effective July 10, 2025. A true and accurate copy of the IEDC's June 16, 2025, notice of termination is attached as **Exhibit 8.**

20. On June 10, 2025, I learned that Canopy 5's website (https://www.canopy5.com) had gone live.

21. In a version of the Canopy 5 website that was accessible on June 10, 2025, Canopy 5 identified its business address as 1351 Roosevelt Ave., Indianapolis, Indiana, which is Pure Development, Inc.'s business address. A true and accurate copy of an excerpt from a screen capture of Canopy 5's website is attached as **Exhibit 9.**

22. Canopy 5 has used, and continues to use, its website to tout Pure Development, Inc.'s projects as its own.

23. For example, on the "Built-to-suit" page (https://www.canopy5.com/build-to-suit/), Canopy 5 passes off as its own work on the following projects: Sierra Nevada Corporation in Dayton, Ohio; Saint Gobain in Worchester, Mass.; Amazon WKN4 in Union, Ohio; Amazon WKN3 in Texarkana; Amazon WKN2 in Fort Smith; Amazon LUK2 in Union, Ohio; Amazon DDT-9 in Canton, Mich.; Wayfair in South Elgin, Ill.; Skjodt Barrett in Lebanon, Ind.; SEP Headquarters in Westfield, Ind.; Regal Beloit in McAllen, Tex.; Mondelez in Montgomery, N.Y.; KAR Headquarters in Carmel, Ind.; GE Aviation in Lafayette, Ind.; GE Aviation in Ellisville, Miss.; and GE Aviation in Hookset, New Hampshire. A true and accurate copy of a screen capture of the Built-to-Suit page of Canopy 5's website is attached as **Exhibit 10.**

24. Each of the built-to-suit projects listed on Canopy 5's website represents work done by Pure Development, Inc., not Canopy 5.

25. On the "Speculative" page (https://www.canopy5.com/speculative/), Canopy 5 passes off as its own work the following projects: 450 Pittsburgh in Reno, Nev.; 1600 Peru in Reno, Nev.; 455 Denmark in Reno, Nev.; 500 Denmark in Reno, Nev.; Pure at Pinnacle One in Laredo, Tex.; Franklin Business Park in Franklin, Ind.; Elevate Industrial in Reno, Nev.; Coastal Crossroads in Charleston, S.C.; Camp Hall in Charleston, S.C.; and Ascent Industrial Park in Dayton, Ohio. A true and accurate copy of a screen capture of the Speculative page of Canopy 5's website is attached as **Exhibit 11.**

26.     Each of the speculative projects listed on Canopy 5's website represents work done by Pure Development, Inc., not Canopy 5.

27.     On the "Mixed Use" page (https://www.canopy5.com/mixed-use/), Canopy 5 passes off as its own work the following projects: Century Apartments in Lafayette, Ind.; North Mass District in Indianapolis, Ind.; Midtown Carmel in Carmel, Ind.; LEAP District in Lebanon, Ind.; and Fox Park in Denver, Colo. A true and accurate copy of a screen capture of the Mixed Use page of Canopy 5's website is attached as **Exhibit 12.**

28.     Each of the Mixed Use projects listed on Canopy 5's website represents work done by Pure Development, Inc., not Canopy 5.

29.     On the "About" page (https://www.canopy5.com/about/), Canopy 5 invites visitors to "Meet The Team." In addition to Chris Seger, Adam Seger, and Brian Palmer, Canopy 5's advertised "team" consists of: Jesse Sadowy, Jenna Barnett, Michael Watts, Jon Carpenter, Justin Lawhorn, Jody Sharp, Kyle Miller, Tyler Neese, Brian Tominov, Dom Cate, Jake Leatherman, Chase Willis, Katie Harp, and Kendra Brooks. A true and accurate copy of a screen capture of the About page of Canopy 5's website is attached as **Exhibit 13.**

30.     All but Jenna Barnett and Dom Cate are still Pure Development, Inc. employees, and all of them (including Barnett and Cate) were Pure Development, Inc. employees at the time Canopy 5's website included them as part of Canopy 5's "team."

