**EXHIBIT 30**



March 4, 2025


Magic TRIC I, LLC
1351 Roosevelt Ave. Suite 100
Indianapolis, IN  46202


File No.:          2457956
Property Address:  Vacant Parcel in Storey County, McCarran, NV  89434

Dear Sirs,

In connection with the above referenced closed escrow, we enclose the following:

    Final Closing Statement (RETAIN FOR TAX PURPOSES)
    Original Recorded Deed
    Copy of Recorded Grant of Easement
    Copy of Recorded Deed of Trust
    Copy of Recorded Assignment of Leases
    Copy of Recorded UCC
    All executed Escrow closing documents

Your policy of title insurance will be forwarded to you under separate cover.

We would like to take this opportunity to thank you for allowing us to handle this transaction and if we can
be of any further assistance please feel free to contact the undersigned.

Sincerely,

Tami Haworth
Commercial Escrow Officer

enclosures


**Stewart Title Company**
5390 Kietzke Ln., Suite 101
Reno, NV  89511
(775) 332-7100 main   (775) 332-7121 fax
Tami.Haworth@stewart.com

**EXHIBIT 30**

**EXHIBIT 30**

| American Land Title Association | Certified True and Correct Copy<br>*Tami Haworth*<br>Stewart Title Company | FINAL ALTA Settlement Statement - Combined<br>Adopted 05-01-2015 |
|---|---|---|

| File No./Escrow No.:   2457956<br>Officer/Escrow Officer: Tami Haworth | **Stewart Title Company**<br>**5390 Kietzke Ln., Suite 101**<br>**Reno, NV  89511**<br>**(775) 332-7100** |
|---|---|

Property Address:   VACANT PARCEL IN STOREY COUNTY
MCCARRAN, NV  89434 (STOREY)
(005-101-71)

Borrower:   MAGIC TRIC I, LLC, AN INDIANA LIMITED LIABILITY COMPANY
1351 Roosevelt Ave.
Suite 100
Indianapolis, IN 46202

Seller:   EMERALD CITY EMPIRE, LLC, A NEVADA LIMITED LIABILITY COMPANY
C/O Desert Oasis Mgmt. Inc
3275 S. Jones Blvd., Suite 104
Las Vegas, NV 89146

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR RANDEL W. ALEMAN, TRUSTEE OF THE
RANDEL W. ALEMAN SEPARATE PROPERTY TRUST
C/O Desert Oasis Mgmt. Inc.
3275 S. Jones Blvd., Suite 104
Las Vegas, NV 89146

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR SHELDON W. PAUL, TRUSTEE OF THE PAUL
FAMILY TRUST
8671 Golden Canyon Rd.
Las Vegas, NV 89128

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR JAMES C. MICHELS AND RONDA L. MICHELS,
TRUSTEES OF THE MICHELS FAMILY TRUST ORIGINALLY DATED JANUARY 21, 2014, AS
AMENDED

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR TODD S. LARKIN, TRUSTEE OF THE TODD
AND LAURA LARKIN FAMILY TRUST

Settlement Date:   3/3/2025

| Seller | | Description | Borrower | |
|---|---|---|---|---|
| **Debit** | **Credit** | | **Debit** | **Credit** |
| | | **Deposits, Credits, Debits** | | |
| | $11,426,659.20 | Contract sales price | $11,426,659.20 | |
| | | Independent Consideration  (POC $100.00 by Buyer) | | |
| | | Initial Deposit from Magic TRIC I, LLC, an Indiana limited liability company | | $200,000.00 |
| | | Additional Deposit from Magic TRIC I, LLC, an Indiana limited liability company | | $100,000.00 |
| | | Additional Earnest Money from (DISABLED) Pure Development Inc. | | $25,000.00 |

File # 2457956
Printed on 3/3/2025 at 4:18 PM

**EXHIBIT 30**

**EXHIBIT 30**

| | | | | |
|---|---|---|---|---|
| | | Preferred Equity Investment from United Farm Family Insurance Company | | $2,600,000.00 |
| | | Borrower Deposit from LNL MM 01, LLC a Delaware Limited Liability Company | | $100,000.00 |
| | | Partial Closing Funds from Magic TRIC I, LLC, an Indiana limited liability company | | $300,000.00 |
| | | **Prorations** | | |
| $71.83 | | Assessments 1/1/2025 to 3/3/2025 @ $417.09/Year | | $71.83 |
| | $3,554.56 | County taxes 3/3/2025 to 7/1/2025 @ $10,844.43/Year | $3,554.56 | |
| | | **Commissions** | | |
| $342,799.78 | | $342,799.78 to Encore Commercial, Inc | | |
| $228,533.18 | | $228,533.18 to Street Commercial Real Estate | | |
| | | **New Loans** | | |
| | | Principal amount of new loan | | $68,771,429.00 |
| | | Loan Fee to (NA) LNL MM 01, LLC, a Delaware limited liability company | $1,031,571.00 | |
| | | Appraisal Fee to (NA) LNL MM 01, LLC, a Delaware limited liability company | $8,000.00 | |
| | | Construction Holdback to (NA) LNL MM 01, LLC, a Delaware limited liability company | $52,193,258.69 | |
| | | Servicing Reserve to (NA) LNL MM 01, LLC, a Delaware limited liability company | $60,196.00 | |
| | | Environmental Review to (NA) LNL MM 01, LLC, a Delaware limited liability company | $5,000.00 | |
| | | High Level Cost Review to (NA) LNL MM 01, LLC, a Delaware limited liability company | $3,195.00 | |
| | | Insurance Review to LNL MM 01, LLC a Delaware Limited Liability Company | $3,500.00 | |
| | | Interest Reserve to (NA) LNL MM 01, LLC, a Delaware limited liability company | $6,381,190.00 | |
| | | **Title Charges** | | |
| | | Lender's coverage $68,771,429.00 Premium $51,578.57  to Stewart Title Company | $51,578.57 | |
| $10,284.00 | | Owner's coverage $11,426,659.20 Premium $12,569.70  to Stewart Title Company | $2,285.70 | |
| | | ALTA 17-06 Access and Entry 6-17-06  (Price is dependant upon risk) Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 17.2-06 Utility Access 10-16-08 (Price is dependant upon risk) Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 18-06 Single Tax Parcel 6-17-06 Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 24-06 Doing Business 10-16-08 (Price is dependant upon risk) Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 25-06 Same as Survey 10-16-08 (Price is dependant upon risk) Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 26 Subdivision 7-1-21 (Price is dependant upon risk) Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 27 Usury 7-1-21 (Price is dependant upon risk) Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 3.2-06 Zoning-Land Under Development 4-2-12 Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 32 Construction Loan 7-1-21 Lender's Endorsement(s) to Stewart Title Company | $5,157.86 | |
| | | ALTA 33-06 Disbursement 1 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 8.2-06 Commercial Environmental Protections Lien 10-16-08 Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 9.10-06 Restrictions, Encroachments, Minerals-Current Violations-Loan Polic Lender's Endorsement(s) to Stewart Title Company | | |
| | | STG Standard Arbitration Lender's Endorsement(s) to Stewart Title Company | | |
| | | Lender Endorsement Bundle Rate Lender's Endorsement(s) to Stewart Title Company | $10,315.71 | |
| | | Owner's Endorsement Bundle Rate Lender's Endorsement(s) to Stewart Title Company | $1,714.00 | |

File # 2457956

Printed on 3/3/2025 at 4:18 PM

**EXHIBIT 30**

**EXHIBIT 30**

| | | | | |
|---|---|---|---|---|
| | | ALTA 33-06 Disbursement 10 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 11 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 12 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 2 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 3 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 4 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 5 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 6 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 7 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 8 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 9 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | STG Standard Arbitration Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 17-06 Access and Entry 6-17-06 (Price is dependant upon risk) Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 18-06 Single Tax Parcel 6-17-06 Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 25-06 Same as Survey 10-16-08 (Price is dependant upon risk) Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 17.2-06 Utility Access 10-16-08 (Price is dependant upon risk) Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 9.1-06 Covenants, Conditions, Restrictions-Unimproved Land-Owner's Policy 4 Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 26 Subdivision 7-1-21 (Price is dependant upon risk) Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 3 Zoning 7-1-21 Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 8.2-06 Commercial Environmental Protections Lien 10-16-08 Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 9.9-06 Private Rights-Owner's Policy 4-2-13 Owner's Endorsement(s) to Stewart Title Company | | |
| $380.00 | | Document preparation to Stewart Title Company | | |
| $165.00 | | Notary fees to Signature Closers Direct | | |
| $3,861.00 | | Settlement or closing fee to Stewart Title Company | $3,861.00 | |
| $7.20 | | e Record Fee to Stewart Title Company | $14.40 | |
| $1,000.00 | | 1031 Exchange Tie In Fee ($250x4) to Stewart Title Company | | |
| | | **Government Recording and Transfer Charges** | | |
| $44,565.30 | | County tax/stamps: Deed $44,565.30 | | |
| $74.00 | | Recording fees: Deed $222.00 | $148.00 | |
| | | **Additional Settlement Charges** | | |
| | | Invoice: 1488 to Pure Development | $10,170.00 | |
| | | Professional Services to Fennemore Craig | $5,251.00 | |
| | | Attorney's Fee - FLORIDA LOCAL COUNSEL to (NA) Jorge M. Vigil, P.A. | $3,750.00 | |
| | | Invoice: 1489 Reimbursement - Legal Invoice to Pure Development | $4,244.00 | |
| | | Indiana UCC Filling Fee to Greater Illinois Title Company | $150.00 | |
| | | Attorney's Fee to Dentons Bingham Greenebaum | $14,596.50 | |
| | | Annual Association Assessment & Transfer Fee to Tri Owners Association | $467.09 | |
| | | Attorney's Fee to Cohen Garelick & Glazier, PC | $37,500.00 | |
| | | Invoice 112240 to Advanced Corp Agent Services | $1,047.00 | |
| | | Invoice 112353 to Advanced Corp Agent Services | $86.00 | |

File # 2457956
Printed on 3/3/2025 at 4:18 PM

**EXHIBIT 30**

**EXHIBIT 30**

| Seller Debit | Seller Credit | Description | Borrower Debit | Borrower Credit |
|---|---|---|---|---|
| | | Contractors Fees Account #: 8113912 to ARCO Design/Build Industrial New | $318,498.72 | |
| | | Design Work - Invoice #: 1486 to (NA) Pure Development | $332,160.00 | |
| | | Geotechnical Applicability - Invoice #: 1487 to (NA) Pure Development | $7,200.00 | |
| | | Preferred Equity Investment Fee - Invoice TESLA WAREHOUSE to American Mortgage & Realty Corp. | $104,000.00 | |
| $350.00 | | Account Processing Fee APN: 005-101-71 to Associa Sierra North | | |
| $250.00 | | Estoppel Certificate to Fielder Law, Ltd | $250.00 | |
| | | Lender over funding to LNL MM 01, LLC a Delaware Limited Liability Company  (POC $495,676.50 by LNL MM 01, LLC a Delaware Limited Liabil) | | |
| | | Lender Legal Fees to Schott & Hamilton LLC | $55,000.00 | |
| $1,727,639.60 | | CASH PROCEEDS FBO Randel W. Aleman, Trustee of the Randel W. Aleman Separate Pro to Allied 1031 Exchange | | |
| $136,051.62 | | CASH PROCEEDS FBO Sheldon W. Paul, Trustee of the Paul Family Trust to Allied 1031 Exchange | | |
| $201,917.88 | | CASH PROCEEDS FBO The Michels Family Trust to Allied 1031 Exchange | | |
| $321,772.87 | | CASH PROCEEDS FBO Todd S. Larkin and Laura A. Larkin, Trustees of the Todd and L to Allied 1031 Exchange | | |
| $125.00 | | PRESTART INSPECTION to BCM Services | $125.00 | |
| **Seller** | | | **Borrower** | |
| **Debit** | **Credit** | | **Debit** | **Credit** |
| $3,019,848.26 | $11,430,213.76 | **Subtotals** | $72,086,895.00 | $72,096,500.83 |
| | | Due To Borrower | $9,605.83 | |
| $8,410,365.50 | | Due To Seller | | |
| $11,430,213.76 | $11,430,213.76 | **Totals** | $72,096,500.83 | $72,096,500.83 |

File # 2457956

Printed on 3/3/2025 at 4:18 PM

**EXHIBIT 30**

| A.P.N. No.: | 005-101-71 |
|---|---|
| R.P.T.T. | $44,565.30 |
| File No.: | 2457956 TH |
| Recording Requested By: | |

**Stewart Title Company**

| Mail Tax Statements To: | *Same as below* |
|---|---|
| **When Recorded Mail To:** | |

Magic TRIC I, LLC, an Indiana
limited liability company

1351 Roosevelt Ave., Suite 100

Indianapolis, IN  46202



Recorded Electronically
ID 140 764
County Storey
Date 3/3/25  Time 1:59

# GRANT, BARGAIN, SALE DEED

THIS INDENTURE WITNESSETH:  That **Emerald City Empire, LLC, a Nevada limited liability company and Randel W. Aleman, Trustee of the Randel W. Aleman Separate Property Trust and Sheldon W. Paul, Trustee of the Paul Family Trust and James C. Michels and Ronda L. Michels, Trustees of the Michels Family Trust originally dated January 21, 2014, as amended and Todd S. Larkin, Trustee of the Todd and Laura Larkin Family Trust** for valuable consideration, the receipt of which is hereby acknowledged, does hereby Grant, Bargain, Sell and Convey to **Magic TRIC I, LLC, an Indiana limited liability company,** *and to the heirs and assigns of such Grantee forever,* all that real property situated in the County of Storey, State of Nevada, bounded and described as follows:

See Exhibit "A" attached hereto and made a part hereof.


Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and any reversions, remainders, rents, issues or profits thereof.

Dated:  March 3, 2025


SIGNATURES AND NOTARY ON PAGE 2
THIS GRANT BARGAIN SALE DEED MAY BE SIGNED IN COUNTERPART.

**(One inch Margin on all sides of Document for Recorder's Use Only)**                  Page 1 of 7

# EXHIBIT 30

EXHIBIT 30

**Doc #: 140764**

03/03/2025 01:59 PM  Page: 1 of 7

**OFFICIAL RECORD**

Requested By: STEWART TITLE COMPANY

**Storey County, NV**
**Dru McPherson, Recorder**

Fee: $44,602.30  RPTT: $44,565.30
Recorded By: dmcpherson

| A.P.N. No.: | 005-101-71 |
|---|---|
| R.P.T.T. | $44,565.30 |
| File No.: | 2457956 TH |
| **Recording Requested By:** | . |

| **Stewart Title Company** |
|---|

| **Mail Tax Statements To:** | *Same as below* |
|---|---|
| **When Recorded Mail To:** |

Magic TRIC I, LLC, an Indiana
limited liability company

1351 Roosevelt Ave., Suite 100

Indianapolis, IN  46202

# GRANT, BARGAIN, SALE DEED

THIS INDENTURE WITNESSETH:  That **Emerald City Empire, LLC, a Nevada limited liability company and Randel W. Aleman, Trustee of the Randel W. Aleman Separate Property Trust and Sheldon W. Paul, Trustee of the Paul Family Trust and James C. Michels and Ronda L. Michels, Trustees of the Michels Family Trust originally dated January 21, 2014, as amended and Todd S. Larkin, Trustee of the Todd and Laura Larkin Family Trust** for valuable consideration, the receipt of which is hereby acknowledged, does hereby Grant, Bargain, Sell and Convey to **Magic TRIC I, LLC, an Indiana limited liability company,** *and to the heirs and assigns of such Grantee forever,* all that real property situated in the County of Storey, State of Nevada, bounded and described as follows:

See Exhibit "A" attached hereto and made a part hereof.

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and any reversions, remainders, rents, issues or profits thereof.

Dated: *March 3, 2025*

SIGNATURES AND NOTARY ON PAGE 2
THIS GRANT BARGAIN SALE DEED MAY BE SIGNED IN COUNTERPART.

(One inch Margin on all sides of Document for Recorder's Use Only)          Page 1 of 7

**EXHIBIT 30**

**EXHIBIT 30**

Emerald City Empire, LLC, a
Nevada limited liability company

By: Desert Oasis Management
Inc. a Nevada corporation
Its: Manager

By: _____
Randel W. Aleman, President

State of _Nevada_ )
                   ) ss
County of _Clark_ )

This instrument was acknowledged before me on the _16th_ day of _February_, 2025
by _Randel W. Aleman_.

Signature: _____
          Notary Public
Print Name: _Erica L Sanford_
My Commission Expires: _06-13-2028_

ERICA L SANFORD
Notary Public-State of Nevada
Appointment No.16-2799-1
My Appointment Expires June 13, 2028

The Randel W. Aleman
Separate Property Trust

By: _____
Randel W. Aleman, Trustee

State of _Nevada_ )
                   ) ss
County of _Clark_ )

This instrument was acknowledged before me on the _16th_ day of _February_, 2025
by _Randel W. Aleman_.

Signature: _____
          Notary Public
Print Name: _Erica L Sanford_
My Commission Expires: _06-13-2028_

ERICA L SANFORD
Notary Public-State of Nevada
Appointment No.16-2799-1
My Appointment Expires June 13, 2028

**(One inch Margin on all sides of Document for Recorder's Use Only)**                    Page 2 of 6

**EXHIBIT 30**

**EXHIBIT 30**

The Paul Family Trust

By: _____
Sheldon W. Paul, Trustee

State of _Nevada_ )
                           ) ss
County of _Clark_ )

This instrument was acknowledged before me on the 18th day of _February_, 2025
by _Sheldon W. Paul_.

Signature: _____
            Notary Public
Print Name: _Crystal Allen_
My Commission Expires: _9/3/2028_

CRYSTAL ALLEN
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 24-7042-01
My Appt. Expires Sept. 03, 2028

The Michels Family Trust originally dated
January 21, 2014, as amended

By: _____
James C. Michels, Trustee

By: _____
Ronda L. Michels, Trustee

State of _Nevada_ )
                           ) ss
County of _Clark_ )

This instrument was acknowledged before me on the 18th day of _February_, 2025
by _James C. Michaels, and Ronda L. Michels_.

Signature: _____
            Notary Public
Print Name: _Crystal Allen_
My Commission Expires: _9/3/2028_

CRYSTAL ALLEN
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 24-7042-01
My Appt. Expires Sept. 03, 2028

**(One inch Margin on all sides of Document for Recorder's Use Only)**          Page 3 of 6

**EXHIBIT 30**

EXHIBIT 30

The Todd and Laura Larkin Family Trust

By: _____
Todd S. Larkin, Trustee

State of _____Nevada_____ )
                          ) ss
County of _____Clark_____ )

This instrument was acknowledged before me on the 18 day of _____February_____, 2025
by Todd S. Larkin.

Signature: _____Erica L Sanford_____
            Notary Public
Print Name: _____Erica L Sanford_____
My Commission Expires: _____06-13-2028_____

ERICA L SANFORD
Notary Public-State of Nevada
Appointment No.16-2799-1
My Appointment Expires June 13, 2028

**(One inch Margin on all sides of Document for Recorder's Use Only)**                    Page 4 of 6

**EXHIBIT 30**

EXHIBIT 30
PageID #: 1008

# EXHIBIT "A"
## LEGAL DESCRIPTION

All that certain real property situated in the County of Storey, State of Nevada, described as follows:

All that certain parcel situate within a portion of the Northeast One-Quarter (NE1/4) of Section Two (2), Township Nineteen (19) North, Range Twenty-Two-(22) East, Mount, Diablo Meridian, Storey County, Nevada, being a portion of Parcel 2018-4, as shown on Record of Survey Map, file No. 127128, in the Official Records of Storey County, Nevada, a portion of Parcel 2008-26, as shown on Record of Survey Map, File No. 109143, in the Official Records of Storey County, Nevada, and a portion of Parcel 2023-14, as shown on Record of Survey Map File No. 138372, in the Official Records of Storey County, Nevada, said parcel being more particularly described as follows;

Beginning at the Northeast corner of said Parcel 2023-14, from which the Northeast corner of said Section 2, bears North 56°36'47" East, 1209.45 feet;

Thence along the Easterly line of said Parcel 2023-14, and the prolongation thereof, South 00°01'57" East, 1679.18 feet to the Southerly line of Parcel 2018-4;

Thence along said Southerly line, South 59°05'24" West, 628.40 feet;

Thence leaving said Southerly line, South 00°01'57" East 285.54 feet tot the Southerly line of said Parcel 2008-26, said point being on the Northerly right-of-way line of Denmark Drive per Document No. 107607, in the Official Records of Storey County, Nevada.;

Thence along said Southerly parcel line, being coincident with said Northerly right-pf-way line, South 82°38'48" West, 164.71 feet to the Southwest corner of said Parcel 2008-26;

Thence along the Westerly line of said Parcel 2008-26 and the prolongation thereof, being on the Southerly line of said Parcel 2018-4, North 14°47'30" West, 598.89 feet;

Thence continuing along said Southerly line, North 76°36'34" West, 309.56 feet to the Southwest corner of said Parcel 2018-4;

Thence along the Westerly line of said Parcel 2018-4, the following nine (9) courses and distances:

1) North 27°52'22" East, 69.99 feet;

2) North 36°22'33" East, 133.70 feet, to the beginning of a curve to the left;

3) 121.66 feet along the arc of a 170.00 foot radius curve, through a central angle of 41°00'19" to a point of a reverse curvature;

4) 483.67 feet along the arc of a 1980.00 foot radius curve to the right, through a central angle of 13°59'46" to a point of reverse curvature;

5) 402.79 feet along the arc of a 5020.00 foot radius curve to the left, through a central angel of 04°35'50";

6) North 04°46'09° East, 330.06 feet to the beginning of a curve to the right;

7) 85.11 feet along the arc of a 1020.00 foot radius curve, through a central angle of 04°46"51;

**(One inch Margin on all sides of Document for Recorder's Use Only)**     Page 5 of 6

## EXHIBIT 30

EXHIBIT 30

8) North 00°00'42" West 115.02 feet to the beginning of a curve to the left and;

9) 77.22 feet along the arc of a 170.00 foot radius curve, through a central angle of 26D01'34" to the Northwest corner of said Parcel 2018-4;

Thence along the Northerly line of said Parcel 2019-4, South 46°33'45" East, 162.70 feet to the Northwest corner of said Parcel 2023-14;

Thence along the Northerly line of said Parcel 2023-14, North 89°58'03" East, 809.53 feet to the Point of Beginning.

Reference is hereby made of record to Parcel 2023-16, of the Record of Survey Map recorded October 3, 2023, as Document No. 138375, of Official Records.

The above legal description appeared previously in that certain Record of Survey Deed recorded October 3, 2023, as Document No. 138374, of Official Records, pursuant to NRS Section 6.111.312.

**EXHIBIT 30**

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. Assessor Parcel Number(s)
   a)  005-101-71
   b)  _____
   c)  _____
   d)  _____

2. Type of Property:
   a. ☒ Vacant Land          b. ☐ Single Fam. Res.
   c. ☐ Condo/Twnhse       d. ☐ 2-4 Plex
   e. ☐ Apt. Bldg.             f. ☐ Comm'l/Ind'l
   g. ☐ Agricultural           h. ☐ Mobile Home
      ☐ Other _____

| FOR RECORDERS OPTIONAL USE ONLY |
| --- |
| Book_____ Page:_____ |
| Date of Recording: _____ |
| Notes: |

3. a. Total Value/Sales Price of Property                                   $ 11,426,659.20
   b. Deed in Lieu of Foreclosure Only (value of property)   (                          )
   c. Transfer Tax Value:                                                            $ 11,426,659.20
   d. Real Property Transfer Tax Due                                         $ 44,565.30

4. **If Exemption Claimed**:
   a. Transfer Tax Exemption per NRS 375.090, Section  _____
   b. Explain Reason for Exemption:  _____

5. Partial Interest:  Percentage being transferred: _____ %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _____          Capacity    Grantor

Signature _____          Capacity    Grantee

| **SELLER (GRANTOR) INFORMATION** | **BUYER (GRANTEE) INFORMATION** |
| --- | --- |
| **(REQUIRED)** | **(REQUIRED)** |
| Print Name:  Emerald City Empire, LLC, a Nevada limited liability company, Randel W. Aleman, Trustee of the Randel W. Aleman Separate Property Trust, Sheldon W. Paul, Trustee of the Paul Family Trust et al | Print Name:  Magic TRIC I, LLC, an Indiana limited liability company |
| | Address:  1351 Roosevelt Ave., Suite 100 |
| Address:  C/O Desert Oasis Mgmt. Inc, 3275 S. Jones Blvd., Suite 104 | City:  Indianapolis |
| City:  Las Vegas | State:  IN          Zip:  46202 |
| State:  NV          Zip:  89146 | |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**

| | |
| --- | --- |
| Print Name:   Stewart Title Company | Escrow #   2457956 TH |
| Address:   5390 Kietzke Ln., Suite 101 | |
| City:   Reno | State:   NV          Zip:   89511 |

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

**EXHIBIT 30**

A.P.N:005-101-25
A.P.N:005-101-71
A.P.N:005-101-72

Recorded Electronically
ID 140760
County Storey
Date 2/28/25    Time 4:36

After Recordation Return To:
TRI General Improvement District
440 USA Parkway, Suite 105
McCarran, NV 89437

Recorder Affirmation Statement: The undersigned
hereby affirms that this document, including any
exhibit, hereby submitted for recording does not contain
the personal information of any person or persons (per
NRS 239B.030).

**This document is being
recorded as an
accommodation only.**

## GRANT OF EASEMENT

THIS GRANT OF EASEMENT, is made and entered into this 28 day of
Feb 2025 by and between EMERALD CITY EMPIRE, LLC, a Nevada Limited
Liability Corporation (**"Grantor"**), and TRI GENERAL IMPROVEMENT DISTRICT, a
political subdivision of the State of Nevada, established pursuant to NRS Chapter 318, whose
address is 440 USA Parkway Suite 105, McCarran, NV 89437 (**"Grantee"**).

## RECITALS

A.      Grantor owns the real property located in the County of Storey, State of Nevada,
more particularly known as Assessor's Parcel Numbers 005-101-25, 005-101-71 & 005-101-72
(**"Grantor's Property"**);

B.      Grantee desires that Grantor grant an easement to Grantee over a portion of
Grantor's Property, for the purposes of and on the terms and conditions set forth herein.

NOW THEREFORE, for and in consideration of the sum of Ten Dollars ($10.00), in
hand paid by Grantee, and other good and valuable consideration, receipt of which is hereby
acknowledged, the parties agree as follows:

## GRANT OF EASEMENT

1.      Grant of Permanent Easement. Grantor hereby grants to Grantee, its successors,
assigns, agents, contractors, and licensees (collectively and together with Grantee, the **"Grantee
Parties"**), a permanent and nonexclusive easement:

1

**EXHIBIT 30**

A.P.N:005-101-25
A.P.N:005-101-71
A.P.N:005-101-72

**Doc #: 140760**

02/28/2025 04:36 PM Page: 1 of 10
**OFFICIAL RECORD**
Requested By: STEWART TITLE COMPANY

**Storey County, NV**
**Dru McPherson, Recorder**

Fee: $37.00  RPTT: $0.00
Recorded By: mwyman

After Recordation Return To:
TRI General Improvement District
440 USA Parkway, Suite 105
McCarran, NV 89437

Recorder Affirmation Statement: The undersigned
hereby affirms that this document, including any
exhibit, hereby submitted for recording does not contain
the personal information of any person or persons (per
NRS 239B.030).

This document is being
recorded as an
accommodation only.

## GRANT OF EASEMENT

THIS GRANT OF EASEMENT, is made and entered into this ⟨28⟩ day of
Feb 20⟨25⟩ by and between EMERALD CITY EMPIRE, LLC, a Nevada Limited
Liability Corporation ("Grantor"), and TRI GENERAL IMPROVEMENT DISTRICT, a
political subdivision of the State of Nevada, established pursuant to NRS Chapter 318, whose
address is 440 USA Parkway Suite 105, McCarran, NV 89437 ("Grantee").

## RECITALS

A.      Grantor owns the real property located in the County of Storey, State of Nevada,
more particularly known as Assessor's Parcel Numbers 005-101-25, 005-101-71 & 005-101-72
("**Grantor's Property**");

B.      Grantee desires that Grantor grant an easement to Grantee over a portion of
Grantor's Property, for the purposes of and on the terms and conditions set forth herein.

NOW THEREFORE, for and in consideration of the sum of Ten Dollars ($10.00), in
hand paid by Grantee, and other good and valuable consideration, receipt of which is hereby
acknowledged, the parties agree as follows:

## GRANT OF EASEMENT

1.      Grant of Permanent Easement. Grantor hereby grants to Grantee, its successors,
assigns, agents, contractors, and licensees (collectively and together with Grantee, the "**Grantee
Parties**"), a permanent and nonexclusive easement:

1

**EXHIBIT 30**



a.    to construct, alter, add to, maintain, inspect, repair, reconstruct, operate, and remove aboveground and/or underground water, reclaimed (process) water, and sewer facilities, consisting of pipes, vaults, manholes, markers, conduits, valve boxes, meters and other equipment, fixtures, apparatus, and improvements deemed necessary or convenient by Grantee (**"Utility Facilities"**) upon, over, under and through a portion of Grantor's Property described in **Exhibit "A"** and shown on **Exhibit "A-1"** attached hereto and made a part hereof (**"Easement Area"**);

b.    for the ingress of vehicles, equipment and pedestrians to, and the egress of vehicles, equipment and pedestrians from, the Easement Area for the purposes specified in Section 1(a) above; and

c.    to remove, clear, cut or trim any obstruction or material (including trees, other vegetation and structures) from the surface or subsurface of the Easement Area as Grantee may deem necessary or advisable for the safe and proper use and maintenance of the Utility Facilities in the Easement Area.

2.    <u>Compensation for Damages</u>. Subject to the limitation of NRS Chapter 41 and Paragraph 4, Grantee shall be responsible for any loss, damage or injury suffered or sustained by Grantor for any damage to the personal property or improvements of Grantor located on the Grantor Property, to the extent directly caused by any negligent act or omission of Grantee in constructing, maintaining, and operating the Utility Facilities in the Easement Area. However, this paragraph does not apply to, and Grantee is not responsible for, any damages caused when Grantee exercises its rights under Section 1(c) above.

3.    <u>Laws, Permits, Approvals</u>. Grantee shall comply with all applicable laws, and any and all requirements of Storey County or other applicable governmental authority and shall obtain all permits and approvals required by Storey County or other applicable governmental authority, in connection with the Utility Facilities or this instrument.

4.    <u>Use by Grantor</u>. Grantor shall not, without Grantee's prior written consent (which consent shall not be unreasonably withheld), plant, erect or construct, nor permit to be planted, erected or constructed, within the Easement Area, any shrubs, trees, buildings, fences, structures, or any other improvement or obstruction that in the reasonable judgment of Grantee interferes with Grantee's access to and use of the Easement Area for the intended purposes, nor shall Grantor engage in or permit any activity to occur within the Easement Area that in the reasonable judgment of Grantee is inconsistent with Grantee's use of the Easement Area. Notwithstanding the foregoing, Grantor may make or allow other utility improvements (e.g., gas, power, telephone, data communications), street improvements, landscaping, sidewalks or pathways, and drainage structures provided there is no unreasonable interference with the rights granted to the Grantee herein. Subject to the limitations stated in this instrument, Grantor shall have the right to the full use and enjoyment of the Easement Area. Grantor reserves the right to grant easement interests in the Easement Area to other grantees so long as such interests and uses do not unreasonably interfere with the rights granted to Grantee in this Grant of Easement.

2

**EXHIBIT 30**



5.    Property in the Utility Facilities. The parties acknowledge that Grantee owns all current and future Utility Facilities within the Easement Area and, except as provided herein, Grantor shall have no liability therefor. The Utility Facilities shall at all times remain the property of Grantee, notwithstanding the fact that they may be annexed or fixed to the real property and may, at any time, be removed, repaired or replaced, in whole or in part by Grantee.

6.    Reimbursement for Grantor Breach. Grantor shall reimburse Grantee for the reasonable costs incurred by Grantee as a result of Grantor's breach of any covenant of Grantor set forth herein.

7.    Relocation of Easement Area and Utility Facilities. Grantor may, at any time, request the relocation of the Easement Area and Utility Facilities to a new location on the Grantor Property, and Grantee agrees to perform such relocation provided (i) such new location is suitable to Grantee for Grantee's intended purposes; (ii) Grantor conveys to Grantee an equivalent easement in the new location; and (iii) Grantor pays for all reasonable out-of-pocket costs and expenses incurred by Grantee arising from or related to the relocation of the Utility Facilities, whether on or off the Grantor Property, including design costs and retirement of existing facilities.

8.    Grantor Warranties. Grantor warrants and represents to Grantee as follows:

a.    Title to Grantor's Property. Grantor owns fee title to Grantor's Property and the Easement Area and there are no prior encumbrances, liens, restrictions, covenants or conditions applicable to the Easement Area that will frustrate or make impossible the purposes of the easement granted herein.

b.    Authority. The person(s) signing this Easement on behalf of Grantor is duly authorized to so sign and has the full power and authority to bind Grantor, to convey the Easement Area to Grantee, and to enter into and perform the obligations hereunder.

c.    Defects. Grantor has no knowledge of any defects or conditions of the Easement Area or Grantor's Property that would impair Grantee's ability to enjoy the use and purpose of this Easement.

d.    Legal Access. Legal and sufficient access to this Grant of Easement exists through either the access easement granted hereunder, another easement transferred to Grantee or from a public road.

e.    Contracts or Leases. There are no leases, licenses, permits or other contracts with third parties that affect any portion of the Easement Area.

3

**EXHIBIT 30**

       f.      <u>Pending Litigation</u>. Grantor is not aware of any pending or threatened litigation or regulatory actions regarding the Easement Area, and the Easement Area is not subject to any foreclosure or deed in lieu of foreclosure.

9.      <u>Waiver of Jury Trial.</u> To the fullest extent permitted by law, Grantor and Grantee waive any right each may have to a trial by jury in respect of litigation directly or indirectly arising out of, under or in connection with this Grant of Easement. Grantor and Grantee further waive any right to consolidate any action in which a jury trial has been waived with any other action in which a jury trial cannot be or has not been waived.

THIS GRANT OF EASEMENT and the terms contained herein shall run with the land and shall be binding upon and shall inure to the benefit of Grantor and Grantee and the successors, agents and assigns of Grantor and Grantee, and all rights herein granted may be assigned in whole or in part. This Grant of Easement cannot be amended in any way except in a writing, signed by both parties.

[SIGNATURES FOLLOW NEXT PAGE]

4

**EXHIBIT 30**

IN WITNESS WHEREOF, Grantor and Grantee have caused these presents duly to be executed the day and year first above written.

Grantee:

Grantor:

TRI General Improvement District,
a political subdivision of the State of Nevada

EMERALD CITY EMPIRE, LLC.,
a nevada limited liability corporation

Signed: _____

Signed: _____

Name: _____SHARI WHALEN_____

Name: __Randel W Aleman__

Title: __GENERAL MANAGER__

Title: __President / Manager__

STATE OF NEVADA            )
                           ) ss
COUNTY OF __Clark__        )

This instrument was acknowledged before me on this _12th_ day of _February_, 20_25_ by _Randel W Aleman_, as _Manager_ of _Emerald City Empire, LLC._

_____
Notary Public



ERICA L SANFORD
Notary Public-State of Nevada
Appointment No.16-2799-1
My Appointment Expires June 13, 2028

Exp 06-13-2028

**EXHIBIT 30**

STATE OF NEVADA )
) ss
COUNTY OF _____*Story*_____ )

This instrument was acknowledged before me on this _21_ day of _February_ ,
20_25_, by _Shari Whalen_____ , as _General Manager___ of
_TRI General Improvement District_ .

_____*[signature]*_____
Notary Public

SHANNON MCKNIGHT
Notary Public-State of Nevada
Appointment No. 22-9895-16
My Appointment Expires Sept. 14, 2026

**EXHIBIT 30**

EXHIBIT 30
PageID #: 1018

EXHIBIT "A"

**EXHIBIT 30**

February 10, 2025
Project No. 11240.001

## EXHIBIT "A"

### 30' WATER LINE EASEMENT

All that certain easement situate within a portion of the Northeast One-Quarter (NE 1/4) of Section Two (2), Township Nineteen (19) North, Range Twenty-Two (22) East, Mount Diablo Meridian, Storey County, Nevada, being a portion Parcel 2008-67 as shown on Record of Survey Map, File No. 110059 in the Official Records of Storey County, Nevada, and portions Parcel 2023-16 and 2023-17 as shown on Record of Survey Map, File No. 138375 in the Official Records of Storey County, Nevada, said parcel being more particularly described as follows:

BEGINNING at a point on the southerly line of said Parcel 2023-16, said point also being on the southerly line of the 30' Pipeline Facilities Easement as described in Document No. 131749 in the Official Records of Storey County, Nevada, from which the northeast corner of said Section 2 bears North 39°46'26" East, 3082.82 feet;

THENCE leaving said southerly lines, North 37°44'12" East, 32.96 feet to the northerly line of said Pipeline Facilities Easement;

THENCE leaving said northerly line, South 27°48'23" East, 500.72 feet;

THENCE South 80°55'04" East, 30.91 feet;

THENCE North 76°34'56 East, 271.79 feet to the northerly line of said 30' Pipeline Facilities Easement;

THENCE leaving said northerly line, South 06°53'48" West, 31.99 feet to the southerly line of said 30' Pipeline Easement;

THENCE leaving said southerly line, South 76°34'56" West, 266.65 feet;

THENCE North 80°55'04" West, 51.87 feet;

THENCE North 27°48'23" West, 502.07 feet to the POINT OF BEGINNING.

Said Easement contains 24,360 square feet of land, more or less.

The Basis of Bearings for this description is Nevada State Plane Coordinate System, West Zone NAD83(94) HARN Extension, based upon the grid bearing of N 68°20'45" E, between NGS stations N339 and X146. The project combined factor of 1.000254928, scaled from 0.00N, 0.00E and converted to U.S. survey feet.

