EXHIBIT 32

CONFIDENTIAL

written notice to Tenant, except in the case of an emergency, but in any such case of emergency, Landlord shall provide Tenant notice of entry as soon as reasonably practicable.

15.2.2   In the event that Tenant is unable to operate its business for a period in excess of forty-eight (48) hours (or longer) as a result of Landlord's entry, all Rent will abate from the third (3rd) day until the date on which Tenant can reasonably reopen for business. The abatement of rent will be based upon the percentage of the Premises, which cannot be used by Tenant, in the exercise of its reasonable business judgment, for Tenant's business as a result of Landlord's entry.

15.2.3   No change or alteration may be made to the size, area, height, dimensions or configuration of the Premises, without Tenant's prior written consent which will not be unreasonably withheld, conditioned, or delayed.

15.2.4   No columns, beams, girders, braces, supports (collectively, "Supports") or shafts of any kind may be installed in the Premises except to replace existing Supports or shafts. Replacements must be in the exact location of the item replaced and must be no larger in size or dimensions than such replaced items.  Except as existing as of the Effective Date, no electrical or plumbing lines shall be placed in the Premises unless located behind walls or above drop ceilings or if replacing existing lines in the exact location as the line being replaced.

15.2.5   Any restoration work or alteration work at the Premises which is necessitated by or results from Landlord's entry, including, without limitation, any work necessary to conceal any element whose presence is permitted hereunder, (except if such change is necessitated by Tenant's negligence or willful acts or that of its agents or contractors), shall be performed by Landlord at its expense.

15.2.6   Landlord shall indemnify, defend, and hold Tenant harmless from and against any and all claims, loss, liability, or damages, including reasonable attorney's fees, resulting from Landlord's entry hereunder, provided such entry was not the result of Tenant's negligence or willful acts, or that of its agents, employees, or contractors.

## 16   SUBORDINATION; ESTOPPEL

16.1   RESERVED.

16.2   At Landlord's written request, Tenant shall subordinate this Lease and Tenant's interest and rights under this Lease to the lien of any future Mortgage, provided that the holder of such future Mortgage has executed, acknowledged and delivered to Tenant a commercially reasonable subordination, non-disturbance and attornment agreement in the form substantially attached hereto as Exhibit D. "Mortgage" means any deed of trust, security deed, mortgage, security assignment and any other similar encumbrance.

16.3   Estoppel Certificates. Tenant and Landlord will, within thirty (30) business days after a written request of the other, execute and deliver to the other a certificate in the form attached as Exhibit E, with any appropriate exceptions to the statements noted.  If either Landlord or Tenant fails to timely respond to a request for an estoppel certificate, then the other party may deliver an additional request accompanied by a second copy of the same estoppel certificate, and if the receiving party does not respond within ten (10) business days, then that party will be deemed to have agreed to all matters set forth in good faith in the

TRT #456363



EXHIBIT 32

EXHIBIT 32

CONFIDENTIAL

estoppel certificate, except to the extent that the party requesting the estoppel has actual knowledge to the contrary.

## 17   NOTICES

17.1   <u>Form of Notice</u>. In order to be effective, any notice, demand, request, consent, approval, submittal or communication that either party desires or is required to give to the other party or any other person shall be in writing and delivered by a nationally recognized overnight delivery courier to the address set forth in the Basic Lease Provisions (with an email copy if provided in the Basic Lease Provisions). Unless otherwise expressly provided for herein, receipt of an email copy of a notice shall not be deemed official receipt of a notice.  Any notice given by overnight delivery service shall be deemed given upon delivery.  Any notice may be given by counsel for Landlord or Tenant. Either party may change their notice address by written notice to the other party.

## 18   WAIVER

18.1   <u>Delay or Omission</u>. No delay or omission in the exercise of any right or remedy of Landlord on any default by Tenant shall impair such a right or remedy or be construed as a waiver of any such default or of any subsequent default concerning the same or any other provision of this Lease.

18.2   <u>Written Notice</u>.  No act or conduct of Landlord or Tenant, including, without limitation, the acceptance of the keys to the Premises, shall constitute an acceptance by Landlord of the surrender of the Premises by Tenant before the expiration of the term or an acceptance by Tenant of the delivery of the Premises to Tenant prior to the Delivery Date. Only a notice from Landlord to Tenant shall constitute acceptance of the surrender of the Premises and accomplish a termination of the Lease. Only compliance with the Delivery Conditions pursuant to this Lease shall constitute acceptance of delivery of possession by Tenant.

18.3   <u>Consent or Approval</u>. Except as otherwise set forth herein, no such consent by either party shall be unreasonably withheld, delayed or conditioned.

18.4   <u>Default</u>. Any waiver by either party of any default must be in writing and shall not be a waiver of a continuing default or of any other default concerning the same or any other provision of this Lease.

## 19   EXPIRATION OF TERM; HOLDING OVER

19.1   <u>Expiration of the Term</u>.  Upon expiration or sooner termination of the Term, Tenant shall vacate and deliver the Premises to Landlord in broom-clean condition, subject to wear and tear and damage by casualty and/or governmental action and any maintenance, repair or restoration obligations that are the responsibility of the Landlord pursuant to the terms of this Lease and free of Tenant's personal property and equipment, unless mutually agreed otherwise in writing. Any permanently installed alterations, additions and/or tenant improvements in the Premises at the expiration or earlier termination of this Lease will become Landlord's property and shall remain in the Premises unless Landlord has previously identified such alterations, additions, and/or tenant improvements as ones requiring removal. Tenant may remove its trade fixtures, furniture, equipment and merchandise, which shall remain Tenant's personal property. Tenant may also remove its interior and exterior signage, provided Tenant repairs any damage to the Premises caused by such sign removal. Notwithstanding anything contained herein to the contrary, Tenant

TRT #456363



EXHIBIT 32

**EXHIBIT 32**

CONFIDENTIAL

will be responsible for repairing any and all alterations Tenant made to the roof and will restore the roof to the roof's condition existing prior to the Effective Date in order to restore the original warranty.

