**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

PURE DEVELOPMENT, INC., PURE
HOLDINGS, INC., AND DREW
SANDERS,

      PLAINTIFFS,

v.

CANOPY 5, LLC, CHRIS SEGER,
ADAM SEGER, BRIAN PALMER, AND
MAGIC TRIC I, LLC,

      DEFENDANTS.

No. 1:25-CV-01301-SEB-TAB

**DEFENDANTS' MOTION TO STAY INJUNCTIVE RELIEF PROCEEDINGS**
**OR, IN THE ALTERNATIVE,**
**FOR DISCOVERY BEFORE RESPONDING TO MOTION FOR PRELIMINARY**
**INJUNCTION AND FOR HEARING**

July 23, 2025

Robert D. MacGill (IN 9989-49)
Matthew T. Ciulla (IN 34542-71)
J. Cecelia Satterthwaite (IN 37935-49)
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone:  (317) 721-1253

# TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................... 1

**LANDSCAPE OF OTHER PENDING LITIGATION**........................................... 2

    I. Underlying Dissolution Lawsuit and Appeal............................................. 2

    II. Indemnity Lawsuit..................................................................................3

    III. Trust Lawsuit...................................................................................... 4

**ARGUMENT**.......................................................................................................... 5

    I. The Court Should Abstain From Ruling....................................................5

        A. The Court Should Abstain Pursuant to Colorado River.................... 6

            1. The State and Federal Actions Are Parallel............................... 6

                i. Whether the receiver approves the filing and maintenance of this lawsuit and the motion for P.I.............................................. 7

                ii. Whether the Trust approves the filing and maintenance of this lawsuit and the motion for P.I.............................................. 8

                iii. Whether the custodian approves the filing and maintenance of this lawsuit and the motion for P.I........................................ 8

                iv. Who owns the purported trade secrets and thus has standing to bring the trade secret claims. (P.I. § 2.1)...............................8

                v. Whether Pure Development has a commercial interest in future sales. (P.I. § 2.2)................................................................ 9

                vi. Whether Pure Development is engaged in competition. (P.I. § 2.3)....... 9

                vii. Whether Palmer's and A. Seger's employment agreements are enforceable against them. (P.I. § 2.3)......................................10

                viii. Whether purportedly creating and marketing Canopy 5 and purportedly soliciting Pure employee support is a breach of fiduciary duty. (P.I. § 2.3)............................................................ 10

                ix. Whether Pure faces irreparable harm. (P.I. § 3)................................. 11

            2. Abstention Is Proper Under the Nine Relevant Colorado River Factors.....11

                i. The state has assumed jurisdiction over property................................. 11

                ii. It is desirable to avoid piecemeal litigation.......................................... 12

iii. Jurisdiction was obtained by the state first.............................................. 13

iv. State law provides the governing law................................................14

v. The state court action is adequate to protect the plaintiffs' rights..........15

vi. The state court matters are farther progressed than this action...........15

vii. Concurrent jurisdiction: state court questions need answering before federal proceedings.................................................................................. 16

viii. Removal is unavailable......................................................................... 17

ix. The federal claim is contrived............................................................. 17

B. Although Rooker-Feldman Does Not Directly Apply, This Court Has Additional "Powerful Reasons to Abstain" Under Its Principles............................................ 18

II. If the Court Proceeds With Preliminary Injunctive Proceedings, the Court Should Order Discovery, Hold an Evidentiary Hearing, and Take Supplemental Submissions Before Issuing a Decision.................................................................................... 19

A. The issues are not clear................................................................................ 19

B. Nearly all material facts are in dispute...........................................................20

1. Trade secret facts are in dispute. (P.I. § 2.1)............................................. 20

2. Unfair competition facts are in dispute. (P.I. § 2.2)....................................22

3. Duty of loyalty facts are in dispute. (P.I. § 2.4)...........................................25

4. Breach of contract facts are in dispute. (P.I. § 2.4)....................................27

III. Discovery Should Be Sequenced With a Trade Secret Disclosure Before All Other Discovery............................................................................................................. 29

**CONCLUSION**.................................................................................................**30**

## INTRODUCTION

This is the fifth docket stemming from the Madison County Court's dissolution of the Pure Enterprise.[1] That court dissolved the fifty-fifty Pure partnership between Drew Sanders and Chris Seger because the pair had experienced countless deadlocks in the management of Pure, leading to its decline.

Sanders has repeatedly admitted in Court filings that the Pure Enterprise may no longer conduct business after that state court order. But now, after being absent from the Pure Companies for at least six months—and despite these judicial admissions—he attempts to resurrect the Enterprise through this lawsuit, contorting the Pure Companies into the equivalent of a "patent troll."

Unlike "patent trolls," however, Plaintiffs here have not even attempted to show the existence of legitimately protectable intellectual property interests. Nor have Plaintiffs shown that they can even be considered proper parties in a Lanham Act case or that they are owed any fiduciary duties.

All of these questions, and more, are inexorably intertwined with questions being presently decided by four Indiana state courts. This Court should await their rulings before allowing this case to proceed. In the alternative, the Court should authorize Defendants to take discovery from Plaintiffs and then conduct an evidentiary hearing and full briefing before considering an injunction.

---

[1] "Pure Enterprise," or "Pure Entities," or "Pure Companies" refers collectively to Pure Development, Inc.; Pure Holdings, Inc.; and Pure Development Capital, Inc.

<u>**LANDSCAPE OF OTHER PENDING LITIGATION**</u>

**I.      Underlying Dissolution Lawsuit and Appeal.**

In Summer of 2024, Chris Seger, a fifty-percent Shareholder and Director of the Pure Enterprise, filed a complaint for judicial dissolution of the Pure Enterprise. ("Underlying Dissolution Lawsuit"). Doc. 1 para. 20, 22. Drew Sanders, the other fifty-percent Shareholder and Director of the Pure Enterprise, filed counterclaims for constructive fraud, breach of fiduciary duty, and abuse of process. *Seger v. Sanders*, 2025 Ind. Cir. LEXIS 1 (Madison Cty., Jan. 13, 2025) [hereinafter, "Underlying Fraud Dismissal"]; *Seger v. Sanders*, 2025 Ind. Cir. LEXIS 434 (Madison Cty., May 12, 2025) [hereinafter, "Underlying Fiduciary Dismissal"].[2] The Madison Circuit Court granted summary judgment for Seger on the constructive fraud counterclaim. Underlying Fraud Dismissal, 2025 Ind. Cir. LEXIS 1, at *7. After a seven-day bench trial, it involuntarily dismissed the breach of fiduciary duty and abuse of process counterclaims. Underlying Fiduciary Dismissal, 2025 Ind. Cir. LEXIS 434, at *27.

