**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

PURE DEVELOPMENT, INC.,
PURE HOLDINGS, INC.,
and DREW SANDERS,

     Plaintiffs,

  v.

CANOPY 5, LLC, CHRIS SEGER,
ADAM SEGER, BRIAN PALMER,
and MAGIC TRIC I, LLC,

     Defendants.

Case No. 1:25-cv-1301-SEB-TAB

**PURE DEVELOPMENT, INC.'S OPPOSITION TO DEFENDANTS'
MOTION TO STAY INJUNCTIVE RELIEF PROCEEDINGS OR, IN THE
ALTERNATIVE, FOR DISCOVERY BEFORE RESPONDING TO MOTION
<u>FOR PRELIMINARY INJUNCTION AND FOR HEARING</u>**

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them by Congress. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Under *Colorado River*, that obligation is relaxed only when there is a substantial likelihood that the resolution of pending state-court litigation will dispose of **all claims** presented in the federal action and leave the federal court with nothing left to do. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). That is not the case here; Defendants do not even argue that it is.

The point of Defendants' motion is not judicial efficiency, but delay. By its motion for preliminary injunction, Pure Development, Inc. seeks to stop Canopy 5, LLC, Chris

1

Seger, Adam Seger, and Brian Palmer from profiting by their wrongful use and taking of Pure Development, Inc.'s property, its employees' labor, its confidential business information and trade secrets, and its development projects. As explained below, there is no pending state-court action in which Pure Development, Inc. seeks—**or could seek**—such relief. Entreating this Court not to hear Pure Development, Inc.'s motion, Defendants seek to prevent Pure Development, Inc. from protecting its interests and to escape judicial scrutiny of their actions. These are not the "exceptional circumstances" to which *Colorado River* abstention was ever meant to apply. *Antosh v. Vill. of Mount Pleasant*, 99 F.4th 989, 993 (7th Cir. 2024). Defendants' motion to stay [Dkt. 22] should be denied.[1]

## ARGUMENT

1.    *Colorado River* **does not apply because this case is not parallel to any pending state-court proceeding.**

"We use a two-step inquiry to assess whether *Colorado River* abstention is appropriate." *Antosh*, 99 F.4th at 993. The threshold question is whether the federal and state actions are "parallel"—*i.e.*, whether the "state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28. "If the proceedings are not parallel, then the

---

[1] This Court has already addressed the Defendants' companion request to conduct discovery. [Dkt. 23 at 1]. The Defendants' request for an evidentiary hearing is addressed in Section 2 below.

*Colorado River* doctrine does not apply and a stay is not proper." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011). "If there is any doubt that cases are parallel, a district court should not abstain," lest it commit a "serious abuse of discretion." *Id.*

Invoking *Colorado River* abstention "necessarily contemplates that the federal court will have nothing further to do in resolving **any** substantive part of the case, whether it stays or dismisses." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28 (emphasis added). "Two suits need not be mirror images to be considered parallel," but there must be a "substantial likelihood that the state litigation will dispose of **all claims** presented in the federal case." *Antosh*, 99 F.4th at 993–94 (emphasis added); *see also Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) (same).

In this case, the list of "all claims" includes the following:

1.  Claims that Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have misappropriated trade secrets belonging to Pure Development, Inc., in violation of federal and state law (**Counts 1 and 2**);

2.  Claims that Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have exerted unauthorized control over Pure Development, Inc. property (**Counts 3 and 4**);

3.  Claims that Canopy 5, LLC unlawfully accessed Pure Development, Inc.'s computer systems and property (**Counts 5 and 6**);

4.  Claims that Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have engaged in unfair competition with Pure Development, Inc., in violation of federal and state law (**Counts 7 and 8**);

5.  A claim that Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have been unjustly enriched at Pure Development, Inc.'s expense (**Count 9**);

6. A claim that Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have tortiously interfered with Pure Development, Inc. client relationships (**Count 10**);

7. A claim that Canopy 5, LLC and Chris Seger tortiously interfered with Adam Seger and Brian Palmer's employment contracts, as well as breach of contract and declaratory judgment claims against Adam Seger and Brian Palmer arising from those contracts (**Counts 11, 12, 13, 14, and 15**);

