**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| PURE DEVELOPMENT, INC., PURE HOLDINGS, INC., and DREW SANDERS, <br><br> Plaintiffs, <br><br> v. <br><br> CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, BRIAN PALMER, MAGIC TRIC I, LLC, MAGIC ATX I, LLC, JENNAB, LLC, and JENNA BARNETT, <br><br> Defendants. | Case No. 1:25-cv-1301-SEB-TAB |

**SECOND AMENDED COMPLAINT**

Plaintiffs Pure Development, Inc., Pure Holdings, Inc., and Drew Sanders, for their amended complaint against defendants Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, Magic TRIC I, LLC, Magic ATX I, LLC, JennaB, LLC, and Jenna Barnett, state:

**Parties, Jurisdiction, and Venue**

1.      Plaintiff Pure Holdings, Inc. is an Indiana corporation with its principal place of business at 1351 Roosevelt Ave., Suite 100, in Indianapolis, Indiana.

2.      Plaintiff Pure Development, Inc.—the wholly owned operating subsidiary of Pure Holdings, Inc.—is an Indiana corporation with its principal place of business at 1351 Roosevelt Ave., Suite 100, in Indianapolis, Indiana.

1

3. Plaintiff Drew Sanders is an Indiana citizen.

4. Defendant Canopy 5, LLC, is an Indiana limited liability company. Although it claims in its Articles of Organization to have its principal office at 8153 Morningside Drive in Indianapolis, in reality, Canopy 5, LLC began its operations out of Pure Development, Inc.'s office at 1351 Roosevelt Ave., Suite 100.

5. Defendants Chris Seger, Adam Seger, Brian Palmer, and Jenna Barnett are all Indiana citizens.

6. Defendant Magic TRIC I, LLC is a limited liability company formed by Chris Seger.

7. Defendant Magic ATX I, LLC is a limited liability company formed by Chris Seger.

8. Defendant JennaB, LLC is a limited liability company formed by Jenna Barnett.

9. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

**Factual Allegations**

**A. Pure Development, Inc.'s origin**

11. In 2012 Chris Seger and Drew Sanders went into business together to form Pure Development, Inc., a real estate development company in Indianapolis.

2

12.    On July 1, 2019, Chris Seger and Sanders formed Pure Holdings, Inc., with each of them owning 50 percent of the company. At that time, the two transferred their ownership interests in Pure Development, Inc. to Pure Holdings, Inc., and Pure Development, Inc. became a wholly owned subsidiary of Pure Holdings, Inc.

13.    Pure Development, Inc. then grew into a multimillion-dollar company with about 20 employees. Since its formation, Pure Development, Inc. has completed more than 20 development projects throughout the country.

14.    This action originates from the defendants' efforts to wrongfully appropriate Pure Development, Inc.'s business and property for themselves.

**B.    The Reno (Nest) Opportunity**

15.    While he was a 50-50 owner with Sanders of Pure Holdings, Inc.—and a director and officer of both Pure Holdings, Inc. and Pure Development, Inc.—Chris Seger sought to convert a lucrative Pure Development, Inc. business opportunity in Nevada known as "Reno (Nest)" to his exclusive benefit.

16.    Pure Development, Inc. first identified the Reno (Nest) site as an industrial speculative site in September 2023. And, until late March 2025, Sanders understood that all activities connected to the Reno (Nest) site were in connection with Pure Development, Inc.'s business.

17.    On July 24, 2024, defendant Adam Seger—Chris Seger's brother and a Pure Development, Inc. employee—signed a letter of intent on Pure Development, Inc.'s

3

behalf to purchase a 104.9-acre parcel within the Tahoe Reno Industrial Center from Emerald City Empire, LLC. A true and accurate copy of the July 24, 2024 letter of intent is attached as **Exhibit 1**.

18.    On August 8, 2024, Adam Seger signed a separate letter of intent on behalf of Pure Development, Inc. to purchase a parcel from Emerald City Empire, LLC. A true and accurate copy of the August 8, 2024 letter of intent is attached as **Exhibit 2**. This letter indicated an intent to purchase only a portion of the Reno (Nest) parcel encompassing one 43-acre building site.

19.    On October 7, 2024, on Pure Development, Inc.'s behalf, Adam Seger signed a binding Purchase and Sale Contract with Emerald City Empire to purchase the 43-acre parcel for $10,950,548. A true and accurate copy of the Purchase and Sale Contract identifying Pure Development, Inc. as buyer is attached as **Exhibit 3**.

20.    At 9:06 p.m. on October 7, 2024, however, Chris Seger formed a new Indiana limited liability company—defendant Magic TRIC I, LLC—without Sanders. A true and accurate copy of the articles of organization for Magic TRIC I, LLC are attached as **Exhibit 4**.

21.    Two days later, on October 9, 2024, Adam Seger signed another purchase and sale agreement for the same 43-acre parcel—except, in this version, Pure Development, Inc. was removed as "Purchaser" and replaced by Magic TRIC I, LLC. Adam Seger

4

signed on behalf of Magic TRIC I, LLC. A true and accurate copy of the October 9, 2024 version of the Purchase and Sale Contract is attached as **Exhibit 5**.

22. On October 11, 2024, despite having already arranged to take the Reno (Nest) opportunity for himself, Chris Seger caused Pure Development, Inc. to pay a $200,000 deposit to the title company to secure the land under contract. Chris Seger also caused Pure Development, Inc. to make two additional transfers, on January 13, 2025, totaling $125,000. Those payments were applied toward the contract price, as reflected on the settlement statement at closing.

23. On March 4, 2025, Magic TRIC I, LLC acquired the 43-acre parcel. A true and accurate copy of the closing documents for sale are attached as **Exhibit 6**.

24. Chris Seger and Magic TRIC I, LLC's taking the Reno (Nest) site would present uncertain value unless they also took the opportunity to build and lease the site to a Pure Development, Inc. client.

25. On September 13, 2024, a Pure Development, Inc. client sent Pure Development, Inc. a letter of intent to lease a building at the 43-acre Reno (Nest) site.

26. Between September 13 and November 4, 2024, Adam Seger—on behalf of Pure Development, Inc.—negotiated lease terms with that client.

27. On September 25, 2024, Pure Development, Inc. prepared an RFP Response to its client touting Pure Development, Inc.'s capabilities to deliver the project.

28.    However, on the same date, Adam Seger identified the anticipated landlord as "Magic TRIC I, LLC" in his exchanges with the Pure Development, Inc. client (though, as noted above, that entity had not yet been organized).

29.    On January 6, 2025, a lender sent Pure Development, Inc. a proposed term sheet for a $72 million construction loan to fund the build-to-suit project. That term sheet identified the borrow as the "to be formed SPE [Pure to provide] – Magic TRIC I Member, LLC." The abbreviation "SPE" in this instance stood for special purpose entity.

30.    Magic TRIC I Member, LLC is an entity Chris Seger created to serve as the sole member of Magic TRIC I, LLC.

31.    On February 12, 2025, Pure Development, Inc.'s client executed a lease with Magic TRIC I, LLC. That same day, Magic TRIC I, LLC and ARCO DB Companies executed a contractor agreement to construct the build-to-suit project.

32.    Chris Seger then caused Magic TRIC I, LLC and Pure Development, Inc. to enter into a development agreement for the project. Deviating from Pure Development, Inc.'s ordinary practice of having Sanders review and sign such contracts, Chris Seger signed the development agreement on behalf of both entities.

33.    At all times prior to the Reno (Nest) opportunity, with respect to similar opportunities, Chris Seger and Sanders as partners would do one of two things: (a)

6

leave the opportunity inside Pure Development, Inc. or (b) create a separate special purpose entity for the purpose of jointly owning the opportunity.

34.     Contrary to that practice, Chris Seger usurped the Reno (Nest) opportunity for himself, through Magic TRIC I, LLC.

35.     At no time did Chris Seger or Adam Seger inform Sanders of their intention and actions to transfer the Reno (Nest) opportunity to Magic TRIC I, LLC, for Chris Seger's sole benefit.

## C.     The Dissolution Action

36.     On April 8, 2024, Chris Seger presented Sanders with a buyout offer that would have removed Sanders from the Pure enterprise.

37.     After Sanders declined that offer, Chris Seger filed an action in the Indiana Commercial Court (the "Dissolution Action") seeking to dissolve Pure Holdings, Inc. and Pure Development Capital, Inc. (a corporation Chris Seger and Sanders formed to hold capital and guarantee loans).

38.     None of the defendants' conduct giving rise to the claims in this action was adjudicated in the Dissolution Action.

39.     In the Dissolution Action, Chris Seger proposed to the Indiana Commercial Court a "Remedy Plan" by which he would be permitted to start a new company (already called Canopy 5) that would assume control of Pure Development, Inc.'s assets, customers, business pipeline, and employees.

40.     Under Chris Seger's proposed plan, Canopy 5 would complete Pure Development, Inc.'s pending projects, take 42 percent of the revenue to cover Canopy 5's alleged costs, then split whatever profit was left with Sanders. Chris Seger also proposed that Canopy 5 would at the same time take on new projects—projects Pure Development, Inc. had already invested in pursuing or otherwise would have taken on.

41.     The Dissolution Action was tried in February 2025.

42.     In the course of this litigation, it was discovered that Chris Seger caused Pure Development, Inc. to pay nearly $30,000 in his personal legal expenses incurred in the Dissolution Action. Those funds are different from other personal litigation expenses that Sanders learned Chris Seger had caused the company to pay in relation to the Dissolution Action and which Sanders asserted in the Dissolution Action were improperly paid.

43.     On May 12, 2025, the Commercial Court issued an order (the "Dissolution Order") that Pure Holdings, Inc., Pure Development Capital, Inc., and nonparty Pure Development, Inc. should be dissolved. A true and accurate copy of the Dissolution Order is attached as **Exhibit 7**.

