**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

PURE DEVELOPMENT, INC.,
PURE HOLDINGS, INC.,
and DREW SANDERS,

     Plaintiffs,

  v.

CANOPY 5, LLC, CHRIS SEGER,
ADAM SEGER, BRIAN PALMER,
MAGIC TRIC I, LLC,
JENNAB, LLC, and JENNA BARNETT,

     Defendants.

Case No. 1:25-cv-1301-SEB-TAB

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO STAY (DOC. 22)</u>**

Defendants moved for a stay of preliminary injunction proceedings based solely on the *Colorado River* abstention doctrine. Under *Colorado River*, the threshold question is whether the federal and state actions are "parallel"—meaning there must be a "substantial likelihood that the state litigation will dispose of **all claims** presented in the federal case." *Antosh v. Vill. of Mount Pleasant*, 99 F.4th 989, 993–94 (7th Cir. 2024) (emphasis added).

Defendants **have never** claimed that any case pending in state court will "dispose" of all claims presented in this case—nor could they. Other than Chris Seger, no defendant in this case is a party to any other pending action; and except for Pure

1

Holdings, Inc.'s first-filed claim for declaratory judgment that it owes no indemnification to Chris Seger for his legal expenses (one count out of twenty-three), no claim in this case has been raised in any other pending action.

The Second Amended Complaint bolsters the case for this Court's exercising jurisdiction and resolving Pure Development's motion for preliminary injunction. It details Defendants' taking of Pure Development, Inc.'s property—even depriving Pure Development, Inc. of access to its own HubSpot database—and their efforts to conceal that conduct from the company's co-owner Drew Sanders, giving rise to additional claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and Indiana's RICO statute, Ind. Code § 35-45-6-2. (Doc. 59 ¶¶ 189–192, 211–17). These claims will not be resolved by any state-court action. The Second Amended Complaint also identifies two additional defendants: JennaB, LLC and Jenna Barnett. Neither JennaB, LLC nor Jenna Barnett is party to any pending state-court action.

With respect to whether the additional allegations and claims in the Second Amended Complaint will impact the Court's *Colorado River* analysis, Defendants dodged the question entirely. Their supplemental submission doesn't even mention *Colorado River*. Instead, Defendants repeat their misplaced challenges to this Court's jurisdiction and the merits of Plaintiffs' claims.

**1. Pure Holdings, Inc. and Pure Development, Inc. remain active corporations in good standing.**

On June 23, 2025, the Indiana Court of Appeals issued a writ in aid of its jurisdiction and stayed the Indiana Commercial Court's dissolution order. As a result, no certified order dissolving any of the Pure companies was ever delivered to the Indiana Secretary of State pursuant to Indiana Code § 23-1-47-4(a). And no receiver has ever been appointed to manage the affairs of any of the Pure companies, which remain active and in good standing.

Defendants again direct this Court (Doc. 62 at 2) to submissions Drew Sanders filed in other proceedings asserting that, because the Commercial Court had ordered the Pure companies dissolved, they would be incapable of doing new business. Defendants, of course, ignore that those statements were Sanders's explanation of **why** an emergency stay of the dissolution order was necessary—**a stay the Court of Appeals promptly granted**. If the Pure companies were in fact currently dissolved, then the Court of Appeals' stay would be meaningless. Of course, it's not; an appellate court's stay holds the trial court's order in abeyance. *See State v. Trueblood*, 767 N.E.2d 1011, 1013 (Ind. Ct. App. 2002) (a stay means to hold an order in abeyance to maintain the "status quo," allowing a physician whose medical license was ordered suspended and then revoked to continue practicing medicine pending judicial review).

**2.** **Even if Pure Development were dissolved (it is not), its property rights would remain intact.**

Defendants suggest that until some future receiver (who may never be appointed) decides "who owns" Pure Development, Inc.'s trade secrets, this Court shouldn't consider the company's federal trade-secret claims. (Doc. 62 at 3, 5). But Indiana law is unequivocally clear that dissolution does not "transfer title to the corporation's property." Ind. Code § 23-1-45-5(b)(1).

**3.** **Defendants have obstructed preliminary injunction discovery and now cite the resulting delay as a reason for abstention.**

On June 25, 2025, two days after the Indiana Court of Appeals stayed the dissolution order, Chris Seger abruptly divested his ownership in the Pure companies and resigned as director of each, leaving the Pure companies without a quorum of directors to manage the business. (Doc. 59 ¶¶ 152–54). In the **five days** that followed, Drew Sanders (1) exercised the authority vested in him by the corporations' bylaws to become the companies' sole director and officer, and (2) caused Pure Development, Inc. to prepare and file a complaint in this Court to protect the company from the Defendants' raid of its business, employees, and assets. Two weeks later, Pure Development, Inc. filed a motion for preliminary injunction.

On July 28, 2025, this Court held an initial case management conference where it authorized the parties to proceed with discovery related to the preliminary injunction motion. The **next day**, Pure Development served each defendant with more than 40

requests for production. In response, Defendants served 219 pages of objections and produced exactly **four pages of documents**—a response this Court characterized as "completely inappropriate." (Doc. 53 at 3, *Order on Sept. 9, 2025 Tele. Status Conf.*)

Following unsuccessful attempts to meet and confer on Defendants' (1) insufficient document production, (2) refusal to produce any information unless it related specifically to trade secrets, and (3) refusal to search entire repositories of information, including personal email and cell phone data, Pure Development, Inc. sought this Court's assistance. On September 10, 2025, this Court ordered Defendants to cure their discovery deficiencies. To date, Defendants have produced only 2,288 documents, most of which have little or no relevance to the issues in this case. Pure Development, Inc., meanwhile, has produced more than 54,000 documents.

Despite all of this, Defendants have the temerity to cite the "cadence" of this case as a reason to stay preliminary injunction proceedings. A party cannot obstruct discovery, delay the proceedings, and then use such delays to their strategic advantage. *See, e.g., Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 293–98 (S.D.N.Y. 2024) ("a failure to respond to discovery requests can be seen as an attempt to gain a tactical advantage" that should not be countenanced).

Respectfully submitted,

/s/ B. Too Keller
B. Too Keller
Keller Macaluso LLC
760 3rd Avenue SW, Suite 210
Carmel, IN 46032
317-660-3402
too@kellermacaluso.com

*Counsel for Pure Holdings, Inc.*
*and Pure Development, Inc.*

/s/ Michael R. Limrick
Andrew W. Hull
Michael R. Limrick
Christopher D. Wagner
Megan M. Riley
Hoover Hull Turner LLP
111 Monument Circle, Suite 4400
Indianapolis, IN 46204
317-822-4400
awhull@hooverhullturner.com
mlimrick@hooverhullturner.com
cwagner@hooverhullturner.com
mriley@hooverhullturner.com

*Counsel for Drew Sanders,*
*Pure Holdings, Inc.,*
*and Pure Development, Inc.*