**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

PURE DEVELOPMENT, INC., PURE )
HOLDINGS, INC., AND DREW )
SANDERS, )
          )
  PLAINTIFFS, )
          )   No. 1:25-cv-01301-SEB-TAB
v. )
          )
CANOPY 5, LLC, CHRIS SEGER, )
ADAM SEGER, BRIAN PALMER, )
MAGIC TRIC I, LLC, MAGIC ATX I, LLC, )
JENNAB, LLC, AND JENNA BARNETT, )
          )
  DEFENDANTS. )

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY</u>

In 2017, Jenna Barnett wanted to separate from Halakar Properties, Inc. ("Halakar"), a real estate brokerage firm that she owned with a fifty-fifty partner. Barnett engaged Hoover Hull Turner ("HHT") to advise her with respect to her departure from Halakar and her simultaneous divestiture of her ownership interest. Decl. of Barnett para. 2. During the representation, HHT provided Barnett with legal advice, including, for example:

1. The law allowed Barnett to "export as much current information" from Halakar as she thought "would be needed to do business" once she was at her new company, and that "export[ing]" such information was time sensitive and must be done before termination of her relationship with Halakar because she would likely lose access to those files at that time. Decl. of Barnett para. 6–7.

2. Information that Barnett "know[s] on the way in" to a new company should not be classified as company confidential information. Decl. of Barnett para. 14.

3. Barnett was free to recruit Halakar personnel after she terminated her relationship with Halakar, and, in the meantime, she should "avoid or keep to a bare minimum any email or other communications on that subject." Decl. of Barnett para. 12.[1]

4. Barnett had "every right to leave, or 'abandon,' [a] compan[y] at the time [she] cho[se]," and the risk of claims against her materially decreased upon her termination of her relationship with Halakar. Decl. of Barnett para. 13.[2]

The data points and files that HHT advised Barnett to "export" from Halakar ("Halakar Files") in the legal advice outlined in point 1 above were continuously migrated in the ordinary course of business by Barnett, and they eventually ended up in Pure Development's Hubspot Database. Decl. of Barnett para. 9, 10. HHT's signed complaint against Barnett accuses her of misappropriating this Hubspot Database and of committing various crimes and conspiracies with respect to it. Decl. of Barnett para. 16. In other words, **HHT today is accusing Barnett of criminally misappropriating the very data that HHT in 2017 advised her to urgently "export."** Decl. of Barnett para. 17. The items of legal advice are substantially related to the instant Second Amended Complaint against Barnett.

Moreover, HHT now claims that these Halakar Files somehow became the property of Pure Development when Barnett migrated them to the Hubspot Database. *See, e.g.*, Second Am. Compl., Doc. 59 para. 69 ("SAC"). This is the opposite of their 2017 legal advice to Barnett, as shown in point 2 above. And HHT's current claim that

---

[1] The evidence available to date confirms that HHT attorney Wayne Turner (who has not appeared in this case) consulted with HHT attorneys Michael Limrick and Andew Hull (who have appeared in this case) in connection with this topic. Exhibit B (time card), Exhibit E (email from Turner to Limrick and Hull). Barnett has demanded the response to this email from HHT, Exhibit F (second demand letter), but it has not been provided at the time of this filing.

[2] *See*, *supra* note 1.

Barnett violated her duty of loyalty in numerous ways, SAC para. 270–73, contradicts their 2017 legal advice reflected in points 3 and 4 above.

Barnett will assert the advice of counsel defense in this matter. Decl. of Barnett para. 19. The HHT advice on the Halakar Files, on the duty of loyalty, on recruiting, and on the confidential status of information that she possessed was all at the forefront of Barnett's mind during the relevant time period in this case. Decl. of Barnett para. 18. This puts HHT's legal advice reflected above squarely at issue in the instant matter, and it makes HHT attorneys witnesses in this matter.

This Motion arises from a direct and irreconcilable conflict. HHT advised Barnett to take specific steps regarding some of the same data they now claim she misappropriated. More broadly, HHT is now suing its former client for following the advice it provided. Rules 1.9, 1.10, and 3.7 prohibit that dual role. As a result, Jenna Barnett respectfully requests that the Court disqualify HHT from serving as counsel in this lawsuit.[3]

## **ARGUMENT**

HHT should be disqualified from this action under Professional Conduct Rules 1.9(a), 1.10(a), 3.7(a), and 3.7(b). Wayne Turner's 2017 and 2018 legal advice to Barnett concerns the same data and actions now at issue in the Second Amended Complaint and makes the HHT attorneys witnesses in this matter. The entire HHT Firm must be disqualified from this representation for the following reasons.

