UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PURE DEVELOPMENT, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:25-cv-01301-SEB-TAB |
| ) | |
| CANOPY 5, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON DEFENDANTS' MOTION TO STAY**

Defendants Canopy 5, LLC, Chris Seger ("Seger"), Adam Seger ("Adam Seger"), Brian Palmer, and Magic Tric I, LLC (collectively, the Canopy 5 Defendants) ask the Court to stay its proceedings pursuant to the *Colorado River* abstention doctrine.[1] [Filing No. 22.] Plaintiffs Pure Holdings, Inc., Pure Development, Inc., and Drew Sanders oppose the requested stay.[2] [Filing No. 28; Filing No. 63.] For the reasons discussed below, the Court grants the Canopy 5 Defendants' motion [Filing No. 22] and stays this case.

---

[1] Though Defendants' motion is titled "Motion to Stay Injunctive Relief Proceedings," the Court understands the motion, in substance, to request a stay of the entire case. Indeed, when the Court first addressed this motion, and granted it in part, the Court concluded that the motion sought to "stay the federal case while awaiting the outcome of the appeal of the state court's dissolution order." [Filing No. 23, at ECF p. 3.]

[2] Plaintiffs joined Defendants Magic ATX I, LLC, JennaB, LLC, and Jenna Barnett as parties after briefing on the motion to stay concluded, and those newly-added Defendants have not formally stated their position. However, Barnett is now also represented by the same defense counsel who filed the motion to stay. Counsel for JennaB and Magic ATX has yet to appear.

I.      Background

Sanders and Seger started Pure Development, a real estate development company, in 2012.  [Filing No. 22-1, at ECF p. 15.]  They were 50-50 partners in Pure Development.[3]  In recent years, Sanders and Seger became deadlocked regarding key operations, leading Seger to file for dissolution in Indiana state court in June 2024, Case No. 48C06-2411-PL-156.[4]  [Filing No. 22-1, at ECF p. 13.]

In the dissolution action, Seger sought to alter the ownership of Pure Development through corporate dissolution.  Seger's proposed dissolution plan excluded Sanders from business operations and involved the creation of a new company, Canopy 5—owned by Seger, Palmer, and Seger's brother, Adam Seger—to assume the work and hire the employees of Pure Development, with Canopy 5 remitting a percentage of profits from Pure Development's outstanding projects to be split equally between Seger and Sanders.  [Filing No. 28-6, at ECF p. 30.]  The state court rejected Seger's plan.  [Filing No. 28-6, at ECF p. 44-46.]  As his proposed dissolution plan, Sanders presented evidence of the value of Pure Development and asked the state court to order Seger to purchase his 50% share.  [Filing No. 28-6, at ECF p. 47.]  The state court rejected this plan as well.  [Filing No. 28-6, at ECF p. 47.]  Following a trial in February 2025, the state court ordered the dissolution of Pure Development and ordered the appointment of a receiver to manage the day-to-day affairs and exercise all powers of Pure Development "in

---

[3] Pure Holdings is a related holding company, also formed by Sanders and Seger as a 50-50 partnership. [Filing No. 22-1, at ECF p. 16-17.]  Because Pure Development is the operating entity, this order focuses on it.

[4] As discussed in the parties' briefs, there are additional actions pending related to Pure Development.  However, consideration of those actions was not necessary to determine the appropriateness of the stay.  Therefore, this order focuses on the state court's dissolution action and this federal action.

the best interests of the shareholders and creditors." [Filing No. 28-6, at ECF p. 47-48.] The dissolution order required Pure Development to finish some projects according to their respective operating agreements and to wind up the business—allowing the receiver to sell Pure Development as an ongoing concern or liquidate it in another fashion, as dictated by the market and at the discretion of the receiver. [Filing No. 28-6, at ECF p. 2-3, 47-48.]

