**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

PURE DEVELOPMENT, INC.,
PURE HOLDINGS, INC.,
and DREW SANDERS,

      Plaintiffs,

  v.

CANOPY 5, LLC, CHRIS SEGER,
ADAM SEGER, BRIAN PALMER,
MAGIC TRIC I, LLC,
JENNAB, LLC, and JENNA BARNETT,

      Defendants.

Case No. 1:25-cv-01301-SEB-TAB

**PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE ORDER STAYING THIS
CASE UNDER *COLORADO RIVER* ABSTENTION DOCTRINE**

Pursuant to Federal Rule of Civil Procedure 72(a), plaintiffs respectfully object to the

Magistrate Judge's Order [Filing No. 97] staying this case under the *Colorado River*

abstention doctrine as contrary to law.

**Introduction**

*Colorado River*[1] abstention requires a threshold determination that pending state and

federal actions are "parallel" such that resolution of the state action will dispose of all

claims in the federal action. *Antosh v. Vill. of Mount Pleasant*, 99 F.4th 989, 993 (7th Cir.

2024). "If the proceedings are not parallel, then the *Colorado River* doctrine does not

---

[1] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

apply and a stay is not proper." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011). "If there is any doubt that cases are parallel, a district court should not abstain," lest it commit a "serious abuse of discretion." *Id.*

Magistrate Judge Baker accurately recited this standard but erred in applying it. That error stems from a misunderstanding regarding a pending appeal of an Indiana trial court's dissolution of plaintiffs Pure Holdings, Inc. and Pure Development, Inc. (an order stayed by the Indiana Court of Appeals). Judge Baker mistook the dissolution proceeding for an "ownership dispute," and incorrectly believed the appeal could determine the fate of all 23 counts asserted in this case. As a result of that misunderstanding, the stay order erred as a matter of law in concluding that *GeLab Cosmetics LLC v. Zhuhai Aobo Cosmetics Co.*, 99 F.4th 424 (7th Cir. 2024)—a case Defendants first cited in their reply brief [Filing No. 30 at 4]—required a stay of this case pending the appeal.

The dissolution action has never been about resolving who owns the plaintiff Pure corporations. Until June 25, 2025, Chris Seger and Drew Sanders were the 50-50 owners of Pure Holdings, Inc., and Pure Holdings, Inc. was the 100% owner of subsidiary Pure Development, Inc. Since June 25, 2025, Drew Sanders and a new shareholder that acquired Seger's shares are the 50-50 owners of Pure Holdings, Inc., and Pure Holdings, Inc. is still the 100% owner of subsidiary Pure Development, Inc. Nothing about the pending appeal of the dissolution order will change that.

Nor will that appeal affect Pure Development, Inc.'s ownership of its property, including its legal claims. Today, Drew Sanders is the sole director and officer of Pure Holdings, Inc. and Pure Development, Inc., and any change to his status is hypothetical. But, *even if* the dissolution order were affirmed by the Indiana Court of Appeals and that case remanded for the appointment of a receiver, and *even if* that receiver decided not to continue litigating this case, Sanders himself would (as a shareholder) have the right to press those claims derivatively (in addition to the claims he is pursuing in his own name).

As a matter of law, *Colorado River* does not apply. The Magistrate Judge's contrary reliance on *Colorado River* and *GeLab Cosmetics* was legal error. And Plaintiffs respectfully request that this Court vacate the stay and put this case back on track for a preliminary injunction hearing.

### Background

In 2012, Chris Seger and Drew Sanders went into business together to form Pure Development, Inc., a real estate development company located in Indianapolis. [Filing No. 59 at 2.] In 2019, Seger and Sanders formed Pure Holdings, Inc., with each of them owning 50 percent of the company, and transferred their ownership interests in Pure Development, Inc. to Pure Holdings, Inc., making Pure Development, Inc. a wholly owned subsidiary of Pure Holdings, Inc. [*Id.* at 3.] Pure Development, Inc. then grew into a multimillion-dollar company, with more than 20 employees, completing more

than 30 projects throughout the United States. [*Id.*]

### a. Dissolution Action

On April 8, 2024, Chris Seger presented Sanders a buyout offer that would have removed Sanders as an owner of the Pure companies. [*Id.* at 7.] After Sanders declined the offer, Seger filed an action in Indiana state court to dissolve Pure Holdings, Inc. and Pure Development Capital, Inc. (an entity that Chris Seger and Sanders formed to hold capital and guaranty loans). [*Id.*] As part of a "remedy plan" he presented to the state court, Chris Seger asked permission to start a new company called Canopy 5 that would assume control of Pure Development, Inc.'s assets, customers, business pipeline, and employees. [*Id.* at 7–8.]

