# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

PURE DEVELOPMENT, INC., PURE
HOLDINGS, INC., AND DREW
SANDERS,

      PLAINTIFFS,

v.

CANOPY 5, LLC, CHRIS SEGER,
ADAM SEGER, BRIAN PALMER, AND
MAGIC TRIC I, LLC,

      DEFENDANTS.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 1:25-CV-01301-SEB-TAB

## DEFENDANTS' OPPOSITION TO APPEAL OF JUDGE BAKER'S ORDER
### [Doc. 98]

Plaintiffs appeal Magistrate Judge Baker's Order without submitting any analysis

of the controlling *Colorado River* factors. In doing so, they concede that:

- The State of Indiana has assumed jurisdiction over Pure Development. Dkt. No. 97 at 13.

- Entry of a stay would avoid wasting judicial resources. Dkt. No. 97 at 14.

- The state courts obtained jurisdiction before this Court did. Dkt. No. 97 at 14.

- The state court adequately protects the parties' rights. Dkt. No. 97 at 15.

- The state court proceedings are much further progressed than this case. Dkt. No. 97 at 15.

- None of their claims raise issues which fall within the exclusive jurisdiction of this Court. Dkt. No. 97 at 15.

- There has been no attempt to circumvent the removal statute. Dkt. No. 97 at 16.

Instead of addressing these controlling factors, Plaintiffs: use the incorrect standard of review, make new arguments to this Court, and attempt to distinguish a binding Seventh Circuit case applied by the Magistrate Judge that squarely addresses the matter at hand.

The objections to Magistrate Judge Baker's Order should be overruled.

## I.    <u>**The Court Should Apply the Clear Error Standard.**</u>

The standard of review in this matter is clear error. Plaintiffs advocate for *de novo* review. Dkt. No. 98 at 7-8. However, *de novo* review is inappropriate because all of Plaintiffs' challenges are either about the facts – which are, by rule, subject to clear error review, *see* Fed. R. Civ. P. 72(a) – or about the application of law to facts, which is also subject to clear error review. *In re Morning Song Bird Food Litig.*, No. 1:17-mc-00078-JMS-TAB, 2018 U.S. Dist. LEXIS 69393, at *16 (S.D. Ind. Apr. 25, 2018) ("Plaintiffs submit that the more deferential clearly erroneous/contrary to law standard of review applicable to nondispositive orders applies to the Court's review… Under this standard, the district judge reviews the magistrate judge's R&R for incorrect interpretations of 'relevant statutes, case law, or procedure' and for 'definite . . . mistake[s]' in the application of law to fact." (alterations in original)); *cf., e.g., Aeroground, Inc. v. CenterPoint Props. Tr.*, 738 F.3d 810, 812 (7th Cir. 2013) ("[W]e review for clear error the district court's findings of fact and its applications of law to those findings of fact."); *ReMapp Int'l Corp. v. Comfort Keyboard Co.*, 560 F.3d 628, 633 (7th Cir. 2009) ("We review the trial court's findings of fact and its application of facts to the law for clear error.").

The clear error standard governs the review of Magistrate Judge Baker's Order.

**II.      All New Arguments Should Be Disregarded.**

The word "derivative" does not appear in either of Plaintiffs' briefs before the Magistrate Judge. Dkt. No. 28, Dkt. No. 63. Nevertheless, Plaintiffs' entire objection to Judge Baker's Order appears to rest on the concept that Drew Sanders will file a shareholder derivative lawsuit to force a hypothetical receiver to sue Canopy 5 and Chris Seger when the Indiana Court of Appeals affirms the dissolution of Pure. Dkt. No. 98. The objection should be rejected by this Court for at least two reasons.

First, arguments may not be made for the first time in objecting to a magistrate judge's ruling. *Haywood v. Baylor*, 804 F. App'x 401, 403 (7th Cir. 2020). Because Plaintiffs did not make this argument to Judge Baker, they may not make it now.

Second, Drew Sanders did not oppose Defendants' motion to stay this matter. Only Pure Development did. Dkt. No. 28. Arguments personal to Drew Sanders thus cannot now be heard; Drew Sanders made no arguments to the magistrate judge at all. Dkt. No. 28.[1]

The shareholder derivative arguments should be rejected by this Court.

**III.      The Matters Are Parallel.**

**a.  *Gelab* Commands That Magistrate Judge Baker Be Affirmed.**

Plaintiffs' objections hinge on an invitation to this Court to ignore the Seventh Circuit's decision in *GeLab Cosmetics LLC v. Zhuhai Aobo Cosmetics Co.*, 99 F.4th 424 (7th Cir. 2024). The Court should not do so.