31. On or about June 10, 2025, Chris Seger, while still affiliated with Pure Development, Inc.—executed agreements as "Canopy 5 Chief Executive Officer" wherein Canopy 5 purported to hire Pure Development, Inc. employees as "independent contractors." A true and accurate copy of an independent contractor agreement, executed by Chris Seger, between Canopy 5 and a Pure Development, Inc. employee, is attached as **Exhibit 14.**

32. Canopy 5 has also used the social media platform, Instagram, to publish its marketing materials.

33. On June 5, 2025, Canopy 5 published two pictures to its Instagram feed, advertising Pure Development, Inc.'s office space as its own office. The caption of the two photos included the following language: "We're thrilled to officially launch Canopy 5! . . . Founded by Indianapolis real estate experts Chris Seger, Adam Seger, and Brian Palmer, we're more than just a development company." A true and accurate copy of the two photos posted to Canopy 5's Instagram feed are attached as **Exhibit 15.**

34. On June 17, 2025, Canopy 5 posted a video to its Instagram feed. The video was filmed in Pure Development, Inc.'s office, represents Pure Development, Inc.'s office space as its own, and shows Pure Development, Inc. employees working in Pure Development, Inc.'s office space. In the same video, Adam Seger is shown talking with a Pure Development employee whose computer screen shows a link to the folder

directory "Pure." A true and accurate copy of excerpts taken from the screen capture of the June 17, 2025 video posted to Canopy 5's Instagram feed are attached as **Exhibit 16.**

35. On June 23, 2025, Canopy 5 posted another video to its Instagram feed, where Brian Palmer introduced himself as Canopy 5's Chief Operating Officer—while Palmer was still an employee of Pure Development, Inc. A true and accurate copy of an excerpt taken from the screen capture of the June 23, 2025 video posted to Canopy 5's Instagram feed is attached as **Exhibit 17.**

36. Canopy 5 issued these marketing materials identifying Chris Seger, Adam Seger, and Brian Palmer as its founders at the same time all three were still affiliated with Pure Development, Inc.

37. During at least the time Chris Seger, Adam Seger, and Brian Palmer were operating Canopy 5 while simultaneously employed by Pure Development, Inc.—if not through today—they have had access to and the ability to misuse Pure Development, Inc.'s trade secrets.

38. Those trade secrets include Pure Development, Inc.'s confidential dashboards showing current and prospective business opportunities; histories of projects won and lost; the terms of negotiated agreements such as contractor agreements, leases, development agreements, and loans; development modeling showing confidential fee figures, projected gains, and formulas; confidential proposals to clients; internal strategy documents; commission and listing agreements with brokers; purchase and sale

agreements for land; third-party reports for which Pure Development, Inc. has paid, such as appraisals and environmental reports; design materials; employment information such as compensation structures and profit-sharing plans; internal financials; due diligence checklists; and templates for such documents as RFP responses.

39. Pure Development, Inc. has undertaken reasonable efforts to maintain the confidentiality of its trade secrets. For example, Pure Development required written agreements from Adam Seger and Brian Palmer to maintain the confidentiality of Pure Development's business information. A true and accurate copy of Adam Seger and Brian Palmer's employment agreements are attached as **Exhibit 18** and **Exhibit 19**, respectively.

40. In the State Court Case, Pure Development sought and obtained orders excluding its confidential information from public access—including through an effort to close the court for the entirety of trial. The trial court denied that motion, opting instead to deal with confidentiality issues on a question-by-question and document-by-document basis. In support of that effort, Pure Development CFO Jesse Sadowy submitted an affidavit describing Pure Development's trade secrets and its efforts to keep its business information confidential. A copy of Sadowy's affidavit, submitted in the State Court Case, is attached as **Exhibit 20.**

41. On June 25, 2025, I received a letter from Chris Seger providing notice that he had "resign[ed], effective immediately, from all employment, officer, director, and board member positions that [Seger] hold[s] in: Pure Development, Inc.; Pure Holdings, Inc.; and Pure Development Capital, Inc." A true and accurate copy of Chris Seger's June 25, 2025, resignation letter is attached as **Exhibit 21.**