Prepared by:
**Lumos & Associates, Inc.**
David C. Crook, PLS 10836
275 W. Williams Ave
Fallon, NV  89406

02/10/2025

**EXHIBIT 30**

EXHIBIT 30

<u>**EXHIBIT "A-1"**</u>

**EXHIBIT 30**



| Parcel Line Table | | |
|---|---|---|
| Line # | Length | Direction |
| L15 | 32.96' | N37°44'12"E |
| L16 | 500.72' | S27°48'23"E |
| L17 | 30.91' | S80°55'04"E |
| L18 | 271.79' | N76°34'56"E |
| L19 | 31.99' | S6°53'48"W |
| L20 | 266.65' | S76°34'56"W |
| L21 | 51.87' | N80°55'04"W |
| L22 | 502.07' | N27°48'23"W |

EXHIBIT "A-1"
30' WATER LINE EASEMENT
POR. OF NE1/4 SEC. 2, T19N, R22E, MDM
STOREY COUNTY          NEVADA

Date: 02/2025
Scale: 1" = 200'
Job No: 11240.001

LUMOS & ASSOCIATES
275 W. WILLIAMS AVE
FALLON, NV 89406
TEL (775) 423-2188

**EXHIBIT 30**

APN:  **005-101-71**

RECORDING REQUESTED BY, AND
WHEN RECORDED MAIL TO:

LNL MM, LLC
1450 Brickell Avenue, Suite 2600
Miami, Florida 33131
Attn: Legal Department

2457956-THt



Recorded Electronically
ID 140 165
County Storey
Date 3/3/25 time 1:59

# DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

By

**MAGIC TRIC I, LLC**, as Trustor

to

**STEWART TITLE COMPANY**, as Trustee
for the benefit of

**LNL MM, LLC**

as Beneficiary

---

Dated as of March 3, 2025

---

Property located at

455 Denmark Drive, Sparks, Nevada 89434

Storey County

**EXHIBIT 30**

**Doc #: 140765**

03/03/2025 01:59 PM  Page: 1 of 47

**OFFICIAL RECORD**

Requested By: STEWART TITLE COMPANY

**Storey County, NV
Dru McPherson, Recorder**

Fee: $37.00  RPTT: $0.00
Recorded By: dmcpherson

APN:  **005-101-71**

RECORDING REQUESTED BY, AND
WHEN RECORDED MAIL TO:

LNL MM, LLC
1450 Brickell Avenue, Suite 2600
Miami, Florida 33131
Attn: Legal Department

2457956-TH

# DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

By

**MAGIC TRIC I, LLC**, as Trustor

to

**STEWART TITLE COMPANY**, as Trustee
for the benefit of

**LNL MM, LLC**

as Beneficiary

---

Dated as of March 3, 2025

---

Property located at

455 Denmark Drive, Sparks, Nevada 89434

Storey County

**EXHIBIT 30**

## DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

**THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING** made as of March, 2025 (as amended, extended, renewed, consolidated, spread or otherwise modified from time to time, this "**Deed of Trust**"), by MAGIC TRIC I, LLC, an Indiana limited liability company, having an address at 1351 Roosevelt Avenue, Suite 100, Indianapolis, Indiana 46202 ("**Trustor**") to STEWART TITLE COMPANY, a Texas corporation, having a place of business at 5390 Kietzke Lane, Suite 101, Reno, Nevada 89511, as trustee ("**Trustee**"), for the benefit of LNL MM, LLC, a Delaware limited liability company, having a place of business and a mailing address, 1450 Brickell Avenue, Suite 2600, Miami, Florida 33131 ("**Beneficiary**").

### BACKGROUND

**1.** Trustor is justly indebted to Beneficiary in the principal amount of Sixty-Eight Million Seven Hundred Seventy-One Thousand Four Hundred Twenty-Nine and No/100 Dollars ($68,771,429.00) (the "**Loan**") set forth and evidenced by the "Promissory Note" executed by Trustor dated as of the date hereof, bearing interest and payable to the order of Beneficiary as provided therein, subject, however, to earlier demand as provided therein. Said Promissory Note, as amended, extended, renewed, consolidated or otherwise modified from time to time, and any and all notes that may be given from time to time in exchange, substitution, renewal, restatement, consolidation or replacement therefor, are collectively referred to in this Deed of Trust as the "**Note.**"

**2.** Trustor owns a fee estate in that certain piece or parcel of land located in Storey County, Nevada (the "**Land**"), which Land is more particularly described on **Exhibit A** attached hereto and made a part hereof.

**3.** To induce Beneficiary to make the Loan, Trustor has agreed to execute and deliver this Deed of Trust to secure the following:

(a) payment of the indebtedness from time to time evidenced by the Note and all other present and future debts, obligations and liabilities of Trustor under this Deed of Trust or any of the other Loan Documents (as hereinafter defined), including, but not limited to, all principal, interest, future advances, prepayment premiums, late charges, fees, reimbursements, indemnities, costs and expenses (including court costs and attorneys' fees) (said indebtedness, debts, obligations and liabilities being collectively referred to in this Deed of Trust as the "**Indebtedness**"); and

(b) the keeping, performance and observance of, and compliance with, all provisions required to be kept, performed, observed and complied with by Trustor under the Note, the Construction Loan Agreement dated of even date herewith by and between Trustor and Beneficiary (the "**Loan Agreement**"), this Deed of Trust, a certain Assignment of Leases and Rents of even date herewith executed by Trustor in connection with the Loan (as amended from time to time, the "**Assignment of Leases**"; the Note, The Loan Agreement, this Deed of Trust, the Assignment of Leases, and such other documents and instruments executed in connection with the Loan being collectively referred to in this Deed of Trust as the "**Loan Documents**") or any other document or instrument now or hereafter evidencing or securing all or any part of the Indebtedness or otherwise governing the responsibilities of Trustor in connection with such Indebtedness or in connection with the Property (as hereinafter defined) or in connection with any other security for such Indebtedness. All capitalized terms not defined herein shall have the same meanings as set forth in the Loan Agreement; and

## EXHIBIT 30

**EXHIBIT 30**

(c)    any and all other obligations secured by this Deed of Trust, as more particularly provided herein.

NOW, THEREFORE, to secure payment of the Indebtedness and the keeping, performance and observance of, and compliance with the aforesaid provisions, and in consideration of the sum of Ten Dollars ($10.00) paid to Trustor and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Trustor hereby GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee, for the benefit of Beneficiary and its successors and assigns, IN TRUST WITH POWER OF SALE, forever (and grants to Beneficiary and its successors and assigns forever, as secured party, a continuing security interest in and to), all of the following (collectively, the "Property"):

A.    all right, title and interest of Trustor, whether vested or contingent and whether now owned or hereafter acquired, in and to (1) Land, (2) all buildings, structures and other improvements now or hereafter situated on the Land (collectively, the "Buildings", each a "Building"), (3) all fixtures now or hereafter situated in or on, or attached to, the Land or any of the Buildings (collectively, the "Fixtures"), and (4) all trees, shrubbery, crops and other plantings now or hereafter grown on the Land; and

B.    all right, title and interest of Trustor (as owner, chattel lessee or otherwise), whether vested or contingent and whether now owned or hereafter acquired, in and to (1) all right, title and interest in and to any building materials, supplies and other property now or hereafter stored at or delivered to the Land or any other location for installation in or on the Land or any of the Buildings, (2) all right, title and interest in and to any equipment, machinery, appliances, furniture, furnishings, fittings, apparatus, supplies and other tangible personal property now or hereafter situated in or on, or attached to, the Land or any of the Buildings (all of the property described in this clause (2) or in the immediately preceding clause (1) being collectively referred to in this Deed of Trust as the "Equipment") (the Buildings, the Fixtures and the Equipment being collectively referred to in this Deed of Trust as the "Improvements"), (3) all right, title and interest in and to any oil, gas and other minerals now or hereafter situated in, on, under or about, or produced from or allocated to, the Land, and (4) all right, title and interest in and to any plans, specifications, drawings, books, records and similar items now or hereafter relating to the Land, the Improvements or any business or other operations now or hereafter conducted therein or thereon; and

C.    all right, title and interest of Trustor, whether vested or contingent and whether now owned or hereafter acquired, in and to all streets, roads, sidewalks, alleys, ways, passages, public places, vaults, water courses, levees, ditches, wells, reservoirs, strips and gores adjoining or otherwise providing access to, or used or intended to be used in connection with, the Land, any of the Improvements or any other part of the Property, and the land lying in the bed thereof; and

D.    all right, title and interest of Trustor, whether vested or contingent and whether now owned or hereafter acquired, in and to all easements, rights-of-way and other rights of use or passage (whether public or private), estates, interests, benefits, powers, rights (including development, declarant, lateral support, drainage, slope, riparian, littoral, sewer, water, air, oil, gas, mineral and subsurface rights), privileges, claims, franchises, licenses, profits, tenements, hereditaments, reversions, remainders and appurtenances now or hereafter belonging, relating, appertaining or allocated to the Land, the Improvements or any other part of the Property; and

E.    all right, title and interest of Trustor, in and to, and all rights, powers, privileges and benefits of Trustor in, to and under:

(1)    all leases, subleases, lettings, sublettings, concessions, licenses, occupancy and use agreements and similar arrangements, whether oral or written, now or

2

**EXHIBIT 30**

**EXHIBIT 30**

hereafter relating to all or any part of the Land, any of the Improvements or any other part of the Property, including without limitation that certain Lease dated February 24, 2025 by and between Trustor, as landlord, and Tesla, Inc., dba Tesla Motors, Inc., as tenant (collectively, the "**Leases**") (all present and future lessees, tenants, concessionaires, licensees, occupants and other users of all or any part of the Property under any of the Leases being collectively referred to in this Deed of Trust as the "**Tenants**"), including any subleases under any of the Leases, any tenancies following attornment and any use and occupancy arrangements created pursuant to Section 365 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (as amended from time to time, the "**Bankruptcy Code**"), or pursuant to any other provision of the Bankruptcy Code or any other present or future law relating to bankruptcy, insolvency, reorganization, arrangement, composition, readjustment, liquidation, dissolution, conservatorship, receivership or similar relief for debtors (the Bankruptcy Code and each such other law being sometimes referred to in this Deed of Trust as an "**Insolvency Law**"); and

(2)    any and all presently effective and future guaranties and other surety arrangements of, for or otherwise relating to any of the Leases (collectively, the "**Lease Guaranties**") (all present and future guarantors and other sureties under any of the Lease Guaranties being collectively referred to in this Deed of Trust as the "**Lease Guarantors**"); and

(3)    leases, licenses, easements and/or other rights in or to and/or agreements relating to any off-site parking necessary, required or desirable in connection with Leases or for use of the Property.

**F.**    all right, title and interest of Trustor in and to, and all rights, powers, privileges and benefits of Trustor with respect to, any and all present and future security for, under or otherwise relating to any of the Leases or any of the Lease Guaranties, whether arising by statute, by agreement or otherwise (collectively, the "**Security**"), including property of any Tenant or any Lease Guarantor and cash deposits, advance rentals and deposits and payments of a similar nature, together with all rights of Trustor and any other person claiming under Trustor to collect, hold, return and retain the Security; provided, however, that Trustor shall be permitted, and is hereby granted a revocable license, until the occurrence of any Event of Default (as hereinafter defined), to collect, hold, return and retain the Security, but only in accordance with applicable laws and agreements (subject, however, to the provisions of any lockbox, escrow, rental collection, cash management, direct pay or similar agreements relating to the Security now or hereafter in effect), which permission and license shall automatically and immediately terminate, without notice to Trustor and without the necessity of any other action by any person, upon the occurrence of any Event of Default; and

**G.**    all right, title and interest of Trustor, whether vested or contingent and whether now owned or hereafter acquired, in and to all rents, royalties, issues, profits, revenues, income and other money and benefits of and from the Land, any of the Improvements, any other part of the Property or any business or other operations now or hereafter conducted therein or thereon by or on behalf of or for the benefit of Trustor, whether now or hereafter payable or accruing and whether now or hereafter deliverable (collectively, the "**Rents**"), including (1) all money and other consideration from time to time paid, payable or accruing, or from time to time delivered or deliverable, to or for the benefit of Trustor, or to which Trustor otherwise may be entitled, under or in connection with any of the Leases or any of the Lease Guaranties (including cancellation or termination payments and damages payable in connection with any default), and (2) all money and other consideration from time to time paid, payable or accruing, or from time to time delivered or deliverable, by or on behalf of any other licensees, invitees, guests, customers,

3

**EXHIBIT 30**

occupants or other users of any such Property, together with all rights of Trustor and any other person claiming under Trustor to collect and use the Rents; provided, however, that Trustor shall be permitted, and is hereby granted a revocable license, until the occurrence of any Event of Default, to collect the Rents as, but not before, they become due and payable (subject, however, to the provisions of any lockbox, escrow, rental collection, cash management, direct pay or similar agreements relating to the Rents now or hereafter in effect), which permission and license shall automatically and immediately terminate, without notice to Trustor and without the necessity of any other action by any person, upon the occurrence of any Event of Default; and

        **H.**    all right, title and interest of Trustor (whether as seller, purchaser or otherwise) in and to (1) all presently effective and future agreements for purchase and sale or other transfer of all or any part of the Property, (2) all down payments, earnest money deposits and other money or security paid or payable or deposited or to be deposited in connection with any such agreement, (3) all proceeds of any sale, assignment or other disposition of all or any part of the Property or any rights thereto or any interest therein, and (4) all proceeds of any other conversion of any such Property, rights or interest into cash or any liquidated claim; and

        **I.**    all right, title and interest of Trustor in and to (1) all judgments, settlements, claims, awards, insurance proceeds and other proceeds and compensation, and any interest thereon (collectively "**Compensation**"), made or payable at any time in connection with any fire, casualty or other damage or loss to all or any part of the Property, or in connection with any condemnation or eminent domain proceeding relating to all or any part of the Property (any such proceeding being referred to in this Deed of Trust as a "**Condemnation Proceeding**") or any damage to or taking of all or any part of the Property or any rights thereto or any interest therein in connection with any condemnation or exercise of the power of eminent domain (or any conveyance in lieu of or under threat of any such taking), including any Compensation for change of grade of streets or any other injury to or decrease in value (any such damage, taking or conveyance being referred to in this Deed of Trust as a "**Taking**"), (2) all refunds and rebates of, or with respect to, any Insurance Premiums (as hereinafter defined), Impositions (as hereinafter defined) or other utility charges relating to the Property, and any interest thereon, and (3) all unearned or prepaid Insurance Premiums, Impositions and other utility charges, any deposits with respect thereto and any interest thereon; and

        **J.**    all right, title and interest of Trustor, whether vested or contingent and whether now owned or hereafter acquired, in and to all accounts, accounts receivable, books and/or records (whatever form) option rights, contract rights, general intangibles, permits, licenses, approvals, bonuses, actions, rights in action and other intangible personal property now or hereafter arising from or relating to all or any part of the Property or any business or other operations now or hereafter conducted therein or thereon by or on behalf of or for the benefit of Trustor (including all rights of Trustor in and to any and all contracts and bonds relating to operation, maintenance, construction, renovation, restoration, repair, management or security of all or any part of the Property or any such business or other operations); and

        **K.**    all right, title and interest of Trustor, whether vested or contingent and whether now owned or hereafter acquired, in and to all proceeds, products, extensions, additions, improvements, betterments, renewals, substitutions, replacements, accessions, accretions and relictions of or to all or any part of the Property or any interest therein; and

        **L.**    all further or greater estate, right, title, interest, claim and demand of Trustor, of whatever character (whether vested or contingent and whether now owned or hereafter acquired), in and to any of the Property described above and any rights or interests appurtenant thereto.

4

**EXHIBIT 30**

EXHIBIT 30

FOR THE PURPOSE OF SECURING the performance of each agreement of Trustor contained herein, or under any of the other Loan Documents, including, but not limited to, the payment of any Indebtedness evidenced by the Note, and to protect the security of this Deed of Trust, Trustor represents, warrants, covenants and agrees as follows:

## ARTICLE 1

## COVENANTS OF TRUSTOR

**1.1**    <u>Performance of Obligations</u>. Trustor shall keep, perform, observe and comply with, or cause to be kept, performed, observed and complied with, all provisions required to be kept, performed, observed and complied with by or on behalf of Trustor from time to time under each of the Loan Documents. Without limiting the generality of the immediately preceding sentence, Trustor shall pay or cause to be paid to Beneficiary, when due, the Indebtedness and all parts thereof.

**1.2**    <u>General Representations, Covenants and Warranties</u>.

(a)    Trustor does and will warrant generally the Property, and Trustor will forever defend the title to the Property against the claims of all persons whomsoever claiming or who may claim the same or any part thereof, subject to the outstanding liens, easements, restrictions, security interests and other exceptions to title set forth in the policy of title insurance insuring the lien of this Deed of Trust, together with the liens and security interests in favor of Beneficiary created by the Loan Documents, none of which, individually or in the aggregate, impairs the use or operations of the Property or impairs Trustor's ability to pay its obligations in a timely manner (collectively, the "Permitted Exceptions" and the Lease(s) set forth in the Loan Agreement are referred to herein as the "Existing Leases"). Without limiting the generality of the immediately preceding sentence, Trustor represents, warrants and covenants that:

(i)    subject only to the Permitted Exceptions, Trustor is seized of an indefeasible estate in fee simple in and to the Land, the Buildings and all other parts of the Property constituting real property;

(ii)    subject only to the Permitted Exceptions, Trustor has good and absolute title to the Equipment, the Fixtures and all other parts of the Property constituting personal property, except Equipment owned by any Tenant (other than Trustor) and Equipment leased by any Tenant from any person other than Trustor;

(iii)    the Property is free and clear of any and all liens, security interests, charges, encumbrances and claims of other persons, other than the Permitted Exceptions and the Existing Leases;

(iv)    all costs incurred prior to the date hereof in connection with any construction of, in or on any Improvements or in connection with the purchase of any Fixtures or Equipment have been paid in full;

(v)    no parcel forming part of the Land is included within a tax parcel, for *ad valorem* or local real estate tax purposes, that also includes real property not encumbered by this Deed of Trust;

(vi)    no Leases or Lease Guaranties are in effect other than the Existing Leases and any Lease Guaranties; all of the Existing Leases and such Lease Guaranties are presently in effect; no default exists under any of the Existing Leases or such Lease Guaranties;

5

**EXHIBIT 30**

(vii)    the Land has frontage on, and direct access for ingress from and egress to, physically open, public and dedicated street(s), as described in a survey submitted to Beneficiary in connection with the Loan;

(viii)    electric, gas, sewer, water and telephone facilities and any and all other necessary utilities at all times hereafter shall be, available in sufficient capacity to service the Property until the Indebtedness shall have been paid in full, and any easements legally required to assure the continuation of such utility service to the Property have been obtained and duly recorded; and

(ix)    the Property and its current use comply with the Permitted Exceptions, with all other applicable agreements and restrictive covenants, if any, (including all insurance policies maintained with respect to the Property) and with all applicable laws, ordinances, rules, regulations, orders, judgments, injunctions and decrees (collectively, "Governmental Requirements") (including all zoning and subdivision ordinances and building codes and all Environmental Laws, as hereinafter defined), and all licenses, permits, approvals and authorizations required in connection therewith have been duly obtained and are in effect.

(b)    Trustor also represents, warrants and covenants that:

(i)    Trustor is a duly organized and validly existing limited liability company under the laws of the State of Indiana and is authorized to transact business in the State of Nevada.

(ii)    Trustor has duly obtained all licenses, permits, approvals and authorizations, and has duly completed all filings, required for the conduct of its business, and all such licenses, permits, approvals, authorizations and filings are in effect;

(iii)    Trustor has good right, full power and lawful authority, without the joinder or consent of any person, to grant, convey, pledge and assign the Property pursuant to and as provided in this Deed of Trust, and Trustor will maintain and preserve the lien of this Deed of Trust until the Indebtedness shall have been paid in full;

(iv)    all necessary company action has been taken by Trustor to make and constitute the Loan Documents, and the Loan Documents do constitute, legal, valid and binding obligations of Trustor, enforceable in accordance with their respective terms, subject to the effect of Insolvency Laws and other laws affecting creditors' rights generally;

(v)    there are no provisions in any indenture, contract, agreement or other document or instrument affecting Trustor or any member of Trustor, or to which Trustor or any member of Trustor is a party or by which Trustor or any member of Trustor or Trustor's properties are bound, which prohibit or limit the execution of any of the Loan Documents or Trustor's keeping, performance and observance of, or Trustor's compliance with, any provisions set forth in any of the Loan Documents, and such actions by Trustor will not violate any Governmental Requirement presently in effect or the adoption, issuance or imposition of which is known to Trustor to be presently under consideration;

(vi)    Trustor, and each co-maker, endorser, surety (including but not limited to Trustor) and guarantor (if any) of the Note or of all or any part of the Indebtedness (any and all present or future co-maker(s), endorser(s), surety(ies) and guarantor(s) being referred to in this Deed of Trust, individually and collectively, as "Guarantor") are now able to meet their respective debts as they mature, the fair market value of their respective assets exceeds their respective liabilities and no

6

**EXHIBIT 30**

bankruptcy or insolvency cases or proceedings are pending, or to the actual knowledge of Trustor contemplated, by or against Trustor, or any Guarantor;

(vii)    As of the date hereof, there are no actions, suits or proceedings pending, or to the actual knowledge of Trustor threatened, against or affecting Trustor, any Guarantor or the Property in any court or before any governmental authority, nor is Trustor, Principal or any Guarantor in default with respect to any order of any court or governmental authority. For purposes hereof, the term "Principal" shall mean any individual who is an ultimate beneficial owner of the Trustor or who exerts ownership or management control over the Trustor;

(viii)    none of Trustor, Principal, any member of Trustor or any Guarantor has received any notice of default, or any notice of the existence of any state of facts which, with notice or the passage of time, or both, would constitute a default if not cured or corrected, under any document or instrument evidencing or securing any indebtedness of any of them, which default or state of facts, if it were to become a default, would have a material adverse effect on the Property or the Loan Documents;

(ix)    to the best of Trustor's knowledge, all reports, statements and other data furnished to Beneficiary by or on behalf of Trustor, Principal, any member of Trustor or any Guarantor are accurate and complete in all material respects and do not fail to state any fact or circumstance necessary to make the statements contained therein not misleading, and no material adverse change (including the incurring of any indebtedness not approved by Beneficiary) has occurred in their respective financial conditions since the dates of their respective financial statements most recently furnished to Beneficiary;

(x)    Trustor is not a "foreign person" within the meaning of Sections 1445 and 7701 of the Internal Revenue Code of 1986, as amended, or any other pertinent provision of said Code; and

(xi)    (A) Trustor is not and, during the term hereof, will not be an "employee benefit plan" as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or other retirement arrangement which is subject to Title I of ERISA or Section 4975 of the Internal Revenue Code of 1986, as amended (the "IRC"), (B) none of Trustor's assets constitute or, during the term hereof, shall constitute "plan assets" of one or more such plans or arrangements for purposes of Title I of ERISA or Section 4975 of the IRC, (C) Trustor is not, and will not be a "government plan" within the meaning of Section 3(32) of ERISA, and (D) the Loan will not be subject to Nevada state statutes applicable to Trustor regulating investments of, and fiduciary obligations with respect to, governmental plans within the meaning of Section 3(32) of ERISA.

(c)    Trustor also represents, warrants and covenants that to the best of Trustor's knowledge, and except as set forth in the Environmental Report (as defined in the Loan Agreement) or other environmental condition report obtained by Beneficiary in connection with the Loan:

(i)    no proceedings have been commenced against, and no notice, order, claim or demand has been received by, Trustor or any other person or entity having a direct or indirect ownership interest in Trustor concerning any actual or alleged violation of any Environmental Law (as hereinafter defined) or concerning the actual or alleged presence of any Hazardous Substances (as hereinafter defined) in, on, under, about or otherwise affecting (A) the Land and Buildings, or (B) any other property now or previously owned or operated by Trustor, or (C) any other property previously owned or operated in common with all or any part of the Land and Buildings, which

7

**EXHIBIT 30**

other property shall have been combined with all or any part of the Land and Buildings in a single property description;

(ii)    neither the Property nor any such other property is under investigation by any governmental or quasi-governmental authority or instrumentality with respect to any Environmental Law or any Hazardous Substances;

(iii)    neither the Property nor any such other property is or has been the subject of any threatened, proposed or actual cleanup or other protective, removal or remedial action relating to any Hazardous Substances, pursuant to any Environmental Law;

(iv)    there are no Hazardous Substances in, on, under, about or otherwise affecting the Property or any such other property (as discussed in (c)(i) (A) and (B) above, and no release, discharge, spillage, seepage or filtration of any Hazardous Substances has occurred in, on, under, about, from or otherwise affecting the Property or any such other property (including any migration of Hazardous Substances from neighboring land);

(v)    neither the Property nor any such other property is being used or, to the best of Trustor's knowledge, has been used, for the generation, manufacture, refining, production, processing, treatment, storage, handling, transportation, transfer, use or disposal of any Hazardous Substances in violation of any Environmental Law; and

(vi)    there are no active, dormant or closed underground storage tanks or receptacles for Hazardous Substances in, on under or about the Property.

(d)    As used in this Deed of Trust, the term "**Environmental Law**" means any present or future Governmental Requirement relating to Hazardous Substances, contamination or other pollution or relating to environmental protection, cleanup or remediation (including, but not limited to: the Clean Air Act, as amended, 42 U.S.C. Section 7401 et seq.; the Occupational Safety and Health Act, as amended, 29 U.S.C. Section 651 et seq.; the Emergency Planning and Community Right-to-Know Act of 1986, as amended, 42 U.S.C. Section 11001 et seq.; the Mine Safety and Health Act of 1977, as amended, 30 U.S.C. Section 801 et seq.; the Safe Drinking Water Act, as amended, 42 U.S.C. Section 300f et seq.; the Comprehensive Environment Response, Compensation and Liability Act of 1980, as amended (including the Superfund Amendments and Reauthorization Act of 1986, collectively "CERCLA"), 42 U.S.C. Section 9601 et seq.; the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. Section 6901, et seq.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. Section 1251 et seq.; the Toxic Substances Control Act, as amended, 15 U.S.C. Section 2601, et seq.; and the Hazardous Materials Transportation Act, as amended, 49 U.S.C. Section 5101 et. seq.; all amendments and supplements thereto, all administrative interpretations thereof and any official publication promulgated or issued pursuant thereto; and all other comparable state and local laws, administrative orders, regulations, and interpretations promulgated thereunder.

(e)    As used in this Deed of Trust, the term "**Hazardous Substances**" means (i) any and all petroleum products, natural gas liquids, asbestos (whether or not friable) and asbestos-containing materials, urea formaldehyde foam insulation, polychlorinated biphenyls and lead-containing materials, (ii) any and all other pollutants, contaminants and other toxic, harmful or hazardous wastes, substances or materials (A) which, because of their quantitative concentration, chemical, radioactive, flammable, explosive, infectious or other characteristics, constitute or contribute to (or might reasonably be expected to constitute or contribute to) a danger or hazard to public health, safety or welfare or to the environment, (B) the removal of which may be required by any Environmental Law, or (C) the generation, manufacture, refining, production, processing, treatment, storage, handling, transportation, transfer, use disposal, release,

8

**EXHIBIT 30**

discharge, spillage, seepage or filtration of which is or shall be restricted, regulated, prohibited or penalized by any Environmental Law, including, without limitation, any substances which are "hazardous substances," "hazardous wastes," "hazardous materials," "toxic substances," "wastes," "regulated substances," "industrial solid wastes," or "pollutants" under Environmental Law, as described above, and/or other applicable environmental laws, ordinances and regulations, (iii) any chemical known to cause cancer or reproductive toxicity, the exposure to which is limited or regulated by any governmental authority having jurisdiction over human health and safety, natural resources or the environment, because of such chemical's quantity, concentration, or physical chemical characteristics, or (iv) toxic mold.

     **1.3**     **Patriot Act Compliance**. Trustor hereby represents, warrants and covenants that, as of the date hereof and until such time as the Indebtedness shall be paid in full:

     (i)     None of Trustor, Guarantor, Principal or any person or entity controlling or controlled by Trustor, any person or entity with a beneficial interest in Trustor, any of their respective direct or indirect constituents or affiliates, any of their respective officers or directors (including officers or directors of any such constituents or affiliates), and, to Trustor's knowledge, any of their respective brokers, investors or other agents acting or benefiting in any capacity in connection with the Loan, is or will be a Prohibited Person (as hereinafter defined);

     (ii)     None of Trustor, Guarantor, Principal, or any person or entity controlling or controlled by Trustor, any person or entity with a beneficial interest in Trustor, any of their respective direct or indirect constituents or affiliates, any of their respective officers or directors (including officers or directors of any such constituents or affiliates) (A) to Trustor's knowledge, has conducted or will conduct any business or has engaged or will engage in any transaction or dealing with any Prohibited Person, including making or receiving any contribution of funds, goods or services to or for the benefit of any Prohibited Person, (B) to Trustor's knowledge, has dealt or will deal in, or otherwise has engaged or will engage in any transaction relating to, any property or interests in property blocked pursuant to the Executive Order (as hereinafter defined); or (C) to Trustor's knowledge, has engaged or will engage in or has conspired or will conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the requirements or prohibitions set forth in the Executive Order (as hereinafter defined) or the PATRIOT Act (as hereinafter defined);

     (iii)     To Trustor's actual knowledge, none of the brokers, investors or other agents for any person or entity controlling or controlled by Trustor or to Trustor's knowledge, any person or entity with a beneficial interest in Trustor or acting in any capacity in connection with the Loan (A) has conducted or will conduct any business or has engaged or will engage in any transaction or dealing with any Prohibited Person, including making or receiving any contribution of funds, goods or services to or for the benefit of any Prohibited Person, (B) has dealt or will deal in, or otherwise has engaged or will engage in any transaction relating to, any property or interests in property blocked pursuant to the Executive Order; or (C) has engaged or will engage in or has conspired or will conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the requirements or prohibitions set forth in the Executive Order or the PATRIOT Act;

     (iv)     Trustor covenants and agrees to deliver to Beneficiary any certification or other evidence reasonably requested from time to time by Beneficiary in writing, confirming Trustor's compliance with this Section;

     (v)     Trustor represents and warrants that to its knowledge Trustor, Principal and Guarantor and all of their respective affiliates (including any officers and directors of any of the

9

**EXHIBIT 30**

foregoing) are in full compliance with all applicable orders, rules and regulations issued by, and recommendations of, the U.S. Department of the Treasury and OFAC (as hereinafter defined) pursuant to the PATRIOT Act, other legal requirements relating to money laundering or terrorism and any executive orders related thereto;

   (vi) At all times throughout the term of the Loan, Trustor, Principal, Guarantor, and all of their respective affiliates (including any officers and directors of any of the foregoing) shall be in full compliance with all applicable orders, rules and regulations issued by, and recommendations of, the U.S. Department of the Treasury and OFAC pursuant to the PATRIOT Act, other legal requirements relating to money laundering or terrorism and any executive orders related thereto;

   (vii) Trustor covenants that it will adopt policies, procedures and internal controls to be fully compliant with any additional laws, rules or regulations relating to money laundering and/or terrorism, including the PATRIOT Act, to which it may become subject;

   (viii) Trustor does not believe, and has no reason to believe, that any of its investors is a "Prohibited Foreign Shell Bank" (as defined in the PATRIOT Act), or is named on any available lists of known or suspected terrorists, terrorist organizations or of other sanctioned persons issued by the United States government and/or the government(s) of any jurisdiction(s) in which Trustor is doing business;

   (ix) Trustor does not believe, and has no reason to believe, that the person or entity from whom Trustor acquired the Property is a Prohibited Foreign Shell Bank, or is named on any available lists of known or suspected terrorists, terrorist organizations or of other sanctioned persons issued by the United States government and/or the government(s) of any jurisdiction(s) in which Trustor is doing business;

   (x) Trustor will advise Beneficiary immediately of any material change that would affect the representations, covenants and warranties provided in this Section.

As used herein, the following terms shall have the following respective meanings:

**"Prohibited Person"** means any individual or entity:

   (a) listed in the Annex to, or is otherwise subject to the provisions of, the Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, and relating to Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (the **"Executive Order"**);

   (b) that is owned or controlled by, or acting for or on behalf of, any person or entity that is listed in the Annex to, or is otherwise subject to the provisions of the Executive Order;

   (c) with whom Beneficiary is prohibited from dealing or otherwise engaging in any transaction by any terrorism or money laundering legal requirements, including the PATRIOT Act and the Executive Order;

   (d) that commits, threatens or conspires to commit or supports "terrorism" as defined in the Executive Order;

   (e) that is named as a "specifically designated national (SDN)" on the most current list published by the U.S. Treasury Department Office of Foreign Assets Control at its official website,

10

**EXHIBIT 30**

EXHIBIT 30

http://www.treas.gov.ofac/tllsdn.pdf or at any replacement website or other replacement official publication of such list or is named on any other U.S. or foreign government or regulatory list issued after September 11, 2001;

(f)    that is covered by OFAC or any other law, regulation or executive order relating to the imposition of economic sanctions against any country, region or individual pursuant to United States law or United Nations resolution; or

(g)    that is an affiliate (including any principal, officer, immediate family member or close associate) of a person or entity described in one or more of clauses (a) - (f) of this definition of "Prohibited Person".

"**OFAC**" means the U.S. Department of Treasury's Office of Foreign Asset Control.

"**PATRIOT Act**" means the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-56 (The USA Patriot Act), as the same may be amended and/or replaced from time to time.

None of the representations, warranties or covenants set forth in Sections 1.2 and 1.3 are intended to limit the generality of any other representations, warranties or covenants set forth in this Deed of Trust, any of the other Loan Documents or any other documents delivered in connection with the Loan.

**1.4    Compliance with Requirements.** Trustor shall cause the Property and the use thereof to comply at all times with the Permitted Exceptions, with all other applicable agreements and restrictive covenants, if any (including all insurance policies maintained with respect to the Property) and with all applicable Governmental Requirements (including all zoning and subdivision ordinances and building codes and all Environmental Laws), whether now or hereafter in effect. Trustor shall obtain and maintain all licenses, permits, approvals, authorizations and filings from time to time required in connection with the Property and the use thereof.

**1.5    Discharge of Liens.** If any mechanic's, laborer's, materialman's, statutory or other lien or any other security interest, charge or encumbrance (other than the Permitted Exceptions, any lien for Impositions (as hereinafter defined) not yet due and payable or any lien for Impositions being contested and remaining unpaid in accordance with Section 1.6) shall be filed or otherwise imposed upon or against all or any part of the Property, then Trustor shall, within thirty (30) days after being given notice of (or otherwise becoming aware of) such filing or Imposition, cause such lien, security interest, charge or encumbrance to be vacated or discharged of record by payment, deposit, bond, final order of a court of competent jurisdiction or otherwise, provided however, Trustor shall have the right to actively contest any such mechanic's, laborer's, materialmen's, statutory or other lien or encumbrance provided same is properly bonded. If any such lien, security interest, charge or encumbrance shall not be so vacated or discharged, then, in addition to any other right or remedy of Beneficiary, Beneficiary shall be entitled, but shall not be obligated, to discharge such lien, security interest, charge or encumbrance in such manner as Beneficiary may select, and Beneficiary shall be entitled, if Beneficiary shall so elect, to compel the prosecution of an action for the foreclosure of such lien, security interest, charge or encumbrance by the lienor and to pay the amount of any judgment in favor of such lienor, with interest, costs and allowances. Within thirty (30) days of Beneficiary's request, Trustor shall reimburse Beneficiary for all such payments and for reasonable costs, expenses and liabilities (including reasonable attorneys' fees) incurred by Beneficiary or Trustee in connection therewith, together with interest thereon at the Default Rate (as hereinafter defined) from the date paid or incurred by Beneficiary until the date of such reimbursement. Notwithstanding the foregoing, this Section 1.5 shall be subject to the terms of the Loan Agreement.

11

**EXHIBIT 30**

**1.6**     **Taxes Affecting Property.** Subject to the terms of the Loan Agreement:

(a)     Trustor shall pay or cause to be paid, on or before the last day when they may be paid without interest, penalty or increase (except to the extent otherwise provided in paragraph (b) of this Section), all taxes, assessments, rates, dues, charges, fees, levies, excises, duties, fines, impositions, liabilities, obligations and encumbrances, general or special, ordinary or extraordinary, foreseen or unforeseen, of every kind whatsoever, now or hereafter imposed, levied or assessed by any public or quasi-public authority or instrumentality upon or against all or any part of the Property or the use, occupancy or possession thereof, or upon or against this Deed of Trust, the Indebtedness or the interest of Beneficiary or Trustee in the Property, as well as all income taxes, assessments and other governmental charges imposed, levied or assessed upon or against Trustor or in respect of all or any part of the Property, and any and all interest, costs and penalties on or with respect to any of the foregoing (collectively, the "Impositions"). Upon Beneficiary's request, Trustor shall deliver to Beneficiary copies of original receipts or other satisfactory proof of payment of any and all Impositions, unless Beneficiary is escrowing for said Impositions.

(b)     After prior written notice to Beneficiary, Trustor shall have the right, at its sole expense, to contest the validity, applicability or amount, in whole or in part, of any asserted Imposition and to seek a reduction in the valuation of all or any part of the Property as assessed for tax purposes, by appropriate proceedings diligently conducted in good faith to final determination, but only after payment of the asserted Imposition, unless such payment would operate as a bar to such contest or would interfere materially with the prosecution of such contest, in which event payment of the asserted Imposition may be postponed if, and only so long as:

(i)     Trustor provides prior written notice to Beneficiary of Trustor's intent to contest any asserted Impositions;

(ii)     Trustor shall have paid any minimum amount required by applicable law to be paid in connection with such contest (which payment may be made under protest if required or permitted by applicable law);

(iii)     neither Beneficiary nor Trustee would, in Beneficiary's sole judgment, be in danger of being subjected to any liability, penalty or charge of any kind in connection with such contest or in connection with such postponement or nonpayment;

(iv)     neither the Property nor any part thereof or any interest therein would, in Beneficiary's sole judgment, be in danger of being forfeited or lost by reason of such contest or by reason of such postponement or non-payment (whether due to the foreclosure of any lien securing any asserted Imposition or otherwise); and

(v)     Trustor shall have established an escrow acceptable to Beneficiary in an amount estimated by Beneficiary to be adequate to cover (A) the unpaid amount of the asserted Imposition, (B) all interest, penalties and similar charges which reasonably can be expected to accrue by reason of such contest or by reason of such postponement or nonpayment, and (C) all costs, fees and expenses (including attorneys' fees) that reasonably can be expected to be incurred in connection therewith by Beneficiary or Trustee, which escrow shall be maintained in effect throughout such contest and the amount of which shall be increased from time to time if required by Beneficiary.

(c)     Upon termination of any such contest (whether by entry of a final judgment or otherwise), or at any time during the course of any such contest when the conditions permitting postponement of payment of the asserted Imposition are no longer satisfied or are discovered to be

12

**EXHIBIT 30**

unsatisfied, Trustor shall pay the then-unpaid portion of such asserted Imposition, together with all interest, penalties and similar charges and all costs, fees and expenses (including attorneys' fees) incurred in connection therewith. At Trustor's option, the escrow established pursuant to paragraph (b) of this Section may be applied at such time to payment of all or any part of such Imposition, interest, penalties, charges, costs, fees and expenses. Upon payment of the full amount of such asserted Imposition and such interest, penalties, charges, costs, fees and expenses, Trustor shall deliver to Beneficiary evidence of such payment. Thereafter, the amount then remaining in the escrow established pursuant to paragraph (b) of this Section shall be promptly returned to Trustor.

(d) Trustor shall not claim, demand or be entitled to receive any reduction of, or credit toward, any Impositions on account of the Indebtedness. No deduction shall be claimed from the taxable value of all or any part of the Property by reason of the Indebtedness, any of the Loan Documents or the interest of Beneficiary or Trustee in the Property.