     19.2   <u>Holding Over</u>.  If Tenant remains in possession of the Premises after expiration of the Term, such possession by Tenant shall be deemed to be a month-to-month tenancy terminable on thirty (30) days prior written notice given at any time by either party.  All provisions of this Lease shall apply to the month-to-month tenancy, provided that the Base Rent shall be one hundred fifty percent (150%) of the Base Rent in effect immediately prior to said expiration (the "<u>Holdover Rent</u>").  However, Landlord agrees that if Tenant and Landlord are negotiating a renewal or extension of the Lease in good faith and as a result Tenant remains in the Premises after the expiration date, this will not constitute a hold over, Tenant shall not be required to pay the Holdover Rent but will continue to pay one hundred five percent (105%) of the Rent paid by Tenant during the last month of the Term.  Rent for the extension term shall then be retroactively adjusted upon execution of the renewal or extension agreement. Tenant will not be liable for, and Landlord releases Tenant from, any claims for speculative, indirect or consequential damages, including any lost sales or profits of Landlord in connection with this Section.

## 20   <u>GENERAL CONDITIONS</u>

     20.1   <u>Time of Essence</u>. Time is of the essence of each provision of this Lease.

     20.2   <u>Corporate or Partnership Authority</u>. If either party is a corporation (or limited liability company or partnership), then such party represents that those persons signing on behalf of said party are authorized to do so on behalf of and as the act of said party, and the failure of such representation to be true shall constitute a default and material breach hereof on the part of such persons.

     20.3   <u>Successors</u>. This Lease shall be binding on and inure to the benefit of the parties and their successors and assigns.

     20.4   <u>Rent Payable</u>. Rent and all other sums payable under this Lease must be paid in United States Dollars (USD) the lawful money of the United States of America.  Tenant may pay by check, bank wire transfer or electronic payment, at its option.

     20.5   <u>Landlord Liability</u>. Tenant agrees that if Landlord shall fail to perform any covenant or obligation on its part to be performed, and as a consequence thereof, or if on any other claim by Tenant concerning the Premises or this Lease, Tenant shall be entitled to receive or Tenant shall recover a money judgment against Landlord, then such judgment shall be satisfied only out of Landlord's interest in the Premises including the rents and proceeds of the Premises and any insurance proceeds, and Landlord shall have no personal liability whatsoever with respect to any such default or judgment. The limitation of this Section shall not apply to or limit any injunctive or other equitable, declaratory or other forms of relief to which Tenant may be entitled to, or any other remedy or action against Landlord which does not involve the personal liability of Landlord for monetary damages from property other than Landlord's interest in the Premises and to the rents and proceeds of the Premises (including insurance proceeds) as aforesaid.

     20.6   <u>Landlord and Tenant</u>.  If and when included within the term "Landlord" or "Tenant" as used in this instrument, there is more than one person, firm or entity, each shall be jointly and severally liable for the obligations of Landlord or Tenant as the case might be.

     20.7   <u>Brokerage Commissions</u>. Each party represents and warrants to the other party that it has not had dealings in any manner with any real estate broker, finder or other person with respect to the Premises and the negotiation and execution of this Lease except the brokers listed in the Basic Lease Provisions ("<u>Brokers</u>"). Except for the commissions and fees to be paid to Brokers as provided in this

29

TRT #456363



**EXHIBIT 32**

EXHIBIT 32

CONFIDENTIAL

Section, each party shall indemnify and hold harmless the other party from all damage, loss, liability and expense (including attorneys' fees and related costs) arising out of or resulting from any claims for commissions or fees that have been or may be asserted against the other party by any broker, finder or other person with whom the indemnifying party has dealt, or purportedly has dealt, in connection with the Premises and the negotiation and execution of this Lease. Landlord shall be solely responsible to pay the broker leasing commissions to Brokers in connection with the Premises and the negotiation and execution of this Lease, pursuant to a separate agreement between Landlord and Brokers.

20.8    Exhibits.  All exhibits referred to are attached to this Lease and incorporated by reference.

20.9    Force Majeure. If either party hereto is delayed or hindered in or prevented from the performance of any obligation required hereunder by Force Majeure, the time for performance of such obligation shall be extended for the period of the delay, provided that Force Majeure shall not excuse prompt and timely payments of Rent and other monetary amounts when due under this Lease except when (A) the Commencement Date and/or Rent Commencement Date is delayed by reason of Force Majeure, (B) such payment is excused pursuant to other provisions of this Lease, or (C) Tenant is unable to reasonably operate at and use the Premises for Tenant's intended use through no fault of Tenant despite its good faith and diligent efforts to do so, then Rent shall be abated to the extent Tenant's Permitted Use is hindered.  "Force Majeure" means unforeseeable causes beyond the reasonable control of the party whose performance is affected including, including, without limitation, industry wide strikes, lockouts or labor disputes, acts of God, plague, endemics, pandemics (including without limitation, COVID-19 (2019-nCoV)), disease or other outbreaks of infectious disease or any other public health crisis, inclusive of quarantine or other employee restrictions, declaration of a national, regional or local state of emergency, an inability to obtain labor or materials or reasonable substitutes therefor that could not reasonably have been anticipated, governmental restrictions (including "shelter-in-place", "lockdown", "stay home" or similar orders), regulations, or controls, delay in governmental entities' issuance of permits, certificates of occupancy or inspection final approval beyond time periods typical for the area, enemy or hostile governmental action, civil commotion, fire or other casualty, curtailment of transportation facilities. Any party claiming delay due to Force Majeure must provide written notice thereof to the other party within seven (7) days after the commencement of the Force Majeure event. Such notice must detail the event constituting the Force Majeure delay and describe the reasonable actions such party is taking to mitigate the delay. If Force Majeure is continuing and such notice is required and not timely given, then the Force Majeure delay will be deemed to have commenced on the day that is seven (7) days prior to the day on which notice is given.

20.10   Relationship. Nothing contained herein shall be deemed to create any relationship between the parties hereto other than the relationship of Landlord and Tenant.

20.11   Easements. Landlord with respect to the Premises, Building and Land, shall not grant any future easements, rights and dedications, nor cause the recordation of parcel maps and restrictions without the prior written consent of Tenant which shall not be unreasonably withheld.

20.12   Confidentiality. Landlord agrees that this Lease and the terms contained herein will be treated as strictly confidential during the Term of this Lease and pursuant to the terms of the confidentiality agreement (the "NDA") dated September 20, 2024.  Tenant's obligation to pay Rent to any successor Landlord under this Lease shall be subject to such successor's entering into Tenant's standard form of NDA.