The Madison Circuit Court then entered its Findings of Fact and Conclusions of Law on the dissolution claims. *Seger v. Sanders*, 2025 Ind. Cir. LEXIS 435 (Madison Cty., May 12, 2025) [hereinafter, "Underlying Dissolution Order"]; *see also* Doc. 1 para. 23-24. There, the state trial court ordered the dissolution of the Pure Enterprise and the appointment of a receiver to manage its winding up. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *65-66. The court found the Pure Enterprise existed in a state of

---

[2] This Court may take judicial notice of state court records. *Ronald D. Fosnight & Paraklese Techs., LLC v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022); *Credico v. Navarrete*, No. 1:24-cv-01194-SEB-TAB, 2025 U.S. Dist. LEXIS 39260, at *5 (S.D. Ind. Mar. 5, 2025).

"dysfunction" where "loss of key employees" and "inability to agree on governance documents" was constantly "threatened." *Id.* at *54. This state of "deadlock" "casts a cloud on Pure Development's future because it renders [Seger and Sanders] unable to effectively manage the company." *Id.* In short, the pair had a "significant deadlock in regard to ownership, contribution, and governance, of which the parties have made little, if any, progress." *Id.* at *46-47.

After the trial court's order dissolving the Pure Enterprise, Sanders admitted that the Pure Enterprise "cannot continue to operate as a going concern—for example, by taking on new business." Ex. J at 6; *see also* Ex. K at 7 n.2 ("[A]n order dissolving Pure Development, Inc. ensures that the company cannot be sold as a going concern, as it cannot conduct new business."); Ex. B para. 45.

On June 3, 2025, Sanders filed his notice of appeal to the Indiana Court of Appeals. Ex. A. He then moved that court to stay the appointment of receiver. Ex. B. The court granted the stay on June 23, 2025. Ex. C; *see* Doc. 1 para. 24. Sanders has since attempted to remand the proceedings to the trial court. Ex. V. Seger has opposed remand and has moved for relief from the stay due to the post-stay chaos. Ex. X (motion for relief from stay); *see also* Ex. W (appeal docket sheet). These issues are pending, and briefs on the merits of the appeal have yet been filed. Ex. W.

## II. Indemnity Lawsuit.

On June 30, 2025, Seger filed a complaint for indemnity against Pure Holdings in the Marion Superior Court. ("Indemnity Lawsuit"). Ex. D. Service of process was returned on July 1, 2025. Ex. E. Seger amended his complaint on July 7, 2025. Ex. F.

3

Interrogatories and Requests for Production have been served, Ex. G, and document production has been made. Ex. H. Defendant has appeared. Ex. Y.

In the Indemnity Lawsuit, Seger seeks indemnity in the amount of $3.8 million from the Pure Enterprise for legal fees and expenses incurred in defending the counterclaims in the Underlying Dissolution Lawsuit and for defending this lawsuit. Ex. F para. 10-39, 52-75. He also seeks the appointment of a receiver over the Pure Enterprise to protect the $3.8 million from waste. *Id.* para. 40-45, 76-80. Seger has sought expedited discovery and an expedited hearing on receiver. Ex. I.

### III. Trust Lawsuit.

On June 25, 2025, Seger transferred his fifty percent ownership in the Pure Enterprise into a blind trust, entitled the CS Phoenix Blind Trust. ("Trust"). Doc. 1 para. 87-88; Doc. 1-16. He also resigned all employment, officer, director, and board member positions that he held in the Pure Enterprise. Doc. 1-16.

On July 8, 2025, the Trust, through Bryan Chandler, Trustee, filed a complaint in the Marion Superior Court. ("Trust Lawsuit"). Ex. L. The Trust amended its complaint on July 11, 2025. Ex. M. In the Trust Lawsuit, the Trustee alleges that "[a]ctual controversies exist as to the parties' rights, status, and legal relations — *i.e.*, the composition of the Pure Entities' Boards of Directors, the identities of the officers of those entities, and the identification of the governing bylaws of those entities." Ex. M para. 50. He also alleges that Sanders has frozen him out of the operations of the Pure Enterprise. Ex. M para. 52-76. The Trustee seeks dissolution of the Pure Enterprise, *id.* para. 77-87, appointment of a receiver for winding up of the Pure Enterprise, *id.* para.

4

88-92, and appointment of a custodian *pendente lite*. *Id.* para. 93-99. The Trustee has moved for a speedy hearing to "resolve a dispute regarding the current directors, officers, and bylaws of" the Pure Entities," as the "Pure Entities are unable to effectively operate without resolution of those issues." Ex. N at 2. The Trustee has also questioned the authority of the Pure Enterprise to file the instant federal lawsuit. Ex. M para. 30. The Trust and Sanders cross moved for TRO. Ex. O, Ex. P. Those motions are pending.

## ARGUMENT

### I.      The Court Should Abstain From Ruling.

The Pure Entities are dissolved and have been ordered to wind up. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *57. Sanders and Seger have been placed "on equal footing" to compete "in the real estate development industry." *Id.* at *64. By Sanders' own admission, the Pure Entities cannot take on new business. Ex. J at 6; *see also* Ex. K at 7 n.2 ("[I]t cannot conduct new business."); Ex. B para. 45. This judgment of the Madison County Court "stands binding on the parties, as to every question directly decided." *Indianapolis v. Producers Realty, Inc.*, 240 Ind. 507, 511, 166 N.E.2d 648, 650 (1960) (quoting *Cent. Union Tel. Co. v. State*, 110 Ind. 203, 204, 10 N.E. 922, 922 (Ind. 1887)).[3] This is so despite the stay pending appeal. *Id.*

After obtaining the stay, Sanders decided to return to the Pure operation after being "entirely absent" for "six months" "not just physically, but in every aspect of leadership and communication." Ex. Q at 4 (employee to Sanders). He apparently intends to obtain new business and engage in a litigation campaign, including this lawsuit—all despite the binding judgment that prohibits Pure from doing business.

---

[3] *Accord M.H. v. State*, 207 N.E.3d 412, 416 (Ind. 2023); *Dinwiddie v. Shipman*, 183 Ind. 82, 86, 108 N.E. 228, 229 (1915); *Williams v. Maschmeyer*, 870 N.E.2d 1069, 1070 (Ind. Ct. App. 2007).

Whether Sanders may do so is a question that is currently being litigated on four Indiana state court dockets: three trial court actions and one appeal.[4] Those four actions have progressed meaningfully. They involve questions of Indiana law, questions that the state courts are well poised to answer. If Sanders loses and the Madison County Court's judgment continues to stand, there will be nothing for this Court to decide. Therefore, the Court should abstain from ruling on the motion for preliminary injunction at this time.

### A. The Court Should Abstain Pursuant to *Colorado River.*

The "use of federal judicial resources to decide the same questions" as a state court "cannot be justified." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 527-28 (7th Cir. 2021). Accordingly, the *Colorado River* abstention doctrine "authorizes a federal court to abstain from exercising jurisdiction and stay a case to await the outcome of parallel state litigation when there is a substantial likelihood that the state case will resolve the federal claim." *Id.* at 515. "The principal purpose of a stay under *Colorado River* is judicial economy." *Id.* at 527-28 (citation omitted).