8. A claim that Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer tortiously interfered with Pure Development, Inc.'s employee relationships (**Count 16**);

9. Claims that Chris Seger, Adam Seger, and Brian Palmer each breached their duty of loyalty as Pure Development, Inc. employees (**Count 17**) and that Chris Seger breached his separate fiduciary duty to Drew Sanders as a 50-50 owner of Pure Holdings, Inc. (**Count 18**);

10. Claims against Chris Seger, Adam Seger, and Magic TRIC I, LLC arising out of their usurpation of a business opportunity (**Counts 19, 20, and 21**); and

11. A claim for declaratory judgment by Pure Holdings, Inc. that Chris Seger is not owed indemnification for litigation costs he claims to have incurred (**Count 22**).

Defendants' motion claims that three other state-court proceedings are parallel to this action: (1) a suit by Chris Seger seeking indemnification of his legal expenses; (2) a suit by a shareholder of Pure Holdings, Inc. and Pure Development Capital, Inc. (Bryan Chandler) claiming he is a director of Pure Holdings, Inc. and that he has been wrongly frozen out of company decision-making; and (3) a suit Chris Seger filed seeking the

dissolution of Pure Holdings, Inc. and Pure Development Capital, Inc.[2] But Defendants fail even to argue that any of those pending state-court proceedings (individually or in tandem) could dispose of **all claims** in this case and leave this Court with "nothing further to do." Defendants implicitly acknowledge this by filing a motion that this Court only stay the pending injunction proceedings, rather than abstain from hearing the entire case.

Indeed, apart from the indemnity claim (addressed in Section 1.1 below), none of the claims in this case has been asserted in another proceeding. Moreover, other than those against Chris Seger, the claims in this case are against defendants who are not parties in any other pending action (Canopy 5, LLC, Magic TRIC I, LLC, Adam Seger, and Brian Palmer). Although an identity of parties is not required for actions to be parallel, none of the pending state-court actions addresses the wrongful actions of the defendants at issue in this case. *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 499 (7th Cir. 2011) (suits are parallel only if substantially the same parties are contemporaneously litigating substantially the same issues).

---

[2] Pure Holdings, Inc. is a holding company. Pure Development, Inc. is its wholly owned operating subsidiary. Pure Development Capital, Inc. is an entity that is used to hold capital and issue guarantees.

**1.1** **There is no substantial likelihood that the outcome of the state-court indemnification action will dispose of all the claims in this case.**

The **only** claim in this case that has been raised in any pending state-court action is Pure Holdings, Inc.'s request in this case for a declaratory judgment that it does not owe Chris Seger indemnification for his legal expenses. An hour after this action was filed, Chris Seger filed a reciprocal action in state court seeking indemnification for his legal fees, including fees he is incurring **in this case**. (*See* Ex. 1 – C. Seger State Court Indemnity Compl., filed at 2;02 p.m. on June 30, 2025; Ex. 2 – C. Seger Amended Compl. at ¶¶ 32–39, seeking indemnity for federal action). Thus, for Chris Seger's state-court action to be resolved, this case must be resolved first. The Indiana Commercial Court sitting in Marion County has stayed that action pending this Court's resolution of Defendants' motion to stay. (Ex. 3 – Order Staying C. Seger State Court Indemnity Suit).[3]

**1.2** **There is no substantial likelihood that the outcome of Bryan Chandler's shareholder action will dispose of all the claims in this case.**

Defendants' motion to stay also relies on Bryan Chandler's claim to be a director of Pure Holdings, Inc. who must be afforded a say in the management of that company's

---

[3] Defendants' motion recites that, in the indemnity lawsuit, "approximately 4,000 pages of documents have been produced so far." [Dkt. 22 at 16.] What Defendants do not tell the Court is that those 4,000 pages that those pages were nothing more than the filings of another case, and that they were produced by Chris Seger, without any pending discovery request, before Pure Holdings, Inc. had even appeared in the case.

day-to-day business affairs.[4] The Indiana Commercial Court sitting in Marion County has already soundly rejected Chandler's assertion as having no legal basis, enjoining him from "(1) holding himself out as a director and officer of the Pure Entities, and (2) attempting to direct or conduct the business and affairs of the Pure Entities as a director or officer." (Ex. 4 – State Court Injunction Against B. Chandler, at 21). In its order, the court stated: "Chandler may not insert himself into a director or officer role with any of the Pure Entities, as the board of directors of each entity consists of only one member—which has already been filled by Sanders—and all officers positions have also already been filled by Sanders." (*Id.* at 20).