44.     However, the Commercial Court specifically rejected Chris Seger's Remedy Plan as "inequitable." (Ex. 7 at 46). As the Commercial Court put it, "Seger's Proposed Remedy Plan, Canopy 5, would engage in the same business as Pure Development, just without Sanders." (Ex. 7 at 30, ¶ 191).

45. The Commercial Court added: "It is abundantly clear to the Court that the only major difference between Pure Development and Canopy 5—and possibly the only difference altogether, assuming Pure Development employees follow Seger and continue their employment with Canopy 5—is that the former includes Sanders as a 50% owner and the latter excludes him completely. Canopy 5, in all relevant respects, would be Pure Development without Sanders and with a new name." (Ex. 7 at 45).

46. In its Dissolution Order, the Commercial Court stated that a receiver should be appointed to independently oversee Pure Development, Inc.'s current projects through to completion and to otherwise manage the companies' affairs and assets. (Ex. 7 at 44). The Commercial Court also contemplated that a receiver could sell the entities or—failing that—wind them up only after the completion of all Pure's ongoing projects. (Ex. 7 at 44, 47).

47. As of May 12, 2025, when the Commercial Court entered the Dissolution Order, Pure Development, Inc. was working on dozens of projects.

48. A key reason the Commercial Court rejected Seger's Canopy 5 Remedy Plan was, specifically, the Court's view that Chris Seger should not "gain the advantage with business connections, current employees of Pure Development, and, most importantly, the current projects." (Ex. 7 at 46).

**D.    Defendants' conduct after the Dissolution Order**

**i.    Organization of Canopy 5, LLC**

49.    After the Commercial Court rejected Chris Seger's Canopy 5 "Remedy Plan" as inequitable, Chris Seger, Adam Seger, and Brian Palmer simply went through with it anyway.

50.    Within days of the Dissolution Order, Chris Seger, Adam Seger, and Brian Palmer organized Canopy 5, LLC. A true and accurate copy of Canopy 5, LLC's articles of organization is attached as **Exhibit 8**.

51.    However, Chris Seger, Adam Seger, and Brian Palmer did not terminate their employment with Pure Development, Inc.—at least not immediately.

52.    Rather, without authorization and while still employed by Pure Development, Inc. (and, in Chris Seger's case, while he was still an owner of Pure Holdings, Inc. as well as a director and officer of Pure Development, Inc.), Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC:

a. caused Canopy 5, LLC to conduct business out of Pure Development, Inc.'s office, interfering with Pure Development, Inc.'s right to exclusively possess and use its office;

b. caused Canopy 5, LLC to exercise dominion and control over Pure Development, Inc.'s tangible assets—*e.g.*, Pure Development, Inc.'s computers and equipment;

c. solicited and engaged Pure Development, Inc. employees to work for Canopy 5, LLC while those employees were still employed by Pure Development, Inc.;

d. caused Pure Development, Inc. to pay Pure Development, Inc. employees to perform work on behalf of Canopy 5, LLC;

e.  caused Canopy 5, LLC to access Pure Development, Inc.'s computer systems and networks without authorization;

f.  transferred control of Pure Development, Inc.'s account with the business management application HubSpot to Canopy 5, LLC;

g.  marketed Pure Development, Inc. employees as Canopy 5's "team";

h.  marketed Canopy 5 by passing off Pure Development, Inc.'s projects as Canopy 5 projects;

i.  engaged in efforts to transition Pure Development, Inc. projects to Canopy 5— including the same projects that the Dissolution Order said must be completed by Pure Development, Inc. because to have Canopy 5 take them would be "inequitable";

j.  disclosed or caused the transfer of Pure Development, Inc. trade secrets to Canopy 5, LLC without authorization; and

k.  caused Pure Development, Inc. to pay "executive coach" Kim Janson at least $45,000 for consulting services provided for Canopy 5's benefit.

**ii.  Canopy 5's unauthorized use of Pure Development, Inc.'s office, tangible assets, and employees**

53.  No later than May 2025, Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC began operating the business of Canopy 5 out of Pure Development, Inc.'s office.

54.  Canopy 5, LLC was not authorized by Pure Development, Inc. to enter, occupy, or conduct business out of Pure Development, Inc.'s office.

55.  Chris Seger, Adam Seger, and Brian Palmer were not authorized by Pure Development, Inc. to permit Canopy 5, LLC to enter, occupy, or conduct business out of Pure Development, Inc.'s office.

56. No later than May 2025, Canopy 5, LLC began exercising dominion and control over Pure Development, Inc.'s tangible assets for the purpose of conducting Canopy 5 business.

57. Canopy 5, LLC was not authorized by Pure Development, Inc. to exercise dominion and control over Pure Development, Inc.'s tangible assets.

58. Chris Seger, Adam Seger, and Brian Palmer were not authorized by Pure Development, Inc. to allow Canopy 5, LLC to exercise dominion and control over Pure Development, Inc.'s tangible assets.

59. No later than May 2025, Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC orally solicited Pure Development, Inc. employees to work for Canopy 5, LLC despite their already being employed by Pure Development, Inc., and to use Pure Development, Inc.'s office, assets, and resources to do so.

60. On or about June 10, 2025, Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC began putting agreements with Pure Development, Inc. employees in writings signed by Chris Seger as "Canopy 5 Chief Executive Officer."

61. Upon information and belief, Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC did not pay the Pure Development, Inc. employees they engaged to work for Canopy 5 while those persons were still on Pure Development, Inc.'s payroll. Rather, they left Pure Development, Inc. to pay for services that were being provided by those employees to Canopy 5, LLC.

12

### iii.    Canopy 5's unauthorized access of Pure Development, Inc.'s computer systems

62.    No later than May 2025, Canopy 5, LLC began accessing Pure Development, Inc.'s computer systems, networks, and accounts without authorization.

63.    On May 13, 2025, Chris Seger, Adam Seger, and Brian Palmer caused a Pure Development, Inc. employee (Kendra Brooks) to contact Pure Development, Inc.'s IT vendor (Bionic Cat) to set up a Canopy 5 OneDrive folder within Pure Development, Inc.'s computer systems.

64.    The apparent intent was to "archive" Pure Development, Inc.'s entire file tree within a newly created Canopy 5 OneDrive to ensure that the defendants could "still access everything." A true and accurate copy of Kendra Brooks's May 13, 2025 email exchange with Bionic Cat is attached in **Exhibit 9**.

65.    On May 20, 2025, following "a call with the lawyers," Chris Seger, Adam Seger, Palmer, and Canopy 5, LLC modified their plan. (**Ex. 9**).

66.    Instead of having a Canopy 5 OneDrive within Pure Development, Inc.'s computer systems, they decided the Pure Development, Inc. and Canopy 5 systems should "be as separate as humanly possible." But the objective of having the complete universe of Pure Development, Inc.'s data at their fingertips remained the same.

67.    To put their modified plan into effect, Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC caused Pure Development, Inc. employee Kendra Brooks to instruct Bionic Cat to (a) create new Windows 365 accounts for Canopy 5 users, (b) mirror the

contents of the Canopy 5 OneDrive in a new location outside of Pure Development,

Inc.'s environment, (c) delete the evidence of that OneDrive's existence, and (d) conceal

all of this activity from Drew Sanders:

| | |
|---|---|
| **From:** | Kendra Brooks[kbrooks@puredevelopment.com] |
| **Sent:** | Tue 5/20/2025 7:24:36 PM (UTC) |
| **To:** | Bionic Cat[support@bionic-cat.com] |
| **Subject:** | Re: New OneDrive |

Ok so Jesse just had a call with the lawyers. They have instructed us that everything has to be as separate as humanly possible. 2 different houses in 2 different states separate.

So…I think we need to start by creating a new account with you as C5. Sign a separate agreement if you require that, not connected to Pure. (with this ticket being billed under that new account)

Then we need new 365 accounts separate from Pure. Cannot come to the same inbox, cannot be tied together at all. Same with the OneDrive you just created for Jesse and I. That needs to be deleted from our Pure 365 and created under the new C5 one. (In my head I am imagining that the Microsoft apps on the computer will be Pure and then have to open a webpage to have Outlook.com, etc. open as the C5 accounts)

Right now please create new 365 C5 accounts for just Chris Seger, Adam Seger, Brian Palmer, Jesse Sadowy, Erin Hibler and me.

And then I was instructed to say this even though I know this is already covered….nobody can know about this new C5 cloud/account. Drew is not to know about this, nobody else can see the new cloud or account. If he asks you for anything C5 related, please let us know so that we can share with the legal team.

I know this is a lot of work and I apologize for that. Thank you in advance for your help. Please let me know If you have any questions.

Thank you,

 pure development

Kendra Brooks, Executive Assistant
1351 Roosevelt Avenue #100
Indianapolis, IN 46202
916-740-9271 | puredevelopment.com

(**Ex. 9**).

14

68.     On June 18, 2025, Chris Seger caused Pure Development, Inc.'s IT vendor to "wipe" a computer Chris Seger used. A true and accurate copy of the email confirming that Chris Seger's Pure Development, Inc. computer had been "wiped" is attached as **Exhibit 10**.

69.     In addition to other storage locations, Pure Development, Inc. utilized an application called HubSpot to manage its workflow and allow team members to access information Pure Development, Inc. used to transact business. Pure Development, Inc. initially used HubSpot for marketing purposes. But in early 2025, Pure Development, Inc. began operating substantive business functions out of HubSpot—*e.g.*, tracking financial metrics, project status, and team communications.

70.     On or about June 6, 2025, Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC had defendant Jenna Barnett—then a Pure Development, Inc. employee—access Pure Development, Inc.'s HubSpot account and transfer ownership of Pure Development, Inc.'s HubSpot account to an entity she owned, defendant JennaB, LLC.