---

[3] Barnett has requested that HHT address this situation. Exhibit G (9/22/25 letter), Exhibit F (10/7/2025 letter).

**I. All Actions of Turner Are Indisputably Imputed to the HHT Attorneys in This Case**

In 2017, Barnett engaged Turner of HHT to provide legal advice regarding departure from her employment with Halakar and separation of her fifty percent ownership interest in the Halakar entities. Turner was the principal HHT attorney working with Barnett. Although Turner has not entered an appearance in this case, Rule 1.10(a) imputes Rule 1.9(a) conflicts to the entire HHT Firm. Ind. R. Pro. Conduct 1.10(a).[4]

Rule 1.10(a) states:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2 unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Ind. R. Pro. Conduct 1.10(a).

Here, Turner, Michael Limrick, and Andrew Hull are each associated with HHT. For the reasons addressed in Section II, Turner is prohibited from representing Plaintiffs Drew Sanders or Pure Development under Rule 1.9(a). Because this prohibition is not based on a personal interest, Turner's Rule 1.9(a) conflict is imputed to the entire HHT Firm, including Limrick and Hull.

**II. Rule 1.9(a) Prohibits HHT's Representation of Plaintiffs in This Matter**

Rule 1.9(a) reads:

---

[4] All three attorneys discussed in this motion are currently HHT attorneys; rules regarding former and departing attorneys do not apply to this motion. Hoover Hull Turner LLP, *Our Attorneys*, https://hooverhullturner.com/our-attorneys/, archived at https://perma.cc/2XSA-ZGJX

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the *same* or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Ind. R. Pro. Conduct 1.9(a) (emphasis added).

The Halakar matter is the same as the instant matter, or, at the very least, substantially related. For either independently-sufficient reason, the Court should disqualify the HHT Firm.[5]

### A.  The Halakar Matter and This Matter Are the Same

When two matters under inquiry are a part of the same legal dispute, the court should order disqualification. *Watkins v. Trans Union, LLC*, 869 F.3d 514, 520 (7th Cir. 2017). Whether the disputes are the "same" "depends on the facts of a particular situation or transaction." Ind. R. Pro. Conduct 1.9 cmt 2. "When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited." *Id.* The Seventh Circuit looks to whether the facts upon which the instant case will turn are "interwoven" with those of the previous case. *See Watkins*, 869 F.3d at 521. If the claims in the instant case "turn on" "specific facts" of the prior matter, disqualification is necessary. *See id.* "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." Ind. R. Pro. Conduct 1.9 cmt 2.

---

[5] Barnett had not consented, in writing or otherwise, to Hoover Hull Turner's representation of Pure Development, Inc. or their representation of Drew Sanders in this matter. Decl. of Barnett para. 20.

In this case, the facts alleged in the claims against Barnett in the Second Amended Complaint are inextricably interwoven with those from the 2017–2018 HHT representation of Barnett in terminating her ownership and employment relationship with Halakar. The Second Amended Complaint accuses Barnett of misappropriating the Hubspot Database, which contains certain Halakar Files—the same files that HHT advised Barnett to export from Halakar in 2017 because the law permitted her to do so.

Specifically, HHT advised Barnett that the law allowed her to "export as much current information" from Halakar as she thought "would be needed to do business" once she was at her new company. Decl. of Barnett para. 6. Relying on this advice, Barnett exported, preserved, and continuously migrated the Halakar Files for her future use. *Id*. para. 9, 10. While still working at Pure Development, Barnett transferred some of the Halakar Files into the Hubspot Database. *Id*. para. 10. Now, HHT claims in the instant lawsuit that the data within the Hubspot Database was the property of Pure Development.[6] The Second Amended Complaint lists four of ten purportedly misappropriated Pure Development trade secrets as originating from the Hubspot Database. SAC at para. 140 (table); *see also id. at* para. 69 (claiming an interest in the information within Hubspot), at para. 212(d) ("[w]ith intent to obtain Pure Development Inc.'s property and data contained in its HubSpot account. . . .").

Thus, HHT has changed sides in the matter in question. *Cf.* Ind. R. Pro. Conduct 1.9 cmt 2. In 2017, HHT advised Barnett to take the Halakar Files before terminating an employment relationship. Now, HHT is suing her for doing so. This is not permitted under Rule 1.9.

---

[6] To the extent this data originated from Barnett, it was not the property of Pure Development at all. This is confirmed by the legal advice given by HHT to Barnett. Barnett Decl. para. 14.