Sanders promptly appealed the dissolution order, and the Indiana Court of Appeals stayed the dissolution order before the appointment of a receiver—placing the ownership and control of Pure Development in limbo. [Filing No. 22-3.] That appeal is pending.

In this federal action, filed in June 2025, Sanders—as well as Pure Development and its holding company—originally asserted claims against Seger; Seger's new companies, Canopy 5 and Magic TRIC; Adam Seger; and the chief operating officer of Canopy 5, Brian Palmer. Adam Seger and Palmer are past employees of Pure Development. [Filing No. 1, at ECF p. 3.] Sanders alleges that—prior to their resignations—Seger, Adam Seger, and Palmer worked on behalf of Canopy 5, while utilizing Pure Development's offices, resources, and trade secrets and engaging "in efforts to transition Pure Development, Inc. projects and clients to Canopy 5." [Filing No. 1, at ECF p. 3.] Sanders also alleges that Seger, with the assistance of Adam Seger, expropriated Pure Development's business opportunities for Magic TRIC. [Filing No. 1, at ECF p. 6-10.] The original complaint asserted 22 causes of action, including violations of state and federal trade secrets laws, various violations of the Indiana Crime Victims Relief Act (based on claims of theft, conversion, trespass, and fraud), unfair competition under common law and federal statute, unjust enrichment, tortious interference with business relations and contracts, breach of employment contracts, breach of fiduciary duty, fraud, and claims for declaratory relief.

3

In July 2025, Pure Development moved for a preliminary injunction. [Filing No. 17.] About a week later, the Canopy 5 Defendants moved to stay these proceedings or, alternatively, for leave to complete discovery before responding to the motion for preliminary injunction. [Filing No. 22.] Following a July 24, 2025, status conference, the Court opened discovery related to the motion for preliminary injunction and took the requested stay under advisement pending full briefing. [Filing No. 23.]

In September 2025, Plaintiffs filed a second amended complaint—adding three additional Defendants, Magic ATX (an additional business started by Seger), Jenna Barnett (a past employee of Pure Development), and JennaB (Barnett's business). [Filing No. 59.] The second amended complaint—now the operative complaint—asserts claims similar to those in the original complaint and further alleges that Barnett and her business violated federal and state trade secrets laws, among other claims, and that Magic ATX committed constructive fraud. [Filing No. 59.] Thereafter, Plaintiffs filed a superseding motion for preliminary injunction in October 2025. [Filing No. 73.] Plaintiffs seek, among other things, to enjoin Defendants from soliciting business from clients that originated from Pure Development and from keeping or using Pure Development's business information. [Filing No. 73.]

The Canopy 5 Defendants' motion to stay argues that, under the *Colorado River* abstention doctrine, the Court should decline to exercise jurisdiction and stay its proceedings while awaiting the outcome of the appeal of the state court's dissolution order. [Filing No. 22, at ECF p. 22.] They argue that the Indiana Court of Appeals should determine the propriety of the state court order dissolving Pure Development and requiring a receiver to wind up its operations before this Court issues orders—such as orders enjoining competition—that may further

4

implicate or hinge on Pure Development's property rights and ability to engage in new business. [Filing No. 22, at ECF p. 8-9.]

## II. Discussion

Generally, a federal court retains jurisdiction of a case despite the pendency of a related state court proceeding. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). However, under the *Colorado River* abstention doctrine, a federal court may stay or dismiss a lawsuit due to a concurrent state proceeding if it would promote "wise judicial administration" due to the parallel nature of the proceedings and the existence of exceptional circumstances. *Id.* at 818. The purpose of *Colorado River* abstention is to "conserve both state and federal judicial resources and prevent inconsistent results." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014).