On May 12, 2025, the Indiana Commercial Court granted Seger's dissolution request and included Pure Development, Inc. in its dissolution order. [*Id.* at 8.] But the court specifically rejected Seger's Canopy 5 "remedy plan" as "inequitable." [*Id.*] As the court put it, "Seger's Proposed Remedy Plan, Canopy 5, would engage in the same business as Pure Development, just without Sanders." [*Id.*] The court added:

> It is abundantly clear to the Court that the only major difference between Pure Development and Canopy 5—and possibly the only difference altogether, assuming Pure Development employees follow Seger and continue their employment with Canopy 5—is that the former includes Sanders as a 50% owner and the latter excludes him completely. Canopy 5, in all relevant respects, would be Pure Development without Sanders and with a new name.

[*Id.* at 9.]

In its dissolution order, the court stated that a receiver should be appointed to independently oversee Pure Development, Inc.'s projects through to completion and to otherwise manage the companies' affairs and assets (including by potentially selling the companies). [*Id.*] The court reasoned that the appointment of a receiver would prevent Chris Seger from "gain[ing] the advantage with business connections, current employees of Pure Development, and, most importantly, the current projects." [*Id.*] As of May 12, 2025, when that court entered its dissolution order, Pure Development, Inc. was working on dozens of projects. [*Id.*]

On June 23, 2025, the Indiana Court of Appeals stayed the trial court's dissolution order, and no receiver has been appointed. [Filing No. 28-7.] Two days later, Chris Seger abruptly notified Sanders that Seger had divested his ownership of Pure Holdings, Inc. and Pure Development Capital, Inc. and would be resigning as a director and officer of all three Pure corporations effective immediately. [Filing No. 59 at 34.] As of June 25, 2025, Chris Seger ceased to be a shareholder, director, or officer in any Pure corporation. [*Id.*] On July 25, 2025, in a separate proceeding, the Indiana Commercial Court sitting in Marion County found that Drew Sanders is currently the sole director and officer of the Pure corporations. [Filing No. 28-5 at 20–21.]

b. **Defendants' Conduct Giving Rise to the Claims Asserted in this Case**

On May 15, 2025—three days after the state court rejected Chris Seger's Canopy 5 "remedy plan"—Chris Seger, his brother Adam, and their fellow Pure Development,

Inc. employee Brian Palmer, formed Canopy 5, LLC anyway. [Filing No. 59 at 10.] However, Chris Seger, Adam Seger, and Brian Palmer did not terminate their employment with Pure Development, Inc. at that time. [*Id.*] Rather, while still affiliated with Pure Development, Inc., Chris Seger, Adam Seger, Brian Palmer:

a. operated Canopy 5, LLC out of Pure Development, Inc.'s office;

b. used Pure Development, Inc. office equipment to conduct Canopy 5, LLC business;

c. caused Pure Development, Inc. employee Jenna Barnett to transfer ownership of Pure Development, Inc.'s account with HubSpot (a cloud-based business management application) to an entity owned by Jenna Barnett called JennaB, LLC, before then transferring ownership of the account to Canopy 5, LLC;

d. solicited and engaged Pure Development, Inc. employees to work for Canopy 5, LLC while those employees were still employed and being paid by Pure Development, Inc.;

e. along with others at their direction, accessed Pure Development, Inc.'s computer systems and cloud-based services hosting Pure Development, Inc. business information to conduct Canopy 5, LLC business;

f. described themselves as Canopy 5's leadership team;

g. stated that Canopy 5 intended to take over Pure Development, Inc.'s business;

h. stated that Pure Development, Inc.'s office address was Canopy 5's office address;

i. represented then-current Pure Development, Inc. employees as Canopy 5's "team";

j. represented Pure Development, Inc.'s projects as Canopy 5's projects;

k. stated that Pure Development, Inc.'s entire workforce (just without Drew Sanders) would be leaving Pure Development, Inc. for Canopy 5; and

l. had Pure Development, Inc. pay an "executive coach" at least $45,000 for consulting services provided to Canopy 5.

[*Id.* at 10–11.]