---

[1] Ironically, even if considered, the shareholder derivative lawsuit argument compels the imposition of a longer stay, not a shorter one. If this case proceeds down that path, the merits of the case would need to be stayed while the threshold question of whether Drew Sanders can force Pure Development to sue Chris Seger (over the potential objection of the Trust, the other fifty percent shareholder, and the court-appointed receiver) was adjudicated. This would be a lengthy process that would involve its own discovery, briefing, and hearings.

Magistrate Judge Baker's discussion of the *GeLab* case was extensive and well

supported:

> "Cases are parallel if there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *GeLab*, 99 F.4th at 428. However, parallel cases "need not be identical." *Id.* Cases are parallel if they involve "substantially the same parties . . . contemporaneously litigating substantially the same issues." *Id.* (quoting *Freed*, 756 F.3d at 1019). Cases are parallel and *Colorado River* abstention is appropriate when a state action will decide "the larger dispute" that "must be resolved before the district court can reach" the claims raised in the federal action. *Id*. at 429-30 (citing *Freed*, 756 F.3d at 1021). ***
>
> *GeLab* is controlling on the issue of parallelism. *GeLab* involved a state action regarding the disputed ownership of a business—specifically, the parties sought a declaration identifying the majority stakeholder. 99 F.4th at 427-29. The contemporaneous federal action raised claims under federal and state trade secrets acts, as well as various common law causes of action. *Id.* at 427. *** [T]he federal plaintiff alleged that the defendants stole key trade secrets from a company whose ownership and control was at issue in a state action and used those secrets in a competing business. *Id.* In their defense, the federal defendants argued that, as the majority shareholder, they owned the business and could not steal trade secrets from themselves. *Id.* The district court concluded that the federal action was "ostensibly about trade secrets, but lurking just beneath the surface is a corporate-ownership dispute"—the same issue "at center stage" in the state action—and stayed the suit under the *Colorado River* abstention doctrine. *Id.* at 425-26. The Seventh Circuit agreed and affirmed the stay. *Id.* at 426.
>
> *GeLab* concluded that the parties were substantially the same even though the named parties in the federal and state actions were not identical. *Id.* at 428-29. There was some overlap of parties, but "each suit [had] defendants unique to that suit." *Id.* at 428. The Seventh Circuit acknowledged that the plaintiffs in both suits had "logical reasons" to sue some parties in one suit but not the other, and therefore, the naming of different parties was not merely an attempt to circumvent *Colorado River* abstention. *Id.* However, "formal symmetry [of parties was] unnecessary."

*Id.* at 429 (quoting *Adkins*, 644 F.3d at 499). Rather, parties are substantially the same if they "have nearly identical interests." *Id.* (citing *Freed*, 756 F.3d at 1019). The Seventh Circuit concluded that the parties had nearly identical interests because they sought the same relief in both cases. *Id.* The state plaintiff wanted the state court to find that he owned the company—"the same thing he hope[d] to show in federal court in order to prevail on his trade-secrets claims." *Id.* The defendants' interests in both actions also hinged on ownership of the business. *Id.* If the federal court found that the defendants owned a majority interest, then it would render the federal action"senseless" by effectively alleging that a company was stealing from itself. *Id.*

*GeLab* also found that the actions involved substantially the same issues because the issues arose "from the same set of facts." *Id.* at 429 (citing *Freed*, 756 F.3d at 1019). "[T]he ownership dispute at the heart of both cases [was] predicated on the same facts" and would "be resolved largely by reference to the same evidence." *Id.* (internal quotations and citation omitted). This was true even though only the federal action required evidence of the business's trade secrets, because the relevance of the trade secret evidence hinged on the state court's resolution of ownership. *Id.*

Also, the state court's resolution of ownership could affect the scope and the nature of the issues in the federal action in a manner that could jeopardize federal jurisdiction. *Id.* at 429. If the state court determined the federal plaintiff had a minority—not majority—share, then he could still sue the federal defendants. *Id.* However, it "would be a different suit entirely—one bringing claims for breach of duty and corporate waste, not for violations of trade-secrets law." *Id.* Federal subject matter jurisdiction in *GeLab* was based solely on federal question jurisdiction supported by the Defend Trade Secrets Act claim. *Id.* Given the likelihood that the state litigation would dispose of the federal trade secrets claim—the sole basis for subject matter jurisdiction—"the critical issue would shift from the propriety of abstention to the existence of subject-matter jurisdiction." *Id.* In that event, the plaintiff would lose his basis for federal question jurisdiction. *Id.* ("[The plaintiff] would need to tether his state-law claims to some other federal claim, and none comes readily to mind.").