42. Following Chris Seger's resignation, and in accordance with the bylaws of Pure Development, Inc., Pure Holdings, Inc., and Pure Development Capital, Inc.: (a) I, as the sole remaining director of each company, appointed a second director (my wife, Vanessa Sanders) to fill the board vacancies left by Seger's resignation; (b) the boards of each company then amended the bylaws of each to require only one director; (c) Vanessa Sanders then resigned from the boards of each company; and (d) I, as sole director, appointed myself to fill the officer roles in each company from which Chris Seger resigned. True and accurate copies of the written consents of the companies' boards of directors effecting those actions are compiled as **Exhibit 22**.

43. On June 26, 2025, both Adam Seger and Brian Palmer resigned from their positions at Pure Development, Inc. True and accurate copies of Adam Seger and Brian Palmer's resignation letters are attached as **Exhibit 23** and **Exhibit 24**, respectively.

44. Almost immediately after this action was filed, I discovered that Adam Seger had been working with an attorney, Michael Davis, to terminate a Pure Development, Inc. purchase and sale contract for land in McCarran, Nevada, and assign ownership of

the land to an entity called Magic TRIC II QOZB, LLC. A true and accurate copy of the emails between Adam Seger and Michael Davis are attached as **Exhibit 25.**

45. According to the Indiana Secretary of State's website, Chris Seger had Magic TRIC II QOZB, LLC organized on June 17, 2025. A true and accurate copy of Magic TRIC II QOZB, LLC's articles of organization are attached as **Exhibit 26.**

46. After the close of evidence in the State Court Case, I learned that Adam Seger and Chris Seger had worked to transfer a different Pure Development opportunity—in relation to another property in Nevada known as the "Reno (Nest)" site—for Chris Seger's sole benefit.

47. Pure Development, Inc. first identified the opportunity to own and develop the Reno (Nest) site as an industrial speculative site in September 2023. And, until late March 2025, I understood that all activities connected to the Reno (Nest) site were in connection with Pure Development, Inc.'s business.

48. On October 7, 2024, Adam Seger purported to sign—on behalf of Pure Development, Inc.—a binding Purchase and Sale Contract with Emerald City Empire entitling Pure Development, Inc. to purchase the Reno (Nest) site for $10,950,548. A true and accurate copy of the October 7, 2024, Purchase and Sale Contract is attached as **Exhibit 27.**

49. At 9:06 p.m. on October 7, 2024, Chris Seger formed a new Indiana limited liability company: Magic TRIC I, LLC. A true and accurate copy of Magic TRIC I, LLC's articles of organization are attached as **Exhibit 28.**

50. Two days later, on October 9, 2024, Adam Seger signed another purchase and sale agreement for the same Reno (Nest) parcel—except, in this version, Pure Development, Inc. was removed as "Purchaser" and replaced by Chris Seger's new company, "Magic TRIC I, LLC." Adam Seger signed on behalf of Magic TRIC I, LLC. A true and accurate copy of the October 9, 2024, Purchase and Sale Contract is attached as **Exhibit 29.**

51. On March 4, 2025, Magic TRIC I, LLC officially acquired the parcel. A true and accurate copy of the March 4, 2025, closing documents are attached as **Exhibit 30.**

52. In the meantime, Chris and Adam Seger also switched the companies on a lease of that parcel to a Pure Development client. On September 13, 2024, that client sent Pure Development a letter of intent to lease a building at the Reno (Nest) site. A true and accurate copy of the client's September 13, 2024, LOI is attached as **Exhibit 31.**

53. Between September 13 and November 4, 2024, Adam Seger—on behalf of Pure Development, Inc.—negotiated lease terms with that Pure Development, Inc. client.

54. But on February 12, 2025, Pure Development, Inc.'s client executed a lease with Chris Seger's company, Magic TRIC I, LLC. A true and accurate copy of the February 12, 2025, lease is attached as **Exhibit 32.**

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

7/14/2025
Date

Drew Sanders