1.7    **Taxes Affecting Beneficiary's or Trustee's Interest.**

(a) If existing laws or procedures governing the taxation of mortgages, deeds of trust or debts secured by mortgages or deeds of trust shall be changed in any manner after the date hereof so as to impair the security of this Deed of Trust or to reduce the net income to Beneficiary in respect of the Indebtedness, then, upon Beneficiary's request, Trustor shall pay to Beneficiary or to the taxing authority (if so directed by Beneficiary) all taxes, charges and related costs for which Beneficiary may be liable as a result thereof; provided, however, that, if (in Beneficiary's reasonable opinion) payment by Trustor of any such taxes, charges or related costs is prohibited by applicable law or would subject Beneficiary or Trustee to any liability, penalty or charge of any kind or would render the Note usurious, then, in any such event, Trustor shall not make such payment, and the entire balance of the Indebtedness, without notice, shall be due and payable forthwith at the option of Beneficiary. Notwithstanding the foregoing, Trustor shall not be liable for the payment of any income tax to be paid by Beneficiary or as a result of any increase in the income tax rate applicable to Beneficiary.

(b) Trustor shall pay, when due, any and all recording, intangible property and documentary stamp taxes, all similar taxes, and all filing, registration and recording fees, now or hereafter payable in connection with the Indebtedness, this Deed of Trust or any of the other Loan Documents. Trustor shall pay, when due, any and all excise, transfer and conveyance taxes now or hereafter payable in connection with the Indebtedness, this Deed of Trust or any of the other Loan Documents or in connection with the exercise or enforcement of Beneficiary's rights, powers, privileges and remedies with respect thereto. Without limiting the generality of the foregoing, Trustor shall pay, when due, any and all such taxes payable in connection with any foreclosure of this Deed of Trust, any sale pursuant to the power of sale provided under this Deed of Trust, any so-called deed in lieu of foreclosure of this Deed of Trust, any transfer of all or any part of the Property (or any interest therein) pursuant to the Bankruptcy Code or any other Insolvency Law or any other transfer of all or any part of the Property (or any interest therein) in extinguishment or satisfaction of all or any part of the Indebtedness or any related obligations of Trustor. Any such foreclosure (whether judicial or, to the extent permitted by law, non-judicial), sale, deed in lieu or other transfer is sometimes referred to in this Deed of Trust as a "**Foreclosure.**" The purchaser, grantee or other person succeeding to ownership of all or any part of the Property (or any interest therein) pursuant to any Foreclosure is sometimes referred to in this Deed of Trust as the "**Subsequent Owner.**"

1.8    **Insurance.** Subject to the terms of the Loan Agreement:

(a) Trustor, at its sole expense, shall obtain for, deliver to, assign to, and maintain for the benefit of Beneficiary, for so long as this Deed of Trust shall remain in effect, insurance policies (including renewals as provided below) in such amounts as Beneficiary may reasonably require, insuring

13

**EXHIBIT 30**

the Property against all insurable hazards, casualties and contingencies (including, but not limited to, loss of rentals, business interruption, earthquake and terrorism and during the construction of the Project, Builder's Risk) as Beneficiary may reasonably require. Trustor shall pay all premiums on such insurance policies and all other fees and charges payable in connection with such insurance policies (such premiums, fees and charges being collectively referred to in this Deed of Trust as "Insurance Premiums") not later than the due date thereof. During the progress of any construction, renovation, restoration or repair in or on the Property, Trustor shall maintain such insurance in builder's risk, completed value, non-reporting form, with permission to complete and occupy, together with workers' compensation coverage. All such policies shall be issued by a company or companies reasonably acceptable to Beneficiary, shall be in form reasonably acceptable to Beneficiary and shall contain such provisions and endorsements as Beneficiary may reasonably require. Without limiting the generality of the foregoing, each such policy shall contain noncontributory standard mortgagee and lender's loss payable endorsements making all losses payable to Beneficiary, shall provide that no act or omission of Trustor shall invalidate such policy as against Beneficiary and shall provide that such policy shall not be canceled, terminated, denied renewal or materially altered without at least thirty (30) days' prior written notice to Beneficiary. Certificates of insurance with respect to all such policies and (if requested by Beneficiary) duplicate originals of all such policies shall be delivered to Beneficiary. At least thirty (30) days prior to the expiration date of each such policy, a replacement or renewal of such policy reasonably satisfactory to Beneficiary shall be delivered to Beneficiary. At least thirty (30) days prior to the expiration date of each such policy (including each such renewal), Trustor shall deliver to Beneficiary a satisfactory receipt evidencing the prepayment of all Insurance Premiums relating to such policy for a period of not less than one (1) year. In the event of any Foreclosure, all right, title and interest of Trustor in and to all such policies then in force shall pass to the Subsequent Owner. Beneficiary's acceptance or approval of any insurer or of any insurance coverage shall not be construed as a representation, warranty or agreement concerning the financial capability or reliability of such insurer or concerning the adequacy of such coverage for any purpose other than compliance with the requirements of this Section, and Beneficiary shall not be responsible or accountable to Trustor or any other person for the selection of any such insurer or any such coverage.

(b)     Trustor, at its sole expense, shall obtain for, deliver to, and maintain for the benefit of Beneficiary, for so long as this Deed of Trust shall remain in effect, liability insurance policies relating to the Property, in such amounts, with such companies and in such form as Beneficiary may reasonably require. Each such policy shall name Beneficiary as an additional insured and shall provide that such policy may not be cancelled, terminated, denied renewal or materially altered without at least thirty (30) days' prior written notice to Beneficiary. Trustor shall pay all premiums on such insurance policies when due and, promptly thereafter, shall deliver to Beneficiary satisfactory evidence of such payment.

(c)     Trustor shall not carry, and shall not cause, permit or suffer to be carried, any additional or separate insurance concurrent in form or contributing in the event of loss with any insurance required to be maintained pursuant to this Deed of Trust, or in excess of the amounts of insurance coverage required to be maintained pursuant to this Deed of Trust, unless such insurance shall comply with the provisions of this Section (including the loss payable provisions set forth above). Trustor shall immediately notify Beneficiary if any such additional, separate or excess insurance shall be carried and, promptly thereafter, shall deliver to Beneficiary duplicate originals of all policies of such insurance (including all renewals thereof).

1.9     <u>Deposits.</u>

(a)     In order to assure compliance with Trustor's obligations under Section 1.6, but not in lieu of such obligations, Trustor shall pay to Beneficiary (or Beneficiary's loan correspondent, if any), each month and with each regularly scheduled payment under the Note (or at such other time or times as Beneficiary may request), an amount equal to one-twelfth (1/12) of the annual Impositions, next becoming

14

**EXHIBIT 30**

due and payable (as estimated or determined by Beneficiary). In addition, upon Beneficiary's request, Trustor shall pay to Beneficiary (or Beneficiary's loan correspondent, if any) such additional funds as Beneficiary may estimate or determine to be necessary to enable Beneficiary (or Beneficiary's loan correspondent, if any) to pay any Impositions then due and payable or to pay, when due, any or all of the Impositions next becoming due and payable after the date of such request.

(b)    No deposits paid to Beneficiary pursuant to this Section shall be deemed to be trust funds, and any and all such deposits may be commingled with the general funds of Beneficiary. No interest shall be required to be paid to Trustor in respect of any such deposits. Trustor shall deliver to Beneficiary, promptly after the receipt thereof, all bills for Impositions for which Beneficiary shall have collected, or shall be collecting, deposits pursuant to this Section. Trustor also shall deliver to Beneficiary, upon Beneficiary's request or at such other time or times as may be required, any and all other documents and instruments that may be required to enable Beneficiary to pay such Impositions when due (or in the case of real property taxes, the date on which the taxes would become delinquent if not paid). Trustor further acknowledges that Beneficiary may, in its sole discretion, engage the services of a tax service company to verify the status of taxes and assessments on the Property. Trustor shall promptly reimburse Beneficiary for the reasonable costs of said tax service company. In the event Beneficiary pays any Imposition, Beneficiary shall be entitled to rely, notwithstanding whether or not Beneficiary engages a tax service company, upon any certificate, advice or bill from any authority (or any official thereof) or from any other person to which such Imposition may be payable, and Beneficiary shall have no duty to inquire as to the validity or accuracy of any such certificate, advice or bill or to make any protest in connection with any such payment or any such certificate, advice or bill. Upon the occurrence of any Event of Default, Beneficiary, at its option, may apply all or any part of any such deposits then remaining to Trustor's credit, in such manner as Beneficiary may determine, to reduce the Indebtedness then outstanding.

(c)    Nothing contained in this Section shall be deemed to affect any right, power, privilege or remedy of Beneficiary or Trustee, under any provision of this Deed of Trust or under any statute or rule of law, to pay any amount required to be paid by Section 1.6 or Section 1.8, to add the amount so paid to the Indebtedness and to require Trustor to reimburse Beneficiary for such amount, together with interest thereon at the Default Rate from the date so paid until the date so reimbursed. Although Beneficiary intends to use reasonable efforts to make payments in a timely fashion with any deposits collected pursuant to this Section, the arrangements described in this Section are solely for the added protection of Beneficiary and shall entail no responsibility on Beneficiary's part beyond the allowing of due credit, without interest, for deposits actually received by Beneficiary. In the event of any transfer of Trustor's right, title and interest in or to all or any part of the Property, Beneficiary shall be entitled to treat such transfer as also effecting an assignment to the transferee of all right, title and interest of Trustor in and to any and all such deposits relating to the transferred portion of the Property, subject, however, to the rights of Beneficiary under this Deed of Trust. After any assignment by Beneficiary of its interest in this Deed of Trust, any such deposits on hand shall be turned over to the assignee or returned to Trustor, and all responsibility of Beneficiary with respect to such deposits shall terminate.

1.10    **Casualty and Condemnation.** Subject to the provisions of the Loan Agreement:

(a)    Trustor shall promptly notify Beneficiary, in writing, of (i) the occurrence of any fire, casualty, damage or loss of the type covered (or required to have been covered) by any insurance policy relating to all or any part of the Property (any such occurrence being referred to in this Deed of Trust as a "Casualty"), other than any Minor Casualty (as hereinafter defined) not involving loss of life or serious bodily injury, (ii) Trustor's receipt of any notice of any contemplated, threatened or pending Condemnation Proceeding, (iii) the commencement of any Condemnation Proceeding, and (iv) the occurrence of any Taking. Thereafter, Trustor shall cooperate with Beneficiary in evaluating the nature and extent of such event and shall promptly provide Beneficiary with such information concerning such event as Beneficiary

15

**EXHIBIT 30**

EXHIBIT 30

may request. As used in this Deed of Trust, the term "Minor Casualty" means any Casualty that could not reasonably be expected to yield Compensation from any insurance policy in an amount greater than $100,000 and which could not reasonably be expected to require the expenditure of more than $100,000 in restoration, repair and replacement costs.

(b)     Beneficiary may make proof of loss with respect to any Casualty (other than any Minor Casualty) if Trustor shall not have done so promptly after the occurrence of such Casualty. Trustor hereby irrevocably authorizes and appoints Beneficiary the agent and attorney-in-fact of Trustor, at Beneficiary's option, to (i) adjust or compromise the loss arising from any Casualty, (ii) commence, appear in and prosecute in its own or Trustor's name any Condemnation Proceeding and settle or compromise any claim in connection therewith, (iii) collect and receive all Compensation in respect of any Casualty (other than a Minor Casualty), Condemnation Proceeding or Taking, and (iv) give proper receipts and acquittances for all Compensation so collected and received. Such appointment includes full power of substitution and shall be deemed to be coupled with an interest and such appointment shall be irrevocable so long as any Indebtedness remains outstanding. Trustor shall promptly deliver to Beneficiary any and all documents, instruments and authorizations that Beneficiary may reasonable request (and in Trustor's possession or control) to enable Beneficiary to take any such action. If Beneficiary shall not elect to prosecute any Condemnation Proceeding as provided above, then Trustor, at its sole expense, shall prosecute such Condemnation Proceeding diligently and in good faith and shall consult with Beneficiary and keep Beneficiary fully informed in connection therewith. Beneficiary shall have the right, at its option, to participate in such Condemnation Proceeding.

(c)     Each insurer issuing any insurance policy maintained pursuant to this Deed of Trust or otherwise relating to the Property is hereby irrevocably authorized and directed to pay all Compensation payable in connection with any Casualty (other than a Minor Casualty) directly to Beneficiary alone (and not to Trustor, Beneficiary and any other person or persons jointly). Trustor shall take all steps necessary to assure that all Compensation payable in connection with any Casualty (other than a Minor Casualty), Condemnation Proceeding or Taking shall be paid to Beneficiary alone (and not to Trustor, Beneficiary and any other person or persons jointly), and that all such Compensation at all times shall be free and clear of any and all liens, security interests, charges, encumbrances and claims of other persons, of any kind whatsoever. Trustor shall promptly pay over to Beneficiary any such Compensation received by Trustor, except as contemplated by paragraph (d) of this Section. Trustor hereby irrevocably authorizes and appoints Beneficiary as Trustor's attorney-in-fact to endorse Trustor's name on any instrument in payment of any such Compensation, which appointment includes full power of substitution and shall be deemed to be coupled with an interest and such appointment shall be irrevocable so long as any Indebtedness remains due and owing. Although Beneficiary intends to use reasonable efforts to collect such Compensation in a timely fashion, Beneficiary shall not be responsible for any failure to collect such Compensation. After any event giving rise to the payment of Compensation, Trustor shall continue to pay interest, at the applicable rate and at the times provided in the Note, on the entire outstanding principal amount of the Indebtedness.

(d)     No Compensation received by Beneficiary as contemplated by this Section shall be deemed to be trust funds, and any and all such Compensation may be commingled with the general funds of Beneficiary. No interest shall be required to be paid to Trustor in respect of any such Compensation. After deducting from such Compensation any reasonable expenses (including reasonable attorneys' fees) incurred by Beneficiary in connection with the collection or handling of such Compensation (including any expenses incurred in the adjustment or compromise of any loss and any expenses incurred in connection with any Condemnation Proceeding), Beneficiary may apply such net Compensation, in such manner as Beneficiary may determine in accordance with customary construction loan practices, either toward restoring or repairing the Improvements or building new Improvements in their place or to reduce the Indebtedness then outstanding, whether then matured or to mature in the future. Alternatively, Beneficiary,

16

**EXHIBIT 30**

at its option, may pay over to Trustor from time to time all or any part of such net Compensation for the purpose of restoring or repairing the Improvements or building new Improvements in their place, or for any other purpose satisfactory to Beneficiary, without affecting the lien of this Deed of Trust as security for the full Indebtedness secured by this Deed of Trust before such payment to Trustor took place. Notwithstanding the foregoing, after deducting expenses as provided above, Beneficiary shall, if requested by Trustor within thirty (30) days after Beneficiary's receipt of such Compensation, make such net Compensation available for restoring or repairing the Improvements or building new Improvements in their place, all in accordance with terms, conditions and procedures customarily followed by prudent institutional lenders in making construction loans in similar amounts and in accordance with such other terms, conditions and procedures as Beneficiary may require to assure the proper application of such Compensation and the continuing performance by Trustor of its obligations under the Loan Documents, provided (i) no Event of Default shall then exist beyond any applicable notice and cure period and no state of facts shall then exist which, with notice or the passage of time, or both, would constitute an Event of Default if not cured or corrected, (ii) Beneficiary shall be reasonably satisfied that such net Compensation, together with any additional funds made available for such purpose by Trustor and deposited with Beneficiary, or with a depository acceptable to Beneficiary pursuant to instructions acceptable to Beneficiary, shall be sufficient to restore or repair the Improvements or build new Improvements in their place, as the case may be, in accordance with the budget and plans and specifications approved by Beneficiary, free and clear of any and all liens, security interests, charges and encumbrances, except the lien of this Deed of Trust and any other liens expressly permitted pursuant to this Deed of Trust, (iii) Beneficiary shall be satisfied that such restoration, repair or rebuilding can be completed within any applicable time limit imposed by law or agreement, (iv) Beneficiary shall be satisfied, in its sole discretion, that, after such restoration, repair or rebuilding (taking into account the status of leasing of the Property and any restrictions imposed by law or agreement on such restoration, repair or rebuilding or on the use of the Property after such restoration, repair or rebuilding), the remaining Property shall constitute adequate security for the Indebtedness, and (v) the Rents, together with the proceeds of any business interruption insurance, exceed the sum of (x) the amount necessary to service the monthly debt service of the Loan, and (y) the amount of the operating expenses of the Property, until such time as the Improvements are restored, repaired or rebuilt and Rents will thereafter exceed said amounts.

**1.11    Care and Management of Property.**

(a)    Trustor shall keep the Property (or cause the Property to be) in good and safe condition and repair and in working order (ordinary wear and tear excepted and subject to the right to restore and repair after a Casualty) and shall cause all repairs, replacements and improvements to be made as and when required to keep the Property in such condition and repair and in working order. Trustor shall not threaten, cause, permit or suffer (i) any abandonment or physical waste of all or any part of the Property or any material impairment or deterioration of all or any part of the Property, (ii) the conduct of any nuisance in or on the Property, or (iii) any act or omission that would materially increase the risk that any Casualty could occur. Trustor shall pay or cause to be paid, when due, all charges for utilities serving or intended to serve the Property, as well as all assessments and charges payable from time to time under the Permitted Exceptions or any other agreements or covenants, whether public or private, affecting the Property.

(b)    Trustor hereby authorizes Beneficiary, or any agent, independent contractor or other representative of Beneficiary, upon reasonable written notice to Trustor and subject to the rights of tenants under any Leases, to at mutually agreeable times enter upon the Property (and Trustor may at its option have a representative of Trustor accompany the Beneficiary for such site visits or audits) for the purpose of examining and copying the books and records of Trustor and the property manager related to the Property and for performing, or causing to be performed: (i) non-invasive environmental inspections of the Property (including, but not limited to, the investigations and testing necessary to conduct and complete Phase I investigations), (ii) engineering and structural inspections, testing, investigations and analysis, (iii) property valuation appraisals, and (iv) any other acts that Beneficiary is expressly authorized to perform

17

**EXHIBIT 30**

under the terms of this Deed of Trust. All costs and expenses incurred by Beneficiary in the exercise of its rights under this subsection shall be paid by Beneficiary, provided that if (1) Beneficiary has a good faith basis for suspecting that a material deterioration in the physical condition of the Property has or is occurring, or (2) Beneficiary has a good faith basis for suspecting that there are Hazardous Substances present on, or are otherwise being handled or discharged from, the Property in violation of applicable law, or (3) the examination of such books and records reveals that any financial information submitted to Beneficiary is incorrect, incomplete or misleading in any material respect or (4) an Event of Default hereunder or under the Loan Documents exists and remains uncured, then the costs and expenses of such inspection shall be secured by this Deed of Trust and shall be payable by Trustor upon written demand.

(c)    If the Property shall be physically damaged or destroyed by any Casualty or other cause, then Trustor shall promptly give written notice of such damage or destruction to Beneficiary. Thereafter, Trustor shall promptly commence and diligently pursue to completion the restoration or repair of the Property to the equivalent or better of its condition immediately prior to such damage or destruction (or, in the case of any Taking, to such condition as shall be reasonably satisfactory to Beneficiary), whether or not there shall be any Compensation therefor.

(d)    No work required to be performed pursuant to this Section (other than routine maintenance and repairs) shall be undertaken until plans and specifications for such work, have been prepared and signed by an architect or engineer satisfactory to Beneficiary, have been approved by all governmental authorities whose approval is required, and have been submitted to and approved in writing by Beneficiary.

(e)    No part of the Improvements shall be removed, demolished or materially altered, without the prior written consent of Beneficiary, which shall not be unreasonably delayed, conditioned or withheld for any removal, demolition or alteration that does not diminish the value of the Improvements. Notwithstanding the foregoing, Trustor shall have the right, without the consent of Beneficiary, to remove and dispose of, free from the lien of this Deed of Trust, items of Equipment that have become worn out or obsolete; provided, however, that, either simultaneously with or prior to such removal or disposition, each such item shall be replaced with another item or items of equal utility and of a value at least equal to that of the replaced item when first acquired, which item or items shall be owned by Trustor and shall be free from any lien, security interest, charge, encumbrance, ownership interest or other right or claim of any other person. By such removal and replacement, Trustor shall be conclusively deemed to have elected to subject said replacement item to the lien of this Deed of Trust.

(f)    The Property shall at all times be managed by Trustor, or by such other management company as may be reasonably approved in writing by Beneficiary in its sole discretion. Such management shall be conducted pursuant to and in accordance with a management agreement approved in writing by Beneficiary. Such management agreement shall not be materially amended, terminated or canceled without the prior written consent of Beneficiary, which approval shall not be unreasonably withheld, conditioned or delayed. Notwithstanding anything to the contrary contained herein, Beneficiary shall have the right to require a change in the property manager upon the occurrence of an Event of Default. Payments due under any management agreement after an Event of Default shall be subordinate to the payments becoming due under the Loan.

### 1.12    Use of Property.

(a)    Subject to the terms of the Lease, the Property shall be used as a Tesla industrial facility only (along with related amenities) and for no other purpose except as otherwise permitted by Beneficiary in its sole and reasonable discretion. Without limiting the generality of the immediately preceding sentence, Trustor shall not cause, permit or suffer any drilling or exploration for, or extraction,

18

**EXHIBIT 30**

**EXHIBIT 30**

removal or production of, oil, gas or minerals from the surface or subsurface of the Land. Trustor shall not declare, advertise or market all or any part of the Property as an existing or proposed condominium, cooperative or other common interest community.

(b)    Trustor shall not, without the prior written consent of Beneficiary, which shall not be unreasonably delayed, conditioned or withheld, (i) request or otherwise initiate, consent to or acquiesce in any zoning classification or reclassification of the Property or the adoption, issuance, imposition or amendment of any other Governmental Requirement relating to the use, occupancy, operation, development or disposition of the Property, (ii) request or otherwise initiate, consent to or acquiesce in the annexation of all or any part of the Property by or into any municipality or other governmental or quasi-governmental unit, or (iii) execute, file or record any subdivision plat affecting the Property or request or otherwise initiate, consent to or acquiesce in any subdivision affecting the Property.

(c)    Trustor shall not, without the prior written consent of Beneficiary, which shall not be unreasonably delayed, conditioned or withheld, (i) enter into, consent to or otherwise cause, permit or suffer the Property to become subject to any covenant, agreement or other arrangement restricting or limiting the use, occupancy, operation, development or disposition thereof, (ii) execute, file or record any map, plat or replat affecting the Property, or (iii) except as otherwise specifically permitted pursuant to this Deed of Trust, cause, permit or suffer the Property to become subject to any easement, right-of-way, privilege, claim, franchise, license or profit or any other estate, interest, benefit, power or right.

(d)    Trustor shall not cause, permit or suffer the Property to be used by the public without restriction or in any manner that might tend to impair Trustor's right, title and interest in and to all or any part of the Property or in any manner that might make possible any claim of adverse usage or adverse possession by the public or any claim of implied dedication of all or any part of the Property.

(e)    If, pursuant to any Governmental Requirement, the existing or any future use, occupancy or operation of the Property is or shall be permitted only so long as such use, occupancy or operation shall continue, then Trustor shall not cause, permit or suffer such use, occupancy or operation to be discontinued without the prior written consent of Beneficiary, which shall not be unreasonably delayed, conditioned or withheld.

(f)    Trustor shall not cause, permit or suffer the installation of any underground storage tank or receptacle or the generation, manufacture, refining, production, processing, treatment, storage, handling, transportation, transfer, use, disposal, release, discharge, spillage, seepage or filtration of any Hazardous Substances in violation of Environmental Law, in, on, under, about or from the Property.

1.13    <u>Leases.</u>

(a)    Trustor shall keep, perform, observe and comply with all of its obligations as landlord under all Leases from time to time in effect, and Trustor shall use its commercially reasonable efforts to require the Tenant under each Lease to keep, perform, observe and comply with Tenant's obligations thereunder. Upon request, Trustor shall deliver to Beneficiary accurate and complete certified copies of all Leases and all amendments thereto.

(b)    Without in any way limiting the foregoing, any new Lease executed and/or agreed upon by Trustor subsequent to the execution of this Deed of Trust, or any amendment, renewal, extension, modification, or other change to any Existing Lease, shall be in writing and in a form approved in writing by Beneficiary.

19

**EXHIBIT 30**

(c)        Trustor shall not, without the prior written consent of Beneficiary, which shall not be unreasonably delayed, conditioned or withheld, (i) accelerate or accept the payment of Rents under any Lease more than thirty (30) days in advance of the due date thereof, or (ii) grant any reduction, deferral or abatement of the Rents payable under any Lease. Trustor shall hold all such security deposits and advance payments as trust funds for the benefit of Tenants and subsequent owners and operators of the Property.

(d)        Neither the assignment of the Leases and the Lease Guaranties under this Deed of Trust nor any acts or omissions of Beneficiary or Trustee in connection therewith shall be deemed or construed to (i) cause Beneficiary or Trustee to be or to become a mortgagee-in-possession of the Property, (ii) impose upon Beneficiary or Trustee any obligations, duties or liabilities of Trustor under or in respect of any Lease or any Lease Guaranty (including any liability under any covenant of quiet enjoyment in the event that any Tenant shall have been barred and foreclosed as a result of any Foreclosure), or (iii) impose on Beneficiary any responsibility for the control, management, operation, care, repair or maintenance of the Property, for any waste or dangerous or defective condition of the Property or for any environmental contamination of or emanating from the Property. Without limiting or otherwise affecting the foregoing, Trustor shall assign to Beneficiary (if so directed by Beneficiary), as additional security for the Indebtedness, by a written document approved by Beneficiary, all right, title and interest (presently, absolutely, and unconditionally and not merely collaterally) of Trustor in and to any and all Leases and Lease Guaranties then in effect, together with all Rents payable or accruing thereunder as set forth below and further described in the Assignment of Leases.

(e)        Without limiting the generality of the foregoing, each Lease entered into on or after the date hereof, and any amendment, modification, renewal, or extension of any Existing Lease, and all rights of the Tenants thereunder, shall be subject and subordinate to this Deed of Trust, except to the extent, if any, such Lease or Leases shall be made superior to the lien of this Deed of Trust as provided for in this subsection (e). At any time and from time to time, Beneficiary or Trustee (acting at Beneficiary's request) may, by written notice to the Tenant under any Lease otherwise subordinate to the lien of this Deed of Trust, cause such Lease to be made superior to the lien of this Deed of Trust, subject to and in accordance with the terms of this paragraph, whether or not any such Lease shall have been entered into after the date hereof. From and after such written notice, the Lease or Leases described therein shall be superior to the lien of this Deed of Trust and shall not be extinguished by any Foreclosure; provided, however, that the aforesaid subordination shall not apply to, and neither the lien of this Deed of Trust nor any of Beneficiary's rights under this Deed of Trust shall be subordinate to, (i) any purchase option or any first refusal, first offer or similar option set forth in any such Lease or entered into in connection therewith, (ii) any extension, renewal or similar option set forth in any such Lease or entered into in connection therewith (unless Beneficiary shall specifically agree to the contrary in writing), (iii) any modifications or amendments of any such Lease (unless Beneficiary shall specifically agree to the contrary in writing), or (iv) any lien, security interest, charge, encumbrance or other interest of any kind (other than the Lease or Leases specifically identified in such notice) in or on the Property (whether superior or subordinate to any such Lease or Leases); provided, further, that the aforesaid subordination shall not affect the priority of Beneficiary's rights under this Deed of Trust in and to any Compensation and shall not subject Beneficiary or any Subsequent Owner to liability for any act, omission, representation or warranty of Trustor or any other previous landlord under any Lease, to any offsets or defenses which the Tenant under any Lease might have against Trustor or any other previous landlord or to liability for return of any security deposits under any Lease.

(f)        At Beneficiary's option, after an Event of Default hereunder beyond any applicable notice and cure period, Trustor shall deposit with Beneficiary or Beneficiary's mortgage loan correspondent (if any) all tenant security deposits or reasonable security (such as a letter of credit) therefore subject to and pursuant to the terms of the Leases with respect to such security deposits or security.

20

**EXHIBIT 30**

**1.14**    **Assignment of Rents.**

(a)    The assignment of the Rents and the Security under this Deed of Trust is intended to be and, to the fullest extent permitted by law, is an absolute and unconditional present assignment of the Rents and the Security, and not merely the grant or other creation of a lien or security interest in or on the Rents and the Security; provided, however, that Trustor shall be permitted and is hereby granted a revocable license, until the occurrence of any Event of Default which continues beyond any applicable notice and cure period, to collect the Rents as, but not before (except as permitted in Section 1.13(c)), they become due and payable, subject to the provisions of any lockbox, escrow, rental collection, cash management, direct pay or similar agreements relating to the Rents now or hereafter in effect; provided further, however, that, if a court of competent jurisdiction shall construe such assignment to be unenforceable or otherwise ineffective as an absolute and unconditional present assignment, then such assignment shall be deemed and construed to be a collateral assignment of the Rents and the Security, creating a lien and security interest therein which shall be deemed to have been perfected upon recording of this Deed of Trust in the real estate records of the recording jurisdiction in which the Land is located.  Neither the existence nor the exercise of such conditional permission shall cause such assignment or Beneficiary's interest in the Rents or the Security to be or to become subordinate to any other assignment by Trustor (whether absolute, conditional or otherwise).  The assignment of the Rents and the Security under this Deed of Trust shall be fully operative without any further action by any person.  Upon written notice to Trustor, Beneficiary is hereby irrevocably authorized, at its option, to notify any and all Tenants, any and all Lease Guarantors and any and all other licensees, invitees, guests, customers, occupants and other users of the Property of the aforesaid assignment and the rights of Beneficiary with respect thereto, subject (if applicable) to Trustor's revocable license as described above.  Trustor hereby irrevocably consents to the entry upon and taking physical possession of the Property by Beneficiary in connection with the exercise of its rights with respect to the aforesaid assignment upon the occurrence of any of any Event of Default, whether or not any foreclosure or other enforcement action shall have been commenced.  No exercise of any such rights shall cure, waive or invalidate any default, any Event of Default which exists beyond any applicable notice and cure period or any act done pursuant to this Deed of Trust or any of the other Loan Documents.

(b)    Upon the occurrence of any of any Event of Default which exists beyond any applicable notice and cure period, Beneficiary shall have the right, with or without taking possession of the Property, to demand, collect, receive and enforce payment of any and all Rents (including any Rents then past due and unpaid) directly from Tenants, Lease Guarantors and other licensees, invitees, guests, customers, occupants and users of the Property or, in the case of any such Rents thereafter paid to Trustor or any other person, from Trustor or such other person.  In addition, Beneficiary thereafter shall have the right to collect, hold, return and retain the Security and to give receipts, releases and satisfactions for any such Rents paid to Beneficiary or to any person designated by Beneficiary as provided below and for any Security collected by Beneficiary.  Without limiting the generality of the foregoing, at any time upon the occurrence of any Event of Default which exists beyond any applicable notice and cure period, Beneficiary shall have the right to make written demand on any Tenant, any Lease Guarantor or any such other licensee, invitee, guest customer, occupant or user, notifying such person that an Event of Default has occurred and directing such person to make all subsequent payments of Rents (including any Rents then past due and unpaid) directly to Beneficiary or to any person designated by Beneficiary in such demand.  Each such written demand shall be sufficient, without the necessity of any further direction or consent from Beneficiary, to warrant and require such Tenant, Lease Guarantor or other licensee, invitee, guest, customer, occupant or user to make all such payments directly to Beneficiary to any such person designated by Beneficiary.  All Tenants, Lease Guarantors and other licensees, invitees, guests, customers, occupants and users (i) are hereby irrevocably authorized and directed to rely on and comply with any and all such written demands received by them, and (ii) are hereby irrevocably relieved of any responsibility to make any inquiry regarding the existence of any Event of Default which exists beyond any applicable notice and cure period claimed by Beneficiary or regarding Beneficiary's right to demand, collect, receive and enforce

21

**EXHIBIT 30**

payment of the Rents and to collect, hold, return and retain the Security. After making any such written demand, Beneficiary shall be entitled and is hereby irrevocably authorized, at its option, to enforce payment of the pertinent Rents by appropriate action or proceeding, whether brought in the name of Trustor or otherwise. Any and all amounts so collected by Beneficiary shall be applied to the Indebtedness in such order and manner as Beneficiary shall determine.

(c)    Notwithstanding anything contained herein to the contrary, it is the intention of Trustor and Beneficiary that this conveyance in this Section 1.14 creates (i) a presently and immediately effective security interest in all Rent, whether accrued or unaccrued, by means of assignment of the Rent pursuant to this Deed of Trust, and (ii) a present and absolute assignment of the Leases, and in both cases, Beneficiary's rights to same are not contingent or conditioned upon, and may be exercised without, possession of the Property. Notwithstanding anything to the contrary contained herein, Beneficiary is entitled to all the rights and remedies of an assignee as permitted under Nevada law, and this Deed of Trust shall constitute and serve as a security instrument under Nevada law. Beneficiary shall have the ability to exercise its rights related to the Leases and Rents, in Beneficiary's sole discretion and without prejudice to any other remedy available, as provided in this Deed of Trust or as otherwise allowed by applicable law.

### 1.15    Security Agreement and Fixture Filing.

(a)    Trustor (as Debtor) hereby grants and assigns to Beneficiary (as Creditor and Secured Party), in order to secure the obligations secured by this Deed of Trust, a security interest in all personal property and fixtures included within the definition of the term "Property" set forth above, and in any and all other personal property and fixtures now or hereafter constituting part of the Property. All references in this Deed of Trust to the lien of this Deed of Trust shall be deemed to refer also to the aforesaid security interest. It is the intention of the parties hereto that this Deed of Trust shall constitute a security agreement within the meaning of the Uniform Commercial Code as in effect in the State of Nevada, as amended and recodified from time to time (the "UCC"). In addition to all rights, powers, privileges and remedies specified in this Deed of Trust, Beneficiary shall have all the rights, powers, privileges and remedies of a secured party under the UCC and under other applicable law. To the extent any notice of sale of any such personal property may be required by law in connection with any exercise of such rights, powers, privileges and remedies, notice of the time and place of any public or private sale given at least ten (10) days in advance thereof shall constitute reasonable notification. Beneficiary shall not be required to make any sale of any such personal property regardless of any notice of sale having been given. Beneficiary may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it shall have been so adjourned. Notwithstanding the foregoing, in no event shall Beneficiary be deemed to have accepted any property other than cash in satisfaction of any obligation of Trustor unless Beneficiary shall make an express written election of said remedy under Section 9.620 and 9.621 of the UCC.

(b)    This Deed of Trust, when filed for record in the real estate records of the recording jurisdiction in which the Land is located, shall be effective, from the date of recording, as a financing statement filed as a fixture filing under the UCC, with respect to all fixtures included within the definition of the term "Property" set forth above. This Deed of Trust, when so filed for record, also shall be effective, from the date of recording, as a financing statement covering minerals or the like (including oil and gas) to the extent the same constitute as-extracted collateral (as defined in the UCC). A carbon, photographic or other reproduction of this Deed of Trust or any financing statement relating to this Deed of Trust (provided the financing statement includes all information required under the UCC) shall be sufficient to be effective as a financing statement. The filing of any other financing statement relating to any personal property rights or interests described herein shall not be construed to diminish any rights or priority hereunder.

22

**EXHIBIT 30**

(c)  It is hereby expressly declared and agreed that, to the fullest extent permitted by law, all items of Equipment, all accessions, renewals, substitutions and replacements of and to any such items and all other parts of the Property are, and at all times and for all purposes shall be deemed to be, part and parcel of the real property encumbered by this Deed of Trust and appropriated to the use of such real property, whether or not any such item is affixed or annexed to such real property and whether or not any such item is or shall be identified by serial number or otherwise referred to or reflected in any recital or list set forth in this Deed of Trust or in any financing statement filed or recorded in connection with the transaction of which this Deed of Trust is a part.  Neither anything set forth in this Section nor the filing or recording of any such financing statement in the records for personal property security interests shall be construed as in any way derogating from or otherwise impairing the effectiveness of the aforesaid declaration.  The mention in any such financing statement of any particular part of the Property shall not be construed as in any way altering the rights of Beneficiary or Trustee under this Deed of Trust with respect to such Property or as in any way altering or otherwise affecting the perfection or priority of the lien of this Deed of Trust with respect to such Property.  Any and all such financing statements are intended to be for the protection of Beneficiary in the event that any court shall determine that the perfection or priority of the lien of this Deed of Trust with respect to any part of the Property requires the recording or filing of notice in the records for personal property security interests.

1.16  **After-Acquired Property.**  To the fullest extent permitted by and subject to applicable law, the lien of this Deed of Trust shall attach automatically, without the necessity of any action by Trustor or any other person, to all right, title and interest of Trustor in and to any and all after-acquired property of the character or type included within the definition of the term "Property" set forth above. Trustor shall promptly execute and deliver to Beneficiary such documents and instruments as Beneficiary may reasonably request to confirm such lien.  Trustor hereby irrevocably authorizes and appoints Beneficiary as its agent and attorney-in-fact to execute all such documents and instruments on behalf of Trustor, which appointment includes full power of substitution and shall be deemed to be coupled with an interest.

1.17  **Further Assurances.**  Upon Beneficiary's request, Trustor shall make, execute and deliver to Beneficiary or any other person designated by Beneficiary (or shall cause to be made, executed and delivered to Beneficiary or any such other person) any and all further mortgages, deeds of trust, assignments, security agreements, financing statements, instruments of further assurance, notices, certificates and other documents and instruments that Beneficiary may consider reasonably necessary to correct any errors in or omissions from any of the Loan Documents or to effectuate, complete, perfect, continue or preserve the obligations of Trustor under or in connection with the Loan Documents, the lien of this Deed of Trust upon all or any part of the Property or any other rights or interests of Beneficiary or Trustee under this Deed of Trust.  In addition to its other rights, powers, privileges and remedies under this Deed of Trust, Beneficiary is hereby irrevocably authorized to make, execute and deliver any and all such documents and instruments for and in the name of Trustor subsequent to an Event of Default which exists beyond any applicable notice and cure period.  Beneficiary is hereby irrevocably authorized to record, file, re-record or refile, at such times and in such offices and places as Beneficiary may consider necessary or desirable, any or all of the Loan Documents and any or all such other documents and instruments.  Trustor hereby irrevocably authorizes and appoints Beneficiary as its agent and attorney-in-fact to take all actions authorized by this Section, which appointment includes full power of substitution and shall be deemed to be coupled with an interest.