20.13   Arbitration.  Any dispute related to the terms and conditions of this Lease that Tenant and Landlord mutually agree to arbitrate shall be resolved by a single arbitrator mutually agreed to by Landlord and Tenant having no financial or personal interest in the business affairs of either of the parties, before the American Arbitration Association (AAA) or the Judicial Arbitration and Mediation Services (JAMS) under the arbitration rules of the AAA or JAMS. The arbitration shall be held in the county in which the Premises

30

TRT #456363



EXHIBIT 32

EXHIBIT 32

CONFIDENTIAL

are located. The decision of the arbitrator shall be final and binding on the parties and judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction. The fees and expenses of the arbitrator shall be paid half by Landlord and half by Tenant unless the arbitrator decides otherwise in its decision.

20.14  <u>Waiver of Consequential Damages.</u> Notwithstanding anything herein to the contrary, neither Landlord nor Tenant shall be liable to the other for any special, indirect or consequential damages, such as lost profits or interruption of either party's business, except that this waiver shall not limit the indemnification obligations of either party under this Lease with respect to third party claims.

20.15  <u>Commencement of Obligations</u>.  For the purposes of clarity, except with respect to Section 1.3, all of Tenant's obligations applicable to the Premises set forth herein this Lease shall not become effective unless and until the Commencement Date has occurred.

20.16  <u>Intellectual Property</u>.  It is expressly understood and agreed that no rights are granted hereunder whatsoever to Landlord with respect to any trademarks, copyrights, designs, drawings, specifications, trade secrets and other rights and registrations or other intellectual property whatsoever belonging to and/or used by Tenant or any Affiliate of Tenant (collectively, "<u>Tenant's Intellectual Property</u>").  Without limiting the foregoing, Landlord may not use Tenant, Tenant's name, Tenant's Intellectual Property, or any images of Tenant at the Premises in any press releases, advertising, promotional materials, or any other publicly disseminated information without the express written consent of Tenant in each instance, which consent may be withheld by Tenant in its sole and absolute discretion. Landlord shall not make any use of Tenant's Intellectual Property whatsoever, and Tenant shall be entitled to immediate injunction as well as any and all other legal and equity remedies as a result of any such use or alleged use by Landlord.

## 21  <u>INTERPRETATION OF LEASE</u>

21.1  <u>Applicable Law</u>. This Lease shall be construed and interpreted in accordance with the laws of the state in which the Premises are located.

21.2  <u>Integrated Agreement; Modification</u>. This Lease constitutes the entire agreement between the parties with respect to the subject matter hereof.  There are no promises, agreements, conditions, undertakings, warrants, representations, whether oral or written, between the parties with respect to the subject matter hereof except as set forth in this Lease.  This Lease supersedes all previous agreements between the parties with respect to the subject matter hereof. This Lease cannot be modified, supplemented, or amended except by an instrument in writing signed by both parties. Each party agrees that this Lease is the result of good faith negotiations and shall be interpreted as though it were drafted by both parties.

21.3  <u>Provisions Are Covenants and Conditions</u>. All provisions, whether covenants or conditions, creating obligations on the part of Tenant and Landlord shall be deemed both covenants and conditions.

21.4  <u>Use of Definitions</u>. The definitions contained in this Lease shall be used to interpret this Lease.

21.5  <u>Headings; Ambiguity</u>. The Article and Section headings used in this Lease are for the purpose of convenience only; they shall not be construed to limit or to extend the meaning of any part of

31

TRT #456363



EXHIBIT 32

EXHIBIT 32

CONFIDENTIAL

this Lease.  This is a negotiated Lease.  Should any provision of this Lease be found to create an ambiguity, the parties waive any right they may have to construe the ambiguity against the drafting party.

21.6    <u>Singular and Plural</u>. When required by the context of this Lease, the neuter shall include the masculine and feminine and the singular shall include the plural.

21.7    <u>Joint and Several Obligations</u>. "Party" or "party" shall mean Landlord or Tenant; and if Landlord or Tenant is more than one person, the obligations imposed on that party shall be joint and several.

21.8    <u>Severability</u>. The unenforceability, invalidity, or illegality of any provision except those requiring payment of rent or any other sum to Landlord shall not render the other provisions unenforceable, invalid, or illegal.

21.9    <u>Counterparts.</u> This Lease may be executed in any number of counterparts with the same effect as if all of the parties had signed the same document.  In place of the transmittal of an original document, such executed counterpart may be transmitted to the other parties by any electronic document or portable document format (PDF) and such electronic or PDF document shall have the full force and effect of an original document.  All fully executed counterparts, whether original documents, electronic or PDF documents or a combination thereof, shall be construed together and shall constitute one and the same Lease.

21.10   <u>Business Days</u>.  As used herein, "business days" or "Business Days" means any day of the week except a Saturday, a Sunday or a federal holiday or a holiday in the state in which the Premises is located on which banks and schools are closed.

21.11   <u>Prevailing Party</u>. If either party commences litigation against the other arising out of or in connection with this Lease, the prevailing party in such litigation shall be entitled to its costs of suit and reasonable attorneys' fees as may be awarded by the court.  Each of Tenant and Landlord and their respective agents expressly waive any claims, and shall not be awarded any judgments, for consequential, special, punitive, or similar-type damages. With respect to any litigation arising out of or in connection with this Lease, Landlord and Tenant hereby expressly waive the right to a trial by jury.

## 22    <u>SUPERCHARGER</u>

22.1    <u>Acknowledgement.</u>  Landlord acknowledges, and hereby approves, Tenant's use of the Premises, including any part of the Land, for the installation of customer-facing electrical vehicle charging stations. Landlord shall not have any right to request or accept payment from Tenant's clients or customers or any other third parties in connection with the charging stations.

## 23    <u>RIGHT OF FIRST OFFER TO PURCHASE</u>

23.1    <u>Right of First Offer to Purchase</u>.  Landlord hereby grants to Tenant a one-time right of first offer to purchase, upon the terms and conditions hereinafter set forth, the Premises, when the same becomes available for purchase during the Term, prior to entering into a contract to sell the Premises to any person or entity. For the avoidance of doubt, this right of first offer will terminate in the event Tenant does not exercise the right set forth in this Article 23 and the Premises is subsequently sold.

23.1.1   The Premises shall be deemed to be "available for purchase" when either (i) prior to Landlord marketing the Premises for sale, a prospective purchaser has submitted a proposal (whether

TRT #456363



EXHIBIT 32

**EXHIBIT 32**

CONFIDENTIAL

verbally or in writing) to purchase the Premises or any part thereof from Landlord, or (ii) Landlord is ready to market the Premises for sale.