### 1. The State and Federal Actions Are Parallel.

The first step in a *Colorado River* analysis is to determine whether the state and federal actions are parallel. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014). Where federal and state actions "rely on the same set of facts, present substantially similar legal issues, and involve substantially the same parties," they are parallel. *Freed*, 756 F.3d at 1021. "To meet the 'parallel' requirement, suits need not be identical." *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). "The addition of

---

[4] Although normally the trial court in the Underlying Dissolution Lawsuit would be considered to have lost jurisdiction upon the appeal of that matter, Sanders continuously attempts to invoke the jurisdiction of the trial court in that matter. *See, e.g.*, Ex. R (noting approximately four post judgment motions by Sanders); Ex. V (Sanders' appellate filing attempting to remand the proceedings back to the trial court while the appeal is pending. This motion has been opposed and is still pending.).

a party or parties to a proceeding, by itself, does not destroy the parallel nature of state and federal proceedings." *Id.* Nor "can it be dispelled by repackaging the same issue under different causes of action." *Id.* at 686-87. The key question is whether the "thrust" of the two lawsuits is the same—whether "they rely on the same factual predicate to raise substantially similar legal issues against substantially similar parties." *Id.* at 687 ("If we were to reach the opposite conclusion, future federal plaintiffs would have an incentive to tag on redundant and non-essential claims, parties, and remedies to create straw distinctions with an otherwise parallel state proceeding.").

Where a fact key to the federal proceeding will be determined by the state court, the actions are parallel. *See, e.g.*, *Card v. Graystone Mortg. Corp.*, 2015 U.S. Dist. LEXIS 5961, at *9 (S.D. Ind. Jan. 20, 2015) ("[T]his action is parallel to the Florida state court action because the Court cannot determine if Graystone inaccurately furnished information … until the enforceability and validity of the Promissory Note has been determined."). They are also parallel when they stem from the same conduct and are intertwined. *See, e.g.*, *Metschlaw, P.A. v. Magic Burgers, LLC*, 2019 U.S. Dist. LEXIS 124986, at *6 (S.D. Fla. July 24, 2019); *Corus Bank, N.A. v. De Guardiola*, 593 F. Supp. 2d 991, 994 (N.D. Ill. 2008). Here, an analysis of the issues presented by the motion for preliminary injunction show that this action is parallel to the state court actions.[5]

### i. Whether the receiver approves the filing and maintenance of this lawsuit and the motion for P.I.

Only the receiver should decide whether the lawsuit will be litigated. *See generally* Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *60 (receiver will

---

[5] The Complaint presents other grounds for abstention. The instant motion addresses only those aspects of the Complaint upon which Plaintiff moved for a preliminary injunction. When Defendants are required to respond to the Complaint, they reserve the right to move to dismiss or for a stay on all available grounds, not only those addressed herein.

exercise all powers of the Pure Entities). Sanders filed this lawsuit after the Underlying Dissolution Lawsuit's Order dissolving the Pure Entities. He did not consult with a receiver before filing this suit. The state-court appeal of the Underlying Dissolution Lawsuit will decide whether a receiver is appointed, and he or she, in turn, will decide whether this lawsuit and the motion for P.I. may be maintained.

### ii. Whether the Trust approves the filing and maintenance of this lawsuit and the motion for P.I.

The Trust is the 50% shareholder of the Pure Entities. The Trust alleges that it must be consulted and consent to major business decisions. Sanders, the other 50% shareholder, did not consult with the Trust or obtain its approval before filing this lawsuit. *See, e.g.*, Ex. M para. 26, 30. The state-court Trust Lawsuit will resolve whether the Trust's consent is required, and the Trust, in turn, will decide whether to consent to this lawsuit and the motion for P.I.

### iii. Whether the custodian approves the filing and maintenance of this lawsuit and the motion for P.I.

The Trust has asked for the state court to appoint a custodian. Ex. O at 16; *see also* Ex. M. The custodian will have the right to determine whether this lawsuit will proceed. *See generally* I.C. 23-1-47-2(c) (custodian has all powers of the corporation). The state-court Trust Lawsuit will determine whether a custodian is appointed, and he or she, in turn, will decide whether this lawsuit and the motion for P.I. may be maintained.

### iv. Who owns the purported trade secrets and thus has standing to bring the trade secret claims. (P.I. § 2.1).

Only the owner of a purported trade secret may bring a misappropriation claim. 18 U.S.C. § 1836(b)(1); *see also, e.g.*, Doc. 1 para. 102 ("Pure Development, Inc. is the owner of trade secrets…"), *id.* para. 111 (same). These counts were brought only in the

name of Pure Development. Doc. 1 at 26, 28. The Underlying Dissolution Order ordered the receiver to dispose of the assets of Pure Development. 2025 Ind. Cir. LEXIS 435, at *59. This includes purported trade secrets. Until the receiver acts or the order is vacated, it is unknown who will own the trade secrets. The state-court appeal of the Underlying Dissolution Lawsuit will decide whether a receiver is appointed and he or she, in turn, will decide who owns the trade secrets and thus who has standing to sue.

### v. Whether Pure Development has a commercial interest in future sales. (P.I. § 2.2).

Only one with an injury to a commercial interest in reputation or sales may bring a lawsuit under § 1125. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). This count was brought only in the name of Pure Development, which has been dissolved and cannot conduct new business. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *57; Ex. J at 6; Ex. K at 7 n.2; Ex. B para. 45. Until that ruling is vacated and reversed, Pure Development does not have standing to sue. The state appeal of the Underlying Dissolution Lawsuit will decide whether Pure has a commercial interest in future sales, and thus whether it has standing.

### vi. Whether Pure Development is engaged in competition. (P.I. § 2.3).

Section 2.3 of the P.I. motion requests an injunction because Defendants should not have "directly compet[ed] with Pure Development." Doc. 18 at 22. Pure Development has been dissolved and cannot perform new business. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *57; Ex. J at 6; Ex. K at 7 n.2; Ex. B para. 45. Until that ruling is vacated and reversed, it is a legal reality that Pure Development is not a "competitor" in anything. The state-court appeal of Underlying Dissolution Lawsuit will decide whether Pure Development is engaged in competition.

9

### vii. Whether Palmer's and A. Seger's employment agreements are enforceable against them. (P.I. § 2.3).

Section 2.3 of the P.I. motion requests an injunction because Defendants Palmer and A. Seger "had express employment contracts prohibiting their use of Pure Development, Inc.'s business information for outside purposes," and were "prohibited by their contracts to contact Pure Development, Inc.'s current or prospective customers." Doc. 18 at 23. Pure Development has been dissolved and cannot perform new business. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *57; Ex. J at 6; Ex. K at 7 n.2; Ex. B para. 45. Until that ruling is vacated and reversed, Pure has no prospective customers. The state-court appeal of Underlying Dissolution Lawsuit will decide whether Pure Development has prospective customers. Additionally, the state trial court made factual findings that Pure Development never performed a material provision of its employment agreements with Palmer and A. Seger. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *9, *12, *30-31. Sanders has appealed this order and the appeal is pending in state court. Ex. A at 4. That issue will bear materially on the defense of first material breach and unclean hands.