### 1.3 There is no substantial likelihood that the outcome of the original dissolution action will dispose of all the claims in this case.

In the first action he filed in state court, Chris Seger sought to dissolve Pure Holdings, Inc. and Pure Development Capital, Inc. by claiming that the then-directors of those companies were deadlocked such that the companies' business could not be conducted to the advantage of the shareholders. *See* Ind. Code § 23-1-47-1(2)(A) (judicial dissolution statute).

On May 12, 2025, the Indiana Commercial Court sitting in Madison County ordered the dissolution of Pure Holdings, Inc., Pure Development Capital, Inc., and nonparty

---

[4] Chandler is trustee of the "CS Phoenix Blind Trust," the trust to which Chris Seger transferred all of his ownership interests in Pure Holdings, Inc. and Pure Development Capital, Inc. on June 25, 2025.

Pure Development, Inc. That order also contemplated the appointment of a receiver, who would exercise the dual powers of a receiver and custodian, to see all of Pure Development, Inc.'s pending business through to completion and perhaps even find a buyer for the companies on a going-concern basis. (Ex. 5 – May 12, 2025 Dissolution Order at 44 ("The Court authorizes the receiver to act in the best interests of the shareholders and creditors, whether that be completing all current projects and later winding up the entities, or selling the entities with the opportunities that come with the current projects.")).

The Commercial Court postponed selecting a receiver and afforded the parties an opportunity to propose candidates for that job. However, it never appointed a receiver because—on June 23, 2025—the Indiana Court of Appeals stayed the dissolution order altogether.[5] (Ex. 6 – June 23, 2025 Order at Ordering ¶6). On July 31, 2025, the Court of Appeals also denied Chris Seger's motion to lift that stay or to impose an appeal bond. (Ex. 7 – July 31, 2025 Order at Ordering ¶ 6).

In their motion to this Court, Defendants contend that the Court of Appeals' stay is meaningless. They argue that this Court and the parties must act as though the dissolution order remains in presently in effect and that, until that order is reversed, Pure Development, Inc. cannot defend against the taking of its property, sue to enforce

---

[5] Two days after the Court of Appeals issued its stay, Chris Seger resigned as director of any of the Pure companies and ceded his ownership interests in them.

its contracts or the fiduciary duties it is owed, or otherwise protect its business interests. That is wrong on several fronts.

### 1.3.1 Pursuant to the Court of Appeals' stay, no Pure company has been dissolved.

On June 23, 2025, the Court of Appeals stayed the Commercial Court's order dissolving the Pure companies. Thus, that order has been held in abeyance and cannot be enforced. *State v. Trueblood*, 767 N.E.2d 1011, 1013 (Ind. Ct. App. 2002) ("to stay an order means to hold it in abeyance or to refrain from enforcing it"). Indeed, no decree of dissolution has been delivered to the Indiana Secretary of State pursuant to Indiana Code section 23-1-47-4(a). (Ex. 8 – Indiana Secretary of State Record of "Active" status).[6]

Defendants cite to *Indianapolis v. Producers Realty, Inc.*, 166 N.E.2d 648 (Ind. 1960), for the proposition that "a supersedeas does not authorize the appellant to act contrary to the decree." But the context of that statement matters. In *Producers Realty*, the trial court entered a permanent injunction prohibiting Indianapolis from annexing land. *Producers Realty*, 166 N.E.2d at 649. The City asked the Indiana Supreme Court to enter a stay that would have allowed it to annex the land while its appeal was pending. *Id.* The Court said no, citing the "general principle" that "a prohibitory injunction may not be suspended pending appeal." *Id.* at 650. "To stay the operation of the injunction pending an appeal on its merits would give the city the opportunity to proceed with the

---

[6] This Court may take judicial notice of public records from the Indiana Secretary of State. *Gen. Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

annexation and thus create a *fait accompli* by the time the appeal could be determined—thus presenting issues which might become moot." *Id.* The point of *Producers Realty* was that (at that time, as a general rule) injunctions could not be stayed even if an appellate bond were provided.