71.     A true accurate copy of a June 6, 2025 HubSpot email confirming transfer of Pure Development, Inc.'s HubSpot account to JennaB, LLC is attached as **Exhibit 11**. That email states that the person causing the transfer—which was initiated from the email address jbarnett@puredevelopment.com—had certified "that you are authorized

15

to make this change on behalf of both Current Company and New Company." Pure Development, Inc. provided no such authorization. (**Ex. 11**).

72. On or about June 13, 2025, Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC caused Jenna Barnett and JennaB, LLC to then transfer ownership of Pure Development, Inc.'s HubSpot account to Canopy 5, LLC. A true and accurate copy of a June 13, 2025 HubSpot email confirming the transfer of Pure Development, Inc.'s HubSpot account from JennaB, LLC to Canopy 5, LLC—a transfer initiated from the email address jbarnett@puredevelopment.com—is attached as **Exhibit 12**.

73. As a result of Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, Jenna Barnett and JennaB, LLC's conduct, Pure Development, Inc. has no access to its own HubSpot account.

74. No later than June 2025, Canopy 5, LLC likewise began accessing Pure Development, Inc.'s accounts on Box—a cloud-based file storage and sharing application similar to ShareFile—without authorization.

75. No later than June 2025, Canopy 5, LLC also began accessing Pure Development, accounts on Canva—a computer application used for marketing purposes—without authorization.

76. Canopy 5, LLC was not authorized by Pure Development, Inc. to access Pure Development, Inc.'s computer systems, networks, or accounts.

16

77.     Chris Seger, Adam Seger, and Brian Palmer were not authorized by Pure Development, Inc. to allow Canopy 5, LLC access to Pure Development, Inc.'s computer systems, networks, or accounts.

### iv.    Marketing

78.     In a press release, Chris Seger, Adam Seger, and Brian Palmer stated that Canopy 5 was "[h]eadquartered in Indianapolis with regional offices in Charleston, Dallas and Denver," although at the time Canopy 5 was operating out of Pure Development, Inc.'s offices, using Pure Development, Inc. employees and assets. A true and accurate picture of that press release is attached as **Exhibit 13**.

79.     The press release identified Chris Seger as Canopy 5's Chief Executive Officer. It also stated that Chris Seger, Adam Seger, and Brian Palmer would ensure that "all ongoing projects [of Pure Development, Inc.] are completed and [Pure Development, Inc.'s] clients are fully supported, upholding the same integrity that defines their new venture." (**Ex. 13**).

80.     On June 5, 2025, Chris Seger, Adam Seger, and Brian Palmer were profiled in an *Indianapolis Business Journal* story, with the three touting their launch of Canopy 5. A true and accurate copy of the *IBJ* story is attached as **Exhibit 14**. The picture of the three of them that accompanied the story was taken in Pure Development, Inc.'s office.

17

81.    The *IBJ* story concluded by noting that "[m]ore information about Canopy 5's efforts to build its development pipeline—and efforts to inherit Pure's projects—is expected to be made public in the coming weeks." (**Ex. 14**).

82.    As part of their marketing efforts, Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC launched the website http://www.canopy5.com.

83.    In a version of Canopy 5's website accessible on June 10, 2025, Canopy 5 identified its business address as 1351 Roosevelt Ave., Indianapolis, Indiana, which is Pure Development, Inc.'s business address. A true and accurate excerpt of the Canopy 5 website's Terms of Use identifying 1351 Roosevelt Ave. as Canopy 5's business address is attached as **Exhibit 15**.

84.    On its website, Canopy 5 has touted—and continues to tout—Pure Development, Inc. projects as Canopy 5's own projects.

85.    For example, on its "Build-to-Suit" page (https://www.canopy5.com/build-to-suit/), Canopy 5 has passed off as its own work the following projects: Sierra Nevada Corporation in Dayton, Ohio; Saint Gobain in Worcester, Mass.; Republic Headquarters in Carmel, Ind.; Amazon WOR3 in Klamath Falls, Ore.; Amazon WKN3 in Texarkana, Ark.; Amazon LUK2 in Union, Ohio; Amazon DDT-9 in Canton, Mich.; Wayfair in South Elgin, Ill.; Skjodt Barrett in Lebanon, Ind.; SEP Headquarters in Westfield, Ind.; Regal Beloit in McAllen, Tex.; Mondelez in Montgomery, N.Y.; KAR Headquarters in Carmel, Ind.; GE Aviation in Lafayette, Ind.; GE Aviation in Ellisville, Miss.; GE Aviation

in Hookset, New Hampshire; GE Aerospace in Beavercreek, Ohio; Domino's Supply Chain Center in Ontario, Calif.; Domino's Fulfillment in Merrillville, Ind.; DHL in Plainfield, Ind.; BWI in Greenfield, Ind.; Boston Scientific in John's Creek, Ga.; BMW Group Training Center in Atlanta, Ga.; American Tire Distributors in Salt Lake City, Utah; and Allstate in Roanoke, Va. Each of the projects described in this paragraph represents work, completed or in progress, by Pure Development, Inc.

86.     On its "Speculative" page (https://www.canopy5.com/speculative/), Canopy 5 has falsely passed off the following as properties it is responsible for: 450 Pittsburgh in Reno, Nev.; 1600 Peru in Reno, Nev.; 500 Denmark in Reno, Nev.; Pinnacle One in Laredo, Tex.; Franklin Business Park in Franklin, Ind.; Elevate Industrial in Reno, Nev.; Coastal Crossroads in Charleston, S.C.; and Camp Hall in Charleston, S.C. Each of the properties described in this paragraph represents work completed by Pure Development, Inc. or for which Pure Development, Inc. is responsible for completing.

87.     On its "Mixed Use" page (https://www.canopy5.com/mixed-use/), Canopy 5 has passed off as its own work the following projects: Century Apartments in Lafayette, Ind.; North Mass District in Indianapolis; Midtown Carmel in Carmel, Ind.; and Fox Park in Denver, Colo. Each of the projects described in this paragraph represents work, completed or in progress, by Pure Development, Inc.

88.     On its "About" page (https://www.canopy5.com/about/), Canopy 5 invites visitors to "Meet The Team." In addition to Chris Seger, Adam Seger, and Brian Palmer,

Canopy 5 has advertised the following persons as its "team" while those persons were (and in some cases still are) employed by Pure Development, Inc.: Jesse Sadowy, Jenna Barnett, Michael Watts, Jon Carpenter, Justin Lawhorn, Jody Sharp, Kyle Miller, Tyler Neese, Brian Tominov, Dom Cate, Jake Leatherman, Chase Willis, Katie Harp, and Kendra Brooks.

89.     In videos filmed in Pure Development, Inc.'s office and posted to Canopy 5's Instagram feed, Canopy 5 has represented Pure Development, Inc.'s office as its own and shown Pure Development, Inc. employees while they were working in Pure Development, Inc.'s office.

90.     Canopy 5 issued marketing materials identifying Chris Seger, Adam Seger, and Brian Palmer as principals at the same time all three were still affiliated with Pure Development, Inc. For example, in a video posted to Canopy 5's Instagram feed on June 23, 2025, Brian Palmer introduced himself as Canopy 5's Chief Operating Officer—while Palmer was still an employee of Pure Development, Inc.

**iv.     Projects**

### New Albany, Ohio

91.     The same afternoon the June 5, 2025 *IBJ* story was published, Adam Seger emailed Ryan Westervelt at Cross Harbor Capital about a Pure Development, Inc. industrial speculative opportunity in New Albany, Ohio.

92.     Adam Seger did so using an email address associated with the domain canopy5.com, and he copied Pure Development, Inc. employees Jesse Sadowy (Pure Development, Inc.'s Chief Financial Officer) and Chase Willis at their Gmail email addresses. A true and accurate picture of Adam Seger's email exchange with Westervelt is attached as **Exhibit 16**.

93.     Upon information and belief, before canopy5.com email accounts were assigned to employees solicited to work for Canopy 5 while they still worked for Pure Development, Inc., Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC instructed those employees to use their personal (*i.e.*, Gmail) accounts to discretely conduct Canopy 5 business.

94.     At all relevant times, Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC knew that any emails or information stored in Pure Development, Inc.'s computer systems or networks should be preserved pursuant to litigation-hold protocols instituted in connection with the Dissolution Action.

95.     In his June 5, 2025 email to Westervelt, Adam Seger stated that a term sheet Cross Harbor Capital Partners had already delivered to Pure Development, Inc. should be changed to "remove mention of Pure Development."

96.     Adam Seger then went on to propose terms for joint venture capital on behalf of Canopy 5, LLC. His email signature block used a Canopy 5 logo, and it stated that

Adam Seger's Canopy 5 business address was 1351 Roosevelt Ave. #100 in Indianapolis—Pure Development, Inc.'s office address.

97.     Westervelt's response to Adam Seger's email congratulated Seger "on the launch of Canopy 5" and asked that Seger provide an organizational chart for Canopy 5 that "show[s] us the broader bench supporting Canopy 5, essentially confirming which members (if not all) of the former Pure team are involved."

98.     Ultimately, Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC caused Pure Development, Inc. to lose the New Albany, Ohio opportunity.

### LEAP

99.     Pure Development, Inc. served as the developer for the IEDC on the development of the LEAP Lebanon Innovation District in Lebanon, Indiana.

100.     In order to extract the LEAP business from Pure Development, Inc., Chris Seger executed what Seger believed to be a "brilliant strategy": (a) induce the Indiana Economic Development Corporation to demand that Sanders and Chris Seger consent to an assignment of Pure Development, Inc.'s LEAP contracts to Canopy 5; and (b) once Sanders opposed the assignment (as any fiduciary of Pure Development, Inc. should), have the IEDC terminate its contracts with Pure Development, Inc. and reissue them to Canopy 5.