**B. The Halakar Matter and This Matter Are Substantially Related**

At the very least, the Halakar matter is substantially related to the issues before this Court. Even "[i]f the prior and present matters do not involve the same transaction or legal dispute, they may still be substantially related if there is a substantial risk that confidential information would materially advance the client's position in the present matter." *Watkins*, 869 F.3d at 520; *see also* Ind. R. Pro. Conduct 1.9 cmt 3 (Matters are 'substantially related' for Rule 1.9 purposes "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter."). Former clients are "not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter." Ind. R. Pro. Conduct 1.9 cmt 3. "A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." *Id*.

The applicable "standard for determining whether a conflict of interest exists to justify disqualification of an attorney is governed by the 'substantial relationship' test developed by the Seventh Circuit." *Leathermon v. Grandview Mem'l Gardens, Inc.,* No. 4:07-cv-137-SEB-WGH, 2010 U.S. Dist. LEXIS 32173, at *33 (S.D. Ind. Mar. 31, 2010). Under the "substantial relationship" test, "the Court must determine 'whether it could reasonably be said that during the former representation the attorney might have acquired information related to the subsequent representation.'" *Id*. at *34–35.

7

This test requires a three-step analysis:

> (1) a factual reconstruction of the scope of the prior legal representation or consultation;
>
> (2) a determination as to whether it is reasonable to infer that confidential information would have been given to a lawyer representing a client in those matters; and
>
> (3) a determination of whether such information is relevant to the issues raised in the pending adverse litigation."

*Id*. at *35. If "a substantial relationship exists," the Court may "presume that the attorney received confidential information during his prior representation." *Id*. at *35–36.

### 1. The Scope of HHT's Prior Legal Representation of Barnett

In determining whether the matters are substantially related, the Court must first consider "a factual reconstruction of the scope of the prior legal representation or consultation." *Leathermon,* No. 4:07-cv-137-SEB-WGH, 2010 U.S. Dist. LEXIS 32173, at *35. Barnett engaged the HHT firm in 2017 to advise her with respect to her departure from Halakar and the simultaneous divestiture of her ownership interest. Decl. of Barnett para. 2. During the representation, HHT provided Barnett with legal advice, including, for example:

- The law allowed Barnett to "export as much current information" from Halakar as she thought "would be needed to do business" once she was at her new company, and that "export[ing]" such information was time sensitive and must be done before her termination of her relationship with Halakar, because she would likely lose access to those files at that time. Decl. of Barnett para. 6–7.

- Information that Barnett "know[s] on the way in" to a new company should not be classified as company confidential information. Decl. of Barnett para. 14.

8

- Barnett was free to recruit Halakar personnel after she terminated her relationship with Halakar, and, in the meantime, she should "avoid or keep to a bare minimum any email or other communications on that subject." Decl. of Barnett para. 12.

- Barnett had "every right to leave, or 'abandon,' [a] compan[y] at the time [she] cho[se]," and the risk of claims against her materially decreased upon her termination of her relationship with Halakar. Decl. of Barnett para. 13.

The scope of HHT's prior representation included Barnett's exportation and migration of the Halakar Files, the confidential status of the information she possessed, and her duty of loyalty as a co-owner and employee.

### 2. It is Reasonable to Infer that Barnett Would Have Given HHT Confidential Information During the 2017-2018 Representation

When evaluating whether matters are substantially related, Courts must next make "a determination as to whether it is reasonable to infer that confidential information would have been given to a lawyer representing a client in those matters." *Leathermon,* No. 4:07-cv-137-SEB-WGH, 2010 U.S. Dist. LEXIS 32173, at *35. In the Seventh Circuit, two representations are substantially related "if the lawyer *could* have obtained confidential information in the first representation that would have been relevant in the second." *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983) (emphasis added). "It is irrelevant whether [the lawyer] actually obtained such information and used it against his former client, or whether – if the lawyer is a firm rather than an individual practitioner – different people in the firm handled the two matters and scrupulously avoided discussing them." *Id*.