Courts apply a two-step analysis to determine whether *Colorado River* abstention applies. First, they assess "whether the concurrent state and federal actions are actually parallel." *GeLab Cosmetics LLC v. Zhuhai Aobo Cosmetics Co., Ltd.*, 99 F.4th 424, 428 (7th Cir. 2024) *cert. denied*, 145 S.Ct. 1045 (2025). Then, courts assess "whether exceptional circumstances warrant abstention." *Id.* When applying this analysis, courts "put a thumb on the scale against abstention." *Id.* The moving party must prove that abstention is appropriate. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 497 (7th Cir. 2011). The Court discusses the two-step analysis in more detail below.

### a. Parallel Proceedings Requirement

"Cases are parallel if there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *GeLab*, 99 F.4th at 428. However, parallel cases "need not be identical." *Id.* Cases are parallel if they involve "substantially the same parties . . .

contemporaneously litigating substantially the same issues." *Id.* (quoting *Freed*, 756 F.3d at 1019). Cases are parallel and *Colorado River* abstention is appropriate when a state action will decide "the larger dispute" that "must be resolved before the district court can reach" the claims raised in the federal action. *Id*. at 429-30 (citing *Freed*, 756 F.3d at 1021).

Defendants relied on *GeLab* when arguing that Plaintiffs' federal claims are parallel to the dissolution action because "where the federal claims rise or fall with the outcome of a state court ruling—that squarely militates in favor of finding of *Colorado River* parallelism." [Filing No. 30, at ECF p. 4.]  The Court agrees.  *GeLab* is controlling on the issue of parallelism.

*GeLab* involved a state action regarding the disputed ownership of a business—specifically, the parties sought a declaration identifying the majority stakeholder.  99 F.4th at 427-29.  The contemporaneous federal action raised claims under federal and state trade secrets acts, as well as various common law causes of action.  *Id.* at 427.  Like the present case, the federal plaintiff alleged that the defendants stole key trade secrets from a company whose ownership and control was at issue in a state action and used those secrets in a competing business.  *Id.*  In their defense, the federal defendants argued that, as the majority shareholder, they owned the business and could not steal trade secrets from themselves.  *Id.*  The district court concluded that the federal action was "ostensibly about trade secrets, but lurking just beneath the surface is a corporate-ownership dispute"—the same issue "at center stage" in the state action—and stayed the suit under the *Colorado River* abstention doctrine.  *Id.* at 425-26.  The Seventh Circuit agreed and affirmed the stay.  *Id.* at 426.

*GeLab* concluded that the parties were substantially the same even though the named parties in the federal and state actions were not identical.  *Id.* at 428-29.  There was some overlap of parties, but "each suit [had] defendants unique to that suit." *Id.* at 428.  The Seventh Circuit

acknowledged that the plaintiffs in both suits had "logical reasons" to sue some parties in one suit but not the other, and therefore, the naming of different parties was not merely an attempt to circumvent *Colorado River* abstention. *Id.* However, "formal symmetry [of parties was] unnecessary." *Id.* at 429 (quoting *Adkins*, 644 F.3d at 499). Rather, parties are substantially the same if they "have nearly identical interests." *Id.* (citing *Freed*, 756 F.3d at 1019). The Seventh Circuit concluded that the parties had nearly identical interests because they sought the same relief in both cases. *Id.* The state plaintiff wanted the state court to find that he owned the company—"the same thing he hope[d] to show in federal court in order to prevail on his trade-secrets claims." *Id.* The defendants' interests in both actions also hinged on ownership of the business. *Id.* If the federal court found that the defendants owned a majority interest, then it would render the federal action "senseless" by effectively alleging that a company was stealing from itself. *Id.*

      *GeLab* also found that the actions involved substantially the same issues because the issues arose "from the same set of facts." *Id.* at 429 (citing *Freed*, 756 F.3d at 1019). "[T]he ownership dispute at the heart of both cases [was] predicated on the same facts" and would "be resolved largely by reference to the same evidence." *Id.* (internal quotations and citation omitted). This was true even though only the federal action required evidence of the business's trade secrets, because the relevance of the trade secret evidence hinged on the state court's resolution of ownership. *Id.*