Enlisting Pure Development, Inc. employees to help them, Chris Seger, Adam Seger, Brian Palmer, and Jenna Barnett—again, while still employed by Pure Development, Inc.—also engaged in efforts to transition Pure Development, Inc. projects to Canopy 5, LLC (including projects the state court's dissolution order said should be completed by Pure Development, Inc. and not Canopy 5). [*Id.* at 20–30.] Other conduct, and the claims that tie to them—including claims by Drew Sanders, personally, and claims against other defendants (Magic TRIC I, LLC and Magic ATX I, LLC) relating, for example, to wrongfully usurped business opportunities—are set forth in the Second Amended Complaint. [Filing No. 59.]

Suffice it to say, the misconduct at issue is wide-ranging. And, as set forth below, the entirety of this case does not—as *Colorado River* requires for its application—turn on the resolution of the state court dissolution action.

### Standard

Rule 72(a) requires modifying or setting aside any part of the magistrate's order that is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.,* 126 F.3d 926, 943 (7th Cir. 1997).

As to legal issues, however, the "contrary to law" standard calls for a "plenary review." *Agrolipetsk, LLC v. Seeds*, No. 1:16-cv-03414-SEB-MPB, 2018 WL 4574335, *2 (S.D. Ind. Sept. 25, 2018). "For questions of law there is no practical difference between review under Rule 72(a)'s contrary to law standard and a de novo standard." *Id.* "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Elder Care Providers of Ind., Inc. v. Home Instead, Inc.*, No. 1:14-cv-01894-SEB-MJD, 2017 WL 4250107, at *1 (S.D. Ind. Sept. 26, 2017).

## Argument

The stay order misunderstands the dissolution action as an "ownership dispute lurking beneath" the claims in this case; as Seger's attempt "to alter the ownership of Pure Development through corporate dissolution"; and as an action that will resolve "who owns and controls [Pure Development, Inc.'s] trade secrets." [*see* Filing No. 97 at 2–3, 8–9, 12.] None of that is correct. The ownership of Pure Holdings, Inc., Pure Development, Inc., and their legal claims is not—and never has been—in dispute.

1. **Dissolution, even if affirmed, would not alter the ownership of any claims in this case.**

First, nothing about the dissolution action altered, or has potential to alter, the ownership of any Pure corporation or its assets (including legal claims). *See* Ind. Code § 23-1-45-5(b)(2), -(b)(5); *In re Hall*, 304 F.3d 743, 748 (7th Cir. 2002) (legal claims are contingent assets valued by their probability of success). The only thing affirmation of the dissolution order could lead to is the appointment of a receiver to "manage the

entities in tandem to complete all ongoing projects, upon which the entities will be dissolved and wound up." [*E.g.*, Filing No. 28-6 at 43.][2]

Moreover, even if a hypothetical receiver opted not to continue litigating Pure Development, Inc.'s claims, that would not bar Sanders from pursuing those claims derivatively. *Schmidt v. Esquire, Inc.*, 210 F.2d 908, 912–13 (7th Cir. 1954) (if an appointed receiver chooses not to enforce the corporation's rights, then the receiver "should properly be made a defendant to any suit by stockholders in the right of the corporation"); *see also Landy v. Fed. Deposit Ins. Corp.*, 486 F.2d 139, 147 (3d Cir. 1973) ("When a corporation is in receivership, any demand to bring suit in its behalf must be made upon the receiver rather than the directors. . . . When a receiver refuses to bring suit or where it would be a vain thing to make a demand upon it, and it is shown there is a necessity for a suit for the protection of the interests of creditors, a stockholder is free to sue." (cleaned up)). Thus, the possibility of a receiver's choosing not to continue litigation Pure Development, Inc.'s claims will not in any way jeopardize those claims' viability, much less "dispose" of them.

---

[2] The stay order also wrongly envisions a scenario where, on remand from the Indiana Court of Appeals, the state trial court adopts Chris Seger's previously rejected "remedy plan" and hands control of Pure Development, Inc.'s property to Canopy 5. [Filing No. 97 at 9.] But that could never happen because Chris Seger no longer owns stock in any Pure corporation. In any event, no one has contested on appeal the state court's rejection of Seger's "remedy plan" as "inequitable." [Filing No. 28-6 at 46.]

**2.      Even dissolved corporations have the right to assert claims.**

Second, even dissolved, Pure Development, Inc. has the right to vindicate its real and personal property rights (*see* Counts 1-8 and 11 of the Second Amended Complaint), its financial interest in the projects that the dissolution order specifically said it should complete or that were wrongfully usurped (through Counts 12 and 20-22), its contract rights (through Counts 13-17 and 23), and the fiduciary obligations it was owed (through Count 18).