In *GeLab*, the Seventh Circuit acknowledged that, depending on how the state court ruled on the ownership issue, the federal trade secret claim could survive the resolution of the state action. *Id.* at 429-30. However, it concluded that "'this one-sidedness is neither unusual nor fatal to a finding that the two cases are parallel.'" *Id.* at 429 (quoting *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 649 (7th Cir. 2021)). Even if the state court's resolution of the ownership dispute did not resolve all federal claims, the issue of ownership required resolution before the district court could resolve the federal trade secrets claim. *Id.* at 429-30. Therefore, "it was rational for the district court to determine that the state court litigation will be an adequate vehicle for the complete and prompt resolution of the larger dispute." *Id.* at 430 (citing *Freed*, 756 F.3d at 1021) (internal quotations omitted).

Dkt. No. 97 at 5-8. Plaintiffs do not challenge a single element of logic or analysis given by Magistrate Judge Baker in relation to the legal principles stated within *GeLab*. Dkt. No. 98 at 11-12. It is controlling.[2]

Instead, Plaintiffs challenge Magistrate Judge Baker's application of *GeLab* to the case at bar. Judge Baker did not clearly err in this application. It is plain that the issues of corporate ownership and control of Pure "require[] resolution before the district court c[an] resolve the federal trade secrets claim." Dkt. No. 97 at 8. This is exactly what Magistrate Judge Baker found in applying the case. *Id.* at 9 ("Either way, the state court's resolution of ownership of Pure Development is necessary before the resolution of the claims raised in this federal action, and abstention furthers the interest of wise judicial administration.").

Judge Baker's additional analysis relating to subject matter jurisdiction is equally availing, especially in light of the fact that the "Seventh Circuit repeatedly warns litigants

---

[2] Likewise, Plaintiffs do not challenge Magistrate Judge Baker's recitation of the *Freed* case, and it also controls the disposition of this matter. Doc. 97 at 10. He applied that case correctly as well, and it similarly requires overruling of the objection.

and district courts that subject matter jurisdiction is not an issue to be taken lightly," and thus a district court has "an independent obligation to satisfy itself that federal subject matter jurisdiction exists." *Vaughan v. Pfizer, Inc.*, No. 06-379-GPM, 2006 U.S. Dist. LEXIS 33972, at *1 (S.D. Ill. May 26, 2006). Here, just like in *GeLab*, there is not diversity. "The federal claims may not survive the resolution of the state action, or the person or entity that ultimately controls Pure Development, such as a yet-to-be-named receiver, may choose not to pursue the claims securing this action's federal question jurisdiction. Thus, resolution of the state action could lead to issues of subject matter jurisdiction." Dkt. No. 97 at 9-10.

In short, Judge Baker correctly applied *GeLab* and other binding Seventh Circuit cases to this matter. *See* Dkt. No. 97 at 11-12 ("[A]ll claims raised in the federal action depend on who owns, controls, and can grant access to Pure Developments and its assets and whether Pure Development can pursue new business. Even those claims alleging that Defendants' actions since the issuance of the dissolution order violated a fiduciary duty to Pure Development depend on the outcome of the appeal of the dissolution order. This federal action is parallel to the state dissolution action."). Plaintiffs have not made any showing that he clearly erred in any respect. The Court should overrule the objection.

### b. **The Cases Rely on the Same Facts and Circumstances.**

Where federal and state actions "rely on the same set of facts, present substantially similar legal issues, and involve substantially the same parties," they are parallel. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1021 (7th Cir. 2014). "To meet the 'parallel' requirement, suits need not be identical." *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). "The addition of a party or parties to a proceeding, by itself,

does not destroy the parallel nature of state and federal proceedings." *Id.* Nor "can it be dispelled by repackaging the same issue under different causes of action." *Id.* at 687. The key question is whether the "thrust" of the two lawsuits is the same—whether "they rely on the same factual predicate to raise substantially similar legal issues against substantially similar parties." *Id.* ("If we were to reach the opposite conclusion, future federal plaintiffs would have an incentive to tag on redundant and non-essential claims, parties, and remedies to create straw distinctions with an otherwise parallel state proceeding.").