1.18  **Maintenance of Existence.** Trustor shall at all times maintain (a) its existence, franchises, rights and privileges as a limited liability company under the laws of the State of Indiana, and (b) a duly authorized registered agent for service of process in the State of Nevada.  Upon any failure by Trustor to do so, Beneficiary may appoint any person as Trustor's agent for service of process, and Trustor hereby irrevocably authorizes and appoints Beneficiary as Trustor's agent and attorney-in-fact to do so, which appointment includes full power of substitution and shall be deemed to be coupled with an interest.  Upon

23

**EXHIBIT 30**

Beneficiary's request, Trustor shall provide to Beneficiary satisfactory evidence of Trustor's compliance with the terms of this Section.

1.19   **Books and Records**. Trustor shall at all times keep and maintain, or cause to be kept and maintained, complete and accurate books of accounts and records reflecting the results of the operation of the Property and any business or other operations conducted in or on the Property by or on behalf of or for the benefit of Trustor.

1.20   **Use of Information**. Trustor shall not use Beneficiary's name or the name of any person, firm or corporation controlling, controlled by or under common control with Beneficiary in connection with any of Trustor's activities, except as such use may be required by applicable law or regulation of any governmental body, or by any financing institution with which Trustor may be doing business. Beneficiary agrees that it shall not use Trustor's name, the name of any person, firm or corporation controlling, controlled by or under common control with Trustor in connection with any of Beneficiary's activities, except as such use may be required by applicable law or regulation of any governmental body or by any financing institution with which Beneficiary may be doing business and except for any publicity article concerning Trustor's financing of the Property; provided, Trustor hereby consents to Beneficiary's participation, sale (including, but not limited to securitization), assignment, transfer or other disposition (any of such events being referred to as a "Sale"), at any time or times hereafter of all, or any part of, its interest in the Indebtedness and the Loan Documents (provided, however, that in the event of a sale, Trustor shall not be obligated to notify or communicate with more than one party as Beneficiary) and, in connection therewith, hereby consents to Beneficiary's dissemination of any of the foregoing information, on a confidential basis, to Beneficiary's advisers, underwriters and placement agents, as well as rating agencies and prospective purchasers, in connection with a prospective Sale; provided that all such persons to whom Beneficiary proposes to provide any such information shall agree in writing to keep such information confidential and to use it only for the purpose of considering a purchase of Beneficiary's interest in the Indebtedness and the Loan Documents or a portion thereof and in connection with such prospective Sale. Trustor shall provide such cooperation and additional information as Beneficiary may reasonably request in connection with a prospective Sale; provided, that if Beneficiary proposes to sell any interest in the Indebtedness to a person that is not a United States citizen or company, then, as a condition to such Sale, such person shall provide Trustor with two original signed copies of Internal Revenue Service Form 4224 certifying such person's entitlement to a complete exemption from United States withholding tax.

1.21   **Estoppel Certificates**. Upon Beneficiary's request, Trustor shall deliver to Beneficiary a written statement, duly acknowledged, setting forth the then-outstanding principal of and interest on the Indebtedness, and stating whether or not any offsets, claims or defenses exist against enforcement of any of the Loan Documents or against collection of the Indebtedness and, if any such offsets, claims or defenses are claimed, identifying the same in reasonable detail, or if any default exists under the Loan Documents.

1.22   **Expenses and Indemnification**.

(a)   Subject to the provisions of Section 1.11(b) and Section 1.19(b), Trustor shall pay, when due, and upon Beneficiary's request shall reimburse Beneficiary or Trustee for, all reasonable appraisal fees, filing and recording fees, taxes, brokerage fees and commissions resulting from any agreement made by Trustor with the broker to whom such fee or commission is to be paid, abstract and search fees, title insurance fees and premiums, escrow fees, attorneys' fees, court costs, fees of inspecting architect(s) and engineer(s) and all other costs and expenses of every character that have been incurred by Beneficiary or Trustee, or that may be incurred by Beneficiary or Trustee after the date hereof, in connection with any of the following: (i) issuance of Beneficiary's commitment to make the Loan; (ii) preparation, execution and recording of the Loan Documents; (iii) funding of the Loan; (iv) preparation for enforcement of this Deed of Trust or any of the other Loan Documents after the occurrence of any Event of Default or

24

**EXHIBIT 30**

any state of facts which, with notice or the passage of time, or both, would constitute an Event of Default if not cured or corrected, whether or not any suit or other action shall be commenced or undertaken; (v) communications and negotiations with Trustor or any Guarantor, or with their respective officers, employees, agents, contractors, attorneys or other representatives, concerning any such occurrence; (vi) preparation for, and actions taken in connection with, the prevention or cure of any such occurrence; (vii) enforcement or attempted enforcement of this Deed of Trust or any of the other Loan Documents; (viii) court or administrative proceedings of any kind to which Beneficiary or Trustee may become a party, whether as plaintiff, defendant or otherwise, by reason of the Indebtedness or any of the Loan Documents (including all attorneys' fees, court costs and other expenses incurred in consultation, litigation and bankruptcy or administrative proceedings and all appeals therefrom); (ix) defending and upholding the lien of this Deed of Trust or otherwise defending or asserting any rights or claims of Beneficiary or Trustee under this Deed of Trust or under any of the other Loan Documents; (x) preparation for, and actions taken in connection with, Beneficiary's taking possession of all or any part of the Property; (xi) any prepayment or proposed prepayment of all or any part of the Indebtedness; (xii) any refinancing or payment of the entire Indebtedness or any proposed refinancing or payment of the entire Indebtedness; (xiii) any actual or proposed release, satisfaction, discharge or other extinguishment of this Deed of Trust or any of the other Loan Documents; (xiv) any transfer or proposed transfer of all or any part of the Property in lieu of foreclosure; or (xv) any consent or approval (whether conditional or unconditional) or any withholding of consent or approval to any matter for which Beneficiary's consent or approval is required pursuant to any of the Loan Documents or pursuant to any Governmental Requirement or judicial decision.

(b)     Trustor shall indemnify and hold Beneficiary and Trustee harmless from and against, and shall reimburse Beneficiary or Trustee (as the case may be) for, any and all claims, demands, liabilities, losses, damages, judgments, penalties, costs and expenses (including attorneys' fees) that may be imposed upon, asserted against, or incurred or paid by Beneficiary or Trustee by reason of, on account of or in connection with any or all of the following:  (i) any bodily injury, death or property damage occurring in or on  or in the vicinity of the Property through any cause whatsoever; (ii) any transaction, suit, action or proceeding arising out of or in any way connected with the ownership, use, operation, maintenance or repair of the Property; (iii) the exercise of any rights, powers, privileges or remedies of Beneficiary or Trustee under this Deed of Trust or any of the other Loan Documents (including any actions contemplated by Section 2.3); (iv) the breach of any warranty or representation set forth in any of the Loan Documents; and (v) the breach of any warranty or representation set forth in Section 1.2(b), any violation or any alleged violation of any Environmental Law, any proceedings relating to any such violation or alleged violation of any Environmental Law, the presence of any Hazardous Substances in, on, under or about all or any part of the Property, any actual or threatened release, discharge, spillage, seepage or filtration of any Hazardous Substances in, on, under, about or from the Property, the generation, manufacture, refining, production, processing, treatment, storage, handling, transportation, transfer, use or disposal of any Hazardous Substances in, on, under, about or from all or any part of the Property, or any threatened, proposed or actual cleanup or other protective, removal or remedial action relating to any Hazardous Substances, whether pursuant to any Environmental Law or otherwise.  Notwithstanding anything to the contrary contained herein, the obligations and liability of Trustor with respect to the matters set forth in clause (v) above shall not be subject to or limited by any nonrecourse or exculpation provisions set forth in this Deed of Trust or any of the other Loan Documents, and said obligations and liability survive any Foreclosure and any payment, release, satisfaction, discharge or other extinguishment of this Deed of Trust or the Indebtedness. The obligations and liability of Trustor with respect to said matters shall run in favor of and benefit Beneficiary and any affiliate of Beneficiary which may succeed to Beneficiary's position under this Deed of Trust or which may acquire all or any part of the Property.  The obligations and liability of Trustor under this Section 1.22 are in addition to, and not in lieu or a restatement of, any of Trustor's obligations or liability (i) that certain Indemnification Agreement dated as of the date hereof by Trustor and Guarantors in favor of Beneficiary (the "**Indemnification Agreement**") and (ii) that those certain Guaranties (as such term is defined in the Loan Agreement) executed by Guarantors  in favor of Beneficiary.

25

**EXHIBIT 30**

(c)    All reasonable costs, expenses and other obligation required to be paid or reimbursed by Trustor pursuant to this Section, and all other indemnification obligations of Trustor under this Deed of Trust, shall bear interest at the Default Rate from the date the amount thereof shall have been paid by Beneficiary until the date of such payment or reimbursement by Trustor.

1.23    **Security for Advances.** All amounts advanced by Beneficiary or Trustee pursuant to this Deed of Trust, all amounts otherwise advanced by Beneficiary or Trustee to protect the security of this Deed of Trust, all costs, expenses and liabilities reasonably incurred by Beneficiary or Trustee and reimbursable or payable by Trustor pursuant to this Deed of Trust and all indemnification obligations of Trustor under this Deed of Trust, together with interest thereon as provided in this Deed of Trust or as otherwise provided by law, shall be deemed to be a part of the Indebtedness and, to the fullest extent permitted by law, shall be secured by this Deed of Trust equally with all other portions of the Indebtedness.

1.24    **Revival.**    If all or any part of any payment on account of the Indebtedness shall be invalidated, set aside, declared or found to be void or voidable or required to be refunded or otherwise returned to or for the benefit of Trustor or any trustee, custodian, receiver, conservator, master, liquidator or other person (whether pursuant to any Insolvency Law, any other law, any equitable cause or otherwise), then, to the fullest extent permitted by law, but only to the extent of such invalidation, set aside, voidness, voidableness or required refund or return, (a) neither the Indebtedness nor the lien of this Deed of Trust shall be deemed to have been paid, cancelled, extinguished, released, satisfied or discharged, (b) the Indebtedness and the lien of this Deed of Trust shall be immediately and automatically revived without the necessity of any action by any person, and (c) the lien of this Deed of Trust thereafter shall continue in full force and effect in accordance with the terms hereof as if it had never been paid, cancelled, extinguished, released, satisfied or discharged.

1.25    **Required Notices.**

(a)    Trustor shall give written notice to Beneficiary of any of the following occurrences, in each case promptly after the occurrence thereof:

(i)    Trustor's receipt of any notice from any governmental authority or instrumentality concerning (A) lack of compliance of the Property, or any business or other operations conducted in or on the Property, with any Governmental Requirement or with the conditions or other requirements of any license, permit, approval or authorization (including notice of any violation or alleged violation of any Environmental Law and notice of any threatened, proposed or actual cleanup or other protective, removal or remedial action relating to any Hazardous Substances, whether pursuant to any Environmental Law or otherwise), or (B) the actual or threatened revocation or suspension of, any license, permit, approval or authorization relating to the Property or any business or other operations conducted, or proposed to be conducted, in or on the Property;

(ii)    Trustor's receipt of any notice concerning lack of compliance of all or any part of the Property, or any business or other operations conducted in or on the Property, with any covenant, agreement or other arrangement restricting or limiting the use, occupancy, operation, development or disposition of the Property;

(iii)    Intentionally Omitted;

(iv)    Trustor's receipt of any notice from the holder or grantee of any lien, security interest, charge or encumbrance on all or any part of the Property, concerning any default or any other material matter in respect of such Lease, lien, security interest, charge or encumbrance;

26

**EXHIBIT 30**

(v)      Trustor's receipt of any notice concerning (A) any contemplated, threatened or pending cancellation of any insurance coverage relating to the Property, (B) any refusal by any insurance company to provide or continue any insurance coverage relating to the Property, or (C) any increase in the cost of any insurance coverage relating to the Property due to the condition of the Property or due to any business or other operations conducted, or proposed to be conducted, in or on the Property, or (D) a change or proposed change in the assessed value of the Property or any tax rate applicable thereto;

(vi)      commencement of any judicial or administrative proceedings by or against, and which reasonably can be expected to have a material adverse effect on, Trustor, Principal, any Guarantor or the Property;

(vii)      commencement by any creditor of any action or proceeding for default under the terms of any loan or other extension of credit to Trustor or any Guarantor;

(viii)      any change in the name of Trustor or any Guarantor or in the location of Trustor's or any Guarantor's chief executive office, principal place of business or residence; or

(ix)      any material change in the occupancy of the Building.

(b)      Trustor also shall give written notice to Beneficiary of any other occurrence requiring the giving of notice to Beneficiary pursuant to this Deed of Trust or pursuant to any of the other Loan Documents. Each notice to Beneficiary pursuant to this Section shall be accompanied by accurate and complete copies of any and all notices received by Trustor which are the subject of such notice to Beneficiary (whether or not Beneficiary may have received, or may be entitled to receive, such notice directly from the person giving such notice to Trustor).

1.26      Single Purpose Nature of Trustor. Trustor shall at all times that the Loan is outstanding company be in compliance with the single purpose entity covenants set forth in Section 15.1 of the Loan Agreement.

## ARTICLE 2

## DEFAULTS AND REMEDIES

2.1      Event of Default. As used in this Deed of Trust, the term "Event of Default" shall have the same meaning as set forth in Article 20 of the Loan Agreement.

The use of the phrases "upon the occurrence of an Event of Default," "Event of Default exists," "Event of Default has occurred," "Event of Default shall have occurred and remain uncured" or similar phrases in this Deed of Trust or the other Loan Documents are intended to mean that an Event of Default will only cease to exist following acceptance by Beneficiary (acceptance or rejection to be in Beneficiary's discretion, unless Beneficiary is required by applicable law to accept such cure) of a cure of such Event of Default (with any such acceptance of a cure of an Event of Default to be evidenced by a written reinstatement confirmation issued by Beneficiary, unless Beneficiary is required by applicable law to accept such cure), and use of any of the foregoing phrases does not mean that Trustor, any Guarantor or any other person has the right to any grace periods or cure rights in addition to those specified HEREIN following the occurrence of an Event of Default or that Beneficiary is obligated under any circumstance (except where Beneficiary is required by applicable law to accept such cure) to accept any cure offered by Trustor,

27

**EXHIBIT 30**

any Guarantor or any other Person following the occurrence of an Event of Default. Notwithstanding anything to the contrary contained herein, nothing shall be deemed to restrict or limit in any way Trustor's right to contest in good faith the permissibility of the rights or remedies being exercised under applicable law.

**2.2    Acceleration of Maturity.** At any time following the occurrence of any Event of Default, Beneficiary, at its option and without demand or notice, may declare the outstanding Indebtedness (or, at Beneficiary's option, any part of the outstanding Indebtedness that may be designated by Beneficiary) to be immediately due and payable. Upon such declaration, the Indebtedness (or such part thereof) shall become immediately due and payable without demand or notice. To exercise this option, Beneficiary may invoke the power of sale and any other remedies permitted by law.

**2.3    Enforcement; Power of Sale.**

(a)    Subject to applicable law, at any time after any Event of Default, Beneficiary or Trustee may proceed by any appropriate judicial or non-judicial action or proceeding to (i) enforce payment of all or any part of the Indebtedness in accordance with the Loan Documents, (ii) enforce performance of any provision of this Deed of Trust or any of the other Loan Documents, (iii) foreclose this Deed of Trust and sell or cause the sale of the Property, as an entirety or in separate parts, under the power of sale provided under this Deed of Trust or pursuant to the judgment, order, writ of execution or decree of any court of competent jurisdiction, (iv) to the fullest extent permitted by law, pursue the partial foreclosure of this Deed of Trust for any part of the Indebtedness then due and payable, subject to the continuing encumbrance of this Deed of Trust as security for the balance of the Indebtedness not then due, and (v) pursue any other rights, powers, privileges and remedies available to Beneficiary or Trustee, at law or in equity, in connection with the Indebtedness, the Property or any other security for the Indebtedness, including, without limitation, any and all of the remedies granted Beneficiary as a secured party under the UCC. Beneficiary or Trustee may pursue any or all such actions or proceedings separately or concurrently and in such order as Beneficiary may elect, either with or without entry or taking possession and whether or not all or any part of the Indebtedness shall have been declared to be immediately due and payable or shall otherwise be due. Beneficiary or Trustee may pursue any and all such actions or proceedings without prejudice to Beneficiary's right thereafter to foreclose this Deed of Trust and without prejudice to the rights of Beneficiary to proceed by any other action or proceeding to enforce any rights, powers, privileges or remedies with respect to the Indebtedness, the Property or any other security for the Indebtedness, whether or not the basis for any such subsequent action or proceeding shall be a default or an Event of Default existing at the time such earlier action or proceeding was commenced.

(b)    At any time after any Event of Default, Beneficiary may direct Trustee to, and Trustee is hereby authorized and empowered, to the fullest extent permitted by applicable law, to enter and take possession of the Property and, after such entry, to sell all or any part of the Property at public auction, in such manner, at such time and place, upon such terms and conditions and upon such public notice (in any event at least in accordance with all applicable laws) as Trustee shall deem advantageous and proper for the interests of all concerned and as required by applicable laws, rules and regulations. The Property may be sold hereunder as an entirety or in such parcels as Beneficiary may request, without regard to any right of Trustor or any other person to the marshaling of assets. To the fullest extent allowed by applicable law, any sale may be adjourned by announcement at the time and place appointed for such sale without further notice, except as may be required by applicable law. To the extent permitted under the law, Beneficiary shall have the sole right to require Trustee to sell less than all of the Property. Any such sale of less than all of the Property shall not exhaust the power of sale herein granted, and Trustee is specifically authorized and empowered, if and as directed by Beneficiary, to make successive sales under such power of sale until the Indebtedness has been fully, finally and indefeasibly paid or until all of the Property has been sold. If the proceeds of any such sale of less than all of the Property shall be less than the then

28

**EXHIBIT 30**

**EXHIBIT 30**

outstanding balance of the Indebtedness and the expenses of executing this trust as provided herein, then, to the fullest extent permitted by law, this Deed of Trust and the lien hereof shall remain in full force and effect as to the unsold portion of the Property just as though no sale had been made hereunder. The failure to complete any sale hereunder or any defect in any sale hereunder shall not exhaust the power of sale herein granted, and, in any such event, Beneficiary shall have the right to cause a subsequent sale or sales to be made hereunder. Trustee may, if and as directed by Beneficiary, sell not only the real property but also the personal property forming a part of the Property, as a unit and as a part of a single sale to be held in accordance with the laws and procedures applicable to real property, as permitted by the UCC, or may sell any part of the Property separately from the remainder of the Property. Upon each sale made hereunder, Trustee shall execute and deliver to the purchaser or purchasers at such sale good and sufficient conveyances, conveying the Property, or the part or parts thereof so sold, to such purchaser or purchasers, and Trustee shall receive the proceeds of such sale or sales and apply the same as herein provided. Except as required by applicable law, no purchaser of all or any part of the Property shall be required to see to the proper application of the purchase money. Any and all statements of fact or other recitals made in any conveyance given by Trustee as to nonpayment of the Indebtedness, or as to the occurrence of any default or Event of Default, or as to all or any part of the Indebtedness having been declared to be due and payable, or as to the request to sell, or as to notice of time, place and terms of sale and the part or parts of the Property to be sold having been duly given, or as to the refusal, failure or inability to act of Beneficiary, or as to the appointment of any substitute or successor trustee, or as to any other act or thing having been duly done by Beneficiary or Trustee, shall be taken as *prima facie* evidence of the truth of the facts so stated or recited. Trustee may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Trustee, including the posting of notices and the conduct of sale, but in the name and on behalf of Trustee. If Trustee shall have given notice of sale hereunder, any successor or substitute Trustee thereafter appointed may complete the sale and the conveyance of the property pursuant thereto as if such notice had been given by the successor or substitute Trustee conducting the sale.

IN INSTANCES WHERE THE PROPERTY IS LOCATED IN THE STATE OF NEVADA, SUCH SALE SHALL BE MADE AT THE COURTHOUSE DOOR (OR OTHER AREA AT THE COURTHOUSE DESIGNATED BY THE COUNTY COMMISSIONER'S COURT AS THE LOCATION WHERE THE SALES ARE TO TAKE PLACE) OF THE COUNTY IN WHICH THE LAND IS SITUATED ON THE FIRST TUESDAY OF ANY MONTH BETWEEN THE HOURS OF 10:00 A.M. AND 4:00 P.M. AFTER ADVERTISING THE TIME, PLACE AND TERMS OF SALE AND THAT PORTION OF THE PROPERTY TO BE SOLD BY POSTING OR CAUSING TO BE POSTED WRITTEN OR PRINTED NOTICE THEREOF AT LEAST TWENTY-ONE (21) DAYS PRECEDING THE DATE OF SAID SALE AT THE COURTHOUSE DOOR OF THE COUNTY IN WHICH THE SALE IS TO BE MADE, AND BY FILING SUCH NOTICE WITH THE COUNTY CLERK(S) OF THE COUNTY IN WHICH THE PROPERTY MAY BE SITUATED, WHICH NOTICE MAY BE POSTED AND FILED BY THE TRUSTEE ACTING, OR BY ANY PERSON ACTING FOR HIM, AND THE HOLDER OF THE INDEBTEDNESS SECURED BY THIS DEED OF TRUST HAS, IF AND TO THE EXTENT REQUIRED BY NEVADA LAW, PROVIDED WRITTEN NOTICE BY CERTIFIED MAIL TO EACH DEBTOR OBLIGATED TO PAY THE INDEBTEDNESS SECURED BY THIS DEED OF TRUST ACCORDING TO THE RECORDS OF BENEFICIARY STATING THAT DEBTOR IS IN DEFAULT UNDER THIS DEED OF TRUST, AND THAT DEBTOR SHALL HAVE AT LEAST TWENTY (20) DAYS TO CURE THE DEFAULT BEFORE THE ENTIRE DEBT IS DUE AND NOTICE OF SALE IS GIVEN BY THE DEPOSIT OF SUCH NOTICE, ENCLOSED IN A POSTPAID WRAPPER, PROPERLY ADDRESSED TO SUCH DEBTOR AT DEBTOR'S MOST RECENT ADDRESS AS SHOWN BY THE RECORDS OF THE HOLDER OF SUCH INDEBTEDNESS, IN A POST OFFICE OR OFFICIAL DEPOSITORY UNDER THE CARE AND CUSTODY OF THE UNITED STATES POSTAL SERVICE. THE AFFIDAVIT OF ANY PERSON HAVING KNOWLEDGE OF THE FACTS TO THE EFFECT THAT SUCH SERVICE WAS COMPLETED SHALL BE PRIMA

29

**EXHIBIT 30**

FACIE EVIDENCE OF THE FACT OF SERVICE. NOTWITHSTANDING THE PRECEDING PORTIONS OF THIS SECTION 4.1(D), THE PROPERTY MAY BE SOLD AT SUCH OTHER PLACE, TIME AND DATE AS PROVIDED BY THE STATUTES OF THE STATE OF NEVADA IN FORCE GOVERNING SALES OF REAL ESTATE UNDER POWERS OF SALE CONFERRED BY DEED OF TRUST, AFTER HAVING GIVEN SUCH NOTICE OF SUCH SALE IN ACCORDANCE WITH SUCH STATUTES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY SALE MAY BE ADJOURNED BY ANNOUNCEMENT AT THE TIME AND PLACE APPOINTED FOR SUCH SALE WITHOUT FURTHER NOTICE EXCEPT AS MAY BE REQUIRED BY LAW. THE SALE BY TRUSTEE OF LESS THAN THE WHOLE OF THE PROPERTY SHALL NOT EXHAUST THE POWER OF SALE HEREIN GRANTED, AND TRUSTEE IS SPECIFICALLY EMPOWERED TO MAKE SUCCESSIVE SALE OR SALES UNDER SUCH POWER UNTIL THE WHOLE OF THE PROPERTY SHALL BE SOLD; AND, IF THE PROCEEDS OF SUCH SALE OF LESS THAN THE WHOLE OF THE PROPERTY SHALL BE LESS THAN THE AGGREGATE OF THE OBLIGATIONS AND THE EXPENSE OF EXECUTING THIS TRUST AS PROVIDED HEREIN, THIS DEED OF TRUST AND THE LIENS HEREOF SHALL REMAIN IN FULL FORCE AND EFFECT AS TO THE UNSOLD PORTION OF THE PROPERTY; PROVIDED, HOWEVER, THAT TRUSTOR SHALL NEVER HAVE ANY RIGHT TO REQUIRE THE SALE OF LESS THAN THE WHOLE OF THE PROPERTY, BUT BENEFICIARY SHALL HAVE THE RIGHT, AT ITS SOLE ELECTION, TO SELL LESS THAN, OR REQUEST TRUSTEE TO SELL LESS THAN, THE WHOLE OF THE PROPERTY. TRUSTEE MAY, AFTER ANY REQUEST OR DIRECTION BY BENEFICIARY, SELL NOT ONLY THE REAL PROPERTY BUT ALSO OTHER PORTIONS OF THE PROPERTY SUBJECT TO THE SECURITY INTEREST CREATED BY THE LOAN DOCUMENTS AND OTHER INTERESTS WHICH ARE A PART OF THE PROPERTY, OR ANY PART THEREOF, AS A UNIT AND AS A PART OF A SINGLE SALE, OR MAY SELL ANY PART OF THE PROPERTY SEPARATELY FROM THE REMAINDER OF THE PROPERTY. AFTER EACH SALE, TRUSTEE SHALL MAKE TO THE PURCHASER OR PURCHASERS AT SUCH SALE GOOD AND SUFFICIENT CONVEYANCES IN THE NAME OF TRUSTOR, CONVEYING THE PROPERTY SO SOLD TO THE PURCHASER OR PURCHASERS WITH GENERAL WARRANTY OF TITLE OF TRUSTOR, SUBJECT TO THE PERMITTED ENCUMBRANCES (AND TO SUCH LEASES AND OTHER MATTERS, IF ANY, AS TRUSTEE MAY ELECT UPON REQUEST OF BENEFICIARY), AND SHALL RECEIVE THE PROCEEDS OF SAID SALE OR SALES AND APPLY THE SAME AS HEREIN PROVIDED. TRUSTEE OR ITS SUCCESSOR OR SUBSTITUTE MAY APPOINT OR DELEGATE ANY ONE OR MORE PERSONS AS AGENT TO PERFORM ANY ACT OR ACTS NECESSARY OR INCIDENT TO ANY SALE HELD BY TRUSTEE, INCLUDING THE POSTING OF NOTICES AND THE CONDUCT OF SALE, BUT IN THE NAME AND ON BEHALF OF TRUSTEE, HIS/HER/ITS SUCCESSORS OR SUBSTITUTES. IF TRUSTEE OR HIS/HER/ITS SUCCESSORS OR SUBSTITUTES SHALL HAVE GIVEN NOTICE OF SALE HEREUNDER, ANY SUCCESSOR OR SUBSTITUTE THEREAFTER APPOINTED MAY COMPLETE THE SALE AND THE CONVEYANCE OF THE PROPERTY PURSUANT THERETO AS IF SUCH NOTICE HAD BEEN GIVEN BY THE SUCCESSOR OR SUBSTITUTE CONDUCTING THE SALE.

(c)    To the fullest extent permitted by law, Trustee may act under this Deed of Trust although Trustee may have been, may now be or may hereafter be the attorney or agent for Beneficiary with respect to the Indebtedness, the Loan Documents or any other matter whatsoever. Beneficiary may bid for and purchase all or any part of the Property at any sale pursuant to the power of sale herein granted or pursuant to any judgment, order, writ of execution or decree of any court of competent jurisdiction and, upon compliance with the terms of sale, may hold, retain, possess and dispose of such Property in its own absolute right without further accountability for the proper application of the purchase money. In paying the purchase price in connection with any such sale, Beneficiary, after allowing for the costs and expenses

30

**EXHIBIT 30**

EXHIBIT 30

of such sale, may, to the fullest extent permitted by law, apply all or any part of the Indebtedness, in lieu of cash, as a credit against such purchase price and any other amounts payable in connection therewith.

(d)    Any Foreclosure may, at Beneficiary's option, be subject to any or all Leases and the rights of Tenants thereunder. No failure to make any Tenant a defendant in any foreclosure proceedings or to foreclose or otherwise terminate any Lease and the rights of any Tenant in connection with any Foreclosure shall be, or be asserted to be, a defense or hindrance to any Foreclosure, any foreclosure proceeding or to any proceeding seeking collection of all or any part of the Indebtedness (including any deficiency remaining unpaid after completion of any Foreclosure).

2.4    <u>Proceeds of Foreclosure.</u>    Unless otherwise required by law, from the proceeds of any Foreclosure, Trustee shall pay (a) all costs and expenses of sale, including reasonable attorneys' fees, advertising costs, an auctioneer's allowance,  reasonable and customary Trustee's fee, costs of title searches, the expense of correcting any title irregularities, inspection fees and appraisal costs; and (b) all currently payable Impositions and Insurance Premiums. Trustee shall pay the balance of said proceeds to Beneficiary to the extent required to pay the entire then-outstanding Indebtedness. Any remaining surplus shall be paid to Trustor or to any other person entitled to such surplus as determined by a court of competent jurisdiction.

2.5    <u>Right To Enter and Take Possession.</u>

(a)    At any time following the occurrence of any Event of Default, whether or not foreclosure proceedings shall have been instituted, Beneficiary, to the fullest extent permitted by law, may enter and take possession of all or any part of the Property, may exclude Trustor and its members, officers, employees, agents, contractors, attorneys and other representatives therefrom and may have joint access with Trustor to the books, papers and accounts of Trustor and of any manager of the Property. Upon Beneficiary's request at any time following the occurrence of any Event of Default, Trustor shall peaceably and quietly vacate, surrender and deliver possession of the Property (or any part of the Property that may be designated by Beneficiary) to Beneficiary. If Trustor shall not vacate, surrender and deliver possession of the Property (or such part of the Property) to Beneficiary as provided above, then, without limiting any other right to enter and take possession of the Property (or such part of the Property), Beneficiary may resort to any and all legal and equitable remedies required to evict and dispossess Trustor therefrom (including one or more summary proceedings or actions for forcible entry and detainer, trespass to try title or restitution), and Beneficiary may obtain a judgment, order, writ of execution or decree of any court of competent jurisdiction conferring on Beneficiary the right to immediate possession and requiring Trustor to immediately vacate, surrender and deliver possession of the Property (or such part of the Property) to Beneficiary. Trustor hereby specifically and irrevocably consents to the entry of any such judgment, order, writ of execution or decree. Upon Beneficiary's request, Trustor shall pay to Beneficiary, or to any other person that Beneficiary may designate, all reasonable costs, expenses and liabilities (including attorneys' fees) incurred by Beneficiary in connection with any such failure to vacate, surrender and deliver possession or in connection with any such judgment, order, writ of execution or decree or the exercise of any such remedies, together with interest thereon at the Default Rate from the date incurred by Beneficiary until the date so paid to, or as directed by, Beneficiary.

(b)    On the first day of each month after any such entry into possession, or after the appointment of any receiver as provided below, Trustor shall pay to Beneficiary or to such receiver (as the case may be), in advance, a use and occupancy charge equal to the fair and reasonable rental value for that month of any part of the Property then being occupied by Trustor other than pursuant to any Lease (including any master lease) entered into as permitted by this Deed of Trust. If Trustor shall fail to make any such payment as provided above, then, upon request by Beneficiary or by such receiver (as the case may be), Trustor shall vacate, surrender and deliver possession of such part of the Property to Beneficiary

31

EXHIBIT 30

or to such receiver (as the case may be), and, to the fullest extent permitted by law, Trustor may be evicted and dispossessed therefrom by summary proceedings or otherwise.

(c)     After any such entry into possession, Beneficiary, acting in Trustor's name or otherwise, may hold, store, use, operate, manage and control the Property (or any part of the Property which then is in the possession of Beneficiary or Trustee) and may conduct the business and operations thereof. In doing so, Beneficiary may:

(i)     take and possess all documents, books, records, papers and accounts of Trustor or the then owner of the Property;

(ii)     carry out any and all necessary and desirable maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements of or to the Property (or such part of the Property);

(iii)     purchase or otherwise acquire and install in or on the Property (or such part of the Property) additional fixtures, personal property and other property of the type encumbered by this Deed of Trust;

(iv)     insure the Property or keep the Property insured;

(v)     manage, operate and exercise all rights and powers of Trustor with respect to the Property (or such part of the Property) and the management and operation thereof (including the right to enter into Leases, to cancel, enforce or modify Leases, to evict Tenants by summary proceedings or otherwise and to take other appropriate steps to enforce Leases);

(vi)     enter into agreements with others to exercise the rights and powers of Beneficiary and Trustee under this Deed of Trust;

(vii)     collect and receive all Rents (including those past due as well as those accruing thereafter), and apply the money so received, in such priority as Beneficiary may determine, to pay (1) the interest, principal and other amounts due and payable in respect of the Indebtedness or otherwise payable pursuant to any of the Loan Documents, (2) the deposits payable under this Deed of Trust for Impositions and Insurance Premiums, (3) the cost of insurance, Impositions and other expenses of holding, storing, using, operating, managing, controlling, maintaining, repairing, altering and improving the Property (including any leasing commissions and rental collecting commissions payable to any agent, contractor or other representative of Beneficiary), (4) the compensation, expenses and disbursements of the agents, contractors, attorneys and other representatives of Beneficiary, and (5) amounts advanced for any purpose recognized under this paragraph (c) or otherwise permitted by law or agreement.

(d)     In the event of any such entry into possession, Beneficiary shall be liable to account only for Rents actually received by Beneficiary while in possession of the Property. In the event of any foreclosure, subject to applicable law, Beneficiary may remain in possession of all or any part of the Property until the foreclosure sale and thereafter during any period of redemption. In the absence of any foreclosure, subject to applicable law, Beneficiary may remain in possession of all or any part of the Property as long as there exists an Event of Default that remains uncured by Trustor. Subject to applicable law, the same right of taking possession shall exist after any subsequent Event of Default. Subject to applicable law, Beneficiary shall not be obligated, by virtue of this Section or by virtue of any actions contemplated by this Deed of Trust or any of the other Loan Documents, to perform or discharge any obligation, duty or liability of Trustor under any Lease or other agreement relating to all or any part of the

32

**EXHIBIT 30**

Property or under any Governmental Requirement relating to the Property. Beneficiary shall not incur any liability for, nor shall Trustor assert any claim or set off as a result of, any acts or omissions of Beneficiary, or its officers, employees, agents, contractors, attorneys or other representatives, while in possession of all or any part of the Property (except for damages directly caused by Beneficiary's own gross negligence or intentional wrongful acts). Trustor hereby expressly and irrevocably waives, releases, discharges and relinquishes all such liabilities, claims and rights of set off, to the fullest extent permitted by applicable law.

(e)     Upon Beneficiary's request, Trustor shall pay to Beneficiary, or to any other person that Beneficiary may designate, all reasonable costs, expenses and liabilities (including attorneys' fees) incurred by Beneficiary in connection with the holding, storage, use, operation, management, control, maintenance, repair, alteration or improvement of all or any part of the Property (except to the extent such costs, expenses and liabilities shall have been paid out of collections from the Property as provided above), together with interest thereon at the Default Rate from the date incurred by Beneficiary until the date so paid to, or as directed by, Beneficiary.

2.6     **Appointment of Receiver.**

(a)     At any time after any Event of Default (either before or after any foreclosure or any sale in connection therewith), Beneficiary, to the fullest extent permitted by law and without regard to the value, adequacy or occupancy of the Property (whether as a homestead or otherwise) or the solvency of Trustor, Principal or any Guarantor, shall be entitled as a matter of right and upon notice, if it so elects, to the appointment of a receiver to enter upon and take possession of the Property, collect the Rents and apply the Rents so collected as the court making such appointment may direct or as otherwise permitted by law. To the fullest extent permitted by law, the receiver's powers shall continue during the pendency of any foreclosure proceedings and throughout any statutory period of redemption, whether there be a redemption or not. Trustor hereby specifically and irrevocably consents to such appointment. Without limiting the generality of the foregoing, Trustor agrees that any failure of Trustor to pay any Insurance Premiums or Impositions (except to the extent permitted in connection with any contest pursuant to Section 1.6) or to maintain any insurance required with respect to the Property shall constitute waste, justifying the appointment of a receiver to the fullest extent permitted by law. The receiver shall have all rights and powers permitted by the laws of the State of Nevada (including, to the fullest extent permitted by law, all rights and powers for the protection, possession, management and operation of the Property that an absolute owner would have) and such other rights and powers as the court making such appointment shall confer. The receiver shall be liable to account only for Rents actually received by the receiver. Notwithstanding the appointment of any receiver or other custodian, Beneficiary shall be entitled to maintain possession and control of any cash, deposits or instruments held by or for Beneficiary, as pledgee or depository, at the time of such appointment or payable or deliverable to Beneficiary, as pledgee or depository, from time to time pursuant to this Deed of Trust or any of the other Loan Documents.

(b)     Upon Beneficiary's request, Trustor shall pay, or reimburse Beneficiary and any such receiver for, all reasonable costs, expenses and liabilities incurred by Beneficiary or such receiver in connection with the appointment of such receiver and the exercise of the rights and powers of such receiver (including attorneys' fees, receivers' fees, agents' compensation and the fees of any manager retained by such receiver), except to the extent such costs, expenses and liabilities shall have been paid out of collections from the Property, together with interest thereon at the Default Rate from the date paid by Beneficiary or such receiver (as the case may be) until the date of such reimbursement.

2.7     **Performance of Defaulted Obligations.** If Trustor shall fail to make any payment or perform any obligation of Trustor under this Deed of Trust or any of the other Loan Documents, then, upon notice, Beneficiary may, but shall not be obligated to, make any payment or perform any obligation (in Trustor's name or otherwise) in such manner and to such extent as Beneficiary may deem necessary or

33

**EXHIBIT 30**

appropriate under the circumstances to preserve or protect Beneficiary's rights and interests under the Loan Documents, specifically including, but not limited to, the value and condition of any collateral. If Trustor shall fail to perform any other obligation of Trustor under this Deed of Trust or any of the other Loan Documents then, upon notice, Beneficiary may, but shall not be obligated to, perform any obligation (in Trustor's name or otherwise) in such manner and to such extent as Beneficiary may deem necessary or appropriate under the circumstances to preserve or protect Beneficiary's rights and interests under the Loan Documents, specifically including, but not limited to, the value and condition of any collateral. Beneficiary shall be subrogated to all rights against Trustor of the person or persons benefiting from such payment or performance. No such payment or performance shall (a) release Trustor from any obligation under any of the Loan Documents, (b) cure, waive or invalidate any obligation, any Event of Default or any breach or default by Trustor or any Guarantor under any of the Loan Documents, or (c) waive or relinquish any right, power, privilege or remedy of Beneficiary or Trustee under or in connection with any of the Loan Documents. Upon Beneficiary's request, Trustor shall pay, or reimburse Beneficiary for, all expenditures (including attorneys' fees) made or incurred by Beneficiary in making any such payment or performing any such obligation, together with interest thereon at the Default Rate from the date paid by Beneficiary until the date of such reimbursement. Beneficiary is hereby irrevocably authorized to enter upon, and to authorize others to enter upon, the Property for the purpose of performing any such obligation, without thereby becoming liable to Trustor or to any person in possession holding under Trustor.