23.1.2  When the Premises becomes available for purchase, Landlord shall give Tenant written notice ("First Landlord's Purchase Offer Notice") setting forth (i) the purchase price for the Premises ("Purchase Price"), (ii) the contingencies, if any, to the purchaser's obligation to purchase the Premises, (iii) the length of the purchaser's due diligence, title review and inspection periods, if any, (iv) the closing date, (v) all other economic terms, (vi) the representations, warranties and/or indemnities, if any, being made by Landlord in favor of the purchaser, and (vii) the condition in which the Premises is to be delivered to the purchaser at closing.

23.1.3  Upon delivery of Landlord's Purchase Offer Notice to Tenant, Tenant shall have thirty (30) days thereafter to notify Landlord in writing ("Tenant's Purchase Notice") of Tenant's desire to purchase the Premises on the terms and conditions set forth in the First Landlord's Purchase Offer Notice. If Tenant delivers Tenant's Purchase Notice to Landlord within said thirty (30) day period, Landlord and Tenant shall have a period of thirty (30) days thereafter in which to enter into a contract for the purchase and sale of the Premises on such terms and conditions contained in the Landlord's Purchase Offer Notice (if entered into, "Purchase Contract").  If Tenant does not deliver Tenant's Purchase Notice to Landlord with said thirty (30) day period or Landlord and Tenant fail to enter into a Purchase Contract within said thirty (30) day period, then Landlord shall have the right thereafter to sell the Premises to another prospective purchaser.

23.1.4  Neither Landlord nor Tenant shall release any of the information set forth in the Landlord's Purchase Offer Notice to any third party other than their respective lenders, members, officers, employees, agents, consultants, attorneys, accountants and exchange facilitators as may be necessary to permit each party to perform its obligations pursuant to the Purchase Contract, and then only if any such parties not employed by Landlord or Tenant, as relevant, agree to execute a non-disclosure agreement satisfactory to the disclosing party without the prior written consent of the non-disclosing party and, in the absence of such consent, all such information shall be kept strictly confidential.

23.1.5  Notwithstanding the foregoing, in the event Tenant does not deliver Tenant's Purchase Notice to Landlord within the applicable time period or Landlord and Tenant fail to enter into a Purchase Contract within the applicable time period, and Landlord subsequently agrees upon terms with a third-party to sell the Premises for a purchase price that is 10% less than the Purchase Price, then, prior to closing on the sale to such third-party, Landlord shall give Tenant written notice of such lower purchase price ("Second Landlord's Purchase Offer Notice") and Tenant shall have fifteen (15) days thereafter to provide Landlord with Tenant's Purchase Notice of Tenant's desire to purchase the Premises at the purchase price set forth in the Second Landlord's Purchase Offer Notice and on the other terms and conditions set forth in the First Landlord's Purchase Offer Notice. If Tenant delivers Tenant's Purchase Notice to Landlord within said fifteen (15) day period, Landlord and Tenant shall have a period of thirty (30) days thereafter in which to enter into a Purchase Contract.  If Tenant does not deliver Tenant's Purchase Notice to Landlord with said fifteen (15) day period, or Landlord and Tenant fail to enter into a Purchase Contract within said thirty (30) day period through no bad faith or commercially unreasonable dealing of Landlord, then Landlord shall have the right thereafter to sell the Premises to another prospective purchaser and Tenant shall no longer have any further right of first offer under this Lease to purchase the Premises.

23.2  Notification of Sale.  If at any time during the Lease Term, Landlord elects to market the Building, the Land, or any portion thereof, for sale, Landlord shall, as a condition precedent thereto, provide to Tenant no less than ten (10) days prior written notice of Landlord's intention to market the same. Subject

TRT #456363



**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

to Section 23, nothing in this Lease shall prevent Landlord from selling the Premises and any such sale shall operate to release Landlord from liability hereunder after the date of such conveyance.

**[SIGNATURE PAGE FOLLOWS]**

34

TRT #456363



**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

IN WITNESS WHEREOF, Landlord and Tenant have executed this Lease as of the Effective Date set forth below.

| Landlord: | Tenant: |
|---|---|
| **MAGIC TRIC I, LLC** | **TESLA, INC.,**<br>**dba TESLA MOTORS, INC.** |
| By: _Adam C Seger_ | By: _(signature)_ |
| Name: Adam C Seger | Name: Lindsey Jubel |
| Its: Authorized Signatory | Its: Director, Infrastructure and Development |
| Date: 2/24/25 | Date: 2/12/2025 |

35

TRT #456363

**TESLA**

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

## EXHIBIT A

## SITE PLAN OF THE PREMISES



**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

## EXHIBIT A-1

### LEGAL DESCRIPTION OF THE LAND

All that certain real property situated in the County of Storey, State of Nevada, described as follows:

All that certain parcel situate within a portion of the Northeast One-Quarter (NE1/4) of Section Two (2), Township Nineteen (19) North, Range Twenty-Two-(22) East, Mount, Diablo Meridian, Storey County, Nevada, being a portion of Parcel 2018-4, as shown on Record of Survey Map, file No. 127128, in the Official Records of Storey County, Nevada, a portion of Parcel 2008-26, as shown on Record of Survey Map, File No. 109143, in the Official Records of Storey County, Nevada, and a portion of Parcel 2023-14, as shown on Record of Survey Map File No. 138372, in the Official Records of Storey County, Nevada, said parcel being more particularly described as follows;

Beginning at the Northeast corner of said Parcel 2023-14, from which the Northeast corner of said Section 2, bears North 56°36'47" East, 1209.45 feet;

Thence along the Easterly line of said Parcel 2023-14, and the prolongation thereof, South 00°01'57" East, 1679.18 feet to the Southerly line of Parcel 2018-4;

Thence along said Southerly line, South 59°05'24" West, 628.40 feet;

Thence leaving said Southerly line, South 00°01'57" East 285.54 feet tot the Southerly line of said Parcel 2008-26, said point being on the Northerly right-of-way line of Denmark Drive per Document No. 107607, in the Official Records of Storey County, Nevada.;

Thence along said Southerly parcel line, being coincident with said Northerly right-pf-way line, South 82°38'48" West, 164.71 feet to the Southwest corner of said Parcel 2008-26;

Thence along the Westerly line of said Parcel 2008-26 and the prolongation thereof, being on the Southerly line of said Parcel 2018-4, North 14°47'30" West, 598.89 feet;