### viii. Whether purportedly creating and marketing Canopy 5 and purportedly soliciting Pure employee support is a breach of fiduciary duty. (P.I. § 2.3).

Section 2.3 of the P.I. motion requests an injunction because Defendants "each owed Pure Development, Inc. a fiduciary duty of loyalty." Doc. 18 at 22. The state trial court explicitly "reject[ed] as breaches of fiduciary duty Sanders' contentions of Seger creating, marketing, and soliciting Pure Development employee support for his proposed remedy plan of Canopy 5, along with Seger allegedly creating a series of deadlocks to seek judicial dissolution." Underlying Fiduciary Dismissal, 2025 Ind. Cir.

LEXIS 434, at *16. Sanders has appealed this order and the appeal is pending in state court. Ex. A at 4. While that order stands, there has been no breach of fiduciary duty.

### ix. Whether Pure faces irreparable harm. (P.I. § 3).

Section 3 of the P.I. motion requests an injunction because "what Defendants hope to do is leave Pure Development, Inc. an empty husk that cannot compete…." Doc. 18 at 24. Pure Development has been dissolved, is to be wound-down in an orderly manner, and cannot perform new business. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *57; Ex. J at 6; Ex. K at 7 n.2; Ex. B para. 45. The state court has ordered that the Pure Enterprise cannot compete. Until that ruling is vacated and reversed in the state court appeal, there is no irreparable harm.

### 2. Abstention Is Proper Under the Nine Relevant *Colorado River* Factors.

Once the "court determines that the proceedings are parallel, the court must decide whether abstention is proper by carefully weighing ten non-exclusive factors." *Freed*, 756 F.3d at 1018. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. … [T]here is no mechanical formula by which to determine when a stay is appropriate." *Clark*, 376 F.3d at 687 (citations omitted). Here, all nine relevant factors weigh in favor of abstention.[6]

### i. The state has assumed jurisdiction over property.

If the state has assumed jurisdiction over property, abstention is favored. *See Freed*, 756 F.3d at 1021. Here, the state has assumed jurisdiction over all of the Pure Entities and their assets. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *1

---

[6] The tenth factor, regarding the convenience of the federal forum, is not relevant here because the state and federal courts at issue are in the same geographic area. *See R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011).

("The Court orders the dissolution of Pure Holdings, Pure Capital, and Pure Development."), at *59 ("[T]he Court determines that equity demands that a receiver by appointed to wind up the affairs, and dispose the assets of, Pure Holdings, Pure Capital, and Pure Development."), at *60-61 ("The Court authorizes the receiver to exercise all powers of Pure Development, through Seger and Sanders, to manage the affairs of Pure Development in the best interests of the shareholders and creditors—namely, to complete all current projects. Upon such time that all current projects may be completed, the receiver will then wind up Pure Development and dispose of its assets…. [T]he Court does not foreclose the potential for the receiver to find a willing buyer to purchase Pure Holdings, Pure Capital, and Pure Development. The Court authorizes the receiver to act in the best interests of the shareholders and creditors, whether that be completing all current projects and later winding up the entities, or selling the entities with the opportunities that come with the current projects."). Indeed, in the proceedings in the trial court, Sanders admitted that the state trial court "retains jurisdiction over the Pure entities." Ex. BB at 5.

This factor weighs heavily in favor of abstention.

### ii. It is desirable to avoid piecemeal litigation.

This factor focuses on two inquiries—how to best conserve judicial resources and avoid the potential for inconsistent results. *Freed*, 756 F.3d at 1022; *see also Hollister Inc. v. Sugrue*, No. 24 CV 5642, 2025 U.S. Dist. LEXIS 84031, at *14 (N.D. Ill. May 2, 2025). Here, judicial resources are best conserved by this Court's abstention. For example, if the Indiana Court of Appeals affirms, Sanders' feigned and newfound confusion as to the effect of the dissolution of the Pure Entities will be obliterated. This lawsuit would be immediately dismissed. Without abstention, the risk of inconsistent

results is severe. This Court could find, for example, that Pure does indeed have potential future customers. The Indiana Court of Appeals could subsequently affirm the dissolution order, holding the opposite. This would leave the parties in a quandary.

This factor weighs in favor of abstention.

### iii. *Jurisdiction was obtained by the state first.*

This factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Baker v. Warner/Chappell Music, Inc.*, 759 F. App'x 760, 764 (11th Cir. 2018) (citation omitted). Where a state court action was filed "long before the federal suit" and has progressed farther, this factor clearly favors abstention. *Id.* Even where the state court action was filed a mere five months before the federal action, this factor "more likely favors abstention." *Freed*, 756 F.3d at 1022.

Here, as described *infra* in factor *vi*, the state court matters are farther progressed than this action. Additionally, the Underlying Dissolution Lawsuit and its appeal were both filed before this action, with the underlying complaint having been filed one year before this suit.

| Proceeding | Date Filed |
|---|---|
| Underlying Dissolution Lawsuit (48C06-2411-PL-000156) | June 5, 2024 (Ex. R) |
| Appeal of Underlying Dissolution Lawsuit (25A-PL-01345) | June 3, 2025 (Ex. A) |
| Indemnity Lawsuit (49D01-2506-PL-030999) | June 30, 2025 (Ex. D) |
| This Lawsuit | June 30, 2025 (Doc. 1) |
| Trust Lawsuit (49D01-2507-PL-032373) | July 8, 2025 (Ex. L) |

This factor weighs in favor of abstention.

#### iv. *State law provides the governing law.*

A "state court's expertise in applying its own law favors a *Colorado River* stay," "[e]specially in a case…where the litigation has been going on for many years and related discovery has been conducted, [because] the state court should be able more quickly and effectively to decide the state law issues." *Day v. Union Mines, Inc.*, 862 F.2d 652, 660 (7th Cir. 1988).

Here, essentially all of the issues raised by the Complaint are governed by Indiana state law. The only two federal claims are trade secret misappropriation and deceptive advertising. But Sanders admits that the state law trade secret claim and the federal law trade secret claim have only "immaterial differences." Doc. 18 at 20. And, as described above, the deceptive advertising claim is inexorably intertwined with the state law questions pending in state court. Only one with an injury to a commercial interest in reputation or sales may bring a lawsuit under § 1125. *Lexmark*, 572 U.S. at 132. Pure Development has been dissolved and cannot perform new business. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *57; Ex. J at 6; Ex. K at 7 n.2; Ex. B para. 45. Until that ruling is vacated and reversed pursuant to state law, Pure Development does not have standing to sue. The state-court appeal of Underlying Dissolution Lawsuit will decide whether Pure Development has a commercial interest in future sales, and thus whether it has standing to sue.