Not only does that general rule have no application here (there is no injunction), but it was also abrogated by Indiana's adoption of its Trial Rule 62(C) ten years later. Since 1970, Trial Rule 62(C) has expressly authorized Indiana's trial and appellate courts to "suspend, modify, restore, or grant" injunctions—as well as (in this case) any other "judgment or order for specific relief other than the payment of money" as the court sees fit. Ind. Trial R. 62(C). As the Indiana Practice treatise explains, "[t]he effect of Rule 62(C) was to overrule almost all lines of cases [including *Producers Realty*] that denied a stay or other temporary provision relief on appeal." 4. IND. PRAC., RULES OF PROCEDURE ANNOTATED R. 62 (3d ed.).

In short, pursuant to the Court of Appeals' stay, none of the Pure companies has been dissolved. No receiver has ever been appointed. And there is no bar on Pure Development, Inc.'s protecting its interests by seeking relief in this action.

### 1.3.2 Even if dissolved, Pure Development, Inc. would have the right to protect its interests in this action.

Even if Pure Development, Inc. were dissolved—or even if it *might* be dissolved and a receiver appointed on remand from Indiana's appellate courts—none of its claims in

this case would be affected. Defendants' arguments to the contrary misunderstand the effect of dissolution under Indiana law.

First, dissolution does not "transfer title to the corporation's property." *Id.* § 23-1-45-5(b)(1). The suggestion that the Commercial Court's dissolution order resulted in Pure Development's property (its office and computers, as well as its business information and trade secrets) being fair game for Chris Seger, Adam Seger, Brian Palmer, and their new company Canopy 5 to use for themselves is flat wrong. Yet, the evidence will demonstrate that is exactly what those defendants did.

Second, dissolution does not relieve a company's directors, officers, or employees of their fiduciary obligations—either while they are still with the corporation (which Chris Seger, Adam Seger, and Brian Palmer were through the last week of June 2025) or even afterward as it relates to transactions that had their inception before the fiduciary relationship terminated. *See* Ind. Code § 23-1-45-5(b)(3) (dissolution does not subject a company's directors or officer—here, Chris Seger—to "standards of conduct different from those prescribed in IC 23-1-33 through IC 23-1-37"); *Abdallah v. Qadorh-Zidan*, 913 N.E.2d 280, 286 (Ind. Ct. App. 2009) (fiduciary duties continue indefinitely as to transactions that had their inception before the fiduciary relationship terminated); *cf. Boushehry v. Ishak*, 550 N.E.2d 784, 789 (Ind. Ct. App. 1990) (fiduciary duty prohibits partners from taking action with respect to unfinished partnership business, and that

duty continues during the winding up of partnership affairs and liquidation of the partnership's assets).

Defendants suggest (at 25) they had the right to "make arrangements to compete." But "[p]rior to his termination, an employee must refrain from actively and directly competing with his employer for customers and employees and must continue to exert his best efforts on behalf of his employer." *SJS Refractory Co. v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758, 768 (Ind. Ct. App. 2011). Here, the evidence will demonstrate that Chris Seger, Adam Seger, and Brian Palmer not only launched Canopy 5 while still employed by Pure Development, Inc., but that they did so from within Pure's four walls, using Pure's computer systems, Pure's employees, Pure's confidential business information and trade secrets, and by attempting to divert Pure's business to Canopy 5—including projects that the Commercial Court's dissolution order specifically contemplated would be seen to completion by a receiver.