101.     Chris Seger did not inform Sanders of this "brilliant strategy." Instead, on June 10, 2025, Chris Seger provided Sanders the IEDC's letter demanding that Chris

Seger and Sanders consent to an assignment of Pure Development, Inc.'s contracts to Canopy 5. A true and accurate copy of the IEDC's June 10, 2025 letter is attached as **Exhibit 17**.

102.    The IEDC's June 10, 2025 letter attached a series of contracts between the IEDC and Pure Development, Inc., prepared in April 2025 (after the close of evidence in the Dissolution Action, but before the trial court's May 12, 2025 order) and negotiated by Chris Seger.

103.    In those contracts, Chris Seger—purportedly on Pure Development, Inc.'s behalf—had negotiated a term that allowed for the assignment of Pure Development, Inc.'s contracts with the IEDC to "an entity under the direction of [Chris Seger] and employing [Pure Development, Inc. employee] Michael Watts."

104.    In its June 10, 2025 letter, the IEDC stated that, if Pure Development, Inc. would not assign the contracts to Canopy 5, then the IEDC would "simply terminate the Agreements."

105.    On June 16, 2025, after Sanders would not consent to the assignment of the IEDC contracts to Canopy 5, the IEDC issued a notice of termination of its contracts with Pure Development, Inc., effective July 10, 2025. A true and accurate copy of the IEDC's June 16, 2025 termination notice is attached as **Exhibit 18**.

106.    Canopy 5 then entered into new contracts with the IEDC for the same LEAP projects that Pure Development, Inc. had been overseeing.

107. Chris Seger orchestrated this outcome while still a director, officer, and employee of Pure Development, Inc. and a shareholder of Pure Holdings, Inc.

### Austin, Texas

108. No later than March 2025, Pure Development, Inc. identified a potential build-to-suit project in Austin, Texas, for an existing Pure Development, Inc. client.

109. On March 12, 2025, on behalf of Pure Development, Inc., Adam Seger inquired about a 27-acre site for the project.

110. On March 14, 2025, Pure Development, Inc.'s client awarded the project to Pure Development, Inc. On the same day, on Pure Development, Inc. letterhead, Adam Seger sent the seller's agent a proposed letter of intent to purchase approximately 10 acres of the site. Reminiscent of the Reno (Nest) situation, Adam Seger's letter of intent identified the "buyer" as a yet-to-be-formed special purpose entity, "Magic ATX I, LLC"—an entity that Chris Seger would eventually form without Sanders.

111. On May 9, 2025, as "principal" of Pure Development, Inc., Adam Seger executed the letter of intent to purchase the property, adjusted to include more than 13 acres for the build-to-suit project.

112. On June 9, 2025, Magic ATX I, LLC (although still not a legal entity) and the seller, Cross Waters East I, LLC, executed a purchase agreement.

113. On July 1, 2025, Chris Seger formed defendant Magic ATX I, LLC.

24

**Bloomington Hotel**

114.    On April 30, 2024, Pure Development, Inc. and Alluinn IU Trades District Hotel LLC together signed a letter of intent with the City of Bloomington, Indiana, to develop parcels in connection with the construction of a hotel.

115.    Effective December 1, 2024, Pure Development, Inc. and Alluinn IU Trades District Hotel LLC executed a Real Estate Conveyance and Project Agreement with the City of Bloomington Redevelopment Commission to acquire and develop the hotel.

116.    On January 15, 2025, Pure Development, Inc. paid an earnest-money deposit of $50,000.

117.    On May 22, 2025, in response to a stakeholder's concerns about what the Dissolution Order "means for the Trades District hotel project," Adam Seger responded that the project would be developed under "a new SPE JV with Charles" and therefore there would be "no impact." Upon information and belief, the "Charles" referenced by Adam Seger is Charles Whitaker, who is the manager of Alluinn IU Trades District Hotel, LLC.

118.    On June 4, 2025, Adam Seger contacted Pure Development, Inc.'s counsel to tell him that he would "like to set up a JV between Canopy 5 and Allu[inn] that is called Trades Hotel I, LLC OZ," but to keep it on the "back burner" for now.

119.    On June 16, 2025, the Bloomington Redevelopment Commission announced that the agreement with Pure Development, Inc. had expired by its terms because Pure

25

Development, Inc. failed to close. Pure Development, Inc. failed to close at the direction of Chris Seger, Adam Seger, and Brian Palmer.

120. On June 16, 2025, the Bloomington Redevelopment Commission reported that a new agreement had been entered into with Alluinn IU Trades District Hotel LLC. Upon information and belief, Chris Seger, Adam Seger, Brian Palmer, and/or Canopy 5, LLC have a financial interest in the Bloomington Hotel project.

**Amazon**

121. Since 2020, Amazon has awarded Pure Development, Inc. eight development projects across the United States.

122. The projects Amazon awards to Pure Development, Inc. are typically executed under a master services agreement. For each individual project, a work order is executed for Pure Development, Inc. to perform initial due diligence, design work, and to finalize the project budget. From there, a development agreement is executed, and the project plans are brought to fruition.

123. As of May 12, 2025, the following Amazon projects were in progress:

   a. Amazon DGF1 (Akron, Ohio)
   b. Amazon WKN2 (Fort Smith, Arkansas)
   c. Amazon WKN3 (Texarkana, Arkansas)
   d. Amazon WKN4 (Batesville, Arkansas)
   e. Amazon WOR3 (Klamath Falls, Oregon)
   f. Amazon WCO7 (Hayden, CO)

124.    At that time, Pure Development, Inc. and Amazon had executed development agreements on WOR3, WKN3, and DGF1; and work orders on WKN2, WKN4, and WCO7.

125.    The Amazon projects were among those that the Dissolution Order specifically called out as among those that should be completed by Pure Development, Inc., and not handed over to Chris Seger or Canopy 5, LLC. Nevertheless, Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC set about attempting to take the Amazon projects for Canopy 5, LLC.

126.    On May 15, 2025, Chris Seger proposed that Sanders consent to transfer the Amazon master services agreement and the DGF1, WKN2, WKN3, WKN4, WOR3, and WCO7 projects to Canopy 5, LLC.

127.    Sanders rejected that proposal, which was the same proposal Chris Seger pitched as a "Remedy Plan" and that the Commercial Court had just rejected as "inequitable."

128.    On May 28, 2025, Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC caused Pure Development, Inc. employee Justin Lawhorn to send Amazon a letter falsely stating that Pure Development, Inc. would be unable to complete the WKN2, WKN4, and WCO7 projects—even though the Dissolution Order had specifically called out the WKN2 and WKN4 projects as among the projects that Pure Development, Inc.

should complete. A true and accurate copy of the May 28, 2025 letter to Amazon is attached as **Exhibit 19**.

129. The WCO7 project was not specifically referenced in the Dissolution Order only because the list of "current" projects then available to the court was as-of February 18, 2025, and the WCO7 work order was executed on March 26, 2025.

130. On May 30, 2025, Pure Development, Inc. employee Jenna Barnett organized a telephonic meeting with Amazon representatives for June 3, 2025. Barnett's email organizing the meeting identified for Amazon the persons who would be attending on behalf of Canopy 5, LLC. The list was comprised entirely of persons who were, at the time, Pure Development, Inc. employees plus defendants' counsel in this action:

> Chris Seger, CEO
> Rob MacGill, Legal
> Matt Ciulla, Legal
> Jesse Sadowy, CFO
> Brian Palmer, Principal
> Jenna Barnett, National Build-to-suit
> Justin Lawhorn, Development Director
> Jon Carpenter, Development Director
> Jody Sharp, Senior Development Manager
> Brian Tominov, Development Manager
> Stephen Oesterreich, Development Manager
> Brian Tominov, Development Manager
> Kyle Miller, Development Manager
> Jake Letherman, Development Manager

A true and accurate copy of Barnett's May 30, 2025 email is attached as **Exhibit 20**.

28

131. In advance of the June 3, 2025 call, Jenna Barnett provided Amazon with a copy of the press release Canopy 5, LLC would be issuing. A true and accurate copy of the June 2, 2025 email in which Barnett sent the press release is attached as **Exhibit 21**.

132. On June 5, 2025, Chris Seger, Adam Seger, Brian Palmer, and Canopy 5, LLC caused Pure Development, Inc. employee Justin Lawhorn to send a follow-up email to Amazon suggesting that Amazon terminate agreements with Pure Development, Inc. and enter into new versions of those agreements with Canopy 5, LLC. A true and accurate copy of that email is attached as **Exhibit 22**.

133. On June 17, 2025, Chris Seger informed Sanders that Amazon had canceled the WKN2, WKN4, and WCO7 work orders with Pure Development, Inc.

### Saint Gobain

134. As of May 12, 2025, Pure Development, Inc. had an active project in Worcester, Massachusetts, for Saint Gobain.

135. On June 4, 2025, a Saint Gobain representative contacted Pure Development, Inc. employee Stephen Oesterreich asking to set up a call between Saint Gobain's legal team and Pure Development, Inc.'s legal team. Oesterreich responded that he would provide "some time suggestions based on availability of our founder Chris Seger and our legal team." A true and accurate copy of that email exchange is attached as **Exhibit 23**.

136.    Pure Development, Inc. employee Kendra Brooks followed up on Saint Gobain's request for a meeting between Saint Gobain's and Pure Development, Inc.'s legal teams with a meeting invite for a Microsoft Teams call to take place on June 11, 2025. In response to Saint Gobain's request for a discussion with the Pure Development, Inc. legal team, Brooks included the defendants' counsel in this case. A true and accurate copy of that invite is attached as **Exhibit 24**.