Here, it is reasonable to infer that Barnett would have given HHT confidential information during the 2017-2018 representation. HHT represented Barnett in

9

connection with her departure from Halakar and her simultaneous divestiture of her ownership interest in the Halakar entities. The HHT firm provided Barnett with legal advice regarding exportation and migration of the Halakar Files, the confidential status of the information she possessed, and her duty of loyalty as a co-owner and employee. During the course of such representation, it is reasonable to infer that Barnett would have given HHT confidential information such as her negotiation strategies, priorities, and goals when departing from an employment relationship, and her strategies for future competition (including for human resources). *RehabCare Grp. E., Inc. v. Vill. Health Care Mgmt., LLC*, No. 17-cv-1181-MJR-SCW, 2018 U.S. Dist. LEXIS 75154, at *4, 12 (S.D. Ill. Apr. 16, 2018) (firm learned about former client's "negotiation strategy" and "financial condition" and therefore the firm could not sue former client because such information "would likely be relevant to any litigation or negotiation strategy employed in the present case" and "would, if in possession of Plaintiff, materially advance Plaintiff's position in the present case"). Barnett is not required to state the confidential information learned by HHT during the representation. Ind. R. Pro. Conduct 1.9 cmt 3. ("A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.")

Based on the scope of the prior representation, it is reasonable to infer that Barnett would have given HHT confidential information during the 2017–2018 representation.

### 3. Barnett's Confidential Information is Relevant to the Issues Raised in the Pending Adverse Litigation

Third, when evaluating whether matters are substantially related, Courts must next make "a determination of whether such information is relevant to the issues raised in the pending adverse litigation." *Leathermon,* No. 4:07-cv-137-SEB-WGH, 2010 U.S. Dist. LEXIS 32173, at *35.

The confidential information HHT likely received during its prior representation of Barnett includes, but is not limited to, her negotiation strategies, priorities, and goals when departing from an employment relationship, and her strategies and preparation for future competition (including recruitment of personnel) and employment. Each of these categories of confidential information are relevant to the issues raised in the pending, adverse litigation.

For example, Plaintiffs' have accused Barnett of misappropriating files from the Hubspot Database and breaching her duty of loyalty. SAC at para. 140 (table); *see also id.* para. 69; para. 212(d); para 272. However, employees may prepare and "make arrangements to compete." *Kopa, Landau & Pinkus v. Hansen*, 874 N.E.2d 1065, 1070 (Ind. Ct. App. 2007) (noting employees may prepare to compete "without fear of breaching their fiduciary duty of loyalty." *Id*. at 1071) (cleaned up). Thus, any confidential information HHT likely received during its prior representation of Barnett relating to her preparations to compete are clearly relevant to Count 18 (breach of duty of loyalty).

Furthermore, HHT provided specific legal advice to Barnett regarding her strategies and preparation for future competition and employment. For example, Turner advised Barnett to "export as much current information as [she thought] would be

needed to do business" as the "law allow[ed] [her] to make those preparations." Decl. of Barnett Para 6. Barnett's strategies and preparations for future competition and employment are at the heart of the HHT Firm's 2017–2018 representation and advice and are directly relevant to the issues in this lawsuit. *See* SAC para. 189–192 (Count 3 (Computer Fraud and Abuse)), para. 201–205 (Count 6 (Theft)), and para. 206-210 (Count 7 (Conversion)).

* * *

In sum, the Halakar matter is the same as the instant matter, or, at a minimum, the matters are substantially related under the Seventh Circuit's three-part test. Indiana Rules of Professional Conduct 1.9 and 1.10 command the disqualification of the HHT Firm here.

### III. Rule 3.7(a) and (b) Separately Prohibit HHT's Representation of Plaintiffs in This Matter

"A lawyer shall not act as advocate in which the lawyer is likely to be a necessary witness" absent certain exceptions not applicable here. Ind. R. Pro. Conduct 3.7(a). Moreover, a lawyer may not act as advocate in a trial in which another lawyer in his or her firm is likely to be called as a witness where the witness-lawyer's testimony could implicate the firm's duty of loyalty to a current or former client. Ind. R. Pro. Conduct 3.7(b), 1.7, and 1.9; *see also id*. R. 3.7 cmt. 7. Here, these rules command the disqualification of the HHT Firm.

#### A. Barnett Will Assert Advice of Counsel in This Case, and She Will Call HHT Lawyers as Witnesses in Support of Her Defense

Plaintiffs have requested punitive damages against Barnett. SAC at pp. 48, 63. Advice of counsel is a defense to punitive damages. *Hamilton Cty. Bank v. Hinkle Creek*

12

*Friends Church*, 478 N.E.2d 689, 691 (Ind. Ct. App. 1985). Moreover, Plaintiffs have asserted specific intent crimes against Barnett, including theft. SAC at para 201-205; *see Freshwater v. State*, 853 N.E.2d 941, 943 (Ind. 2006); *Hyman v. Davies*, 453 N.E.2d 336, 338 (Ind. Ct. App. 1983). Advice of counsel is a defense to specific intent crimes. *United States v. Cross*, 113 F. Supp. 2d 1253, 1262 (S.D. Ind. 2000).