      Also, the state court's resolution of ownership could affect the scope and the nature of the issues in the federal action in a manner that could jeopardize federal jurisdiction. *Id.* at 429. If the state court determined the federal plaintiff had a minority—not majority—share, then he could still sue the federal defendants. *Id.* However, it "would be a different suit entirely—one

7

bringing claims for breach of duty and corporate waste, not for violations of trade-secrets law." *Id.* Federal subject matter jurisdiction in *GeLab* was based solely on federal question jurisdiction supported by the Defend Trade Secrets Act claim. *Id.* Given the likelihood that the state litigation would dispose of the federal trade secrets claim—the sole basis for subject matter jurisdiction—"the critical issue would shift from the propriety of abstention to the existence of subject-matter jurisdiction." *Id.* In that event, the plaintiff would lose his basis for federal question jurisdiction. *Id.* ("[The plaintiff] would need to tether his state-law claims to some other federal claim, and none comes readily to mind.").

In *GeLab,* the Seventh Circuit acknowledged that, depending on how the state court ruled on the ownership issue, the federal trade secret claim could survive the resolution of the state action. *Id.* at 429-30. However, it concluded that "'this one-sidedness is neither unusual nor fatal to a finding that the two cases are parallel.'" *Id.* at 429 (quoting *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 649 (7th Cir. 2021)). Even if the state court's resolution of the ownership dispute did not resolve all federal claims, the issue of ownership required resolution before the district court could resolve the federal trade secrets claim. *Id*. at 429-30. Therefore, "it was rational for the district court to determine that the state court litigation will be an adequate vehicle for the complete and prompt resolution of the larger dispute." *Id.* at 430 (citing *Freed,* 756 F.3d at 1021) (internal quotations omitted).

The case here is remarkably similar to *GeLab*. Like *GeLab*, the present case raises a federal Defend Trade Secrets Act claim but "lurking just beneath the surface is a corporate-ownership dispute" that is already advancing in the state action. *GeLab*, 99 F.4th at 425. The dissolution order resolved the key issues of the ownership and control of Pure Development. While that decision is stayed pending appeal, the Indiana Court of Appeals may affirm and

reinstate the dissolution order or issue another decision affecting the ownership and control of Pure Development. If affirmed, a yet-to-be-appointed receiver would decide whether to pursue the federal trade secrets and other claims raised by Pure Development in this case. Affirmation of the dissolution order would also clarify that neither Seger nor Sanders have the right to act on behalf of or control the tangible and intangible assets of Pure Development.

If the state action ultimately came to some other decision regarding the ownership of Pure Development, it would still affect the ownership of trade secrets at issue in the federal action. For instance, if the state action adopted a plan similar to Seger's dissolution proposal—giving control of Pure Development's assets and operations to Canopy 5—then it would resolve the federal claims. Canopy 5 would likely not pursue the federal trade secrets and other federal claims against itself or its allies—rendering the federal action "senseless." *GeLab*, 99 F.4th at 429. If the state action ultimately resolves ownership of Pure Development in a way that does not fully resolve the federal claims, then the parties can litigate the remaining federal claims after the state court resolves the ownership dispute. Either way, the state court's resolution of ownership of Pure Development is necessary before the resolution of the claims raised in this federal action, and abstention furthers the interest of wise judicial administration.

Additionally—like *GeLab*—the state court's resolution of ownership could change the nature and scope of the litigation and potentially give rise to jurisdictional issues. Subject matter jurisdiction in this case is based on a federal question, not the diversity of the parties. [Filing No. 59, at ECF p. 2; Filing No. 30, at ECF p. 8.] The federal claims may not survive the resolution of the state action, or the person or entity that ultimately controls Pure Development, such as a yet-to-be-named receiver, may choose not to pursue the claims securing this action's federal

9

question jurisdiction. Thus, resolution of the state action could lead to issues of subject matter jurisdiction.