The only claim to which Defendants conceivably could point as being affected by dissolution would relate to future competition between Canopy 5 and Pure Development, Inc. (Count 12). But abstention under *Colorado River* requires a "substantial likelihood that the state litigation will dispose of **all claims** presented in the federal case." *Antosh*, 99 F.4th at 993–94 (emphasis added); *see also Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) (same). That is not, and has never been, the case here.

In fact, Defendants never even argued that the dissolution action would "dispose of all claims" asserted here—nor could they. With the exception of Pure Holdings, Inc.'s first-filed claim for declaratory judgment (Count 23) that it owes Chris Seger no indemnification for his legal expenses, no other claim in this case has been asserted in any other action. And no other pending action involves the same—or even similar—operative facts as this case.

**3. Applying *Colorado River* and *GeLab Cosmetics* to order a stay was wrong as a matter of law.**

Magistrate Judge Baker found *Colorado River's* parallel action requirement satisfied based on the holding in *GeLab Cosmetics LLC v. Zhuhai Aobo Cosmetics Co.*, 99 F.4th 424 (7th Cir. 2024). But, unlike this case, *GeLab* **did** involve an underlying ownership dispute where the same primary actors had competing claims to a controlling interest in a company. 99 F.4th at 426–27. While the ownership dispute remained pending, the state court plaintiff caused the company to bring trade secret claims in federal court against the state court defendants. *Id.* at 427. The district court stayed that case under *Colorado River* until the state court resolved the ownership issue, and the Seventh Circuit affirmed. *Id.* at 426. The reason was simple: if the defendant prevailed in establishing control of the company, the federal action would be promptly dismissed because a party cannot sue itself or steal its own trade secrets. *Id.* at 429. *GeLab* does not apply here.

Here, the stay order contemplated a scenario in which a hypothetical receiver chose not to continue litigating Pure Development, Inc.'s claims, analogizing that possibility to the "substantial likelihood" in *GeLab* that "the state litigation will dispose of all claims presented in the federal case." [Filing No. 97 at 9–10 (citing *GeLab*, 99 F.4th at 429).] But that analogy wrongly conflated a mere possibility that a future receiver may choose not to continue litigating Pure Development, Inc.'s claims with the legal certainty in *GeLab* that the owner of a business would not sue itself or claim to have

11

stolen its own property. Moreover, as addressed above, even if a receiver were appointed in the dissolution action, and that receiver opted not to continue litigating, Sanders could derivatively assert the same claims.

*Freed v. J.P. Morgan Chase Bank*, 756 F.3d 1013 (7th Cir. 2014), cited by the stay order, has even less utility here. There, the Seventh Circuit affirmed *Colorado River* abstention where resolution of a federal action turned on the determination of when the plaintiff dissociated under the partnership agreement—which was "the precise subject of the counterclaims in the state court proceeding." *Id.* at 1019–20. Again, that the claims in this case belong to the corporation, and that the corporation has the right to pursue them (whether under the current state of affairs, or by a hypothetical receiver, or derivatively by Sanders if a hypothetical receiver chooses not to continue litigating) will not change regardless of how the dissolution action is resolved.

\* \* \*

In sum, the stay order confused the dissolution action for an ownership dispute that must be resolved before this Court can adjudicate Plaintiffs' claims. That confusion led to a misapplication of *Colorado River* and *GeLab Cosmetics*, as a matter of law, that this Court should overrule.

### Conclusion

For these reasons, the Court should sustain Plaintiffs' objections to the abstention Order and lift the stay.

Respectfully submitted,

| | |
|---|---|
| /s/ *B. Too Keller* | /s/ *Michael R. Limrick* |
| B. Too Keller | Andrew W. Hull |
| Keller Macaluso LLC | Michael R. Limrick |
| 760 3rd Avenue SW, Suite 210 | Christopher D. Wagner |
| Carmel, IN 46032 | Megan M. Riley |
| 317-660-3402 | Hoover Hull Turner LLP |
| too@kellermacaluso.com | 111 Monument Circle, Suite 4400 |
| | Indianapolis, IN 46204 |
| *Counsel for Pure Holdings, Inc.* | 317-822-4400 |
| *and Pure Development, Inc.* | awhull@hooverhullturner.com |
| | mlimrick@hooverhullturner.com |
| | cwagner@hooverhullturner.com |
| | mriley@hooverhullturner.com |
| | |
| | *Counsel for Drew Sanders,* |
| | *Pure Holdings, Inc.,* |
| | *and Pure Development, Inc.* |