Where a fact key to the federal proceeding will be determined by the state court, the actions are parallel. *See, e.g.*, *Card v. Graystone Mortg. Corp.*, 2015 U.S. Dist. LEXIS 5961, at *9 (S.D. Ind. Jan. 20, 2015) ("[T]his action is parallel to the Florida state court action because the Court cannot determine if Graystone inaccurately furnished information … until the enforceability and validity of the Promissory Note has been determined."). They are also parallel when they stem from the same conduct and are intertwined. *See, e.g.*, *Metschlaw, P.A. v. Magic Burgers, LLC*, 2019 U.S. Dist. LEXIS 124986, at *6 (S.D. Fla. July 24, 2019); *Corus Bank, N.A. v. De Guardiola*, 593 F. Supp. 2d 991, 994 (N.D. Ill. 2008). Here, further analysis provides additional confirmation that Judge Baker's decision to stay was not clearly erroneous.

The following facts require adjudication in state court before this case may proceed.

### 1. <u>Whether the receiver approves the filing and maintenance of this lawsuit and the motion for P.I.</u>

Only the receiver should decide whether the lawsuit will be litigated. *See generally Seger v. Sanders*, 2025 Ind. Cir. LEXIS 435, at *60 (Madison Cty., May 12,

2025) ("Underlying Dissolution Order"),[3] (receiver will exercise all powers of the Pure Entities). Sanders filed this lawsuit after the Underlying Dissolution Lawsuit's Order dissolving the Pure Entities. He did not consult with a receiver before filing this suit. The state-court appeal of the Underlying Dissolution Lawsuit will decide whether a receiver is appointed, and he or she, in turn, will decide whether this lawsuit and the motion for P.I. may be maintained.

### 2. Whether the Trust approves the filing and maintenance of this lawsuit and the motion for P.I.

The Trust is the 50% shareholder of the Pure Entities. *Chandler v. Sanders ex rel. Sanders*, 2025 Ind. Super. LEXIS 235, at *1-2 (Marion Super. Sep. 26, 2025). The Marion Superior Court has held that Sanders owes a fiduciary duty to the trust and must treat the trust as analogous to a partner. *Id*. at *6.

The Trust alleges that it must be consulted and consent to major business decisions. *See* Dkt. No. 22-13. Sanders, the other 50% shareholder, did not consult with the Trust or obtain its approval before filing this lawsuit. *See, e.g.*, Dkt. No. 22-13 at para. 26, 30. The state-court Trust Lawsuit will resolve whether the Trust's consent is required, and the Trust, in turn, will decide whether to consent to this lawsuit and the motion for P.I.

### 3. Whether the custodian approves the filing and maintenance of this lawsuit and the motion for P.I.

The Trust has asked for the state court to appoint a custodian. Dkt. No. 22-15 at 16; *see also* Dkt. No. 22-13 at paras. 93-99. The custodian will have the right to determine whether this lawsuit will proceed. *See generally* Ind. Code § 23-1-47-2(c)

---

[3] This is the Order of the Madison Superior Court that dissolved the Pure Entities. Sanders has appealed it to the Indiana Court of Appeals. The appeal is pending.

(custodian has all powers of the corporation). The state-court Trust Lawsuit will determine whether a custodian is appointed, and he or she, in turn, will decide whether this lawsuit and the motion for P.I. may be maintained.

### 4. Who owns the purported trade secrets and thus has standing to bring the trade secret claims.

Only the owner of a purported trade secret may bring a misappropriation claim. 18 U.S.C. § 1836(b)(1); *see also, e.g.*, Dkt. No. 1 at para. 102 ("Pure Development, Inc. is the owner of trade secrets…"), *id.* at para. 111 (same); Dkt. No. 59 at para. 172. These counts were brought only in the name of Pure Development. Dkt. No. 1 at paras. 102-109, 111-117; Dkt. No. 59 at paras. 172-180, 182-188. The Underlying Dissolution Order ordered the receiver to dispose of the assets of Pure Development. 2025 Ind. Cir. LEXIS 435, at *59. This includes purported trade secrets. Until the receiver acts or the order is vacated, it is unknown who will own the trade secrets. The state-court appeal of the Underlying Dissolution Lawsuit will decide whether a receiver is appointed and he or she, in turn, will decide who owns the trade secrets and thus who has standing to sue.