2.8    **Waivers of Certain Rights.** Trustor agrees, to the fullest extent permitted by law, that neither Trustor nor any person at any time claiming through or under Trustor, shall set up, claim or seek to take advantage of any law now or hereafter in force pertaining to the rights of sureties or providing for any appraisement, valuation, stay, notice of election to accelerate maturity or to declare the Indebtedness due, extension, redemption, moratorium, homestead or exemption from execution, levy or sale, in order to prevent or hinder the foreclosure of this Deed of Trust after any Event of Default, the final and absolute sale of all or any part of the Property, or any interest therein, or the final and absolute putting into possession thereof, immediately after any such sale, of the purchaser or purchasers at such sale or the enforcement of any other rights, powers, privileges or remedies of Beneficiary or Trustee under this Deed of Trust or under any of the other Loan Documents. Trustor, for itself and for any and all persons who may at any time claim through or under Trustor hereby irrevocably waives and releases, to the fullest extent permitted by law, all benefit of any and all such laws, any and all rights of redemption from sale pursuant to the power of sale provided under this Deed of Trust, any and all rights of redemption from sale pursuant to any judgment, order or decree of foreclosure of this Deed of Trust or any writ of execution relating to the Indebtedness (including any equity of redemption and any statutory right of redemption), any and all dower, curtesy and homestead rights, and any and all right to have the assets constituting the Property or any other security for the Indebtedness marshaled upon any foreclosure or other enforcement of this Deed of Trust or any of the other Loan Documents. Beneficiary shall not be required to (i) release any part of the Property or any other security for the Indebtedness or be prevented from foreclosing this Deed of Trust or enforcing any of the other Loan Documents unless the Indebtedness shall have been fully, finally and indefeasibly paid and satisfied in accordance with the Loan Documents, (ii) accept any part or parts of the Property or any other security for the Indebtedness in satisfaction of all or any part of the Indebtedness, or (iii) accept any apportionment of the Indebtedness to or among any part or parts of the Property or any other security for the Indebtedness. If any law now in force of which Trustor might take advantage despite this Section shall be repealed or shall cease to be in force after the date hereof, then such law shall not thereafter be deemed to preclude the application of this Section.

2.9    **Suits To Protect Property.** Beneficiary and Trustee (acting at Beneficiary's request) are hereby irrevocably authorized by Trustor, at Beneficiary's option, to institute and maintain any and all suits and proceedings that Beneficiary may deem advisable (a) to prevent any impairment of the Property or the security of this Deed of Trust by any unlawful acts or omissions, (b) to prevent the occurrence or continuance of any violation of this Deed of Trust or of any of the other Loan Documents, (c) to foreclose

34

**EXHIBIT 30**

this Deed of Trust (after the occurrence of any Event of Default), (d) to preserve and protect Beneficiary's and Trustee's interests in the Property, and (e) to restrain the enforcement of, or compliance with, any Governmental Requirement that may be unconstitutional or otherwise invalid, if such enforcement or compliance might (in Beneficiary's judgment) impair the Property or the security of this Deed of Trust or be prejudicial to Beneficiary's or Trustee's interests.

**2.10    Proofs of Claim.** In the event of any bankruptcy, reorganization, arrangement, composition, readjustment, liquidation, dissolution, insolvency, receivership, conservatorship or other case or proceeding affecting Trustor, Principal or any Guarantor, or any of their respective creditors or properties, Beneficiary may, to the fullest extent permitted by law, file such proofs of claim and other documents as may be necessary or advisable in order to have its claims allowed in such case or proceeding for the entire Indebtedness outstanding as of the institution of such case or proceeding (or for any part of such Indebtedness that may be designated by Beneficiary) and for any additional amounts that may thereafter become due and payable in respect of the Indebtedness.

**2.11    No Waiver.**

(a)    No failure or delay of or by Beneficiary or Trustee to insist upon strict performance of any obligation of Trustor, Principal or any Guarantor under or in connection with this Deed of Trust or any of the other Loan Documents or to exercise any right, power, privilege or remedy under or in connection with this Deed of Trust or any of the other Loan Documents shall waive, exhaust or impair any such obligation or any such right, power, privilege or remedy. Nor shall any such failure or delay be construed to be a waiver of, or acquiescence in or to, any Event of Default or any breach or default by Trustor or any Guarantor under this Deed of Trust or any of the other Loan Documents. Notwithstanding any such failure or delay, Beneficiary or Trustee (acting at Beneficiary's request) thereafter shall have the right, from time to time and as often as may be deemed advisable by Beneficiary, to insist upon and enforce strict performance of any and all obligations of Trustor or any Guarantor under or in connection with this Deed of Trust or any of the other Loan Documents.

(b)    No waiver of any Event of Default or of any breach or default by Trustor or any Guarantor under this Deed of Trust or any of the other Loan Documents shall extend to or affect any subsequent Event of Default, breach or default or any other then-existing Event of Default, breach or default. Nor shall any such waiver impair any rights, powers, privileges or remedies available to Beneficiary or Trustee after the occurrence of any Event of Default or of any breach or default. After the occurrence of any Event of Default or of any such breach or default (whether or not the Indebtedness or any part thereof shall have been declared to be immediately due and payable), Beneficiary may accept payments of amounts owing in respect of the Indebtedness, and no such acceptance shall waive any such Event of Default, breach or default or result in any stay or reversal of any acceleration of maturity or in any forgiveness of all or any part of the Indebtedness, unless Beneficiary expressly and specifically agrees to the contrary in writing.

**2.12    Remedies Cumulative.** No right, power, privilege or remedy now or hereafter available to Beneficiary, Trustee or any receiver under or in connection with this Deed of Trust or any of the other Loan Documents (whether or not herein or therein specified) or any law or judicial decision is or shall be exclusive of any other right, power, privilege or remedy (whether or not herein or therein specified), all of which shall be cumulative, concurrent and in addition to each and every other right, power, privilege and remedy now or hereafter available under or in connection with this Deed of Trust. Each and every such right, power, privilege and remedy may be exercised prior to, simultaneously with or subsequent to any other right, power, privilege or remedy and as often as occasion therefor may arise. No single or partial exercise of any such right, power, privilege or remedy shall preclude any other or further exercise of any such right, power, privilege or remedy. No act of Beneficiary or Trustee shall be construed as an election

35

**EXHIBIT 30**

to proceed under any one provision of this Deed of Trust or of any applicable statute or other law to the exclusion of any other such provision, statute or other law.

2.13    Discontinuance of Proceedings. If Beneficiary or Trustee shall exercise any right, power, privilege or remedy available under or in connection with any of the Loan Documents or under any law or judicial decision, and if such exercise and any related proceedings shall be discontinued or abandoned for any reason, or if any such proceedings shall result in a final determination adverse to Beneficiary or Trustee, then, to the fullest extent permitted by law, Trustor, Beneficiary, and any Guarantor thereafter shall be restored to their respective former positions and to their respective rights, powers, privileges and remedies under the Loan Documents or otherwise relating to the Indebtedness, the Property or any other security for the Indebtedness, and all rights, powers, privileges and remedies of Beneficiary shall continue to be available as if no such exercise and no such proceedings had occurred.

2.14    Additional Security and Guaranty. If Beneficiary or any trustee or agent for Beneficiary at any time holds additional security for, or any guaranty of, all or any part of the Indebtedness, then Beneficiary or such trustee or agent (acting at Beneficiary's request) may foreclose such security or otherwise enforce its rights, powers, privileges and remedies with respect to, and realize upon, such security or such guaranty (as the case may be), either before or concurrently with or after a foreclosure or other enforcement of this Deed of Trust or of any of the other Loan Documents, without being deemed to have waived any rights, benefits, liens or security interests evidenced by or arising under or in connection with this Deed of Trust or any of the other Loan Documents and without being deemed to have made an election thereby or to have accepted the benefits of such guaranty or such additional security (or the proceeds thereof) in full satisfaction and settlement of the Indebtedness and of Beneficiary's or such trustee's or agent's rights with respect thereto. No judgment, order, writ of execution or decree with respect to the Indebtedness or with respect to any such guaranty or security, whether rendered in the State of Nevada or elsewhere, shall in any manner affect the security of this Deed of Trust, and any deficiency or other debt represented by any such judgment, order, writ of execution or decree shall, to the fullest extent permitted by law, be secured by this Deed of Trust to the same extent that the Indebtedness shall have been secured by this Deed of Trust prior to the rendering of such judgment, order, writ of execution or decree. Trustor, for itself and for any and all persons who may at any time claim through or under Trustor or who hereafter may otherwise acquire any interest in or title to all or any part of the Property or any other security for the Indebtedness, hereby irrevocably waives and releases, to the fullest extent permitted by law, all benefit of any and all laws that would limit or prohibit the effectiveness of anything set forth in this Section.

2.15    Default Rate. After any Event of Default, the principal portion of the Indebtedness shall, at Beneficiary's option, bear interest at the Default Rate set forth in the Note (the "Default Rate").

ARTICLE 3

TRANSFER OR FURTHER ENCUMBRANCE OF PROPERTY

3.1    Option to Accelerate; Consent of Beneficiary.

(a)    Except as otherwise permitted in accordance with this Section 3.1, in the event of (i) any sale or transfer of Trustor's interest in the Property, in whole or in part or the execution of an installment sales contract pursuant to which buyer take possession and control of the Property but title thereto does not pass to the buyer until performance and satisfaction of future covenants and conditions, or (ii) any change, directly or indirectly, in the ownership, form of business association or composition of Trustor, or (iii) any financing, other than the Loan, secured by all or any portion of the Property or any beneficial interest in the Property, or (iv) any change in the nature of the Property's use in whole or in part, or any material structural alteration of the Property or any recording of a condominium declaration affecting

36

EXHIBIT 30

the Property, then, at Beneficiary's option, .Beneficiary may declare the Indebtedness to be immediately due and payable, and, upon such declaration, the Indebtedness shall be immediately due and payable without demand or notice. Trustor covenants and agrees that it shall not, without the prior written consent of Beneficiary, take any of the actions, or suffer any of the events, that would be a cause for declaring the Indebtedness (including any applicable Make Whole Amount or Prepayment Premium, each as defined in the Note) to be immediately due and payable pursuant to this Section and any such actions shall be construed as an Event of Default.

(b)      Beneficiary may give, withhold or condition any consent contemplated by paragraph (a) of this Section, for any reason or for no reason, in Beneficiary's sole, absolute and unlimited discretion. Without limiting the generality of the immediately preceding sentence, Beneficiary specifically reserves the right to condition its consent upon such matters as Beneficiary may deem appropriate, including (i) Beneficiary's approval of the creditworthiness, financial condition and management ability of the purchaser, transferee, lessee, pledgee or assignee, (ii) modification of any or all of the Loan Documents in any manner that Beneficiary may deem appropriate (which may include, among other things, an increase in the interest rate then in effect under the Note or the maturity date thereof), (iii) assumption of the obligations and liabilities of Trustor under any or all of the Loan Documents by the purchaser, transferee, lessee, pledgee or assignee, (iv) receipt of satisfactory guaranties of all or any part of the Indebtedness, (v) receipt of satisfactory additional collateral, and (vi) payment to Beneficiary of an assumption fee in such amount as Beneficiary may deem appropriate.

3.2      Subsequent Owner. Each purchaser, transferee, lessee, pledgee and assignee referred to in Section 3.1 shall be deemed to have assumed and agreed, to the extent that its seller, transferor, lessor or pledgor was liable, to pay the Indebtedness and to have assumed and agreed to be bound by and to keep, perform, observe and comply with all provisions required to be kept, performed, observed and complied with by Trustor pursuant to this Deed of Trust (including the terms of this Article), unless Beneficiary shall specifically agree to the contrary in writing. Without limiting the generality of the immediately preceding sentence, each such purchaser, transferee, lessee, pledgee and assignee shall be deemed to have made and agreed to each waiver, consent, authorization, direction and appointment made by and agreed to by Trustor pursuant to this Deed of Trust. If ownership of all or any part of the Property shall become vested in any person other than Trustor, then Beneficiary may, without notice to Trustor, deal with any such successor in interest in any manner that Beneficiary may deem appropriate, without in any way waiving, releasing, discharging or otherwise vitiating any obligations or liabilities of Trustor or any Guarantor with respect to the Indebtedness, the Property, any of the Loan Documents or the transaction of which this Deed of Trust is a part. No sale, conveyance, transfer, pledge, encumbrance, assignment or lease referred to in the immediately preceding Section, and no forbearance, extension or assumption by or to any person with respect to the Indebtedness or any of the Loan Documents, shall change, waive, release, discharge or otherwise affect the liability of Trustor or any Guarantor, in whole or in part, unless Beneficiary shall specifically agree to the contrary in writing.

ARTICLE 4

MISCELLANEOUS

4.1      Use of Certain Terms. Each reference in this Deed of Trust to Trustor, any Guarantor, Beneficiary or Trustee shall be deemed also to include their respective heirs, executors, administrators, personal representatives, successors and assigns. Each reference in this Deed of Trust to any gender shall be deemed also to include any other gender, and the use in this Deed of Trust of the singular shall be deemed also to include the plural and vice versa, unless the context clearly requires otherwise. As used in this Deed of Trust, the term "person" means any and all natural persons (whether acting for themselves or in a representative capacity), sole proprietorships, partnerships, joint ventures, associations, trusts, estates,

37

**EXHIBIT 30**

limited liability companies, corporations (non-profit or otherwise), financial institutions, governments (and agencies, instrumentalities and political subdivisions thereof), and other entities, authorities and organizations of every type. As used in this Deed of Trust, unless the context clearly requires otherwise, (a) the words "herein," "hereunder," "hereinafter" and "hereto" and words of similar import shall be deemed to refer to this Deed of Trust as a whole and not to any particular Article, Section, subsection, paragraph or other subdivision, (b) the words "include" and "including" shall be deemed to be followed by the words "without limitation," and (c) the terms "Dollars" and "$" shall be deemed to refer to the lawful currency of The United States of America. Each reference in this Deed of Trust to the provisions of this Deed of Trust or the provisions of any of the other Loan Documents shall be deemed to refer to any and all covenants, agreements, terms, conditions and other provisions hereof or thereof. Each reference in this Deed of Trust to the fees or other compensation of any agents, contractors, attorneys or other representatives of any person shall be deemed also to include expenses and disbursements, as well as fees of paraprofessionals and similar personnel (such as paralegals and legal assistants). Each reference in this Deed of Trust to any statute shall be deemed to include within such reference any amendments, substitutions or replacements thereof or therefor, and each reference in this Deed of Trust to any specific provision of the Bankruptcy Code or any other statutory compilation shall be deemed to include within such reference any similar statutory provision that may hereafter be enacted by any governmental authority.

4.2 **Schedules; Recitals; Headings.** The Schedules and Exhibits attached hereto and the paragraphs set forth at the beginning of this Deed of Trust under the heading "BACKGROUND" are incorporated in and made a part of this Deed of Trust by this reference. The captions and headings of the Articles, Sections, subsection, paragraphs and other subdivisions of this Deed of Trust are for convenience of reference only, are not to be considered a part of this Deed of Trust and shall not be deemed or construed to define, modify, limit, expand or otherwise affect any of the provisions of this Deed of Trust.

4.3 **Notices.** All notices, reports, demands, requests or other communications to be given or delivered to Trustor, Beneficiary or Trustee under this Deed of Trust shall be deemed given or delivered to such person in the same manner as set forth in the Loan Agreement.

4.4 **Binding Effect; Third Parties.** All provisions of this Deed of Trust shall run with the Land and shall bind and inure to the benefit of Trustor, Beneficiary, Trustee and their respective heirs, executors, administrators, personal representatives, successors and assigns. Except as otherwise expressly provided in this Deed of Trust, this Deed of Trust is for the exclusive benefit of such persons, and nothing set forth herein shall be deemed to be for the benefit of any other person. If there is more than one Trustor at any time, all undertakings of Trustor under this Deed of Trust shall be deemed to be joint and several.

4.5 **Applicable Law; Severability.** THIS DEED OF TRUST SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEVADA, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW. All rights, powers, privileges and remedies provided in this Deed of Trust may be exercised only to the extent that the exercise thereof does not violate any law and are intended to be limited to the extent necessary so that they will not render this Deed of Trust invalid, illegal or unenforceable. If any provision of this Deed of Trust or any of the other Loan Documents shall be invalid, illegal or unenforceable in any respect, then such provision alone shall be deemed to be null and void, and the validity, legality and enforceability of the remaining provisions of this Deed of Trust and of the other Loan Documents shall remain in full force and effect and shall not in any way be impaired or otherwise affected thereby.

4.6 **Changes.** Neither this Deed of Trust nor any of the other Loan Documents, nor any provision of any of them, may be changed, waived, released, discharged, withdrawn, revoked, canceled or terminated orally, or by any action or inaction. Any such change, waiver, release, discharge, withdrawal, revocation, cancellation or termination shall be effective only if set forth in a written document signed by the party against whom enforcement of such change, waiver, release, discharge, withdrawal, revocation,

38

**EXHIBIT 30**

cancellation or termination is sought, and then shall be effective only to the extent specifically provided in such document. Any agreement hereafter made by Trustor, Trustee or Beneficiary relating to this Deed of Trust or to any of the other Loan Documents shall, to the fullest extent permitted by law, be superior to the rights and interests of the holder, owner or Beneficiary of any intervening lien or encumbrance. Neither the modification of this Deed of Trust or any of the other Loan Documents nor the release of any part of the Property from the lien of this Deed of Trust shall impair the priority of such lien.

4.7    Discretion. Each and every decision, determination, estimate, request, consent or similar matter to be made or given by Beneficiary from time to time pursuant to or in connection with this Deed of Trust shall, unless expressly provided otherwise in any Lease, be within its sole, absolute, unlimited and subjective discretion, except to the extent specifically provided to the contrary in this Deed of Trust or in any of the other Loan Documents. All conditions to any agreement or obligation of Beneficiary or Trustee under or in connection with this Deed of Trust or any of the other Loan Documents (including any agreement or obligation to make any Compensation or other funds available to Trustor) are solely for the benefit of Beneficiary. Any or all such conditions may be waived or relaxed at any time or times by Beneficiary. No such waiver or relaxation in any particular instance shall affect Beneficiary's discretion in dealing with any such condition in any other instance.

4.8    No Release. No obligation or liability of Trustor or any Guarantor in connection with the Indebtedness or the Property (whether existing or arising under this Deed of Trust, any of the other Loan Documents or otherwise) shall be changed, waived, released, discharged, withdrawn, revoked, canceled, terminated or otherwise affected (except to the extent expressly provided in this Deed of Trust, any of the other Loan Documents or any written agreement executed by Beneficiary) by reason of any of the following: (a) any Casualty, Taking or other damage affecting all or any part of the Property; (b) any restriction or prevention of, or interference with, any use of all or any part of the Property; (c) any title defect, lien or other encumbrance on all or any part of the Property or any eviction or dispossession of any person from all or any part of the Property by paramount title or otherwise; (d) any bankruptcy, insolvency, reorganization, arrangement, composition, readjustment, liquidation, dissolution, conservatorship, receivership or similar case or proceeding relating to Trustor, Principal or any Guarantor or any action taken with respect to the Indebtedness, the Property or any of the Loan Documents by any trustee, custodian, receiver, conservator, master, liquidator or court in connection with any such case or proceeding; (e) any claim that any person may have against Beneficiary or Trustee; (f) any default or failure by Beneficiary or Trustee to perform or comply with any of the provisions of this Deed of Trust, any of the other Loan Documents or any other agreement with Trustor, Principal or any Guarantor; (g) any consent or approval (whether conditional or unconditional) or any withholding of consent or approval to any matter for which Beneficiary's consent or approval may be required; (h) any failure by Beneficiary or Trustee to comply with any request to foreclose this Deed of Trust, accept a deed or other conveyance or assignment of all or any part of the Property in lieu of foreclosure or otherwise enforce any of Beneficiary's rights, powers, privileges or remedies under this Deed of Trust or any of the other Loan Documents; (i) any release of all or any part of the Property or any other security for the Indebtedness from the lien of this Deed of Trust or from the effect of any of the other Loan Documents or any acceptance of other or additional security for all or any part of the Indebtedness; (j) any release of any person from liability for or in connection with all or any part of the Indebtedness; (k) any compromise, settlement, forbearance or extension of time for payment or performance of or in connection with the Indebtedness; (l) any waiver of, or other failure by Beneficiary or Trustee to exercise, any right, power, privilege or remedy available after the occurrence of any Event of Default or at any other time; (m) km; or (n) any other occurrence, whether similar or dissimilar to any of the foregoing occurrences, whether or not Trustor or any Guarantor shall have notice or knowledge of any of the foregoing occurrences. None of the foregoing occurrences shall preclude Beneficiary or Trustee (acting at Beneficiary's request) from exercising any right, power, privilege or remedy available after the occurrence of any then-existing or subsequent Event of Default, nor shall the priority of the lien of this

39

**EXHIBIT 30**

Deed of Trust be altered by any such occurrence (except to the extent expressly provided in any document or instrument executed by Beneficiary).

4.9     **Receipt of Copy Acknowledged.** Trustor hereby acknowledges that it has received an accurate and complete copy of this Deed of Trust, as executed.

4.10    **Commercial Transaction.** The transaction of which this Deed of Trust is a part of a commercial transaction, and this Deed of Trust is given for commercial purposes.

4.11    **Counterparts.** This Deed of Trust may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which shall be deemed to be one and the same Deed of Trust.

4.12    **Trustee Acceptance and Actions.**

(a)     Trustee's Acceptance of Trust. Trustee accepts this trust when this Deed of Trust is recorded.

(b)     Certain Actions of Trustee. Upon the written request of Beneficiary], Trustee may at any time (i) reconvey all or any portion of the Property, (ii) consent to the making of any map or plat thereof, (iii) join in granting any easement thereon or in creating any covenants or conditions restricting the use or occupancy thereof, or (iv) join in any extension agreement or in any agreement subordinating the lien or charge hereof. Any such action may be taken by Trustee without notice to Trustor, and shall not affect the personal liability of any person for the payment of the Indebtedness or the lien of this Deed of Trust upon the Property for the full amount of the Indebtedness.

(c)     Reconveyance. Upon the written request of Beneficiary stating that all sums secured hereby have been paid, and upon payment of its fees, Trustee shall reconvey without warranty the Property then held by Trustee hereunder.

(d)     Trustee's Covenants and Compensation. Trustee, by its acceptance hereof, covenants faithfully to perform and fulfill the trust herein created, being liable, however, only for negligence or willful misconduct. Trustee hereby waives any statutory fee and shall be entitled to, and hereby agrees to accept, reasonable compensation in lieu thereof for all services rendered or expenses incurred in the administration or execution of the trust hereby created. Trustor hereby agrees to pay such compensation subject to any applicable legal limitations.

4.13    **Substitution of Trustee.** If Beneficiary shall for any reason desire to remove Trustee (or any successor of Trustee) as trustee under this Deed of Trust and to appoint a new trustee in the place and stead of Trustee, then Beneficiary shall have the right, and is hereby irrevocably granted full power and authority, to remove Trustee and to appoint a successor trustee by a written document, which shall be duly executed and acknowledged so as to entitle such document to be recorded in the land records for the State of Nevada. Upon such recording, such document shall be conclusive proof of the proper substitution of such successor trustee. Such successor trustee thereupon shall become Trustee under this Deed of Trust and shall automatically succeed to all title, estate, rights, powers and duties of the predecessor Trustee. Beneficiary shall be entitled to exercise the right to appoint a successor trustee as many times as Beneficiary may desire. Trustor hereby irrevocably consents to the naming of employees, agents and attorneys of Beneficiary as Trustee or successor trustee.

40

**EXHIBIT 30**

4.14    Resignation of Trustee. Trustee may resign at any time upon giving not less than thirty (30) days' notice to Trustor and to Beneficiary. Upon such resignation, Beneficiary may select and appoint a successor Trustee hereunder in the same manner as described in Section 4.14 above.

4.15    Ratification of Acts of Trustee. Trustor hereby ratifies and confirms any and all acts which Trustee named herein or its successors or assigns in this trust shall do lawfully and in accordance with the provisions of this Deed of Trust by virtue hereof.

4.16    Cancellation of Deed of Trust. If (a) the Indebtedness shall be fully, finally, and indefeasibly paid (without any deduction or credit for taxes or other charges) in accordance with the Loan Documents, and (b) the provisions of the Loan Documents required to be kept, performed, observed and complied with by or on behalf of Trustor shall be so kept, performed, observed and complied with, then, after written request by Trustor, the Beneficiary shall direct Trustee to, and Trustee shall, reconvey the Property then subject to this Deed of Trust, all without warranty and all at the expense of Trustor. The grantee in such reconveyance may be described as the "person or persons legally entitled thereto."

4.17    Waiver of Jury Trial. TRUSTOR, TRUSTEE (BY ACCEPTING THIS DEED OF TRUST) AND BENEFICIARY, FOR THEMSELVES AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, HEREBY (a) AGREE THAT NONE OF THEM SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, ACTION, PROCEEDING, COUNTERCLAIM OR OTHER LITIGATION PROCEDURE BASED UPON OR ARISING OUT OF OR OTHERWISE RELATING TO THE INDEBTEDNESS, THIS DEED OF TRUST, ANY OF THE OTHER LOAN DOCUMENTS, ANY RELATED INSTRUMENT OR AGREEMENT, ANY COLLATERAL FOR ALL OR ANY PART OF THE INDEBTEDNESS, OR THE DEALINGS OR RELATIONSHIP BETWEEN OR AMONG TRUSTOR, BENEFICIARY, TRUSTEE AND ANY GUARANTOR (OR ANY OF THEM) IN CONNECTION THEREWITH, (b) IRREVOCABLY WAIVE ANY AND ALL RIGHT TO ANY SUCH JURY TRIAL, AND (c) AGREE THAT NONE OF THEM SHALL SEEK TO CONSOLIDATE ANY SUCH LAWSUIT, ACTION, PROCEEDING, COUNTERCLAIM OR OTHER LITIGATION PROCEDURE AS TO WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER LAWSUIT, ACTION, PROCEEDING, COUNTERCLAIM OR OTHER LITIGATION PROCEDURE AS TO WHICH A JURY TRIAL CANNOT OR HAS NOT BEEN WAIVED. THIS SECTION HAS BEEN FULLY DISCUSSED BY TRUSTOR, TRUSTEE AND BENEFICIARY, EACH OF WHOM HAS BEEN REPRESENTED BY COUNSEL. THIS SECTION SHALL NOT BE SUBJECT TO ANY EXCEPTIONS, AND NO SUCH PERSON HAS IN ANY WAY AGREED WITH OR REPRESENTED TO ANY OTHER PERSON THAT THIS SECTION WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

4.18    NOTICE OF INDEMNIFICATION: TRUSTOR HEREBY ACKNOWLEDGES AND AGREES THAT THIS DEED OF TRUST CONTAINS CERTAIN INDEMNIFICATION PROVISIONS (INCLUDING WITHOUT LIMITATION, THOSE CONTAINED IN SECTION 1.22 HEREOF), WHICH, IN CERTAIN CIRCUMSTANCES, COULD INCLUDE AN INDEMNIFICATION BY TRUSTOR OF BENEFICIARY OR TRUSTEE FROM CLAIMS OR LOSSES ARISING AS A RESULT OF BENEFICIARY'S OR TRUSTEE'S OWN NEGLIGENCE OR OTHER FAULT.

ARTICLE V

LOCAL LAW PROVISIONS

5.1    Inconsistencies. In the event of any inconsistencies between the terms and conditions of this Article 5 and the other terms and conditions of this Deed of Trust or any other Loan Documents with

41

**EXHIBIT 30**

**EXHIBIT 30**


respect to matters relating to the creation, perfection and enforcement of the liens and security interests created with respect to the Property, the terms and conditions of this Article 5 shall control.

     5.2     Nevada Specific Provisions. With respect to the Property which is located in the State of Nevada, notwithstanding anything contained herein to the contrary:

     (a)     The granting clause of this Deed of Trist is and shall be deemed to be amended to provide that the Property is conveyed unto Trustee, in trust for the benefit of Beneficiary, with power of sale and with right of entry and possession.

     (b)     Any grace period for payment referenced in the Loan Agreement shall run concurrently with the thirty-five (35) day statutory cure period under Nevada Revised Statutes ("NRS") Section 107.080(2)(a)(2).

     (c)     Supplementing the provisions of Section 3.1 of this Deed of Trust: Should Beneficiary have elected to accelerate the indebtedness secured hereby, Beneficiary may initiate foreclosure of the Property by requesting the Trustee to effectuate a non-judicial foreclosure sale. Trustee shall give and record such notice as the law then requires as a condition precedent to a trustee's sale. When the minimum period of time required by law after such notice has elapsed, Trustee, without notice to or demand upon Trustor except as required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, at one or several sales, either as a whole or in separate parcels and in such manner and order, all as Beneficiary in its sole discretion may determine, at public auction to the highest bidder for cash, in lawful money of the United States, payable at time of sale. Neither Trustor nor any other person or entity other than Beneficiary shall have the right to direct the order in which the Property is sold. Subject to requirements and limits imposed by law, Trustee may, from time to time, postpone the sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time may postpone the sale by public announcement at the time and place fixed by the preceding postponement. A sale of less than the whole of the Property on any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein. Trustee shall deliver to the purchaser at such sale a deed conveying the Property or portion thereof so sold, but without any covenant or warranty, express or implied. The recitals in the deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Beneficiary shall have the right to become the purchaser at any sale held by any Trustee or substitute or successor Trustee, or by any receiver of public officer. Any Beneficiary purchasing at any such sale shall have the right to credit the secured indebtedness owing to such Beneficiary upon the amount of its bid entered at such sale to the extent necessary to satisfy such bid. Said Trustee may appoint an attorney-in-fact to act in its stead as Trustee to conduct sale as hereinbefore provided. Trustor binds himself to warrant and forever defend the title of such purchaser or purchasers when so made by the Trustee, and agrees to accept proceeds of said sale, if any, which are payable to Trustee as provided herein.

     (d)     This Deed of Trust secures future advances, as defined in NRS Section 106.320, and is to be governed by NRS Sections 106.300 to 106.400, inclusive. The maximum principal amount to be secured hereby is two hundred percent of the face amount of the Note.

     (e)     Beneficiary's rights and remedies under this Deed of Trust shall be subject to NRS Section 107.080.

     (f)     Trustor agrees that Beneficiary shall have the same right, power and authority to enter and inspect the Property as is granted to a secured lender under NRS Section 40.507, and that Beneficiary will have the right to appoint a receiver to enforce the right to enter and inspect the Property to the extent such authority is provided under Nevada law, including, without limitation, the authority granted to a secured lender under NRS Section 32.015.

42

**EXHIBIT 30**



(g)    Supplementing the provisions of Section 1.5 of this Deed of Trust, this Deed of Trust shall constitute a fixture filing pursuant to NRS Section 104.9502, as amended from time to time. Some or all of the collateral may be or become a fixture in which Beneficiary has a security interest under the security agreement provided for in Section 1.5 above (the "**Security Agreement**"). However, nothing herein shall, or shall be deemed to, create any lien or interest in favor of the Trustee in any Collateral which is not a fixture. The rights, remedies and interests of Beneficiary are independent and cumulative, and there shall be no merger of any lien hereunder with any security interest created by the Security Agreement. Beneficiary may elect to exercise or enforce any of its rights, remedies or interests under either or both this Deed of Trust or the Security Agreement as Beneficiary may from time to time deem appropriate.

**Covenants numbered 1, 3, 4, 5, 6, 7, 8 and 9 of NRS Section 107.030 are incorporated herein by reference. The rate of interest for Covenant Number 4 shall be the Default Rate. The percent of counsel fees under Covenant No. 7 shall be reasonable. Except for Covenants Numbers 6, 7 and 8, to the extent that any terms of this Deed of Trust are inconsistent with such statutory covenants, the terms of this Deed of Trust will control. Covenant Numbers 6, 7, and 8 shall control over the express terms of any inconsistent terms of this Deed of Trust.**

*[Remainder of Page Intentionally Left Blank; Signature Page to Follows]*

43

**EXHIBIT 30**

**IN WITNESS WHEREOF,** Trustor has caused this Deed of Trust to be executed under seal by a person or persons duly authorized, all as of the day and year first above written.

**MAGIC TRIC I, LLC**, an Indiana limited liability company

By: Magic Tric I Member, LLC, an Indiana limited liability company, its Sole Member

By: _____

Christopher L. Seger, Manager

**STATE OF INDIANA**      }
                           } SS.
**COUNTY OF** MARION    }

This instrument was acknowledged before me on February 2⁴ , 2025, by Christopher L. Seger, the Manager of Magic Tric I Member, LLC, an Indiana limited liability company, the Sole Member of **MAGIC TRIC I, LLC**, an Indiana limited liability company (the "Company"), on behalf of the Company and that this instrument was signed by him in the name of the Company for the purposes and consideration therein expressed.

Signature: _____

Printed Name: Michael B. Davis

Notary Public, State of Indiana

MICHAEL B DAVIS
Notary Public - Seal
Marion County - State of Indiana
Commission Number NP0666488
My Commission Expires Apr 9, 2031

**MY COUNTY OF RESIDENCE:** MARION

**MY COMMISSION EXPIRES:** April 9, 2031

[NOTARY SEAL]

*[Signature Page to Deed of Trust]*

**EXHIBIT 30**

## Exhibit A

### Legal Description

All that certain real property situated in the County of Storey, State of Nevada, described as follows:

All that certain parcel situate within a portion of the Northeast One-Quarter (NE1/4) of Section Two (2), Township Nineteen (19) North, Range Twenty-Two- (22) East, Mount, Diablo Meridian, Storey County, Nevada, being a portion of Parcel 2018-4, as shown on Record of Survey Map, file No. 127128, in the Official Records of Storey County, Nevada, a portion of Parcel 2008-26, as shown on Record of Survey Map, File No. 109143, in the Official Records of Storey County, Nevada, and a portion of Parcel 2023-14, as shown on Record of Survey Map File No. 138372, in the Official Records of Storey County, Nevada, said parcel being more particularly described as follows;

Beginning at the Northeast corner of said Parcel 2023-14, from which the Northeast corner of said Section 2, bears North 56°36'47" East, 1209.45 feet;

Thence along the Easterly line of said Parcel 2023-14, and the prolongation thereof, South 00°01'57" East, 1679.18 feet to the Southerly line of Parcel 2018-4;

Thence along said Southerly line, South 59°05'24" West, 628.40 feet;

Thence leaving said Southerly line, South 00°01'57" East 285.54 feet tot the Southerly line of said Parcel 2008-26, said point being on the Northerly right-of-way line of Denmark Drive per Document No. 107607, in the Official Records of Storey County, Nevada;

Thence along said Southerly parcel line, being coincident with said Northerly right-pf-way line, South 82°38'48" West, 164.71 feet to the Southwest corner of said Parcel 2008-26;

Thence along the Westerly line of said Parcel 2008-26 and the prolongation thereof, being on the Southerly line of said Parcel 2018-4, North 14°47'30" West, 598.89 feet;

Thence continuing along said Southerly line, North 76°36'34" West, 309.56 feet to the Southwest corner of said Parcel 2018-4;
Thence along the Westerly line of said Parcel 2018-4, the following nine (9) courses and distances:

1) North 27°52'22" East, 69.99 feet;

2) North 36°22'33" East, 133.70 feet, to the beginning of a curve to the left;

3) 121.66 feet along the arc of a 170.00 foot radius curve, through a central angle of 41°00'19" to a point of a reverse curvature;

Exhibit A-1

**EXHIBIT 30**

4) 483.67 feet along the arc of a 1980.00 foot radius curve to the right, through a central angle of 13°59'46" to a point of reverse curvature;

5) 402.79 feet along the arc of a 5020.00 foot radius curve to the left, through a central angel of 04°35'50";

6) North 04°46'09° East, 330.06 feet to the beginning of a curve to the right;

7) 85.11 feet along the arc of a 1020.00 foot radius curve, through a central angle of 04°46"51;

8) North 00°00'42" West 115.02 feet to the beginning of a curve to the left and;

9) 77.22 feet along the arc of a 170.00 foot radius curve, through a central angle of 26D01'34" to the Northwest corner of said Parcel 2018-4;

Thence along the Northerly line of said Parcel 2019-4, South 46°33'45" East, 162.70 feet to the Northwest corner of said Parcel 2023-14;

Thence along the Northerly line of said Parcel 2023-14, North 89°58'03" East, 809.53 feet to the Point of Beginning.

Reference is hereby made of record to Parcel 2023-16, of the Record of Survey Map recorded October 3, 2023, as Document No. 138375, of Official Records.

The above legal description appeared previously in that certain Record of Survey Deed recorded October 3, 2023, as Document No. 138374, of Official Records, pursuant to NRS Section 6.111.312.

**EXHIBIT 30**

APN: 005-101-71

**Prepared By and Return To:**
LNL MM, LLC
1450 Brickell Avenue, Suite 2600
Miami, Florida 33131
Attn: Legal Department

24579 Sto·TH

Recorded Electronically
ID
County
Date          Time

ASSIGNMENT OF LEASES, SUBLEASES AND RENTS

MADE BY

**MAGIC TRIC I, LLC, an Indiana limited liability company**

as Grantor/Borrower

to

**LNL MM, LLC, a Delaware limited liability company**

as Grantee/Lender

Dated: March 3, 2025

Location: 455 Denmark Drive, Sparks, Nevada 89434

APN: 005-101-71

**EXHIBIT 30**

**EXHIBIT 30**

**Doc #: 140766**

03/03/2025 01:59 PM  Page: 1 of 11

**OFFICIAL RECORD**

Requested By: STEWART TITLE COMPANY

**Storey County, NV**
**Dru McPherson, Recorder**

Fee: $37.00  RPTT: $0.00
Recorded By: dmcpherson

APN: 005-101-71

**Prepared By and Return To:**
LNL MM, LLC
1450 Brickell Avenue, Suite 2600
Miami, Florida 33131
Attn: Legal Department

24579 SleTH

ASSIGNMENT OF LEASES, SUBLEASES AND RENTS

MADE BY

MAGIC TRIC I, LLC, an Indiana limited liability company

as Grantor/Borrower

to

LNL MM, LLC, a Delaware limited liability company

as Grantee/Lender

Dated: March 3, 2025

Location:  455 Denmark Drive, Sparks, Nevada 89434

APN:  005-101-71

**EXHIBIT 30**

EXHIBIT 30

## ASSIGNMENT OF LEASES, SUBLEASES AND RENTS

This ASSIGNMENT OF LEASES, SUBLEASES AND RENTS (this "Assignment") is entered into and effective as of March 3, 2025, by MAGIC TRIC I, LLC, an Indiana limited liability company, having an address at 1351 Roosevelt Avenue, Suite 100, Indianapolis, Indiana 46202 ("Borrower" or "Grantor"), to and for the benefit of LNL MM, LLC, a Delaware limited liability company, having an address at 1450 Brickell Avenue, Suite 2600, Miami FL 33131 ("Grantee" or "Lender").