Thence continuing along said Southerly line, North 76°36'34" West, 309.56 feet to the Southwest corner of said Parcel 2018-4;

Thence along the Westerly line of said Parcel 2018-4, the following nine (9) courses and distances:
1) North 27°52'22" East, 69.99 feet;
2) North 36°22'33" East, 133.70 feet, to the beginning of a curve to the left;
3) 121.66 feet along the arc of a 170.00 foot radius curve, through a central angle of 41°00'19" to a point of a reverse curvature;
4) 483.67 feet along the arc of a 1980.00 foot radius curve to the right, through a central angle of 13°59'46" to a point of reverse curvature;
5) 402.79 feet along the arc of a 5020.00 foot radius curve to the left, through a central angel of 04°35'50";

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

6) North 04°46'09° East, 330.06 feet to the beginning of a curve to the right;

7) 85.11 feet along the arc of a 1020.00 foot radius curve, through a central angle of 04°46"51;

8) North 00°00'42" West 115.02 feet to the beginning of a curve to the left and;

9) 77.22 feet along the arc of a 170.00 foot radius curve, through a central angle of 26D01'34" to the Northwest corner of said Parcel 2018-4;

Thence along the Northerly line of said Parcel 2019-4, South 46°33'45" East, 162.70 feet to the Northwest corner of said Parcel 2023-14;

Thence along the Northerly line of said Parcel 2023-14, North 89°58'03" East, 809.53 feet to the Point of Beginning.

Reference is hereby made of record to Parcel 2023-16, of the Record of Survey Map recorded October 3, 2023, as Document No. 138375, of Official Records.

The above legal description appeared previously in that certain Record of Survey Deed recorded October 3, 2023, as Document No. 138374, of Official Records, pursuant to NRS Section 6.111.312

Exhibit A-1

2

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

## EXHIBIT A-2

## SITE PLAN OF THE BUILDING

**Please see the base-building plans provided by Landlord to Tenant via Dropbox. Such base-building plans are a permit set and subject to change based on comments from the applicable governmental authority having jurisdiction. Base building plans with dates referenced in pages 41-44 thereof**

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

## EXHIBIT A-3

## PARKING AREA



**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

## EXHIBIT B

### DELIVERY CONDITION/"LANDLORD'S WORK"

On or before the Required Delivery Date, Landlord, at Landlord's sole cost and expense must deliver the Premises in the following conditions:

(i)     broom clean and free of other tenants, any personal property, furniture, furnishings and debris;

(ii)    in ready condition for Tenant's Work with all existing open permits relating to the Premises satisfied and/or closed as the case may be, to the extent the same would delay or prohibit Tenant from obtaining the permits necessary for construction of Tenant's Work;

(iii)   free and clear of all hazardous materials;

(iv)    in a dry, watertight, leak-free and structurally sound condition;

(v)     in compliance with all current applicable laws;

(vi)    free of egress/ingress by third parties, unless as agreed to and accepted by Tenant;

(vii)   materially similar to the building described in the Building Outline Specifications listed on Exhibit B-1 ("Landlord's Work");

(viii)  in accordance with the requirements and conditions of this Exhibit B

Landlord shall be responsible at its sole cost and expense for all Landlord's drawings, permits and/or governmental approvals associated with the Delivery Condition. Landlord agrees Landlord shall provide Landlord's construction document and final permitted drawings to Tenant and reasonably cooperate with Tenant's effort to complete Tenant's drawings, permits and/or governmental approval associated with Tenant's improvements.

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

## EXHIBIT B-1

### Building Outline Specifications

**PROJECT SUMMARY – Pure "The Nest" Building 3**

- Location:

  455 Denmark Drive
  Sparks, Nevada 89434

- Site Acreage:

  +/- 43.6 acres

- Square Footage:

  649,240 GSF

- Building Dimensions:

  520' x 1,242'

- Bay Sizes:

  Dock Bays – 54' x 60'

  Interior Bays – 54' x 50'

- Clear Height:

  36' starting from the first column line

- Pavement:

  Truck Lanes – HD Asphalt – 4" AC on 6" AB
  Truck Aprons and Dolly Pads – 6" 4000psi concrete
  Car Parking – LD Asphalt – 3" AC on 6" AB

- Truck Court:

  Per Site Plan

- Car Parking:

  Per Site Plan

- Foundations:

  Spread Footings

- Slab on Grade:

  7" thick, 4000psi concrete typical – vapor barrier at (4) office
  locations. #4 bar at 18"OC around perimeter
  12" thickened slab, 4000psi concrete – throughout (4)
  Northern most bays for coil storage – 112,320 SF total of
  thickened slab per overall floor plan

- Exterior Walls:

  Load bearing concrete tilt walls erected from outside

- Structural Steel:

  Gray factory primed tube steel columns
  G30 White factory primed roof deck (underside)
  Gray factory primed joists and girders

- Lateral System:

  Buckling restrained braces

- Roofing:

  60 mil mechanically fastened TPO over R-19.6

- Floor Sealer:

  Ashford (or equal) sealer and hardener

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

- Dock Doors: 70 - 9' x 10' manually operated OH Doors w/ z-guards
  Knockouts at other positions
  4 – 14' x 16' motorized drive-in doors w/ bollards

- Dock Equipment: 35 - 40,000lb hydraulic levelers, dock seals, bumpers, dock restrains, dock lights, and dock commanders with LV connections for enhanced associate operation

- Forklift Charging: Electrical infrastructure for 50+ forklift chargers with guardrails, epoxy flooring, and ventilation

- Fire Protection: ESFR System K-17/K-22 with (0) 2000GMP electric pumps as required per local pressures

- HVAC/Summer Ventilation: Code Minimum heating and ventilation – 50 degrees at outside air temp of 13 degrees F. Four (6) gas fired MAU's and ventilation hoods
  HVLS fans over dock speed bays (6x per speed bay)

- Electrical Service: 3000 amp service. 800A metered high voltage house panel provided as well as 400A low voltage panel and (2) 400A high voltage panel sections with 200A step down panels adjacent

- Additional Electric Features: Quad receptacles to every column adjacent to dock doors, electrical infrastructure to baler, compactor, and pallet wrap Power for (12) warehouse IDF cabinets throughout (2 receptacles on differing circuits at each IDF location)

- Interior Lighting: LED lighting 30fc open floor plan, full building, with additional whip length for future racking

- Clerestory Windows: 4' x 8' clerestory windows around perimeter at ~100' OC

- Interior Walls: Interior warehouse walls to be primed and painted Columns painted full height

- Office Entries: Two primary storefront entries with canopies at SW and SE corners

- Offices: ~6,750 GSF main office and breakroom at SW corner
  - Open office for 18+ associates
  - Office Breakroom for 18+ associates
  - Large conference room for 12+
  - (2) private offices
  - (2) single restrooms + (4) stall restrooms into warehouse
  - MDF room, janitors closet, and (2) storage rooms

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

## EXHIBIT C

### COMMENCEMENT DATE AGREEMENT

THIS AGREEMENT, made this _____ day of _____, 2025 by and between MAGIC TRIC I, LLC (the "Landlord") and TESLA, INC. (the "Tenant").