Moreover, all of the records of proceedings have been prepared in the Indiana state court specific format and have been delivered to the Clerk of the Indiana Court of Appeals. There are 32 volumes of exhibits and nine volumes of transcripts in the specific format required by that court. Ex. S and Ex. T. With respect to these records, there are highly complex issues regarding sealing. *See, e.g.*, Ex. U; *see also, e.g.*, Ex. A

at 7 & n.1 ("In addition to the attached written orders, the trial court made administrative entries in the CCS reflecting action on requests to seal certain submissions. The trial court also orally entered such orders on the record during trial, as will be reflected in the Transcript."). Indiana state courts utilize a different standard for sealing records than does this Court. *Compare* Access to Court Records Rulebook,[7] *with* L.R. 5-11. Plaintiffs apparently intend to litigate the propriety of each and every sealing decision made by the state court in the trade secret claim before this Court. *See, e.g.*, Doc. 18 para. 43. An Indiana state court is much better suited to address such questions than is this Court.

This matter is governed by Indiana state law, and this factor favors abstention.

### v. The state court action is adequate to protect the plaintiffs' rights.

Plaintiffs can point to no prejudice by the state courts. The mere fact that Sanders lost the Underlying Dissolution Lawsuit is insufficient to show bias. *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 403 F. Supp. 3d 690, 710 (S.D. Ind. 2019). The fact that Sanders is an Indiana citizen and has fully availed himself of the Indiana state courts in this matter also weighs in favor of abstention. *Groves Inc. v. R.C. Bremer Mktg. Assocs. Inc.*, 2024 U.S. Dist. LEXIS 66411, at *10 (N.D. Ill. Apr. 11, 2024).

### vi. The state court matters are farther progressed than this action.

Where a federal court action has only progressed to the point of pleadings, and the state courts have "expended significantly more judicial resources than the federal court," this factor weighs in favor of abstention. *Freed*, 756 F.3d at 1023. Here, the courts of Indiana have expended very significant resources into the matters before this

---

[7] https://rules.incourts.gov/pdf/PDF%20-%20Records/records.pdf, archived at https://perma.cc/M4K2-4JPM

Court, including, most prominently, the Underlying Dissolution Lawsuit, which featured a seven-day bench trial, Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, whose transcript spans 1,797 pages, Ex. S, and whose exhibits consume 32 volumes. Ex. T. That case involved voluminous briefing, discovery, and court rulings, as well. Ex. R.

The appeal of the Underlying Dissolution Lawsuit is pending. So far, approximately six appellate motions have been filed, some of which are still pending. Ex. W. The transcript and record are complete. Ex. Z, Ex. AA. No briefs on the merits of the appeal have been filed. Ex. W. The Indemnity Lawsuit is likewise pending. Interrogatories and requests for production have been served, Ex. G, and approximately 4,000 pages of documents have been produced so far. Ex. H. Defendant has appeared. Ex. Y. In the Trustee Lawsuit, cross motions for temporary restraining order are pending. Ex. O, Ex. P.

It is plain that the state courts of Indiana have devoted very significant resources to this matter. This factor weighs in favor of abstention.

### vii. Concurrent jurisdiction: state court questions need answering before federal proceedings.

Where federal claim questions depend upon the "resolution of [a] key fact in state court" as a prerequisite to resolution, abstention is favored. *Freed*, 756 F.3d at 1023. Here, as described at length above, numerous state court questions need to be resolved before the claims in this lawsuit can be adjudicated. These include, but are not limited to, who may authorize the maintenance of this lawsuit, who owns the purported trade secrets, whether Pure has a commercial interest in future sales, whether Pure is engaged in competition, whether Pure contracts are enforceable, whether the state trial court's order regarding the absence of a breach of fiduciary duty will stand, and whether

Pure can compete. Without a state court ruling on these issues, the matters in this suit cannot be resolved. This factor favors abstention.

### viii. Removal is unavailable.

The federal district court should favor abstention when the state court proceeding is not removable. *Freed*, 756 F.3d at 1023; *Day*, 862 F.2d at 659-60 (describing "policy against hearing a federal claim which is related to ongoing non-removable state proceedings"). Here, the state court proceedings are not removable. There is not complete diversity in any of the state court proceedings, as all of the parties are Indiana citizens. Therefore, this factor weighs in favor of abstention.

### ix. The federal claim is contrived.

When there is "no reason why all claims and all parties could not have been, and still could not be, part of one suit," a finding of contrivance—and therefore a finding in favor of abstention—is warranted. *Interstate Material Corp. v. Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988). Here, Pure is a party to and has appeared in the Indemnity Lawsuit. Ex. Y. Pure and/or Sanders could have brought each and every one of the instant claims in that state court proceeding as counterclaims. They are all state court claims, except for the unfair competition count, which alleges passing off. Doc. 1 at 33; *see* Doc. 18 para. 27 ("Canopy 5 passes off as its own work the following projects."), *id.* para. 28 (same), *id.* para. 29 (same).[8] Indiana state law also provides a remedy for passing off. 1 Indiana Model Civil Jury Instructions 3125 (LEXIS). Plaintiffs admit as much in their brief. Doc. 18 at 21 ("Indiana common law likewise prohibits unfair competition.").

---

[8] Plaintiff admits that the state law trade secret claim and the federal law trade secret claim have only "immaterial differences." Doc. 18 at 20.

Because the federal claim is contrived, this factor weighs in favor of abstention.

* * *

All nine relevant *Colorado River* factors weigh in favor of abstention. The Court should abstain from ruling on the motion for preliminary injunction.

**B. Although *Rooker-Feldman* Does Not Directly Apply, This Court Has Additional "Powerful Reasons to Abstain" Under Its Principles.**

The *Rooker-Feldman* doctrine "is an important foundation for the division of power between federal and state courts. The doctrine imposes a 'jurisdictional bar' that prohibits federal courts other than the Supreme Court of the United States from reviewing final state court judgments." *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023). The *Rooker-Feldman* doctrine does not apply where the parallel state court action is presently on appeal in the state court system. *Id.* at 403. However, "in such circumstances, federal courts would have powerful reasons to abstain until the state courts resolved the matter." *Id.*; *see also Shermohmad v. N.Y. Life Ins. Co.*, No. 05-6072, 2006 U.S. Dist. LEXIS 61546, at *10 (E.D. La. Aug. 23, 2006) ("The fact that the parallel state court action is on appeal strengthens the need for abstention."); *Melo v. Gardere Wynne Sewell LLP*, No. 3-04-CV-2238-BD, 2005 U.S. Dist. LEXIS 7040, at *9-10 (N.D. Tex. Apr. 21, 2005) ("The disposition of the limitations issue now on appeal, while not res judicata in the instant case, may well inform the court's decision regarding a threshold affirmative defense raised by defendants. It simply makes no sense to proceed with the federal action until the limitations issue, which is common to both cases, is resolved." (footnote omitted)).