Third, dissolution does not "prevent commencement of a proceeding by … the corporation in its corporate name." Ind. Code § 23-1-45-5(b)(5). The notion that Pure Development, Inc. has no capacity to assert claims—including, specifically, to enforce its contract rights against Adam Seger and Brian Palmer—has no legal basis. And nothing

about Adam Seger and Brian Palmer's contractual obligations is being, or has been, adjudicated in any other state-court proceeding.[7]

The short of it is this: nothing about the resolution of the appeal of the Commercial Court's dissolution order affects the claims that are at issue in the injunction context here. And, as to the necessary prerequisite to invoking *Colorado River*, nothing about the resolution of that appeal—or any of the other state-court proceedings—will come close to disposing of all the claims in this case or leave this Court with "nothing left to do." On this basis alone, Defendants' motion should be denied.

**2.      Even if this case were parallel to any state-court proceeding, there are no exceptional circumstances requiring abstention.**

Even if this action were parallel to any state-court proceeding, there are no "exceptional circumstances" justifying abstention. *Adkins*, 644 F.3d at 500. Here, the task "is not to find some substantial reason for the **exercise** of federal jurisdiction," but rather "to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the **surrender** of that jurisdiction." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25–26 (emphasis in original). Our circuit utilizes a non-exclusive list of factors to consider:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding

---

[7] With respect to Adam Seger and Brian Palmer's employment contracts, Defendants' motion suggests a forthcoming "first material breach" argument. That defense has no legal basis for the reason, among others, that neither Seger nor Palmer ever purported to terminate their agreements as a result of any alleged material breach.

piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Adkins*, 644 F.3d at 500–01. These factors are not a "mechanical checklist" but rather should be balanced "depending on the particular setting of the case" and, in any event, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 501 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16).

A balance of the factors set forth above does not justify abstention:

1) **State assumption of jurisdiction over property.** No Indiana state court has assumed jurisdiction over property at issue in this case. *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 650 (7th Cir. 2021) (this inquiry "is relevant only if there is property at issue in *both* the federal and the state proceedings" and "the state court has assumed jurisdiction over the property at issue"). As noted above, even if the Commercial Court's dissolution order were in effect, that would not result in a transfer of any of Pure Holdings, Inc.'s property rights. Ind. Code § 23-1-45-5(b)(1).

2) **Inconvenience of the federal forum.** Defendants concede (at 11 fn. 6) that this is not an inconvenient forum.

3) **Desirability of avoiding piecemeal litigation.** Preventing Pure Development, Inc. from protecting its property, its confidential business information, and its trade secrets in this Court would require it to institute **new** litigation in state court, because

there is no pending case (other than this one) in which Pure Development, Inc. has asserted such claims—or is even in a position to do so.

4)      **Order in which jurisdiction was obtained.** The dissolution action has been pending since June 2024; however, as noted above, the claims in this case do not depend on the outcome of that suit. The other two suits on which Defendants' motion relies (which also have nothing to do with the claims here) were filed after this action.

5)      **The source of governing law.** This case involves both federal and state law claims, which "neither favors nor disfavors abstention." *Loughran,* 2 F.4th at 650. That said, the state-law claims in this case concern ordinary principles of property, contract, and fiduciary duty that this Court has ample experience applying.

6)      **The adequacy of the state-court action to protect the federal plaintiff's rights.** To adequately protect the plaintiffs' rights in this case, one of the pending state-court actions would have to be postured in such a way as to afford them an opportunity to assert the claims asserted here. As noted above, however, there is no existing state-court proceeding in which Pure Development, Inc. has asserted—or can assert—the claims it has asserted here. It is a party to only the dissolution action (which has concluded in the trial court and is on appeal) and to Bryan Chandler's action, which has nothing to do with anything at issue in this case. The same is true for Drew Sanders, whose claims in this case could not be asserted in any pending proceeding.

Only Pure Holdings, Inc. could theoretically have its declaratory judgment claim addressed in Chris Seger's pending state-court indemnity case; however, as noted above, Chris Seger seeks in that suit indemnification for fees incurred in **this case** (which necessarily must conclude entirely for his indemnity claim to be resolved). On the Defendants' side of this case, only Chris Seger is a party in any of the state-court actions and, again, none of the Defendants' conduct at issue in this case is a subject of those actions.