137.    Following the June 11, 2025 Teams meeting, defendants' counsel in this case prepared a draft letter—to be sent by Chris Seger on behalf of Pure Development, Inc.— responding to questions and requests from Saint Gobain. A true and accurate copy of that draft, as provided by defendants' counsel to Chris Seger on June 18, 2025, is attached as **Exhibit 25**.

138.    A copy of an email exchange, with the subject line "Pure Development Letter and Materials," evidencing that defendants' counsel in this case sent the final version of that letter to Saint Gobain on June 18, 2025, is attached as **Exhibit 26**. In his email to Saint Gobain, defendants' counsel assured Saint Gobain that Pure Development, Inc. was—per the Dissolution Order—to "complete all ongoing projects."

**v.      Misuse of trade secrets**

139.    Pure Development, Inc. is the owner of trade secrets in the form of financial, business, and economic information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

through proper means by, another person who can obtain economic value from the

disclosure or use of the information.

140.    In connection with the launch of Canopy 5, and without Pure Development, Inc.'s authorization, Chris Seger, Adam Seger, Brian Palmer, Jenna Barnett, and JennaB, LLC caused the transfer of the following Pure Development, Inc. trade secrets to Canopy 5, LLC:

| File name or email subject line | Beginning Bates Number (if available) | Description |
|---|---|---|
| Re: BTS 1Q25 | PURE_FED_00002593 | Compilation of Pure Development, Inc.'s active and prospective projects, including for each project the product type, deal type, location, deal size, total project cost, value creation, deal stage, and the probability of Pure Development, Inc. winning the project. |
| Dashboard Hubspost Export.xlsm | PURE_FED_00002599 | List of pursuits and active projects, compiling the deal stage, product type, deal type, location, deal size, total project cost, and broker for each project. |
| hubspot-crm-exports-probability-to-close-2025-04-17.xlsx | PURE_FED_00002659 | Compilation of Pure's active and prospective projects, including for each project the product type, deal type, location, deal size, total project cost, value creation, deal stage, and the probability of Pure winning the project. |
| hubspot-crm-exports-rfp-tracker-2025-2025-04-17.xlsx | PURE_FED_00002660 | Compilation of RFP tracking, which includes for each project the deal name, deal stage, product type, deal type, location, deal size, brokerage, and the reason Pure lost the project. |
| hubspot-crm-exports-active-deals-2025-04-17.xlsx | PURE_FED_00002661 | Compilation of active projects, which includes for each project the deal name, deal stage, product type, deal type, location, deal size, total project cost, and brokerage. |
| Historical Project Details.xlsx | PURE_FED_00002738 | Compilation of Pure's historical projects, including for each project the deal name, deal stage, associated company, product type, location, deal size, total project cost, deal description, deal type, close date, value creation, broker name, and brokerage firm. |

| Jesse Exec Com 3.12.25.pdf | PURE_FED_00075739 | Pure Development, Inc.'s 2024 profit and loss statement. Pure Development, Inc.'s 2025 YTD profit and loss statement. Pure Development, Inc.'s 2025 revenue projection. Pure Development, Inc.'s revenue projection segmented by business line. |
|---|---|---|
| BTS Pursuit Summary.xlsx | PURE_FED_00002770 | Compilation of all build to suit projects that Pure has pursued, including for each project the tenant, location, deal type, status, total project cost, fee and gain on sale, and what percent of the total project cost the fee and gain on sale equals. Additionally, a compilation of Pure's annual historical returns from build to suit projects. |
| Development Dashboard_UNDER.xlsx | PURE_FED_00129183 | List of pursuits and active projects, compiling the product type, deal type, location, size, total project cost, broker, status, and follow up items for each project. Additionally, a compilation of RFPs submitted in 2024 and the status of each. |
| Pure Spec Review Q125.pptx | PURE_FED_00129184 | A compilation of Pure's active and prospective speculative projects, project specific goals, goals pertaining to the speculative line of business generally, action items on the general spec and project specific goals, and Pure's speculative line of business performance. |

141. Pure Development, Inc.'s investigation into whether the defendants have taken other Pure Development, Inc. trade secrets continues.

**vi.   Kim Janson**

142. Kim Janson advertises herself as an executive coach. She was engaged by Pure Development, Inc. in October 2021 to assist in the company's growth.

143. Ultimately, Janson aligned herself with Chris Seger in his effort to oust Sanders from the company.

144. By May 2025, Janson was no longer performing services to benefit Pure Development, Inc. However, Chris Seger, Adam Seger, and Brian Palmer continued to use her services in furtherance of Canopy 5, LLC's business.

145.   In May 2025, Chris Seger caused Pure Development, Inc. to pay Janson $45,000 for services she provided to Canopy 5, LLC.

**E.   The Indiana Court of Appeals' June 23, 2025 stay of the Dissolution Order and the defendants' subsequent conduct**

146.   After the Commercial Court's Dissolution Order, but before jurisdiction over the Dissolution Action transferred to the Indiana Court of Appeals, Sanders asked the appellate court to issue a writ in aid of its appellate jurisdiction.

147.   Specifically, Sanders argued that a writ should issue and the Dissolution Order should be stayed because an order of dissolution would immediately destroy shareholder value, put the companies in default, and implicate personal guarantees issued by both Chris Seger and Sanders.

148.   On June 23, 2025, over Chris Seger's objection, the Indiana Court of Appeals issued a writ in aid of its jurisdiction and stayed the Dissolution Order.

149.   As a result, no certified order dissolving any of the Pure companies was ever delivered to the Indiana Secretary of State pursuant to Indiana Code section 23-1-47-4(a). And no receiver has ever been appointed to manage the affairs of any of the Pure companies.

150.   Pure Holdings, Inc. and Pure Development, Inc. remain corporations that are active and in good standing.

151.   Even if the Dissolution Order had not been stayed by the Court of Appeals, a dissolution decree does not transfer title to any of the corporation's property, relieve the

corporation's directors and officers of their fiduciary obligations, or prevent the corporation from commencing a proceeding to enforce its rights. Ind. Code § 23-1-45-5(b).

i.  **Chris Seger's resignation, transfer of ownership interests, and indemnity demand**

152. In apparent response to the Court of Appeals' writ and stay, on June 25, 2025, Chris Seger emailed Sanders a notice that Seger had "resign[ed], effective immediately, from all employment, officer, director, and board members positions that [Seger] hold[s] in: Pure Development, Inc.; Pure Holdings, Inc.; and Pure Development Capital, Inc." A true and accurate copy of Chris Seger's June 25, 2025 letter is attached as **Exhibit 27**.

153. In his June 25, 2025 letter, Chris Seger also purported to transfer any ownership interest of his in Pure Holdings, Inc., Pure Development Capital, Inc., and Pure Development, Inc. to "an irrevocable blind trust." At the time, Chris Seger did not provide Sanders any documentation of such a trust, the name of the trust, or evidence that he actually had transferred any shares to the unnamed trust.

154. The "irrevocable blind trust" referenced by Chris Seger's June 25, 2025 letter turned out to be the CS Phoenix Blind Trust. Caroline Seger, Chris Seger's wife, is the trust's beneficiary.

155. On June 26, 2025, Chris Seger sent a letter to Drew Sanders and to Bryan Chandler. Bryan Chandler is the trustee of the CS Phoenix Blind Trust and personal

34

friend of Chris Seger. A true and accurate copy of Chris Seger's indemnity demand is attached as **Exhibit 28**. In his June 26, 2025 letter, Chris Seger demanded that Pure Holdings, Inc. indemnify him for certain expenses he claimed to incur in connection with the Dissolution Action.

156. On June 30, 2025—after this action had already been filed—Chris Seger sued Pure Holdings, Inc. on his indemnity demand. In that pending action, which is currently stayed by the Indiana Commercial Court, Chris Seger demands indemnification for alleged losses incurred in the defense of this case.

**ii.  Adam Seger and Brian Palmer's resignations, demands for unwarranted benefits, and threats to sue**

157. On June 26, 2025 (the day after Chris Seger's resignation), both Adam Seger and Brian Palmer resigned from their positions at Pure Development, Inc. True and accurate copies of their resignation letters are attached as **Exhibit 29** (Adam Seger) and **Exhibit 30** (Brian Palmer), respectively.

158. In their June 26, 2025 resignation letters, both Adam Seger and Brian Palmer asserted that they were resigning for "good cause."

159. The term "good cause" is described in Section 2.1 and Section 2.2 of both Adam Seger and Brian Palmer's employment agreements as events "such as breach by Company, or to pursue a non-competitive business opportunity without any violation of the restrictive provisions in the Employment Agreement." True and accurate copies

35

of their employment agreements are attached as **Exhibit 31** (Adam Seger) and **Exhibit 32** (Brian Palmer), respectively.

160.    Neither Adam Seger nor Brian Palmer resigned their employment from Pure Development, Inc. with "good cause."

161.    Both Adam Seger and Brian Palmer's employment agreements include the following Section 6 (titled "Confidential Information") that states, in relevant part:

> Employee acknowledges that Company's services are highly specialized and that in the course of his/her employment with Company, he will occupy a position of trust and confidence and will have access to and may develop Confidential Information of actual or potential value to, or otherwise useful to, Company.

* * *

> Employee agrees to use Confidential Information solely in the course of Employee['s] duties as an employee of Company and in furtherance of Company's business. Employee hereby further agrees that the above-referenced information will be kept confidential at all times during and after his/her employment with Company and that he will not disclose or communicate to any third party any of the Confidential Information and will not make use of the Confidential Information on his/her own behalf or on the behalf of a third party. Employee further agrees that any unauthorized use or disclosure of the Confidential Information, or other violation or threatened violation of this Agreement could cause irreparable damage to Company and that, therefore, Company shall be entitled to an injunction prohibiting Employee from any such disclosure, attempted disclosure, violation or threatened violation.