### B. Rule 3.7(a): Turner is a Witness in This Case

In this case, HHT attorney Turner advised Barnett that her actions were in compliance with the law, that the law allowed her to export the Halakar Files (and therefore the Hubspot Database), and advised her with respect to duties of loyalty when leaving a company. This legal advice will be used by Barnett as an affirmative defense to Plaintiffs' claims in this matter. Substantiating this legal advice will require the testimony of attorneys from HHT. Barnett will call Turner to testify about his legal advice to her, including that the law allowed her to "export" the Halakar files, the confidential status of the information she possessed, and her duty of loyalty as a co-owner and employee.[7] Turner is a witness in this case.

### C. Rule 3.7(a): Hull and Limrick Are Witnesses in This Case

Evidence has now revealed that Turner conferred with Hull and Limrick about Barnett's duty of loyalty as a co-owner and employee. Exhibit E ("My question – if she terminates all roles and triggers the buy out, is there any duty of loyalty that comes from just being an owner in [Halakar]?")[8]; Exhibit B (Turner's time entry for "confer with

---

[7] Turner also advised Barnett on the recruitment of Halakar personnel, her right to leave Halakar at a time of her choosing, and the risk of claims against her upon termination of her relationship with Halakar. Decl. of Barnett para. 12, 13.

[8] Barnett has demanded the response to this email from HHT, Exhibit F (second demand letter), but it has not been provided.

13

colleges on extent of duty of loyalty arising from share ownership"). Given the content of Exhibits B and E, together with to-be-discovered additional documents, it is likely that both Hull and Limrick will be witnesses in this matter on at least the issues associated with the duty of loyalty.

Therefore, for the same reasons, Turner is a witness, and Hull and Limrick are likely to be witnesses in this case and are disqualified from advocating in this matter. Ind. R. Pro. Conduct 3.7(a).

### D. Rule 3.7(b): Testimony by Any HHT Lawyer in This Case Will Be Adverse to Pure & Sanders.

Even if only Turner testifies in this matter, his testimony disqualifies the entire HHT Firm under Rules 3.7(b) & cmt. 6–7 and Rule 1.7. A lawyer may not act as advocate in a trial in which another lawyer in his or her firm is likely to be called as a witness where the witness-lawyer's testimony could implicate the firm's duty of loyalty to a current or former client. Ind. R. Pro. Conduct 3.7(b), 1.7, and 1.9; *see also id.* R. 3.7 cmt. 7.

Put simply, Turner will be called to testify that his legal advice to Barnett was that "the law allow[ed] her to make [certain] preparations" before leaving a job, including "export[ing] as much current information as [she] [thought] would be needed to do business once [she] officially affiliate[d] with" her new job. Exhibit A. Turner also advised Barnett that information that she "know[s] on the way in" to a new company should not be classified as that company's confidential information. Exhibit D This legal advice is directly adverse to the interests of HHT's current clients: Pure Development and Sanders.

14

Pure Development and Sanders, each represented by HHT, have claimed that Halakar files within the Hubspot Database are the property of Pure Development. Specifically, the Second Amended Complaint identifies four allegedly misappropriated Pure Development trade secrets as originating from the Hubspot Database. SAC at para. 140 (table); *see also id.* para. 69; para. 212(d). Pure and Sanders allegations of misappropriation and ownership of the Halakar files directly contradict the advice HHT provided to Barnett in 2017 and 2018. Any testimony provided by Turner will be adverse to the interests of both Pure Development and Sanders. Therefore, they are disqualified from continuing in this matter.

## **CONCLUSION**

For each of the foregoing reasons, and each of them, Defendant Jenna Barnett respectfully requests that the Court disqualify Hoover Hull Turner from representing any party in this action and for all other just and proper relief.

* * *

Dated: October 13, 2025

*/s/Robert D. MacGill*
Robert D. MacGill (IN 9989-49)
Matthew T. Ciulla (IN 34542-71)
Patrick J. Sanders (IN 36950-29)
Elizabeth L. Merritt (IN 38275-49)
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone: (317) 721-1253
Robert.MacGill@MacGillLaw.com
Matthew.Ciulla@MacGillLaw.com
Patrick.Sanders@MacGillLaw.com
Elizabeth.Merritt@MacGillLaw.com

*Counsel to Jenna Barnett*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on October 13, 2025 on all counsel of record by virtue of the Court's CM/ECF System.

*/s/ Robert D. MacGill*