Also instructive is *Freed v. J.P. Morgan Chase Bank*, 756 F.3d 1013, 1016 (7th Cir. 2014), in which the Seventh Circuit affirmed a stay of two federal actions under the *Colorado River* abstention doctrine. In a state action, deadlocked member-managers of a company asserted various claims against one another and one employee, including a claim to dissolve the company. *Id.* at 1016-17. One of the member-managers then filed a second state action against a bank that allegedly facilitated the other member-manager's improper conversion of company assets. *Id.* at 1017. The action against the bank was removed to federal court. *Id.* Later, one of the member-manager's filed a federal action against his co-member-manager, the co-member-manager's father, and the company to force the purchase of the co-member-manager's interest in the business and for monetary damages for alleged theft and breaches of fiduciary duties. *Id.* The defendants in both federal actions moved to stay the federal actions pursuant to *Colorado River* abstention. *Id.* The Seventh Circuit agreed that the actions were parallel because the parties' interests and the issues were substantially the same. *Id.* at 1019-21 (finding that the federal action against the bank was parallel because it stemmed from the "exact scheme and conduct" at issue in the state action, which involved allegations that one member-manager was attempting to eliminate the control of the other and take business assets without authorization). Moreover—like in *GeLab*—the state court's resolution of key issues was necessary for the resolution of the federal actions. *Freed*, 756 F.3d at 1021.

In the present case, Plaintiffs primarily base their arguments that the federal and state actions are not parallel on the general presumption against abstention. However, despite that presumption, many courts—in addition to *GeLab* and *Freed*—have found concurrent actions

10

parallel and abstention appropriate. Indeed, Plaintiffs cited several such cases, including *Colorado River*, *Clark v. Lacy*, 376 F.3d 683 (7th Cir. 2004)*,* and *Antosh v. Village of Mount Pleasant*, 99 F.4th 989 (7th Cir. 2024). [Filing No. 28, at ECF p. 3, 5; Filing No. 63, at ECF p. 1.]

In *Colorado River*, the U.S. Supreme Court emphasized federal courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them." 424 U.S. at 818. However, the Court ultimately upheld the district court's dismissal of the concurrent federal action under its newly formed abstention doctrine. *Id.* at 821. In reaching that decision, the Court noted that actions that "essentially involve the disposition of property are best conducted in unified proceedings" and deferred to the state action. *Id.* at 819.

In *Clark*, the Seventh Circuit found federal and state actions to be parallel despite differing parties because the parties were substantially the same and the actions shared a central issue. 376 F.3d at 688-87 ("[T]he parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action."). In affirming the district court's stay, the Seventh Circuit emphasized the practical benefits of staying an action under the *Colorado River* abstention doctrine: "[A] stay is a measured approach that protects the substantial rights of the parties and allows [the plaintiff] the possibility of continuing [the] litigation once [the state action concludes.]" *Id.* at 688.

In *Antosh*, the Seventh Circuit affirmed a dismissal under the *Colorado River* abstention doctrine. 99 F.4th at 991. While still acknowledging that abstention "is the exception, not the rule," it noted that courts have "never demanded an exact fit between the federal and state cases" and described the abstention analysis as a "flexible" inquiry requiring "practical judgment

11

informed by principles of comity, federalism, and sound judicial administration." *Id.* at 994 (internal quotations and citations omitted). The federal and state actions in *Antosh* involved different issues and some different parties, and resolution of the state action would not resolve all federal claims. *Id.* at 994-95. Despite that, both actions hinged on the same operative facts, and the parties unique to the federal action had incentives and goals aligned with those in the state action. *Id.* at 994 ("The relevant inquiry is 'whether the addition of new parties with different interests alters the central issues in the concurrent case.'" (quoting *Loughran,* 2 F.4th at 648)). The Seventh Circuit found the actions to be parallel. *Id.* at 995.