### 5. Whether Pure Development has a commercial interest in future sales.

Only one with an injury to a commercial interest in reputation or sales may bring a lawsuit under 15 U.S.C. § 1125. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). This count was brought only in the name of Pure Development, which has been dissolved and cannot conduct new business. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *57; Dkt. No. 22-10 at 6; Dkt. No. 22-11 at 7 n.2; Dkt. No. 22-2 para. 45. Until that ruling is vacated and reversed, Pure Development does not have standing to sue. The state appeal of the Underlying

Dissolution Lawsuit will decide whether Pure has a commercial interest in future sales, and thus whether it has standing.

### 6. Whether Pure Is Using the Purported Trade Secrets in Interstate Commerce.

To warrant DTSA protection, a trade secret must be "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). There must be "(i) … a relationship tethering (i.e., 'relates to') (ii) the confidential or secret information (i.e., a trade secret) (iii) to a product or service used in, or intended for use in, interstate commerce (i.e., 'used in . . . interstate commerce')." *Islands Hospice, Inc. v. Duick*, No. 19-00202-JMS-WRP, 2019 U.S. Dist. LEXIS 162416, at *12 (D. Haw. Sep. 23, 2019).

Here, Pure cannot engage in any commerce at all, let alone interstate commerce. Dkt. No. 22-10 at 6 ("[D]issolved companies cannot continue to operate as a going concern—for example, by taking on new business"); *see also* Dkt. No. 22-11 at 7 n.2 ("[I]t cannot conduct new business."); Dkt. No. 22-2 para. 45 ("[B]ecause the court has dissolved the companies, they are statutorily unable to conduct business other than winding up their affairs."); *see also* Ind. Code § 23-1-45-5(a) ("A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs."). Therefore, none of its purported trade secrets can be tethered to interstate commerce. *Contra Islands Hospice*, 2019 U.S. Dist. LEXIS 162416, at *12.

There is thus no cognizable DTSA claim until and unless the Indiana Court of Appeals or Indiana Supreme Court overturns the dissolution order. This Court should stay these proceedings until then.

**7. <u>Whether Pure Development is engaged in competition.</u>**

Plaintiffs claim that Defendants should not have "directly compet[ed] with Pure Development." Dkt. No. 18 at 22. Pure Development has been dissolved and cannot perform new business. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *57; Dkt. No. 22-10 at 6; Dkt. No. 22-11 at 7 n.2; Dkt. No. 22-2 para. 45. Until that ruling is vacated and reversed, it is a legal reality that Pure Development is not a "competitor" in anything. The state-court appeal of Underlying Dissolution Lawsuit will decide whether Pure Development is engaged in competition.

**8. <u>Whether Palmer's and A. Seger's employment agreements are enforceable against them.</u>**

The P.I. motion requests an injunction because Defendants Palmer and A. Seger "had express employment contracts prohibiting their use of Pure Development, Inc.'s business information for outside purposes," and were prohibited by their contracts from "contacting Pure Development, Inc.'s current or prospective customers." Dkt. No. 18 at 23; Dkt. No. 75 at 28. Pure Development has been dissolved and cannot perform new business. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *57; Dkt. No. 22-10 at 6; Dkt. No. 22-11 at 7 n.2; Dkt. No. 22-2 para. 45. Until that ruling is vacated and reversed, Pure has no prospective customers. The state-court appeal of Underlying Dissolution Lawsuit will decide whether Pure Development has prospective customers. Additionally, the state trial court made factual findings that Pure Development never performed a material provision of its employment agreements with Palmer and A. Seger. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *9, *12, *30-31. Sanders has appealed this order and the appeal is pending in state court. Dkt. No. 22-1

at 4. That issue will bear materially on the defense of first material breach and unclean hands.

**9.  Whether purportedly creating and marketing Canopy 5 and purportedly soliciting Pure employee support is a breach of fiduciary duty.**

The P.I. motion requests an injunction because Defendants "each owed Pure Development, Inc. a fiduciary duty of loyalty." Dkt. No. 18 at 22; Dkt. No. 75 at 27. The state trial court explicitly "reject[ed] as breaches of fiduciary duty Sanders' contentions of Seger creating, marketing, and soliciting Pure Development employee support for his proposed remedy plan of Canopy 5, along with Seger allegedly creating a series of deadlocks to seek judicial dissolution." *Seger v. Sanders*, 2025 Ind. Cir. LEXIS 434, at *16 (Madison Cty., May 12, 2025).[4] Sanders has appealed this order and the appeal is pending in state court. Dkt. No. 22-1 at 4. While that order stands, there has been no breach of fiduciary duty.