WITNESSETH:

WHEREAS, Borrower and the Lender are parties to that certain Construction Loan Agreement dated as of even date herewith (as the same may from time to time be amended, modified, extended, renewed or restated, the "Loan Agreement"; all capitalized terms used and not otherwise defined in this Assignment shall have the meaning ascribed to them in the Loan Agreement); and

WHEREAS, as evidence of the indebtedness incurred under the Loan Agreement, Borrower has executed and delivered to the Lender the Note, payment of which is secured by, among other things, the Security Instrument covering the real estate described on Exhibit A, which is attached hereto and incorporated herein by this reference (the "Property"), as well as other security; and

WHEREAS, the execution and delivery of this Assignment is a condition precedent to the performance by the Lender of its obligations under the Loan Agreement and is intended by the parties to be an immediate and absolute assignment to Lender, without the need of Lender to take any affirmative actions in order to secure the benefit of this Assignment.

NOW, THEREFORE, in consideration of the recitals set forth above and incorporated herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantor hereby covenants and agrees as follows:

1.    Assignment. Grantor hereby sells, assigns, transfers, conveys, and sets over unto Lender and its successors and assigns, presently and absolutely all of the right, title, and interest of Grantor in, to and under (i) any and all leases, subleases, licenses or agreements for the use or occupancy of the whole or any part of the Property, whether such leases, licenses or agreements are now or at any time hereafter existing, including without limitation that certain Lease dated February 24, 2025 by and between Borrower, as landlord, and Tesla, Inc., dba Tesla Motors, Inc., as tenant (such leases, licenses or agreements being hereinafter collectively called "Leases" or singularly a "Lease"), together with all amendments and supplements to and renewals and extensions of the Leases at any time made, and (ii) all current and future rents, earnings, issues, income, and profits arising from the Property and/or from said Leases and all other sums due or to become due under and pursuant thereto, and (iii) any and all guarantees under any of said Leases, and (iv) any and all current and future proceeds payable under any policy of insurance covering loss of rents for any cause, and (v) any and all current and future rights, powers, privileges, options and other benefits of Grantor as lessor under the Leases, including, but not by way of limitation:

1.1.    The immediate and continuing right to receive and collect all current and future rents, income, revenues, issues, profits, condemnation awards, moneys, termination or cancellation payments and security payable or receivable under the Leases or pursuant to any of the provisions thereof whether as rent or otherwise;

1.2.    The right to pursue and collect any claim under any Debtor Relief Laws of any tenant;

2

**EXHIBIT 30**

**EXHIBIT 30**

1.3.    The right to make all commercially reasonable waivers and agreements, to give and receive all notices, consents, and releases, and to take such action upon the happening of an Event of Default under any Lease as Grantor might have taken, including the right to commence, conduct, and consummate proceedings at law or in equity as shall be permitted under any provision of any Lease or by Applicable Law; or

1.4.    To do any and all other things whatsoever which the Grantor is or may become entitled to do under or by virtue of the Leases or any of them.

ALL OF THE ABOVE BEING SUBJECT, however, to the right and license hereinafter granted by Lender to Grantor.

This Assignment is made for the purpose of securing: (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest and charges as may accrue thereon, either before or after maturity thereof, of the Note; (b) the full and prompt payment and performance of any and all of the other obligations of Grantor to Lender; and (c) any and all other indebtedness, however incurred, which may now or hereafter be due and owing from Grantor to Lender now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether expressed or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, consolidations and extensions thereof. The foregoing amounts, obligations, and indebtedness shall not be deemed extinguished by virtue of the fact that the Note may at any time not evidence a debt actually outstanding. This Assignment shall remain in full force and effect until: (y) the payment in full of all advances of principal and interest on the Note; and (z) the payment and performance and observance by Grantor of all of its duties, obligations, and indebtedness under this Assignment and the other Loan Documents.

This Assignment secures future advances and future obligations, including any advances made under clauses (c) above, and is governed by Nevada law. The total amount outstanding at any one time which is secured by this Assignment, excluding any interest and any amounts advanced by Lender in accordance with the terms of this Assignment to (i) preserve or restore the Property, (ii) preserve the lien of the Assignment or the priority thereof, or (iii) enforce this Assignment, shall not exceed Sixty-Eight Million Seven Hundred Seventy-One Thousand Four Hundred Twenty-Nine and No/100 Dollars ($68,771,429.00) plus to the extent permitted by applicable law, collection costs, sums advanced for the payment of taxes, assessments, maintenance and repair charges, insurance premiums and any other costs incurred to protect the security encumbered hereby.

The lien of this Assignment secures payment of existing obligations and future advances and future obligations made or incurred pursuant to the Loan Agreement and the other Loan Documents, to the same extent as if such future advances or future obligations were made or incurred on the date of execution of this Assignment, without regard to whether or not there is any advance made at the time this Assignment is executed and without regard to whether or not there is any indebtedness outstanding at the time any advance is made. Lender agrees to make future advances to Borrower in accordance with the Loan Agreement.

2.    Representations and Warranties. Grantor represents and warrants to Lender that:

2.1.    Grantor has good right and authority to make this Assignment;

2.2.    Grantor has not heretofore alienated, assigned, pledged, or otherwise disposed of or encumbered any Leases, or any of the sums due or to become due thereunder or otherwise assigned hereunder;

3

**EXHIBIT 30**

EXHIBIT 30

2.3.    Grantor has not performed any acts or executed any other instruments which might prevent Lender from deriving the full benefits of any of the terms and conditions of this Assignment or which would limit Lender in enjoying such benefits;

2.4.    Grantor has not accepted, anticipated, or collected rent or any other payments due or to become due under any existing Lease for any period subsequent to the month in which such rent or other payment has become due;

2.5.    Grantor has not executed or granted any amendment or modification of any existing Lease, either orally or in writing; and

2.6.    There is no default under any Lease now existing and no event has occurred and is continuing which, with the lapse of time or the giving of notice or both, would constitute an event of default under any Lease.

3.    Covenants.  Grantor hereby covenants and agrees:

3.1.    Promptly to observe, perform, and discharge the obligations and conditions of this Assignment and all of the other Loan Documents to which it is a party;

3.2.    To enforce the performance of all obligations, terms, covenants, conditions, and agreements to be performed by any tenant pursuant to the Leases and any guarantor thereof; and

3.3.    To appear in and defend any action or proceeding arising under or in any manner connected with the Leases, or the obligations, duties, or liabilities of Grantor and any tenant thereunder and upon request by Lender, to do so in the name and behalf of Lender, but at the expense of Grantor.

In addition, if any tenant under any Lease is or becomes the subject of any proceeding under any Debtor Relief Laws, as amended from time to time, or any other Applicable Law which provides for the possible termination or rejection of any Lease assigned hereby, Borrower covenants and agrees that if any such Lease is so terminated or rejected, no settlement for damages shall be made without the prior written consent of the Lender, and any check in payment of damages for termination or rejection of any such Lease will be made payable both to the Borrower and the Lender.  The Borrower hereby assigns any such payment to the Lender and further covenants and agrees that upon the request of the Lender, it will duly endorse to the order of the Lender any such check, for application by the Lender to the obligations secured hereby.

4.    Negative Covenants.  Except as otherwise permitted by the Loan Documents, Grantor also covenants and agrees that it will not, without in each instance obtaining the prior written consent of Lender, which shall not be unreasonably delayed, conditioned or withheld:

4.1.    Enter into, renew, extend or modify any Lease for space,

4.2.    Alter or modify the terms of any guaranty of any Lease, or cancel or terminate any such guaranty;

4.3.    Cancel any Lease nor accept a surrender thereof;

4.4.    Reduce the rent payable under any Lease or accept payment of any installment of rent in advance of the due date thereof;

4

**EXHIBIT 30**

**EXHIBIT 30**

4.5.    Change, amend, alter, or modify any Lease or any of the terms or provisions thereof, nor grant any concession in connection therewith;

4.6.    Consent to the release of the obligations of a tenant or guarantor under any Lease;

4.7.    Assign, pledge, encumber, or otherwise transfer any Lease or Grantor's right thereunder except to the Lender;

4.8.    Consent to an assignment of any tenant's interest under any Lease or to a subletting of the premises described therein; or

4.9.    Incur any indebtedness for borrowed money or otherwise to any tenant or guarantor of any Lease if such indebtedness may under any circumstances be availed of by such tenant or guarantor as an offset against the rent or other payments due thereunder.

Any of the above acts, if done without the consent of Lender, shall be, at the option of Lender, without any force or effect as against Lender.

5.    _Further Assurances._  Grantor also covenants and agrees that Grantor will, upon the request of Lender, execute and deliver to Lender such further instruments and do and perform such other acts and things as Lender may deem necessary or appropriate to make this Assignment and the various covenants of Grantor herein contained effective and to more effectively vest in and secure to Lender the sums due or hereafter to become due under the Leases.  This covenant and agreement shall include, without limitation, the execution of such additional assignments as shall be deemed necessary by Lender to effectively vest in and secure to Lender all rents, income, and profits from any and all Leases.  Grantor further agrees that it will, from time to time, upon written demand therefor, deliver to Lender an executed counterpart of each and every Lease then affecting all or any portion of the Property.

6.    _Event of Default._  The occurrence of an "Event of Default" under the Loan Agreement shall be considered an Event of Default under this Assignment.

7.    _Payment of Rents._  Grantor hereby consents to and irrevocably authorizes and directs the tenants under the Leases and any successor to the interest of said tenants, upon written demand and notice from Lender of Lender's right to receive the rents and other amounts under such Leases, from and after the occurrence and during the continuance of an Event of Default, to pay to Lender the rents and other amounts due or to become due under the Leases, and said tenants shall have the right to rely upon such demand and notice from Lender and shall pay such rents and other amounts to Lender without any obligation or right to determine the actual existence of any Event of Default or event claimed by Lender as the basis for Lender's right to receive such rents and other amounts, notwithstanding any notice from or claim of Grantor to the contrary.  Grantor shall have no right or claim against any tenant for any such rents and other amounts so paid by a tenant to Lender.  To the extent that Grantor receives any rent prepayments, termination payments, charges for services or facilities or for escalations under any Lease following an Event of Default, Grantor shall pay such sums to Lender, in addition to any security deposits received by Grantor under any Leases.

Notwithstanding the foregoing provisions, which shall be construed as making and establishing a present and absolute transfer and assignment of the Leases and the rents, earnings, issues, income, and profits arising therefrom, so long as no Event of Default shall exist and be continuing, Grantor shall act as Lender's licensee and have the right and license to occupy the Property as landlord or otherwise, and to collect, use, and enjoy the rents, issues, and profits and other sums, only as the same become due under the provisions of such Lease, and to enforce the covenants of the Leases.

5

**EXHIBIT 30**

8.      Remedies.  Upon the occurrence and during the continuance of an Event of Default, Lender, at its option, shall have the complete right, power, and authority:

8.1.    To terminate the right and license granted to Grantor in the paragraph immediately preceding and thereafter, without taking possession, to demand, collect, and receive and sue for the rents and other sums payable under the Leases and, after deducting all necessary and proper costs and expenses (including attorneys' fees) of collection as determined by Lender, to apply the net proceeds thereof upon any indebtedness secured hereby.  Lender may elect not to collect rents under this Assignment, but that election shall not prejudice Lender's rights to collect rents subsequently.  Lender shall never be liable for failure to collect rent, but shall be accountable for rent received before foreclosure of the Security Instrument;

8.2.    To declare all sums secured hereby immediately due and payable, and, at its option, to exercise all of the rights and remedies contained herein and in any of the other Loan Documents;

8.3.    Without regard to the adequacy of the security, with or without process of law, personally or by agent or attorney, or under the Security Instrument, or by a receiver to be appointed by court, then and thereafter to enter upon, take and maintain possession of and operate the Property, or any part thereof, together with all documents, books, records, papers, and accounts relating thereto and hold, operate, manage, and control the Property, or any part thereof, as fully and to the same extent as Grantor could do if in possession and in such event, without limitation and at the expense of Grantor, from time to time, cause to be made all necessary or proper repairs, renewals, replacements, useful alterations, additions, betterments, and improvements to the Property, or any part thereof, and insure and reinsure the same, and lease the Property, or any part thereof, for such times and on such terms as Lender deems desirable, including leases for terms expiring beyond the maturity of the indebtedness secured by the Security Instrument, and modify, amend or renew existing leases, on such terms as Lender deems desirable, and cancel any lease or sublease for any cause or on any ground which would entitle Grantor to cancel the same.

8.4.    Following the occurrence and during the continuance of an Event of Default, if any tenant under a Lease has filed, files or has filed against it any petition under or pursuant to any Debtor Relief Laws, or undertakes or is subject to similar action, Lender shall have, and is hereby assigned by Borrower, all of the rights which would otherwise inure to the benefit of Borrower in such proceedings, including, without limitation, the right to seek "adequate protection" of Borrower's interests, to compel rejection of such Lease, and/or to seek such claims and awards as may be sought or granted in connection with the rejection of such Lease.  Unless otherwise consented to by Lender in writing, Lender's exercise of any of the rights provided herein shall preclude Borrower from the pursuit and benefit thereof without any further action or proceeding of any nature.  Lender, however, shall not be obligated to make timely filings of claims under any Debtor Relief Laws, or to otherwise pursue creditor's rights therein or hereunder.

Should Lender exercise the rights granted herein as specified upon the occurrence and during the continuance of an Event of Default, thereafter Borrower shall make payment of all of Lender's proper charges and expenses, including the just and reasonable compensation for the services of Lender, its attorneys and agents in connection with the operation, management, and control of the Property and the conduct of the business thereof, and such further sums as may be sufficient to indemnify Lender from and against any liability, loss, or damage on account of any matter or thing done in good faith in pursuance of the rights and powers of Lender hereunder.  Lender may, at its option, credit the net amount of income which Lender may receive by virtue of this Assignment and from the Property to any and all amounts due or owing to Lender under the terms and provisions of the Loan Agreement or the other Loan Documents. The balance of such net income shall be released to or upon the order of Grantor.  The manner of the application of such net income and the item which shall be credited, subject to Applicable Law, shall be within the sole discretion of the Lender.

6

**EXHIBIT 30**

9.      Construction.  The acceptance by Lender of this Assignment, with all of the rights, powers, privileges, and authority so created, shall not, prior to entry upon and taking possession of the Property by Lender, be deemed or construed to constitute Lender a mortgagee in possession nor thereafter or in any event to impose any obligation whatsoever upon Lender to appear in or defend any action or proceeding relating to the Leases or the Property, or to take any action hereunder, or to expend any money or incur any expenses, or perform or discharge any obligation, duty or liability under the Leases, or to assume any obligation or responsibility for any security deposits or other deposits delivered to Grantor by any tenant and not assigned and delivered to Lender or render Lender liable in any way for any injury or damage to person or property sustained by any person, firm, or corporation in or about the Property.

10.      No Waiver.  Grantor agrees that neither the collection of rents and the application thereof as provided for herein nor the entry upon and taking of possession of the Property, or any part thereof, by Lender shall cure or waive any Event of Default or waive, modify, or affect any notice of the occurrence of an Event of Default hereunder or under the Loan Agreement or the other Loan Documents, or invalidate any act done pursuant to such notice, and the enforcement of such right or remedy by Lender, once exercised, shall continue for so long as Lender shall elect.  If Lender shall thereafter elect to discontinue the exercise of any such right or remedy, the same or any other right or remedy hereunder may be reasserted at any time and from time to time upon the occurrence of any subsequent Event of Default.

11.      Remedies Cumulative.  The rights and remedies of Lender hereunder are cumulative and not in lieu of, but are in addition to, any rights or remedies which Lender shall have under the Loan Agreement, the other Loan Documents, or at law or in equity, and said rights and remedies may be exercised by Lender either prior to, simultaneously with, or subsequent to, any action taken hereunder.  Said rights and remedies of Lender may be exercised from time to time and as often as such exercise is deemed expedient by Lender in its absolute discretion, and the failure of Lender to avail itself of any of the terms, provisions, and conditions of this Assignment or any rights granted herein for any period of time, at any time or times, shall not be construed or deemed to be a waiver of any rights under the terms hereof.

12.      Effectiveness.  The right of Lender to collect and receive the rents assigned hereunder or to take possession of the Property, or to exercise any of the rights or powers herein granted to Lender shall, to the extent not prohibited by Applicable Law, also extend to the period from and after the filing of any suit to foreclose the lien of the Security Instrument, including any period allowed by Applicable Law for the redemption of the Property after any foreclosure sale.

13.      Indemnity.  Grantor agrees to indemnify and hold Lender harmless of and from and against any and all liability, loss, damage, or expense, which Lender may or might incur under or by reason of this Assignment, and of and from any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligation or undertaking on the part of Lender to perform or discharge any of the terms, covenants or agreements contained in the Leases.  Should Lender incur any such liability, loss, or damage under or by reason of this Assignment, or in the defense against any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees, together with interest thereon at the rate provided for in the Note subsequent to the occurrence and during the continuance of an Event of Default, shall be secured by this Assignment and by the Security Instrument, and Grantor shall reimburse Lender therefor promptly upon demand, and upon failure of Grantor so to do, Lender may declare all sums secured hereby immediately due and payable.

14.      Notice.  Any notice, demand or other communication hereunder shall be given in the manner provided for in the Loan Agreement.

15.      Governing Law.  EXCEPT AS SPECIFICALLY SET FORTH HEREIN, THIS ASSIGNMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE

7

**EXHIBIT 30**

**EXHIBIT 30**

LAWS OF THE STATE OF FLORIDA, EXCEPT TO THE EXTENT (A) OF PROCEDURAL AND SUBSTANTIVE MATTERS RELATING ONLY TO THE CREATION, PERFECTION AND/OR ENFORCEMENT OF THE LIENS, ASSIGNMENTS AND/OR SECURITY INTERESTS CREATED HEREIN AND TO THE ENFORCEMENT OF LENDER'S RIGHTS AND REMEDIES AGAINST THE PROPERTY, WHICH MATTERS SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEVADA; AND (B) THAT THE LAWS OF THE UNITED STATES OF AMERICA AND ANY RULES, REGULATIONS, OR ORDERS ISSUED OR PROMULGATED THEREUNDER APPLICABLE TO THE AFFAIRS AND TRANSACTIONS OF LENDER OTHERWISE PREEMPT FLORIDA OR NEVADA LAW, IN WHICH EVENT SUCH FEDERAL LAW SHALL CONTROL. IN PARTICULAR, THE PARTIES HERETO AGREE THAT ALL ISSUES RELATING TO USURY, LIMITATIONS ON INTEREST, LOAN CHARGES AND COMMITMENT FEES PAYABLE UNDER THE LOAN DOCUMENTS SHALL BE GOVERNED BY FLORIDA LAW.

16.    Assignment.  This Assignment shall be assignable by Lender and all representations, warranties, obligations, covenants, powers, and rights herein contained shall be binding upon, and inure to the benefit of, Grantor and Lender and their respective successors and assigns.

17.    Release.  On the payment in full of all indebtedness hereby secured, as evidenced by the recording of a full release of the Security Instrument and without the recording of another security instrument in favor of the Lender affecting the Property, this Assignment will become and be void and of no further effect.

18.    Counterparts.  This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, and it shall not be necessary in making proof of this Agreement or the terms thereof to produce or account for more than one such counterpart.

19.    Joint and Several: Construction.  The word Grantor, as used herein, shall designate one or more Grantors.  In the event that more than one Grantor is a party to these presents, the liability of each Grantor shall be joint and several, each Grantor to be fully liable hereunder irrespective of the death, incapacity, or other disqualification of any other Grantor or Grantors and Lender may proceed against one or less than all of the Grantors, such proceeding not being deemed an election, and Lender may, at any time thereafter in the event full payment has not been realized, proceed against the other Grantor or Grantors.

20.    Nevada Law Provisions.  This Assignment is subject to the Uniform Assignment of Rents Act (the "Act") codified as N.R.S. Chapter 107A, as amended or recodified from time to time, and, in the event of any conflict or inconsistency between the provisions of this Assignment and the provisions of the Act, the provisions of the Act shall control. This Section 20 shall not be deemed to invalidate the enforceability the Act.

*Signature Page Follows*

8

**EXHIBIT 30**

IN WITNESS WHEREOF, Grantor has caused these presents to be duly executed as of the date first above written.

GRANTOR/BORROWER:

MAGIC TRIC I, LLC, an Indiana limited liability company

By: Magic Tric I Member, LLC, an Indiana limited liability company, its Sole Member

By: _____
Christopher L. Seger, Manager

STATE OF INDIANA        }
                        } SS.
COUNTY OF MARION        }

This instrument was acknowledged before me on February 2 4, 2025, by Christopher L. Seger, the Manager of Magic Tric I Member, LLC, an Indiana limited liability company, the Sole Member of **MAGIC TRIC I, LLC**, an Indiana limited liability company (the "Company"), on behalf of the Company and that this instrument was signed by him in the name of the Company for the purposes and consideration therein expressed.

Signature: _____
Printed Name: Michael B. Davis
Notary Public, State of Indiana

MY COUNTY OF RESIDENCE: Marion _____

MY COMMISSION EXPIRES: April 9, 2031 _____

> MICHAEL B DAVIS
> Notary Public - Seal
> Marion County - State of Indiana
> Commission Number NP0666488
> My Commission Expires Apr 9, 2031

[Notary Seal]

Assignment of Leases, Subleases and Rents
Signature Page

**EXHIBIT 30**

**EXHIBIT 30**

EXHIBIT A

Legal Description

All that certain real property situated in the County of Storey, State of Nevada, described as follows:

All that certain parcel situate within a portion of the Northeast One-Quarter (NE1/4) of Section Two (2), Township Nineteen (19) North, Range Twenty-Two-(22) East, Mount, Diablo Meridian, Storey County, Nevada, being a portion of Parcel 2018-4, as shown on Record of Survey Map, file No. 127128, in the Official Records of Storey County, Nevada, a portion of Parcel 2008-26, as shown on Record of Survey Map, File No. 109143, in the Official Records of Storey County, Nevada, and a portion of Parcel 2023-14, as shown on Record of Survey Map File No. 138372, in the Official Records of Storey County, Nevada, said parcel being more particularly described as follows;

Beginning at the Northeast corner of said Parcel 2023-14, from which the Northeast corner of said Section 2, bears North 56°36'47" East, 1209.45 feet;

Thence along the Easterly line of said Parcel 2023-14, and the prolongation thereof, South 00°01'57" East, 1679.18 feet to the Southerly line of Parcel 2018-4;

Thence along said Southerly line, South 59°05'24" West, 628.40 feet;

Thence leaving said Southerly line, South 00°01'57" East 285.54 feet tot the Southerly line of said Parcel 2008-26, said point being on the Northerly right-of-way line of Denmark Drive per Document No. 107607, in the Official Records of Storey County, Nevada;

Thence along said Southerly parcel line, being coincident with said Northerly right-pf-way line, South 82°38'48" West, 164.71 feet to the Southwest corner of said Parcel 2008-26;

Thence along the Westerly line of said Parcel 2008-26 and the prolongation thereof, being on the Southerly line of said Parcel 2018-4, North 14°47'30" West, 598.89 feet;

Thence continuing along said Southerly line, North 76°36'34" West, 309.56 feet to the Southwest corner of said Parcel 2018-4;
Thence along the Westerly line of said Parcel 2018-4, the following nine (9) courses and distances:

1) North 27°52'22" East, 69.99 feet;

2) North 36°22'33" East, 133.70 feet, to the beginning of a curve to the left;

3) 121.66 feet along the arc of a 170.00 foot radius curve, through a central angle of 41°00'19" to a point of a reverse curvature;

4) 483.67 feet along the arc of a 1980.00 foot radius curve to the right, through a central angle of 13°59'46" to a point of reverse curvature;

5) 402.79 feet along the arc of a 5020.00 foot radius curve to the left, through a central angel of 04°35'50";

6) North 04°46'09° East, 330.06 feet to the beginning of a curve to the right;

7) 85.11 feet along the arc of a 1020.00 foot radius curve, through a central angle of 04°46"51;

Exhibit A

**EXHIBIT 30**



8) North 00°00'42" West 115.02 feet to the beginning of a curve to the left and;

9) 77.22 feet along the arc of a 170.00 foot radius curve, through a central angle of 26D01'34" to the Northwest corner of said Parcel 2018-4;

Thence along the Northerly line of said Parcel 2019-4, South 46°33'45" East, 162.70 feet to the Northwest corner of said Parcel 2023-14;

Thence along the Northerly line of said Parcel 2023-14, North 89°58'03" East, 809.53 feet to the Point of Beginning.

Reference is hereby made of record to Parcel 2023-16, of the Record of Survey Map recorded October 3, 2023, as Document No. 138375, of Official Records.

The above legal description appeared previously in that certain Record of Survey Deed recorded October 3, 2023, as Document No. 138374, of Official Records, pursuant to NRS Section 6.111.312.

Exhibit A

**EXHIBIT 30**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Schott & Hamilton, LLC
1610 Des Peres Road, Suite 385
St. Louis, Missouri 63131

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

Recorded Electronically
ID 11076?
County Storey
Date 3/3/25 Time 1:59

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| MAGIC TRIC I, LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 1351 Roosevelt Avenue, Suite 100 | Indianapolis | IN  46202 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| LNL MM 01, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 1450 Brickell Avenue, Suite 2600 | Miami | FL  33131 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All collateral described on Exhibit A attached hereto.

5. Check only if applicable and check only one box:   Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
File with Storey County, Nevada Recorder's Office

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

## EXHIBIT 30

**EXHIBIT 30**

**Doc #: 140767**

03/03/2025 01:59 PM  Page: 1 of 8

**OFFICIAL RECORD**

Requested By: STEWART TITLE COMPANY

**Storey County, NV**
**Dru McPherson, Recorder**

Fee: $90.00  RPTT: $0.00
Recorded By: dmcpherson

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Schott & Hamilton, LLC
1610 Des Peres Road, Suite 385
St. Louis, Missouri 63131

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of Item 1 blank, check here ☐ and provide the Individual Debtor information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| MAGIC TRIC I, LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1351 Roosevelt Avenue, Suite 100 | Indianapolis | IN | 46202 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of Item 2 blank, check here ☐ and provide the Individual Debtor information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| LNL MM 01, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1450 Brickell Avenue, Suite 2600 | Miami | FL | 33131 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All collateral described on Exhibit A attached hereto.

5. Check only if applicable and check only one box:  Collateral is ☐ held in a Trust (see UCC1Ad, Item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:  ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:  ☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
File with Storey County, Nevada Recorder's Office

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)

**EXHIBIT 30**

**EXHIBIT 30**

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

| 9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐ | |
|---|---|
| 9a. ORGANIZATION'S NAME **MAGIC TRIC I, LLC** | |
| OR 9b. INDIVIDUAL'S SURNAME | |
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 10b. INDIVIDUAL'S SURNAME | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME <u>or</u>   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only <u>one</u> name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

| 13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: **Please see Schedule 1 attached.** |

17. MISCELLANEOUS:

**EXHIBIT 30**



## Exhibit A

**DEBTOR:**            MAGIC TRIC I, LLC

**SECURED PARTY:**     LNL MM 01, LLC

All estate, right, title and interest which Debtor now has or may later acquire in and to the following property together with a security interest in and a lien on the following described property (all or any part of such property, or any interest in all or any part of it, as the context may require, the "Property"):

     i.    all right, title and interest of Debtor, whether vested or contingent and whether now owned or hereafter acquired, in and to (1) that certain piece or parcel of land located in Storey County, Nevada (the "Land"), which Land is more particularly described on **Schedule 1** attached hereto and made a part hereof, (2) all buildings, structures and other improvements now or hereafter situated on the Land (collectively, the "Buildings", each a "Building"), (3) all fixtures now or hereafter situated in or on, or attached to, the Land or any of the Buildings (collectively, the "Fixtures"), and (4) all trees, shrubbery, crops and other plantings now or hereafter grown on the Land; and

     ii.    all right, title and interest of Debtor (as owner, chattel lessee or otherwise), whether vested or contingent and whether now owned or hereafter acquired, in and to (1) all right, title and interest in and to any building materials, supplies and other property now or hereafter stored at or delivered to the Land or any other location for installation in or on the Land or any of the Buildings, (2) all right, title and interest in and to any equipment, machinery, appliances, furniture, furnishings, fittings, apparatus, supplies and other tangible personal property now or hereafter situated in or on, or attached to, the Land or any of the Buildings (all of the property described in this clause (2) or in the immediately preceding clause (1) being collectively referred to as the "Equipment") (the Buildings, the Fixtures and the Equipment being collectively referred to herein as the "Improvements"), (3) all right, title and interest in and to any oil, gas and other minerals now or hereafter situated in, on, under or about, or produced from or allocated to, the Land, and (4) all right, title and interest in and to any plans, specifications, drawings, books, records and similar items now or hereafter relating to the Land, the Improvements or any business or other operations now or hereafter conducted therein or thereon; and

     iii.    all right, title and interest of Debtor, whether vested or contingent and whether now owned or hereafter acquired, in and to all streets, roads, sidewalks, alleys, ways, passages, public places, vaults, water courses, levees, ditches, wells, reservoirs, strips and gores adjoining or otherwise providing access to, or used or intended to be used in connection with, the Land, any of the Improvements or any other part of the Property, and the land lying in the bed thereof; and

     iv.    all right, title and interest of Debtor, whether vested or contingent and whether now owned or hereafter acquired, in and to all easements, rights-of-way and other rights of use or passage (whether public or private), estates, interests, benefits, powers, rights (including

**EXHIBIT 30**

EXHIBIT 30

development, declarant, lateral support, drainage, slope, riparian, littoral, sewer, water, air, oil, gas, mineral and subsurface rights), privileges, claims, franchises, licenses, profits, tenements, hereditaments, reversions, remainders and appurtenances now or hereafter belonging, relating, appertaining or allocated to the Land, the Improvements or any other part of the Property; and

v.    all right, title and interest of Debtor, in and to, and all rights, powers, privileges and benefits of Debtor in, to and under:

a)    all leases, subleases, lettings, sublettings, concessions, licenses, occupancy and use agreements and similar arrangements, whether oral or written, now or hereafter relating to all or any part of the Land, any of the Improvements or any other part of the Property (collectively, the "Leases") (all present and future lessees, tenants, concessionaires, licensees, occupants and other users of all or any part of the Property under any of the Leases being collectively referred to herein as the "Tenants"), including any subleases under any of the Leases, any tenancies following attornment and any use and occupancy arrangements created pursuant to Section 365 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (as amended from time to time, the "Bankruptcy Code"), or pursuant to any other provision of the Bankruptcy Code or any other present or future law relating to bankruptcy, insolvency, reorganization, arrangement, composition, readjustment, liquidation, dissolution, conservatorship, receivership or similar relief for debtors (the Bankruptcy Code and each such other law being sometimes referred to in this herein as an "Insolvency Law"); and

b)    any and all presently effective and future guaranties and other surety arrangements of, for or otherwise relating to any of the Leases (collectively, the "Lease Guaranties") (all present and future guarantors and other sureties under any of the Lease Guaranties being collectively referred to herein as the "Lease Guarantors"); and

c)    leases, licenses, easements and/or other rights in or to and/or agreements relating to any off-site parking necessary, required or desirable in connection with Leases or for use of the Property.

vi.    all right, title and interest of Debtor in and to, and all rights, powers, privileges and benefits of Debtor with respect to, any and all present and future security for, under or otherwise relating to any of the Leases or any of the Lease Guaranties, whether arising by statute, by agreement or otherwise (collectively, the "Security"), including property of any Tenant or any Lease Guarantor and cash deposits, advance rentals and deposits and payments of a similar nature, together with all rights of Debtor and any other person claiming under Debtor to collect, hold, return and retain the Security; provided, however, that Debtor shall be permitted, and is hereby granted a revocable license, until the occurrence of any Event of Default (as hereinafter defined), to collect, hold, return and retain the Security, but only in accordance with applicable laws and agreements (subject, however, to the provisions of any lockbox, escrow, rental collection, cash management, direct pay or similar agreements relating to the Security now or hereafter in effect), which permission and license shall automatically and immediately terminate, without notice to Debtor and without the necessity of any other action by any person, upon the occurrence of any Event of Default; and

**EXHIBIT 30**

EXHIBIT 30

vii.    all right, title and interest of Debtor, whether vested or contingent and whether now owned or hereafter acquired, in and to all rents, royalties, issues, profits, revenues, income and other money and benefits (including non-cash consideration and "*Rents*" as defined in Uniform Commercial Code in effect in the State of Nevada) of and from the Land, any of the Improvements, any other part of the Property or any business or other operations now or hereafter conducted therein or thereon by or on behalf of or for the benefit of Debtor, whether now or hereafter payable or accruing and whether now or hereafter deliverable (collectively, the "Rents"), including (1) all money and other consideration from time to time paid, payable or accruing, or from time to time delivered or deliverable, to or for the benefit of Debtor, or to which Debtor otherwise may be entitled, under or in connection with any of the Leases or any of the Lease Guaranties (including cancellation or termination payments and damages payable in connection with any default), and (2) all money and other consideration from time to time paid, payable or accruing, or from time to time delivered or deliverable, by or on behalf of any other licensees, invitees, guests, customers, occupants or other users of any such Property, together with all rights of Debtor and any other person claiming under Debtor to collect and use the Rents; provided, however, that Debtor shall be permitted, and is hereby granted a revocable license, until the occurrence of any Event of Default, to collect the Rents as, but not before, they become due and payable (subject, however, to the provisions of any lockbox, escrow, rental collection, cash management, direct pay or similar agreements relating to the Rents now or hereafter in effect), which permission and license shall automatically and immediately terminate, without notice to Debtor and without the necessity of any other action by any person, upon the occurrence of any Event of Default; and

viii.    all right, title and interest of Debtor (whether as seller, purchaser or otherwise) in and to (1) all presently effective and future agreements for purchase and sale or other transfer of all or any part of the Property, (2) all down payments, earnest money deposits and other money or security paid or payable or deposited or to be deposited in connection with any such agreement, (3) all proceeds of any sale, assignment or other disposition of all or any part of the Property or any rights thereto or any interest therein, and (4) all proceeds of any other conversion of any such Property, rights or interest into cash or any liquidated claim; and

ix.    all right, title and interest of Debtor in and to (1) all judgments, settlements, claims, awards, insurance proceeds and other proceeds and compensation, and any interest thereon (collectively "Compensation"), made or payable at any time in connection with any fire, casualty or other damage or loss to all or any part of the Property, or in connection with any condemnation or eminent domain proceeding relating to all or any part of the Property (any such proceeding being referred to herein as a "Condemnation Proceeding") or any damage to or taking of all or any part of the Property or any rights thereto or any interest therein in connection with any condemnation or exercise of the power of eminent domain (or any conveyance in lieu of or under threat of any such taking), including any Compensation for change of grade of streets or any other injury to or decrease in value (any such damage, taking or conveyance being referred to herein as a "Taking"), (2) all refunds and rebates of, or with respect to, any insurance premiums, impositions or other utility charges relating to the Property, and any interest thereon, and (3) all unearned or prepaid insurance premiums, impositions and other utility charges, any deposits with respect thereto and any interest thereon; and

**EXHIBIT 30**

EXHIBIT 30
PageID #: 1348

   x.  all right, title and interest of Debtor, whether vested or contingent and whether now owned or hereafter acquired, in and to all accounts, accounts receivable, books and/or records (whatever form) option rights, contract rights, general intangibles, permits, licenses, approvals, bonuses, actions, rights in action and other intangible personal property now or hereafter arising from or relating to all or any part of the Property or any business or other operations now or hereafter conducted therein or thereon by or on behalf of or for the benefit of Debtor (including all rights of Debtor in and to any and all contracts and bonds relating to operation, maintenance, construction, renovation, restoration, repair, management or security of all or any part of the Property or any such business or other operations); and

   xi.  all right, title and interest of Debtor, whether vested or contingent and whether now owned or hereafter acquired, in and to all proceeds, products, extensions, additions, improvements, betterments, renewals, substitutions, replacements, accessions, accretions and relictions of or to all or any part of the Property or any interest therein; and

   xii.  all further or greater estate, right, title, interest, claim and demand of Debtor, of whatever character (whether vested or contingent and whether now owned or hereafter acquired), in and to any of the Property described above and any rights or interests appurtenant thereto.

**EXHIBIT 30**

## Schedule 1

### Legal Description

All that certain real property situated in the County of Storey, State of Nevada, described as follows:

All that certain parcel situate within a portion of the Northeast One-Quarter (NE1/4) of Section Two (2), Township Nineteen (19) North, Range Twenty-Two-(22) East, Mount, Diablo Meridian, Storey County, Nevada, being a portion of Parcel 2018-4, as shown on Record of Survey Map, file No. 127128, in the Official Records of Storey County, Nevada, a portion of Parcel 2008-26, as shown on Record of Survey Map, File No. 109143, in the Official Records of Storey County, Nevada, and a portion of Parcel 2023-14, as shown on Record of Survey Map File No. 138372, in the Official Records of Storey County, Nevada, said parcel being more particularly described as follows;

Beginning at the Northeast corner of said Parcel 2023-14, from which the Northeast corner of said Section 2, bears North 56°36'47" East, 1209.45 feet;

Thence along the Easterly line of said Parcel 2023-14, and the prolongation thereof, South 00°01'57" East, 1679.18 feet to the Southerly line of Parcel 2018-4;

Thence along said Southerly line, South 59°05'24" West, 628.40 feet;

Thence leaving said Southerly line, South 00°01'57" East 285.54 feet tot the Southerly line of said Parcel 2008-26, said point being on the Northerly right-of-way line of Denmark Drive per Document No. 107607, in the Official Records of Storey County, Nevada;

Thence along said Southerly parcel line, being coincident with said Northerly right-pf-way line, South 82°38'48" West, 164.71 feet to the Southwest corner of said Parcel 2008-26;

Thence along the Westerly line of said Parcel 2008-26 and the prolongation thereof, being on the Southerly line of said Parcel 2018-4, North 14°47'30" West, 598.89 feet;

Thence continuing along said Southerly line, North 76°36'34" West, 309.56 feet to the Southwest corner of said Parcel 2018-4;
Thence along the Westerly line of said Parcel 2018-4, the following nine (9) courses and distances:

1) North 27°52'22" East, 69.99 feet;

2) North 36°22'33" East, 133.70 feet, to the beginning of a curve to the left;

3) 121.66 feet along the arc of a 170.00 foot radius curve, through a central angle of 41°00'19" to a point of a reverse curvature;

4) 483.67 feet along the arc of a 1980.00 foot radius curve to the right, through a central angle of 13°59'46" to a point of reverse curvature;

**EXHIBIT 30**

EXHIBIT 30

5) 402.79 feet along the arc of a 5020.00 foot radius curve to the left, through a central angel of 04°35'50";

6) North 04°46'09° East, 330.06 feet to the beginning of a curve to the right;

7) 85.11 feet along the arc of a 1020.00 foot radius curve, through a central angle of 04°46"51;

8) North 00°00'42" West 115.02 feet to the beginning of a curve to the left and;

9) 77.22 feet along the arc of a 170.00 foot radius curve, through a central angle of 26D01'34" to the Northwest corner of said Parcel 2018-4;

Thence along the Northerly line of said Parcel 2019-4, South 46°33'45" East, 162.70 feet to the Northwest corner of said Parcel 2023-14;

Thence along the Northerly line of said Parcel 2023-14, North 89°58'03" East, 809.53 feet to the Point of Beginning.