### WITNESSETH:

WHEREAS, Landlord and Tenant have entered into that certain Lease dated_____, 2024 ("Lease") for that certain real property situated in the City of Sparks, County of Storey, State of Nevada, commonly known as 455 Denmark Drive, as more particularly described in the Lease, and

WHEREAS, Landlord and Tenant now wish to document their agreement as to the commencement, rent commencement and expiration of the Term of the Lease.

**AGREEMENT:**

NOW, THEREFORE, in consideration of the Premises as described in the Lease and the covenants set forth therein, Landlord and Tenant agree as follows:

    (a) The Commencement Date of the Lease is _____.

    (b) The Rent Commencement Date of the Lease is _____.

    (c) The Expiration Date of this Lease is _____.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

| **Landlord:** | **Tenant:** |
|---|---|
| **MAGIC TRIC I, LLC** | **TESLA, INC.**<br>**dba TESLA MOTORS, INC.** |
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Its: _____ | Its: _____ |

Exhibit C

1

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

**EXHIBIT D**

**FORM OF SNDA**

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

Tesla, Inc.
1 Tesla Rd.
Austin, TX 78725
Attn:    Legal/ Lease Administration
TRT No. 456363

---

**SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT**

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT (this "Agreement") is made and entered into as of this _____ day of _____, 2025, by and among _____, a _____ ("Mortgagee"), _____, a _____, a _____ ("Tenant") and _____, a _____ ("Landlord").

RECITALS

A.    Mortgagee is the holder of a certain note (the "Note") and Mortgagee under a mortgage (the "Mortgage") dated _____, in which Landlord is named as the mortgagor, which Mortgage was recorded on _____, in the Official Records of Washoe County, State of Nevada, as Document No. _____. The Mortgage covers certain real property together with all appurtenances thereto and improvements thereon (the "Property") all as more particularly described in Exhibit A attached hereto and made a part hereof and which Property is commonly known as _____, in the City of Sparks, County of Storey, State of Nevada.

B.    Landlord is the owner in fee simple of the Property and is the current obligor under the Note.

C.    By Lease dated _____, 2025 (the "Lease"), Landlord leased to Tenant those certain premises (the "Premises") which constitutes or forms a portion of the property covered by the Mortgage and commonly known as 455 Denmark Dr. all as more particularly described in said Lease.

D.    The Lease is or may become (subject to this Agreement) subordinate in priority to the Mortgage.

E.    Tenant wishes to obtain from Mortgagee certain assurances that Tenant's possession of the Premises will not (subject to this Agreement) be disturbed by reason of the enforcement of the Mortgage covering the Premises or a foreclosure of the lien thereunder.

F.    Mortgagee is willing to provide such assurances to Tenant upon and subject to the terms and conditions of this Agreement.

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

## AGREEMENT

NOW, THEREFORE, in consideration of the above, the reciprocal promises hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do mutually agree as follows:

1.     Ratification.  The Lease now is or shall become upon the mutual execution of this Agreement subordinate in all respects to the Mortgage and to all renewals, modifications and extensions thereof, subject to the terms and conditions of this Agreement.  Tenant hereby affirms that the Lease is in full force and effect and that the Lease has not been modified or amended except for [list if any amendments].  Mortgagee acknowledges receipt of a copy of the Lease and hereby approves the same.

2.     Landlord's Default.  From and after the date Tenant receives a fully executed copy of this Agreement, Tenant will not seek to terminate the Lease by reason of any act or omission that constitutes (or would over time constitute) a default of Landlord until Tenant shall have given written notice of such act or omission to Mortgagee (at Mortgagee's last address furnished to Tenant) and until a period of thirty (30) days shall have elapsed, Mortgagee shall have the right, but not the obligation, to remedy such act or omission, provided however that if the act or omission does not involve the payment of money from Landlord to Tenant and (i) is of such a nature that it could not be reasonably remedied within the thirty (30) day period aforesaid, or (ii) the nature of the act or omission or the requirements of local law require Mortgagee to appoint a receiver or to foreclose on or commence legal proceedings to recover possession of the Property in order to effect such remedy and such legal proceedings and consequent remedy cannot reasonably be achieved within said thirty (30) days, then Mortgagee shall have such further time as is reasonable under the circumstances to effect such remedy provided that Mortgagee shall notify Tenant, within ten (10) days after receipt of Tenant's notice, of Mortgagee's intention to effect such remedy and provided further that Mortgagee institutes immediate legal proceedings to appoint a receiver for the Property or to foreclose on or recover possession of the Property within said thirty (30) day period and thereafter prosecutes said proceedings and remedy with due diligence and continuity to completion. Notwithstanding the foregoing, Mortgagee shall have no rights under this Section 2 if Mortgagee is an entity that controls, is controlled by, or is under common control with Landlord.

3.     Non-Disturbance and Attornment.  So long as Tenant is not in default under the Lease (beyond any period given Tenant to cure such default) as would entitle Landlord to terminate the Lease or would cause, without any further action of Landlord, the termination of the Lease or would entitle Landlord to dispossess Tenant thereunder, Mortgagee will not disturb the peaceful and quiet possession or right of possession of the Premises by Tenant nor shall the Lease or its appurtenances be extinguished by reason of any Foreclosure (as hereinafter defined) or otherwise, nor join Tenant as a party in any action or proceeding brought pursuant to the Mortgage.