Here, as extensively discussed above, the pending state court appeal will resolve numerous matters critical to issues in the instant lawsuit. It "simply makes no sense to

18

proceed with the federal action" at this time, until the Underlying Dissolution Lawsuit

appeal is fully and finally adjudicated. *Cf. Melo*, 2005 U.S. Dist. LEXIS 7040, at *9-10.

II. **If the Court Proceeds With Preliminary Injunctive Proceedings, the Court Should Order Discovery, Hold an Evidentiary Hearing, and Take Supplemental Submissions Before Issuing a Decision.**

If the Court declines to abstain or stay the preliminary injunction proceedings, it

should, at minimum, adopt a sequenced approach before issuing any ruling on Plaintiffs'

motion. This is necessary to resolve the extensive factual disputes, unclear legal

theories, and conclusory allegations present throughout Plaintiffs' filings.

"[I]n general, a motion for a preliminary injunction should not be resolved on the

basis of affidavits alone. Normally, an evidentiary hearing is required to decide credibility

issues." *Swiderek v. Cont'l Micro, Inc.*, 680 F.2d 37, 38 (7th Cir. 1981). This is especially

true "where a plaintiff can totally prevent the conduct of a defendant's business through

the use of these injunctions." *Id.* at 39 (citations omitted). Whether or not a hearing must

be provided on a motion for preliminary injunction "manifest[s] the tension between the

need for speedy action and the desire for certainty and complete fairness." *Id.* Thus, the

Seventh Circuit has only recognized a limited exception to the general rule that an

evidentiary hearing is required: "where the issues are clear and not in serious dispute."

*Id.*; *see, e.g. Socialist Workers Party v. Ill. St. Board of Elections*, 566 F.2d 586, 587 (7th

Cir. 1977), *aff'd*, 440 U.S. 173 (1979) (finding no factual dispute as to the ground on

which the injunction was ordered). The exception does not apply here.

A. **The issues are not clear.**

As outlined in detail, *supra*, key legal premises underlying Plaintiffs' request for

preliminary relief remain unresolved or are under active dispute in multiple ongoing

state court proceedings. These include, for example:

- what individual(s) has the authority to decide whether to maintain the lawsuit;

- whether the filing and maintenance of this lawsuit is authorized by that person;

- who owns the trade secrets and thus has standing to bring a trade secret claim;

- whether Pure Development is even operational or legally capable of competing; and

- whether Pure Development has standing to bring trade secret or unfair competition claims.

Additionally, whether, to what extent, and when fiduciary duties arose, whether issue preclusion applies to the fiduciary duty claims, whether the referenced employment contracts are enforceable are and whether A. Seger and Palmer in fact breached any fiduciary duties or contracts all turn on state-court factual findings, some of which directly contradict Plaintiffs' claims (*e.g.*, that Seger's Canopy 5 formation was not a breach of fiduciary duty).

Given the ongoing and unresolved nature of these threshold issues, the legal basis for Plaintiffs' motion is anything but clear. There is, in short, no basis for issuing an injunction before discovery and a hearing are held. Defendants should be permitted to test Plaintiffs' claims and the credibility of their affiants through cross-examination and targeted discovery—especially where, as here, Plaintiffs seek sweeping relief that could materially interfere with Defendants' ability to conduct business.

**B. Nearly all material facts are in dispute.**

Countless key facts material to the motion for P.I. are in dispute. Defendants summarize them here.

**1. <u>Trade secret facts are in dispute. (P.I. § 2.1).</u>**

Nearly all facts relevant to a trade secret analysis are in dispute. Plaintiffs have not defined their purported trade secrets with the particularity required for injunctive

relief, nor have they provided any basis on which this Court could "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." *Contra* Fed. R. Civ. P. 65(d)(1)(C). The Court must be able to "identify [a] trade secret with sufficient particularity." *Insulet Corp. v. EOFlow, Co.*, 104 F.4th 873, 881-82 (Fed. Cir. 2024) (rejecting argument that "it would be unfair to require at this stage perfection as to the precise number and contours of the trade secrets at issue" and refusing "hazy grouping of information" as trade secret); *accord Mallet & Co. v. Lacayo*, 16 F.4th 364, 379-80 (3d Cir. 2021) ("[W]hen an injunction lacks sufficient specificity to permit meaningful appellate review, there needs to be another effort at crafting the contours of the order. Because the District Court did not identify with specificity the information it found to be Mallet's trade secrets, we are not in a position to make an informed decision as to whether Mallet is likely to prevail on its trade secret misappropriation claims."); *see generally Ligtel Communs. v. Baicells Techs.*, 455 F. Supp. 3d 792, 807 (N.D. Ind. 2020) ("[T]he crux of any trade secrets claim turns upon the identification of a trade secret. … [A] plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition." (citations omitted)).

In *Mallet,* the district court found that "at least some of the Mallet information in question constitutes protectable trade secrets, including, among other things, highly sensitive details." 16 F.4th at 381 (cleaned up). However, the appellate court found that "[a]bsent from the District Court's high-level description… are any specifics of what those 'highly sensitive details' are[, leaving them] with a list of thirteen broad categories of Mallet information that the District Court deemed 'protected materials[,]'" noting that

21

the "injunction order's statement of protected material is better characterized as a list of general categories of business and technical information." *Id.* at 381-82.

Here too, Plaintiffs seek to assert that broad categories of standard business documents deserve trade secret protection. *See* Doc. 18 at 13 para. 41. Any injunction order premised on the requested categories "lacks the foundation necessary for holding a plaintiff likely to prevail on its misappropriation claim. Without that information, the injunction order [would fail] to comply with Rule 65(d)[.]" *Mallet,* 16 F.4th at 381.

To leave no room for doubt, Defendants will contest the existence, "use," and misappropriation of every purported trade secret asserted by Plaintiffs. Defendants require an opportunity to discover the exact list and contours of the purported trade secrets at issue before they can properly respond to the motion for P.I. Defendants also require discovery to ascertain whether, and to what extent, Pure purportedly took efforts to maintain the confidentiality of any such sufficiently and particularly described trade secrets and on all factors of the prima facie trade secret case. Once such evidence is secured, Defendants can then defeat Plaintiffs' attempt to show that they have a reasonable likelihood of success on their trade secret case.

### 2. Unfair competition facts are in dispute. (P.I. § 2.2).

The Pure Enterprise is dissolved by a still-valid trial court order and cannot compete. That the Court of Appeals entered a stay pending appeal of that order appointing a receiver is not legally significant, as stays are not a license to alter the legal rights adjudicated at trial. As the Indiana Supreme Court made clear in *Producers Realty*, "[t]he effect of supersedeas is to restrain the appellee from taking affirmative action to enforce his decree, but it does not authorize the appellant to [act contrary to the decree]." 166 N.E.2d at 650 (citation omitted). "[T]he judgment, until annulled or

22

reversed, stands binding on the parties, as to every question directly decided." *Id.*

(citation omitted). Thus, the judgment dissolving the Pure Enterprise stands binding, and Pure may not conduct new business or otherwise compete with anyone.