7) **The relative progress of the proceedings.** A final (stayed) judgment has been entered in the dissolution action, and it is on appeal. But, again, that action plays no part in resolving the claims here. The other, similarly irrelevant actions were both filed after this case. The Commercial Court in Marion County has stayed Chris Seger's indemnity action pending this Court's decision on abstention. As noted above, however, that case cannot be resolved until after this one because, in it, Chris Seger seeks indemnity for the fees he is incurring in this case. Meanwhile, in the other case, the Commercial Court in Marion County has already enjoined Bryan Chandler from purporting to direct any business of the Pure companies—nullifying Defendants' hope that Chandler might somehow veto the prosecution of this action.

8) **The presence or absence of concurrent jurisdiction.** The only claim in this case that is currently subject to concurrent jurisdiction in a state court is Chris Seger's assertion that he is entitled to indemnification for his legal fees. And, again, Chris

Seger's state-court action seeking indemnification could only be resolved **after** this case, because he seeks indemnification for this case.

9) **The availability of removal.** The claims in the pending state court cases are not removable. But those claims also bear no relationship or resemblance to the claims in this case.

10) **Whether the federal case is vexatious or contrived.** There is nothing vexatious or contrived about this case. The plaintiffs have legitimate rights that they seek to vindicate, and there is no pending state-court action in which those rights have been or could be asserted.

A balance of these factors weighs heavily against abstention for much the same reason this case cannot be deemed parallel to any pending state-court proceeding. There is no pending state-court action in which the plaintiffs in this case could obtain the relief they seek for the wrongs that have been committed by the defendants in this action. A new action would have to start from scratch in an Indiana court, contrary to *Colorado River*'s aim of **avoiding** piecemeal litigation. For all these reasons, Defendants' motion to stay should be denied.

**3. A live evidentiary hearing is unnecessary, but Pure Development, Inc. will of course do whatever the Court deems appropriate.**

Defendants assert that a live evidentiary hearing to resolve the pending motion for preliminary injunction because, they say, facts are in dispute. But that is incorrect for a simple reason: only the Defendants and those acting in concert with them are in a

position to testify about what they did. Pure Development, Inc. can provide the Court only documentary evidence of Defendants' conduct, along with whatever Defendants and their collaborators admit through deposition or affidavit testimony.

Moreover, as their recitation of anticipated defenses makes clear, Defendants aren't contesting **facts** so much as they're contesting whether those facts add up to a claim— *e.g.*, by contending that Canopy 5's marketing materials create no issue, that they were free to use and take Pure Development, Inc. property for their own purposes, that it was fine for Canopy 5 to have Pure Development, Inc. employees working for it, that Defendants' conduct before resigning was simply "making arrangements to compete," and that Defendants owed no duties at all to Pure Development, Inc. once they resigned.[8]

For these reasons, Pure Development, Inc. proposes that, after discovery related to the injunction request is concluded: Pure Development, Inc. supplement its initial motion with any additional evidence; Defendants respond; Pure Development, Inc. file its reply; and the Court hear only oral argument on the written submissions. However, Pure Development, Inc. will of course defer to whatever process the Court deems appropriate. It asks only that, if the Court decides to take live evidence, it set time restrictions on the proceedings in advance so that they do not become unwieldy.

---

[8] Pure Development, Inc. will not now take up the Court's time explaining why Defendants' positions are unsupportable.

**CONCLUSION**

For these reasons, plaintiff Pure Development, Inc. respectfully requests that the Court deny Defendants' motion to stay, that it set the parameters for the remainder of these injunction proceedings as it deems appropriate, and for all other appropriate relief.

Respectfully submitted,

*/s/ B. (Too) Keller*
B. (Too) Keller
Keller Macaluso LLC
760 3rd Avenue SW, Suite 210
Carmel, IN 46032
317-660-3402
too@kellermacaluso.com

*Counsel for Pure Holdings, Inc.*
*and Pure Development, Inc.*