* * *

> Employee agrees that all Confidential Information is and shall remain the exclusive property of Company. Employee agrees to return to Company on or before Employee's termination of employment with Company, for any reason, all Company property, information and documents, … and

36

Employee agrees that he will not retain any copies, duplicates, reproductions or excerpts thereof.

162.    Both Adam Seger and Brian Palmer have violated the restrictive provisions in Section 6 of their employment agreements.

163.    Both Adam Seger and Brian Palmer's employment agreements include the following Section 9 (titled "Non-Solicitation") that states, in relevant part:

[D]uring the term of Employee's employment and in the event Employee ceases to be employed by Company for any reason, then, in that event, Employee covenants and agrees that, for a period of eighteen (18) months from the date of termination, he/she shall not: (a) solicit or contact any client or prospective client of the Company or Other Pure Entity Projects worked on by Employee during the twelve (12) months preceding his/her date of termination for the purpose of providing business or commercial real estate development services of the type rendered by the Company or Other Pure Entity; and (b) solicit any Employee of the Company to leave the employ of the Company.

164.    Both Adam Seger and Brian Palmer have violated the restrictive provisions in Section 9 of their employment agreements.

165.    In their June 26, 2025 resignation letters, both Adam Seger and Brian Palmer demanded to be provided ownership interests in certain projects or special purpose entities. To provide Adam Seger and Brian Palmer ownership interests in special purpose entities would require, among other things, that Drew Sanders, in his individual capacity, surrender ownership interests of his own.

166.    Both Adam Seger and Brian Palmer's employment agreements include provisions (in Sections 2.1 and 2.2) that deny them the right to claim certain benefits

under the agreements "if Employee terminates without good cause and/or violates restrictive provisions of the Employment Agreement."

167.    Both Adam Seger and Brian Palmer's employment agreements include the following Section 18 (titled "Attorney Fees") that states: "If any party to this Agreement breaches any of the terms of this Agreement, then that party shall pay to the non-breaching party all of the non-breaching party's costs and expenses, including attorneys' fees, incurred by that party in enforcing the terms of this Agreement."

168.    Any conditions precedent to Pure Development, Inc. and Drew Sanders asserting claims against Adam Seger and Brian Palmer in this action, if any, have been satisfied, have been waived, are unenforceable, would be futile, or are otherwise inapplicable.

**iii.    The unauthorized access of computer systems and misuse of trade secrets on and after the resignation dates of Chris Seger, Adam Seger, Brian Palmer, and other Canopy 5, LLC agents**

169.    Adam Seger resigned from Pure Development, Inc. on June 26, 2025. On the day of his resignation, Adam Seger accessed or downloaded 296 files from Pure Development, Inc.'s computers. After his resignation, and without authorization, Adam Seger accessed Pure Development, Inc.'s computers, including by accessing or downloading 721 files from Pure Development, Inc.'s computers.

170.    Brian Palmer resigned from Pure Development, Inc. on June 26, 2025. After his resignation, and without authorization, Brian Palmer continued to access Pure

Development, Inc.'s computers, including by accessing or downloading 11 files from Pure Development, Inc.'s computers. Among the files he accessed after his separation from Pure Development, Inc., were the following Pure Development, Inc. trade secrets. On July 11, 2025, Pure Development, Inc. received a flash drive from Brian Palmer that included 3,337 files Palmer apparently downloaded from Pure Development, Inc. and took for himself.

### COUNT 1: DEFEND TRADE SECRETS ACT, 18 U.S.C. §§ 1831–1839
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, BRIAN PALMER, JENNA BARNETT, AND JENNAB, LLC)

171. The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

172. Pure Development, Inc. is the owner of the trade secrets described above.

173. The value of the trade secrets described above derives from the fact that other companies engaged in the same business as Pure Development, Inc. could use them as a basis to adopt Pure Development, Inc.'s business strategies, to compete with Pure Development, Inc. for clients, to avoid costs associated with developing similar information, and to interfere with Pure Development, Inc.'s relationships and contracts.

174. Pure Development, Inc. has taken reasonable measures to keep the trade secrets described above a secret. It maintains its trade secrets on computer systems— including, for trade secrets reflecting financial information, in confidential locations with extra restrictions on access—that only its employees may access using proper login

credentials. It restricts physical access to its office space to those with proper credentials. It enters into contracts that require information provided to it by clients to be kept confidential. It enters into nondisclosure and confidentiality agreements with third parties when necessary. It entered into employment agreements with Adam Seger and Brian Palmer requiring them to keep all of Pure Development, Inc.'s business information—including trade secrets—confidential. And it sought and obtained protective orders from the Commercial Court in the Dissolution Action requiring that Pure Development, Inc. business information submitted to that court under seal.

175.    The Defend Trade Secrets Act, at 18 U.S.C. § 1836, provides that the owner of a trade secret that is misappropriated may bring a civil action under the Act if the misappropriated trade secret is related to a service used in, or intended for use in, interstate commerce.

176.    As described above, Pure Development, Inc. has provided—and continues to provide—services in interstate commerce. It has used the trade secrets described above in relation to those services.

177.    The Defend Trade Secrets Act provides for (a) injunctive relief, (b) an award of damages for actual loss and for unjust enrichment, or in lieu of damages the imposition of a reasonable royalty, (c) in the case of willful and malicious misappropriation, exemplary damages in an amount not more than two times the amount of damages awarded and reasonable attorney's fees.

178.    Defendants Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have willfully and maliciously misappropriated Pure Development, Inc. trade secrets.

179.    As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

180.    As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

### COUNT 2: INDIANA TRADE SECRETS ACT, IND. CODE §§ 24-2-3-1, et seq. (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, BRIAN PALMER, JENNA BARNETT, AND JENNAB, LLC)

181.    The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

182.    Pure Development, Inc. is the owner of the trade secrets described above.

183.    The value of the trade secrets described above derives from the fact that other companies engaged in the same business as Pure Development, Inc. could use them as a basis to adopt Pure Development, Inc.'s business strategies, to compete with Pure Development, Inc. for clients, to avoid costs associated with developing similar information, and to interfere with Pure Development, Inc.'s relationships and contracts.

184.    Pure Development, Inc. has taken reasonable measures to keep the trade secrets described above a secret. It maintains its trade secrets on computer systems—

including, for trade secrets reflecting financial information, in confidential locations with extra restrictions on access—that only its employees may access using proper login credentials. It restricts physical access to its office space to those with proper credentials. It enters into contracts that require information provided to it by clients to be kept confidential. It enters into nondisclosure and confidentiality agreements with third parties when necessary. It entered into employment agreements with Adam Seger and Brian Palmer requiring them to keep all of Pure Development, Inc.'s business information—including trade secrets—confidential. And it sought and obtained protective orders from the Commercial Court in the Dissolution Action requiring that Pure Development, Inc. business information submitted to that court under seal.

185.    Indiana's Uniform Trade Secrets Act, at Ind. Code §§ 24-2-3-1, et seq., provides that the owner of a trade secret that is misappropriated may bring an action for injunctive relief, for damages, and—in the case of willful and malicious misappropriation, for exemplary damages and reasonable attorneys' fees.

186.    Defendants Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have willfully and maliciously misappropriated Pure Development, Inc. trade secrets.

187.    As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

188.    As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

### COUNT 3: COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, BRIAN PALMER, JENNA BARNETT, AND JENNAB, LLC)

189.    The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

190.    Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, Jenna Barnett, and JennaB, LLC intentionally accessed computers without authorization or in excess of any authorized access or conspired to do so. At the time of the unauthorized access, those computers were being used in or were affecting interstate commerce.

191.    Through that unauthorized access, Canopy 5, LLC, Adam Seger, Brian Palmer, Jenna Barnett, and JennaB, LLC obtained Pure Development, Inc. information from those computers.

192.    As a result of Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, Jenna Barnett, and JennaB, LLC's conduct, Pure Development, Inc. has suffered a loss in an amount exceeding $5,000 to be proven at trial.

43

## COUNT 4: COMPUTER TRESPASS, IND. CODE §§ 34-24-3-1, 35-43-2-3
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, BRIAN PALMER)

193. The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

194. Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer knowingly or intentionally accessed a computer system, computer network, or some part of a computer system or computer network owned by Pure Development, Inc. without Pure Development, Inc.'s consent—all in violation of Indiana Code section 35-43-2-3.

195. Pure Development, Inc. has suffered pecuniary losses as a result of those actions.

196. Indiana Code section 34-24-3-1 provides that Pure Development, Inc. may bring a civil action for this conduct to recover damages, including but not limited to treble damages, the costs of the action, and its reasonable attorneys' fees.

## COUNT 5: TRESPASS, IND. CODE §§ 34-24-3-1, 35-43-2-2
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC)

197. The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

198. By its actions, Canopy 5, LLC knowingly or intentionally interfered with Pure Development, Inc.'s possession or use of its property without Pure Development, Inc.'s consent—all in violation of Indiana Code section 35-43-2-2.

199.    Pure Development, Inc. has suffered pecuniary losses as a result of those actions.

200.    Indiana Code section 34-24-3-1 provides that Pure Development, Inc. may bring a civil action for this conduct to recover damages, including but not limited to treble damages, the costs of the action, and its reasonable attorneys' fees.

### COUNT 6: THEFT, IND. CODE §§ 34-24-3-1, 35-43-4-2, 35-43-4-2.1 (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, BRIAN PALMER, JENNA BARNETT, AND JENNAB, LLC)

201.    The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

202.    By their actions, Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer knowingly or intentionally exerted unauthorized control over Pure Development, Inc.'s tangible property with the intent to deprive Pure Development, Inc. of its value or use—all in violation of Indiana Code section 35-43-4-2 and 35-43-4-2.1.