Like many of the Seventh Circuit cases discussed above, this federal action involves some unique parties, but those parties have interests that are nearly identical to those in the state action. All parties to the state action—Pure Development, Pure Holdings, Seger, and Sanders—are parties to this federal action. Some of the Defendants unique to the federal action were key figures in the state action—such as Palmer, Adam Seger, and Canopy 5, which were central to Seger's proposed dissolution plan. The interests of the remaining unique Defendants—Magic TRIC, Magic ATX, Jenna B, and Barnett—hinge on the resolution of the ownership dispute. All Defendants have a common interest—that the state court will find that Sanders and Canopy 5 have the right to compete with and access assets of Pure Development. For instance, the second amended complaint [Filing No. 59, at ECF p. 39-41] alleges that Jenna B and Barnett (and other Defendants) violated federal law by misappropriating trade secrets owned by Pure Development—a claim which depends on the state court's resolution of who owns and controls those trade secrets. Indeed, all claims raised in the federal action depend on who owns, controls, and can grant access to Pure Development and its assets and whether Pure Development can pursue new business. Even those claims alleging that Defendants' actions since the issuance of

12

the dissolution order violated a fiduciary duty to Pure Development depend on the outcome of the appeal of the dissolution order.  This federal action is parallel to the state dissolution action.

### b. Exceptional Circumstances Requirement

The second inquiry under the *Colorado River* abstention doctrine is whether exceptional circumstances warrant abstention, which requires consideration of a ten-factor balancing test. *GeLab*, 99 F.4th at 430.  "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818–19.  "The weight to be given any one factor is determined solely by the circumstances of the particular case—there is no mechanical formula by which to determine when a stay is appropriate." *Schneider Nat. Carriers, Inc. v. Carr*, 903 F.2d 1154, 1157 (7th Cir. 1990); *see also Clark*, 376 F.3d at 688 (noting that the ten-factor balancing test has a "flexible nature").  The Court discusses each factor below.

### 1. Whether the state has assumed jurisdiction over property—Favors Abstention.

The dissolution order mandated the dissolution of Pure Development and placed control of its assets in the hands of a receiver.  While that order is currently stayed pending appeal, the State of Indiana appears to have assumed jurisdiction over Pure Development and all related assets.  In opposition to this factor, Plaintiffs argue that Pure Development would retain its property rights, even if the dissolution order were in effect.  [Filing No. 28, at ECF p. 14 (citing Ind. Code § 23-1-45-5(b)(1)).]  While that is true, it is irrelevant to Indiana's apparent assumption of jurisdiction over the business itself.  Accordingly, this factor weighs in favor of abstention.

### 2. The inconvenience of the federal forum—Disfavors Abstention.

Defendants concede that the Southern District of Indiana is a convenient forum—rendering this factor against abstention. [Filing No. 22, at ECF p. 14 n.6.]

### 3. The desirability of avoiding piecemeal litigation—Favors Abstention.

This factor is concerned with the efficient use of judicial resources and avoiding contradictory results. *Tyrer v. City of South Beloit, Ill.,* 456 F.3d 744, 755 (7th Cir. 2006). As discussed above, the ownership of Pure Development is at the heart of both cases, and resolution of the state dissolution action is likely to resolve or facilitate the resolution of the federal claims. By resolving or simplifying the issues in the federal action, a stay would avoid wasting judicial resources. *See Clark*, 376 F.3d at 687 ("Without staying the federal proceeding, the two actions would proceed simultaneously—duplicating the amount of judicial resources required to reach a resolution."). This factor strongly favors abstention.

### 4. The order in which jurisdiction was obtained by the concurrent fora—Favors Abstention.

"[T]he focus of this factor is generally which case was filed first and the time between filings." *East Gate-Logistics Park Chicago, LLC v. CenterPoint Properties Trust*, No. 24 C 3742, 2024 WL 4265184, at *8 (N.D. Ill. Sept. 23, 2024). The dissolution action was filed a year before this federal action, and the appeal of the dissolution order was pending before this federal action began. Therefore, this factor favors abstention.