**10. Whether Pure faces irreparable harm.**

Pure has requested an injunction because "what Defendants hope to do is leave Pure Development, Inc. an empty husk that cannot compete…." Dkt. No. 18 at 24. Pure Development has been dissolved, is to be wound-down in an orderly manner, and cannot perform new business. Underlying Dissolution Order, 2025 Ind. Cir. LEXIS 435, at *57; Dkt. No. 22-10 at 6; Dkt. No. 22-11 at 7 n.2; Dkt. No. 22-2 para. 45. The state court has ordered that the Pure Enterprise cannot compete. Until that ruling is vacated and reversed in the state court appeal, there is no irreparable harm.

---

[4] This is the Order of the Madison Superior Court that dismissed Sanders' remaining counterclaims. Sanders has appealed it to the Indiana Court of Appeals. The appeal is pending.

### c. The State Law Issues Should Not Be Heard, Either.

The other claims at issue in this appeal of Judge Baker's Order relate to state law breach of fiduciary duty allegations. Dkt. No. 18 at 22. These claims should not be heard at this time.

**1. The fiduciary duty claim should not be litigated until the appeal is resolved because, until that time, Judge Dudley's Order determining that there was no fiduciary duty breach remains binding.**

The Madison County Court held:

> The Court also **rejects as breaches of fiduciary duty** Sanders' contentions of **Seger creating, marketing, and soliciting** Pure Development employee support for his proposed remedy plan of **Canopy 5.** … [T]he Court refuses to find that a party's proposed remedy plan, no matter how one-sided and favorable it is to that party, is a breach of that party's fiduciary duties. In fact, **one could even say the opposite—in other words, that Seger's proposed remedy plan is his attempt to uphold his fiduciary duties, as he testified that Canopy 5 would ensure the completion of all current projects of Pure Development**, thus ensuring profits for himself, Sanders, and Pure Development. Creating, marketing, and soliciting Pure Development employee support is not a breach of his fiduciary duties but is rather his solution post-judicial dissolution to ensure the profits of Pure Development.

*Seger v. Sanders*, 2025 Ind. Cir. LEXIS 434, *16-17 (Madison Cty., May 12, 2025) (emphasis added). This order is on appeal to the Indiana Court of Appeals. It remains a "juridical fact until overruled." *M.H. v. State*, 207 N.E.3d 412, 416 (Ind. 2023).

Plaintiffs seek to collaterally attack this order through the instant proceeding. The Indiana courts have current jurisdiction over the issue of whether the creation and execution of Canopy 5 breached fiduciary duties owed to Pure. This Court should not exercise simultaneous jurisdiction over the same question. This situation is exactly where *Colorado River* abstention should be exercised.

**2. <u>The state law claims should not be litigated in a vacuum because there is no independent subject matter jurisdiction over them.</u>**

There is not diversity here. With the federal claims stayed, this Court should also stay the resolution of the pending state court counts at issue. *GeLab*, 99 F.4th at 429 ("But that would be a different suit entirely—one bringing claims for breach of duty and corporate waste, not for violations of trade-secrets laws. Moreover, even if Chen's federal complaint could support those claims, the critical issue would shift from the propriety of abstention to the existence of subject-matter jurisdiction. … [D]iversity (and alienage) jurisdiction would be lacking. … Chen could no longer rely on his claim under the Defend Trade Secrets Act to support federal-question jurisdiction over his case. … He would need to tether his state-law claims to some other federal claim, and none comes readily to mind.").

**IV. <u>All Further Analysis Is Precluded by the Narrow Scope of Plaintiffs' Objection.</u>**

Plaintiffs state no challenge to Part B of Magistrate Judge Baker's decision. Therefore, it should be affirmed without further analysis.

\* \* \*

Judge Baker did not clearly err. The objection should be overruled.

Dated: December 4, 2025

*/s/Robert D. MacGill*

Robert D. MacGill (IN 9989-49)
Matthew T. Ciulla (IN 34542-71)
Patrick J. Sanders (IN 36950-29)
Elizabeth L. Merritt (IN 38275-49)
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
Telephone:  (317) 721-1253
Robert.MacGill@MacGillLaw.com
Matthew.Ciulla@MacGillLaw.com
Patrick.Sanders@MacGillLaw.com
Elizabeth.Merritt@MacGillLaw.com

Counsel to Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on December 4, 2025 on all counsel of record by virtue of the Court's CM/ECF System.

/s/Matthew T. Ciulla