Reference is hereby made of record to Parcel 2023-16, of the Record of Survey Map recorded October 3, 2023, as Document No. 138375, of Official Records.

The above legal description appeared previously in that certain Record of Survey Deed recorded October 3, 2023, as Document No. 138374, of Official Records, pursuant to NRS Section 6.111.312.

**EXHIBIT 30**

EXHIBIT 30

| American Land Title Association | ESTIMATED ALTA Settlement Statement - Combined |
|---|---|
| | Adopted 05-01-2015 |

File No./Escrow No.:  2457956
Officer/Escrow Officer: Tami Haworth

**Stewart Title Company**
**5390 Kietzke Ln., Suite 101**
**Reno, NV  89511**
**(775) 332-7100**

Property Address:   VACANT PARCEL IN STOREY COUNTY
MCCARRAN, NV  89434 (STOREY)
(005-101-71)

Borrower:   MAGIC TRIC I, LLC, AN INDIANA LIMITED LIABILITY COMPANY
1351 Roosevelt Ave.
Suite 100
Indianapolis, IN 46202

Seller:   EMERALD CITY EMPIRE, LLC, A NEVADA LIMITED LIABILITY COMPANY
C/O Desert Oasis Mgmt. Inc
3275 S. Jones Blvd., Suite 104
Las Vegas, NV 89146

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR RANDEL W. ALEMAN, TRUSTEE OF THE
RANDEL W. ALEMAN SEPARATE PROPERTY TRUST
C/O Desert Oasis Mgmt. Inc.
3275 S. Jones Blvd., Suite 104
Las Vegas, NV 89146

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR SHELDON W. PAUL, TRUSTEE OF THE PAUL
FAMILY TRUST
8671 Golden Canyon Rd.
Las Vegas, NV 89128

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR JAMES C. MICHELS AND RONDA L. MICHELS,
TRUSTEES OF THE MICHELS FAMILY TRUST ORIGINALLY DATED JANUARY 21, 2014, AS
AMENDED

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR TODD S. LARKIN, TRUSTEE OF THE TODD
AND LAURA LARKIN FAMILY TRUST

Settlement Date:   3/3/2025

| Seller | | Description | Borrower | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | **Deposits, Credits, Debits** | | |
| | $11,426,659.20 | Contract sales price | $11,426,659.20 | |
| | | Independent Consideration  (POC $100.00 by Buyer) | | |
| | | Initial Deposit from Magic TRIC I, LLC, an Indiana limited liability company | | $200,000.00 |
| | | Additional Deposit from Magic TRIC I, LLC, an Indiana limited liability company | | $100,000.00 |
| | | Additional Earnest Money from (DISABLED) Pure Development Inc. | | $25,000.00 |

File # 2457956

Page 1 of 4

Printed on 3/3/2025 at 1:32 PM

**EXHIBIT 30**

**EXHIBIT 30**
PageID #: 1302

| | | | | |
|---|---|---|---|---|
| | | Preferred Equity Investment from United Farm Family Insurance Company | | $2,600,000.00 |
| | | Borrower Deposit from LNL MM 01, LLC a Delaware Limited Liability Company | | $100,000.00 |
| | | Partial Closing Funds from Magic TRIC I, LLC, an Indiana limited liability company | | $300,000.00 |
| | | **Prorations** | | |
| $71.83 | | Assessments 1/1/2025 to 3/3/2025 @ $417.09/Year | | $71.83 |
| | $3,554.56 | County taxes 3/3/2025 to 7/1/2025 @ $10,844.43/Year | $3,554.56 | |
| | | **Commissions** | | |
| $342,799.78 | | $342,799.78 to Encore Commercial, Inc | | |
| $228,533.18 | | $228,533.18 to Street Commercial Real Estate | | |
| | | **New Loans** | | |
| | | Principal amount of new loan | | $68,771,429.00 |
| | | Loan Fee to (NA) LNL MM 01, LLC, a Delaware limited liability company | $1,031,571.00 | |
| | | Appraisal Fee to (NA) LNL MM 01, LLC, a Delaware limited liability company | $8,000.00 | |
| | | Construction Holdback to (NA) LNL MM 01, LLC, a Delaware limited liability company | $52,193,258.69 | |
| | | Servicing Reserve to (NA) LNL MM 01, LLC, a Delaware limited liability company | $60,196.00 | |
| | | Environmental Review to (NA) LNL MM 01, LLC, a Delaware limited liability company | $5,000.00 | |
| | | High Level Cost Review to (NA) LNL MM 01, LLC, a Delaware limited liability company | $3,195.00 | |
| | | Insurance Review to LNL MM 01, LLC a Delaware Limited Liability Company | $3,500.00 | |
| | | Interest Reserve to (NA) LNL MM 01, LLC, a Delaware limited liability company | $6,381,190.00 | |
| | | **Title Charges** | | |
| | | Lender's coverage $68,771,429.00 Premium $51,578.57 to Stewart Title Company | $51,578.57 | |
| $10,284.00 | | Owner's coverage $11,426,659.20 Premium $12,569.70 to Stewart Title Company | $2,285.70 | |
| | | ALTA 17-06 Access and Entry 6-17-06 (Price is dependant upon risk) Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 17.2-06 Utility Access 10-16-08 (Price is dependant upon risk) Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 18-06 Single Tax Parcel 6-17-06 Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 24-06 Doing Business 10-16-08 (Price is dependant upon risk) Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 25-06 Same as Survey 10-16-08 (Price is dependant upon risk) Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 26 Subdivision 7-1-21 (Price is dependant upon risk) Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 27 Usury 7-1-21 (Price is dependant upon risk) Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 3.2-06 Zoning-Land Under Development 4-2-12 Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 32 Construction Loan 7-1-21 Lender's Endorsement(s) to Stewart Title Company | $5,157.86 | |
| | | ALTA 33-06 Disbursement 1 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 8.2-06 Commercial Environmental Protections Lien 10-16-08 Lender's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 9.10-06 Restrictions, Encroachments, Minerals-Current Violations-Loan Polic Lender's Endorsement(s) to Stewart Title Company | | |
| | | STG Standard Arbitration Lender's Endorsement(s) to Stewart Title Company | | |
| | | Lender Endorsement Bundle Rate Lender's Endorsement(s) to Stewart Title Company | $10,315.71 | |
| | | Owner's Endorsement Bundle Rate Lender's Endorsement(s) to Stewart Title Company | $1,714.00 | |

File # 2457956
Printed on 3/3/2025 at 1:32 PM

**EXHIBIT 30**

| | | | | |
|---|---|---|---|---|
| | | ALTA 33-06 Disbursement 10 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 11 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 12 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 2 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 3 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 4 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 5 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 6 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 7 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 8 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | ALTA 33-06 Disbursement 9 2-3-11 Lender's Endorsement(s) to Stewart Title Company | $100.00 | |
| | | STG Standard Arbitration Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 17-06 Access and Entry 6-17-06 (Price is dependant upon risk) Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 18-06 Single Tax Parcel 6-17-06 Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 25-06 Same as Survey 10-16-08 (Price is dependant upon risk) Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 17.2-06 Utility Access 10-16-08 (Price is dependant upon risk) Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 9.1-06 Covenants, Conditions, Restrictions-Unimproved Land-Owner's Policy 4 Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 26 Subdivision 7-1-21 (Price is dependant upon risk) Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 3 Zoning 7-1-21 Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 8.2-06 Commercial Environmental Protections Lien 10-16-08 Owner's Endorsement(s) to Stewart Title Company | | |
| | | ALTA 9.9-06 Private Rights-Owner's Policy 4-2-13 Owner's Endorsement(s) to Stewart Title Company | | |
| $380.00 | | Document preparation to Stewart Title Company | | |
| $165.00 | | Notary fees to Signature Closers Direct | | |
| $3,861.00 | | Settlement or closing fee to Stewart Title Company | $3,861.00 | |
| $7.20 | | e Record Fee to Stewart Title Company | $14.40 | |
| $1,000.00 | | 1031 Exchange Tie In Fee ($250x4) to Stewart Title Company | | |
| | | **Government Recording and Transfer Charges** | | |
| $44,565.30 | | County tax/stamps: Deed $44,565.30 | | |
| $74.00 | | Recording fees: Deed $222.00 | $148.00 | |
| | | **Additional Settlement Charges** | | |
| | | Invoice: 1488 to Pure Development | $10,170.00 | |
| | | Professional Services to Fennemore Craig | $5,251.00 | |
| | | Attorney's Fee - FLORIDA LOCAL COUNSEL to (NA) Jorge M. Vigil, P.A. | $3,750.00 | |
| | | Invoice: 1489 Reimbursement - Legal Invoice to Pure Development | $4,244.00 | |
| | | Indiana UCC Filling Fee to Greater Illinois Title Company | $150.00 | |
| | | Attorney's Fee to Dentons Bingham Greenebaum | $14,596.50 | |
| | | Annual Association Assessment & Transfer Fee to Tri Owners Association | $467.09 | |
| | | Attorney's Fee to Cohen Garelick & Glazier, PC | $37,500.00 | |
| | | Invoice 112240 to Advanced Corp Agent Services | $1,047.00 | |
| | | Invoice 112353 to Advanced Corp Agent Services | $86.00 | |

File # 2457956

Page 3 of 4

Printed on 3/3/2025 at 1:32 PM

**EXHIBIT 30**

EXHIBIT 30

| Seller Debit | Seller Credit | Description | Borrower Debit | Borrower Credit |
|---|---|---|---|---|
| | | Contractors Fees Account #: 8113912 to ARCO Design/Build Industrial New | $318,498.72 | |
| | | Design Work - Invoice #: 1486 to (NA) Pure Development | $332,160.00 | |
| | | Geotechnical Applicability - Invoice #: 1487 to (NA) Pure Development | $7,200.00 | |
| | | Preferred Equity Investment Fee - Invoice TESLA WAREHOUSE to American Mortgage & Realty Corp. | $104,000.00 | |
| $350.00 | | Account Processing Fee APN: 005-101-71 to Associa Sierra North | | |
| $250.00 | | Estoppel Certificate to Fielder Law, Ltd | $250.00 | |
| | | Lender over funding to LNL MM 01, LLC a Delaware Limited Liability Company  (POC $495,676.50 by LNL MM 01, LLC a Delaware Limited Liabil) | | |
| | | Lender Legal Fees to Schott & Hamilton LLC | $55,000.00 | |
| $1,727,639.60 | | CASH PROCEEDS FBO Randel W. Aleman, Trustee of the Randel W. Aleman Separate Pro to Allied 1031 Exchange | | |
| $136,051.62 | | CASH PROCEEDS FBO Sheldon W. Paul, Trustee of the Paul Family Trust to Allied 1031 Exchange | | |
| $201,917.88 | | CASH PROCEEDS FBO The Michels Family Trust to Allied 1031 Exchange | | |
| $321,772.87 | | CASH PROCEEDS FBO Todd S. Larkin and Laura A. Larkin, Trustees of the Todd and L to Allied 1031 Exchange | | |
| $125.00 | | PRESTART INSPECTION to BCM Services | $125.00 | |

| Seller | | | Borrower | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| $3,019,848.26 | $11,430,213.76 | Subtotals | $72,086,895.00 | $72,096,500.83 |
| | | Due To Borrower | $9,605.83 | |
| $8,410,365.50 | | Due To Seller | | |
| $11,430,213.76 | $11,430,213.76 | Totals | $72,096,500.83 | $72,096,500.83 |

Page 4 of 4

File # 2457956

Printed on 3/3/2025 at 1:32 PM

EXHIBIT 30

EXHIBIT 30
PageID #: 1395

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize Stewart Title Company to cause the funds to be disbursed in accordance with this statement.

BORROWER(S)

Magic TRIC I, LLC, an Indiana
limited liability company

By: Magic TRIC I Member, LLC
an Indiana limited liability company
Its: Sole Member

By:_____
Christopher L. Seger, Manager

SELLER(S)

Emerald City Empire, LLC, a
Nevada limited liability company

By: Desert Oasis Management
Inc. a Nevada corporation
Its: Manager

By:_____
Randel W. Aleman, President

Allied 1031 Exchange

By:_____
Name:_____
Its:_____

THIS DOCUMENT IS EXECUTED IN COUNTERPART

READ AND APPROVED BY:
The Randel W. Aleman
Separate Property Trust

By:_____
Randel W. Aleman, Trustee

**EXHIBIT 30**

## Acknowledgement

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize Stewart Title Company to cause the funds to be disbursed in accordance with this statement.

**BORROWER(S)**

Magic TRIC I, LLC, an Indiana
limited liability company

By: Magic TRIC I Member, LLC
an Indiana limited liability company
Its: Sole Member

By: _____
Christopher L. Seger, Manager

THIS DOCUMENT IS EXECUTED IN COUNTERPART

**SELLER(S)**

Emerald City Empire, LLC, a
Nevada limited liability company

By: Desert Oasis Management
Inc. a Nevada corporation
Its: Manager

By: _____
Randel W. Aleman, President

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR RANDEL W. ALEMAN, TRUSTEE OF THE RANDEL W. ALEMAN SEPARATE PROPERTY TRUST

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR SHELDON W. PAUL, TRUSTEE OF THE PAUL FAMILY TRUST

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR JAMES C. MICHELS AND RONDA L. MICHELS, TRUSTEES OF THE MICHELS FAMILY TRUST ORIGINALLY DATED JANUARY 21, 2014, AS AMENDED

Allied 1031 Exchange

By: _____    This document is executed subject to
Name: GENEVA MARTINEZ           written approval by the Exchangor.
Its: MANAGER                    Exchangor's signature on this document
                                or a counterpart will be deemed approval.
READ AND APPROVED BY EXCHANGOR:    ALLIED 1031 EXCHANGE

                                BY: _____
The Randel W. Aleman
Separate Property Trust

By: _____
Randel W. Aleman, Trustee

The Paul Family Trust
THIS DOCUMENT IS EXECUTED IN COUNTERPART
By: _____
Sheldon W. Paul, Trustee

The Michels Family Trust originally dated
January 21, 2014, as amended
THIS DOCUMENT IS EXECUTED IN COUNTERPART
By: _____
James C. Michels, Trustee

THIS DOCUMENT IS EXECUTED IN COUNTERPART
By: _____
Ronda L. Michels, Trustee

The Todd and Laura Larkin Family Trust
THIS DOCUMENT IS EXECUTED IN COUNTERPART
By: _____
Todd S. Larkin, Trustee

By: _____
Laura A. Larkin, Trustee

**EXHIBIT 30**

**EXHIBIT 30**

## Acknowledgement

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize Stewart Title Company to cause the funds to be disbursed in accordance with this statement.

**BORROWER(S)**

Magic TRIC I, LLC, an Indiana
limited liability company

By:  Magic TRIC I Member, LLC
an Indiana limited liability company
Its:  Sole Member

By: _____
Christopher L. Seger, Manager

**SELLER(S)**

Emerald City Empire, LLC, a
Nevada limited liability company

By:  Desert Oasis Management
Inc. a Nevada corporation
Its:  Manager

By: _____
Randel W. Aleman, President

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR RANDEL W. ALEMAN, TRUSTEE OF THE RANDEL W. ALEMAN SEPARATE PROPERTY TRUST

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR SHELDON W. PAUL, TRUSTEE OF THE PAUL FAMILY TRUST

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR JAMES C. MICHELS AND RONDA L. MICHELS, TRUSTEES OF THE MICHELS FAMILY TRUST ORIGINALLY DATED JANUARY 21, 2014, AS AMENDED

Allied 1031 Exchange

By: _____
Name: _____
Its: _____

READ AND APPROVED BY EXCHANGOR:

The Randel W. Aleman
Separate Property Trust

By: _____
Randel W. Aleman, Trustee

The Paul Family Trust

By: _____
Sheldon W. Paul, Trustee

The Michels Family Trust originally dated
January 21, 2014, as amended

By: _____
James C. Michels, Trustee

By: _____
Ronda L. Michels, Trustee

The Todd and Laura Larkin Family Trust

By: _____
Todd S. Larkin, Trustee

**EXHIBIT 30**

**EXHIBIT 30**

---

## Acknowledgement

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize Stewart Title Company to cause the funds to be disbursed in accordance with this statement.

**BORROWER(S)**

Magic TRIC I, LLC, an Indiana
limited liability company

By: Magic TRIC I Member, LLC
an Indiana limited liability company
Its: Sole Member

By:
Christopher L. Seger, Manager

**SELLER(S)**

Emerald City Empire, LLC, a
Nevada limited liability company

By: Desert Oasis Management
Inc. a Nevada corporation
Its: Manager

By:
Randel W. Aleman, President

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR RANDEL W. ALEMAN, TRUSTEE OF THE RANDEL W. ALEMAN SEPARATE PROPERTY TRUST

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR SHELDON W. PAUL, TRUSTEE OF THE PAUL FAMILY TRUST

ALLIED 1031 EXCHANGE, AS INTERMEDIARY FOR JAMES C. MICHELS AND RONDA L. MICHELS, TRUSTEES OF THE MICHELS FAMILY TRUST ORIGINALLY DATED JANUARY 21, 2014, AS AMENDED

Allied 1031 Exchange

By:
Name:_____
Its:_____

READ AND APPROVED BY EXCHANGOR:

The Randel W. Aleman
Separate Property Trust

By:
Randel W. Aleman, Trustee

The Paul Family Trust

By:
Sheldon W. Paul, Trustee

The Michels Family Trust originally dated
January 21, 2014, as amended

By:
James C. Michels, Trustee

By:
Ronda L. Michels, Trustee

The Todd and Laura Larkin Family Trust

By:
Todd S. Larkin, Trustee

**EXHIBIT 30**

 **stewart**
——————TITLE——————

Stewart Title Company
5390 Kietzke Ln., Suite 101
Reno, NV 89511
(775) 332-7100 main   (775) 332-7121 fax
Tami.Haworth@stewart.com

## SUPPLEMENTAL ESCROW INSTRUCTIONS
## SELLER 1031 EXCHANGE

File No.: 2457956

Date: February 14, 2025

Original instructions in connection with the above numbered escrow are hereby amended and/or supplemented in the following manner:

Certain Sellers intend this escrow to represent the first part of a 1031 Delayed Exchange. Buyer agrees to cooperate with Seller in accomplishing same with the condition that same is performed at no liability, cost or extension of closing date to Buyer.

We, the undersigned Sellers, hereby substitute into this transaction, in our place and stead Allied 1031 Exchange, and by execution hereof Allied 1031 Exchange agrees to comply with the intent of Seller pursuant to escrow instructions referenced above under this escrow.

By execution hereof Buyer does acknowledge and consent to the substitution of Allied 1031 Exchange as facilitating party in place and stead of Seller in order for Seller to effectuate a 1031 Tax Deferred Exchange as to property subject hereof.

Parties further acknowledge that Exchangor shall execute and deliver his Deed via instruction by Allied 1031 Exchange directly to Buyer in order to avoid duplication of fees and transfer taxes.

Parties hereto acknowledge that they have been advised to seek counsel of their own qualified tax attorney and/or certified public accountant for the determination of any income tax consequences of this transaction. Said parties fully indemnify and hold Stewart Title Company harmless from any loss which said parties may sustain in the event that this transaction is audited by the Internal Revenue Service and disallowed as a tax-deferred exchange.

All other terms of the original instructions remain unchanged and in full force and effect.

BUYER(S):

Magic TRIC I, LLC, an Indiana
limited liability company

By:  Magic TRIC I Member, LLC
an Indiana limited liability company
Its: Sole Member

By: _____
Christopher L. Seger, Manager

File No.: 2457956                                    Page 1 of 2

## EXHIBIT 30

**EXHIBIT 30**

SELLER(S):

Emerald City Empire, LLC, a
Nevada limited liability company

By:  Desert Oasis Management
Inc. a Nevada corporation
Its: Manager

By: _____
Randel W. Aleman, President


Allied 1031 Exchange

By: _____
Name: _____
Its: _____

READ AND APPROVED BY EXCHANGOR:

The Randel W. Aleman
Separate Property Trust

By: _____
Randel W. Aleman, Trustee

The Paul Family Trust

By: _____
Sheldon W. Paul, Trustee

The Michels Family Trust originally dated
January 21, 2014, as amended

By: _____
James C. Michels, Trustee

By: _____
Ronda L. Michels, Trustee

The Todd and Laura Larkin Family Trust

By: _____
Todd S. Larkin, Trustee

By: _____
Laura A. Larkin, Trustee

File No.: 2457956                          Page 2 of 2

**EXHIBIT 30**

SELLER(S):

Emerald City Empire, LLC, a
Nevada limited liability company

By: Desert Oasis Management
Inc. a Nevada corporation
Its: Manager

THIS DOCUMENT IS EXECUTED IN COUNTERPART
By:_____
Randel W. Aleman, President


Allied 1031 Exchange

By:_____
Name:_____
Its:_____

READ AND APPROVED BY EXCHANGOR:

The Randel W. Aleman
Separate Property Trust

By:_____
Randel W. Aleman, Trustee

The Paul Family Trust

By:_____
Sheldon W. Paul, Trustee

The Michels Family Trust originally dated
January 21, 2014, as amended

By:_____
James C. Michels, Trustee

By:_____
Ronda L. Michels, Trustee

The Todd and Laura Larkin Family Trust

By:_____
Todd S. Larkin, Trustee

File No.: 2457956

Page 2 of 2

**EXHIBIT 30**

**EXHIBIT 30**

**SELLER(S):**

Emerald City Empire, LLC, a
Nevada limited liability company

By: Desert Oasis Management
Inc. a Nevada corporation
Its: Manager

By: ~~THIS DOCUMENT IS EXECUTED IN COUNTERPART~~
Randel W. Aleman, President

Allied 1031 Exchange

By:_____
Name:_____
Its:_____

READ AND APPROVED BY EXCHANGOR:

The Randel W. Aleman
Separate Property Trust

By:_____
Randel W. Aleman, Trustee

The Paul Family Trust

By:_____
Sheldon W. Paul, Trustee

The Michels Family Trust originally dated
January 21, 2014, as amended

By:_____
James C. Michels, Trustee

By:_____
Ronda L. Michels, Trustee

The Todd and Laura Larkin Family Trust

By:_____
Todd S. Larkin, Trustee

File No.: 2457956                    Page 2 of 2

**EXHIBIT 30**



**Stewart Title Company**
5390 Kietzke Ln., Suite 101
Reno, NV  89511
(775) 332-7100 main   (775) 332-7121 fax
Tami.Haworth@stewart.com

**Date:    February 11, 2025**
**File No: 2457956**
**Property Address: Vacant Parcel in Storey County, McCarran, NV  89434**

# FIRPTA NOTICE TO BUYER

The Foreign Investment In Real Property Tax Act ("FIRPTA"), Title 26 U.S.C., Section 1445, and the regulations thereunder, provide in part, that a transferee (buyer) of a U.S. real property interest from a foreign person/entity must withhold a statutory percentage of the amount realized on the disposition, report the transaction, and remit the withholding to the Internal Revenue Service ("IRS") within twenty (20) days after the transfer.

Stewart Title Company ("Company") shall not determine, nor aid in the determination of whether the FIRPTA withholding provisions are applicable to the subject transaction, nor aid in the determination of whether the transaction will qualify for an exception or an exemption to FIRTPA. Company is not responsible for the filing of any tax forms with the IRS as they relate to FIRPTA, nor responsible for collecting and holding of any documentation from the buyer or seller on the buyer's behalf for the purpose of supporting a claim of an exception or exemption to FIRPTA requirements. The Company is not an agent on the buyer's behalf for purposes of analyzing any evidence or documentation to determine if the seller is a U.S. citizen or resident alien. Company is not responsible for the payment of the FIRPTA withholding and/or penalty and/or interest incurred in connection therewith, as such payments are not covered by the Owner's Policy of Title Insurance to be issued to the buyer. Company is not responsible for the completion of any IRS forms and/or other documents related to the statute referenced above. The buyer shall independently make a determination of whether the contemplated transaction is subject to the FIRPTA withholding requirement; bear full penalties and/or other expenses that may be due on the subject transaction; and remain responsible for the completion of any and all forms, including but not limited to, applicable IRS documentation, and the mailing of those forms.  The buyer is advised that any forms, documents, or information received from the Company are not considered tax or legal advice and shall not be considered as such, nor treated as a complete representation of any FIRPTA requirements. The buyer is strongly advised to obtain guidance counsel from a qualified professional to determine any and all implications of the aforementioned statute.

Acknowledged and understood this 27 day of Feb. , 2025

Magic TRIC I, LLC, an Indiana
limited liability company

By:  Magic TRIC I Member, LLC
an Indiana limited liability company
Its:  Sole Member

By:_____
Christopher L. Seger, Manager

**EXHIBIT 30**

**EXHIBIT 30**

# ASSOCIATION DOCUMENT APPROVAL AND ACKNOWLEDGMENT

## DISCLOSURE REGARDING COMMON INTEREST COMMUNITY DOCUMENTS

February 11, 2025

ESCROW NO.: 2457956
PROPERTY:    Vacant Parcel in Storey County, McCarran, NV  89434

The Buyer(s), Magic TRIC I, LLC, an Indiana limited liability company, have received the following documents, required by Nevada State Law regarding the property located at Vacant Parcel in Storey County, McCarran, NV  89434, which is the subject of this escrow.  By initials and signatures hereon, the buyer(s) approve and accept these documents and remove the contingency regarding common interest communities described in the offer and acceptance.

## Buyer(s) Initials:

| | |
|---|---|
| _CS_ / _____ | CC&Rs |
| _CS_ / _____ | Bylaws |
| _CS_ / _____ | Rules and Regulations |
| _CS_ / _____ | Operating Budget for the Association |
| _CS_ / _____ | Current year to date financial statement including a balance sheet showing profit and loss |
| _CS_ / _____ | Summary of Reserve Study required by NRS 116.31152 |
| _CS_ / _____ | Resale Certificate (which includes the following) |

- Statement of unsatisfied legal judgments of pending legal actions
- Statement of any transfer fees, transaction fees, or other fees associated with the resale package*
- Monthly assessments for common expenses (generally referred to as dues.)

DATE:  February 11, 2025

Magic TRIC I, LLC, an Indiana
limited liability company

By:  Magic TRIC I Member, LLC
an Indiana limited liability company
Its:  Sole Member

By: _____
Christopher L. Seger, Manager

# EXHIBIT 30

**EXHIBIT 30**



Stewart Title Company
5390 Kietzke Ln., Suite 101
Reno, NV  89511
(775) 332-7100 main   (775) 332-7121 fax
Tami.Haworth@stewart.com

To: Stewart Title Company
Regarding Escrow No: 2457956
February 11, 2025

# BUYERS CLOSING INSTRUCTIONS

STEWART TITLE COMPANY is hereby requested to deliver my closing package and title policy as follows:

CLOSING PACKAGE

( ) Call for pick up _____. Please insert phone number.

( ) Deliver hard copies to our agent.

(✓) Email to taeesr@puredevelopmet.com and mail refund check, if any, to
jsadowy@puredevelopmet.con

( ) Mail to _____
_____.

FINAL TITLE POLICY

(✓) Email to Same as above .

( ) Mail to _____
_____.

** For your protection, we do not accept or request wiring instructions via email or phone. Be aware that online banking fraud is on the rise. If you receive an email containing WIRE TRANSFER INSTRUCTIONS, call your escrow officer immediately to verify the information prior to sending funds.**

Magic TRIC I, LLC, an Indiana
limited liability company

By:  Magic TRIC I Member, LLC
an Indiana limited liability company
Its:  Sole Member

By: _____
Christopher L. Seger, Manager

File No.: 2457956

Page 1 of 1

**EXHIBIT 30**



Stewart Title Company
5390 Kietzke Ln., Suite 101
Reno, NV 89511
(775) 332-7100 main   (775) 332-7121 fax
Tami.Haworth@stewart.com

# ESCROW INSTRUCTIONS - DISCLAIMER

File No.: 2457956

Date: February 11, 2025

The undersigned parties acknowledge that the Escrow Agent's function is to be a neutral third party with limited agency obligations, taking mutual instructions from the principals to a transaction for preparation of documentation to complete the principal's prior agreements.

The Escrow Agent is NOT AN ATTORNEY and CANNOT ADVISE the parties as to any state or federal regulations governing the obligations of the principals nor can the Escrow Agent advise the parties as to any legal, business or tax consequences of any provision or instrument set forth or prepared in connection with this transaction.  The undersigned have read and understand each document to which we have affixed our signature and have authorized and instructed Escrow Agent in the manner in which any blanks remaining in said forms are to be completed.

With regard to any question we may have had pertaining to the Escrow Instructions, the Escrow Agent's role or participation in this escrow, or the role of the Real Estate Broker, if any, we have received sufficient explanation. We understand that the subject Escrow shall close in accordance with the matters set forth on the documents we have executed.

With regard to any questions we may have had pertaining to the new loan being obtained, if any, we have been made aware that the loan documents were not generated by Escrow Agent, and that we have received sufficient explanation from the lender providing said loan.

DO NOT AFFIX YOUR SIGNATURES BELOW UNTIL YOU HAVE READ AND AGREED WITH THE MATTERS HEREINABOVE SET FORTH.  SHOULD YOU STILL HAVE QUESTIONS WITH THE MATTERS SET FORTH IN THIS DISCLAIMER, YOU ARE ADVISED TO SEEK THE ADVICE OF AN INDEPENDENT LEGAL COUNSEL.

**SELLER(S):**                                                    **BUYER(S):**


Emerald City Empire, LLC, a                        Magic TRIC I, LLC, an Indiana
Nevada limited liability company                   limited liability company

By:  Desert Oasis Management                       By:  Magic TRIC I Member, LLC
Inc. a Nevada corporation                          an Indiana limited liability company
Its:  Manager                                      Its:  Sole Member

THIS DOCUMENT IS EXECUTED IN COUNTERPART
By:_____                         By:_____
Randel W. Aleman, President                        Christopher L. Seger, Manager

File No.: 2457956

# EXHIBIT 30

**EXHIBIT 30**



Stewart Title Company
5390 Kietzke Ln., Suite 101
Reno, NV 89511
(775) 332-7100 main   (775) 332-7121 fax
Tami.Haworth@stewart.com

# ESCROW INSTRUCTIONS - DISCLAIMER

File No.: 2457956

Date: February 11, 2025

The undersigned parties acknowledge that the Escrow Agent's function is to be a neutral third party with limited agency obligations, taking mutual instructions from the principals to a transaction for preparation of documentation to complete the principal's prior agreements.

The Escrow Agent is NOT AN ATTORNEY and CANNOT ADVISE the parties as to any state or federal regulations governing the obligations of the principals nor can the Escrow Agent advise the parties as to any legal, business or tax consequences of any provision or instrument set forth or prepared in connection with this transaction. The undersigned have read and understand each document to which we have affixed our signature and have authorized and instructed Escrow Agent in the manner in which any blanks remaining in said forms are to be completed.

With regard to any question we may have had pertaining to the Escrow Instructions, the Escrow Agent's role or participation in this escrow, or the role of the Real Estate Broker, if any, we have received sufficient explanation. We understand that the subject Escrow shall close in accordance with the matters set forth on the documents we have executed.

With regard to any questions we may have had pertaining to the new loan being obtained, if any, we have been made aware that the loan documents were not generated by Escrow Agent, and that we have received sufficient explanation from the lender providing said loan.

DO NOT AFFIX YOUR SIGNATURES BELOW UNTIL YOU HAVE READ AND AGREED WITH THE MATTERS HEREINABOVE SET FORTH. SHOULD YOU STILL HAVE QUESTIONS WITH THE MATTERS SET FORTH IN THIS DISCLAIMER, YOU ARE ADVISED TO SEEK THE ADVICE OF AN INDEPENDENT LEGAL COUNSEL.

**SELLER(S):**                                          **BUYER(S):**

Emerald City Empire, LLC, a                            Magic TRIC I, LLC, an Indiana
Nevada limited liability company                       limited liability company

By: Desert Oasis Management                            By: Magic TRIC I Member, LLC
Inc. a Nevada corporation                              an Indiana limited liability company
Its: Manager                                           Its: Sole Member

By: _____
Randel W. Aleman, President                            By: THIS DOCUMENT IS EXECUTED IN COUNTERPART
                                                       Christopher L. Seger, Manager

File No.: 2457956

**EXHIBIT 30**

EXHIBIT 30



**Stewart Title Company**
5390 Kietzke Ln., Suite 101
Reno, NV 89511
(775) 332-7100 main   (775) 332-7121 fax
Tami.Haworth@stewart.com

# INSTRUCTIONS TO ESCROW AGENT
# RESALE VACANT LAND ACQUISITION WITH CONSTRUCTION LOAN

File No.: 2457956
Date:  February 11, 2025

**CONSIDERATION INSTRUCTIONS**

| | |
|---|---|
| Deposited herewith | $325,000.00 |
| New Encumbrance (Acquisition & Construction) | $68,771,429.00 |
| TOTAL SALES PRICE: | $11,426,659.20 |

**EARNEST MONEY AND DOWN PAYMENT**
Buyer(s) have deposited in escrow the sum of $325,000.00 in various deposits, including earnest money, which shall apply towards purchase price upon close of escrow.  Balance of down payment as required; plus applicable closing costs shall be deposited by Buyer in the form of CERTIFIED FUNDS prior to close of escrow.

Emerald City Empire, LLC, a Nevada limited liability company, Allied 1031 Exchange, as Intermediary for Randel W. Aleman, Trustee of the Randel W. Aleman Separate Property Trust, Allied 1031 Exchange, as Intermediary for Sheldon W. Paul, Trustee of the Paul Family Trust, Allied 1031 Exchange, as Intermediary for James C. Michels, Ronda L. Michels, Trustees of the Michels Family Trust originally dated January 21, 2014, as amended, Allied 1031 Exchange, as Intermediary for Todd S. Larkin, Laura A. Larkin, Trustees of the Todd, and Laura Larkin Family Trust, is/are selling to:

Magic TRiC I, LLC, an Indiana limited liability company Buyer(s), (Exact manner of vesting to be determined in writing prior to the close of escrow and escrow agent is hereby authorized and instructed to complete the Grant, Bargain, Sale Deed over Seller's signature to conform therewith), the property hereinafter described on the terms set forth, and will hand you an instrument conveying the said property which is described as follows:

FULL LEGAL DESCRIPTION TO BE SET FORTH ON THE PRELIMINARY TITLE REPORT ISSUED THROUGH THIS ESCROW AND ESCROW AGENT IS AUTHORIZED AND INSTRUCTED TO INSERT SAME ON THE DOCUMENTS PROCESSED HEREIN.

Commonly known as:    Vacant Parcel in Storey County, McCarran, NV  89434

I/We authorize you to deliver said instrument to the above named party or representative upon payment to you for my account of the cash consideration and/or new encumbrance(s) as specified in the Consideration Instructions hereinabove set out and upon condition that you issue an ALTA Owner's Policy (as they apply) Policy of Title Insurance in the amount of $11,426,659.20 and loan amount as required.

**SUBJECT ONLY TO**
(1) General and Special Taxes for the current tax year, including any personal property taxes of any former owner which might be collected therewith, and any and all taxes and assessments levied or assessed subsequent to close of escrow, except as otherwise specifically required herein.
(2) Lien of supplemental taxes (if any).
(3) Covenants, Conditions, Restrictions, Reservations, Rights of way and Easements now of record, if any, affecting the use and occupancy of said property as the same may now appear of record, except as otherwise specifically required herein.
(4) Proforma Policy of Title Insurance issued through Escrow.

ALL PARTIES HEREIN ACKNOWLEDGE AND AGREE THAT THE PURCHASE AND SALE AGREEMENT BETWEEN BUYER AND SELLER SHALL BE INCORPORATED INTO THESE ESCROW INSTRUCTIONS FOR THE PURPOSE OF CLOSING THIS TRANSACTION.  ESCROW HOLDER IS AUTHORIZED AND INSTRUCTED TO ACT THEREUNDER IN SO FAR AS CLOSING THIS TRANSACTION IS CONCERNED, HOWEVER ESCROW HOLDER SHALL ONLY BE

**EXHIBIT 30**

## 1031 EXCHANGE

Herein parties acknowledge and agree that for the purpose of facilitating a 1031 Exchange for the Seller, 16% of Emerald City Empire's Ownership Interest was Deeded to Randel W. Aleman, Trustee of the Randel W. Aleman Separate Property Trust. Further, it is understood and agreed that the 86% balance of sale proceeds will be disbursed to Emerald City Empire, LLC.

## CLOSING COSTS

Closing costs associated with this transaction shall be paid as follows:

Seller shall pay the cost of the Standard ALTA Owner Policy of Title Insurance, the Real Property Transfer Taxes, the Document Preparation Fee, Broker Commissions, and half of the Escrow Fee.

Buyer shall pay the cost of the ALTA Extended Owner Coverage, the cost of the Owner Policy Endorsements, The Lender Policy of Title Insurance and Endorsements, Recording Fees, and half of the Escrow Fee.

## PRORATIONS

( X )  Real Property Taxes
( X )  Association Dues

Real property taxes, bond and assessments, if applicable, are to be prorated based on the latest tax bill available to Escrow Agent at Closing.

## CLOSE OF ESCROW

Time is of the essence of this Agreement and I require that the above named Buyer(s) execute these instructions and comply with all requirements hereof necessary to place this escrow in condition to close on or before , provided, however, that if said closing date falls on a Saturday, Sunday, or holiday, the time limit herein set out is hereby extended through the next full business day and provided further that you as escrow holder are authorized to take any administrative steps necessary to implement the closing of this escrow subsequent to said closing date unless otherwise instructed in writing by a party hereto.

## PRIVACY POLICY

The parties to this transaction do, by their execution of these instructions, acknowledge that they are aware that Stewart Title Company and its underwriter Stewart Title Guaranty Company have enacted policies to comply with the Gramm-Leach-Bliley Financial Services Modernization Act. By signature hereon the parties acknowledge receipt of the Privacy Policy Notice which was delivered to them with the preliminary title report and further acknowledge that Stewart Title Company is authorized to release certain necessary information to other companies to effectuate the closing of this transaction.

## COMPLIANCE AGREEMENT

In the event a post closing or post disbursement adjustment is necessary by an entity involved with this escrow, the undersigned authorizes Stewart Title Company to, if immediate action be necessary, advance funds on their behalf to effect an accurate closing settlement. The undersigned, upon notification and reasonable opportunity to investigate such advances, agrees to fully cooperate and pay to Stewart Title Company any and all funds so advanced on their behalf. Said advance of funds shall not constitute a loan of any kind and must be paid by the responsible party within 72 hours.