In the event that Mortgagee or its successors or assigns, as defined in Section 7 hereof ("Successor Landlord") acquires the interest of Landlord or comes into the possession of or acquires title to the Premises (the "Succession") by reason of the foreclosure (judicial or non-judicial) or enforcement of the Mortgage (including a private power of sale) or the Note or obligations secured thereby or by a conveyance in lieu thereof or other conveyance or as a result of any other means (any or all of the foregoing hereinafter referred to as a "Foreclosure"), then the Lease and all appurtenances thereto shall remain in full force and effect and Tenant shall be bound to Successor Landlord under all of the provisions of the Lease for the balance of the term thereof (including any extensions or renewals thereof which may be effected in accordance with any options contained in the Lease) with the same force and effect as if Successor Landlord was Landlord under the Lease, and Tenant shall attorn to Successor Landlord as its landlord, such attornment to be effective and self-operative, without the execution of any further instruments on the part of either of the parties hereto, immediately upon the Succession; and further, in such event, Successor Landlord shall be bound to Tenant

**EXHIBIT 32**

EXHIBIT 32

CONFIDENTIAL

under all of the provisions of the Lease, and Tenant shall, from and after such Succession, have the same remedies against Successor Landlord for the breach of any agreement contained in the Lease that Tenant might have had under the Lease against Landlord thereunder, provided, however, that if Successor Landlord is not an entity that controls, is controlled by, or is under common control with Landlord, then Successor Landlord shall not be:

(a) liable for any act or omission of any prior landlord (including Landlord) unless Tenant shall have given notice (pursuant to Section 2 hereof) of such act or omission to the party who was the then holder of the Mortgage (whether or not such holder elected to cure or remedy such act or omission); or

(b) subject to any offsets (except those expressly permitted under the Lease) or defenses which Tenant might have against any prior landlord (including Landlord) unless Tenant shall have given notice (pursuant to Section 2 hereof) of the state of facts or circumstances under which such offset or defense arose to the party who was the then holder of the Mortgage (whether or not such holder elected to cure or remedy such condition); or

(c) bound by any rent or additional rent which Tenant might have paid to any prior landlord (including Landlord) more than thirty (30) days in advance of the due date under the Lease; or

(d) bound by any security deposit which Tenant may have paid to any prior landlord (including Landlord), unless such deposit is available to the party who was the holder of the Mortgage at the time of a Foreclosure.

Tenant shall be under no obligation to pay rent to Mortgagee or Successor Landlord until Tenant receives written notice from Mortgagee or Successor Landlord stating that Mortgagee or Successor Landlord is entitled to receive the rents under the Lease directly from Tenant.  Mortgagee acknowledges and agrees that Mortgagee or any Successor Landlord must create an account in Tenant's vendor portal, including without limitation, uploading vendor portal forms, a W9 tax form, an NDA, and banking information on such party's bank letterhead, in order for Tenant to process payment to such party in a timely and secured manner. The due date for any amount required to be paid by Tenant to Mortgagee or Successor Landlord under the terms of the Lease shall be extended on a day for day basis until such party fully and correctly completes an account in Tenant's vendor portal.  Landlord, by its execution hereof, hereby authorizes Tenant to accept such direction from Mortgagee or Successor Landlord and to pay the rents directly to Mortgagee or Successor Landlord and waives all claims against Tenant for any sums so paid at Mortgagee's or Successor Landlord's direction. Tenant may conclusively rely upon any written notice Tenant receives from Mortgagee or Successor Landlord notwithstanding any claims by Landlord contesting the validity of any term or condition of such notice, including any default claimed by Mortgagee or Successor Landlord, and Tenant shall have no duty to inquire into the validity or appropriateness of any such notice.

4.     Notices of Default/Tenant's Right to Cure.  Mortgagee hereby agrees to give to Tenant a copy of each notice of a failure on the part of the mortgagor or obligor under the Mortgage or Note to perform or observe any of the covenants, conditions or agreements of such Mortgage or Note at the same time as whenever any such notice shall be given to the said mortgagor or obligor, such copy to be sent as provided in Paragraph 6 herein.  Further, Mortgagee shall accept the cure by Tenant of any default, which cure shall be made within ten (10) days in the case of monetary defaults of Landlord and within thirty (30) days in the case of non-monetary defaults following Tenant's receipt of such notice provided however that (i) if the failure of performance does not involve the payment of money from Landlord to Tenant, and (ii) is of such a nature that it could not be reasonably remedied within the thirty (30) day period aforesaid, then Tenant shall have such further time as is reasonable under the circumstances to effect such remedy provided that Tenant shall notify Mortgagee, within ten (10) days after receipt of Mortgagee's notice, of Tenant's

EXHIBIT 32

EXHIBIT 32

**CONFIDENTIAL**

intention to effect such remedy and provided further that Tenant institutes steps to effect such remedy within said thirty (30) day period and thereafter prosecutes said remedy with due diligence and continuity to completion. Mortgagee agrees that it will accept such performance by Tenant of any covenant, condition or agreement to be performed by mortgagor or obligor under the Mortgage or Note with the same force and effect as though performed by such mortgagor or obligor. The provisions of this Paragraph 4 are intended to confer additional rights upon Tenant and shall not be construed as obligating Tenant to cure any default of any such mortgagor or obligor.

5.      Agreement to Release Proceeds or Awards.

    (a) <u>Destruction</u>. In the event of a casualty at the Premises, Mortgagee shall release its interest in any insurance proceeds applicable to the nonstructural improvements installed by Tenant. Mortgagee acknowledges that it has no interest and waives any interest in Tenant's personal property, Tenant's signs, the Antenna (if any), the Solar installation (if any) or the Superchargers (if any), and any safety systems (such as, without limitation, fire and security monitoring and alarm systems) installed at or about the Premises, or any insurance proceeds which are payable with respect thereto under either Landlord's or Tenant's policies.

    (b) <u>Eminent Domain</u>. In the event of a public taking or act of eminent domain, Mortgagee shall release its interest in that portion of the award to which Tenant is entitled pursuant to the Lease, as well as its interest in so much of the award applicable to the Improvements installed by Tenant as shall be necessary for the purposes of restoration, consistent with Landlord's and Tenant's rights and obligations under the Lease.

6.      <u>Super Chargers or Solar Equipment</u>. Mortgagee acknowledges that Tenant has constructed, is constructing or may construct a Supercharging Station for electric vehicles or may install Solar Equipment on the Property which Supercharging Station or Solar Equipment and any and all infrastructure, equipment and trade fixtures associated therewith will remain the property of Tenant at the expiration or earlier termination of the Lease and Mortgagee acknowledges that it has no interest and waives any interest in Tenant's Supercharging Station or Solar Equipment. Mortgagee waives any right to request or accept payment from Tenant's customers or any other third parties in connection with the Supercharger Station.