Even assuming, that Pure Development is legally capable of competing despite (1) being dissolved by court order, (2) being judicially directed to wind down its affairs, and (3) Plaintiffs' own repeated admissions—on at least three separate occasions in state court—that Pure may not undertake new business, Plaintiffs' own evidence confirms that the factual basis for this claim is hotly contested.

Plaintiffs acknowledge that the Lanham Act prohibits the use in commerce of any "false or misleading description" or "representation of fact." Doc. 18 at 21. But the conduct they allege as violative—such as statements on the Canopy 5 website—falls well short of that standard. Plaintiffs claim the website improperly "advertise[s] Pure Development's past projects and employees as its own." Doc. 18 at 22. Yet Plaintiffs themselves attach the independent contractor agreement between Canopy 5 and Justin Lawhorn (Doc. 19-16), demonstrating that Lawhorn is, in fact, working for Canopy 5, with Pure's own employment relationship preserved and explicitly prioritized.

Moreover, the press and marketing materials Plaintiffs complain about consistently reference the "experience" and "resume" of the Canopy 5 team—not ownership of Pure's past projects. *See, e.g.*, Doc. 19-5 at 1-2, Doc. 19-15. Both the press release and the IBJ article explicitly describe Canopy 5 as a new and distinct business, launched in the wake of Pure's dissolution. The press release states: "As they launch Canopy 5, the team is committed to managing the seamless wind-down of Pure Development with unwavering dedication. Following a partner dispute resolved

23

decisively in their favor, they're ensuring all ongoing projects are completed and clients are fully supported." *See* Doc. 19-5 at 1; *see also* Doc. 19-6 at 1-2.

Plaintiffs' cited materials not only clarify the distinct corporate identity of Canopy 5, but also confirm that it is not claiming credit for Pure's legacy—it is merely leveraging the background and experience of Canopy 5's team, which includes many of the professionals behind those prior Pure projects. Plaintiffs' argument—that Defendants are somehow misleading the public by associating themselves with Pure's past—collapses under scrutiny. As Plaintiffs explain, the Lanham Act liability requires a "false or misleading representation of fact." Plaintiffs' own exhibits confirm that Canopy 5's statements are accurate and that its leadership transparently explains the company's connection to Pure's former team and history.

In short, Plaintiffs' Lanham Act and unfair competition theories hinge on factual disputes, including whether Canopy 5's statements are "false or misleading", whether the public is actually confused, whether Canopy 5 misrepresented relationships or ownership, and whether Pure can even lawfully compete for the projects it claims were diverted. Each of these questions turns on credibility, context, and disputed evidence—not legal conclusions. As the Seventh Circuit has emphasized, "[n]ormally, an evidentiary hearing is required to decide credibility issues," especially where, as here, "a plaintiff can totally prevent the conduct of a defendant's business through the use of these injunctions." *Swiderek*, 680 F.2d at 38-39.

Accordingly, Defendants respectfully submit that the Court should not issue any preliminary relief without first ordering targeted discovery, conducting a full evidentiary hearing, and receiving Defendants' merits briefing with evidentiary support. Plaintiffs'

allegations are heavily contested, and their claims are not sufficiently supported by any evidence warranting extraordinary injunctive relief on the current record.

### 3. Duty of loyalty facts are in dispute. (P.I. § 2.4).

Plaintiffs admit that Defendants C. Seger, A. Seger, and Palmer no longer owe Pure Development any fiduciary duty of loyalty, yet they suggest that Defendants should be prohibited from contacting Pure employees or customers based on alleged breaches of formerly owed duties of loyalty. Doc. 18 at 22-23. This theory fails as a matter of law and fact—and it certainly cannot justify injunctive relief without full discovery and a hearing. Even if such duties once existed, they terminated upon Defendants' resignations, and Plaintiffs offer no legal authority to impose forward-looking restrictions based on expired obligations. In fact, Indiana explicitly recognizes that "an employee may even make arrangements to compete" prior to his termination. *Potts v. Review Bd. of Indiana Employment Sec. Div.,* 475 N.E.2d 708, 712 (Ind. Ct. App. 1985).

Here, Plaintiffs rely on a narrow set of factual assertions that are both contested and insufficient to support an injunction. The only evidence offered is: (A) Two termination letters from the Indiana Economic Development Corporation (IEDC) terminating Pure as its developer (Doc. 18 at 6-7 para. 18-23), and (B) Communications with a capital partner regarding a potential joint venture (Doc. 18 at 6 para. 14-18). Neither supports the conclusion that Defendants actively and directly competed against Pure while still under a duty of loyalty. In fact, Plaintiffs' own exhibit (Doc. 19-8, 19-9) confirms it was IEDC's unilateral decision to request assignment of its development agreements to Canopy 5—not a solicitation or inducement by Defendants.

Similarly, whether certain opportunities (like a land purchase or joint venture) constitute corporate opportunities belonging to Pure is a fact-intensive question that is

25

hotly disputed and has not been resolved. *See* Ex. CC at 26-29 § IV (arguing in Underlying Dissolution Lawsuit that these deals are not corporate opportunities of Pure). Notably, Plaintiffs offer no evidence that Canopy 5 has interfered with any active Pure projects listed in the state court dissolution order. Doc. 19-2 at 11-12 (list of active Pure projects as of trial). Instead, Plaintiffs complain that Canopy 5 has sought to pursue new development opportunities by leveraging relationships the members of Canopy 5 developed while performing development services for Pure—at a time when Pure is barred by a court order from engaging in new business. *Producers Realty*, 166 N.E.2d at 650. Indeed, Plaintiffs themselves acknowledged, in at least three separate state court filings, that Pure is legally prohibited from bidding for or undertaking new projects. Ex. J at 6; *see also* Ex. K at 7 n.2 ("[I]t cannot conduct new business."); Ex. B para. 45.

Moreover, Plaintiffs' allegations about interference with Pure personnel are undermined by their own exhibits. For example, the independent contractor agreement with Justin Lawhorn contains language preserving and prioritizing any duties Lawhorn owes to Pure: "You shall make the timely and complete fulfillment of your responsibilities to Pure Development your highest professional priority. Your work with Canopy 5 must not interfere with, delay, or diminish the performance of your duties owed to Pure Development." Doc. 19-16. If anything, this shows that Canopy 5 took affirmative steps to avoid interference—not that it sought to undermine or solicit away Pure personnel.

Given the nature of Plaintiffs' breach of duty of loyalty theory—which depends on the timing, scope, and conduct surrounding Defendants' resignations, their post-employment activities, and the legal status of Pure's operations—a preliminary injunction cannot issue without full discovery and a fact-finding hearing. Whether certain

opportunities belong to Pure, whether there was any improper solicitation, and whether any post-resignation duty survives are all disputed factual questions.