203.    By their actions, Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, Jenna Barnett, and JennaB, LLC knowingly or intentionally exerted unauthorized control over Pure Development, Inc.'s HubSpot account with the intent to deprive Pure Development, Inc. of its value or use—all in violation of Indiana Code section 35-43-4-2 and 35-43-4-2.1.

204.    Pure Development, Inc. has suffered pecuniary losses as a result of those actions.

45

205.    Indiana Code section 34-24-3-1 provides that Pure Development, Inc. may bring a civil action for this conduct to recover damages, including but not limited to treble damages, the costs of the action, and its reasonable attorneys' fees.

**COUNT 7: CONVERSION, IND. CODE §§ 34-24-3-1, 35-43-4-3**
**(PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER,**
**ADAM SEGER, BRIAN PALMER, JENNA BARNETT, AND JENNAB, LLC)**

206.    The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

207.    By their actions, Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer knowingly or intentionally exerted unauthorized control over Pure Development, Inc.'s tangible property—all in violation of Indiana Code section 35-43-4-3.

208.    By their actions, Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, Jenna Barnett, and JennaB, LLC knowingly or intentionally exerted unauthorized control over Pure Development, Inc.'s HubSpot account in violation of Indiana Code section 35-43-4-2.

209.    Pure Development, Inc. has suffered pecuniary losses as a result of those actions.

210.    Indiana Code section 34-24-3-1 provides that Pure Development, Inc. may bring a civil action for this conduct to recover damages, including but not limited to treble damages, the costs of the action, and its reasonable attorneys' fees.

46

## COUNT 8: INDIANA CORRUPT BUSINESS INFLUENCE ACT, IND. CODE §§ 35-45-6-2, 34-24-2-6
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, BRIAN PALMER, JENNA BARNETT, AND JENNAB, LLC)

211. The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

212. Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, Jenna Barnett, and JennaB, LLC engaged in a pattern of racketeering activity, including:

a. Knowingly and intentionally exerting unauthorized control over Pure Development, Inc.'s tangible property with intent to deprive Pure Development, Inc. of its value or use, in violation of Indiana Code section 35-43-4-2;

b. Knowingly and intentionally exerting unauthorized control over Pure Development, Inc.'s HubSpot account with intent to deprive Pure Development, Inc. of its value or use, in violation of Indiana Code section 35-43-4-2;

c. Knowingly or intentionally exerting unauthorized control over Pure Development, Inc.'s confidential business information and trade secrets with intent to deprive Pure Development, Inc. of its value, in violation of Indiana Code section 35-43-4-2.

d. With intent to obtain Pure Development, Inc.'s property and data contained in its HubSpot account, and to cause Canopy 5, LLC to obtain such property and data, knowingly and intentionally made a false and misleading statement to HubSpot, on June 6, 2025, that Jenna Barnett was authorized by Pure Development, Inc. to transfer Pure Development, Inc.'s HubSpot account to JennaB, LLC, in violation of Indiana Code section 35-43-5-4.

213. Through their pattern of racketeering activity described above, Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, Jenna Barnett, and JennaB, LLC

47

knowingly or intentionally acquired or maintained, directly or indirectly, an interest in or control of Pure Development, Inc.'s property.

214. Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, Jenna Barnett, and JennaB, LLC are employed by, or associated with, the enterprise of Canopy 5, LLC.

215. Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, Jenna Barnett, and JennaB, LLC have knowingly or intentionally conducted or otherwise participated in the activities of Canopy 5, LLC through a pattern of racketeering activity.

216. Pure Development, Inc. has suffered damages as a result of the conduct described above.

217. Indiana Code section 34-24-2-6 provides that Pure Development, Inc. may bring a civil action for this conduct to seek injunctive relief as well as damages, including but not limited to treble damages, the costs of the action, reasonable attorneys' fees, and punitive damages.

## COUNT 9: UNFAIR COMPETITION, 15 U.S.C. § 1125(a)
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, AND BRIAN PALMER)

218. The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

219. Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer—in connection with services used in interstate commerce—have made and continue to make false or

48

misleading statements concerning the development projects that Canopy 5 has completed, its offices and related infrastructure, and its employee roster.

220. They have made such statements in a manner likely to cause confusion, to cause mistake, or to deceive as to the sponsorship or approval of its services by other persons, such as the Pure Development, Inc. customers whose projects Canopy 5, Chris Seger, Adam Seger, and Brian Palmer falsely suggest were customers of Canopy 5.

221. The defendants' statements have been made in commercial advertising and promotional materials that misrepresent the nature of Canopy 5's services or commercial activities.

222. As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

223. As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## COUNT 10: COMMON LAW UNFAIR COMPETITION
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, AND BRIAN PALMER)

224. The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

225. Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have conducted and are conducting a raid on its competitor Pure Development, Inc., appropriating for themselves Pure Development, Inc.'s offices, assets, employees, computer accounts, customer contacts, reputation, and goodwill, with the design and malicious intent to destroy Pure Development, Inc.'s ability to compete.

226. Through their actions, defendants Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have derived, and continue to derive, an unfair competitive advantage by utilizing Pure Development, Inc.'s offices, assets, employees, computer accounts, customer contacts, reputation, and goodwill to operate their new business.

227. Through their actions, defendants Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have intended to cause, and have caused, Pure Development, Inc. to lose current and prospective business.

228. These acts constitute unfair competition under Indiana's common law.

229. As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

230. As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## COUNT 11: UNJUST ENRICHMENT
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, AND BRIAN PALMER)

231. The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

232. Pure Development, Inc. has invested substantial time, resources, and money developing and growing its business, its goodwill, and its reputation.

233. Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have engaged in unfair and improper conduct to launch their new enterprise off the back of Pure Development, Inc.'s reputation, goodwill, office space, infrastructure, and employees.

234. Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer have derived, and continue to derive, benefit from Pure Development, Inc. from their wrongful conduct. Their acts constitute unjust enrichment.

235. It would be unjust for Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer to be permitted to profit from their wrongful conduct.

236. As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

237. As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

## COUNT 12: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, AND BRIAN PALMER – IEDC, AMAZON, CITY OF BLOOMINGTON REDEVELOPMENT COMMISSION)

238. The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

239. Pure Development, Inc. had a valid relationship with the IEDC as it relates to the development of the LEAP Lebanon Innovation District.

240. Pure Development, Inc. had a valid relationship with Amazon as it relates to the development projects for which Pure Development, Inc. had been engaged.

241. Pure Development, Inc. had a valid relationship with the City of Bloomington Redevelopment Commission as it relates to the development of the Bloomington Hotel.

242. Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer were aware of the existence of those relationships.

243. Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer, without justification and through illegal conduct, intentionally interfered with those relationships.

244. As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## COUNT 13: BREACH OF CONTRACT
### (PURE DEVELOPMENT, INC. vs. ADAM SEGER – EMPLOYMENT AGREEMENT)

245. The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

246. Adam Seger has a valid and enforceable employment agreement with Pure Development, Inc.

247. By his conduct, Adam Seger has breached his employment agreement with Pure Development, Inc.

248. As a result of Adam Seger's conduct, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

249. As a result of Adam Seger's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

## COUNT 14: BREACH OF CONTRACT
### (PURE DEVELOPMENT, INC. vs. BRIAN PALMER – EMPLOYMENT AGREEMENT)

250. The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

251. Brian Palmer has a valid and enforceable employment agreement with Pure Development, Inc.

252. By his conduct, Brian Palmer has breached his employment agreement with Pure Development, Inc.

253.    As a result of Brian Palmer's conduct, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

254.    As a result of Brian Palmer's actions, Pure Development, Inc. has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

## COUNT 15: DECLARATORY JUDGMENT, 28 U.S.C. § 2201
### (PURE DEVELOPMENT, INC. AND DREW SANDERS vs. ADAM SEGER – EMPLOYMENT AGREEMENT)

255.    The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

256.    Adam Seger has a valid and enforceable employment agreement with Pure Development, Inc.

257.    An actual controversy exists between Pure Development, Inc. and Drew Sanders, on one hand, and Adam Seger on the other as to Adam Seger's right to claim certain benefits described in Adam Seger's employment agreement and as asserted in Adam Seger's resignation letter.

258.    For Adam Seger to obtain such benefits would require Sanders to cede ownership or profits in certain projects or independent special purpose entities.

259.    Pure Development, Inc. and Drew Sanders seek to resolve this controversy and to determine the rights and obligations of the parties under Adam Seger's employment agreement.

## COUNT 16: DECLARATORY JUDGMENT, 28 U.S.C. § 2201
### (PURE DEVELOPMENT, INC. AND DREW SANDERS vs. BRIAN PALMER – EMPLOYMENT AGREEMENT)

260.   The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

261.   Brian Palmer has a valid and enforceable employment agreement with Pure Development, Inc.

262.   An actual controversy exists between Pure Development, Inc. and Drew Sanders, on one hand, and Brian Palmer on the other as to Brian Palmer's right to claim certain benefits described in Brian Palmer's employment agreement and as asserted in Brian Palmer's resignation letter.

263.   For Brian Palmer to obtain such benefits would require Sanders to cede ownership or profits in certain projects or independent special purpose entities.

264.   Pure Development, Inc. and Drew Sanders seek to resolve this controversy and to determine the rights and obligations of the parties under Brian Palmer's employment agreement.

## COUNT 17: TORTIOUS INTERFERENCE WITH EMPLOYMENT RELATIONSHIPS
### (PURE DEVELOPMENT, INC. vs. CANOPY 5, LLC, CHRIS SEGER, ADAM SEGER, AND BRIAN PALMER – PURE DEVELOPMENT EMPLOYEES)

265.   The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

266. Pure Development, Inc. has or had valid and enforceable employment relationships with its employees, including Jesse Sadowy, Jenna Barnett, Michael Watts, Jon Carpenter, Justin Lawhorn, Jody Sharp, Kyle Miller, Tyler Neese, Brian Tominov, Dom Cate, Jake Leatherman, Chase Willis, Katie Harp, and Kendra Brooks.

267. Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer knew of the existence of those employment relationships with those employees.

268. Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer intentionally, and without justification, induced those employees to breach the duties those employees owe to Pure Development, Inc., including the duty of loyalty.

269. As a result of Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer's conduct, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## COUNT 18: DUTY OF LOYALTY
### (PURE DEVELOPMENT, INC. vs. CHRIS SEGER, ADAM SEGER, BRIAN PALMER, AND JENNA BARNETT)

270. The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

271. As employees of Pure Development, Inc., Chris Seger, Adam Seger, Brian Palmer, and Jenna Barnett owed duties of loyalty to Pure Development, Inc.

272. By their conduct, Chris Seger, Adam Seger, Brian Palmer, and Jenna Barnett breached their duties of loyalty.

56

273.     As a result of Chris Seger, Adam Seger, Brian Palmer, and Jenna Barnett's conduct, Pure Development, Inc. has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## COUNT 19: FIDUCIARY DUTY
### (DREW SANDERS vs. CHRIS SEGER)

274.     The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

275.     By virtue of their relationship as 50-50 owners of the closely held company Pure Holdings, Inc., which in turn is the 100-percent owner of Pure Development, Inc., Chris Seger owed a fiduciary duty to Drew Sanders.

276.     By his conduct, Chris Seger has breached his fiduciary duties to Drew Sanders.

277.     As a result of Chris Seger's conduct, Drew Sanders has suffered, and will continue to suffer, damages in an amount to be proven at trial.

278.     As a result of Chris Seger's conduct, Drew Sanders has suffered, and will continue to suffer, irreparable harm for which he has no adequate remedy at law.

## COUNT 20: CONSTRUCTIVE FRAUD
### (PURE DEVELOPMENT, INC. AND DREW SANDERS vs. CHRIS SEGER, ADAM SEGER, AND MAGIC TRIC I, LLC – RENO (NEST) OPPORTUNITY)

279.     The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

57

280. Chris Seger owed a duty to be honest in his dealings with Drew Sanders and Pure Development, Inc.

281. Chris Seger violated that duty by failing—while under a duty to speak—to disclose the material facts concerning his plan to usurp the Reno (Nest) opportunity for himself and his actions in furtherance of that plan.

282. Drew Sanders and Pure Development, Inc. relied on Chris Seger's silence, wrongly believing that Pure Development, Inc. was pursuing that opportunity and that Sanders and Chris Seger would benefit jointly from that pursuit.

283. By his actions, Chris Seger gained an advantage over Drew Sanders and Pure Development, Inc.

284. By their actions, Adam Seger and Magic TRIC I, LLC engaged in a conspiracy with Chris Seger to implement his fraudulent scheme and are equally liable for Chris Seger's actions.

285. As a result of Chris Seger, Adam Seger, and Magic TRIC I, LLC's conduct, Drew Sanders and Pure Development, Inc. have suffered, and will continue to suffer, damages in an amount to be proven at trial.

286. As a result of Chris Seger, Adam Seger, and Magic TRIC I, LLC's conduct, Drew Sanders and Pure Development, Inc. have suffered, and will continue to suffer, irreparable harm for which they have no adequate remedy at law.

## COUNT 21: FRAUD, IND. CODE §§ 34-24-3-1, 35-43-5-4
### (PURE DEVELOPMENT, INC. AND DREW SANDERS vs. CHRIS SEGER – RENO (NEST) OPPORTUNITY)

287.    The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

288.    By his actions, Chris Seger, with the intent to obtain property to which he was not entitled, knowingly or intentionally made false or misleading statements or created a false impression in another person—all in violation of Indiana Code section 35-43-5-4.

289.    By his actions, Chris Seger, with the intent to obtain property to which he was not entitled, altered or caused the alteration of a document or instrument—all in violation of Indiana Code section 35-43-5-4.

290.    By his actions, Chris Seger knowingly or intentionally engaged in a scheme or artifice to commit the aforementioned acts—all in violation of Indiana Code section 35-43-4-4.

291.    Pure Development, Inc. and Drew Sanders have suffered pecuniary losses as a result of those actions.

292.    Indiana Code section 34-24-3-1 provides that Pure Development, Inc. and Drew Sanders may bring a civil action for this conduct to recover damages, including but not limited to treble damages, the costs of the action, and its reasonable attorneys' fees.

## COUNT 22: CONSTRUCTIVE FRAUD
### (PURE DEVELOPMENT, INC. AND DREW SANDERS vs. CHRIS SEGER, ADAM SEGER, AND MAGIC ATX I, LLC – AUSTIN, TEXAS OPPORTUNITY)

293.    The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

294.    Chris Seger owed a duty to be honest in his dealings with Drew Sanders and Pure Development, Inc.

295.    Chris Seger violated that duty by failing—while under a duty to speak—to disclose the material facts concerning his plan to usurp the Austin, Texas opportunity for himself and his actions in furtherance of that plan.

296.    Drew Sanders and Pure Development, Inc. relied on Chris Seger's silence, wrongly believing that Pure Development, Inc. was pursuing that opportunity and that Sanders and Chris Seger would benefit jointly from that pursuit.

297.    By his actions, Chris Seger gained an advantage over Drew Sanders and Pure Development, Inc.

298.    By their actions, Adam Seger and Magic ATX I, LLC engaged in a conspiracy with Chris Seger to implement his fraudulent scheme and are equally liable for Chris Seger's actions.

299.    As a result of Chris Seger, Adam Seger, and Magic ATX I, LLC's conduct, Drew Sanders and Pure Development, Inc. have suffered, and will continue to suffer, damages in an amount to be proven at trial.

300.    As a result of Chris Seger, Adam Seger, and Magic ATX I, LLC's conduct, Drew Sanders and Pure Development, Inc. have suffered, and will continue to suffer, irreparable harm for which they have no adequate remedy at law.

## COUNT 23: DECLARATORY JUDGMENT, 28 U.S.C. § 2201
### (PURE HOLDINGS, INC. vs. CHRIS SEGER – INDEMNITY)

301.    The allegations in Paragraphs 1 through 170 are incorporated by reference herein.

302.    An actual controversy exists between Pure Holdings, Inc. and Chris Seger as to Chris Seger's claim for indemnification under Pure Holdings, Inc.'s Articles of Incorporation.

303.    Pure Holdings, Inc. seeks to resolve that controversy and to determine the rights and obligations of the parties under its Articles of Incorporation.

**WHEREFORE,** plaintiffs Pure Development, Inc., Pure Holdings, Inc., and Drew Sanders pray for judgment against defendants Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, Magic TRIC I, LLC, Magic ATX I, LLC, JennaB, LLC, and Jenna Barnett as follows:

1.    That Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, JennaB, LLC, and Jenna Barnett, each of their agents, employees, attorneys, successors, and assigns, and all persons acting in concert or participating with them be preliminarily and permanently enjoined and restrained from directly or

indirectly engaging in any business competitive with Pure Development, Inc. for an equitable period of time to account for Defendants' wrongful conduct.

2. That Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, JennaB, LLC, and Jenna Barnett, and all persons controlled by or acting in concert with them, be ordered to cease using any real or personal property of Pure Development, Inc. and to return all such property to Pure Development, Inc.

3. That Canopy 5, LLC, Chris Seger, Adam Seger, Brian Palmer, Magic TRIC I, LLC, Magic ATX I, LLC, JennaB, LLC, and Jenna Barnett be required to disgorge all profits and other ill-gotten gains from their wrongful conduct.

4. That Chris Seger, Adam Seger, Brian Palmer, and Jenna Barnett be required to disgorge all salary or other benefits received from Pure Development, Inc. while engaged in their wrongful conduct.

5. That Canopy 5, LLC, Chris Seger, Adam Seger, and Brian Palmer be required to account to Pure Development, Inc., and to reimburse Pure Development, Inc., for all operational costs Pure Development, Inc. has incurred while they utilized Pure Development, Inc.'s assets, resources, and employees for their own business interests.

6. That plaintiffs be awarded whatever other equitable relief may be appropriate to redress Defendants' conduct.

7.  That plaintiffs be awarded all compensatory, exemplary, and statutory damages allowed by law.

8.  That plaintiffs be awarded punitive damages for defendants' willful, wantonly, oppressive, and malicious conduct.

9.  That plaintiffs be awarded their reasonable attorneys' fees.

10. That neither Adam Seger nor Brian Palmer is entitled to any further benefits under their employment agreements, and that neither is entitled to any interest of Drew Sanders's in any special purpose entity.

11. That Chris Seger is not entitled to the indemnification he demands.

12. That plaintiffs be awarded all recoverable costs.

13. That plaintiffs be awarded such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ *B. Too Keller*
B. Too Keller
Keller Macaluso LLC
760 3rd Avenue SW, Suite 210
Carmel, IN 46032
317-660-3402
too@kellermacaluso.com

*Counsel for Pure Holdings, Inc.*
*and Pure Development, Inc.*

/s/ *Michael R. Limrick*
Andrew W. Hull
Michael R. Limrick
Christopher D. Wagner
Megan M. Riley
Hoover Hull Turner LLP
111 Monument Circle, Suite 4400
Indianapolis, IN 46204
317-822-4400
awhull@hooverhullturner.com
mlimrick@hooverhullturner.com
cwagner@hooverhullturner.com
mriley@hooverhullturner.com

*Counsel for Drew Sanders,*
*Pure Holdings, Inc.,*
*and Pure Development, Inc.*