### 5. The source of governing law—Neutral as to Abstention.

When a federal action—such as the present case—raises claims under both state and federal law, the source of the governing law factor "neither favors nor disfavors abstention." *Loughran*, 2 F.4th at 650. Staying federal actions based on both state and federal law allows the state court to resolve key state law claims, such as an underlying ownership dispute, while

allowing the federal court to adjudicate any remaining federal law claims after the stay is lifted. *GeLab*, 99 F.4th at 430-31 (finding that the governing law factor favored abstention when the federal action raised both state and federal trade secrets claims, and the state action would resolve the ownership dispute). This factor is neutral as to abstention.[5]

### 6. The adequacy of the state-court action to protect the federal plaintiff's rights—Favors Abstention.

This factor is primarily concerned with the state court's bias, which is generally not an issue when the parties are all citizens of the state where the concurrent case is pending. *GeLab*, 99 F.4th at 431. All parties are Indiana citizens [Filing No. 59, at ECF p. 1-2], and therefore, this factor favors abstention.

### 7. The relative progress of state and federal proceedings—Favors Abstention.

The dissolution action has progressed through trial and to appeal, while this federal action is only at the pleading and preliminary injunction discovery phase. Therefore, this factor strongly favors abstention.

### 8. The presence or absence of concurrent jurisdiction—Favors Abstention.

This factor weighs in favor of abstention when "either court could hear all claims in both lawsuits." *GeLab*, 99 F.4th at 431 (citing *Clark*, 376 F.3d at 688). None of Plaintiffs' claims raise issues of exclusive jurisdiction of the federal courts.

---

[5] In *GeLab*, Judge Wood (who also authored *Loughran*) held that the source of governing law—both state and federal—favored abstention. However, her analysis on this factor focused primarily on whether the district court should have stayed the case or dismissed it. Judge Wood concluded the district court "wisely" opted for a stay rather than dismissal. *GeLab*, 99 F.4th at 430.

Moreover, this factor also weighs in favor of abstention when federal claims depend on a state court's resolution of a key fact. *Freed*, 756 F.3d at 1023. The trade secrets claims should not be adjudicated until the state court determines the ownership of Pure Development. This factor favors abstention.

### 9. The availability of removal—Favors Abstention.

"The unavailability of removal *favors* a stay, because the purpose of this factor is to prevent litigants from circumventing the removal statute." *Loughran*, 2 F.4th at 650 (italics original). It is undisputed that the state court cases are not removable. [Filing No. 22, at ECF p. 17; Filing No. 28, at ECF p. 17.] Thus, this factor favors abstention.

### 10. The vexatious or contrived nature of the federal claim—Disfavors Abstention.

In support of this factor, the Canopy 5 Defendants argue that Plaintiffs could have brought the federal claims in the indemnity lawsuit—the state action filed by Seger against Pure Development's holding company seeking indemnification for Seger's litigation expenses stemming from earlier lawsuits. [Filing No. 22, at ECF p. 20; Filing No. 22-4.] However, Seger filed the indemnity lawsuit on June 30, 2025—the same day that Plaintiffs filed this action in federal court. [Filing No. 22-4.] Thus, the decision to file the federal action was likely made before Plaintiffs had notice of the indemnity action. There is insufficient evidence of any improper motive in bringing the federal claims. This factor weighs against abstention.

As the foregoing demonstrates, most factors favor abstention—many strongly so. The factors weigh more heavily in favor of a stay. These exceptional circumstances warrant *Colorado River* abstention.

### III. Conclusion

For these reasons, the Canopy 5 Defendants' motion to stay [Filing No. 22] is granted. The case is stayed pending the state court's resolution of the dissolution action, currently on appeal.

Date: 11/6/2025

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email