## TRANSFER TAX AUTHORIZATION

Due to on-going changes that may be occurring in the way Real Property Transfer Tax is charged by the County, escrow agent is authorized to provide a copy of the HUD/Closing Statement to the County Recorder's office with the recording package to prove agreement of the purchase price between the undersigned buyer(s) and seller(s). "In a purchase and sale transaction, Real Property Transfer Tax (RPTT) has historically been based solely on the sales price of the subject property. However, under current market conditions the Department of Taxation in conjunction with the County Recorder has the ability to determine whether or not an additional transfer tax should be assessed if THEY determine that the property is being sold for less than their assessment of market value. In such event the parties to this transaction may be assessed additional transfer taxes plus penalties and interest for non-payment AFTER close of escrow OR the closing could be delayed if the County Recorder stops the recording because they do not feel the transfer tax shown on the Declaration of Value is an accurate reflection of value. In order to avoid such delays or future assessment of penalties and interest, Escrow Agent is hereby instructed to retain an additional sum of transfer tax equal to that amount paid on the last sale of the subject property. Escrow Agent shall submit the Declaration of Value and associated RPTT based upon the current sales price." Any additional money charged by the County for Transfer Tax shall be the responsibility of the undersigned parties directly with the County Recorder. Stewart Title is hereby released from any and all responsibility and/or liability in connection with Transfer Tax imposed by the County Recorder AFTER recordation of the documents submitted.

THIS DOCUMENT IS EXECUTED IN COUNTERPART

Buyer's and Seller's initials: _____  _____

**EXHIBIT 30**

CONCERNED WITH THOSE CERTAIN MATTERS PERTAINING TO ITS RESPONSIBILITY AS CLOSING AGENT AS SET FORTH IN THE ABOVE-MENTIONED AGREEMENT.  ALL OTHER ITEMS OF SAID AGREEMENT SHALL BE MATTERS BETWEEN BUYER AND SELLER.

**CLOSING COSTS**
Closing costs associated with this transaction shall be paid as follows:
Seller shall pay the cost of the Standard ALTA Owner Policy of Title Insurance, the Real Property Transfer Taxes, the Document Preparation Fee, Broker Commissions, and half of the Escrow Fee.
Buyer shall pay the cost of the ALTA Extended Owner Coverage, the cost of the Owner Policy Endorsements, The Lender Policy of Title Insurance and Endorsements, Recording Fees, and half of the Escrow Fee.

**PRORATIONS**
( X )  Real Property Taxes
( X )  Association Dues

Real property taxes, bond and assessments, if applicable, are to be prorated based on the latest tax bill available to Escrow Agent at Closing.

**CLOSE OF ESCROW**
Time is of the essence of this Agreement and I require that the above named Buyer(s) execute these instructions and comply with all requirements hereof necessary to place this escrow in condition to close on or before , provided, however, that if said closing date falls on a Saturday, Sunday, or holiday, the time limit herein set out is hereby extended through the next full business day and provided further that you as escrow holder are authorized to take any administrative steps necessary to implement the closing of this escrow subsequent to said closing date unless otherwise instructed in writing by a party hereto.

**PRIVACY POLICY**
The parties to this transaction do, by their execution of these instructions, acknowledge that they are aware that Stewart Title Company and its underwriter Stewart Title Guaranty Company have enacted policies to comply with the Gramm-Leach-Bliley Financial Services Modernization Act.  By signature hereon the parties acknowledge receipt of the Privacy Policy Notice which was delivered to them with the preliminary title report and further acknowledge that Stewart Title Company is authorized to release certain necessary information to other companies to effectuate the closing of this transaction.

**COMPLIANCE AGREEMENT**
In the event a post closing or post disbursement adjustment is necessary by an entity involved with this escrow, the undersigned authorizes Stewart Title Company to, if immediate action be necessary, advance funds on their behalf to effect an accurate closing settlement.  The undersigned, upon notification and reasonable opportunity to investigate such advances, agrees to fully cooperate and pay to Stewart Title Company any and all funds so advanced on their behalf.  Said advance of funds shall not constitute a loan of any kind and must be paid by the responsible party within 72 hours.

**TRANSFER TAX AUTHORIZATION**
Due to on-going changes that may be occurring in the way Real Property Transfer Tax is charged by the County, escrow agent is authorized to provide a copy of the HUD/Closing Statement to the County Recorder's office with the recording package to prove agreement of the purchase price between the undersigned buyer(s) and seller(s).  "In a purchase and sale transaction, Real Property Transfer Tax (RPTT) has historically been based solely on the sales price of the subject property. However, under current market conditions the Department of Taxation in conjunction with the County Recorder has the ability to determine whether or not an additional transfer tax should be assessed if THEY determine that the property is being sold for less than their assessment of market value. In such event the parties to this transaction may be assessed additional transfer taxes plus penalties and interest for non-payment AFTER close of escrow OR the closing could be delayed if the County Recorder stops the recording because they do not feel the transfer tax shown on the Declaration of Value is an accurate reflection of value. In order to avoid such delays or future assessment of penalties and interest, Escrow Agent is hereby instructed to retain an additional sum of transfer tax equal to that amount paid on the last sale of the subject property. Escrow Agent shall submit the Declaration of Value and associated RPTT based upon the current sales price."  Any additional money charged by the County for Transfer Tax shall be the responsibility of the undersigned parties directly with the County Recorder.  Stewart Title is hereby released from any and all responsibility and/or liability in connection with Transfer Tax imposed by the County Recorder AFTER recordation of the documents submitted.

Buyer's and Seller's initials: _DOCUMENT IS EXECUTED IN COUNTERPART_

**EXHIBIT 30**

CONCERNED WITH THOSE CERTAIN MATTERS PERTAINING TO ITS RESPONSIBILITY AS CLOSING AGENT AS SET FORTH IN THE ABOVE-MENTIONED AGREEMENT. ALL OTHER ITEMS OF SAID AGREEMENT SHALL BE MATTERS BETWEEN BUYER AND SELLER.

**CLOSING COSTS**
Closing costs associated with this transaction shall be paid as follows:
Seller shall pay the cost of the Standard ALTA Owner Policy of Title Insurance, the Real Property Transfer Taxes, the Document Preparation Fee, Broker Commissions, and half of the Escrow Fee.
Buyer shall pay the cost of the ALTA Extended Owner Coverage, the cost of the Owner Policy Endorsements, The Lender Policy of Title Insurance and Endorsements, Recording Fees, and half of the Escrow Fee.

**PRORATIONS**
( X )  Real Property Taxes
( X )  Association Dues

Real property taxes, bond and assessments, if applicable, are to be prorated based on the latest tax bill available to Escrow Agent at Closing.

**CLOSE OF ESCROW**
Time is of the essence of this Agreement and I require that the above named Buyer(s) execute these instructions and comply with all requirements hereof necessary to place this escrow in condition to close on or before , provided, however, that if said closing date falls on a Saturday, Sunday, or holiday, the time limit herein set out is hereby extended through the next full business day and provided further that you as escrow holder are authorized to take any administrative steps necessary to implement the closing of this escrow subsequent to said closing date unless otherwise instructed in writing by a party hereto.

**PRIVACY POLICY**
The parties to this transaction do, by their execution of these instructions, acknowledge that they are aware that Stewart Title Company and its underwriter Stewart Title Guaranty Company have enacted policies to comply with the Gramm-Leach-Bliley Financial Services Modernization Act.  By signature hereon the parties acknowledge receipt of the Privacy Policy Notice which was delivered to them with the preliminary title report and further acknowledge that Stewart Title Company is authorized to release certain necessary information to other companies to effectuate the closing of this transaction.

**COMPLIANCE AGREEMENT**
In the event a post closing or post disbursement adjustment is necessary by an entity involved with this escrow, the undersigned authorizes Stewart Title Company to, if immediate action be necessary, advance funds on their behalf to effect an accurate closing settlement.  The undersigned, upon notification and reasonable opportunity to investigate such advances, agrees to fully cooperate and pay to Stewart Title Company any and all funds so advanced on their behalf.  Said advance of funds shall not constitute a loan of any kind and must be paid by the responsible party within 72 hours.

**TRANSFER TAX AUTHORIZATION**
Due to on-going changes that may be occurring in the way Real Property Transfer Tax is charged by the County, escrow agent is authorized to provide a copy of the HUD/Closing Statement to the County Recorder's office with the recording package to prove agreement of the purchase price between the undersigned buyer(s) and seller(s).  "In a purchase and sale transaction, Real Property Transfer Tax (RPTT) has historically been based solely on the sales price of the subject property. However, under current market conditions the Department of Taxation in conjunction with the County Recorder has the ability to determine whether or not an additional transfer tax should be assessed if THEY determine that the property is being sold for less than their assessment of market value. In such event the parties to this transaction may be assessed additional transfer taxes plus penalties and interest for non-payment AFTER close of escrow OR the closing could be delayed if the County Recorder stops the recording because they do not feel the transfer tax shown on the Declaration of Value is an accurate reflection of value. In order to avoid such delays or future assessment of penalties and interest, Escrow Agent is hereby instructed to retain an additional sum of transfer tax equal to that amount paid on the last sale of the subject property. Escrow Agent shall submit the Declaration of Value and associated RPTT based upon the current sales price."  Any additional money charged by the County for Transfer Tax shall be the responsibility of the undersigned parties directly with the County Recorder.  Stewart Title is hereby released from any and all responsibility and/or liability in connection with Transfer Tax imposed by the County Recorder AFTER recordation of the documents submitted.

Buyer's and Seller's initials: _____    _____

File No.: 2457956                                Page 2 of 9
**EXHIBIT 30**

CONCERNED WITH THOSE CERTAIN MATTERS PERTAINING TO ITS RESPONSIBILITY AS CLOSING AGENT AS SET FORTH IN THE ABOVE-MENTIONED AGREEMENT. ALL OTHER ITEMS OF SAID AGREEMENT SHALL BE MATTERS BETWEEN BUYER AND SELLER.

## CLOSING COSTS

Closing costs associated with this transaction shall be paid as follows:

Seller shall pay the cost of the Standard ALTA Owner Policy of Title Insurance, the Real Property Transfer Taxes, the Document Preparation Fee, Broker Commissions, and half of the Escrow Fee.

Buyer shall pay the cost of the ALTA Extended Owner Coverage, the cost of the Owner Policy Endorsements, The Lender Policy of Title Insurance and Endorsements, Recording Fees, and half of the Escrow Fee.

## PRORATIONS

( X ) Real Property Taxes
( X ) Association Dues

Real property taxes, bond and assessments, if applicable, are to be prorated based on the latest tax bill available to Escrow Agent at Closing.

## CLOSE OF ESCROW

Time is of the essence of this Agreement and I require that the above named Buyer(s) execute these instructions and comply with all requirements hereof necessary to place this escrow in condition to close on or before , provided, however, that if said closing date falls on a Saturday, Sunday, or holiday, the time limit herein set out is hereby extended through the next full business day and provided further that you as escrow holder are authorized to take any administrative steps necessary to implement the closing of this escrow subsequent to said closing date unless otherwise instructed in writing by a party hereto.

## PRIVACY POLICY

The parties to this transaction do, by their execution of these instructions, acknowledge that they are aware that Stewart Title Company and its underwriter Stewart Title Guaranty Company have enacted policies to comply with the Gramm-Leach-Bliley Financial Services Modernization Act. By signature hereon the parties acknowledge receipt of the Privacy Policy Notice which was delivered to them with the preliminary title report and further acknowledge that Stewart Title Company is authorized to release certain necessary information to other companies to effectuate the closing of this transaction.

## COMPLIANCE AGREEMENT

In the event a post closing or post disbursement adjustment is necessary by an entity involved with this escrow, the undersigned authorizes Stewart Title Company to, if immediate action be necessary, advance funds on their behalf to effect an accurate closing settlement. The undersigned, upon notification and reasonable opportunity to investigate such advances, agrees to fully cooperate and pay to Stewart Title Company any and all funds so advanced on their behalf. Said advance of funds shall not constitute a loan of any kind and must be paid by the responsible party within 72 hours.

## TRANSFER TAX AUTHORIZATION

Due to on-going changes that may be occurring in the way Real Property Transfer Tax is charged by the County, escrow agent is authorized to provide a copy of the HUD/Closing Statement to the County Recorder's office with the recording package to prove agreement of the purchase price between the undersigned buyer(s) and seller(s). "In a purchase and sale transaction, Real Property Transfer Tax (RPTT) has historically been based solely on the sales price of the subject property. However, under current market conditions the Department of Taxation in conjunction with the County Recorder has the ability to determine whether or not an additional transfer tax should be assessed if THEY determine that the property is being sold for less than their assessment of market value. In such event the parties to this transaction may be assessed additional transfer taxes plus penalties and interest for non-payment AFTER close of escrow OR the closing could be delayed if the County Recorder stops the recording because they do not feel the transfer tax shown on the Declaration of Value is an accurate reflection of value. In order to avoid such delays or future assessment of penalties and interest, Escrow Agent is hereby instructed to retain an additional sum of transfer tax equal to that amount paid on the last sale of the subject property. Escrow Agent shall submit the Declaration of Value and associated RPTT based upon the current sales price." Any additional money charged by the County for Transfer Tax shall be the responsibility of the undersigned parties directly with the County Recorder. Stewart Title is hereby released from any and all responsibility and/or liability in connection with Transfer Tax imposed by the County Recorder AFTER recordation of the documents submitted.

Buyer's and Seller's initials: _____    THIS DOCUMENT IS EXECUTED IN COUNTERPART

File No.: 2457956

EXHIBIT 30

# GENERAL PROVISIONS OF ESCROW

Date: February 11, 2025

Escrow Number: 2457956

Escrow Officer: Tami Haworth

Seller: Emerald City Empire, LLC, a Nevada limited liability company, Allied 1031 Exchange, as Intermediary for Randel W. Aleman, Trustee of the Randel W. Aleman Separate Property Trust, Allied 1031 Exchange, as Intermediary for Sheldon W. Paul, Trustee of the Paul Family Trust, Allied 1031 Exchange, as Intermediary for James C. Michels, Ronda L. Michels, Trustees of the Michels Family Trust originally dated January 21, 2014, as amended, Allied 1031 Exchange, as Intermediary for Todd S. Larkin, Laura A. Larkin, Trustees of the Todd, and Laura Larkin Family Trust

Buyer: Magic TRIC I, LLC, an Indiana limited liability company

Title Company: Stewart Title Company

**The following instructions are incorporated herein and made a part hereof:**

1.  **CLOSE OF ESCROW, TIME OF THE ESSENCE, TRANSFER OF TITLE:**
    A.  It is mutually understood that these instructions are entered into by the Buyer and Seller hereto for the purpose of enabling to process and close this escrow, but it is in no way intended to modify, supplement and/or supersede that certain agreement executed by and between the Buyer and Seller. Any amendment of and/or supplement of any instructions must be in writing. You are to be concerned only with the directives specifically set forth in the escrow instructions and amendments thereto, and are not to be concerned or liable for items designated as "memoranda" in the within escrow instructions nor with any other agreement nor contract between the parties.

    B.  Time is of the essence in the agreement and each party hereto requires that the other party execute these instructions and comply with all requirements hereof necessary to place this escrow in condition to close on or before the scheduled closing date hereinbefore set out. In the absence of written direction to the contrary, Escrow Agent is authorized to take any administrative action necessary to affect the closing of this escrow subsequent to said closing date.

    C.  Escrow Agent is directed to file the necessary Deeds, Trust Deeds and other instruments pursuant to the terms of this transaction, and Escrow Agent is further directed to insert the names of the grantees in the necessary conveyance and/or encumbering documents prior to recordation of same, based upon the written direction tendered by the grantee or in compliance with instructions set forth by the beneficiary under any new loan documents.

2.  **DEPOSITED FUNDS, DISBURSEMENTS:**
    A.  Any deposit made by either party hereunder into the escrow account shall be in the form of a bank wire or by check with prior written approval from the Title Company. Any check presented for deposit, including a cashier's check, shall be subject to clearance thereof and Escrow Agent shall not be obligated to act upon nor disburse against any such funds until the depositor provides proof of cleared funds to Escrow Agent. Funds received in this escrow shall be deposited in one or more escrow account with any bank doing business in Nevada and may be transferred to any other escrow account or accounts. Any check presented for deposit into this escrow shall be subject to clearance.

    B.  All disbursements made under this transaction shall be made in the form of a check or by wire upon receipt of written instructions. Escrow Agent shall not be obligated to disburse against any such funds until notified by the bank or provided proof that said funds have cleared by the depositor. In the event Escrow Agent is not in receipt of said proof or notification, said funds shall not be disbursed until 30 days from date of receipt of such funds

3.  **PAYMENT OF ENCUMBRANCES, LIENS, CHARGES:**
    A.  Escrow Agent is authorized to pay any encumbrance(s), which a title search reveals against the subject property, except as set forth herein. The Title Company is authorized and directed to pay said encumbrance(s) as directed by the lien holder thereof, acting solely upon the written direction of such lien

File No.: 2457956                                           Page 3 of 9

# EXHIBIT 30

EXHIBIT 30
PageID #: 1314

holder, and it is expressly understood and agreed that the Title Company assumes no liability for the accuracy of any such statement or direction. NOTWITHSTANDING ANY PROVISION IN THE TRUST DEED(S) BEING PAID OFF THROUGH THIS TRANSACTION, THE TITLE COMPANY, SHALL CHARGE A TRUSTEE FEE OR PROCESSING FEE AS REQUIRED TO RECONVEY OR PROCESS THE RECONVEYANCE ON THE TRUST DEED(S) OF RECORD.

B. The Buyer and Seller hereto acknowledge that Escrow Agent shall rely on statements of payoff or amounts due provided by the appropriate lenders, management companies or other entities as required to close this escrow. Any deficiency in statements provided shall be the responsibility of the party obligated to pay. Escrow Agent is expressly authorized to charge the account of the party obligated to pay same, any charge or expense incurred in connection with this transaction or the terms thereof. Escrow Agent is further directed and authorized to reimburse itself for any charges, which it may incur during this escrow, by charging such amount to the party obligated to pay said charge. Any installments maturing on existing encumbrances, if any, during the period of this escrow, shall be paid by the Seller, unless otherwise specifically required herein.

C. Escrow Agent has no responsibility for investigating or guaranteeing the status of any garbage fee, power, water, telephone, gas and /or any other utility or use bill, except as otherwise required herein.

4.    **PRORATIONS, RECORDING, CLOSE OF ESCROW:**
A. The term "Close of Escrow" shall be deemed to mean the date upon which all necessary documents are filed for record with the appropriate county recorder's office. All proration's made computed on the basis of a 30 day month. The Buyer and Seller hereby authorize and instruct Escrow Agent to prorate real property taxes based upon the figures provided by the most current available tax statement from the tax collector's office and as shown on the preliminary title report. Therefore, the Buyer and Seller specifically agree that the Title Company, shall have no liability whatsoever for the overpayment of real property taxes. Recordation of instruments delivered through this escrow, if necessary or proper in the issuance of a policy of title insurance called for, is hereby authorized and you are to pay any encumbrance, which a title search reveals against said property.

B. If Escrow Agent is not in receipt of any invoice/billing for a Home Warranty or Buyer's Protection Plan at the close of escrow, Escrow Agent is authorized and instructed to RELEASE funds held in escrow, if applicable, for said Warranty/Plan to the Buyer.

C. TRASH PRORATIONS/SOUTHERN NEVADA:
Should the Purchase Agreement call for the proration of Trash Service fees, the parties herein acknowledge the proration could cause a duplicate charge to the Buyer from the Trash Service Company when services are transferred to the Buyer. Parties herein release Title Company from any liability and/or responsibility in connection with any additional charges the Buyer may be assessed. Title Company has no responsibility and/or liability for the transfer/closure of Seller's account, nor establishing a new account in Buyer's name.

5.    **CORRECTIONS, POST CLOSING ADJUSTMENTS:**
A. In the event there are any clerical or typographical errors to be corrected, or final requirements to be satisfied following the close of escrow, the parties hereto agree to cooperate with Escrow Agent in initialing or signing documents or satisfying said final matters as may be requested or required by Escrow Agent to complete this transaction.

B. In the event a post-closing or post-disbursement adjustment is necessary by an entity involved with this escrow, the undersigned authorize the title company to, if immediate action is necessary, advance funds on their behalf to effect an accurate closing statement. The Buyer and Seller agree to fully cooperate and pay any corrections within 10 days of notification, to the Title Company along with any and all funds so advanced on their behalf.

6.    **ESCROW AGENT LIABILITY:**
A. ANYTHING TO THE CONTRARY HEREIN NOTWITHSTANDING, ESCROW AGENTS IS HEREBY UNCONDITIONALLY RELIEVED FROM LIABILITY OR RESPONSIBILITY WHATSOEVER; INCLUDING BUT NOT LIMITED TO COMPLIANCE WITH OR ADHERENCE TO THE CONSUMER CREDIT PROTECTION ACT TRUTH IN LENDING OR SIMILAR LAWS.

**EXHIBIT 30**

B. In the event a dispute causes the title Company to file a suit in interpleader, the Buyer and Seller hereto agree that the Title Company shall be permitted to deduct all costs and expenses, including reasonable attorney's fees, incurred by the Title Company in connection with the action, prior to depositing any funds with the Court. In the event the Title Company files a suit in interpleader, the Title Company shall be fully released and discharged from all obligations imposed upon the Title Company in this escrow.

C. The Buyer and Seller hereby agree to indemnify and hold harmless the Title Company its offices, agents, employees and assigns, from any liability, loss, costs, charges expenses and damages of any kind or character whatsoever, including but not limited to any reasonable attorney's fees incurred or sustained as a result of compliance with these escrow instructions.

7.  **TAX REQUIREMENTS/PROPERTY/1099/FIRPTA:**
A. The Buyer and Seller hereto agree to hold harmless from the closing of this transaction in regard to any future taxes, which may be assessed. IN ACCORDANCE WITH (NRS 361.260) PASSED BY THE 1983 NEVADA LEGISLATURE, THE COURTS HAVE ALLOWED THE REASSESSMENT OF PROPERTY WHERE CONSTRUCTION HAS STARTED OR HAS BEEN COMPLETED AFTER THE CLOSE OF THE SECURED ROLL DUE TO THE FACT THERE ARE NOW NO ADDITIONAL TAX ASSESSMENTS AVAILABLE TO THE TITLE COMPANY AT THE TIME OF CLOSE OF ESCROW, BUYER AND SELLER HEREBY AGREE THAT IT WILL BE THEIR RESPONSIBILITY TO PAY ANY ADDITIONAL TAXES OUTSIDE OF ESCROW, IN THE EVENT THE COUNTY SENDS OUT BILLINGS AFTER THE CLOSE OF ESCROW

B. Seller is hereby made aware that a law effective January 1, 1987 requires all escrow holders to complete a modified 1099-S form and file said form with the IRS, based upon specific information provided by Seller. It is understood that this transaction shall NOT CLOSE with the Title Company, as escrow holder, unless the information so required is provided by Seller.

C. Escrow Agent, Title Company and its parent company is released from and shall have no liability, obligation or responsibility with respect to (a) withholding of funds pursuant to Section 1445 of the Internal Revenue Service Code 1986 as amended, (b) advising the parties as to the requirements of such Section 1445, (c) determining whether the transferor is a foreign person under such Section or, (d) obtaining a non-foreign affidavit or other form withholding under such Section.

8.  **COUNTERPART SIGNATURES, FAX, TELECOPY, EMAIL, BINDING EFFECT:**
A. These instructions may be executed in any number of counterparts, each of which shall be considered an original and be effective as such, and all of which, when aggregated, shall constitute a fully executed original. In the event any principal or party to this transaction utilize facsimile or email transacted signed documents, Buyer and Seller hereby agree to accept and authorize Escrow Agent to rely upon such documents as if they bore original signatures. Buyer and Seller also understand and agree that certain documents necessary for recording will only be acceptable by original signature.

B. In the event that the principals to this transaction, their agents, or assigns, utilize "facsimile" transmitted instructions Escrow Agent may rely and act upon such instructions in the same manner as if original signed instructions were in the possession of Escrow Agent. Escrow Agent shall have no liability to any party for relying upon facsimile instructions. The parties are responsible for depositing the original signed instructions into escrow as soon as reasonably possible Seller and/or Buyer agree that when necessary to permit compliance with closing, escrow may rely on facsimile transmitted lender demands.

C. These instructions are in all parts which applied for the benefit of the parties hereto, shall have binding effect on the parties' heirs, legatees, devisees, administrators, executors, successors and/or assigns, whenever the content so requires, the masculine gender includes the feminine and neuter and the singular number includes plural.

9.  **SERVICE FEES:**
A. In addition to its usual escrow fees, Escrow Agent is authorized to charge fees in connection with the processing of any loan documents, bank wires, and receipt of email documents, required overnight courier, and any other charge which may be deemed necessary and that is not already included in the escrow fee.

B. Upon close of escrow, or upon filing a written request for cancellation, should the title Company, be required to maintain funds on deposit, they are hereby authorized to retain out of those funds deposited, a reasonable

File No.: 2457956                                           Page 5 of 9

**EXHIBIT 30**

service charge in an amount not less than $25.00 dollars per month for the administration of said funds. Any funds abandoned or remaining unclaimed after three years, the amount thereafter remaining unclaimed may escheat to the State of Nevada. If any check remains un-negotiated 90 days after the issue date, a stop payment will be placed upon said check and deduct a stop payment fee of $30.00 shall be deducted from the amount of funds remaining.

**10.    COMMISSION DISBURSEMENT:**
Commissions, as per separate agreement, shall be payable at the close of escrow and Escrow Agent is directed to debit the account of the party responsible for payment of said commission.

**11.    TRANSFER OF PERSONAL PROPERTY:**
Escrow Agent assumes no liability for, and is hereby relieved of any liability in connection with any Personal Property, which may be a part of the transaction between the Buyer and Seller.

**12.    COPIES TO THIRD PARTIES:**
A.   Seller and Buyer hereby authorize Escrow Agent to furnish copies of closing statements and Escrow Instructions to the lender and/or broker(s) involved herein. Escrow Agent is further authorized to deliver a copy of any notice filed in accordance with the terms set forth herein by one party upon the other, to the broker(s) involved herein.

B.   Buyer or Seller are to furnish a copy of theses instructions, amendments thereto, closing statements and/or any other documents deposited in this escrow to the lender or lenders and/or the real estate broker or brokers involved in this transaction upon request of such lenders or brokers

**13.    NOTICES.**
Buyer and Seller shall notify Escrow Agent in writing of any change in address during the course of this escrow, and absent written indication to the contrary, Escrow Agent shall mail any notices filed by either party to or against the other, to the address set forth herein.

**14.    PRIVACY NOTICE:**
A.   The Buyer and Seller to this transaction do, by their execution of these instructions, acknowledge that they are aware that the Title Company, and its underwriters, has enacted policies to comply with the Gramm-Leach-Bliley Financial Services Modernization Act. By signature hereon the parties acknowledge receipt of the Privacy Policy Notice which was delivered to you within the Preliminary Title Report and further acknowledge that The Title Company is authorized to release certain necessary information to other companies to effectuate the closing of this transaction.

B.   The Title Company is authorized to destroy or otherwise dispose of any or all documents, papers, instructions, correspondence and other material pertaining to this escrow at the expiration of 7 years from date of close or cancellation of this escrow without liability and without further notice to any party to this escrow

**15.    CANCELLATION:**
A.   Either party hereunder claiming right of cancellation of this escrow shall file written notice and demand for cancellation in the office of Escrow Agent. Escrow Agent shall, within 3 business days following receipt of such written notice, notify the party against who said cancellation is filed. Said Notice shall be given in a form regularly used, i.e. email, facsimile, or US Mail. Unless written objection to any cancellation notice received hereunder shall be submitted and received by Escrow Agent from the party to whom cancellation notice is directed within 10 business days following the Escrow Agents deliverance of said cancellation notice, Escrow Agent is authorized at their discretion to comply with such cancellation notice and demand upon payments of its cancellation charges and expenditures. In the event that such written objection shall be filed, Escrow Agent is authorized to hold all money and instruments in this escrow pending mutual written instructions by the parties herein, or a final order by a court of competent jurisdiction. Under NRS 645.175 the party refusing to execute documents necessary to release earnest money, may be subject to damages.

B.   The Buyer and Seller are aware, and expressly agree and consent that Escrow Agent shall have the absolute right, at is sole discretion, to file a suit or counter claim in interpleader and to obtain an order from the court requiring the claimants to interplead and litigate in such court their several claims and rights amongst themselves. In the event such suit or claim is brought, the parties hereto jointly and severally agree to pay Escrow Agent all costs, expenses and reasonable attorney fees which it may expend or incur in such

**EXHIBIT 30**

**EXHIBIT 30**

interpleader action, the amount thereof to be fixed and judgment therefore to be rendered by court in such suit. Upon the filing of such suit or counterclaim said Escrow Agent shall thereupon be fully released and discharged from all obligations to further perform any duties or obligations otherwise imposed by the terms of this escrow. Escrow Agent has the right at its discretion to charge a cancellation fee at a minimum of $350.00, based upon the amount of work completed.

C. It is expressly understood and agreed that the Escrow Agent, without any obligation to exercise such right, retains the right to resign its duties as Escrow Agent under this transaction at any time and at its sole discretion, and/or to refrain from taking any act to furtherance of the subject transaction which, at the sole discretion of the Escrow Agent, is deemed inadvisable. No liability shall accrue to Escrow Agent for any such act or forbearance.

**EXHIBIT 30**

**EXHIBIT 30**

C. It is expressly understood and agreed that the Escrow Agent, without any obligation to exercise such right, retains the right to resign its duties as Escrow Agent under this transaction at any time and at its sole discretion, and/or to refrain from taking any act to furtherance of the subject transaction which, at the sole discretion of the Escrow Agent, is deemed inadvisable.  No liability shall accrue to Escrow Agent for any such act or forbearance.

IN WITNESS WHEREOF, the parties hereto have caused their signatures to be affixed hereto as of the date first above written.

**BUYER:**                                                        **SELLER:**

Magic TRIC I, LLC, an Indiana                     Emerald City Empire, LLC, a
limited liability company                              Nevada limited liability company

By:  Magic TRIC I Member, LLC                  By:  Desert Oasis Management
an Indiana limited liability company            Inc. a Nevada corporation
Its:  Sole Member                                        Its:  Manager

By:_____                       By:_____
Christopher L. Seger, Manager                   Randel W. Aleman, President


                                                                The Randel W. Aleman
                                                                Separate Property Trust

                                                                By:_____
                                                                Randel W. Aleman, Trustee

File No.: 2457956                              Page 7 of 7

**EXHIBIT 30**

**EXHIBIT 30**

IN WITNESS WHEREOF, the parties hereto have caused their signatures to be affixed hereto as of the date first above written.

**BUYER:**

Magic TRIC I, LLC, an Indiana
limited liability company

By: Magic TRIC I Member, LLC
an Indiana limited liability company
Its: Sole Member

By:_____
Christopher L. Seger, Manager

THIS DOCUMENT IS EXECUTED IN COUNTERPART

**SELLER:**

Emerald City Empire, LLC, a
Nevada limited liability company

By: Desert Oasis Management
Inc. a Nevada corporation
Its: Manager

By:_____
Randel W. Aleman, President

Allied 1031 Exchange, as Intermediary for Randel W. Aleman, Trustee of the Randel W. Aleman Separate Property Trust

Allied 1031 Exchange, as Intermediary for Sheldon W. Paul, Trustee of the Paul Family Trust

Allied 1031 Exchange, as Intermediary for James C. Michels and Ronda L. Michels, Trustees of the Michels Family Trust originally dated January 21, 2014, as amended

Allied 1031 Exchange

By:_____
Name:_____
Its:_____

READ AND APPROVED BY EXCHANGOR:

The Randel W. Aleman
Separate Property Trust

By:_____
Randel W. Aleman, Trustee

The Paul Family Trust

By:_____
Sheldon W. Paul, Trustee

The Michels Family Trust originally dated January 21, 2014, as amended

By:_____
James C. Michels, Trustee

By:_____
Ronda L. Michels, Trustee

The Todd and Laura Larkin Family Trust

By:_____
Todd S. Larkin, Trustee

By:_____
Laura A. Larkin, Trustee

File No.: 2457956                    Page 8 of 9

**EXHIBIT 30**

IN WITNESS WHEREOF, the parties hereto have caused their signatures to be affixed hereto as of the date first above written.

**BUYER:**

Magic TRIC I, LLC, an Indiana
limited liability company

By:  Magic TRIC I Member, LLC
an Indiana limited liability company
Its:  Sole Member

By:_____
Christopher L. Seger, Manager

THIS DOCUMENT IS EXECUTED IN COUNTERPART

**SELLER:**

Emerald City Empire, LLC, a
Nevada limited liability company

By:  Desert Oasis Management
Inc. a Nevada corporation
Its:  Manager

By:_____
Randel W. Aleman, President

THIS DOCUMENT IS EXECUTED IN COUNTERPART

Allied 1031 Exchange, as Intermediary for Randel W. Aleman, Trustee of the Randel W. Aleman Separate Property Trust

Allied 1031 Exchange, as Intermediary for Sheldon W. Paul, Trustee of the Paul Family Trust

Allied 1031 Exchange, as Intermediary for James C. Michels and Ronda L. Michels, Trustees of the Michels Family Trust originally dated January 21, 2014, as amended

Allied 1031 Exchange

By:_____
Name:_____
Its:_____

READ AND APPROVED BY EXCHANGOR:

The Randel W. Aleman
Separate Property Trust

By:_____
Randel W. Aleman, Trustee

THIS DOCUMENT IS EXECUTED IN COUNTERPART

The Paul Family Trust

By:_____
Sheldon W. Paul, Trustee

The Michels Family Trust originally dated January 21, 2014, as amended

By:_____
James C. Michels, Trustee

By:_____
Ronda L. Michels, Trustee

The Todd and Laura Larkin Family Trust

By:_____
Todd S. Larkin, Trustee

THIS DOCUMENT IS EXECUTED IN COUNTERPART

File No.: 2457956

**EXHIBIT 30**

IN WITNESS WHEREOF, the parties hereto have caused their signatures to be affixed hereto as of the date first above written.

**BUYER:**

Magic TRIC I, LLC, an Indiana
limited liability company

By:  Magic TRIC I Member, LLC
an Indiana limited liability company
Its:  Sole Member

By: THIS DOCUMENT IS EXECUTED IN COUNTERPART
Christopher L. Seger, Manager

**SELLER:**

Emerald City Empire, LLC, a
Nevada limited liability company

By:  Desert Oasis Management
Inc. a Nevada corporation
Its:  Manager

By: THIS DOCUMENT IS EXECUTED IN COUNTERPART
Randel W. Aleman, President

Allied 1031 Exchange, as Intermediary for Randel W. Aleman, Trustee of the Randel W. Aleman Separate Property Trust

Allied 1031 Exchange, as Intermediary for Sheldon W. Paul, Trustee of the Paul Family Trust

Allied 1031 Exchange, as Intermediary for James C. Michels and Ronda L. Michels, Trustees of the Michels Family Trust originally dated January 21, 2014, as amended

Allied 1031 Exchange

By:_____
Name:_____
Its:_____

READ AND APPROVED BY EXCHANGOR:

The Randel W. Aleman
Separate Property Trust

THIS DOCUMENT IS EXECUTED IN COUNTERPART
By:_____
Randel W. Aleman, Trustee

The Paul Family Trust

By:_____
Sheldon W. Paul, Trustee

The Michels Family Trust originally dated January 21, 2014, as amended

By:_____
James C. Michels, Trustee

By:_____
Ronda L. Michels, Trustee

The Todd and Laura Larkin Family Trust

By:_____
Todd S. Larkin, Trustee

File No.: 2457956

Page 8 of 9

**EXHIBIT 30**



Stewart Title Company
5390 Kietzke Ln., Suite 101
Reno, NV 89511
(775) 332-7100 main   (775) 332-7121 fax
Tami.Haworth@stewart.com

## SUPPLEMENTAL ESCROW INSTRUCTIONS

Date: February 11, 2025

To:        Stewart Title Company
File No.:   2457956

Original instructions in connection with the above referenced escrow, dated February 11, 2025 are hereby amended and/or supplemented as follows:

BY EXECUTION HEREOF, ALL PARTIES ACKNOWLEDGE that all conditions and/or contingencies regarding the close of this escrow have been fully satisfied and Stewart Title Company, is authorized and instructed to consummate this transaction.

ALL OTHER TERMS AND CONDITIONS OF THE ORIGINAL INSTRUCTIONS SHALL REMAIN IN FULL FORCE AND EFFECT.

**BUYER:**

Magic TRIC I, LLC, an Indiana
limited liability company

By: Magic TRIC I Member, LLC
an Indiana limited liability company
Its: Sole Member

By:
Christopher L. Seger, Manager

THIS DOCUMENT IS EXECUTED IN COUNTERPART

**SELLER:**

Emerald City Empire, LLC, a
Nevada limited liability company

By: Desert Oasis Management
Inc. a Nevada corporation
Its: Manager

By:
Randel W. Aleman, President

The Randel W. Aleman
Separate Property Trust

By:
Randel W. Aleman, Trustee

File No.: 2457956                                                          Page 1 of 1

## EXHIBIT 30



Stewart Title Company
5390 Kietzke Ln., Suite 101
Reno, NV 89511
(775) 332-7100 main   (775) 332-7121 fax
Tami.Haworth@stewart.com

# SUPPLEMENTAL ESCROW INSTRUCTIONS

Date:  February 11, 2025

To:        Stewart Title Company
File No.:    2457956

Original instructions in connection with the above referenced escrow, dated February 11, 2025 are hereby amended and/or supplemented as follows:

BY EXECUTION HEREOF, ALL PARTIES ACKNOWLEDGE that all conditions and/or contingencies regarding the close of this escrow have been fully satisfied and Stewart Title Company, is authorized and instructed to consummate this transaction.

ALL OTHER TERMS AND CONDITIONS OF THE ORIGINAL INSTRUCTIONS SHALL REMAIN IN FULL FORCE AND EFFECT.

**BUYER:**                                              **SELLER:**

Magic TRIC I, LLC, an Indiana                 Emerald City Empire, LLC, a
limited liability company                          Nevada limited liability company

By:  Magic TRIC I Member, LLC              By:  Desert Oasis Management
an Indiana limited liability company        Inc. a Nevada corporation
Its:  Sole Member                                   Its:  Manager

By:_____              By:_____
Christopher L. Seger, Manager               Randel W. Aleman, President

                                                               _____
                                                               The Randel W. Aleman
                                                               Separate Property Trust

                                                               By:_____
                                                               Randel W. Aleman, Trustee

File No.: 2457956                                                            Page 1 of 1

# EXHIBIT 30

**EXHIBIT 30**



After printing this label:
**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**EXHIBIT 30**