7.      <u>Notices</u>. In order to be effective, any notice to be given under this Agreement must be in writing and sent by registered or certified U.S. mail, Federal Express or a similar reputable express courier to the following applicable notice address, provided that proof of delivery thereof can be produced.

To Mortgagee:    _____

                                _____

                                _____

Telephone: _____

email: _____

To Tenant:
Tesla, Inc.
1 Tesla Rd.
Austin, TX 78725
Attn:    Legal/ Lease Administration
TRT No. 456363
<u>With a copy of all notices to:</u>

<u>leaseadmin@tesla.com</u> referencing TRT No. 456363

Exhibit D

4

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

To Landlord:

_____

_____

_____

Telephone: _____

email: _____

No notice to Tenant shall be effective unless it is addressed to the attention of Real Estate Legal/Lease Administration (for all notices, including notices of default, other than invoices) and as otherwise set forth above. No notice delivered to the Premises shall be effective. The telephone numbers identified above are for informational purposes only and not for purposes of giving notice under this Agreement. Any party may change the address or email by written notice to the other parties clearly stating such party's intent to change the address or email for all purposes of this Agreement, which new address or email shall be effective one (1) week after receipt. Except as hereinafter provided, notice shall be deemed given when received or when receipt is refused.

8.      Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the parties hereto, their respective personal representatives, successors and assigns it being understood that the obligations herein of Mortgagee shall extend to it in its capacity as beneficiary under the Mortgage and to its successors and assigns, including anyone who shall have succeeded to its interest or to Landlord's interest in the Premises or acquired possession thereof by Foreclosure or otherwise.

9.      Counterparts. To facilitate execution, this Agreement may be executed in as many counterparts as may be convenient or required.  It shall not be necessary that the signature of, or on behalf of, each party, or that the signature of all persons required to bind any party, appear on each counterpart.  All counterparts shall collectively constitute a single document. It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto.  Any signature page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature pages.  Electronic transmission via pdf or other electronic means of this fully executed Agreement shall be deemed valid and enforceable.

10.     Effectiveness of Agreement.  If, within three (3) weeks of Tenant's execution of this Agreement, Tenant has not received one (1) electronic version (such as pdf) or one (1) original of the fully executed Agreement at the notice address listed above, this Agreement shall, at Tenant's option, be null and void.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**MORTGAGEE**

_____

a _____

By: _____

Its: _____

Date: _____

**TENANT**

_____

a _____

By: _____

Its: _____

Date: _____

**LANDLORD**

_____

a _____

By: _____

Its: _____

Date: _____

Exhibit D

6

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

**EXHIBIT A**

**Legal Description**

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

## EXHIBIT E

## TENANT ESTOPPEL CERTIFICATE

TO:    [Purchaser or Lender] ("Addressee")

c/o _____

_____

_____

FROM: [name of Tesla entity] ("Tenant")

Tesla, Inc.

1 Tesla Rd.

Austin, TX 78725

Attn:    Legal/ Lease Administration

        TRT No. 456363

RE:    455 Denmark Dr.

Sparks, NV

Dear Addressee:

Tenant hereby notifies Addressee that, effective as of _____, 202____ (the "Effective Date"), to Tenant's actual knowledge:

1. Tenant leases that certain space commonly known as_____, consisting of approximately _____ square feet (the "Premises") located at _____ in _____ pursuant to that certain lease dated _____, 201___ by and between _____ ("Landlord") (or Landlord's predecessor in interest) and Tenant (or Tenant's predecessor in interest),  (the "Lease").

2. The Lease has not been amended or modified (excluding approvals, consents, or waivers given by Landlord in connection with the Lease) by any written instrument between the Tenant and Landlord except for [list amendments and other legal docs if any].

3. Landlord has completed Landlord's Work except for [_____].

4. Tenant is not owed any tenant allowance except for [_____]. Landlord holds a security deposit in the amount of [_____].

5. Tenant has paid Base Rent and Operating Expenses through _____.

6. The Term of the Lease commenced on _____ and expires on _____, subject to any right of renewal and/or any right of termination set forth in the Lease.

7. There is no default existing under the Lease, and neither party has sent any notice of default to the other under the Lease which default has not been cured.

8. The Lease [does not contain]/[contains] a right of first offer and a first refusal to purchase the Premises in favor of the Tenant as set forth in Section___ of the Lease.

9. Any notices that may or shall be given to Tenant under the terms of the Lease are to be sent to Tenant at the following address: [name of Tesla entity], 1 Tesla Road, Austin, TX 78725 Attn: Real Estate Legal/Lease Administration, TRT No. 456363 with a pdf copy to: leaseadmin@tesla.com, and a copy of all notices (other than invoices) to 1 Tesla Road, Austin, TX 78725 Attn: Legal/Lease Administration, TRT No. 456363.

Exhibit E

1

**EXHIBIT 32**

**EXHIBIT 32**

**CONFIDENTIAL**

Notwithstanding anything herein to the contrary, this certificate does not constitute an independent contractual undertaking or constitute representations, warranties, or covenants, or otherwise have any legal effect except that as between Tenant and Addressee, Tenant shall be estopped from denying the accuracy of this certificate.  No party other than Addressee shall have the right to rely on this certificate. In no event shall this certificate amend or modify the Lease, and Tenant shall not be estopped from denying the accuracy of this certificate as between Tenant and Landlord or Landlord's affiliates, regardless of whether Addressee is Landlord. In no event shall this certificate subject Tenant or any of its officers or employees to any liability whatsoever, notwithstanding the negligent or otherwise inadvertent failure of Tenant to disclose correct and/or relevant information or constitute a waiver with respect to any act of Landlord for which approval by Tenant was required but not sought or obtained.

It is further understood that Tenant, by giving and delivering this certificate, shall not be deemed to have waived Tenant's right to be reimbursed by Landlord or Landlord's successor for any overpayments of charges under the Lease, including but not limited to common area charges and rent, which overpayments may now or hereafter be revealed by information becoming known to Tenant regarding such charges or conditions giving rise to the same.

TENANT

[INSERT TESLA ENTITY NAME USED]
a _____

By: _____

Its: _____

Date: _____

Exhibit E
2

**EXHIBIT 32**

**EXHIBIT 32**

CONFIDENTIAL

**EXHIBIT F**

**TAX PARCEL**

**APN: 005-101-71**

Exhibit F

1

**EXHIBIT 32**