### 4. <u>Breach of contract facts are in dispute. (P.I. § 2.4).</u>

Plaintiffs allege that Defendants Adam Seger and Brian Palmer breached their employment agreements with Pure Development by misusing confidential business information, soliciting employees, and contacting customers. *See* Doc. 18 at 22-24. However, each of these claims is factually and legally disputed, and the record contains significant evidence undermining Plaintiffs' theory. These disputes cannot be resolved on the current paper record and require both discovery and an evidentiary hearing.

First, Plaintiffs ignore that Pure Development materially breached the same employment contracts before any alleged violation by Defendants. The employment agreements for Palmer and A. Seger expressly contemplate the creation and equity allocation in a new entity called Pure Executives, LLC. *See* Doc. 19-20 at 2 and Doc. 19-21 at 2. That entity was never established—despite being fundamental to the promised compensation and structure. Doc. 19-2 at 7 para. 29-31. Plaintiffs' failure to perform this central obligation constitutes a first material breach, excusing any later alleged non-performance by Palmer or A. Seger. Under basic contract law, a party who commits the first material breach may not enforce the contract against the other party.

Second, even if the non-solicitation clauses were enforceable, the contracts themselves establish a limited and exclusive remedy for any breach: forfeiture of vesting compensation. Specifically, the agreements state that if the employee solicits clients or employees during the restricted period, their equity compensation and unvested interests are forfeited. Nowhere do the contracts authorize injunctive relief or equitable

enforcement. This contractual structure undermines Plaintiffs' request for extraordinary relief, as they explicitly bargained for a different consequence.

Third, Plaintiffs present no competent evidence that any Defendant violated the non-solicitation provisions related to employees. Critically, the employment agreements (Doc. 19-20 and Doc. 19-21) prohibit only solicitation of Pure employees "to leave the employ of [Pure]"—they do not prohibit discussions about dual employment or independent contractor arrangements where the employee continues to work for Pure. Canopy 5 acknowledged and respected this boundary. The independent contractor agreement with Justin Lawhorn, for example, explicitly conditioned the relationship on his continued employment with Pure and prioritized his duties to Pure. Doc. 19-16.

Fourth, Plaintiffs similarly fail to offer competent evidence that any Defendant improperly solicited Pure's customers in violation of their employment agreements. Chris Seger did not have an employment agreement, and Plaintiffs fail to provide any evidence at all that Brian Palmer is alleged to have misused confidential information or directly contacted Pure clients for the purpose of diversion. As to Adam Seger, the only cited conduct involves communications with a land seller and a prospective joint venture partner. But whether those communications involved business "of the type rendered by the Company" (Doc. 19-21 at 5)—a necessary element of the contractual corporate opportunity restriction—is the subject of an active and hotly contested factual dispute.

In short, Plaintiffs' breach of contract theory hinges on fact-bound disputes and legal interpretations—including whether Plaintiffs materially breached first, whether Defendants resigned for cause, whether any actionable solicitation occurred, and whether the contractual provisions are enforceable as written. These are classic

credibility and fact questions that cannot be resolved on affidavits alone and must instead be addressed through discovery and an evidentiary hearing.

### III. Discovery Should Be Sequenced With a Trade Secret Disclosure Before All Other Discovery.

A number of courts "have enacted procedures requiring that trade secrets be identified before discovery commences." *United Servs. Auto. Ass'n v. Mitek Sys.*, 289 F.R.D. 244, 248 (W.D. Tex. 2013). The *Mitek* court collected twelve examples of such courts, including D. Conn.; D. Nev.; D.N.J.; D. Col.; W.D.N.C.; E.D. Mich.; D. Utah; N.D. Ga.; N.D. Ill.; D. Minn.; D. Del.; and the Mass. Super. *Id.* (collecting cases); *see also, e.g.*, E.D. La. L.R. 26.3;[9] Template for Scheduling Conference, C.D. Cal., at 6-7.[10]

The "purpose for this procedural rule is to prevent trade secret related discovery from beginning before a particular trade secret has been identified," which "allows well-investigated claims to proceed while discouraging meritless trade secret claims," "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope," and "provides defendants with an equal playing field, allowing them ample time and opportunity to develop their defense rather than ambushing them on the eve of trial." *Mitek*, 289 F.R.D. at 248 (citations omitted).

Here, Defendants have no idea what Plaintiffs mean when they use the phrase "trade secret." Plaintiffs have filed all of their exhibits to date on the public docket, and they released numerous supposedly confidential documents to the public in the state trial court. *See, e.g.*, Ex. U. A plaintiff "must identify the purported trade secret with an

---

[9]https://www.laed.uscourts.gov/sites/default/files/local_rules/2022%20CIVIL%20RULES%20LAED%20w%20Amendment%202%204%25.pdf, archived at https://perma.cc/LK7G-TNBC.

[10]https://www.cacd.uscourts.gov/sites/default/files/documents/MEMF/AD/Order%20Setting%20Scheduling%20Conference%2005.03.24.docx, archived at https://perma.cc/TY7F-RGBK

appropriate level of specificity." *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 1:17-cv-8829, 2020 U.S. Dist. LEXIS 94764, at *29 (N.D. Ill. May 31, 2020). That plaintiff "must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition." *Id.* (citation omitted). This is especially true in the context of preliminary injunction proceedings. *See Insulet*, 104 F.4th at 881-82; *Mallet*, 16 F.4th at 379-80.

Before preliminary injunction discovery proceeds, Plaintiffs should be required to file (under seal) a trade secret disclosure using the protocol and rules contained within E.D. La. L.R. 26.3.[11] In the alternative, discovery should be sequenced as follows: (1) Defendants serve up to five interrogatories that seek, with precision, identification of trade secrets within three days; (2) Plaintiffs answer these interrogatories, under oath, within seven days thereafter; and then (3) preliminary injunction discovery may commence only thereafter.

### CONCLUSION

Litigating in four forums is enough. There is no need for this Court to become the fifth. The Court should abstain pursuant to *Colorado River*. In the alternative, the Court should authorize Defendants to take discovery from Plaintiff, to conduct a preliminary injunction evidentiary hearing, and to issue supplemental briefing, all before ruling on the instant motion for preliminary injunction.

* * *

---

[11]https://www.laed.uscourts.gov/sites/default/files/local_rules/2022%20CIVIL%20RULES%20LAED%20w%20Amendment%202%204%2025.pdf, archived at https://perma.cc/LK7G-TNBC.

Dated: July 23, 2025

*/s/Robert D. MacGill*
Robert D. MacGill (IN 9989-49)
Matthew T. Ciulla (IN 34542-71)
J. Cecelia Satterthwaite (IN 37935-49)
**MACGILL PC**
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone:  (317) 721-1253
Robert.MacGill@MacGillLaw.com
Matthew.Ciulla@MacGillLaw.com
jcs@MacGillLaw.com

*Counsel for Canopy 5, LLC; Chris Seger; Adam Seger; Brian Palmer; and Magic Tric I, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on July 23, 2025 on

all counsel of record by virtue of the Court's CM/ECF System.

/s/Matthew T. Ciulla